PETER J. ELIASBERG (SB# 189110)
peliasberg@aclu-sc.org
MARISOL ORIHUELA (SB# 261375)
morihuela@aclu-sc.org
ACLU FOUNDATION OF
SOUTHERN CALIFORNIA
1313 W. 8th Street
Los Angeles, CA 90017
Phone:  (213) 977-9500
Fax:  (213) 977-5299

DONNA M. MELBY (SB# 86417)
donnamelby@paulhastings.com
JOHN S. DURRANT (SB# 217345)
johndurrant@paulhastings.com
JADE H. LEUNG (SB# 279651)
jadeleung@paulhastings.com
ELIZABETH C. MUELLER (SB# 278283)
bethmueller@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA  90071-2228
Phone:  (213) 683-6000
Fax:  (213) 627-0705

MARGARET WINTER (*pro hac vice*)
mwinter@npp-aclu.org
ERIC BALABAN (*pro hac vice application forthcoming*)
ebalaban@npp-aclu.org
DAVID M. SHAPIRO (*pro hac vice application forthcoming*)
dshapiro@npp-aclu.org
NATIONAL PRISON PROJECT OF
THE AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
915 15th St., NW
Washington, D.C. 20005
Phone:  (202) 393-4930
Fax:  (202) 393-4931

Attorneys for Plaintiffs
ALEX ROSAS and JONATHAN
GOODWIN, on behalf of themselves
and of those similarly situated

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX ROSAS and JONATHAN GOODWIN on behalf of themselves and of those similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>LEROY BACA, Sheriff of Los Angeles County Jails, et al.,<br><br>Defendants. | CASE NO. CV 12-00428 DDP<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>Date:    March 26, 2012<br>Time:    10:00 a.m.<br>Ctrm.:   3<br>Judge:   Hon. Dean D. Pregerson |

CASE NO. CV 12-00428 DDP

PLAINTIFFS' MPA ISO MOTION FOR
CLASS CERTIFICATION

# TABLE OF CONTENTS

**Page**

I.   BACKGROUND AND SUMMARY OF ARGUMENT ..............................1

II.   ARGUMENT .......................................................................................2

A.   Plaintiffs Satisfy the Requirements of Fed. R. Civ. P. 23(a): Numerosity, Commonality, Typicality, and Adequacy .......................2

1.   Numerosity is Satisfied:  The Class Includes Thousands of Present Members and Unidentified Future Inmates..............3

2.   Commonality is Satisfied:  The Challenged Policies Present Numerous Common Questions of Fact and Law...........4

a.   Common Contention No. 1 ..............................................7

b.   Common Contention No. 2 ..............................................9

c.   Common Contention No. 3 ............................................10

d.   Common Contention No. 4 ............................................12

e.   Common Contention No. 5 ............................................15

3.   Typicality is Satisfied:  The Named Plaintiffs' Claims are Representative of Those of the Class at Large .........................18

4.   Adequacy is Satisfied:  The Named Plaintiffs Will Fairly and Adequately Protect the Interests of the Class ...................20

a.   Absence of Conflict within the Class.............................20

b.   Adequacy of Representation ..........................................20

B.   Plaintiffs Satisfy Fed. R. Civ. P. 23(b)(2):  This Case Seeks Declaratory and Injunctive Relief from Policies and Practices that Place the Entire Proposed Class at Risk of Brutal Violence .......21

III.   THE COURT SHOULD DESIGNATE PLAINTIFFS' COUNSEL AS CLASS COUNSEL UNDER RULE 23(G)(1) ............................................23

IV.   CONCLUSION .................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Anderson v. Garner*,
22 F. Supp. 2d 1379 (N.D. Ga. 1997) .................................................. 19

*Andre H. v. Ambach*,
104 F.R.D. 606 (S.D.N.Y. 1985) ...................................................... 3, 4

*Armstrong v. Davis*,
275 F.3d 849 (9th Cir. 2001) .......................................................... 5, 19

*Baby Neal v. Casey*,
43 F.3d 48 (3d Cir. 1994) ...................................................... 17, 19, 22

*Bradley v. Harrelson*,
151 F.R.D. 422 (M.D. Ala. 1993) ............................................... 19, 22

*Brown v. Plata*,
131 S. Ct. 1910 (2011) ...................................................................... 23

*California Rural Legal Assistance, Inc. v. Legal Services Corp.*,
937 F.2d 465 (9th Cir. 1991) ............................................................ 19

*California Rural Legal Assistance, Inc. v. Legal Services Corp.*,
917 F.2d 1171 (9th Cir. 1990) .......................................................... 19

*Connor B. v. Patrick*,
No. 10-cv-30073, 2011 WL 5513233-MAP (D. Mass. Nov. 10, 2011) ............................................................................................... 6, 7

*Consol. Rail Corp. v. Town of Hyde Park*,
47 F.3d 473 (2d Cir. 1995) ................................................................. 3

*Crawford v. Honig*,
37 F.3d 485 (9th Cir. 1994) .............................................................. 20

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) ........................................................... 4, 5

*Farmer v. Brennan*,
511 U.S. 825 (1994) ....................................................................... 9, 13

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) .......................................................... 4, 5

*Holland v. Steele*,
92 F.R.D. 58 (N.D. Ga. 1981) ............................................................ 4

*Hoptowit v. Ray*,
682 F.2d 1237 (9th Cir. 1982) .......................................................... 23

*In re Ferrero Litigation*,
No. 11-CV-205 H(CAB), 2011 WL 5557407 (S.D. Cal. Nov. 15, 2011) .................................................................................................. 5

*Ingles v. City of New York*,
No. 01 Civ. 8279 (DC), 2003 WL 402565 (S.D.N.Y. Feb. 20, 2003) .............. 19

*Inmates of San Diego County Jail in Cell Block 3B v. Duffy*,
528 F.2d 954 (9th Cir. 1975) ....................................................... 3, 23

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Inmates of the Attica Corr. Facility v. Rockefeller*,
  453 F.2d 12 (2d Cir. 1971) ................................................................... 19

*Jermyn v. Best Buy Stores, L.P.*,
  276 F.R.D. 167 (S.D.N.Y. 2011) ............................................................. 7

*Johnson v. California*,
  543 U.S. 499 (2005) .............................................................................. 5

*Leeds v. Watson*,
  630 F.2d 674 (9th Cir. 1980) ........................................................... 3, 23

*Mayweathers v. Newland*,
  258 F.3d 930 (9th Cir. 2001) ............................................................... 23

*Morrow v. Washington*,
  277 F.R.D. 172 (E.D. Tex. 2011) ........................................................... 7

*Orantes-Hernandez v. Smith*,
  541 F. Supp. 351 (C.D. Cal. 1982) ....................................................... 18

*Ortega v. Arpaio*,
  No. CV-07-2513-PHX-GMS, 2011 WL 6740711 (D. Ariz. Dec. 23,
  2011) ..................................................................................................... 6

*Perez-Funez v. District Director, I.N.S.*,
  611 F. Supp. 990 (C.D. Cal. 1984) ................................................. 18, 20

*Phillips v. Joint Legislative Comm. on Performance and Expenditure
  Review*,
  637 F.2d 1014 1022 (5th Cir. 1981), *cert. denied sub nom.*,
  *Mississippi v. Phillips*, 456 U.S. 960 (1982) ........................................ 4

*Pierce v. County of Orange*,
  526 F.3d 1190 (9th Cir. 2008) ............................................................... 3

*Rodriguez v. Hayes*,
  591 F.3d 1105 (9th Cir. 2010) .......................................... 4, 5, 18, 22

*Rutherford v. Baca*,
  No. 2:75-cv-04111-DDP (C.D. Cal. filed Dec. 9, 1976) ...................... 21

*Sandin v. Conner*,
  515 U.S. 472 (1995) ............................................................................ 23

*Skinner v. Uphoff*,
  209 F.R.D. 484 (D.Wyo. 2002) ............................................................. 4

*Toussaint v. Yockey*,
  722 F.2d 1490 (9th Cir. 1984) ............................................................. 23

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) ............................................................ 4, 5, 6, 7

*Walters v. Reno*,
  145 F.3d 1032 (9th Cir. 1998) ...................................... 2, 18, 20, 22

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

### RULES

FED. R. CIV. P. 23(a)....................................................................................2, 3, 4, 20, 21

FED. R. CIV. P. 23(a)(1)..........................................................................................3, 4, 5

FED. R. CIV. P. 23(a)(2)........................................................................................4, 7, 17

FED. R. CIV. P. 23(a)(3).............................................................................................. 18

FED. R. CIV. P. 23(a)(4).............................................................................................. 20

FED. R. CIV. P. 23(b) ..............................................................................................2, 21

FED. R. CIV. P. 23(b)(2)....................................................................... 1, 2, 3, 17, 22

FED. R. CIV. P. 23(b)(3)................................................................................................ 4

FED. R. CIV. P. 23(c)(1)(B)....................................................................................... 23

FED. R. CIV. P. 23(g) .......................................................................................... 23, 24

FED. R. CIV. P. 23(g)(1)............................................................................................ 23

FED. R. CIV. P. 23(g)(1)(A)...................................................................................... 24

FED. R. CIV. P. 23(g)(1)(B) ...................................................................................... 23

FED. R. CIV. P. 25(d) ................................................................................................ 13

FED. R. CIV. P. 26(b)(2)............................................................................................ 18

### TREATISES

5-23 MOORE'S FEDERAL PRACTICE – Civil § 23.22(1)(b), (3d ed. 2011) ................3

WILLIAM B. RUBENSTEIN, ET AL., NEWBERG ON CLASS ACTIONS, § 3:12
    (5th ed. 2011)..........................................................................................................3

### CONSTITUTIONAL PROVISIONS

U.S. CONST. amend. VIII............................................................................................ 1, 6, 9

U.S. CONST. amend. XIV............................................................................................ 1, 6, 9

# I.     BACKGROUND AND SUMMARY OF ARGUMENT.

Plaintiffs' suit for injunctive relief under the Eighth and Fourteenth Amendments is based on their contention that Defendants have been, and continue to be, deliberately indifferent to the significant risk that class members will be severely injured by deputies' use of unnecessary and excessive force.  To establish this deliberate indifference, Plaintiffs will need to show that Defendants are aware of a pattern and practice of unnecessary and excessive use of force by deputies against inmates in Men's Central Jail, Twin Towers Correctional Facility ("Twin Towers") and the Inmate Reception Center ("IRC"), which make up the jail complex in downtown Los Angeles on Bauchet Street, and that Defendants have failed to take reasonable steps to address this pattern.

This case is ideally suited to proceed as a class under Federal Rule of Civil Procedure 23(b)(2) because (a) every single member of the class has the same legal theory as to why their Eighth or Fourteenth Amendment rights are being violated; (b) every single member of the class will utilize precisely the same evidence in support of his cause of action; and (c) every single member of the class seeks precisely the same relief.  In other words, the named Plaintiffs and the putative class share all legal claims, all factual questions are common to the named Plaintiffs and the putative class, and the named Plaintiffs and the class all seek the same relief.  It is difficult to conceptualize a class that is more cohesive than this one.

It is true that Plaintiffs will rely, in part, on a series of different incidents of deputy-on-inmate abuse, but they will do so to prove that there is a pattern and practice of deputy-on-inmate abuse in the jails to which Defendants have shown deliberate indifference.  Thus, those individual incidents will solely be marshaled in support of the common question of whether Defendants are deliberately indifferent to the right of all inmates in the downtown jail facility to be free of the significant risk of severe injury at the hands of deputies.

CASE NO. CV 12-00428 DDP                      -1-                      PLAINTIFFS' MPA ISO MOTION FOR
                                                                       CLASS CERTIFICATION

In addition, the class easily satisfies the other requirements of Rule 23(a) as well as the requirements of Rule 23(b)(2). The number of inmates in Men's Central Jail and Twin Towers on a given day is about 7,000, and another 500 to 1,000 are processed through IRC. The class also contains future members. Thus, joinder of its members is impractical.

The claims of the named Plaintiffs are typical of those of the class as a whole. That typicality is not the result of their having been beaten by deputies – although they have been – but stems from their claim that Defendants have placed them at significant risk of physical abuse by failing to take appropriate steps to address the pattern of illegal force that they are aware of. That claim is identical across the whole of the proposed class.

Named Plaintiffs have no conflicts with the unnamed members of the proposed class. Their lawyers are experienced in federal court civil rights class actions. Thus, named Plaintiffs and their counsel will adequately represent the interests of the proposed class.

Finally, the asserted failure of the Defendants to put in place essential policies and practices concerning training, review of, and discipline for use of force constitutes refusal to act in a manner that applies generally to the class as a whole, rendering class-wide injunctive relief appropriate.

## II. ARGUMENT.

### A. Plaintiffs Satisfy the Requirements of Fed. R. Civ. P. 23(a): Numerosity, Commonality, Typicality, and Adequacy.

For a district court to certify a class action, the named plaintiffs or the proposed class must satisfy the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a) and at least one requirement of Rule 23(b). *Walters v. Reno*, 145 F.3d 1032, 1045 (9th Cir. 1998) (listing requirements for class certification; affirming grant of class certification in immigration matter). Because

CASE NO. CV 12-00428 DDP                    -2-                    PLAINTIFFS' MPA ISO MOTION FOR CLASS CERTIFICATION

named Plaintiffs and the proposed class meet all four Rule 23(a) requirements and the requirements of Rule 23(b)(2), this class should be certified.

### 1.     Numerosity is Satisfied:  The Class Includes Thousands of Present Members and Unidentified Future Inmates.

To meet the numerosity requirement of Rule 23(a), a class must be "so numerous that joinder of all members is impractical."  Fed. R. Civ. P. 23(a)(1).  A class with 40 or more members ordinarily satisfies the numerosity requirement. William B. Rubenstein, et al., *Newberg on Class Actions*, § 3:12 (5th ed. 2011) ("a class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone"); *accord*, 5-23 Moore's Federal Practice – Civil § 23.22(1)(b), (3d ed. 2011) (classes with more than 40 members generally held sufficient to meet numerosity requirements); *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (numerosity satisfied in tax assessment case despite disagreement regarding definition of defendant class; "[N]umerosity is presumed at a level of 40 members . . .") (citing *Newberg*).  Thousands of inmates are presently confined at Men's Central Jail, Twin Towers and the IRC, and each of them is impacted by the policies and practices challenged in this lawsuit.  That number is more than adequate to satisfy the numerosity requirement of Rule 23(a)(1).  *See Pierce v. County of Orange*, 526 F.3d 1190, 1997-98 (9th Cir. 2008) (class of pretrial detainees at county jail); *Inmates of San Diego County Jail in Cell Block 3B v. Duffy*, 528 F.2d 954, 956-57 (9th Cir. 1975) (class of prisoners from one cellblock of county jail); *Leeds v. Watson*, 630 F.2d 674, 675 (9th Cir. 1980) (class action against the Kootenai County Jail).

Moreover, Rule 23(a)(1) is also satisfied because the class includes future class members.  The population of Men's Central Jail, Twin Towers and the IRC is in constant flux as new prisoners enter these facilities every day.  In such cases, the numerosity requirement is satisfied whatever the current size of the class because joining future members is impracticable.  *See Andre H. v. Ambach*, 104 F.R.D. 606,

611 (S.D.N.Y. 1985) ("The fact that the [detention center] population . . . is constantly revolving establishes sufficient numerosity to make joinder of the class members impracticable."); *Skinner v. Uphoff*, 209 F.R.D. 484, 488 (D.Wyo. 2002) ("The proposed class potentially includes over 700 inmates currently confined . . . and any persons who will be confined . . . in the future. . . .  As members *in futuro*, they are necessarily unidentifiable, and therefore joinder is clearly impracticable."); *Holland v. Steele*, 92 F.R.D. 58, 63 (N.D. Ga. 1981) (accord).[1]

### 2.     Commonality is Satisfied:  The Challenged Policies Present Numerous Common Questions of Fact and Law.

To meet the commonality requirement, Plaintiffs need to show that there are "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Although the trial court must conduct a "rigorous analysis" of each prerequisite of Rule 23(a), the Ninth Circuit construes the commonality requirement "permissively."  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (post-*Wal-Mart* decision; finding trial court failed to conduct rigorous analysis, but stating that commonality is "construed permissively"); *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010) (alien detainee sought to certify class in a habeas corpus proceeding; "[T]he claims of the class share[d] sufficiently common questions of law" for commonality requirement); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-20 (9th Cir. 1998) (finding the "proposed class shares sufficient factual commonality to satisfy the minimal requirements of Rule 23(a)(2);" noting that "[t]he commonality preconditions of Rule 23(a)(2) are less rigorous than the companion requirements of Rule 23(b)(3)" and that "Rule 23(a)(2) has been construed permissively.").[2]

---

[1] *Phillips v. Joint Legislative Comm. on Performance and Expenditure Review*, 637 F.2d 1014 1022 (5th Cir. 1981) (where proposed class includes future members whose joinder is necessarily impracticable, Rule 23(a)(1) is met), *cert. denied sub nom.*, *Mississippi v. Phillips*, 456 U.S. 960 (1982).

[2] The trial court's duty to perform a rigorous analysis of commonality neither

The Ninth Circuit has specifically stated that "in a civil-rights suit, . . . commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members.  In such circumstance, individual factual differences among the individual litigants or groups of litigants will not preclude a finding of commonality." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (rejecting defendant's argument that separate lawsuits were required for persons with different physical and mental disabilities) (citations omitted), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499 (2005).  It is firmly established that different class members may present differing factual circumstances, without destroying commonality:

> It is not necessary that all questions of fact and law . . . be common to satisfy the rule. . . .  [T]he existence of shared legal issues with divergent factual predicates is sufficient . . . .  Nor does "common" as used in Rule 23(a)(1) mean complete congruence. . . .  [T]he commonality requirement asks us to look only for some shared legal issue or a common core of facts.

*Rodriguez*, 591 F.3d at 1122 (citations, internal quotations and original alterations omitted); *see also Hanlon*, 150 F.3d at 1019 ("All questions of fact and law need not be common to satisfy the [commonality requirement].  The existence of shared legal issues with divergent factual predicates is sufficient . . .").

requires nor permits determination on the merits. *Ellis*, 657 F.3d at 984.  To the contrary, "[t]he district court is required to examine the merits of the underlying claim . . . only inasmuch as it must determine whether common questions exist; not to determine whether class members could actually prevail on the merits . . . .  To hold otherwise would turn class certification into a mini-trial." *Id*. at 983 n.8.  *See also In re Ferrero Litigation*, No. 11-CV-205 H(CAB), 2011 WL 5557407, at *4 (S.D. Cal. Nov. 15, 2011) ("To the extent that Defendant interprets the decision in *Wal-Mart* as requiring plaintiffs to prove common class-wide injury at the class certification stage, the Court disagrees.").

To be sure, commonality requires "some glue" holding the claims together; the class claims "must depend upon a common contention" that is "of such a nature that it is capable of classwide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545, 2551-52 (2011). ("What matters to class certification . . . is not the raising of common 'questions . . . but, rather the capacity of a classwide proceeding to generate common *answers . . .*") (citations and quotations omitted; first ellipses in original).

The "glue" that was lacking in *Wal-Mart* exists in this case:  Plaintiffs allege that all members of the proposed class are at significant risk of brutal violence at the hands of deputies due to Defendants' systemic failure to implement policies and practices necessary to halt the long-standing and pervasive pattern of savage deputy-on-inmate violence in the Jails.[3]  Resolving whether there is a pattern of deputy-on-inmate abuse that poses a significant risk of severe injury to the class and whether Defendants have failed to adopt policies and practices that are a reasonable response to that threat will yield exactly the kind of "common answer" to Plaintiffs' Eighth and Fourteenth Amendment claims that the Supreme Court was referring to in *Wal-Mart*.  131 S. Ct. at 2551.  The Supreme Court explained in *Wal-Mart* that the class could have established commonality through "significant proof that Wal-Mart operated under a general policy of discrimination."  *Id.* at 2553 (quotations omitted).  In post-*Wal-Mart* decisions, courts have continued to certify classes in civil rights cases that challenge overarching policies and practices.  *See, e.g.*, *Ortega v. Arpaio*, No. CV-07-2513-PHX-GMS, 2011 WL 6740711, at *19 (D.

---

[3] The proposed class in *Wal-Mart* included 1.5 million employees in "3,400 stores, sprinkled across 50 states," 131 S. Ct. at 2557, whereas the proposed class here involves three facilities that comprise a single complex.  *See Connor B. v. Patrick*, No. 10-cv-30073, 2011 WL 5513233-MAP, at *3 (D. Mass. Nov. 10, 2011) (*Wal-Mart* "did not change the law for all class action certifications.  Instead, it provided guidance on how existing law should be applied to expansive, nationwide class actions that are very different from the case currently before the court.")

Ariz. Dec. 23, 2011) (granting class certification in a racial profiling lawsuit against a county sheriff's office; commonality is satisfied where "[a]lthough the factual circumstances of the individual stops involving the named Plaintiffs differ, they claim generally that [the sheriff's office] has a policy of racial profiling . . .").[4]

Here, there is significant evidence that Defendants have long had a policy and practice of permitting and condoning deputy-on-inmate violence.  As the Supreme Court explained in *Wal-Mart*, "for purposes of Rule 23(a)(2) [e]ven a single [common] question will do . . ."  131 S. Ct. at 2556 (citation and internal quotations omitted; alterations in original).[5]  Plaintiffs here, however, can show multiple common questions:  all of the following factual and legal contentions (each of which pertains to overarching patterns and practices) are common to the class and will lead to common answers.

### a.     Common Contention No. 1.

There is an unlawful pattern and practice at the Jails of excessive physical violence used by Sheriff's deputies against inmates.

### Support for Common Contention No. 1:

- Civilian eyewitness declarations regarding deputy-on-inmate brutality:  Scott Budnick (Ex. F); Chaplain Doe (Ex. J); Chaplain Paulino Juarez (Ex. U); Esther

---

[4] *See also*, *e.g.*, *Connor B.*, 2011 WL 5513233, at *1, *5 (post *Wal-Mart*; refusing to decertify a class of "all children who are or will be in the custody of the Massachusetts Department of Children and Families ('DCF') as a result of abuse or neglect by their parents," stating "[u]nlike the plaintiffs in *Wal-Mart*, who did not allege any specific, overarching policy of discrimination, Plaintiffs have alleged specific and overarching systemic deficiencies within DCF that place children at risk of harm. . . .  These systemic shortcomings provide the 'glue' that unites Plaintiffs' claims."); *Morrow v. Washington*, 277 F.R.D. 172, 192 (E.D. Tex. 2011) (post-*Wal-Mart*; certifying class where plaintiffs alleged a "city wide policy . . . of targeting racial and ethnic minorities for traffic stops . . .").

[5] *See also Jermyn v. Best Buy Stores, L.P.*, 276 F.R.D. 167, 172-73 (S.D.N.Y. 2011) (denying motion to decertify; plaintiffs alleged "an illegal, centralized corporate policy . . . that ties the class members to each other and to the Defendant . . .").

Lim (Ex. W).

- Exhibits C-E, G-I, K-M, O-S, V, X, Y, AA, BB, FF, GG to the Declaration of Peter Eliasberg ("Eliasberg Decl."), filed concurrently herewith[6] (inmate declarations detailing incidents of deputy-on-inmate violence and threats of violence).

- Declaration of Tom Parker:

  To an astonishing extent, unchecked violence, both deputy-on-inmate and inmate-upon-inmate, permeates Men's Central Jail and Twin Towers Jails, which are components of the Los Angeles County Jails, managed by the Los Angeles County Sheriff's Department under the leadership of Sheriff Leroy Baca. … The evidence I have seen in preparing this report is overwhelming with regard to systemic violence, misfeasance, and malfeasance, including corruption, within the Los Angeles County jails, especially the Men's Central Jail and the Twin Towers facilities. There is a prevalent and long-term pattern of such unchecked violence, and it has become the accepted practice in jail operations, along with systemic institutional actions to cover it up.

Parker Decl. ¶¶ 9, 12; *see also id.* ¶¶ 95-98 (deputy-on-inmate assaults); ¶¶ 122-128 (deputy attacks on inmates witnessed by civilians); ¶¶ 134-142 (existence of deputy gangs); ¶ 179 (summary of findings).

- Declaration of Toni Bair:

  There are far too many reports of staff-on-inmate assaults in LA County Jails to ignore the strong probability that rogue deputies in the LASD jails are routinely assaulting prisoners.

Bair Decl. ¶ 30; *see also id.* ¶¶ 30-35 (deputy attacks on inmates).

---

[6] All witness and inmate declarations are attached as exhibits to the Eliasberg Decl.

CASE NO. CV 12-00428 DDP     -8-     PLAINTIFFS' MPA ISO MOTION FOR CLASS CERTIFICATION

Proving this pattern is relevant to Plaintiffs' Eighth and Fourteenth Amendment causes of action because to prevail on those causes of action they must show that Defendants have not taken reasonable steps to respond to a significant risk of severe injury that Plaintiffs face, and that Defendants are aware of. *See, e.g.*, *Farmer v. Brennan*, 511 U.S. 825, 834, 839 (1994). Plaintiffs will prove the existence of a pattern that threatens them with the risk of severe injury through a significant number of individual incidents of deputy-on-inmate abuse. But, each individual fact situation is equally applicable to every single inmate's claim because they each must prove deliberate indifference. Thus, whether or not there are a sufficient number of individual incidents of abuse to constitute a pattern is a question common to the class as a whole.

### b. Common Contention No. 2.

There is an unlawful pattern and practice at the Jails of Sheriff's deputies enlisting and encouraging inmates to carry out savage attacks against other inmates and promoting prisoner-on-prisoner violence.

### Support for Common Contention No. 2:

- Declaration of Tom Parker:

    Deputies in Men's Central Jail and Twin Towers 1 and 2, routinely instigate inmate-upon-inmate assaults and other violence in order to punish or intimidate other inmates by intentionally leaving cell doors open, or opening both module and cell doors, to allow access to those other inmates carrying out the assaults and violence. The number of reported incidents of this type strongly suggests that this is yet another method by which deputies inflict violence upon inmates without getting their own hands "dirty."

Parker Decl. ¶ 200.

- Exhibits T and EE (inmate declarations detailing incidents of deputies inciting prisoner-on-prisoner attacks).

CASE NO. CV 12-00428 DDP -9- PLAINTIFFS' MPA ISO MOTION FOR CLASS CERTIFICATION

### c.   Common Contention No. 3.

There is an unlawful pattern and practice at the Jails of Sheriff's deputies using violence, and threats of violence, to coerce false statements from inmates to intimidate them and thereby prevent them from making complaints or reporting abuse at these facilities, and of otherwise covering up unlawful violence.

### Support for Common Contention No. 3:

- Declaration of Tom Parker:

I have reviewed approximately ten inmate declarations setting forth incidents of … retaliation for inmates after meeting or talking with the ACLU, or for requesting showers or reporting violent incidents to custody deputies . . . . retaliation has taken the form of beatings – sometimes with flashlights; intimidating and coercive interrogations to pressure inmates into divulging their legally privileged discussions with the ACLU; intimidating inmates who are scheduled for legal meetings with the ACLU, by sending five-man teams of deputies as escorts to the meetings, and then afterwards intensely interrogating the inmates about the content of the conversation with the ACLU; denying television and shower privileges to inmates who have met with the ACLU; planting contraband and then searching and ransacking cells of inmates who have talked to the ACLU; sending inmates to "the hole" for minor infractions and without the requisite due process after they had spoken to the ACLU; denying doctor visits or other medical treatment; physically abusing inmates to force them to disclose the nature of their criminal charge; threatening inmates with beatings by other inmates, and actually arranging beatings by other inmates.

Parker Decl. ¶ 92; *see also id*. ¶ 12 (discussing "systemic institutional actions to cover [violence in the Jails] up"); ¶¶ 99-100 (retaliation against a disabled inmate);

¶¶ 107-108 (discussing falsified jail logs regarding attack on an inmate witnessed by American Civil Liberties Union ("ACLU") monitor); ¶¶ 123-124 (investigative file regarding chaplain who witnessed brutal beating claimed the chaplain was "exaggerating"; Defendant Baca claimed not even to know about the attack witnessed by the chaplain).

- Declaration of Toni Bair:

  Many of the prisoners whose declarations I have reviewed in this matter have stated that while they were being interviewed for the investigation of the Use of Force Incident, one or more deputies who were involved in the incident stood by and observed the prisoner interviews. This practice is unheard of in professionally-conducted investigations and interviews. It is no wonder that the prisoner frequently tells the interviewer that he "fell," causing the injuries to himself, or otherwise alters his story so as not to implicate the officer(s) involved in the incident. The presence during the interview of a deputy who was involved in a Use of Force incident is highly likely to intimidate the prisoner and affect his testimony. Numerous prisoner declarations describe this practice occurring in different housing units and even different jails facilities which leads me to believe this is a common event. … Another enormous problem with the process LASD routinely employs in conducting investigations of Use of Force incidents is the practice of deputy intimidation of prisoners prior to interviews. Numerous prisoners have stated that deputies told them they would suffer the consequences if they did not claim self-infliction or otherwise protect the deputies. The fear of further assaults prevented some of these prisoners from telling management what actually took place.

CASE NO. CV 12-00428 DDP                    -11-                    PLAINTIFFS' MPA ISO MOTION FOR
                                                                    CLASS CERTIFICATION

Bair Decl. ¶¶ 16-17 (citations omitted); *see also id*. ¶¶ 11-15 (improprieties in interviews following use of force incidents).

- Budnick Decl. (Ex. F) ¶ 19 (chaplains told Mr. Budnick they were "scared to report any of the incidents of abuse they had seen because they were afraid to lose their jobs"); ¶ 22 (failure to investigate attack witnessed by Mr. Budnick).

- Chaplain Doe Decl. (Ex. J) ¶¶ 9-11 (deputies beating an inmate told Chaplain Doe to "Go inside!" rather than witness the attack); ¶ 15 (failure to investigate attack witnessed by Chaplain Doe; "It was almost as if no one cared to find out the truth of what happened."); *id*. ¶¶ 46, 50 (deputies throw out complaint forms submitted by inmates; blank forms are often unavailable).

- Chaplain Juarez Decl. (Ex. U) ¶¶ 23-51 (describing "sham investigation" of savage beating witnessed by Chaplain Juarez); ¶ 28 (Chaplain Juarez states that after he witnessed the beating, "over the next few days deputies looked at me in a manner that made me feel threatened.  Some said things like 'Rat' and 'Motherfucker' after I had passed by, but never to my face.").

- Lim Decl. (Ex. W) ¶¶ 34-43 (jail log book falsified beating witnessed by Ms. Lim).

- Mr. O Decl. (Ex. D) ¶¶ 6, 9 (deputy angrily pushed toiletries onto inmate after inmate complained to the ACLU about lack of medical treatment; deputy hit inmate's back, near wounds inmate had already suffered); Meyers Decl. (Ex. Z) ¶¶ 24-26; Sadri Decl. (Ex. DD) ¶¶ 20-25; Saul Decl. (Ex. EE) ¶¶ 8-9.; Complaint ¶¶ 162-70 (summarizing prisoner declarations regarding threats of violence designed to deter complaints and coerce false statements).

### d.    Common Contention No. 4.

Sheriff Baca, Undersheriff Tanaka, Chief Yim,[7] and other Los Angeles County Sheriff's Department ("LASD") supervisors and command staff have been

---

[7] Chief Yim has replaced Chief Burns as head of Custody Operations upon Chief Burns' retirement.  Because this is a suit for injunctive relief, and Defendants are sued only in their official capacities, Chief Yim automatically replaces Chief Burns

aware, and are currently aware, of the use of excessive force by correctional officers and the enlisting and encouraging by correctional officers of inmates to carry out savage attacks in the jails.

## Support for Common Contention No. 4:

- Declaration of Thomas Parker:

Sheriff Baca and his top management team [at] LASD have essentially abdicated their responsibilities to provide a safe, secure, and corruption-free incarceration environment within the Los Angeles County Jail System. This has resulted in a pattern of countless inmates' suffering severe injuries, maiming, and death, some caused by fellow inmates, but most often at the hands of, or with the acquiescence or assistance of, the deputy sheriffs who are their keepers.

….

To date, neither the LASD, Sheriff Baca, nor any of his top subordinates has been held accountable for such failures. . . . It is clear that LASD has been, and still is, incapable of investigating itself with regard to the clear evidence of jail violence and other misfeasance and malfeasance.

….

To an astonishing extent, unchecked violence, both deputy-on-inmate and inmate-upon-inmate, permeates Men's Central Jail and Twin Towers jails. . . .[8] The evidence I have seen in preparing this report is overwhelming with regard to systemic violence, misfeasance, and malfeasance including corruption. There is a prevalent and long-term

---

as a Defendant. *See* Fed. R. Civ. P. 25(d).

[8] The existence of widespread abuse by deputies is a legitimate basis for a finder of fact to infer that supervisory personnel are aware of a significant risk of severe injury to inmates. *See Farmer*, 511 U.S. at 842.

CASE NO. CV 12-00428 DDP     -13-     PLAINTIFFS' MPA ISO MOTION FOR CLASS CERTIFICATION

pattern of such unchecked violence, and it has become the accepted practice in jail operations, along with systemic institutional actions to cover it up.

….

Sheriff Baca and his top management team . . . have essentially abdicated their responsibilities to provide a safe, secure, and corruption-free incarceration environment within the Los Angeles County Jail System.  This has resulted in a pattern of countless inmates suffering severe injuries, maiming, and death, some caused by fellow inmates, but most often at the hands of, or with the acquiescence or assistance of, the deputy sheriffs who are their keepers.

Parker Decl. ¶¶ 10, 21, 179, 181; *see also id.* ¶¶ 46-75 (discussing findings, by entities including the Kolts Commission, of widespread LASD violence); ¶ 142 ("[I]t would appear that, from Baca on down through the command and supervisory ranks, the 'gang-like' sub-groups and their unprofessional and often violent conduct, including bullying and attacks on other deputies, are at best tolerated, and at worst, condoned."); ¶¶ 156-157 (LASD officials publicly and unprofessionally lambasted a civilian ACLU witness who brought a savage deputy beating to light).

- Declaration of Toni Bair:

When pervasive, long-standing systemic abuses of this kind exist, it indicates a failure of leadership at the top.  This kind of systemic abuse does not occur when the head administrator – who in this case is Sheriff Baca – publicly and professionally declares that the staff-on-prisoner assaults will STOP and that he will no longer tolerate [u]nnecessary Use of Force on prisoners. … It is my expert opinion that the myriad accounts of staff-on-prisoner assaults that have been reported and documented as well as the numerous prisoner hospital

CASE NO. CV 12-00428 DDP                -14-                PLAINTIFFS' MPA ISO MOTION FOR CLASS CERTIFICATION

visits over the years constitute *prima facie* evidence of systemic staff-on-prisoner abuse by rogue deputies of the LASD jail systems. … In my professional opinion, Sheriff Baca is either unwilling or unable to control the systemic abuse that permeates his LA County Jail system.

Bair Decl. ¶¶ 37, 40, 43; *see also id.* ¶¶ 19-25 (discussing LASD's failure to investigate brutal violence witnessed by civilians).

- Numerous accounts in respected media outlets regarding the longstanding knowledge of Defendants of the unchecked violence, and their refusal to take the problem seriously. Complaint ¶¶ 194-203 (quoting and citing reports). Statements by Sheriff Baca himself acknowledging that he is now aware of problems with the use of excessive force in the jails. Complaint ¶¶ 195-96.

Just as with the other contentions above, the facts necessary to prove Defendants' knowledge are common to all members of the class.

### e.   Common Contention No. 5.

Finally, the Defendants have been and continue to be deliberately indifferent to the use of excessive force by correctional officers and the enlisting and encouraging of inmates to carry out savage attacks in the Jails. They acquiesce in and condone this conduct by failing to promulgate adequate policies and training on the use of force. They also fail to put in place adequate policies and practices governing the review and investigation of use of force; they fail to punish deputies who engage in it; and they fail to take reasonable measures to end the culture of deputy violence that fosters this conduct, by protecting from criminal prosecution deputies who engage in such conduct, and by otherwise rewarding deputies who engage in such conduct.

### Support for Common Contention No. 5:

- Declaration of Steve J. Martin:

[Defendants' use of force policies are] disjointed and unstructured, and as a consequence, fail to create a clear and comprehensive

CASE NO. CV 12-00428 DDP                    -15-                    PLAINTIFFS' MPA ISO MOTION FOR CLASS CERTIFICATION

approach to manage staff use of force in the LA County jails. A non-inclusive list of deficiencies are as follows: no statement of purpose, no expected outcomes, no definitions, no prohibitions, no statement of principles, no guidance on proportionality between resistance/response, no training requirements, no guidance on force in special circumstances, no identification of authorized weapons/devices, no identification of unauthorized weapons/tactics, no distinction between calculated/immediate force, no guidance on videotaping and review, no requirement for an injury report on every use of force incident, no guidance on use of restraints, and no administrative review/referral process.

Martin Decl. ¶ 8.

• Reports by the Department's own Office of Independent Review about Defendants' failure to address the problem of rampant deputy violence. Complaint ¶¶ 45, 182 (quoting and citing the reports).

The failure to put in place adequate policies on the use of force has enormous ripple effects that affect the class as a whole. "[W]here a correctional institution such as the Los Angeles County Jails has inadequate use of force policies, it is highly likely that training on use of force, supervision of planned force incidents, review of use of force incidents, and the responses to inappropriate use of force will all be deficient." Martin Decl. ¶13. "And, it is also highly likely that those deficiencies will subject inmates to needless and significant risks of serious harm." *Id.*

Here, too, the facts that Plaintiffs will rely on to demonstrate the inadequacy of Defendants' response to the pattern of deputy abuse are common to the class as a whole. In other words, any individual Plaintiff who sought injunctive relief on a deliberate indifference claim against Defendants would rely on precisely the same facts as will the proposed class.

These common contentions are more than sufficient to satisfy Rule 23(a)(2). For example, Plaintiffs' allegations that Defendants' systemic failure to put in place adequate policies and practices on use of force, training on use of force, review of use of force, and appropriate discipline of deputies who have used force improperly constitutes deliberate indifference to the substantial risk that the class will be subject to improper use of force, is common to the class as a whole. *Baby Neal v. Casey*, 43 F.3d 48, 61-62 (3d Cir. 1994) (Becker, J.) (reversing denial of class certification in civil rights action by children in custody of city department of human services ("DHS"); "[T]his case clearly presents common legal issues . . . . The children challenge DHS's pattern of conduct, which is subjecting them all to violations of their statutory and constitutional rights.").

Differences among class members with respect to the specific uses of force against them do not undermine that commonality. That is true because, as explained above, Plaintiffs will rely on numerous individual incidents of violence not to prove their own individual entitlement to monetary relief, but to prove that there is a pattern of deputy-on-inmate abuse in the Jails that shows that there is a significant risk of severe injury to all inmates in Men's Central Jail, Twin Towers and IRC. The facts of the individual incidents are equally applicable to the deliberate indifference claim of *all* members of the proposed class. Thus, in cases like this where Plaintiffs claim that system-wide failures violate their constitutional rights, commonality is satisfied. *Id.* at 61 ("[T]he putative class members in this case share the common legal claim that [Defendants'] systemic deficiencies result in widespread violations of their statutory and constitutional rights, irrespective of their varying individual needs and complaints."). This is especially so, in the Rule 23(b)(2) setting.

For example, that class members in this case have been beaten and abused through various techniques is immaterial to commonality. *Baby Neal*, 43 F.3d at 57, 61 ("[Subsection] (b)(2) classes have been certified in a legion of civil rights

cases where commonality findings were based primarily on the fact that the defendant's conduct is central to the claims of all class members irrespective of their individual circumstances and the disparate effects of their conduct"; "[I]t does not matter here that the children suffer in varying ways from the DHS's violation of its statutory mandates."); *Walters*, 145 F.3d at 1046 (affirming certification of a class of undocumented immigrants in a case challenging inadequate notice of deportation procedures, despite the government's attempt to negate commonality by "pointing to minor variations in procedure among branch offices and individual INS agents . . .").

Nor is it material that not every inmate has been subjected to physical abuse. In the Rule 26(b)(2) context, commonality does not require "that every member of the class has actually been injured by the opposing party." *Perez-Funez v. District Director, I.N.S.*, 611 F. Supp. 990, 998 (C.D. Cal. 1984); *see also Walters*, 145 F.3d at 1047 ("Even if some class members have not been injured by the challenged practice, a class may nevertheless be appropriate."). *See, e.g.*, *Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 360-61, 371 (C.D. Cal. 1982) (class of immigrants subjected to "a variety of techniques used by INS agents to obtain consent to voluntary departure [from the United States], ranging from subtle persuasion to outright threats and misrepresentations," were "not required to show that these procedures and practices have been employed with respect to each class member.").

### 3. Typicality is Satisfied: The Named Plaintiffs' Claims are Representative of Those of the Class at Large.

To meet the typicality requirement, the claims of the named Plaintiffs must be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The "typicality" requirement is satisfied when the representative's injuries arise from the same practice affecting the rest of the class, even if factual differences exist. *Rodriguez*, 591 F.3d at 1124 ("Though Petitioner and some of the other members of the proposed class . . . do not raise identical claims, they all . . . raise[d] similar

constitutionally-based arguments and are alleged victims of the same practice . . .");
*Armstrong*, 275 F.3d at 869 ("We do not insist that the named plaintiffs' injuries be identical with those of the other class members . . ."); *California Rural Legal Assistance, Inc. v. Legal Services Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990) (Rule 23 "does not require the named plaintiffs to be identically situated with all other class members"; holding that a legal services program and two labor unions qualify as class members in lawsuit to enjoin promulgation of regulation affecting the provision of legal services to permanent resident aliens), *amended*, 937 F.2d 465 (9th Cir. 1991); *Baby Neal*, 43 F.3d at 58 ("[C]ases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims.").

      In this case, the claims of the Plaintiffs are typical of the class as a whole. Every inmate in the Jails is at risk of being injured as a result of the unlawful practices that give rise to unrestrained violence at these facilities.  Both of the class representatives were subjected to a brutal beating at Men's Central Jail. Declaration of Alex Rosas (Ex. CC); Declaration of Jonathan Goodwin (Ex. N). *See Inmates of the Attica Corr. Facility v. Rockefeller*, 453 F.2d 12, 24-25 (2d Cir. 1971) (finding "typicality" in lawsuit challenging excessive force by guards, despite individual factual differences); *Ingles v. City of New York*, No. 01 Civ. 8279 (DC), 2003 WL 402565, at *5 (S.D.N.Y. Feb. 20, 2003) (same); *Anderson v. Garner*, 22 F. Supp. 2d 1379, 1385 (N.D. Ga. 1997) (finding typicality in prison excessive force case even though "when compared to the Plaintiffs' claims, the unnamed class members may have suffered different injuries under different circumstances . . ."); *Bradley v. Harrelson*, 151 F.R.D. 422, 426 (M.D. Ala. 1993) ("[T]here is no requirement that every class member be affected by the [prison] practice or condition in the same way.").

**4.  Adequacy is Satisfied:  The Named Plaintiffs Will Fairly and Adequately Protect the Interests of the Class.**

The final requirement of Rule 23(a) is that the representative parties will fairly and adequately represent the interests of the class.  Fed. R. Civ. P. 23(a)(4).  Satisfying this requirement depends on "'the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive.'"  *Walters*, 145 F.3d at 1046 (quoting *Crawford v. Honig*, 37 F.3d 485, 487 (9th Cir. 1994)).

**a.  Absence of Conflict within the Class.**

The named Plaintiffs and the class members raise the same claims, giving rise to common questions of fact and law.  The class representatives do not have interests antagonistic to the interests of the class.  Both representatives and class members have a common interest in ensuring that inmates at Men's Central Jail, Twin Towers and IRC are protected from savage violence perpetrated and encouraged by deputies and condoned and covered up by command staff.  There is no suggestion of any collusion between named Plaintiffs and any of the Defendants.  Moreover, no conflicts exist that could hinder the named Plaintiffs' ability to pursue this lawsuit vigorously on behalf of the class.  The named Plaintiffs will fairly and adequately protect the interests of the class.

**b.  Adequacy of Representation.**

The adequacy of representation prong requires the named plaintiffs' attorneys to be experienced and qualified.  *Perez-Funez*, 611 F.Supp. at 997 (specifically recognizing the "qualified and experienced counsel from such organizations as . . . the American Civil Liberties Union"); *Walters*, 145 F. 3d at 1046 (attorneys for class were "well-qualified").

Plaintiffs' counsel are qualified, experienced, and able to conduct the proposed litigation.  Plaintiffs are represented by attorneys from the National Prison

CASE NO. CV 12-00428 DDP  -20-

Project of the American Civil Liberties Union Foundation ("ACLU-NPP"), the American Civil Liberties Union Foundation of Southern California ("ACLU-SC"), and Paul Hastings LLP.

Founded as a project of the American Civil Liberties Union in 1972, the ACLU-NPP has decades of experience in complex prisoner rights class action suits and has represented prisoners in five cases before the U.S. Supreme Court. Margaret Winter, the co-lead counsel for Plaintiffs in this case is the Associate Director of the ACLU-NPP.  She has argued a prisoners' rights case before the U.S. Supreme Court; has served as class counsel in prisoners' rights cases in trial and appellate courts around the nation, including the Ninth Circuit; and since 2007 has been co-lead class counsel for all inmates of the Los Angeles County Jails in *Rutherford v. Baca*, No. 75-04111 (C.D. Cal.), in connection with issues concerning over-crowding.  Declaration of Margaret Winter ("Winter Decl.") ¶ 5.  Peter Eliasberg, co-lead counsel with Ms. Winter, is the Legal Director of the ACLU-SC and has been lead or co-lead counsel in numerous federal civil rights class actions over the years.  He is also an experienced federal court litigator who has been lead counsel and argued cases in this Court, the Ninth Circuit Court of Appeals, as well as the California and United States Supreme Courts.  Eliasberg Decl. ¶ 5.

Paul Hastings LLP is a law firm with offices in Los Angeles that has extensive experience in successful civil rights litigation, including class action lawsuits against state and local governments and the LASD, and recent success in the United States Supreme Court.  Declaration of John Durrant ("Durrant Decl.") ¶¶ 4-5.

**B.** **Plaintiffs Satisfy Fed. R. Civ. P. 23(b)(2):  This Case Seeks Declaratory and Injunctive Relief from Policies and Practices that Place the Entire Proposed Class at Risk of Brutal Violence.**

In addition to satisfying Rule 23(a), a prospective class action must meet the requirements of one of the provisions of Rule 23(b).  This case falls within Rule

23(b)(2), which authorizes certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). As the Ninth Circuit has explained, Section 23(b)(2) "was adopted in order to permit the prosecution of civil rights actions." *Walters*, 145 F.3d at 1047; *see also Baby Neal*, 43 F.3d at 58 (noting that subsection (b)(2) "is almost automatically satisfied in actions primarily seeking injunctive relief"); *Bradley*, 151 F.R.D. at 427 (stating that subsection (b)(2) "is particularly applicable to suits such as the one *sub judice* which involve conditions of confinement in a correctional institution.").

Whether a case may be certified under Rule 23(b)(2) depends on "whether class members seek uniform relief from a practice applicable to all of them." *Rodriguez*, 591 F.3d at 1125. *See Walters*, 145 F.3d at 1047 (subsection (b)(2) is satisfied when "class members complain of a pattern or practice that is generally applicable to the class as a whole."). That different class members may have suffered different injuries – or no injury at all – does not stand in the way of certification. *Rodriguez*, 591 F.3d at 1125 ("The fact that some class members may have suffered no injury or different injuries from the challenged practice does not prevent the class from meeting the requirements of Rule 23(b)(2)."); *Walters*, 145 F.3d at 1047 ("We note that with respect to 23(b)(2) in particular, the government's dogged focus on the factual differences among the class members appears to demonstrate a fundamental misunderstanding of the rule. . . . It is sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole.").

Here, the practice of high-level officials turning a blind eye to brutality inflicted on class members and failing to adopt the policies and practices necessary to ensure that there is not a pattern of excessive force in the Jails places all class members at risk of grave physical harm. Numerous similar cases involving civil

rights claims by incarcerated persons have proceeded as class actions in the Ninth Circuit. *See*, *e.g.*, *Hoptowit v. Ray*, 682 F.2d 1237, 1249 (9th Cir. 1982) (class of all prisoners in Washington State Penitentiary challenging, *inter alia*, "a pattern and practice of brutality and harassment by the prison guards"; "[Violence] was encouraged by peer pressure among the guards and facilitated by indifference on the part of the administration."), *abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995); *Mayweathers v. Newland*, 258 F.3d 930, 933-34 (9th Cir. 2001) (class action by Muslim inmates at California state prison); *Toussaint v. Yockey*, 722 F.2d 1490, 1491 (9th Cir. 1984) ("class of approximately 2,000 prisoners confined in administrative segregation in four California State Prisons"); *Leeds*, 630 F.2d at 675 (class action on behalf of inmates in county jail); *Inmates of San Diego County Jail in Cell Block 3B*, 528 F.2d at 956-57 (reversing denial of class certification for detainees in a county jail cellblock). *See also Brown v. Plata*, 131 S. Ct. 1910 (2011) (affirming issuance of class-wide injunctive relief to alleviate prison overcrowding and inadequate medical and mental health care). Moreover, all class members seek uniform relief – the adoption by Defendants of policies and practices, such as reasonable policies on the use of force – that will inure to the benefit of all class members.

## III.   THE COURT SHOULD DESIGNATE PLAINTIFFS' COUNSEL AS CLASS COUNSEL UNDER RULE 23(g)(1).

Federal Rule of Civil Procedure 23(g) requires that the district court appoint class counsel for any class that is certified. Fed. R. Civ. P. 23(g)(1). The attorneys appointed to serve as class counsel must "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). The appointed class counsel must be listed in the Court's class certification order. Fed. R. Civ. P. 23(c)(1)(B).

The Rule identifies four factors that the Court must consider in appointing class counsel:  (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions,

PLAINTIFFS' MPA ISO MOTION FOR CLASS CERTIFICATION

other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The ACLU-NPP, the ACLU-SC and the law firm of Paul Hastings LLP, which have agreed to act jointly as class counsel, if the Court so designates them, *see* Winter Decl. ¶7; Eliasberg Decl. ¶7; Durrant Decl. ¶ 7, satisfy each of these requirements.

First, Plaintiffs' counsel have worked for many months in identifying and investigating the claims in the action, through interviews with the named Plaintiffs, with scores of other putative class members and with other potential fact witnesses, consultation with experts, review of court records, and other extensive factual and legal research. *Id.* With regard to the second and third factors, and as is set forth in the Winter, Eliasberg, and Durrant Declarations, Plaintiffs' counsel have significant experience in handling class actions as well as other complex litigation, including the very kind of matters asserted in this case, namely, civil rights actions on behalf of institutionalized persons; and they are knowledgeable with regard to the applicable law. *See* Winter Decl. ¶ 5; Eliasberg Decl. ¶¶ 5; Durrant Decl. ¶¶ 4-5.

Finally, Plaintiffs' litigation team includes several highly experienced lawyers who have dedicated and will continue to commit major staffing and material resources to the representation of this class. Winter Decl. ¶¶ 5-6; Eliasberg Decl. ¶¶ 5-6; Durrant Decl. ¶¶ 4-6. Plaintiffs' counsel have built a strong, effective working relationship with the named Plaintiffs and several other members of the proposed class. Eliasberg Decl. ¶ 4. Counsel are prepared to retain highly qualified experts and to undertake the other necessary litigation expenses on behalf of the Plaintiffs and the proposed class. Durrant Decl. ¶ 6. In sum, Plaintiffs' counsel fully satisfy the criteria for class counsel set forth in Rule 23(g) and Plaintiffs respectfully request that the Court appoint them as such in its class certification order.

## IV.    CONCLUSION.

For the foregoing reasons, Plaintiffs request that this Court certify a class consisting of all inmates confined at Men's Central Jail, Twin Towers, and the IRC, now and in the future, and designate ACLU-NPP, the ACLU-NP, and Paul Hastings LLP as counsel for the class.


RESPECTFULLY SUBMITTED:

DATED:  February , 2012          ACLU FOUNDATION OF SOUTHERN
                                 CALIFORNIA

                                 By:  /S/ - Peter J. Eliasberg
                                           PETER J. ELIASBERG

                                 Attorneys for Plaintiffs


DATED:  February , 2012          NATIONAL PRISON PROJECT OF THE
                                 AMERICAN CIVIL LIBERTIES UNION
                                 FOUNDATION

                                 By:  /S/ - Margaret Winter
                                           MARGARET WINTER

                                 Attorneys for Plaintiffs


DATED:  February , 2012          PAUL HASTINGS LLP

                                 By:  /S/ - John S. Durrant
                                           JOHN S. DURRANT

                                 Attorneys for Plaintiffs


LEGAL_US_W # 70378562.15

CASE NO. CV 12-00428 DDP            -25-          PLAINTIFFS' MPA ISO MOTION FOR
                                                 CLASS CERTIFICATION