PAUL B. BEACH, State Bar No. 166265
pbeach@lbaclaw.com
JUSTIN W. CLARK, State Bar No. 235477
jclark@lbaclaw.com
LAWRENCE BEACH ALLEN & CHOI, PC
100 West Broadway, Suite 1200
Glendale, California  91210-1219
Telephone No. (818) 545-1925
Facsimile No. (818) 545-1937

Attorneys for Defendant
Sheriff Leroy D. Baca, in his official capacity only

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX ROSAS and JONATHAN GOODWIN, on their own behalf and on behalf of those similarly situated,<br><br>          Plaintiffs,<br><br>     vs.<br><br>LEROY BACA, Sheriff of Los Angeles County Jails,<br><br>          Defendant. | ) Case No. CV 12-00428 DDP (SHx)<br>)<br>) Honorable Dean D. Pregerson<br>)<br>) **DEFENDANT'S NOTICE OF MOTION AND MOTION TO REMOVE THE ACLU AS COUNSEL FOR PLAINTIFFS DUE TO THEIR VIOLATION OF A STIPULATION AND COURT ORDER; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF JUSTIN W. CLARK IN SUPPORT THEREOF**<br>)<br>) *[[Proposed] Order filed concurrently herewith]*<br>)<br>) Date:   April 23, 2012<br>) Time:   10:00 a.m.<br>) Crtm:   3 |

TO THE HONORABLE COURT, ALL PARTIES, AND TO THEIR

COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on April 23, 2012, at 10:00 a.m., or as soon

thereafter as the matter may be heard in Courtroom 3 before the Honorable Dean

D. Pregerson, of the United States District Court for the Central District of

California, located at 312 N. Spring Street, Los Angeles, CA 90012, Defendant

1

ROSAS\ Mtn to Remove the ACLU

Sheriff Leroy Baca, in his official capacity only ("Defendant") will and hereby does move this Court do remove the American Civil Liberties Union of Southern California ("ACLU"), and any counsel for Plaintiffs with whom the ACLU has shared information, based on the ACLU's violation of the 1989 Stipulation and Order entered in *Rutherford v. Baca*, U.S.D.C. Case No. CV 75 – 04111 DDP, which expressly prohibits the ACLU from using, or making available for use, "statements made during inmate interviews or discussions with Sheriff's staff…"

This Motion will be based on this Notice of Motion, the attached Memorandum of Points and Authorities, the Declaration of Justin W. Clark and exhibits thereto filed concurrently herewith, the Court's file in this matter, and such further oral and documentary evidence as the Court may consider at or prior to the hearing on this matter.

This Motion is made following an unsuccessful good faith attempt to informally resolve issues pursuant to Local Rule 7-3.  (*See*, Declaration of Justin W. Clark ["Clark Decl."], ¶ 2.)

Dated:  March 26, 2012                  LAWRENCE BEACH ALLEN & CHOI, PC


By _____/s/  Justin W. Clark_____
        Paul B. Beach
        Justin W. Clark
        Attorneys for Defendant
        Sheriff Leroy D. Baca, in his official
        capacity only

2

ROSAS\ Mtn to Remove the ACLU

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES........................................1

I.    INTRODUCTION................................................................................1

II.   SUMMARY OF THE INTERVIEW PROTECTIVE ORDER....................2

III.  EVIDENCE OF THE ACLU'S VIOLATION OF THE INTERVIEW PROTECTIVE ORDER..........................................................2

IV.   THE COURT HAS THE AUTHORITY TO REMOVE THE ACLU AND ALL COUNSEL WITH WHOM THEY HAVE SHARED INFORMATION BASED ON THEIR VIOLATION OF THE INTERVIEW PROTECTIVE ORDER.......................................................6

V.    THE ACLU SHOULD BE REMOVED AS COUNSEL FOR PLAINTIFFS TO MAINTAIN THE INTEGRITY OF THIS JUDICIAL PROCESS.............................................................................7

VI.   IF THE INTERVIEW PROTECTIVE ORDER IS NOT ENFORCED, THE LASD WILL BE SEVERELY PREJUDICED.............8

VII.  THE ACLU'S ANTICIPATED ARGUMENTS ARE UNTENABLE AND WITHOUT MERIT. ....................................................................9

    A.    Any Contention By The ACLU That The Interview Protective Order Unlawfully Restricts Their Right To Practice Law Is Flawed Given The Wide Range Of Other Restrictions On The Practice Of Law. .......................................................................9

    B.    The ACLU Must Comply With the Interview Protective Order, Even Assuming Arguendo The Order Is Unconstitutional. ................................................................11

    C.    The ACLU Has Voluntarily Waived Its Right To Pursue Non-Rutherford Litigation With Information Obtained In Connection With the Interview Protective Order. ..........................12

    D.    There Is No Unqualified Right Of Plaintiffs' Choice Of Counsel That Would Override The Terms Of The Interview Protective Order. ..........................................................13

VIII. CONCLUSION. .................................................................................14

DECLARATION OF JUSTIN W. CLARK......................................................16

i

ROSAS\ Mtn to Remove the ACLU

**TABLE OF AUTHORITIES**

**Cases**

*A & A Sign Company, Inc. v. Maughan*,
  419 F. 2d 1152 (9th Cir. 1969)........................................................................8

*Adams v. Aerojet-General Corp.*,
  86 Cal. App. 4th 1324 (2001)........................................................................13

*Advanced Mfg. Technologies, Inc. v. Motorola, Inc.*,
  2002 WL 1446953 (D. Ariz. July 2, 2002). ...................................................14

*Anderson v. Dunn*,
  6 Wheat. 204, 227, 5 L.Ed. 242 (1821) ..........................................................6

*Chambers v. NASCO, Inc.*,
  501 U.S. 32, 111 S. Ct. 2123 (1991) ...............................................................6

*Chapman v. Pacific Tel. and Tel. Co.*,
  613 F. 2d 193 (9th Cir. 1979)........................................................................11

*Charter Communications, Inc. v. County of Santa Cruz*,
  304 F. 3d 927, n.9 (9th Cir. 2002)..................................................................12

*Comden v. Superior Court*,
  20 Cal. 3d 906 (1978)....................................................................................14

*Emerick & Duncan Co. v. Hascy*,
  146 F. 688 (9th Cir. 1906)...............................................................................8

*Ex parte Robinson*,
  19 Wall. 505, 22 L.Ed. 205 (1874)..................................................................6

*Firestone Tire & Rubber Co. v. Risjord*,
  449 U.S. 368, n.13, 101 S. Ct. 669 (1981) ....................................................10

*In re Airport Car Rental Antitrust Litigation*,
  470 F. Supp. 495 (N.D. Cal. 1979).................................................................10

*In re County of Los Angeles*,
  223 F.3d 990 (9th Cir. 2000) .........................................................................13

*In re County of Orange*,
  245 B.R. 138 (C.D. Cal. 1997)......................................................................12

*Leonard v. Clark*,
  12 F. 3d 885 (9th Cir. 1993)..........................................................................12

*Link v. Wabash R. Co.*,
  370 U.S. 626, 82 S.Ct. 1386 (1962) ................................................................7

*Maness v. Meyers*,
  419 U.S. 449, 95 S.Ct. 584 (1975) ................................................................11

ii

*Manning v. Waring, Cox, James, Sklar & Allen*,
    849 F. 2d 222 (6th Cir. 1988)..................................................................14

*Marshall v. Barlow's, Inc.*,
    436 U.S. 307, 98 S.Ct. 1816 (1978) ........................................................11

*McMillian v. Shadow Ridge at Oak Park Homeowner's Ass'n*,
    165 Cal.App.4th 960 (2008)....................................................................13

*People ex rel. Dep't of Corps. v. Speedee Oil Change Sys.,
    Inc.*, 20 Cal. 4th 1135 (1999)..................................................................13

*Roadway Express, Inc. v. Piper*,
    447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980) ...........................6

*S.E.C. v. TheStreet.Com*,
    273 F.3d 222 (2nd Cir. 2001) ...................................................................8

*Sheller v. Superior Court*,
    158 Cal. App. 4th  1697 (2008)...............................................................13

*Trumbauer v. Group Health Co-op. of Puget Sound*,
    635 F. Supp. 543 (W.D. Wash. 1986).....................................................12

*United States v. Hudson*,
    7 Cranch 32, 3 L.Ed. 259 (1812) ..............................................................6

*Woods v. Superior Court*,
    149 Cal. App. 3d 931 (1983)...................................................................10

**Rule**

Cal. R. Prof. Conduct 3-700(B)(2) ..................................................................10

**Statute**

Cal. Bus. & Prof. Code § 6068(e)(1).................................................................10

ROSAS\ Mtn to Remove the ACLU

### MEMORANDUM  OF POINTS AND AUTHORITIES

## I.    Introduction

For more than 30 years, pursuant to the agreement of the parties and orders of the Court, the American Civil Liberties Union of Southern California ("ACLU") has monitored certain conditions in the Los Angeles County jails as a result of a Judgment for injunctive relief entered in *Rutherford v. Baca*, U.S.D.C. Case No. CV 75 – 04111 DDP.  As the jail monitor, the ACLU has enjoyed unprecedented and virtually unrestricted access to County jail staff and facilities, which has included almost daily communications with Sheriff's Department personnel and access to inmates (and documents about said inmates) that no other attorneys have.  Given that the ACLU's monitoring activities necessarily involve interviewing inmates and LASD personnel (usually in the absence of legal counsel), in 1989, the ACLU and the Sheriff's Department stipulated to, and the Court approved, an order "that none of the statements made during inmate interviews or in discussions with Sheriff's staff will be used or made available for use in other litigation or for purposes other than the present litigation except by written stipulation or by order of this Court."  (*See*, Declaration of Justin W. Clark ["Clark Decl."], ¶ 3 - Exhibit "A" – "Interview Protective Order".)  This agreement has been the foundation of the Sheriff's Department and the ACLU's relationship, as it allows for open lines of communication with the intent of making positive changes in the conditions for inmates, without almost constant involvement of the Court.  Over the past 23 years, this Order has never been modified or terminated.

By filing this case, which is admittedly based on inmate statements obtained by the ACLU and the ACLU's institutional knowledge about the operation of the jails (obtained through decades of interviewing Sheriff's Department personnel and simply being the jail monitor), the ACLU has clearly, directly, and willfully violated the Interview Protective Order.  Because of this

1

ROSAS\ Mtn to Remove the ACLU

egregious violation, as set forth below, the ACLU should be removed as counsel herein along with all other counsel for Plaintiffs with whom the ACLU has shared information that they have obtained through their monitoring activities.

## II.    Summary Of The Interview Protective Order.

The Interview Protective Order provides as follows:

"To measure compliance with the Court's Orders in this case and to develop appropriate methods to minimize the impact of jail overcrowding, the counsel for the parties have found it useful to regularly conduct joint and separate interviews with inmates throughout the jail system and to permit discussions between counsel for the plaintiff and Sheriff's staff, frequently without counsel for the Sheriff being present".

(*See*, Clark Decl., ¶ 3; Exhibit "A".)

For these interviews to be effective, the parties agreed that they "must be candid and open." (*Id*.) The parties further agreed that "[t]he Sheriff's staff must be confident that they can state facts and their views openly and candidly *without concern that their statements will be used in other litigation*." (emphasis added) (*Id*.) To further these goals, the parties further agreed that "*none of the statements made during inmate interviews or discussions with Sheriff's staff will be used or made available for use in other litigation or for purposes other than the present litigation except by written stipulation or by order of this Court."* (emphasis added*)* (Id.) This Order has never been modified or vacated.

## III.    Evidence Of The ACLU's Violation Of The Interview Protective Order.

For more than 20 years, the Interview Protective Order has permitted the ACLU to obtain an understanding, unrivaled amongst law firms, of the County jails. This knowledge has come from virtually unrestricted access to inmates in the jails, as well as the ability to speak candidly with Sheriff's Department

2

ROSAS\ Mtn to Remove the ACLU

personnel without the presence of counsel.  The County jail system is extremely large and very complex, and understanding its operation takes more than reviewing documents and observation.  Instead, speaking with Sheriff's Department personnel is the only real way to understand the various components of the system and how they function together.  The Interview Protective Order facilitated the ACLU's work as jail monitor and, from time to time, has contributed to positive changes in the custody environment.  The reality is that, through regular jail visits, during which the ACLU lawyers interview inmates and speak with unrepresented jail personnel, the ACLU has accumulated a working knowledge of virtually every facet of County jail operations.

The ACLU's access to the jails, and Sheriff's Department's waiver of its rights to have counsel present when its personnel are speaking with the ACLU, was agreed to by the Sheriff's Department in exchange for the ACLU's written agreement (and the Court's  approval) that ***"none of the statements made during inmate interviews or discussions with Sheriff's staff will be used or made available for use in other litigation or for purposes other than the present litigation except by written stipulation or by order of this Court."***

As set forth below, the Complaint in the instant action contains specific allegations that demonstrate the ACLU's violation of the Interview Protective Order.  By this lawsuit, and in direct violation of the Interview Protective Order, the ACLU is attempting to use the information that they obtained as a result of the Interview Protective Order against the Sheriff's Department.  The Court should enforce the parties' agreement, protect the integrity of its Order, and not allow the ACLU to act as counsel in this case in light of their clear agreement that they would not do so.

Specific evidence of the ACLU's violations of the Interview Protective Order is without limitation, as follows:

3

ROSAS\ Mtn to Remove the ACLU

• Identification of Plaintiffs Rosas and Goodwin and the substance of their allegations.  Both Plaintiffs are currently incarcerated and would not have had contact with the ACLU but for the ACLU's role as jail monitor.  The ACLU interviewed inmates Rosas and Goodwin and used their statements, along with the statements of many other inmates, as the basis for this lawsuit.  (*See*, Complaint, ¶¶ 15, 222 – 236.)

• Reference to report by Dr. Terry Kupers, who was permitted access to County jail facilities solely as a result of  the ACLU's jail monitoring role. (*See*, Complaint, ¶ 36.)  Dr. Kupers issued a "report" in *Rutherford* referenced in the Complaint here, in which Dr. Kupers states "Multiple prisoners have told me about abuse they have undergone or witnessed, and most say it is disproportionately directed at prisoners with serious mental illness."  (*Id*.)  **These are statements, by inmates, solicited and obtained by the ACLU's expert in *Rutherford*, that are being used in this litigation;**

• Allegations based on ACLU Reports on [purported] Conditions Inside Los Angeles County jail (2008 – 2009) which "include[s] declarations documenting scores of complaints from inmates and their families about deputy-inflicted injuries…"  (*See*, Complaint, ¶ 39.);

• Allegations based on ACLU's "Interim Report on [purported] Conditions in Los Angeles County Jails", which includes statements from the ACLU's Jails Project Monitor, and reference to 20 written statements from inmates.  (*See*, Complaint, ¶ 40.);

• Allegations by Mr. "A" – an inmate still in County jail.  The allegations by Mr. "A" are clearly based on things he has told representatives of the ACLU during inmate interviews.  (*See*, Complaint, ¶¶ 51 – 53.);

• Allegations by Mr. "B" – an inmate still in County jail.  The allegations by Mr. "B" are clearly based on things he has told representatives of the ACLU during inmate interviews.  (*See*, Complaint, ¶ 64 – 68.);

4

ROSAS\ Mtn to Remove the ACLU

• Allegations by Mr. "C" – an inmate still in County jail.  The allegations by Mr. "C" are clearly based on things he has told representatives of the ACLU during inmate interviews.  (*See*, Complaint, ¶ 92.);

• Allegations by Mr. "D" – an inmate still in County jail.  The allegations by Mr. "D" are clearly based on things he has told representatives of the ACLU during inmate interviews.  (*See*, Complaint, ¶ 93.);

• Allegations by Mr. "E" – "W" – are all inmates still in County jail.  The allegations by these inmates are clearly based on statements made to representatives of the ACLU during inmate interviews.  (*See*, Complaint, ¶¶ 50 – 139.);

• Allegations regarding the LASD's investigations into inmate reports of misconduct by LASD personnel.  (*See*, Complaint, ¶¶ 175 – 185.)  All of the information in these paragraphs, including references to LASD policies and procedures, come from the ACLU's interactions with LASD personnel;

• Allegations based on the ACLU's September, 2011 Annual Report on the Los Angeles County jails.  (*See*, Complaint, ¶ 193.);

• Reference by the ACLU to their role as jail monitor in *Rutherford*.  (*See*, Complaint, ¶¶ 237 – 240.)

• Assertion of the ACLU's role as jail monitor in *Rutherford* in seeking to be appointed class counsel.  (*See*, Docket No. 20 – 1 – Motion for Class Certification, 21:10 – 13.);

• Declarations from inmates.  (*See*, Docket No. 20 -5 – Exhibits B – GG.)

• Reference to a review of LASD policies and procedures by Plaintiffs' expert, Steve Martin, without explanation as to how the policies and procedures were obtained.  (*See*, Docket No. 20 – 7, ¶ 7 – Exhibit "B" – LASD polices on use of force.)

5

• Retention of Tom Parker, in *Rutherford*, and reference to the fact that he was "provided with numerous documents, generally described above [including inmate statements], by Mr. Eliasberg," to examine use of force issues. (*See*, Docket No. 20 – 8, ¶¶ 2, 5.)

• Analysis by Tom Parker of inmate declarations obtained by the ACLU and offered in this case in support of Plaintiffs' Motion for Class Certification. (*See*, Docket No. 20 – 8, ¶¶ 92 – 129.)

• Access to County jail facilities, through the ACLU's role as jail monitor, for Dr. Terry Kupers, as referenced in Tom Parker's Declarations. (*See*, Docket No. 20 – 8, ¶¶ 63 – 69.)

• Reference to inmate interviews conducted by the ACLU's jails project monitor, Ester Lim, and the taking of an inmate statement, the contents of which are quoted in Tom Parker's Declaration. (*See*, Docket No. 20 – 8, ¶ 109.)

## IV. The Court Has the Authority to Remove the ACLU and All Counsel With Whom They Have Shared Information Based on Their Violation of the Interview Protective Order.

It has long been understood that "[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution," powers "which cannot be dispensed within a Court, because they are necessary to the exercise of all others." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-45, 111 S. Ct. 2123 (1991), *quoting*, *United States v. Hudson,* 7 Cranch 32, 34, 3 L.Ed. 259 (1812); *see also*, *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980) (citing *Hudson* ). For this reason, "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Anderson v. Dunn,* 6 Wheat. 204, 227, 5 L.Ed. 242 (1821); *see also*, *Ex parte Robinson,* 19 Wall. 505, 510, 22 L.Ed. 205 (1874). These powers are "governed not by rule or statute but by the control necessarily vested in courts

6

ROSAS\ Mtn to Remove the ACLU

to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R. Co.,* 370 U.S. 626, 630–631, 82 S.Ct. 1386, 1388–1389 (1962).

Statutorily, a Court of the United States shall have the authority to punish for disobedience or resistance of its lawful writ, process, ***order***, rule decree or command. 18 U.S.C. Sections 401-402.

Because the ACLU blatantly violated the Interview Protective Order signed by the Court, the Court clearly has the authority to issue the sanction of removing them, as well as other attorneys they have shared information with, as counsel for Plaintiffs.

## V.      The ACLU Should Be Removed As Counsel For Plaintiffs To Maintain The Integrity Of This Judicial Process.

While the ACLU may try to dispute that they have violated the Interview Protective Order, the arguments associated with this issue actually highlight the inherent problem with the ACLU's involvement in this case and why the Interview Protective Order must be enforced.  Regardless of any procedures the ACLU may employ to balance monitoring activities and being counsel in other jail litigation against the LASD, the balance is simply too precarious to be workable.  Even with some of the ethical and procedural safeguards the ACLU may propose, the mere possibility of the ACLU's misuse of the access they have to the LACJ system will always cast a shadow of impropriety over any materials they may submit in this case.  As a threshold matter, the source of any statement from an inmate or any information about the LACJ system will always need to be carefully scrutinized to ensure that the Interview Protective Order has not been violated.  Basically, the question will always be, where did this information come from?  Quite frankly, there is simply no viable way for this Court or Defendant to know that evidence was not obtained by the ACLU through their monitoring activities and for this reason, the only equitable and workable solution is to

7

ROSAS\ Mtn to Remove the ACLU

remove the ACLU, and all attorneys with whom they have shared information, as counsel for Plaintiffs.

## VI.    If The Interview Protective Order Is Not Enforced, The LASD Will Be Severely Prejudiced.

For the last 20 years, the LASD has relied on the ACLU's agreement and the Interview Protective Order entered herein.  In connection with this reliance, the LASD has provided the ACLU with unfettered access to information and personnel that no other legal organization in the country has.  Through the course of the ACLU's access to the jails and the personnel who run them, they have gained an institutional level of knowledge regarding the layout of the jails, the operation of the jails, and personnel who work in them.  If the Interview Protective Order is not enforced, the LASD will be severely prejudiced because the ACLU will be able to use the knowledge they have about the jails against the LASD in this case.

To prevent the LASD from being unfairly prejudiced, the Interview Protective Order must be enforced.  Anything less would amount to a retroactive modification of the Order that would be unfair given the confidentiality that the LASD has relied on.  *See, e.g*., *S.E.C. v. TheStreet.Com*, 273 F.3d 222, 230 (2nd Cir. 2001)(the Second Circuit points out that "such modifications unfairly disturb the legitimate expectations of litigants.").  Essentially, the LASD would have gained *absolutely nothing* as a result of the agreement.

Furthermore, fundamental principles of equity dictate that "one party to an agreement, . . . stipulation, or anything else, cannot be relieved of its burdens while holding on to its benefits." *Emerick & Duncan Co. v. Hascy*, 146 F. 688, 695 (9th Cir. 1906); *see also*, *A & A Sign Company, Inc. v. Maughan*, 419 F. 2d 1152, 1155 (9th Cir. 1969) (affirming *Emerick* and holding the court "cannot remove a material part of the stipulation over the objection of one of the parties to it and enforce the rest of the agreement").

8

ROSAS\ Mtn to Remove the ACLU

## VII. The ACLU's Anticipated Arguments Are Untenable And Without Merit.

Defendant anticipates that the ACLU will make several arguments in opposition to the instant Motion. These expected arguments, however, have no support in the law, in the history of the enforcement of the Interview Protective Order between the ACLU and the LASD during the last 20+ years, or in the terms of the Interview Protective Order.

### A. Any Contention By The ACLU That The Interview Protective Order Unlawfully Restricts Their Right To Practice Law Is Flawed Given The Wide Range Of Other Acceptable Restrictions On The Practice Of Law.

Defendant expects that the ACLU will argue that enforcing the Interview Protective Order is an impermissible limitation on their right to practice law. This position, however, disregards the law and the myriad of limitations that may be imposed on attorneys' right to practice law.

For example, lawyers in every state must pass and be admitted to the State Bar, and must be admitted to the federal judicial districts in which they seek to practice. Furthermore, attorneys are restricted by the ethics rules of their profession, which may limit the clients who they may represent. In fact, the California Rules of Professional Conflict may mandate an attorney to withdraw from representation of a client if there is a conflict of interest. *See, e.g.*, Cal. Rules Prof. Conduct 3-310(C)(1)-(3):

> A member shall not, without the informed written consent of each client: (1) Accept representation of more than one client in a matter in which the interests of the clients potentially conflict; or (2) Accept or continue representation of more than one client in a matter in which the interests of the clients actually conflict; or (3) Represent a client in a matter and at the same time in a separate matter accept as

9

ROSAS\ Mtn to Remove the ACLU

a client a person or entity whose interest in the first matter is adverse to the client in the first matter.

Informed written consent may be precluded when doing so would violate other rules. *See, e.g.*, Cal. Bus. & Prof. Code § 6068(e)(1) ("It is the duty of an attorney to . . . maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client"). Pursuant to the Rules of Professional Conduct, "[a] member representing a client . . . shall withdraw from employment if: The member knows or should know that continued employment will result in violation of these rules or of the State Bar Act" Cal. R. Prof. Conduct 3-700(B)(2); *see, Woods v. Superior Court*, 149 Cal. App. 3d 931 (1983) (attorney not permitted to represent client with interests adverse to another client because doing so could potentially threaten client confidentiality).

Also, courts may issue protective orders limiting in various respects the scope or terms of counsel's representation. *See, e.g.*, *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 378 n.13, 101 S. Ct. 669, 675-76 (1981) ("In the proper circumstances, the moving party may seek sanctions short of disqualification, such as a protective order limiting counsel's ability to disclose or to act on purportedly confidential information."); *In re Airport Car Rental Antitrust Litigation*, 470 F. Supp. 495, 508 (N.D. Cal. 1979) (party sought motion for a protective order, which court held was moot upon granting motion for disqualification of counsel).

Any argument by the ACLU that the Interview Protective Order limits their right to pursue non-*Rutherford* litigation is untenable given these examples of limitations placed on the legal profession.

///

///

///

10

ROSAS\ Mtn to Remove the ACLU

**B.** **The ACLU Must Comply With the Interview Protective Order, Even Assuming *Arguendo* The Order Is Unconstitutional.**

Defendant anticipates that Plaintiffs will argue that the Interview Protective Order is invalid because it infringes on the First Amendment rights of Plaintiffs and the ACLU. While Defendant strenuously disagrees with any such argument, it is actually irrelevant, as the ACLU is bound by the terms of the Interview Protective Order, unless and until it has been modified or set aside. *Chapman v. Pacific Tel. and Tel. Co.*, 613 F. 2d 193, 197 (9th Cir. 1979), *citing*, *Maness v. Meyers*, 419 U.S. 449, 95 S.Ct. 584 (1975) ("An attorney who believes a court order is erroneous is not relieved of the duty to obey it. The proper course of action, unless and until the order is invalidated by an appellate court, is to comply and cite the order as reversible error should an adverse judgment result.").

A party generally cannot violate a court order and then raise the constitutionality of the order as a defense. *See, Marshall v. Barlow's, Inc.*, 436 U.S. 307, 98 S.Ct. 1816 (1978). The purpose of the collateral bar rule is to ensure orderly administration of the judicial process, which would be jeopardized if parties could decide how and when to obey judicial orders. *Maness*, 419 U.S. at 459, *quoting United Mine Workers*, 33 U.S. at 293 ("The orderly and expeditious administration of justice by the courts requires that an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings").

If the ACLU wishes to challenge the Interview Protective Order, it must first seek to have the Court set it aside. Because the ACLU has not sought to set aside the Order, and it has in fact not been modified or set aside, any argument by the ACLU regarding the constitutionality of the Order is irrelevant. The ACLU must continue to obey the Interview Protective Order, and as such, it may not properly serve as counsel in the instant lawsuit.

11

**C.      The ACLU Has Voluntarily Waived Its Right To Pursue Non-*Rutherford* Litigation With Information Obtained In Connection With the Interview Protective Order.**

Furthermore, even if the constitutionality of the Interview Protective Order were relevant to the ACLU's obligation to obey it, any argument that the ACLU's rights have been violated is irrelevant because in the Interview Protective Order, the ACLU voluntarily waived any right to pursue non-*Rutherford* litigation with information obtained in connection with the Order.

The law is well-established that constitutional rights, including First Amendment rights, may be waived. *See e.g., Charter Communications, Inc. v. County of Santa Cruz*, 304 F. 3d 927, 935 n.9 (9th Cir. 2002) (holding that First Amendment rights can be waived upon a showing that the waiver was knowing, voluntary, and intelligent); *Leonard v. Clark*, 12 F. 3d 885, 889-90 (9th Cir. 1993) (holding that a union properly contracted away its First Amendment rights in a provision of a collective bargaining agreement); *In re County of Orange*, 245 B.R. 138, 147 (C.D. Cal. 1997) (holding that financial publisher could contract away its First Amendment rights); *Trumbauer v. Group Health Co-op. of Puget Sound*, 635 F. Supp. 543, 549 (W.D. Wash. 1986) ("a party to a contract may agree to waive speech or associational rights"). The ACLU is surely aware, as an organization engaged in civil rights litigation, that constitutional rights may be waived. By the terms of the Interview Protective Order, the ACLU has validly waived any purported First Amendment right from pursuing non-*Rutherford* litigation against the Sheriff's Department in connection with its special access to the jails.

///

///

///

12

ROSAS\ Mtn to Remove the ACLU

### D.    <u>There Is No Unqualified Right Of Plaintiffs' Choice Of Counsel That Would Override The Terms Of The Interview Protective Order.</u>

Furthermore, any argument by Plaintiffs that the Interview Protective Order violates their or the ACLU's right to file suit against the LASD is without merit. First, the Interview Protective Order does not limit *Plaintiffs* from filing suit against the LASD: inmates may always bring suit against the LASD with the assistance of the many lawyers who regularly bring lawsuits against public entities, including the LASD.  Therefore, the First Amendment is not infringed by enforcing the Interview Protective Order.

Moreover, Defendant expects that Plaintiffs will cite authorities in opposition to this Motion that discuss a client's interest in his or her choice of counsel.  These authorities, however, concern an *individual's* choice of counsel as one factor to consider in the context of disqualification of counsel in light of a potential ethical conflict.[1]  These authorities are also distinct from the context of the issue at bar, in which an individual's choice of counsel would violate the

---

[1] *People ex rel. Dep't of Corps. v. Speedee Oil Change Sys., Inc.*, 20 Cal. 4th 1135 (1999) (disqualifying law firm that had confidential information relating to litigation adverse to the opposing party); *Adams v. Aerojet-General Corp.*, 86 Cal. App. 4th 1324 (2001) (ruling that plaintiff's attorney should not be disqualified based on confidential knowledge purportedly imputed to him from his former law firm); *McMillian v. Shadow Ridge at Oak Park Homeowner's Ass'n*, 165 Cal.App.4th 960 (2008) (denying party's motion to disqualify opposing counsel on ethics grounds, after he spoke to party directly, under circumstances in which it was not clear whether the party was represented by counsel); *Sheller v. Superior Court*, 158 Cal. App. 4th  1697, 1711 (2008) (discussing trial court's ability to disqualify counsel; holding that court lacked authority to reprimand or sanction attorney for ethics violation); *In re County of Los Angeles*, 223 F.3d 990, 996 (9th Cir. 2000) (holding that law firm was not disqualified based on confidential information known by partner of firm in an unrelated action).

13

ROSAS\ Mtn to Remove the ACLU

terms of a court order.  Furthermore, this body of case law does not establish that a party has an unqualified right to chosen counsel, or that such an interest of the client would override any Order by the Court.[2]  Indeed, Plaintiffs' rights are not violated by enforcement of the Interview Protective Order, as disqualification of the ACLU does not preclude Plaintiffs from pursuing this litigation.  Furthermore, the aforementioned case law, and the other examples discussed above relating to the limitations on an attorney's right to practice law, does not support an argument the ACLU has a right to represent Plaintiffs.  Accordingly, enforcement of the Interview Protective Order does not violate the rights of Plaintiffs or the ACLU.

## VIII.  <u>Conclusion</u>.

For more than 20 years, the ACLU has benefited from unprecedented access to the jails, regularly conducted "joint and separate interviews with inmates" and "discussions between counsel for the plaintiff and Sheriff's staff, frequently without counsel for the Sheriff being present."  (*See*, Clark Decl., ¶ 3; Exhibit "A" - Interview Protective Order.)  Through this work, which has furthered the parties' ability to make changes in the LACJ system and improve conditions of confinement, the ACLU has obtained information about the LACJ system above and beyond what any other counsel has.  In exchange for being granted such access, the ACLU agreed that they would not use the information to bring suit against the LASD, and would not use or make available to other lawyers the knowledge and information they have about the LACJ system.  Now,

---

[2] Other authorities on which Defendant anticipates that Plaintiffs will rely in opposing this Motion are irrelevant and nonbinding, including a dissenting opinion from a case in which the California Supreme Court granted disqualification (*see Comden v. Superior Court*, 20 Cal. 3d 906 (1978)), a Sixth Circuit case (*Manning v. Waring, Cox, James, Sklar & Allen*, 849 F. 2d 222, 224 (6th Cir. 1988), and a case applying Arizona ethics rules (*see Advanced Mfg. Technologies, Inc. v. Motorola, Inc.*, 2002 WL 1446953 (D. Ariz. July 2, 2002).

14

ROSAS\ Mtn to Remove the ACLU

the ACLU wants to have their cake and eat it to, and strike one of the only two conditions they subjected themselves to.  Defendant respectfully requests that the Court hold the ACLU to the agreement they made.  To do otherwise would severely prejudice the LASD and it would be inequitable given the substantial reliance the LASD has placed on the Interview Protective Order.

Dated:  March 26, 2012                    LAWRENCE BEACH ALLEN & CHOI, PC


By _____/s/  Justin W. Clark_____
         Paul B. Beach
         Justin W. Clark
         Attorneys for Defendant
         Sheriff Leroy D. Baca, in his official
         capacity only

15

ROSAS\ Mtn to Remove the ACLU

## <u>DECLARATION OF JUSTIN W. CLARK</u>

I, JUSTIN W. CLARK, declare as follows:

1.      I am an attorney at law, duly authorized to practice before this Court and I am an associate in the law firm of Lawrence Beach Allen & Choi, A Professional Corporation, attorneys of record for Defendant Sheriff Leroy D. Baca in his official capacities ("Defendant") in the above-entitled action.  I have personal knowledge of the facts stated herein, except those stated upon information and belief and as to those matters, I believe them to be true.  If called to testify to the matters herein, I could and would competently do so.

2.      On February 2, 2012, pursuant to Local Rule 7-3, I had a phone conversation with Plaintiffs' counsel, Peter Eliasberg and John Durrant, during which I raised the issue of the ACLU's involvement in this case and that said involvement violates the Interview Protective Order.

3.      Attached hereto as Exhibit "A" is a copy of the Interview Protective Order.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on March 26, 2012 at Glendale, California.

                    /s/  Justin W. Clark
                    Justin W. Clark

16

ROSAS\ Mtn to Remove the ACLU