PETER J. ELIASBERG (SB# 189110)
peliasberg@aclu-sc.org
MARISOL ORIHUELA (SB# 261375)
morihuela@aclu-sc.org
ACLU FOUNDATION OF
SOUTHERN CALIFORNIA
1313 W. 8th Street
Los Angeles, CA 90017
Phone:  (213) 977-9500
Fax:  (213) 977-5299

DONNA M. MELBY (SB# 86417)
donnamelby@paulhastings.com
JOHN S. DURRANT (SB# 217345)
johndurrant@paulhastings.com
JADE H. LEUNG (SB# 279651)
jadeleung@paulhastings.com
ELIZABETH C. MUELLER (SB# 278283)
bethmueller@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA  90071-2228
Phone:  (213) 683-6000
Fax:  (213) 627-0705

MARGARET WINTER (*pro hac vice*)
mwinter@npp-aclu.org
ERIC BALABAN (*pro hac vice application forthcoming*)
ebalaban@npp-aclu.org
DAVID M. SHAPIRO (*pro hac vice application forthcoming*)
dshapiro@npp-aclu.org
NATIONAL PRISON PROJECT OF
THE AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
915 15th St., NW
Washington, D.C. 20005
Phone:  (202) 393-4930
Fax:  (202) 393-4931

Attorneys for Plaintiffs
ALEX ROSAS and JONATHAN
GOODWIN, on behalf of themselves
and of those similarly situated

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX ROSAS and JONATHAN GOODWIN on behalf of themselves and of those similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> LEROY BACA, Sheriff of Los Angeles County Jails, et al., <br><br> Defendants. | CASE NO. CV 12-00428 DDP <br><br> **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO REMOVE THE ACLU** <br><br> Date:      May 14, 2012 <br> Time:     10:00 a.m. <br> Ctrm.:    3 <br> Judge:    Hon. Dean D. Pregerson |

CASE NO. CV 12-00428 DDP

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................... 1

ARGUMENT ............................................................................................................. 3

I.    The Sheriff Has Not Shown Any Violation of the Stipulated Order ............. 3

    A.    The Sheriff's Interpretation of the Stipulated Order is Not Supported by the Order's Language or by Logic ............................... 4

        1.    The Sheriff's Interpretation of the Stipulated Order is So Broad as to Forbid the Use of Newspaper Articles, Public Reports, and General Information Known to the ACLU ........... 4

        2.    The Sheriff's Interpretation is a Transparent Attempt to Prohibit the ACLU From Litigating Los Angeles County Jail Conditions ................................................................................ 6

    B.    The Most Reasonable Interpretation of the Stipulated Order Only Limits the Use of Statements by Opposing Counsel ................... 9

    C.    Even if the Stipulated Limits the ACLU's Use of Its Own Clients' Interviews, the Sheriff Still Has Not Shown a Violation of the Order .............................................................................. 11

II.    Even If the ACLU Has Violated The Stipulated Order, Removal as Class Counsel is Not a Permissible Remedy .................................................. 13

    A.    Disqualification is a Drastic Remedy Appropriate Only in Extreme Circumstances Not Presented Here ....................................... 14

    B.    Disqualification Is Not an Appropriate Remedy Because Less Drastic Remedies Would Cure Any Supposed Harm ......................... 16

CONCLUSION ......................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<span style="font-variant: small-caps">CASES</span>

*Adams v. Aerojet-General Corp.*,
   86 Cal. App. 4th 1324 (2001)...................................................................................15

*Anderson v. Pryor*,
   537 F. Supp. 890 (W.D. Mo. 1982)..........................................................................17

*Banning Ranch Conservancy v. Super. Ct. (Newport Beach)*,
   193 Cal. App. 4th 903 (2011)..............................................................................15, 16

*Chambers v. NASCO, Inc.*,
   501 U.S. 32, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991) .........................................14

*Ching v. Lewis*,
   895 F.2d 608 (9th Cir. 1990) ....................................................................................7

*Concat LP v. Unilever, PLC*,
   350 F. Supp. 2d 796 (N.D. Cal. 2004).....................................................................14

*Cooke v. Super. Ct. (Cooke)*,
   83 Cal. App. 3d 582 (1978) ......................................................................................15

*DeVittorio v. Hall*,
   No. 07 Civ. 0812 (WCC), 2007 WL 4372872 (S.D.N.Y. Dec. 12, 2007).........13

*First Impressions Design & Management v. All That Style Interiors*,
   122 F. Supp. 2d 1352 (S.D. Fla. 2000)...............................................................6, 14

*Freeman v. Chicago Musical Instrument Co.*,
   689 F.2d 715 (7th Cir. 1982) ...................................................................................14

*Gomez v. Rivera Rodriguez*,
   344 F.3d 103 (1st Cir. 2003) .....................................................................................9

*Hechavarria v. City & County of San Francisco*,
   No. C-10-00525, 2010 WL 4937314 (N.D. Cal. Nov. 30, 2010) ...............14, 17

*Hu-Friedy Mfg. Co. v. General Elec. Co.*,
   No. 99 C 762, 1999 WL 528545 (N.D. Ill. Oct. 19, 1999) .......................6, 8, 13

## TABLE OF AUTHORITIES

**Page(s)**

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*,
    658 F. 2d 1355 (9th Cir. 1981)..................................................................................14

*In re County of Los Angeles*,
    223 F.3d 990 (9th Cir. 2000) ..............................................................................14, 16

*In re Dual-Deck Video Cassette Recorder Antitrust Litigation*,
    10 F.3d 693 (9th Cir. 1993) .......................................................................................6

*In re Sulfuric Acid Antitrust Litigation*,
    235 F.R.D. 407 (N.D. Ill. 2006) ................................................................................9

*Kamakana v. City & County of Honolulu*,
    447 F.3d 1172 (9th Cir. 2006)..................................................................................12

*Lewis v. Telephone Employees Credit Union*,
    87 F.3d 1537 (9th Cir. 1996) ...................................................................................17

*Maruman Integrated Circuits, Inc. v. Consortium Co.*,
    166 Cal. App. 3d 443 (1985).....................................................................................15

*McMillan v. Shadow Ridge at Oak Park Homeowner's Ass'n*,
    165 Cal. App. 4th 960 (2008)..............................................................................15, 16

*Nazomi Communications, Inc. v. ARM Holdings PLC*,
    No. C 02-02521-JF, 2002 WL 32831822 (N.D. Cal. Oct. 11, 2002)...................8

*On Command Video Corp. v. LodgeNet Entertainment Corp.*,
    976 F. Supp. 917 (N.D. Cal. 1997)............................................................................9

*Optyl Eyewear Fashion Int'l Corp. v. Style Companies Ltd.*,
    760 F.2d 1045 (9th Cir. 1985)..................................................................................14

*Orantes-Hernandez v. Smith*,
    541 F. Supp. 351 (C.D. Cal. 1982)............................................................................7

*Osborn v. Shillinger*,
    No. 90-8099, 1991 WL 74994 (10th Cir. May 8, 1991) .......................................7

*Perry v. Brown*,
    667 F.3d 1078 (9th Cir. 2012)..................................................................................12

CASE NO. CV 12-00428 DDP                    -iii-                    PLAINTIFFS' OPPOSITION TO MOTION
                                                                    TO DISQUALIFY COUNSEL

## TABLE OF AUTHORITIES

**Page(s)**

*Procunier v. Martinez*,
    416 U.S. 396, 94 S. Ct. 1800, 40 L. Ed. 2d 224 (1974) ......................................7

*Sheller v. Super. Ct. (Farmers New World Life Ins. Co.)*,
    158 Cal. App. 4th 1697 (2008)...................................................................... 15, 16

*Tradewinds Airlines, Inc. v. Soros*,
    No. 08 Civ. 5901 (JFK), 2009 WL 1321695 (S.D.N.Y. May 12, 2009)...... 13, 15

*United States v. Amodeo*,
    71 F.3d 1044 (2d Cir. 1995) .................................................................................12

*Yates v. Applied Performance Technologies, Inc.*,
    205 F.R.D. 497 (S.D. Ohio 2002) .......................................................................17

*Zambrano v. City of Tustin*,
    885 F.2d 1473 (9th Cir.1989).............................................................................17

**OTHER AUTHORITIES**

Cal. R. Prof. Conduct 1-500(A).............................................................................8

**INTRODUCTION**

The Sheriff asks this Court to disqualify the ACLU from serving as counsel to the putative class,[1] on the ground that this case "is admittedly based on inmate statements obtained by the ACLU and the ACLU's institutional knowledge about the operation of the jails." According to the Sheriff, the ACLU has "clearly, directly and willfully violated" the stipulated protective order entered in *Rutherford* (the "Stipulated Order"). *See* Defendant's Memorandum of Points and Authorities ("Def's Mem.") at 1. The Sheriff proffers a fundamentally mistaken, out-of-context reading of the Stipulated Order, and asks this Court to adopt a position that would violate applicable rules of professional conduct. The Sheriff's motion attempts to find in the Stipulated Order what would amount to a blanket prohibition on the ACLU's litigation regarding conditions in the Los Angeles County Jails. The Stipulated Order cannot be reasonably read to provide for such a drastic limitation on the ACLU's representation.

In the first place, express language in the Stipulated Order makes clear that the limitations apply only to use by an *opponent*. That is, the parties intended that the ACLU would not use statements made by representatives of the Los Angeles Sheriff's Department ("LASD") *against the LASD*, if such statements were solely acquired through its work as a jail monitor.[2] Similarly, LASD cannot use inmate

---

[1] The Sheriff styled his motion as a motion to "remove" the ACLU, rather than a motion to disqualify the ACLU as counsel, and also appears to request that the Court remove co-counsel, Paul Hastings LLP ("Paul Hastings"), in this case. *See* Def's Mem. at 2. The Sheriff does not differentiate between removing and disqualifying counsel, and cites law concerning disqualification of counsel. Therefore, Plaintiffs treat the motion as a motion to disqualify the ACLU as counsel. In regard to Paul Hastings, the Sheriff does not explain how the Stipulated Order in *Rutherford* could be enforced against Paul Hastings, since the firm was not involved in the *Rutherford* litigation. In fact, the Sheriff does not argue in his Memorandum that there is any basis to disqualify Paul Hastings. For these reasons, the Court should deny the motion as to Paul Hastings.

[2] Stipulated Order, attached as Exhibit A to Declaration of Justin Clark ("Clark Decl."), Ex. A ("The Sheriff's staff must be confident that they can state facts and their views openly and candidly without concern that their statements will be used in other litigation.")

-1-

PLAINTIFFS' OPPOSITION TO MOTION TO DISQUALIFY COUNSEL

statements made in connection with the ACLU's monitoring work *against inmates*.[3] There is no logical reason that inmates should be prohibited from (1) electing to retain the ACLU as their lawyers; or (2) using statements made to the ACLU to vindicate their rights or the rights of other inmates.

Second, Sheriff Baca contends that the ACLU violated the Stipulated Order by relying on the inmate declarations it filed with the Court in *Rutherford* along with its September 2011 Annual Report. Yet, the ACLU compiled every one of those declarations in interviews with those inmates in attorney rooms in the Los Angeles County jails. In other words, the Sheriff asks this Court to interpret the Stipulated Order to mean that the ACLU unilaterally bargained away its ability to use statements that it gained from interviewing inmates in attorney rooms, even though it had a right to speak with inmates in attorney rooms without entering into a Stipulated Order. There was absolutely no special access necessary for the ACLU to acquire the statements; thus, they are beyond the scope of any conceivable reading of the Stipulated Order.

Third, apart from failing to set forth a violation of the Stipulated Order, the Sheriff's reading of the Order would result in absurd outcomes. If the Court were to accept the Sheriff's argument, the ACLU would be barred from using information that it has publicly filed in *Rutherford* (without objection from the Sheriff) and that is available to any citizen on PACER. The ACLU also would be barred from using statements that are widely available in the press and even statements that are common knowledge. More fundamentally, inmates would be deprived of knowledgeable and competent counsel, who are willing to take up their cause for free. As a practical matter, the LASD would be able to continue its unconstitutional treatment of inmates with impunity.

Fourth and finally, it will surely not surprise the Court that the Sheriff's

---

[3] *Id.* ("To be effective, the interviews must be candid and open. The inmates must feel confident that they can state facts and make statements without fear that the discussions will be used in their criminal trial.")

CASE NO. CV 12-00428 DDP -2- PLAINTIFFS' OPPOSITION TO MOTION TO DISQUALIFY COUNSEL

reading of the Stipulated Order is contrary to law. Applicable rules of professional conduct specifically bar agreements by counsel to not represent certain parties or certain causes. A lawyer is legally unable to enter an enforceable agreement to such effect. The Sheriff has brought an abusive and meritless motion that this Court should summarily deny.

## ARGUMENT

## I.      The Sheriff Has Not Shown Any Violation of the Stipulated Order

The Sheriff has failed to show any violation of the Stipulated Order. That Stipulated Order provides the following:

> To measure compliance with the court's orders in this case and to develop appropriate methods to minimize the impact of jail overcrowding, the counsel for parties have found it useful to regularly conduct joint and separate interviews with inmates throughout the jail system, and to permit discussions between counsel for the plaintiff and Sheriff's staff, frequently without counsel for the Sheriff being present.
>
> To be effective, the interviews must be candid and open. The inmates must feel confident that they can state facts and make statements without fear that the discussions will be used in their criminal trial. The Sheriff's staff must be confident that they can state facts and their views openly and candidly without concern that their statements will be used in other litigation. In this fashion, counsel for the parties and the parties have been able to work cooperatively toward solutions to the complex and difficult issues involved in this litigation in a non-adversarial manner and without need to involve the Court in most dispute resolutions.
>
> Accordingly, and for good cause, the parties stipulate that none of the statements made during inmate interviews or in discussions with Sheriff's staff will be used or made available for use in other litigation or for purposes other than the present litigation except by written stipulation or by order of this Court. [4]

---

[4] *Id.*

CASE NO. CV 12-00428 DDP          -3-          PLAINTIFFS' OPPOSITION TO MOTION
                                               TO DISQUALIFY COUNSEL

## A.   The Sheriff's Interpretation of the Stipulated Order is Not Supported by the Order's Language or by Logic

The Sheriff asks this Court to read into the Stipulated Order a prohibition against the ACLU using any and all information it acquired as a result of being class counsel in *Rutherford*.  This request finds no support in the language or logic of the Stipulated Order.

### 1.   The Sheriff's Interpretation of the Stipulated Order is So Broad as to Forbid the Use of Newspaper Articles, Public Reports, and General Information Known to the ACLU

The terms of the Stipulated Order in *Rutherford* limit the use of "statements,"[5] but the Sheriff seeks to broaden the scope to include "information" the ACLU obtained through monitoring tours in *Rutherford*.  *See* Def's Mem. at 3. Leaving aside for the moment the fact that the Stipulated Order does not include a restriction on "information" obtained as a result of *Rutherford* monitoring, a review of the "information" asserted by the Sheriff to have violated the Stipulated Order reveals that the Sheriff proposes an untenably broad interpretation of the Stipulated Order.

According to the Sheriff's interpretation, the ACLU's use of the following information would violate the Stipulated Order in *Rutherford*: (1) an article published by *The Los Angeles Times*, *see* Def's Mem. at 5:11-14, Complt. at ¶ 180; (2) a report by an expert witness, Jeffrey Schwartz, prepared for the federal court case *Ramirez v. Baca*, CV08-2813-DSF, *see* Def's Mem. at 5:11-14, Complt. at ¶ 181; and (3) a public report issued by Los Angeles County through the County's Office of Independent Review, *see* Def's Mem. at 5:11-14; Complt. at ¶ 182.  The Sheriff does not explain how the ACLU's use of these publicly available documents

---

[5] *Id.* at 3 ("Accordingly, and for good cause, the parties stipulate that none of the statements made during inmate interviews or in discussions with Sheriff's staff will be used or made available for use in other litigation or for purposes other than the present litigation except  by written stipulation or by order of this Court.")

CASE NO. CV 12-00428 DDP                    -4-                    PLAINTIFFS' OPPOSITION TO MOTION TO DISQUALIFY COUNSEL

is covered by the Stipulated Order in *Rutherford*. That Stipulated Order does not limit the ACLU's ability to use *any* information related to Los Angeles County jail conditions outside of the *Rutherford* litigation, as the Sheriff seems to argue. Nowhere in the text of the Stipulated Order does such a sweeping prohibition appear.

In addition, according to the Sheriff, the ACLU violated the Stipulated Order when it made a reference to the fact that it is the jail monitor in *Rutherford*, *see* Def's Mem. at 5:17-21, Complt. at ¶¶ 237-240, Dkt. No. 20-1, a fact that is widely and publicly known, and is reported with regularity by the press. Again, the Sheriff does not explain how the Stipulated Order could possibly prohibit the ACLU from referring to a publicly known fact, especially when that fact was not known to the ACLU as a *result of the interviews* it conducts for purposes of *Rutherford* monitoring – which is the activity to which the Stipulated Order speaks.

The Sheriff further claims that the ACLU violated the Stipulated Order by its "identification" of the named Plaintiffs in this case – Alex Rosas and Jonathan Goodwin – since the ACLU would not have come in contact with these inmates but for the ACLU's monitoring role in *Rutherford*. *See* Def's Mem. at 4. First, the Sheriff has the facts wrong. The ACLU learned about Messrs. Rosas and Goodwin from another inmate during an interview conducted in an attorney room. Declaration of Esther Lim ¶ 6. The ACLU subsequently interviewed both Messrs. Rosas and Goodwin in an attorney room, in the same manner that any inmate can talk to his lawyer. *Id.*

Second, the Sheriff has the language of the Stipulated Order wrong – the Stipulated Order does *not* extend to any "information" the ACLU may come across in the course of its jail monitoring tours; it is specifically limited to *statements* made during *monitoring* interviews. ("Accordingly, and for good cause, the parties stipulate that none of the statements made during inmate interviews or in discussions with Sheriff's staff will be used or made available for use in other

CASE NO. CV 12-00428 DDP                    -5-                    PLAINTIFFS' OPPOSITION TO MOTION
                                                                   TO DISQUALIFY COUNSEL

litigation or for purposes other than the present litigation except by written stipulation or by order of this Court.")

### 2. The Sheriff's Interpretation is a Transparent Attempt to Prohibit the ACLU From Litigating Los Angeles County Jail Conditions

The Sheriff's interpretation of the Stipulated Order leads to patently absurd results. He goes so far as to contend that counsel should be disqualified based merely on the *potential* for the unauthorized use of information: the knowledge the ACLU has gained through *Rutherford* of LASD operations casts a "shadow of impropriety" over the instant case. *See* Def's Mem. at 7-8. This argument transforms the Stipulated Order into a *de facto* prohibition against the ACLU's bringing any future suit on behalf of inmates in custody of the Los Angeles Sheriff's Department.

The Ninth Circuit has already squarely rejected a similar attempt to interpret a protective order as a de facto prohibition on future cases brought by the plaintiff's lawyers against the defendants. *See In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). In denying a motion for contempt brought by the defendants, the court stated:

> [I]f taken literally, the [protective] order would be absurd. Because [plaintiff's] lawyers cannot achieve total amnesia and all their subsequent work in antitrust litigation against the defendants . . . would be informed by what they learned during discovery in the 1987 suit, the order [as interpreted by the defendants] would prohibit them from representing [plaintiff] at all in the 1990 litigation.

*Id.*

Other courts have also repeatedly rejected similar arguments to the one the Sheriff makes here. *See First Impressions Design & Mgmt. v. All That Style Interiors*, 122 F. Supp. 2d 1352, 1354 (S.D. Fla. 2000) ("[The] bare assertion that Malloy has a tactical advantage in the litigation of the suit based on the knowledge

CASE NO. CV 12-00428 DDP          -6-          PLAINTIFFS' OPPOSITION TO MOTION TO DISQUALIFY COUNSEL

gained in the prior suit is unconvincing to support Plaintiff's argument that there is an appearance of impropriety."); *Hu-Friedy Mfg. Co. v. General Elec. Co.*, No. 99 C 762, 1999 WL 528545, at *3 (N.D. Ill. Oct. 19, 1999) ("[Plaintiff] has no unfair advantage in this action due to its previous exposure to the confidential information. The 'head start' argument does not persuade us to the contrary.").

Furthermore, the Sheriff claims that the Stipulated Order bars the ACLU from using inmate declarations that were filed with the Court along with the September 2011 Annual Report. Def's Mem. at 4-5. To be clear, the ACLU acquired each those declarations, when it spoke (as any attorney could) to its clients in the attorney rooms in Men's Central Jail, Twin Towers, and other LA County Jail Facilities. Declaration of Esther Lim ¶ 4.

The Sheriff's interpretation of the Stipulated Order to cover inmate interviews in the attorney rooms is illogical. There is no reason why class counsel in *Rutherford* would have bargained for a right it already had – the right to communicate with its clients in attorney rooms. Inmates have a clearly-established right to communicate with their counsel; such inmates had no need to bargain with the Sheriff to secure that right.[6] In other words, the Sheriff is asking this Court to believe that the ACLU gave away its right to speak with inmates in attorney rooms in exchange for the right to interview inmates at cell front in the jails.

Moreover, such a bargain would strike at the heart of class counsel's

---

[6] *See Procunier v. Martinez*, 416 U.S. 396, 419, 94 S. Ct. 1800, 40 L. Ed. 2d 224 (1974) ("[I]nmates must have a reasonable opportunity to seek and receive the assistance of attorneys. Regulations and practices that unjustifiably obstruct the availability of professional representation or other aspects of the right of access to the courts are invalid."), *overruled on other grounds*, *Thornburgh v. Abbott*, 490 U.S. 401 (1989); *Ching v. Lewis*, 895 F.2d 608, 610 (9th Cir. 1990) (holding that a "policy of denying a prisoner contact visits with his attorney prohibits effective attorney-client communication and unnecessarily abridges the prisoner's right to meaningful access to the courts"); *Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 384 (C.D. Cal. 1982) (striking down limitations on visitation between immigration detainees and attorneys); *Osborn v. Shillinger*, No. 90-8099, 1991 WL 74994, at *2 (10th Cir. May 8, 1991) ("'[A] prisoner's right of access to the courts includes contact visitation with [her or] his counsel.' … Indeed, 'an inmate's opportunity to confer with counsel is a particularly important constitutional right which the courts will not permit to be unnecessarily abridged.'") (citations omitted).

obligation to the putative class to vindicate its rights constitutionally adequate conditions of confinement.[7]  The Court should refrain from interpreting the Stipulated Order in a way that would lead to such illogical results.

Finally, the Sheriff's attempt to recast the Stipulated Order as an absolute bar on the ability of Plaintiffs' counsel to use any information obtained in *Rutherford* class fails because such an agreement would be contrary to law.  Under Rule 1-500(A) of the California Rules of Professional Conduct, counsel cannot ethically enter agreements that restrict their right to practice law.  The Rule's discussion section states:  "Paragraph (A) makes it clear that the practice, in connection with settlement agreements, of proposing that a member refrain from representing other clients in similar litigation, is prohibited.  Neither counsel may demand or suggest such provisions nor may opposing counsel accede or agree to such provisions."  *Id.*  At least one case has noted that protective order restricting future representation may "implicate[ ] California's ethical rules which prohibit agreements restricting the right of a bar member to practice law." *Nazomi Commc'ns, Inc. v. ARM Holdings PLC*, No. C 02-02521-JF, 2002 WL 32831822 , at *3 n. 3 (N.D. Cal. Oct. 11, 2002) (citing Cal. R. Prof. Conduct 1-500).  *See also Hu-Friedy Mgf. Co.*, 1999 WL 528545, at *3 (rejecting litigant's attempt to convert a protective order into a "restriction on an [opposing] attorney's right to practice law").

---

[7] To be sure, jail officials are not necessarily required by the Constitution in every case to give inmates' lawyers unlimited physical access to a jail, and in exchange for such access class counsel are usually willing to strike the very bargain that the ACLU made here with the Sheriff: an agreement not to use statements of jail staff as admissions of a party opponent in damages cases in exchange for free access to the jail for purposes of monitoring compliance with an injunction. That sort of bargain, however, is an entirely different matter from a stipulated order waiving class counsel's right to use statements of their own clients for purposes of injunctive relief – either in the original or any subsequent litigation.

**B.    The Most Reasonable Interpretation of the Stipulated Order Only Limits the Use of Statements by Opposing Counsel**

Once viewed in light of its purpose, it is clear that the Stipulated Order in *Rutherford* limits the use of statements by opposing counsel.  Because – as demonstrated below – the ACLU has not used any statements obtained in interviews with the Sheriff's staff, it has not violated the Stipulated Order.

Because they are the result of an agreement between the parties, stipulations are interpreted using contract law principles.  *Gomez v. Rivera Rodriguez*, 344 F.3d 103, 121 (1st Cir. 2003); *In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 407, 418 (N.D. Ill. 2006) (holding that protective orders should be construed in accordance with the principles of contract law).   For this reason, a "term [in a stipulation] should be construed in the context of the contract as a whole."  *Gomez*, 344 F.3d at 121.  The resulting "order should be read in a reasonable and common sense manner so that its prohibitions are connected to its purpose."  *On Command Video Corp. v. LodgeNet Entertm't Corp.*, 976 F. Supp. 917, 921 (N.D. Cal. 1997).

Here, the purpose of the Stipulated Order is clearly set forth: To facilitate effective jail tours for purposes of *Rutherford* monitoring, all parties *waive the right to use their opponents' statements against them in other litigation.*  To further this purpose, Plaintiffs cannot use statements by the Sheriff's staff to the ACLU during jail tours as admissions by the Sheriff outside of *Rutherford* ("The Sheriff's staff must be confident that they can state facts and their views openly and candidly without concern that their statements will be used in other litigation");  the Sheriff cannot use statements by the inmates during jail tours *as admissions by the prisoners* outside of *Rutherford (*"The inmates must feel confident that they can state facts and make statements without fear that the discussions will be used against them in their criminal trial.").[8]  This is the *quid pro quo* of the bargain the parties struck when they entered the Stipulated Order.

---

[8] Stipulated Order at 1.

In context, the terms of the Stipulated Order place limits on the ACLU's use of statements obtained in interviews with the Sheriff's staff, not on the ACLU's use of statements obtained in interviews with their own clients—the inmates.  Plaintiffs have kept their side of this bargain.

Plaintiffs have not relied on any statements by the Sheriff's staff to the ACLU monitors during jail tours.  With minor exceptions, the Sheriff does not contend otherwise.  The Sheriff does contend – without any factual support – that the ACLU learned of certain information in its Complaint through its work as a monitor in *Rutherford*, but those assertions are false.  The Sheriff contends that the ACLU learned of information in paragraphs 175-185 of the Complaint, which relate to the inadequacies of the LASD's investigations of use of force incidents, from speaking with LASD personnel.  *See* Def's Mem. at 5 ("Allegations regarding LASD's investigations into inmate reports of misconduct by LASD personnel (*See* Complaint, ¶¶ 175-185)).  All of the information in these paragraphs, including references to LASD policies and procedures come from ACLU's interactions with LASD personnel.")  The Sheriff is wrong.  For example, those paragraphs reference a *Los Angeles Times* article, an expert report from another federal court case, and a public report by the Office of Independent Review Complaint ¶¶ 177, 178, 179. The source of other information about the LASD investigative inadequacies, including that interviews of inmates who allege they were assaulted are conducted with the alleged assaulting deputies present, come from inmates and former inmates, not conversations with LASD personnel.  *See, e.g.*, Declaration of Gordon Grbavac ¶ 14, filed as Exhibit O to Plaintiffs' Motion for Class Certification, Dkt. 20-5 (explaining that after deputies assaulted him, a sergeant interviewed him about the incident with one of the deputies who assaulted him in the room where the interview took place).[9]

---

[9] Paragraph 176 refers to the fact that LASD policies did not forbid the deputy who allegedly assaulted the inmate from being present while the inmate was interviewed.  The Sheriff publicly stated that fact in a letter to the Board of

Because Plaintiffs have not relied on statements LASD personnel made directly to the ACLU in the jails or otherwise, there is simply no violation of the *Rutherford* order in this case under the reasonable interpretation of the Stipulated Order.

**C.     Even if the Stipulated Order Limits the ACLU's Use of Its Own Clients' Interviews, the Sheriff Still Has Not Shown a Violation of the Order**

Assuming that the Stipulated Order contains an *additional, unilateral* prohibition against the ACLU using, in subsequent litigation, *its own clients' statements to their counsel*,[10] the Sheriff still has not shown a violation of the Stipulated Order.  The statements that the Sheriff claims the ACLU improperly relies on in *Rosas* included: (1) a number of documents publicly filed in *Rutherford*, including a report by psychiatric expert Dr. Terry Kupers, a report filed by the ACLU, and documents pertaining to Tom Parker; (2) allegations by Messrs. A-W; and (3) dozens of inmate declarations, all of which have already been filed in *Rutherford* and almost all of which were obtained during attorney visits that are no different from the visits of the thousands of other attorneys who talk with their inmate clients in the attorney rooms at the jails.  The Sheriff's argument that the ACLU is barred from using any of this material by the Stipulated Order is profoundly flawed, on multiple levels.

As class counsel, the ACLU has a right and a corresponding duty to the *Rutherford* class *to monitor and report on conditions* that it believes relates to overcrowding, including violence.  Having publicly submitted to the *Rutherford* Court inmate declarations evidencing such deputy violence, the ACLU – like any

Supervisors on November 1, 2011, when he announced that the department was putting a policy in place to forbid deputies allegedly involved in a use of force from being present at the interview of the inmate(s) involved in the incident.  Declaration of Esther Lim ¶ 5 and Exhibit A.  So, the Sheriff is incorrect in his assertion that the ACLU learned about LASD's policies from the ACLU's interactions with LASD personnel. *Contra* Def's Mem. at 5.

[10] Stipulated Order at 1-2.

other member of the public – is entitled to use those publicly-filed inmate statements in any litigation or forum whatsoever.

The vast majority of the materials that the Sheriff challenges here consist of inmate declarations and an expert report originally filed in *Rutherford* pursuant to the ACLU's rights and duties as *Rutherford* class counsel.  These materials were not filed under seal but publicly, and from the moment they were publicly filed – without protest from the Sheriff – they became part of the public record, open to use by any party, in any proceeding, in any forum whatsoever where they may be relevant, like any other document in the public docket of the federal courts.  The Sheriff has waived any right to object regarding the use of the statements.

The common law provides the public a presumptive right to judicial proceedings, including court documents such as the ones filed *Rutherford* and used in this case.  *See Perry v. Brown*, 667 F.3d 1078, 1084 (9th Cir. 2012) (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 & n.7 (1978)).[11]  In order to overcome this "strong presumption," the party seeking to limit the public's access to public court records must show "compelling reasons" that "outweigh the general history of access and the public policies favoring disclosure . . . ."  *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178-79 (9th Cir. 2006).  The Sheriff never argued in *Rutherford* to limit the public's access to the documents filed by the ACLU (*e.g.*, by moving to seal the documents), and he offers no reason, let alone a "compelling" one, why publicly filed documents should be treated differently in this case.

The Sheriff has failed to show that the ACLU violated the Stipulated Order when it relied in this case on publicly filed documents, especially because his counsel never objected to the documents' public use in *Rutherford*.  *See*

---

[11] Documents such as trial evidence, or documents supporting a motion, are the type of judicial documents traditionally presumed to be open to the public. *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995).

CASE NO. CV 12-00428 DDP                    -12-                    PLAINTIFFS' OPPOSITION TO MOTION TO DISQUALIFY COUNSEL

*Tradewinds Airlines, Inc. v. Soros*, No. 08 Civ. 5901 (JFK), 2009 WL 1321695, at *6 (S.D.N.Y. May 12, 2009) (protective order did not bar attorney from using publicly filed information in subsequent case, especially where opposing counsel "did not object when [the attorney] failed to file . . . papers under seal" in the previous case). When an attorney obtains information governed by a protective order, but the same information is contained in public filings, the lawyer's "reliance on public information available to anyone else creates no unfair advantage." *Id.* at *8. [12] *See also Hu-Friedy Mfg. Co.*, 1999 WL 528545, at *2-3 (rejecting a "strained reading of the word 'use' in [a] protective order" that would be so broad as to prohibit the use of materials that would be obtained by any "reasonably competent attorney" in a subsequent case").

## II.   Even If the ACLU Had Violated the Stipulated Order, Removal as Class Counsel is Not a Permissible Remedy

Even if the Sheriff had shown that the ACLU violated the Stipulated Order , the appropriate remedy would be to strike the allegations in the Complaint that are based on protected information; disqualification of the ACLU as counsel would not be an appropriate or permissible remedy.

---

[12] Furthermore, even those documents not publicly filed that the Sheriff challenges, such as LASD policies and procedures concerning use of force that Plaintiff's expert Steve Martin critiqued in his declaration, *see* Def's Mem. at 5, are discoverable in this litigation. Where information is independently discoverable, an attorney's access to information obtained in a prior action provides no basis for disqualification. *See Tradewinds*, 2009 WL 1321695, at *1. In that case, a protective order stated that materials produced in one case may "be used by the parties solely for the prosecution and defense of [the litigation] and not for any other purpose." Although an attorney in *Tradewinds* had knowledge and information gleaned from the previous case, the court held that the protective order provided no basis for disqualification because the attorney could obtain the same information through discovery in the present case. *Id.* at *10. As the court stated, "[a]n attorney's prior access to relevant but non-discoverable information gives her an unfair advantage in litigation against a former client. By contrast, any attorney representing plaintiff in this case would have access to the information at issue through discovery." *Id.* at *8. *See also DeVittorio v. Hall*, No. 07 Civ. 0812 (WCC), 2007 WL 4372872, at *10 (S.D.N.Y. Dec. 12, 2007) (denying motion to disqualify where an attorney may have received information through a prior representation but "to the extent that information is relevant in the present action, it would presumably be discoverable.").

## A.  Disqualification is a Drastic Remedy Appropriate Only in Extreme Circumstances Not Presented Here

Disqualification is a drastic remedy, and "disqualification motions should be subject to particularly strict judicial scrutiny."  *Optyl Eyewear Fashion Int'l Corp. v. Style Companies Ltd.*, 760 F.2d 1045, 1050 (9th Cir. 1985) (internal quotation marks omitted).  The Ninth Circuit "will affirm [a disqualification] order only where the impropriety is clear and is one that would be recognized as such by all reasonable persons."  *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 658 F. 2d 1355, 1361 (9th Cir. 1981).  *See also Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 814 (N.D. Cal. 2004) ("Because disqualification is a drastic measure, it is generally disfavored and should only be imposed when absolutely necessary."); *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir. 1982) (stating that disqualification of counsel "is a drastic measure which courts should hesitate to impose except when absolutely necessary"); *First Impressions Design & Mgmt.*, 122 F. Supp. 2d at 1355 ("[D]isqualification of a party's chosen counsel is an extraordinary remedy not generally in the public interest—a remedy that should be employed only sparingly.").[13]

Federal courts "apply state law in determining matters of disqualification . . . ."  *In re Cnty. of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000).  California courts treat disqualification as a remedy reserved for extraordinary circumstances.  "It must be remembered . . . that disqualification is a drastic course of action that should not be taken simply out of hypersensitivity to ethical nuances or the appearance of impropriety."  *Sheller v. Super. Ct. (Farmers New World Life Ins. Co.)*, 158 Cal. App. 4th 1697, 1711 (2008).

---

[13] *See also generally*, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991) ("Because of their very potency, inherent powers [to sanction counsel] must be exercised with restraint and discretion."); *Hechavarria v. City & Cnty. of San Francisco*, No. C-10-00525, 2010 WL 4937314, at *6 (N.D. Cal. Nov. 30, 2010) (same).

CASE NO. CV 12-00428 DDP    -14-    PLAINTIFFS' OPPOSITION TO MOTION TO DISQUALIFY COUNSEL

While disqualification of counsel is drastic in any circumstance, the remedy is especially rare in cases that involve neither concurrent representation of adverse clients nor a subsequent representation adverse to a former client in a matter substantially related to the prior one. Outside of these two scenarios – neither of which is implicated in this case – "courts 'have shown considerable reluctance to disqualify attorneys despite misgivings about the attorney's conduct.'" *Tradewinds Airlines, Inc.*, 2009 WL 1321695, at \*4 (quoting *Bd. of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)).

Indeed, California courts have questioned whether disqualification is *ever* permissible in cases that do not involve violations of duty to current or former clients: "In short, we know of no case where disqualification of an attorney or his firm was imposed purely as a punitive or disciplinary measure, and where there was no prior representation or confidential professional relationship between the complaining party and the attorney or law firm sought to be disqualified." *Cooke v. Super. Ct. (Cooke)*, 83 Cal. App. 3d 582, 592 (1978). *See also Maruman Integrated Circuits, Inc. v. Consortium Co.*, 166 Cal. App. 3d 443, 447 (1985) (stating that for disqualification to be appropriate, "there must have been an attorney-client relationship between the complaining party and the attorney during which the confidential information was imparted").[14]

These exacting standards for disqualification exist because "[l]itigants have a

[14] The ethics rules cited by the Sheriff deal with client confidentiality and loyalty to clients, and thus have no relevance here. *See* Def's Mem. at 14-15. The cases cited by the Sheriff likewise do not involve situations in which counsel has been disqualified for violations of a protective order. *See* Def's Mem. at 13 n.1 (citing *People ex rel. Dep't of Corps. v. Speedee Oil Change Sys., Inc.*, 20 Cal. 4th 1135, 1156 (1999) (disqualification appropriate where law firm "represented adversaries in the same litigation . . ."); *Adams v. Aerojet-General Corp.*, 86 Cal. App. 4th 1324, 1341 (2001) (reversing order of disqualification in case involving representation adverse to former client); *McMillan v. Shadow Ridge at Oak Park Homeowner's Ass'n*, 165 Cal. App. 4th 960, 964 (2008) (denying motion to disqualify based on communications between attorney and adverse party); *Sheller*, 158 Cal. App. 4th. at 1701 (case involving improper solicitation of prospective class members); *In re Cnty. of Los Angeles*, 223 F.3d at 997 (refusing to disqualify firm that employed attorney who previously served as a mediator)).

right to be represented by counsel of their choice, particularly in substantive areas requiring particular expertise.  In short, they have the right to hire the best professionals for their team." *Banning Ranch Conservancy v. Super. Ct. (Newport Beach)*, 193 Cal. App. 4th 903, 908 (2011).  Any disqualification motion implicates the presumptive right to counsel of one's choosing – but that right is particularly important in this case, where the ACLU is uniquely qualified to represent the thousands of indigent inmates whose lives and physical safety are in jeopardy and who will almost certainly fail to secure comparable representation if disqualification is granted.  *See id.* at 919 (denying motion to disqualify; noting the plaintiff's "limited resources to retain experienced environmental counsel"; and stating that if disqualification were granted, "the case [ ] may never be heard").  Under such circumstances, disqualification would be a catastrophic blow to Plaintiffs, would be against the public interest, and would serve no legitimate interest.  *Cf. In re Cnty. of Los Angeles*, 223 F.3d at 996 (warning that "[a] motion to disqualify a law firm can be a powerful litigation tactic to deny an opposing party's counsel of choice"); *Banning Ranch Conservancy*, 193 Cal. App. 4th at 911 (noting that motions to disqualify may be motivated by "costly and time-consuming gamesmanship by the other side").

### B.     Disqualification Is Not an Appropriate Remedy Because Less Drastic Remedies Would Cure Any Supposed Harm.

In recognition of the presumptive right to select one's counsel of choice, *see supra* Section II.A., the Court may not impose the drastic remedy of disqualification when more tailored measures suffice to correct the asserted harm. "The court's goal is not to impose a *penalty* . . . . Instead, what the court must do is focus on identifying an appropriate remedy for whatever *improper effect* the attorney's misconduct may have had in the case before it." *McMillan*, 165 Cal. App. 4th at 968 (emphasis in original) (citations omitted) (internal quotation marks

omitted). *See also Zambrano v. City of Tustin*, 885 F.2d 1473, 1480 (9th Cir.1989) ("[A]ny sanction imposed must be proportionate to the offense and commensurate with principles of restraint and dignity inherent in judicial power."); *Anderson v. Pryor*, 537 F. Supp. 890, 900 (W.D. Mo. 1982) (denying motion to disqualify and stating, "in conflict of interest situations, there are remedies other than disqualification that may be utilized").

Thus, even if the ACLU had violated the Stipulated Order (which Plaintiffs *strongly* dispute), the appropriate remedy would be to strike the allegations in the Complaint that are based on protected information. *See Lewis v. Telephone Employees Credit Union*, 87 F.3d 1537, 1559 (9th Cir. 1996) (rejecting complete exclusion of expert witness's testimony as excessive and not "carefully fashioned"; suggesting instead that only the witness's testimony gleaned from an improper interview should be excluded); *Yates v. Applied Performance Techs., Inc.*, 205 F.R.D. 497, 501 (S.D. Ohio 2002) (where party violated protective order by referencing confidential depositions in brief, the court refused to strike the entire brief, and instead struck only protected depositions attached to the brief); *Hechavarria*, 2010 WL 4937314, at *6 (finding that use of information violated spirit but not letter of protective order; refusing to sanction counsel; instead ordering parties to meet and confer regarding appropriate redactions to a filing).

//
//
//
//
//
//
//

CASE NO. CV 12-00428 DDP -17- PLAINTIFFS' OPPOSITION TO MOTION TO DISQUALIFY COUNSEL

# **CONCLUSION**

For the foregoing reasons, Plaintiffs request that this Court deny the Sheriff's motion to disqualify counsel.


DATED:  April 16, 2012　　　ACLU FOUNDATION OF SOUTHERN CALIFORNIA

By: /S/ - Peter J. Eliasberg
　　　　　　PETER J. ELIASBERG

Attorneys for Plaintiffs


DATED:  April 16, 2012　　　NATIONAL PRISON PROJECT OF THE AMERICAN CIVIL LIBERTIES UNION FOUNDATION

By: /S/ - Margaret Winter
　　　　　　MARGARET WINTER

Attorneys for Plaintiffs


DATED:  April 16, 2012　　　PAUL HASTINGS LLP

By: /S/ - John S. Durant
　　　　　　JOHN S. DURRANT

Attorneys for Plaintiffs


LEGAL_US_W # 71192588.3

CASE NO. CV 12-00428 DDP　　　-18-　　　PLAINTIFFS' OPPOSITION TO MOTION TO DISQUALIFY COUNSEL