# DECLARATION OF ESTHER LIM

**DECLARATION OF ESTHER LIM**

I, Esther Lim, hereby declare:

1.      I make this declaration based on my own personal knowledge and if called to testify I could and would do so competently as follows:

2.      I am the Jails Project Coordinator for the American Civil Liberties Union Foundation of Southern California ("ACLU/SC").

3.      As Jails Project Coordinator, one of my responsibilities is to interview inmates and draft declarations.  Another one of my responsibilities is to supervise law students and volunteers who work for the project.  I assign them inmates to interview and have personal knowledge of where those interviews occur.

4.      All of the interviews of inmates, former inmates in the Los Angeles County jails for the declarations filed in our September 2011 report in *Rutherford v Baca* were conducted in the attorney rooms in the jail facilities that make up the LA County jails, at the offices of the ACLU/SC, through United States Postal Service, or through electronic mail.

5.      Attached hereto as "Exhibit A" is a portion of the Sheriff's November 1, 2011 report to the Board of Supervisors which is available through the Los Angele County website at http://file.lacounty.gov/bos/supdocs/64531.pdf.

6.      An inmate I was interviewing in an attorney room at the jail identified Mr. Alex Rosas and Mr. Jonathan Goodwin as inmates interested in speaking with the ACLU/SC.  I thereafter conducted interviews with Mr. Rosas and Mr. Goodwin in an attorney room.

I hereby declare under penalty of perjury of the laws of the State of California and the United States that the foregoing is true and correct to the best of my knowledge and belief.  Executed April 16, 2012 in Los Angeles, California.

_____

Esther Lim

1

# DECLARATION OF ESTHER LIM

I, Esther Lim, hereby declare:

1.      I make this declaration based on my own personal knowledge and if called to testify I could and would do so competently as follows:

2.      I am the Jails Project Coordinator for the American Civil Liberties Union Foundation of Southern California ("ACLU/SC").

3.      As Jails Project Coordinator, one of my responsibilities is to interview inmates and draft declarations.  Another one of my responsibilities is to supervise law students and volunteers who work for the project.  I assign them inmates to interview and have personal knowledge of where those interviews occur.

4.      All of the interviews of inmates, former inmates in the Los Angeles County jails for the declarations filed in our September 2011 report in *Rutherford v Baca* were conducted in the attorney rooms in the jail facilities that make up the LA County jails, at the offices of the ACLU/SC, through United States Postal Service, or through electronic mail.

5.      Attached hereto as "Exhibit A" is a portion of the Sheriff's November 1, 2011 report to the Board of Supervisors which is available through the Los Angele County website at http://file.lacounty.gov/bos/supdocs/64531.pdf.

6.      An inmate I was interviewing in an attorney room at the jail identified Mr. Alex Rosas and Mr. Jonathan Goodwin as inmates interested in speaking with the ACLU/SC.  I thereafter conducted interviews with Mr. Rosas and Mr. Goodwin in an attorney room.

I hereby declare under penalty of perjury of the laws of the State of California and the United States that the foregoing is true and correct to the best of my knowledge and belief.  Executed April 16, 2012 in Los Angeles, California.

Esther Lim

1

# EXHIBIT A



LEROY D. BACA, SHERIFF

## County of Los Angeles
### Sheriff's Department Headquarters
### 4700 Ramona Boulevard
### Monterey Park, California 91754-2169



November 1, 2011

The Honorable Board of Supervisors
County of Los Angeles
383 Kenneth Hahn Hall of Administration
Los Angeles, California 90012

Dear Supervisors:

## STATUS OF RECOMMENDATIONS MADE IN THE OCTOBER 18, 2011, BOARD OF SUPERVISORS' MEETING REGARDING THE MERRICK BOBB AND OFFICE OF INDEPENDENT REVIEW REGARDING THE JAIL SYSTEM

On October 18, 2011, your Board requested that the Sheriff's Department (Department) report back on the motion to immediately implement the recommendations previously made by Special Counsel Merrick Bobb and the Office of Independent Review. In addition, your Board instructed the Department to work with the Chief Executive Office to immediately study the feasibility of purchasing Officer Worn Video cameras for all custody personnel to use and to identify potential funding for this purpose. Attached is a current update on each recommendation.

Should you have any questions or require additional information, please contact me or Assistant Sheriff Cecil W. Rhambo, Jr., at (323) 526-5065.

Sincerely,

LEROY D. BACA
SHERIFF

*A Tradition of Service*

*LOS ANGELES COUNTY SHERIFF'S DEPARTMENT*

*Leroy D. Baca, Sheriff*

# STATUS OF RECOMMENDATIONS MADE IN THE OCTOBER 18, 2011, BOARD OF SUPERVISORS MEETING REGARDING THE MERRICK BOBB AND OFFICE OF INDEPENDENT REVIEW REGARDING THE JAIL SYSTEM



## Our Mission

To transform the culture of our custody facilities in order to provide a safe, secure learning environment for our personnel and the inmates placed in their care. We strive to empower our personnel to provide a level of professionalism and service, consistent with our *"Core Values."*

*"Until all deputies feel a sense of professional accomplishment while providing sensible and constitutionally established services to those in our care, our success as a department is not accomplished."*

Exhibit A - Page 3

RECOMMENDATIONS BY MERRICK BOBB AND OFFICE OF INDEPENDENT REVIEW REGARDING THE JAIL SYSTEM

*On October 26, 2011, the Sheriff's Department has also made additions to the existing "Unreasonable Force" policy (3-01/025.10) to strictly prohibit head strikes against a hard object: "using force specifically intended to incapacitate a suspect or inmate by striking their head against hard, fixed objects such as roadways, cement floors, walls, jail bars, etc., or by deliberately kicking them in the head with a shod foot, or by deliberately striking their head with a knee while they are on the ground, will be subject to the same standard."*

*Additionally, the new Custody Force Response Team has established criteria to respond to any head strike, whether strike initiated by personnel, or by contact with floors, walls or other hard objects.*

V. **Rotate Jail Deputies between floors at Men's Central Jail and to other jail facilities at no less than six-month intervals.**

*On October 28, 2011, Custody Division issued Policy Directive 11-005, "Mandatory Rotation of Personnel," requiring all Custody Division unit commanders to develop a unit order requiring job assignments be rotated for all personnel working line positions in the jail no less than every six months. Positions requiring specialized training or experience shall be identified by each unit commander. Prior to implementation, all unit orders require approval of the Custody Division Chief.*

VI. **Enforce the Anti-Retaliation Policy to prevent Sheriff deputies from retaliating against inmates speaking with legal representatives or inmate advocacy groups or for expressing dissatisfaction with jail conditions.**

*In August 2011, the Department made revisions to the existing "Treatment of Inmates (5-12/005.00) policy to prevent deputies from retaliating against inmates. All staff assigned to Custody and Correctional Divisions were provided a formal briefing of the revisions to the policy. The briefing began August 4, 2011, and continued for a two-week period. In addition, the Department has redistributed the policy on October 25, 2011, for another two-week recurring briefing to ensure each staff member is fully aware of the expectations of the policy and have mandated quarterly recurring briefings be conducted.*

VII. **Interviews of inmates who make claims of excessive force should not be conducted by, or in the presence of, the deputies or their supervising sergeant involved in the alleged use of force.**

*On October, 26, 2011, the Sheriff's Department made revisions to the existing "Use of Force Reporting and Review Procedures" policy (5-09/430.00) ensuring privacy during force interviews: "Personnel involved in the use of force, either as*

Page 3 of 8

RECOMMENDATIONS BY MERRICK BOBB AND OFFICE OF INDEPENDENT REVIEW REGARDING THE JAIL SYSTEM

*a participant or a witness, including supervisors directing force, shall not be present when the interview is conducted."*

*In addition, the new Custody Force Response Team has the responsibility to immediately assume control of the investigation and initiate an internal investigation if any policy violations are observed.*

VIII.   **Interviews of inmates alleging use of force and any witnesses must occur as soon as feasibly possible, but no later than within 48 hours of the incident.**

*On October, 26, 2011, the Sheriff's Department made revisions to the existing "Use of Force Reporting and Review Procedures" policy (5-09/430.00) directing supervisors to conduct interviews within 48 hours: "Whenever a supervisor is notified of an alleged use of force involving a suspect or inmate, the supervisor shall fulfill his obligations to conduct interviews as required by this policy as soon as feasible, but no later than 48 hours after the notification."*

IX.   **Develop a prioritization process for Use of Force Investigations to ensure that the most severe incidents are completed within 30 days and that all others are completed within 60 to 90 days.**

*On October 24, 2011, the Sheriff's Departments developed a new Custody Force Response Team Policy (attachment B) establishes new criteria for force review. The new categories of force and the Response Team ensure that more severe force cases are externally evaluated and completed within 30 days. At that time they are reviewed by the newly formed Custody Force Review Committee (attachment C).*

X.   **Develop a plan for more intense supervision that requires jail sergeant to directly supervise jail deputies, including walking the row of jail cells and floors and responding as soon as possible to any notification of interaction where force is being used on an inmate.**

*On October 27, 2011, the Department delivered a letter to the Chief Executive Officer requesting additional supervisory staff in the jails. However, the Department felt it was imperative to immediately increase the staffing at Men's Central Jail. Effective November 6, 2011, Men's Central Jail will have two sergeants per floor, 19 in total to cover both Day and PM shifts.*

XI.   **Immediately mandate that all custody medical personnel report all suspicious injuries of inmates to the Internal Affairs Unit or the Captain of the jail facility where the inmate is housed.**

Page 4 of 8