PAUL B. BEACH, State Bar No. 166265
pbeach@lbaclaw.com
JUSTIN W. CLARK, State Bar No. 235477
jclark@lbaclaw.com
LAWRENCE BEACH ALLEN & CHOI, PC
100 West Broadway, Suite 1200
Glendale, California 91210-1219
Telephone No. (818) 545-1925
Facsimile No. (818) 545-1937

Attorneys for Defendant
Sheriff Leroy D. Baca, in his official capacity only

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX ROSAS and JONATHAN GOODWIN, on their own behalf and on behalf of those similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> LEROY BACA, Sheriff of Los Angeles County Jails; et al., <br><br> Defendant. | Case No. CV 12-00428 DDP (SHx) <br><br> Honorable Dean D. Pregerson <br><br> **DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO REMOVE THE ACLU AS COUNSEL FOR PLAINTIFFS DUE TO THEIR VIOLATION OF A STIPULATION AND COURT ORDER; DECLARATION OF JUSTIN W. CLARK** <br><br> Date: May 21, 2012 <br> Time: 10:00 a.m. <br> Crtm: 3 |

TO THE HONORABLE COURT, ALL PARTIES, AND TO THEIR COUNSEL OF RECORD:

///

///

///

///

///

1

ROSAS\Reply to Mtn to Remove the ACLU

Defendant Sheriff Leroy D. Baca("Defendant") hereby submits the following in Reply to Plaintiffs' Opposition to Defendant's Motion to Remove the ACLU as Counsel for Plaintiffs.

Dated:  May 7, 2012                    LAWRENCE BEACH ALLEN & CHOI, PC


By _____/s/  Justin W. Clark_____
        Justin W. Clark
        Attorneys for Defendant
        Sheriff Leroy D. Baca,
        in his official capacity only

2

ROSAS\Reply to Mtn to Remove the ACLU

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES .................................... 3

I.      Introduction ........................................................................... 3

II.     The ACLU Admits To Violating The Interview Protective Order And Has Not Submitted Any Evidence Rebutting Defendant's Showing ....... 4

III.    Plaintiffs' Failure To Address The Collateral Bar Rule Is Telling .......... 5

IV.     Plaintiffs' Interpretation Of The Interview Protective Order Is Absurd And, If Adopted, Would Contradict The Very Purpose Of The Order .... 6

    A.    Plaintiffs Ask The Court To Interpret The Interview Protective Order To A Ridiculously Narrow Degree ....................................... 6

    B.    Plaintiffs Interpret The Order Only To Apply To Statements By Opposing Counsel ......................................................................... 6

V.      There Is Clear Evidence That That The ACLU Has Violated The Interview Protective Order ...................................................................... 7

    A.    Inmate Statements ............................................................. 7

    B.    Christopher Brown And James Parker .............................. 9

    C.    Discussions With Sheriff's Personnel ............................ 10

VI.     This Motion Seeks Enforcement Of A Stipulated Court Order, Not To Disqualify The ACLU ................................................................ 11

VII.    The LASD Will Be Severely Prejudiced If The Interview Protective Order Is Not Enforced ............................................................... 11

VIII.   The Relationship Between The ACLU And The LASD Will Be Negatively Impacted If The Interview Protective Order Is Not Enforced ............................................................................ 12

IX.     Conclusion. ....................................................................... 12

ROSAS\Reply to Mtn to Remove the ACLU

# TABLE OF AUTHORITIES

**Statute**                                                                                    **Page**

California Rules of Professional Conduct, Rule 1-500....................................... 5

ii

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    Introduction.

Despite Plaintiffs' efforts to convolute the relief sought by Defendant, this Motion seeks nothing more than enforcement of a stipulated Court order that prohibits the ACLU from using, or making available for use in other litigation, information they have obtained by way of bargain they made with the Sheriff's Department more than two decades ago.  It is undisputed that the ACLU monitors certain conditions in the jails pursuant to *Rutherford v. Baca*, U.S.D.C. Case No. CV 75 – 04111 DDP.  It is also undisputed that, for the last two decades, the ACLU has had virtually unfettered access to County jail facilities, including the ability to have "discussions between [the ACLU] and Sheriff's staff, frequently without counsel for the Sheriff being present" and the ability to conduct "interviews with inmates throughout the jail system…" (*See*, Exhibit "A" to Defendant's Motion – Interview Protective Order, 1:19 – 23.)  The ACLU would not have had these abilities without the Interview Protective Order.

The Interview Protective Order was entered into by the ACLU and the Sheriff's Department so that the ACLU could better carry out their responsibilities as jail monitor in *Rutherford.*  To facilitate that goal, the parties stipulated to, and the Court approved, the Interview Protective Order, the terms of which are clear and unambiguous.  The Interview Protective Order is valid and enforceable and the ACLU is bound by its terms.  Here, the ACLU has violated the Interview Protective Order and the only adequate remedy for such violation is the removal of the ACLU and any counsel with whom the ACLU has shared protected information.

///
///
///
///
///

3

ROSAS\Reply to Mtn to Remove the ACLU

## II. The ACLU Admits To Violating The Interview Protective Order And Has Not Submitted Any Evidence Rebutting Defendant's Showing.

As set forth below, there is clear and abundant evidence that the ACLU has violated the Interview Protective Order. Defendant's Motion cites numerous examples of the ACLU's violation of the Interview Protective Order and additional analysis is provided below. In their Opposition, Plaintiffs fail to cite any evidence, admissible or otherwise, that even remotely refutes Defendant's showing. For example, Plaintiffs claim they "have not relied on any statements by the Sheriff's staff to the ACLU monitors during jail tours", but Plaintiffs fail to submit any evidence to prove their assertion. (Opposition, 10:5 – 6.)

The only "evidence" Plaintiffs offer is a declaration from the current ACLU jail monitor, Ester Lim, saying that the declarations filed in this case were taken in the attorney rooms in various custody facilities. (Lim Declaration, ¶ 4.) First, this statement is an admission that the ACLU violated the Interview Protective Order and this Court should grant this Motion based on this statement alone. **The Interview Protective Order does not contain any exception for the attorney room, implied or otherwise, and it is irrelevant that other attorneys are permitted to interview inmates in the attorney room.**[1] The difference between other attorneys and the ACLU is that the ACLU is the jail monitor, and has a presence in the jail (including signage, information in inmate pamphlets, etc.) that other attorneys do not have. For the most part, Plaintiffs' Opposition largely focuses on violations of the Interview Protective Order associated with newspaper

---

[1] While it is true that any attorney can meet with his or her client in the attorney room and take a statement, attorneys are not permitted inside the secure area of the jail to meet and speak with inmates, nor are other attorneys permitted to interview Sheriff's personnel without counsel being present. Furthermore, other attorneys certainly do not have signs posted in the jail with their contact information.

4

ROSAS\Reply to Mtn to Remove the ACLU

articles, reports by experts[2], etc. In so doing, Plaintiffs basically fail to address Defendant's contentions regarding the inmate declarations and information the ACLU has obtained through decades of interviews of Sheriff's Department personnel.

If the ACLU believes that the Interview Protective Order is improper (because it unlawfully limits their ability to interview inmates in the attorney room, and take written statements from them for use in other litigation), then the ACLU should seek to vacate or modify the Interview Protective Order. As set forth below, the ACLU has not done so.[3]

### III.    Plaintiffs' Failure To Address The Collateral Bar Rule Is Telling.

Just as Defendant expected, Plaintiffs argue that the Interview Protective Order, if enforced, would impermissibly limit the ACLU's right to practice law. Specifically, Plaintiffs claim that the Interview Protective Order violates Rule 1-500(A) of the California Rules of Professional Conduct, which prohibits attorneys from entering into settlement agreements that restrict the practice of law.

First, as Plaintiffs correctly point out and as referenced in the discussion to Rule 1-500(A), the Rule applies to settlement agreements, which the Interview Protective Order clearly is not. Second, even assuming *arguendo* that the Interview Protective Order is contrary to law (which it is not), the ACLU is still bound to

---

[2] Referral to these types of violations does not diminish the fact that they are, in fact, violations of the Interview Protective Order. Plaintiffs do not argue that they are not violations. Instead, they argue that the Interview Protective Order is impermissibly broad. Even if that is true, the ACLU is still bound to adhere to its terms. More importantly, in focusing on the so-called collateral violations, Plaintiffs barely discuss the more significant violations, namely, making inmates statements and discussions with Sheriff's staff available for use in other litigation.

[3] Even if the ACLU seeks to modify or vacate the order, they will still be bound by its terms with respect to declarations obtained under, and information obtained through the Interview Protective Order.

ROSAS\Reply to Mtn to Remove the ACLU

adhere to it pursuant to the Collateral Bar Rule, which Plaintiffs have not addressed in their Opposition.

As thoroughly briefed in Defendant's Motion, there are numerous examples where restrictions are properly imposed on attorneys' practice of law. (*See*, Defendant's Motion, Section VII – A.)  From bar membership to other California Rules of Professional Conduct, any argument that restrictions on the practice of law are somehow impermissible is untenable.

## IV. Plaintiffs' Interpretation Of The Interview Protective Order Is Absurd And, If Adopted, Would Contradict The Very Purpose Of The Order.

Plaintiffs make several arguments regarding their interpretation of the Interview Protective Order, none of which are supported by its plain language.

### A. Plaintiffs Ask The Court To Interpret The Interview Protective Order To A Ridiculously Narrow Degree.

Plaintiffs argue that the Interview Protective Order applies only to "statements" and not to the information contained in a statement.  (Opposition, 4:10 – 17.)  First, statements inherently contain information and there is nothing in the order to suggest that the information contained in a statement would not have protection, but the statement itself would.  In fact, the word "statement" is defined as "a communication or declaration in speech or writing, setting forth facts, particulars, etc." *See*, Dictionary.com, definition of "statement."  It is irrational to interpret the Interview Protective Order to bar the use of a written statement, but not the information contained in the statement.  If such an interpretation were accurate, then the Interview Protective Order would essentially be worthless, as it could easily be circumvented.

### B. Plaintiffs Interpret The Order Only To Apply To Statements By Opposing Counsel.

Plaintiffs ask the Court to interpret the Interview Protective Order so that it would only apply to statements by opposing counsel. (Opposition, Page 9,

6

ROSAS\Reply to Mtn to Remove the ACLU

Section B.)   First, the words "opposing counsel" do not appear anywhere in the language of the Interview Protective Order regarding the prohibition against using, of making available for use in other litigation, "statements made during inmate interviews or in discussions with Sheriff's staff…"  Indeed, the Interview Protective Order does not say, as Plaintiffs claim, that "statements by opposing counsel" will not be used or made available for use in other litigation.  Further, such an interpretation runs contrary to the very need for the Order in the first place, as opposing counsel are generally not present during interviews, so the notion that the Interview Protective Order applies only to statements made by opposing counsel is simply without support.

## V.    There Is Clear Evidence That That The ACLU Has Violated The Interview Protective Order.

Despite the ACLU's contentions to the contrary, the ACLU has violated the Interview Protective Order in at least two ways.  Specifically, by filing inmate declarations obtained and facilitated by the ACLU's access to the jails and by using information they have obtained through discussions with Sheriff's personnel.

### A.    Inmate Statements.

In support of their Motion for Class Certification and other documents in this case, Plaintiffs have submitted more than 75 inmate declarations complied by the ACLU.  It is undisputed that the ACLU interviewed inmates, took written statements from them, and then filed them in this case.[4]  This is exactly what the Interview Protective Order prohibits.

---

[4] Some of the declarations were also filed in *Rutherford* itself, and Plaintiffs' claim that once the documents were filed, they became publicly available and are outside the scope of the Interview Protective Order.  First, this contention ignores the fact that many of the declarations filed in this case were never filed in *Rutherford*.  Second, to read into the Order the exception the ACLU proposes would render the Order worthless.  It is hornbook law that courts do not interpret a writing so that it leads to an absurd result.

7

ROSAS\Reply to Mtn to Remove the ACLU

Plaintiffs attempt to carve out an exception to the Interview Protective Order by arguing that all of the inmate declarations filed in this case were obtained from inmates during interviews conducted in the attorney room. (Lim Declaration, ¶ 4.) First, even if this is true, the Interview Protective Order does not contain an exception for the attorney room. Simply because the ACLU chooses to meet with a particular inmate in the attorney room (rather than some other location in the jail, like a dayroom, programming room, or cell front) does not diminish the application of the Interview Protective Order. Frankly, it makes sense that the ACLU would choose the attorney room as a suitable location to interview inmates as it provides for privacy and is otherwise suitable for conducting interviews. Basically, the ACLU asks the Court to read into the Interview Protective Order a provision that says it does not apply to statements taken in the attorney room, but there is nothing in the Interview Protective Order to even remotely suggest such a limitation.

Second, the ACLU's contention that no violation of the Interview Protective Order has occurred because the declarations were only taken in the attorney room is disingenuous. The ACLU does not offer any explanation as to how the attorney room interviews were organized, but the question is, how did the ACLU determine which inmates to interview? How did the inmates know to contact the ACLU? While the ACLU does not offer any evidence answering this question, the ACLU's current jail monitor, Ester Lim, and her predecessor, Mary Tiedeman, recently explained to the Citizen's Commission on Jail Violence how the ACLU goes about taking statements from inmates. (*See,* Declaration of Justin W. Clark ["Clark Decl."], ¶¶ 2 – 9.) Specifically, ACLU personnel regularly walk the rows of County jail custody facilities. (*Id.*) Based on the ACLU's role as jail monitor, inmates regularly choose to speak with ACLU representatives regarding a variety of issues. (*Id.*) As Ms. Tiedeman explained: "[she] would talk to [inmates] at their cell and then, depending on what they said and what they felt comfortable with, [she] would often follow-up with them in the attorney room because they didn't feel

8

ROSAS\Reply to Mtn to Remove the ACLU

comfortable talking in great detail at their cell." (*Id.*) Without the Interview Protective Order, the ACLU monitor would not have access to the cell front in the first place to conduct the initial interview. In fact, the ACLU would not have the same presence in the jails they currently have without the Interview Protective Order[5]. This is the point, and the ACLU completely disregards it.

## B. Christopher Brown And James Parker.

A clear example of the ACLU's violation of the Interview Protective Order can be found in the allegations and declarations of inmates Christopher Brown and James Parker.[6] Allegations regarding Parker and Brown are included in the First Amended Complaint (Brown, ¶ 106; Paker, ¶ 182), and a declaration from Brown was submitted in support of Plaintiffs' Motion for Class Certification. (*See*, Docket No. 20.5, Exhibit "E".) At the Citizen's Commission on Jail Violence (discussed above), Ester Lim (the ACLU's jail monitor) stated that on January 24, 2011, she witnessed an incident involving Parker while interviewing Brown in the attorney room. (*See*, Clark Decl., ¶8 – Exhibit "A".) Ms. Lim stated that following the incident, she "met with Mr. Brown inside his housing unit." When asked, "what was your purpose of going in there to talk to Mr. Brown inside the module?" Ms. Lim responded, "To see if anything had happened and also to get the identification of Mr. Parker." (*Id.*) In unambiguous terms, the ACLU interviewed an inmate in his housing location and then filed a declaration from that inmate in this case.

///

[5] As this Court is aware, there is signage in the jails referencing the ACLU's role as jail monitor and, upon their admission to County jail, inmates are provided with an informational pamphlet that also contains information about the ACLU.

[6] Parker was convicted of assault on a peace officer for the incident alleged in the First Amended Complaint. Accordingly, his claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).

9

## C.    Discussions With Sheriff's Personnel.

The ACLU has also violated the Interview Protective Order by making "discussions with Sheriff's staff" available for use in this case. It is undisputed that the ACLU has weekly (if not daily) discussions with LASD personnel, the vast majority of which occur without LASD personnel having the benefit of counsel. Such "discussions" have been going on for two decades, and they would not have been possible without the Interview Protective Order. The ACLU does not and cannot refute that almost everything they know about the County jail system has come from "discussions with Sheriff's staff" and to claim otherwise ignores reality and how large and complex the County jail system really is.[7]

As jail monitors and by way of the Interview Protective Order, the ACLU occupies a unique position in the jail, and with that position comes unprecedented access to information about the LACJ system. The ACLU has ongoing discussions with LASD staff and through those discussions, the ACLU is provided with information about the LACJ system.[8] By the express terms of the Interview Protective Order, the ACLU is prohibited from using the knowledge they have about the LACJ system (which has come from decades of discussions with LASD staff) in non-*Rutherford* litigation.

---

[7] This Court has toured County jail facilities on a number of occasions. During those tours, as would reasonably be expected, the Court asked questions of Department personnel to explain how various components of the jail operation are carried out. The jail system is far too complicated to learn about how it works simply by observation.

[8] As set forth above, The ACLU attempts to draw a distinction between "statements" and information; however, statements inherently contain information. Regardless of whether a "statement" is directly quoted or not, the use of information contained in a statement still violates the Interview Protective Order and as set forth in this Motion, everything the ACLU knows about the LACJ system has come from discussions with LASD staff.

10

## VI. This Motion Seeks Enforcement Of A Stipulated Court Order, Not To Disqualify The ACLU.

Plaintiffs attempt to characterize Defendant's Motion as seeking disqualification. While the ACLU would be required to withdraw as counsel if this Motion is granted (along with any counsel with whom the ACLU has shared information), Defendant's Motion does not seek disqualification but rather, enforcement of the Interview Protective Order. For this reason, Defendant did not cite or address the law regarding disqualification and, therefore, the ACLU's arguments regarding this issue are irrelevant. Importantly, Plaintiffs have not cited any authority analogous to this situation.

## VII. The LASD Will Be Severely Prejudiced If The Interview Protective Order Is Not Enforced.

For the last twenty years, the LASD has relied on the Interview Protective Order. In connection with this reliance, the LASD has provided the ACLU with unfettered access to information and personnel that no other lawyers have. Thought the course of the ACLU's access to the jails and the personnel who run them, they have gained an institutional level of knowledge regarding the layout of the jails, the operation of the jails, and personnel who work in them. If the Interview Protective Order is not enforced, the LASD will be severely prejudiced because the ACLU will be able to use the knowledge they have about the jails against the LASD in litigating this case. For example, in preparing and serving discovery, what would stop the ACLU from informing their co-counsel about the appropriate LASD personnel to notice for deposition about a particular topic? Through their work in the jails, the ACLU knows who works where and what their responsibilities include. This same concern applies to possible written discovery requests where the ACLU could assist in preparing pointed discovery requests for documents that other counsel might not even know exist. The ACLU

///

11

should not be permitted to gain a litigation advantage by way of breaching their agreement and violating a court order.

**VIII.** **The Relationship Between The ACLU And The LASD Will Be Negatively Impacted If The Interview Protective Order Is Not Enforced.**

It is undisputed that ACLU and the LASD have worked cooperatively (despite occasion disagreements) for nearly two decades. The cornerstone of this working relationship is the Interview Protective Order, and the assurances it provides. At present, the relationship between the ACLU and LASD is considerable strained, due in large part to the ACLU's strategy of pursuing litigation, as compared to fulfilling their monitoring role. If the Interview Protective Order is not enforced and the ACLU is permitted to continue their representation herein, the relationship between the ACLU and the LASD will likely be irreparably damaged. Defendant has no desire to damage the cooperative relationship that presently exists between the LASD and the ACLU but for this relationship to continue in its present incarnation, the ACLU must abide by the terms of the Interview Protective Order.

**IX.** **Conclusion.**

The Interview Protective Order provides that "[n]one of the statements made during inmate interviews or in discussions with Sheriff's staff will be used or made available for use in other litigation…" The ACLU agreed to abide by this term, and the Sheriff's Department has relied on it for 20 years, granting the ACLU unprecedented access to the Los Angeles County jail system. There is ample evidence (even by admission of the ACLU) that the Interview Protective Order has been violated in this case. Defendant respectfully requests that this Court hold the ACLU to the agreements it has made with the Sheriff's Department (agreements the Sheriff's Department has relied upon for decades); enforce its own Order (which would reaffirm confidence in the judicial system); grant this Motion; and order the

12

ROSAS\Reply to Mtn to Remove the ACLU

removal of the ACLU as counsel, as well as any other law firm or attorneys with whom the ACLU has shared information.

Dated:  May 7, 2012                          LAWRENCE BEACH ALLEN & CHOI, PC


By _____/s/  Justin W. Clark_____
                Justin W. Clark
                Attorneys for Defendant
                Sheriff Leroy D. Baca,
                in his official capacity only

13

## **DECLARATION OF JUSTIN W. CLARK**

I, JUSTIN W. CLARK, declare as follows:

1.      I am an attorney at law, duly authorized to practice before this Court and I am an associate in the law firm of Lawrence Beach Allen & Choi, A Professional Corporation, attorneys of record for Defendant Sheriff Leroy D. Baca ("Defendant") in the above-entitled action.  I have personal knowledge of the facts stated herein, except those stated upon information and belief and as to those matters, I believe them to be true.  If called to testify to the matters herein, I could and would competently do so.

2.      On April 16, 2012, I attended a meeting of the Citizens' Commission on Jail Violence.  During the meeting, Mary Tiedeman, a former ACLU jail monitor, and Esther Lim, a current ACLU jail monitor, in response to questions from the Commission about the ACLU's activities in the jails, Ms. Lim and Ms. Tiedeman explained the procedures of ACLU follows for interviewing inmates. Ms. Lim and Ms. Tiedeman's statements are accurately set forth below.  A true and correct copy of the audio recording of this meeting is attached hereto as Exhibit "A."

3.      Specifically, Mary Tiedeman, in response to a question regarding how she would learn about the use of force and violence in the jails, stated: "I would see someone with a black eye during my walk-throughs, and also we got calls from people who worked in the jail, like chaplains, mental health people, and public defenders." (Exh. "A", 56:22-56:37.)

4.      Ms. Tiedeman responded "yes" in response to the question, "did you see, as you were walking halls and in the jail, did you see the injuries that the inmates have suffered?" (Exh. "A", 56:48-56:54.)

5.      Ms. Tiedeman also responded "yes" in response to the question, "[i]n the course of being monitor, did you interview some of these inmates whose

14

ROSAS\Reply to  Mtn to Remove the ACLU

injuries you saw?" (Exh. "A", 57:19-57:25.) Ms. Tiedeman testified that these inmates told her about the incident that led to the injuries. (Exh. "A", 57:26-57:31.)

6.      Ms. Tiedeman also stated, "I would talk to [inmates] at their cell and then, depending on what they said and what they felt comfortable with, I would often follow-up with them in the attorney room because they didn't feel comfortable talking in great detail at their cell." (Exh. "A", 59:05-59:19.)

7.      Furthermore, Esther Lim, when asked "[w]here in those facilities [Men's Central Jail and Twin Towers Correctional Facility] do you usually interview the inmate?" responded, "In their respective attorney rooms."  In response to the question, "[d]o you walk the halls and visit the inmate in their cells?" Ms. Lim responded "yes." (Exh. "A", 1:18:00-1:18:09.)

8.      Ms. Lim also stated that on January 24, 2011, she witnessed the purported beating of an inmate, James Parker, while interviewing another inmate, Christopher Brown, in Twin Towers Correctional Facility.  Ms. Lim stated that following the incident, she "met with Mr. Brown inside his housing unit." (Exh. "A", 1:33:10-1:33:12.)  When asked, "what was your purpose of going in there to talk to Mr. Brown inside the module?" Ms. Lim responded, "To see if anything had happened and also to get the identification of Mr. Parker." (Exh. "A", 1:33:17-1:33:28.)

9.      Ms. Lim also stated that following her alleged witnessing of violence on Mr. Parker, she met with Mr. Parker the following morning.  When asked, "[d]id [Mr. Parker] describe to you what had happened in the incident that you had observed?" Ms. Lim responded, "yes." (Exh. "A", 1:37:13-1:37:22.)

10.      Attached hereto as Exhibit "B" is a true and correct copy of a Declaration from Sheriff Leroy Baca that was previously filed in *Peter Johnson v. County of Los Angeles*, U.S.D.C. Case No. CV 08-03515 DDP (SHx).  In response to the ACLU's representation of the *Peter Johnson* plaintiffs, the

15

ROSAS\Reply to Mtn to Remove the ACLU

Sheriff's Department filed a motion to enforce the Interview Protective Order. The motion was never ruled on because the parties agreed to settlement discussions in lieu of formal litigation. In agreeing to pursue settlement, the County / Sheriff's Department expressly reserved the right to seek enforcement of the Interview Protective Order in the future should settlement discussions break down.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on May 7, 2012, at Glendale, California.

_____/s/  Justin W. Clark_____
Justin W. Clark

16

# EXHIBIT A

17

Name & Address:
Justin W. Clark, Bar No. 235477
Lawrence Beach Allen & Choi, PC
100 W. Broadway, Suite 1200
Glendale, CA 91210-1219
(818) 545-1925

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX ROSES and JONATHAN GOODWIN, on their own behalf and on behalf of those similarly situated<br><br>PLAINTIFF(S)<br>v.<br>Leroy Baca, Sheriff of Los Angeles County Jails; et al.<br><br>DEFENDANT(S). | CASE NUMBER: CV 12-00428 DDP (SHx)<br><br><br>**NOTICE OF MANUAL FILING** |

PLEASE TAKE NOTICE:

The above-mentioned cause of action has been designated as an electronically filed case. In accordance with General Order 08-02 and Local Rule 5-4 the following document(s) or item(s) will be manually filed.

**List Documents:**
CD: Exhibit A to Declaration of Justin W. Clark in Support of Reply to Plaintiffs' Opposition to Defendant's Motion to Remove the ACLU as Counsel for Plaintiffs

**Document Description:**

☐ Administrative Record

☒ Exhibits

☐ Ex Parte Application for authorization of investigative, expert or other services pursuant to the Criminal Justice Act [see Local Rule 79-5.4. Documents to be excluded, (h)]

☐ Other

**Reason:**

☐ Under Seal

☒ Items not conducive to e-filing (i.e., videotapes, CDROM, large graphic charts)

☐ Electronic versions are not available to filer

☐ Per Court order dated _____

☐ Manual Filing required (*reason*):

May 7, 2012
Date

/s/ Justin W. Clark
Attorney Name

Defendant Sheriff Leroy D. Baca
Party Represented

Note: File one Notice in each case, each time you manually file document(s).

G-92 (03/09)                     NOTICE OF MANUAL FILING                     CCD-G92

18

PAUL B. BEACH, State Bar No. 166265
pbeach@lbaclaw.com
JUSTIN W. CLARK
jclark@lbaclaw.com
LAWRENCE BEACH ALLEN & CHOI, PC
100 West Broadway, Suite 1200
Glendale, California 91210-1219
Telephone No. (818) 545-1925
Facsimile No. (818) 545-1937

Attorneys for Defendant
Sheriff Leroy D. Baca, in his official capacity only

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX ROSAS and JONATHAN GOODWIN, on their own behalf and on behalf of those similarly situated, | Case No. CV 12-00428 DDP (SHx) |
| | Honorable Dean D. Pregerson |
| Plaintiffs, | |
| vs. | **DEFENDANT'S NOTICE OF FILING OF EXHIBIT "A" TO DECLARATION OF JUSTIN W. CLARK IN SUPPORT OF REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO REMOVE THE ACLU AS COUNSEL FOR PLAINTIFFS** |
| LEROY BACA, Sheriff of Los Angeles County Jails; et al, | |
| Defendants. | |
| | Date:  May 21, 2012 |
| | Time:  10:00 a.m. |
| | Crtm:  3 |

///

///

///

///

///

///

///

///

1

ROSAS\NOTICE OF FILING EX A TO DECL OF JWC RE REPLY RE ACLU

Defendant Sheriff Leroy D. Baca hereby attaches Exhibit A to Declaration of Justin W. Clark in Support of Reply to Plaintiffs' Opposition to Defendant's Motion to Remove the ACLU as Counsel for Plaintiffs.

Dated: May 7, 2012                    LAWRENCE BEACH ALLEN & CHOI, PC


By _____
Justin W. Clark
Attorneys for Defendant
Sheriff Leroy D. Baca,
in his official capacity only

2

ROSAS\NOTICE OF FILING EX A TO DECL OF JWC RE REPLY RE ACLU

## PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I, Debra L. Ard, am employed in the aforesaid County, State of California; I am over the age of 18 years and not a party to the within action; my business address is 100 West Broadway, Suite 1200, Glendale, CA 91210.

On May 7, 2012, I served the foregoing **DEFENDANT'S NOTICE OF FILING OF EXHIBIT "A" TO DECLARATION OF JUSTIN W. CLARK IN SUPPORT OF REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO REMOVE THE ACLU AS COUNSEL FOR PLAINTIFFS** on the interested parties in this action by placing a true copy thereof, enclosed in a sealed envelope, addressed as follows:

### SEE ATTACHED SERVICE LIST

BY MAIL: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on the same day with postage thereon fully prepaid at Glendale, California, in the ordinary course of business. I am aware that on motion of the party service, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on May 7, 2012, at Glendale, California.

By _____
         Declarant

3
ROSAS\NOTICE OF FILING EX A TO DECL OF JWC RE REPLY RE ACLU

Service List
ROSAS, et al. v. Baca, et al.
CV 12-0428 PSG (SHx)


Peter J. Eliasberg
Marisol Oriheula
ACLU Foundation of So. California
1313 W. 8th Street
Los Angeles, CA 90017


Margaret Winter
Eric Balaban
David M. Shapiro
National Prison Project of the American
  Civil Liberties Union Foundation
915 15th St., NW
Washington, D.C.


Donna M. Melby
John S. Durrant
Jade H. Leung
Elizabeth C. Mueller
Paul Hastings
515 S. Flower St., 25th Floor
Los Angeles, CA 90071-2228

4

ROSAS\NOTICE OF FILING EX A TO DECL OF JWC RE REPLY RE ACLU

# EXHIBIT B

23

# DECLARATION OF SHERIFF LEROY D. BACA

I, Sheriff Leroy D. Baca, declare as follows:

1. I have personal knowledge of the facts stated herein, except those stated upon information and belief and, as to those matters, I believe them to be true. If called upon to testify to the matters herein, I could and would competently do so.

2. I am and since December 1998 have been the duly elected Sheriff of the County of Los Angeles and the head of the Los Angeles County Sheriff's Department ("LASD" or "Department"). I have been a member of the Department since August 1965.

## The Los Angeles County Sheriff's Department

3. As this Court knows, the LASD is the largest sheriff's department in the nation, with over 18,000 budgeted sworn and professional staff. The LASD provides law enforcement services to 41 incorporated cities, 90 unincorporated communities, 9 community colleges, and hundreds of thousands of daily commuters of the Metropolitan Transit Authority and the Rapid Rail Transit District. Everyday, over 4 million people are directly within the jurisdiction of the Department.

4. With respect to the judicial system, the LASD protects 58 Superior Courts and over 600 bench officers. The Department also manages the nation's largest local jail system, housing approximately 20,000 inmates each day. The Los Angeles County jail system is larger than the prison systems of at least 40 states.

## The History of the Department's Relationship with the ACLU

5. I am informed and believe that the American Civil Liberties Union of Southern California ("ACLU") has filed a motion with this Court to modify a 1989 stipulation of the parties and order of this Court ("Order"). I strongly oppose the ACLU's request for the reasons set forth below, among others.

1

24

6. The class action judgment for injunctive relief in this matter, entered in the 1970's, sets forth certain legal requirements in the custody environment. Some of these requirements were overturned by the Ninth Circuit Court of Appeals, and other portions of the judgment were thereafter overturned by the United States Supreme Court.

7. Since entry of the judgment in this matter approximately 30 years ago, the Department has cooperated extensively with the ACLU in its efforts to monitor compliance with the judgment. For example, the Department has allowed the ACLU almost unlimited access into all of its jail facilities, day or night, weekday or weekend. The Department has also given the ACLU access to all of its jail staff, especially high ranking executives. The Department has also given the ACLU access to documents and computer information. The Department has also created office space in its custody operations facilities so that the ACLU can carry out its activities in the jails. Importantly, at my instruction to my custody command staff and their subordinates, the Department has also extended the ACLU's vast access to the Department, its information, and its personnel far beyond the scope of the judgment in *Rutherford*, into almost every aspect of the custody environment. Furthermore, for decades, the Department has agreed, without the need for court intervention, to compensate the ACLU every month so that it can carry out its activities. The extensive working relationship that the Department and the ACLU have enjoyed has resulted in agreed upon changes in the custody environment without the need of costly and time consuming judicial intervention.

8. As a result of my duties as Sheriff, as well as Director of Homeland Security-Mutual Aid for California Region I (which serves 13 million people), I am familiar with the custody operations of numerous other law enforcement agencies. I know of no other law enforcement agency that has permitted a civil

2

25

rights organization access and cooperation similar to that which the Department has provided to the ACLU.

9. The access and working relationship that the Department has fostered with the ACLU is consistent with and an extension of my management philosophy -- to incorporate innovative best practices using pro-active, progressive problem solving. I firmly believe in a transparent agency, open to scrutiny from within and from the public. As the leader of the Department, I am a strong proponent of civil rights and firmly believe that everyone's state and federal rights should be protected. I have continued the Department's close working relationship with the ACLU because its presence in the jails can be an effective tool to obtain new ideas, different opinions, and an outside perspective on how the Department can improve its jail operations. I believe that this relationship has also benefitted the ACLU, not just financially, but by giving it an opportunity to advocate on behalf of people and with respect to issues that it otherwise would not have encountered.

### Harm to the Department

10. I strongly believe that if the Court were to grant the ACLU's Motion, then the longstanding cooperative working relationship enjoyed between the two organizations would be dramatically and forever changed. The foundation of this relationship is trust. On the one hand, the Department trusts that it can share information, favorable and unfavorable, with the ACLU in hopes of continually improving its jail system, and without the concern of it being used against the Department and its members in non-*Rutherford* litigation. On the other hand, the ACLU trusts that it will be provided unprecedented access to a very large maximum security custody operation and timely, accurate information so that they can assist inmates regarding a variety of issues and improve the custody environment.

3

11.    The Department regularly asks its employees to deal directly with attorneys and legal representatives from the ACLU, without the employees having the benefit of counsel. The Department's members readily participate in this dialogue because they know that the ACLU has not and will not bring suit against them. Unlike typical civil suits against employees where the law imposes an obligation on the employer to indemnify the employee against the claim, in the custody environment, employees do not have a right to such indemnity. *See*, Cal. Gov. Code § 844.6(d). Moreover, many suits include claims for punitive damages, also which do not carry with them an obligation on the employer to indemnify the employee. *See*, Cal. Gov. Code § 825(b). Therefore, custody staff have a heightened concern against being named in civil actions.

12.    For the last two decades, the Department has continually relied upon the ACLU's agreement and this Court's Order. The Department and the ACLU agreed that in exchange for unprecedented, virtually unlimited access to the Department, the ACLU would refrain from initiating new civil litigation against the Department with regard to its jail operations. Of course, nothing in the parties' agreement and the resulting Order prevents or precludes the ACLU from discharging its legal responsibilities to its clients in *Rutherford*. Similarly, nothing prevents any inmate in the Los Angeles County jail from bringing and fully litigating any grievances against the Department--which is their constitutional right--with counsel other than the ACLU.

13.    If this Court were to now change 20 years of precedent and permit the ACLU to use information that it obtained during monitoring activities in *Rutherford* as a basis for new litigation against the Department and its employees, then I would have to reevaluate whether to continue to require the Department's members to interact with the ACLU more than that which is required by law. Also, in most circumstances, I would feel a need to afford Department members concurrent access to legal counsel to protect their and the Department's legal

4

rights. I cannot and will not allow attorneys from the ACLU to take unfair advantage of the Department or its members.

14.    Of course, regardless of the Court's ruling, I will continue to instruct my subordinates to allow the ACLU access to the jails to perform their legitimate *Rutherford* responsibilities, and the Department will comply with all outstanding orders of the Court. However, I believe that a ruling herein adverse to the Department would require me to review whether the Department will continue its tradition of voluntarily accommodating and interacting with the ACLU about numerous non-*Rutherford* custody issues, as well as whether it is in the best interest of the Department to pursue legal recourse to narrow the pending *Rutherford* litigation and the scope of the monitoring opportunities the ACLU has undertaken as a result thereof.

15.    In summary, I strongly believe that the ACLU should be required to abide by their agreement, the terms of which have been followed and reasonably relied upon by the Department for decades. If this Court is going to now modify its Order, then I believe that, at the very least, the Court should grant the Department the following appropriate relief:

- First, the Court should strictly and swiftly enforce the terms of the parties' agreement and this Court's Order up to the date the Court's Order is changed. Specifically, the ACLU should be forbidden from using any and all information that they have gathered since the inception of the Order in any non-*Rutherford* litigation including, without limitation, the recently filed litigation *P. Johnson, et al. v. Los Angeles County Sheriff's Department, et. al.*, U.S.D.C. Case No. CV 08-3515 DDP (JTLx);

- Second, the ACLU should be recused from acting as counsel in any litigation against the Department concerning the jail system unless and until they can affirmatively prove to the satisfaction of the Court and the

5

28

Department that they can handle the matter without using information that they obtained as a result of the Order;

- Third, if there is any reason to believe that the ACLU has already violated the terms of the Order -- and based on the papers filed by the ACLU to date in the *Johnson* matter -- it appears that there is proof of this fact, then this Court should enter an order to show cause why the ACLU and its representatives should not be held in contempt of court and appropriate relief imposed; and,

- Finally, the Court should appoint a new, neutral court monitor to enforce the remaining operative portions of the judgment in this matter and return the ACLU to its original limited role in this litigation, that of counsel for the plaintiff class.

## Purported Concerns Raised By The ACLU's New Counsel, Ms. Bird

16.    I am informed and believe that Plaintiffs' counsel, Ms. Bird, asserts that she has certain concerns if she and her office are not permitted to act as counsel in the new *Johnson* matter. Ms. Bird's concerns appear to be without merit.

17.    First, there is no question that any inmates who want to bring a claim related to a purported disability are entitled to and will have legal representation. In fact, there are already **three** other law firms (in addition to Ms. Bird's office) who are counsel in the *Johnson* matter. Moreover, one of these firms, the Disability Rights Legal Center, recently brought and negotiated a class action settlement for injunctive relief on behalf of hearing impaired inmates in the Los Angeles County jails. *See, Valenzuela v. County of Los Angeles*, U.S.D.C. Case No. CV 02-9092 ABC (JWJx). One of the other firms, the Hadsell firm, has also represented inmates in disability class action matters against law enforcement agencies (i.e., *Pierce, et al. v. County of Orange*, United States District Court Case No. CV 01-00981 ABC (MLGx)). Finally, the third set of counsel, Heller

6

29

Ehrman LLP, is a very large law firm with more than a dozen offices worldwide and 650 attorneys (*see*, www.hewm.com).

18.   During the decades that the parties have been bound by the Order in *Rutherford*, there is an established pattern in Los Angeles County of inmates being able to bring claims against the Department (whether individually or on a class basis). Many of these suits are without merit and have been dismissed without much public attention; unfortunately, some of these cases have had merit and have been settled or otherwise resolved. The Court can and should take judicial notice of the numerous state and federal lawsuits brought by inmates against the Department during the 30 year tenure of this Court's Order. These cases show that inmates can and do bring litigation against the Department without the involvement of the ACLU.

19.   Second, Ms. Bird claims that assistance for the unspecified needs of unspecified inmates might be delayed unless her office is counsel in the *Johnson* matter. Ms. Bird presents no proof in support of her assertion. Additionally, regardless of whether the ACLU is counsel in the *Johnson* matter, they still can and should bring to the Department's attention any and all immediate needs of any disabled inmates so those needs can be promptly addressed. If the ACLU believes their concerns have not been resolved satisfactorily, they can and should contact a high-ranking LASD official including, but not limited to, the Chiefs of Correctional Services Division (Chief Alex Yim) or the Custody Operations Division (Chief Dennis Burns.)

20.   Third, Ms. Bird claims that she and her firm must be counsel in the *Johnson* matter because she fears that inmates may be retaliated against for pursuing their legal rights. Ms. Bird's assertion is disturbing because it is my understanding that during all of the regular meetings between the Department and the ACLU, neither Ms. Bird nor any other person associated with the ACLU has ever advised the Department that any inmate has ever been retaliated against for

7

30

utilizing the ACLU. Of course, retaliation against inmates would be against Department policy and would be promptly investigated and, if substantiated, severely punished. However, it is disingenuous of the ACLU to now claim that retaliation has occurred but for them to have never informed the Department of such allegations.

21. Finally, the assertions, expressly or by implication, by Ms. Bird that the Department is indifferent to or ignoring its legal obligations to disabled inmates are untrue. There is no doubt that some of the Department's custody facilities are outdated. Many were built long before laws such as the Americans With Disabilities Act were enacted. All of the facilities suffer from extensive use. That, however, does not mean that the Department does not believe that inmates who are disabled cannot and should not be reasonably accommodated within the necessary security safety and security concerns of the custody environment. I have instructed my custody executives to promptly investigate the ACLU's accusations and, if required by law, make appropriate changes so that disabled inmates' rights are protected. I have asked my personnel to work cooperatively with the ACLU in this endeavor. The reality, however, is that such a process takes time. Unfortunately, I have been advised that regardless of the Department's efforts, the ACLU has insisted that any joint agreement must take the form of a court entered consent decree, which I believe is unnecessary, unwarranted, and will only complicate and slow progress, at a much increased expense to all parties.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on June 20, 2008, at Monterey Park, California.

_____
Sheriff Leroy D. Baca

31