PETER J. ELIASBERG (SB# 189110)
peliasberg@aclu-sc.org
MARISOL ORIHUELA (SB# 261375)
morihuela@aclu-sc.org
ACLU FOUNDATION OF
SOUTHERN CALIFORNIA
1313 W. 8th Street
Los Angeles, CA 90017
Phone:  (213) 977-9500
Fax:  (213) 977-5299

DONNA M. MELBY (SB# 86417)
donnamelby@paulhastings.com
JOHN S. DURRANT (SB# 217345)
johndurrant@paulhastings.com
JADE H. LEUNG (SB# 279651)
jadeleung@paulhastings.com
ELIZABETH C. MUELLER (SB# 278283)
bethmueller@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA  90071-2228
Phone:  (213) 683-6000
Fax:  (213) 627-0705

MARGARET WINTER (*pro hac vice*)
mwinter@npp-aclu.org
ERIC BALABAN (*pro hac vice application forthcoming*)
ebalaban@npp-aclu.org
DAVID M. SHAPIRO (*pro hac vice application pending*)
dshapiro@npp-aclu.org
NATIONAL PRISON PROJECT OF
THE AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
915 15th St., NW
Washington, D.C. 20005
Phone:  (202) 393-4930
Fax:  (202) 393-4931

Attorneys for Plaintiffs
ALEX ROSAS and JONATHAN
GOODWIN, on behalf of themselves
and of those similarly situated

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX ROSAS and JONATHAN GOODWIN on behalf of themselves and of those similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>LEROY BACA, Sheriff of Los Angeles County Jails,<br><br>Defendant. | CASE NO. CV 12-00428 DDP (SHx)<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Date:  May 21, 2012<br>Time:  10:00 a.m.<br>Ctrm.:  3<br>Judge:  Hon. Dean D. Pregerson |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................... 1

II.   STANDARD FOR MOTION TO DISMISS ................................................ 1

III.  PLAINTIFFS HAVE STANDING TO SEEK INJUNCTIVE RELIEF......... 2

    A.    The Principal Case Defendant Relies Is Inapplicable........................... 2

    B.    The Allegations In The First Amended Complaint Are Sufficient To Establish that the Plaintiffs Face an Immediate Threat of Injury Under Governing Supreme Court and Ninth Circuit Precedent ..................................................................................... 3

IV.   CONCLUSION ...................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Allee v. Medrano*,
    416 U.S. 802 (1974) ................................................................................................. 4, 5

*Armstrong v. Davis*,
    275 F.3d 849 (9th Cir. 2001) ....................................................................................... 5

*City of Los Angeles v. Lyons,*
    461 U.S. 95 (1983) ........................................................................................... 2, 3, 4, 9

*Commonwealth of Pennsylvania v. State of West Virginia*,
    262 U.S. 553 (1923) ...................................................................................................... 8

*Dimarzo v. Cahill*,
    575 F.2d 15 (1st Cir. 1978) ...................................................................................... 9, 10

*Equity Lifestyle Props., Inc. v. San Luis Obispo*,
    548 F.3d 1184 (9th Cir. 2008) ...................................................................................... 2

*Farmer v. Brennan*,
    511 U.S. 825 (1994) ...................................................................................................... 8

*Hague v. C.I.O.*,
    307 U.S. 496 (1939) .................................................................................................. 4, 5

*Hawkins v. Camparet-Cassani*,
    251 F.3d 1230 (9th Cir. 2001) ............................................................................... 3, 4, 5

*Helling v. McKinney*,
    509 U.S. 25 (1993) ..................................................................................................... 1, 7

*Holmes v. Fisher*,
    854 F.2d 229 (7th Cir. 1988) ........................................................................................ 8

*I.N.S. v. Delgado*,
    466 U.S. 210 (1984) ...................................................................................................... 5

*Ingles v. City of New York*,
    No. 01 Civ. 8279 (DC), 2003 WL 402565, at *9 (S.D.N.Y. Feb. 20, 2003) ...................... 9

*Johnson v. California*,
543 U.S. 499 (2005) ....................................................................................5, 6

*LaDuke v. Nelson*,
762 F.2d 1318 (9th Cir. 1985)......................................................................3, 4

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ..........................................................................................2

*Maya v. Centex Corp.*,
658 F.3d 1060 (9th Cir. 2011) .......................................................................1, 2

*Ramos v. Lamm*,
639 F.2d 559 (10th Cir. 1980)............................................................................8

*Rizzo v. Goode*,
423 U.S. 362 (1976) ...........................................................................................5

*Shepherd v. Dallas County*,
591 F.3d 445 (5th Cir. 2009) .............................................................................9

*Smith v. Arkansas Dep't of Corr.*,
103 F.3d 637 (8th Cir. 1996)..............................................................................8

*Smith v. Montgomery County*,
573 F. Supp. 604 (D. Md. 1983) ........................................................................8

*Warth v. Seldin*,
422 U.S. 490 (1975) ...........................................................................................2

*Wilkins-Jones v. County of Alameda*,
No. C 08-1485 MHP, 2010 WL 2198196 (N.D. Cal. May 28, 2010).................8

**OTHER AUTHORITIES**

Fed. R. Civ. Proc. 12(b)(1) .....................................................................................1

Fed. R. Civ. Proc. 12(b)(6) .....................................................................................1

CASE NO. CV 12-00428 DDP (SHx)          iii

## I.      INTRODUCTION

In his second motion to dismiss ("Motion"), defendant Leroy Baca ("Defendant") claims that plaintiffs Rosas and Goodwin (collectively, "Plaintiffs") lack standing to seek injunctive relief.  Defendant's argument is directly contrary to Supreme Court precedent – numerous cases hold that current inmates have standing to challenge the conditions of their confinement where, as here, they allege an ongoing pattern of unlawful behavior that presents an unreasonable risk of harm. "[A] remedy for unsafe conditions need not await a tragic event." *Helling v. McKinney*, 509 U.S. 25, 33 (1993).  Defendant relies upon cases in which plaintiffs are no longer threatened by defendants' conduct.  That is not what Plaintiffs have alleged in this case.  Rather, Plaintiffs have alleged in painstaking factual detail that Defendant's ongoing improper and illegal practices in the Los Angeles County jails ("Jails") have created an "unreasonable risk" of significant injury to Plaintiffs and other members of the putative class. *Id.* at 35.  Defendant's Motion should be denied.

## II.     STANDARD FOR MOTION TO DISMISS

While Defendant moves to dismiss under Rule 12(b)(6), a motion to dismiss for lack of standing is more properly brought under Rule 12(b)(1).  *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) ("Though lack of *statutory* standing requires dismissal for failure to state a claim, lack of *Article III* standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).").

When analyzing a motion to dismiss based on Rule 12(b)(1) rather than Rule 12(b)(6), the court must apply different standards.  The Ninth Circuit has noted that "*Twombly* and *Iqbal* are ill-suited to application in the constitutional standing context because in determining whether plaintiff states a claim under 12(b)(6), the

CASE NO. CV 12-00428 DDP (SHx)                  -1-

court necessarily assesses the merits of plaintiff's case." *Maya*, 658 F.3d at 1068. By contrast, the threshold question of whether plaintiff has standing (and whether the court has jurisdiction) is distinct from the merits of a plaintiff's claim. "The jurisdictional question of standing precedes, and does not require, analysis of the merits." *Id*. (quoting *Equity Lifestyle Props., Inc. v. San Luis Obispo*, 548 F.3d 1184, 1189 n.10 (9th Cir. 2008)).

For purposes of ruling on a motion to dismiss for lack of standing, "courts must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975). At the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Plaintiffs must satisfy the three elements of constitutional standing: (1) concrete and particularized, actual or imminent injury in fact, which is (2) fairly traceable to the challenged conduct of the Defendant, and (3) the injury will likely be redressed by a favorable decision. *See Lujan*, 504 U.S. at 560-61. Defendant only challenges Plaintiffs' allegation of an imminent injury. For the reasons set forth below, Plaintiffs meet their burden and have standing to seek injunctive relief.

III.    PLAINTIFFS HAVE STANDING TO SEEK INJUNCTIVE RELIEF

A.    The Principal Case Defendant Relies Is Inapplicable.

Defendant relies principally on *City of Los Angeles v. Lyons,* 461 U.S. 95 (1983). *Lyons*, however, is transparently inapplicable. In *Lyons*, the plaintiff claimed that he was subjected to an unlawful chokehold by the Los Angeles Police Department during a traffic stop. He sought injunctive relief to prevent future chokeholds. The court held that the plaintiff did not present a justiciable controversy for injunctive relief because he was unable to show that he was

CASE NO. CV 12-00428 DDP (SHx)          -2-          PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

reasonably likely to suffer future injury from the use of chokeholds by police officers.  Among other things, the court determined that the plaintiff could not establish that it was reasonably likely that he "would have another encounter with the police."  *Id.* at 105-06.  These are not the facts of this case, where it is a *certainty* that the Plaintiffs, as detainees, will have ongoing "encounters" with Los Angeles Sheriff's Department ("LASD") deputies.

*Lyons* is inapplicable for a second reason.  As this Ninth Circuit has noted, in *Lyons* the Supreme Court based its conclusion that the plaintiff could not show a likelihood of future harm in part on the " absence of 'any [record] evidence showing a pattern of police behavior' suggestive of an unconstitutional application of the chokehold."  *LaDuke v. Nelson*, 762 F.2d 1318, 1324 (9th Cir. 1985).  Here, by contrast, Plaintiffs have both alleged a widespread practice of deputies using excessive and unjustified force, and provided detailed allegations of dozens and dozens of such incidents that support the allegation of an illegal pattern of behavior.  Thus, *Lyons* is inapplicable.  *See id.*

> B.     The Allegations In The First Amended Complaint Are Sufficient To Establish that the Plaintiffs Face an Immediate Threat of Injury Under Governing Supreme Court and Ninth Circuit Precedent

To state a claim for prospective injunctive relief, Plaintiffs must allege that they are realistically threatened with future harm at the hands of the LASD.  They have easily met this minimal burden.

*Hawkins v. Camparet-Cassani*, 251 F.3d 1230 (9th Cir. 2001), is instructive.  In *Hawkins*, the inmate-plaintiff challenged the LASD's use of stun belts, seeking injunctive relief on behalf of a class of other inmates.  At the time, the LASD had a practice of placing remotely operated electro-shock belts under the clothing of certain inmates, when the inmates were in court or on their way to or from court.  The LASD did not use the belts on all inmates, but rather reserved the use of the belts for some inmates, including those the LASD deemed to be disruptive, likely to

CASE NO. CV 12-00428 DDP (SHx)                    -3-                    PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

attempt escape, or dangerous. The LASD had placed a stun belt on plaintiff on some occasions but had *not* placed a belt on the plaintiff on other subsequent occasions. The defendants, including Sheriff Baca, challenged the plaintiff's standing to seek injunctive relief regarding the use of stun belts, relying on *Lyons*. The court quickly distinguished *Lyons* on several grounds and determined the plaintiff had standing to seek injunctive relief. The reasoning in *Hawkins* is equally applicable in this case.

First, in *Hawkins*, there was a likelihood that the challenged conduct would recur. *Id.* at 1236. The plaintiff remained imprisoned and in the custody of defendants who *could* subject the plaintiff to the use of the stun belt at any time. *Id.* at 1236-37. The Court therefore concluded that it was not a remote possibility that the LASD might force the plaintiff to again wear a stun belt.

As in *Hawkins*, Plaintiffs here have alleged sufficient facts to establish a likelihood that the challenged conduct, *e.g.*, excessive use of force, will recur. Plaintiffs remain imprisoned and in Defendant's custody, and need not be arrested or engage in illegal behavior to subject them to abuse. Each day that Plaintiffs remain in custody, they are at risk of future injury. Plaintiffs have alleged that, on numerous occasions, Defendant's agents have assaulted inmates without provocation. In their First Amended Complaint ("FAC"), Plaintiffs submitted 94 separate accounts from neutral observers and other inmates of abuse and excessive use of force indicating that the conduct is real and the risk of injury is immediate.

In *Hawkins*, the plaintiff challenged an official procedure, but this is not a requirement to seek injunctive relief. *Id.* at 1237; *cf. La Duke*, 762 F.2d at 1324 ("The Supreme Court has repeatedly upheld the appropriateness of federal injunctive relief to combat a 'pattern' of illicit law enforcement behavior."). Plaintiffs satisfy the threat of immediate injury standard where they challenge either an official government procedure *or* a "pattern" of unlawful conduct and seek injunctive relief. *See Allee v. Medrano*, 416 U.S. 802, 812 (1974); *Hague v. C.I.O.*,

CASE NO. CV 12-00428 DDP (SHx)     -4-     PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

307 U.S. 496 (1939); *see also I.N.S. v. Delgado*, 466 U.S. 210 (1984); *Rizzo v. Goode*, 423 U.S. 362, 375 (1976) (distinguishing *Allee* and *Hague* as involving patterns of misbehavior, not isolated incidents). Plaintiffs' FAC contains voluminous allegations of a pattern of unlawful behavior by the LASD, *see, e.g.*, FAC ¶¶ 3, 11, 185, 194. These allegations are sufficient to state a claim to defeat Defendant's Motion. *See Armstrong v. Davis*, 275 F.3d 849, 860 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504–05 (2005) (Plaintiff may satisfy the requirement to show that injury is likely to recur by alleging a pattern of illegal behavior: "Thus, where the defendants have repeatedly engaged in the injurious acts in the past, there is a sufficient possibility that they will engage in them in the near future to satisfy the 'realistic repetition' requirement.").

Finally, here, as in *Hawkins*, Plaintiffs have alleged facts sufficient to sustain their claim that there is a longstanding and continuing pattern of illegal and excessive force and that they and the other class members will therefore suffer irreparable injury in the absence of injunctive relief. Taking Plaintiffs' allegations as true, as the Court must on a motion to dismiss, Plaintiffs Rosas and Goodwin have each been threatened and brutally attacked by LASD deputies while inmates in Men's Central Jail. *See* FAC ¶¶ 219-233. Plaintiffs also provide substantial evidence in support of their allegation that similar attacks on other prisoners have occurred in the past and will occur in the future. Specifically, the FAC sets forth scores of recent incidents of deputy-on-inmate abuse to support the contention that there is a pattern of abuse to which Sheriff Baca has been indifferent. This level of pleading far exceeds what any court could reasonably require of a plaintiff.

In addition, the FAC includes the opinion of Thomas Parker, a former high-ranking FBI agent with experience conducting pattern and practice investigations into illegal behavior within law enforcement agencies. Mr. Parker's observations about the Jails support the existence of such a pattern of excessive force and abuse.

According to Mr. Parker, there "is a pattern of inmates 'suffering severe injuries, maiming, and death, some caused by fellow inmates, but most often at the hands of, or with the acquiescence or assistance of, the deputy sheriffs who are their keepers.'" FAC ¶ 19. Indeed, the amount of excessive force is so significant that Mr. Parker concluded that it is worse than in any jail or prison he has ever investigated: "I have never experienced any facility exhibiting the volume and repetitive patterns of violence, misfeasance, and malfeasance impacting the Los Angeles County Jail system." *Id.*

The FAC also amply supports the conclusion that the severity of the force is overwhelming, by describing 94 separate incidents of excessive force. The FAC details numerous allegations of severe injuries – particularly severe injuries to inmates' heads and faces – that are consistent with grossly excessive force. For example, deputies beat Juan Diego Mares so violently that he suffered a fractured jaw, and required multiple eye surgeries and eight stitches in his ear. A deputy punched Mr. Mares' face several times, threw him to the ground, kicked him roughly 10 times in the face, jaw, and back of his head, and finally kicked Mr. Mares' ear three times. FAC ¶ 79. Luis Bueno was on his way to church in Men's Central Jail when four deputies began punching him violently in the head and body, leaving him with a swollen artery in his brain, a fractured nose, a torn ligament in his ankle, and possible rib fractures. FAC ¶ 84. Inmate Mr. B suffered a concussion and a gash that took 35 stitches to close after deputies slammed his head into a cement wall, sank taser probes into him, then sat on his back punching his face and head even after he had lost consciousness. FAC ¶¶ 61-63. Deputies repeatedly punched Mr. C in the head and shot him with a taser, resulting in five staples on the top of this head, twelve stitches on his face, four fractured vertebrae,

CASE NO. CV 12-00428 DDP (SHx)    -6-

a shattered right shoulder, a broken rib, and two severely sprained ankles.  FAC ¶ 89.[1]

Given the number of incidents detailed in the FAC, the severity of the injuries alleged, and the expert opinion that is based on those complaints, if the Court were to conclude that Plaintiffs could not show a reasonable likelihood of future injury and dismiss this case on standing grounds, it would be virtually impossible for any inmate to have standing to bring a case for injunctive relief challenging a pattern of excessive force in a correctional institution.  Such an outcome would nullify the power of the federal courts to prevent brutal, unconstitutional attacks.

That is not the law, however.  There is no requirement that a plaintiff must wait to be harmed before seeking relief – much less a requirement that the named Plaintiffs in this case must wait to be attacked *again*.  *See Helling*, 509 U.S. at 33-35 (concluding that a prisoner could bring an Eighth Amendment claim for injunctive relief based on allegations that prison officials had exposed him "to levels of [second-hand smoke] that pose an unreasonable risk of serious damage to

---

[1] *See also, e.g.*, FAC ¶ 59 (alleging Arturo Fernandez suffered contusions on his head from deputies assaulting him); FAC ¶ 60 (alleging deputies fractured Lawrence Davis' jaw and carved initials for a racist slur in his scalp while he was unconscious); FAC ¶ 68 (alleging Cesar Mancilla suffered a collapsed lung, broken ribs, nasal fracture, four broken teeth, and burns on his skin as a result of numerous deputies kicking, punching and pepper spraying him); FAC ¶ 69 (alleging deputies broke Stephen Teran's cheekbone in a beating during which they repeatedly punched and kicked his body, neck, and head); FAC ¶ 77 (alleging a deputy slammed Rashaad Pilgrim's face into the concrete floor and beat him, chipping his tooth and causing fractures in his face, blunt head trauma, and injury to his right ear); FAC ¶ 81 (alleging deputies hit Jimmy Knott in the head causing a bleeding head wound); FAC ¶ 82 (alleging deputies hit and kicked Joseph Hager causing a fracture in Mr. Hager's face, a black eye, swelling in his ears, and bleeding in his mouth); FAC ¶ 122 (alleging deputies handcuffed Evans Tutt, and then tasered him, beat him with flashlights, and kicked him, breaking Mr. Tutt's nose in multiple places, injuring his ribs, head, face, knee, and leg, chipping his tooth, and leaving bruises all over his body).

CASE NO. CV 12-00428 DDP (SHx)                    -7-                    PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

his future health"); *Farmer v. Brennan*, 511 U.S. 825, 845 (1994) (rejecting the argument that a prisoner must "suffer physical injury before obtaining court ordered correction of objectively inhumane prison conditions," because "'[o]ne does not have to await the consummation of threatened injury to obtain preventive relief'") (quoting *Commonwealth of Pennsylvania v. State of West Virginia,* 262 U.S. 553, 593 (1923)); *Ramos v. Lamm*, 639 F.2d 559, 572 (10th Cir. 1980) (a prisoner "does not need to wait until he is actually assaulted before obtaining relief"); *Smith v. Arkansas Dep't of Corr.*, 103 F.3d 637, 644 (8th Cir. 1996) (standing requirements satisfied where a prisoner "is subjected to an imminent threat of harm in these conditions").

Plaintiffs Rosas, Goodwin, and the proposed class in this case encounter LASD deputies, and the challenged practices, on a daily basis. Unlike the plaintiff in *Lyons*, the Plaintiffs in this case are currently confined to the Jails and are continually subject to LASD policies and practices. For the same reason, the other cases cited by Defendant are similarly inapposite. *See*, *e.g.*, *Holmes v. Fisher*, 854 F.2d 229, 232 (7th Cir. 1988) (plaintiff lacked standing to assert claim for injunctive relief *seeking hearing plaintiff had actually received two months prior to filing lawsuit*, because, *inter alia*, he did not contend that he was likely to be arrested and held for an extended period in the future); *Smith v. Montgomery County*, 573 F. Supp. 604, 608 (D. Md. 1983) (plaintiff lacked standing to seek injunction challenging detention center's strip search policy because the policy applied to detainees only upon their *initial intake* and plaintiff failed to credibly allege that she would be arrested in the future and subject to the same intake policy); *Wilkins-Jones v. County of Alameda*, No. C 08-1485 MHP, 2010 WL 2198196 (N.D. Cal. May 28, 2010) (plaintiff lacked standing to seek injunction asserting non-ADA compliant jail cells when plaintiff was only detained for five days and could not credibly assert that she would be arrested again and subjected to non-ADA compliant facilities in the future).

CASE NO. CV 12-00428 DDP (SHx)  -8-

Furthermore, as other courts have acknowledged, *Lyons* is inapplicable to a case where plaintiffs allege a systemic practice of excessive and unjustified force in a prison or jail:

> For the following reasons, *Lyons* is different from this case. First, plaintiffs have alleged much more than an isolated instance of abuse by one or two DOC officers. Plaintiffs' amended complaint alleges supervisory complicity or acquiescence in abuse committed by officers and efforts by DOC personnel to cover up unprovoked assaults. Plaintiffs contend that a policy of excessive force existed at DOC facilities, and that inmates will suffer irreparable harm as so long as the policy exists.
> . . .
>
> Second, where Lyons was a member of the public, the instant plaintiffs are prisoners subject to the continual control of DOC staff.

*Ingles v. City of New York*, No. 01-CIV-8279 (DC), 2003 WL 402565, at *9 (S.D.N.Y. Feb. 20, 2003).

Prisoners frequently have standing to challenge their conditions of confinement. In *Shepherd v. Dallas County*, 591 F.3d 445 (5th Cir. 2009), the court affirmed the district court's entering judgment on a jury verdict for a detainee who alleged that his conditions of confinement violated his due process right to medical care while in custody. *See also Dimarzo v. Cahill*, 575 F.2d 15, 18 (1st Cir. 1978) (holding that prisoners in a facility with substandard fire safety had standing to bring suit.). In *Dimarzo*, the court emphasized:

> It cannot be doubted that features relating to general health and sanitation within Essex are of prime interest to inmates incarcerated there. Nor can there be any serious dispute that plaintiff inmates have a personal stake in the fire-worthiness of the structure in which they are housed. Defendant Hall inaptly construes the requirement of injury as requiring proof that the inmates inevitably will suffer physical injury or death from fire before they have standing to challenge the hazardous fire conditions which the district court found existing at Essex. We find this proposition to fall far below contemporary expectations of constitutionally-mandated humane treatment. One need not wait for the conflagration before concluding that a real and present threat exists.

CASE NO. CV 12-00428 DDP (SHx)                    -9-                    PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

*Id.* Standing is similarly appropriate here.

IV.   CONCLUSION

Plaintiffs have met the limited showing required and the allegations in the complaint are sufficient to demonstrate that they have standing to seek injunctive relief.  Accordingly, Plaintiffs respectfully request that the Court deny Defendant's Motion.

RESPECTFULLY SUBMITTED:

DATED:  May 7, 2012          ACLU FOUNDATION OF SOUTHERN
                             CALIFORNIA

                             By:          /s/ Peter J. Eliasberg
                                          PETER J. ELIASBERG

                             Attorneys for Plaintiffs

DATED:  May 7, 2012          NATIONAL PRISON PROJECT OF THE
                             AMERICAN CIVIL LIBERTIES UNION
                             FOUNDATION

                             By:          /s/ Margaret Winter
                                          MARGARET WINTER

                             Attorneys for Plaintiffs

DATED:  May 7, 2012          PAUL HASTINGS LLP

                             By:          /s/ John S. Durrant
                                          JOHN S. DURRANT

                             Attorneys for Plaintiffs

LEGAL_US_W # 71297003.9

CASE NO. CV 12-00428 DDP (SHx)          -10-          PLAINTIFFS' OPPOSITION TO
                                                     DEFENDANT'S MOTION TO DISMISS
                                                     FIRST AMENDED COMPLAINT