PAUL B. BEACH, State Bar No. 166265
pbeach@lbaclaw.com
JUSTIN W. CLARK, State Bar No. 235477
jclark@lbaclaw.com
LAWRENCE BEACH ALLEN & CHOI, PC
100 West Broadway, Suite 1200
Glendale, California  91210-1219
Telephone No. (818) 545-1925
Facsimile No. (818) 545-1937

Attorneys for Defendant
Sheriff Leroy D. Baca

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX ROSAS and JONATHAN GOODWIN, on their own behalf and on behalf of those similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> LEROY BACA, Sheriff of Los Angeles County Jails; et al, <br><br> Defendants. | Case No. CV 12-00428 DDP (SHx) <br><br> Honorable Dean D. Pregerson <br><br> **DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** <br><br> Date:   May 21, 2012 <br> Time:   10:00 a.m. <br> Crtm:   3 |

TO THE HONORABLE COURT, ALL PARTIES, AND TO THEIR

COUNSEL OF RECORD:

///

///

///

1

ROSAS\Reply to Opp to MTD re standing

2

Defendant Leroy D. Baca, in his official capacity only ("Defendant"), hereby submits the following Reply Memorandum of Points and Authorities to Plaintiffs' Opposition to Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint.

Dated:  May 14, 2012                           LAWRENCE BEACH ALLEN & CHOI, PC


                                        By _____/s/  Justin W. Clark_____
                                                Justin W. Clark
                                                Attorneys for Defendant
                                                Sheriff Leroy D. Baca,
                                                in his official capacity only

ROSAS\Reply to Opp to MTD re standing

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### I.    <u>Introduction.</u>

Plaintiffs argue that they have standing for two reasons.  First, Plaintiffs claim because "they remain in custody, they are at risk of future injury" without any specifically articulated threat.  Under *Lyons,* and even the cases Plaintiffs rely on, this is insufficient to confer standing as some allegation demonstrating that a likelihood of future injury is required.  The First Amended Complaint ["FAC"] contains no such allegation.  Second, Plaintiffs claim that the incidents involving other inmates alleged in the FAC demonstrate a pattern or practice of violations of inmates' rights, conferring standing on named Plaintiffs Rosas and Goodwin.  Despite Plaintiffs claims to the contrary, all of the authority Plaintiffs rely on for this proposition involve conduct that was undertaken pursuant to official policies of the involved entities, making the wrongful conduct "officially sanctioned."  This is vastly different than what Plaintiffs allege here, which is a pattern of excessive and unlawful use of force by deputies based on allegedly inadequate policies and procedures.

### II.    <u>The Court In *Lyons* Relied On More Than Just The Fact That Another Encounter With Police Was Speculative.</u>

Plaintiffs seek only injunctive relief barring the Sheriff's Department from using excessive force against inmates.  Ignoring that such an order would, if entered, require nothing more than compliance with existing law, to have standing to seek such an order, Plaintiffs must allege facts sufficient for the Court to conclude that Plaintiffs are "realistically threatened by a *repetition* of [the violation]." *Lyons,* 461 U.S. at 109, 103 S.Ct. 1660 (emphasis added)(holding that plaintiff cannot establish the requisite type of harm simply by pointing to some past injury).

In an attempt to distinguish *Lyons* from the facts of this case, Plaintiffs argue that Supreme Court in *Lyons* relied on the fact that the plaintiff therein

ROSAS\Reply to Opp to MTD re standing

could not establish that it was reasonably likely that Lyons would have another encounter with law enforcement. (Opposition, 3:2 – 4, "[a]mong other things, the court determined that the plaintiff could not establish that it was reasonably likely that he 'would have another encounter with the police'" *citing*, *Lyons*, 461 U.S. at 105 – 106.)  In contrast, Plaintiffs argue that here, it is a certainly that Plaintiffs will come into contract with jailers, making *Lyons* distinguishable.  While it is undoubtedly true that all inmates will come into contact with jailers during their incarceration, the *Lyons* Court relied on far more than mere contact with police. Specifically, the Supreme Court noted the lack of any reasonable possibility that he would once again be *placed in a chokehold.  Lyons*, 461 U.S. at 103 - 105 ("Lyons' standing to seek the injunction requested depended on whether he was likely to suffer future injury from the use of the chokeholds by police officers", in other words, Lyons did not face "a real and immediate threat of *again* being illegally choked.")

Despite Plaintiffs' arguments to the contrary, contact alone with law enforcement is not enough to confer standing.  Instead, Plaintiffs had to allege that they are at risk of the both encountering law enforcement again in the future, and something more than speculation that that they will again be the victim of excessive force or false disciplinary charges.  In *Lyons*, the misconduct was the legal use of a choke hold.  Here, Plaintiffs allege that they witnessed deputies using excessive force against other inmates and that after thereafter, Plaintiffs were threatened by deputies, had contraband planted in their cells, and were the victims of lawful force.  (FAC, ¶¶ 218 – 233.)  Here, the FAC does not include any allegation whatsoever that Rosas[1] or Goodwin are likely to experience

---

[1] Rosas also lacks standing because he was recently convicted of murder and is scheduled to be transferred to State Prison.  Defendant is in the process of obtaining a copy of the conviction and, if time allows, Defendant will request that the Court take judicial notice of the conviction.

4

anything similar in the future.  If the FAC included such an allegation, Plaintiffs would have cited to it, and they have not.  Even assuming the truth of Plaintiffs allegations, it is pure speculation that Plaintiffs are at risk of suffering anything similar to their past experiences.

**III.    Plaintiffs' Reliance On _LaDuke v. Nelson_ Is Misplaced Because Plaintiffs Do Not Allege That Their Claims Are Based On Officially Sanctioned Activities By The Sheriff's Department.**

Plaintiffs argue that Defendant's reliance on _Lyons_ is misplaced because, in Lyons, "the Supreme Court based its conclusion that the plaintiff could not show a likelihood of future harm in part on the 'absence of 'any [record] evidence showing a pattern of police behavior' suggestive of an unconstitutional application of the chokehold.' _LaDuke v. Nelson_, 762 F.2d 1318, 1324 (9th Cir. 1985)."  (Opposition, 3:7 – 11.)  As set forth below, Plaintiffs fail to include the most important language from _LaDuke_, which requires, in those cases where a pattern of misconduct has been found to confer standing, that the conduct at issue be "official sanctioned."  There is no such allegation in the FAC.

As Plaintiffs correctly point out, there are at least two ways to show that an injury is likely to reoccur.  "First, a plaintiff may show that the defendant had, at the time of the injury, a written policy, and that the injury 'stems from' that policy.  _Hawkins,_ 251 F.3d at 1237.  In other words, where the harm alleged is directly traceable to a written policy, _see Gomez v. Vernon,_ 255 F.3d 1118, 1127 (9th Cir.2001), there is an implicit likelihood of its repetition in the immediate future.  Second, the plaintiff may demonstrate that the harm is part of a **'pattern of officially sanctioned ... behavior, violative of the plaintiffs' [federal] rights.'** _LaDuke v. Nelson,_ 762 F.2d 1318, 1323 (9th Cir.1985)(emphasis added)."  _Armstrong v. Davis_, 275 F.3d 849, 861 (9th Cir. 2001).  In _LaDuke_, the Immigration and Naturalization Service had been conducting farm and ranch checks of migrant farm housing without a warrant.  _LaDuke_, 762 F.3d at 1121.

5

ROSAS\Reply to Opp to MTD re standing

The searches were part of the INS's regular course of enforcement activities, and thus, constituted a "pattern of officially sanctioned…behavior…"  Here, in contrast, there is no allegation that the wrongdoing alleged in the FAC was "officially sanctioned" by the Sheriff's Department.  In fact, the FAC makes it abundantly clear that the alleged wrongdoing was not "officially sanctioned," but instead, was the result of an alleged lack of supervision and a lack of adequate policies and procedures.[2]

## IV.   The Only Allegations Relevant To This Motion Are Those Of The Named Plaintiffs.

Plaintiffs dedicate a significant portion of their Opposition to allegations of misconduct unrelated to the Rosas or Goodwin.  While Defendant takes such allegations seriously, in terms of Rosas and Goodwin's standing (or lack thereof), they are wholly irrelevant.  "Standing is a jurisdictional element that must be satisfied prior to class certification. While the fact of certification will preserve a class's standing even after the named individual representatives have lost the required "personal stake," .…certification is not sufficient in itself to bestow standing on individuals or a class who lacked the requisite personal stake at the outset."  *LaDuke,* 762 F.2d at 1325.  Even though they seek to represent a class of inmates, Rosas and Goodwin must themselves have standing to seek injunctive relief which, as set forth herein, they do not.  Accordingly, the

---

[2]  Defendant obviously disputes Plaintiffs' allegations, but includes these references to demonstrate that Plaintiffs do not based their claims on officially sanctioned activities like those at issue in *LaDuke*.  Plaintiffs use words like "acquiesced in, fostered, and implicitly authorized", but never allege that the Sheriff's Department had an official policy to use excessive force or manufacture false disciplinary charges against inmates.

6

allegations of other inmates are irrelevant to this Motion.[3]

## V.    Plaintiffs Do Not Allege That They Face A Real And Immediate Threat Of Reoccurrence.

Plaintiffs cite *Hawkins v. Comparet-Cassani*, 251 F.3d 1230, 1237 (9th Cir. 2001), in support of their arguments regarding the "likelihood of recurrence", but the FAC simply does not even say these words. In *Hawkins*, an inmate had an electric restraint "stun" belt placed on him, and activated, when he appeared in court for sentencing. As the Ninth Circuit noted, "Hawkins needed only to enter a Los Angeles courtroom to justify use of the belt. As his history demonstrates, this prospect was not remote." *Id*. The situation in *Hawkins* was completed different than in this case. In *Hawkins*, a very routine and virtually guaranteed event triggered the potential for reoccurrence – namely, going to court. Basically, every time Hawkins went from jail to court (an often daily occurrence), it was likely that he would be placed in a stun belt. Here, on the other hand, other than the mere fact that they are in custody, Plaintiffs fail to articulate any triggering event that would result in a reoccurrence of their past experiences. Indeed, a reoccurrence would require, assuming the truth of Plaintiffs' allegations, the commission of potentially criminal misconduct by Sheriff's deputies. This is very different than just going to court.

## VI.    Plaintiffs Claims Are Not Based On The Conditions Of Their Confinements.

Plaintiffs reliance on *Helling v. McKinney*, 509 U.S. 25, 33 (1993) for the proposition that "a remedy for unsafe conditions need not await a tragic event" is also misplaced. *Helling* is a condition of confinement case, and has nothing whatsoever do with standing to seek injunctive relief associated with alleged

---

[3] Plaintiffs also argue that the other inmate allegations show a pattern of misconduct; however, as set forth above, there is no allegation that this pattern, even if it existed, was official sanctioned by the Sheriff's Department.

ROSAS\Reply to Opp to MTD re standing

unlawful uses of force and other deputy misconduct.  Specifically, plaintiff in *Helling* was a prisoner incarcerated in Nevada state prison.  *Id*. at 14.  His claims were based on the fact that he was housed in a cell with an inmate that smoked cigarettes, and his claims were based on the possibility that he would suffer health consequences unless he was granted injunctive relief.  In *Helling*, the activity causing plaintiff's harm (inhaling cigarette smoke) was virtually continuous which is just not the case here.  Given the facts of *Helling*, it makes sense that standing would exist to avoid the development of an illness, but that is not what is at issue in this case.  Plaintiffs other "conditions of confinement" cases are equally irrelevant.

## VII.   Conclusion.

The FAC does not include any allegation by Rosas or Goodwin that they are likely to suffer any harm in the future.  Further, as the FAC makes clear, Plaintiffs allegations are not based on "officially sanctioned" conduct, and no class has been certified in this case, making any claims other than those of Rosas and Goodwin irrelevant to the determination of this Motion.  Indeed, Rosas and Goodwin themselves must have standing to seek injunctive relief, which requires allegations that the harm they allegedly suffered will be repeated in the future.  There is no such allegation in the FAC and accordingly, this Motion should be granted because Rosas and Goodwin lack standing.

Dated:  May 14, 2012                         LAWRENCE BEACH ALLEN & CHOI, PC


By _____/s/  Justin W. Clark_____
          Justin W. Clark
          Attorneys for Defendant
          Sheriff Leroy D. Baca,
          in his official capacity only

8

ROSAS\Reply to Opp to MTD re standing