PAUL B. BEACH, State Bar No. 166265
pbeach@lbaclaw.com
JUSTIN W. CLARK, State Bar No. 235477
jclark@lbaclaw.com
LAWRENCE BEACH ALLEN & CHOI, PC
100 West Broadway, Suite 1200
Glendale, California  91210-1219
Telephone No. (818) 545-1925
Facsimile No. (818) 545-1937

Attorneys for Defendant
Sheriff Leroy D. Baca

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX ROSAS and JONATHAN GOODWIN, on their own behalf and on behalf of those similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> LEROY BACA, Sheriff of Los Angeles County Jails; et al., <br><br> Defendant. | Case No. CV 12-00428 DDP (SHx) <br><br> Honorable Dean D. Pregerson <br><br> **DEFENDANT'S RESPONSE TO PLAINTIFFS' SUR-REPLY ON MOTION TO REMOVE THE ACLU (DOCKET N0. 29)[1]** <br><br> Date:  May 21, 2012 <br> Time:  10:00 a.m. <br> Crtm:  3 |

---

[1] Plaintiffs' Sur-Reply was filed after the close of business on Friday, May 11, 2012. (*See*, Docket No. 44.)  Pursuant to the Court's May 15, 2012 Order granting Plaintiffs' permission to file the Sur-Reply (Docket No.46), Defendant was provided with less than 24 hours to investigate the claims made in Plaintiffs' Sur-Reply and prepare this Response.  Plaintiffs' Sur-Reply makes serious allegations that could have and should have been raised in a regularly noticed motion.  The response set forth herein is all Defendant's could assemble in the limited amount of time available. The lack of a response to any particular issue should not be construed as a waiver or admission of any aspect of the ACLU's accusations.

1

## MEMORANDUM OF POINTS AND AUTHORITIES

I.      **Introduction.**

The ACLU accuses Defendant of violating the Interview Protective Order with respect to three specific inmate declarations. While it is entirely unclear from the Sur-Reply how this accusation is relevant to the determination of Defendant's Motion to Remove the ACLU, as set forth below, Defendant has <u>not</u> violated the Interview Protective Order, and Plaintiffs' purported evidence is grossly misleading.

II.     **Plaintiffs' Accusations Are A Red Herring And Are Irrelevant To Whether The ACLU Violated The Interview Protective Order.**

Plaintiffs' Sur-Reply and the accusations contained therein are nothing more than an attempt to "muddy the waters" associated with Defendant's Motion to Remove the ACLU. Basically, the ACLU argues, "they did it too, so deny the Motion." First, if the ACLU intends to assert that the Los Angeles County Sheriff's Department ("LASD") has violated the Interview Protective Order (which, as set forth below, is not the case), then they could and should have met and conferred and filed a regularly noticed motion – exactly what Defendant did.

As a threshold matter, Defendant maintains that this Court should not consider Plaintiffs' Sur-Reply or the evidence filed with it. They were sprung on Defendant at the eleventh hour and Defendant was not provided with a meaningful opportunity to investigate the ACLU's claims or prepare a thorough response. This is a violation of Defendant's due process rights. Further, even assuming *arguendo* that Defendant has violated the Interview Protective Order, that fact is irrelevant to whether the ACLU has done so.

///

///

///

1

## III.    Defendant has Not Violated The Interview Protective Order.

The assertion by the ACLU that the LASD somehow improperly used the declarations of their clients – that the ACLU prepared and voluntarily filed with this Court – is based on an interpretation of the Interview Protective Order that belies common sense and would lead to absurd results.

The Interview Protective Order arose out of concerns about "interviews of inmates" by "counsel for the parties," as well as "discussions between counsel for the plaintiff and the Sheriff's staff…."  (Interview Protective Order, 1:19-23.)  Obviously, the parties were worried that one side might take statements from the other and use them against their adversary, specifically, in "criminal trial[s]" regarding the inmates' statements and "other litigation" regarding statements by LASD staff.  (*Id.*, 1:27-2:10.)

**First and foremost, counsel for the LASD, referred to in the Interview Protective Order,** *have not conducted any interviews of any inmates*.  **Neither has LASD staff.**

Instead, the only statements that have been taken and that are at issue – and that have ever been at issue—*are those taken by the ACLU*.  Apparently, to advance the ACLU's litigation strategy, they interviewed their clients, took statements from them, and incorporated those statements into declarations.[2]  They then filed those declarations with this Court, necessarily causing them to become public records, which are within the public domain.

---

[2] Of course, virtually none of the many dozens of declarations that the ACLU chose to file in *Rutherford* had any relevance to those proceedings (i.e., enforcement of the final Judgment).  If they had (i.e., if they were in fact addressed to enforcing the Judgment, and for no other purpose), then they never would have been used by anyone in any other proceeding (because they would have been irrelevant and of no benefit elsewhere).  Instead, the ACLU improperly tried to obtain relief in *Rutherford* about topics that are undeniably beyond the Court's jurisdiction in that matter.  Substantial confusion has directly resulted therefrom.

2

Of course, the ACLU did not have to convert the inmate statements that they took from their clients into formal declarations. Nor did they have to file them with the Court, necessarily making them public records. The ACLU – not the LASD – consciously decided to forgo any protections inmates had to their statements under the Interview Protective Order. The ACLU may not regret their litigation strategy (because it could be used against their client) but the LASD is not to blame. A party has every right to waive a protection that was provided for his or her benefit. Similarly, a party has a right to defend himself or herself by public admissions voluntarily made by his or her accuser.

The ACLU, of course, pursuant to the Interview Protective Order, could have prevented counsel for the LASD from taking statements of inmates and using them in other proceedings, but the ACLU knowingly and voluntarily waived the right to prevent their clients' statements from being used against them.

**The LASD is not contending, and has not contended, nor would it ever contend (because it would be nonsensical) that if it filed a declaration in *Rutherford*, that it somehow could not be taken and used against it in another proceeding.** Once a party makes a public statement, a public admission, that bell cannot be unrung. The ACLU, however, seems to think that it can voluntarily, publicly file declarations of their clients and that those statements cannot be used, in any regard, against their clients, not even to show that their clients have committed perjury. There is no statute, caselaw, order, or legal doctrine that gives the ACLU the power to float their clients' sworn statements in the public domain (to obtain a legal advantage) but not be held accountable for their own statements. And these same inmate clients are certainly not entitled to file public declarations in one matter (*Rutherford*) and then not be held to their statements in their separate civil proceedings for money damages against the LASD (e.g., *Holguin*, *Tutt*).

Thus, the ACLU's assertion that Defendant violated the Interview Protective Order –by using the ACLU's own public filings against them – is without merit.

## IV.   Notwithstanding The Fact That Defendant Has Not Violated The Interview Protective Order, The ACLU's Accusations Regarding The Three Specific Inmates Are False And Misleading.

Plaintiffs accuse Defendant of violating the Interview Protective Order with respect to three separate inmate declarations.  Despite Plaintiffs' conclusory assertions to the contrary, Defendant has not violated the Interview Protective Order and Plaintiffs' arguments to this effect are false, misleading, and with respect to Jonathan Goodwin, plainly contrary to law.  Details regarding each supposed violation are set forth below.

### A.   Michael Holguin.

Inmate Michael Holguin claims that he was subjected to excessive force during his incarceration in County jail (a claim that has absolutely nothing to do with the final Judgment in *Rutherford*).  As a result, on October 25, 2010, Mr. Holguin's attorneys[3] filed a new lawsuit, *Holguin v. County of Los Angeles*, U.S.D.C. Case No. CV10-8011 GW (PLAx), against the County and several LASD deputies based on an alleged incident that occurred on October 18, 2009, while he was incarcerated in Men's Central Jail.  (*See*, Declaration of Raymond Sakai, ¶ 3.)  In his complaint, Mr. Holguin alleges that excessive force was employed against him in retaliation for his complaints regarding his claim he was

---

[3] Mr. Holguin is represented in his case against the County by Hadsell Stormer Keeny Richardson & Renick, LLP.  Hadsell Stormer is the same firm that was required to withdraw as counsel from *Peter Johnson v. County of Los Angeles*, U.S.D.C. Docket No. CV 08 – 03515 DDP (SHx), after they failed to disclose that one of their attorneys was married to one of this Court's law clerks.  (*See*, *Peter Johnson* Docket No. 60.)

denied showers.  (*Id*.)  Nowhere does Mr. Tutt allege that he was retaliated against due to anything involving the ACLU (which explains why it was improper of the ACLU to try to involve Mr. Tutt in *Rutherford*.)

On January 27, 2011, Mr. Holguin's attorneys served requests for production of documents upon the County that sought all documents relating to his custody in Men's Central Jail.  (*Id*. at ¶ 4.)  **As a result, on March 18, 2011, pursuant to a protective order, Defendant County produced various documents, including an investigation report regarding the alleged incident. The report contained Mr. Holguin's handwritten declaration taken by the ACLU (and later typed) that the ACLU filed in *Rutherford*.[4]**

On June 14, 2011, Mr. Holguin's deposition was taken in Chuckawalla Valley State Prison, where he was serving a sentence on an unrelated matter.  (*Id*. at ¶ 5.)  **Contrary to the ACLU's accusation, Mr. Holguin was not questioned about his declaration until after he raised the issue.  (*Id*.)**  At the beginning of his deposition, in response to the question about what Mr. Tutt reviewed in preparation for the deposition, he responded "the initial statement I made with the ACLU."  (*See*, Sakai Decl., ¶ 6; Exhibit "A" - Holguin Depo, 7:4-11). Obviously, a defendant is entitled to question a plaintiff about what documents they have reviewed to prepare for their deposition to refresh their recollection. *See,* Fed. R. Evid. 612 (opposing counsel is entitled to review the item used to refresh recollection and to use its contents in cross examination; use of a privileged document to refresh recollection results in the waiver of the privilege).

Mr. Holguin further testified about his contact with the ACLU's jail monitor in response to questions about complaints regarding other deputies.  (*See*,

---

[4]  Only a generic description of the material is provided to avoid violation of the protective order entered in the *Holguin* case.   It is unknown to what extent Mr. Holguin's attorneys discussed the document with the ACLU and whether there has been a violation of the protective order as a result thereof.

Sakai Decl., ¶ 6; Exhibit "A" - 165:12-16).  **The ACLU's Sur-Reply contains none of this information and is grossly misleading.**  Only after Mr. Holguin voluntarily revealed that he had discussed the facts of his case with the ACLU, did counsel for the Sheriff question him about it.  (*Id.*)  Mr. Holguin stated that he had reviewed the declaration prior to his deposition.  (*Id.*, 171:6-8).  Mr. Holguin's handwritten declaration was presented to him for authentication and verification that everything in the declaration was accurate and some additional follow-up questions were asked.  Despite the ACLU's claim to the contrary, the questioning was hardy "extensive."  **Most importantly, the declaration was neither filed with the Court nor used by the LASD in anyway whatsoever to seek substantive relief.**

**B.     Evans Tutt.**

Inmate Evans Tutt claims that he was subjected to excessive force on July 26, 2009 by multiple LASD deputies during a routine search in Men's Central Jail.  Just like Holguin, Mr. Tutt's claims have nothing whatsoever to do with the final Judgment in *Rutherford* and, as a result, his attorneys filed a new lawsuit against the County and several LASD deputies, *Evans Tutt v. County of Los Angeles*, U.S.D.C. Case No. CV 11-06126 SJO (AGRx).  The ACLU claims that the LASD violated the Interview Protective Order by filing a declaration from Mr. Tutt in *Rutherford* in Mr. Tutt's civil action.

As the LASD has informed Plaintiffs and this Court on countless occasions, when it is made of aware of allegations of deputy misconduct, an internal investigation is initiated that can, depending on the circumstances, result in a criminal investigation.  With respect to the incident involving Mr. Tutt, a criminal investigation was already underway when his civil action was filed.  (*See*, Declaration of Nathan Oyster, ¶ 3.)  Accordingly, in what is almost routine practice in a civil proceeding that is brought concurrently with a criminal investigation, the defense requested that Mr. Tutt's counsel agree to stay the civil proceedings until the

6

criminal investigation was concluded.  Obviously, civil discovery can interfere with and compromise a criminal investigation, and a criminal prosecution necessarily takes precedence over a civil action.  Unfortunately, despite the seriousness of the criminal accusations, the reasonableness of the request, and the fact that civil actions are routinely stayed pending criminal proceedings, no agreement for a stay was reached.  (*Id.*)

Thus, it is accurate that Mr. Tutt's declaration was filed with the Court in his civil action, but the only purpose was to notify the Court of a pending criminal investigation, and to obtain a stay, which Judge Otero wisely granted.  The declaration was not "used" or "made available for use" to obtain any substantive relief; the status quo is simply preserved and Mr. Tutt may proceed as he likes as soon as the criminal proceedings are resolved.  Given the ACLU's support for vigorous criminal investigations against members of the Sheriff's Department, surely the ACLU would have agreed to allow Mr. Tutt's declaration to be filed in his civil action for this very limited purpose.

### C.    Jonathan Goodwin.

The ACLU claims that "[t]he District Attorney for the County of Los Angeles filed criminal charges against Jonathan Goodwin under Penalty Code section 245(c)…[and that] [d]uring the course of that trial, the prosecutor from the office of District Attorney for the County of Los Angeles used the declaration of Mr. Goodwin to question him.  (Sur-Reply, 2: 5 – 12.)  First, the District Attorney is a duly elected public official and neither the Sheriff nor the Board of Supervisors control his prosecutorial activities.  In fact, it has been firmly established that the District Attorney is an officer of the State of California while acting in his prosecutorial capacity and, thus, is not subject to direction or oversight by the Board of Supervisors or the Sheriff.

In California, each county district attorney is supervised by the Attorney General – not by the Board of Supervisors.  Since 1966, article V, section 13 of the California Constitution has provided in substance:

> Subject to the powers and duties of the Governor, the Attorney General shall be the chief law officer of the State.  It shall be the duty of the Attorney General to see that the laws of the State are uniformly and adequately enforced.  **The Attorney General shall have direct supervision over every district attorney ... in all matters pertaining to the duties of their ... office[]**, and may require any of said officers to make reports concerning the investigation, detection, prosecution, and punishment of crime in their respective jurisdictions as to the Attorney General may seem advisable.

In contrast, the Los Angeles County Board of Supervisors is statutorily barred from obstructing the district attorney's investigative or prosecutorial function.  Government Code § 25303 specifically states that "[t]his section shall not be construed to affect the independent and constitutionally and statutorily designated investigative and prosecutorial functions of the ... district attorney of a county.  The board of supervisors shall not obstruct the ... investigative and prosecutorial function of the district attorney of a county."  Numerous state and federal cases have concluded that the District Attorney is a state officer.  *See e.g.*, *Weiner v. San Diego County*, 210 F.3d 1025, 1028-29 (9th Cir. 2000)(district attorney was a state official for purposes of § 1983 liability while acting in his prosecutorial capacity); *see also*, *Graham v. Municipal Court* 123 Cal.App.3d 1018, 1022 (1981)("A county district attorney prosecuting a criminal action within a county, acts as a *state* officer, exercising ultimately powers which may not be abridged by a county board of supervisors."); *Hicks v. Board of Supervisors*, 69 Cal.App.3d 228, 240 (1977)("Except for the power of the electorate to remove him," district attorney's performance of prosecutions

8

"subject only to the supervision of the Attorney General."); *see also*, *Dibb v. County of San Diego* 8 Cal.4th 1200, 1209, fn. 4 ("[B]oard of supervisors 'does not have the power to perform the county officers' statutory duties for them or direct the manner in which the duties are performed.' [Citation.]").)

In short, the fact that the District Attorney apparently obtained Mr. Goodwin's declaration and used it to question him cannot be imputed to the LASD.  Of course, as explained above, Mr. Goodwin has no right to present false testimony in any proceedings, civil or criminal.

## V.   Plaintiffs Have Failed To Establish Any Harm From Defendant's Supposed Violation Of The Interview Protective Order.

Defendant takes Plaintiffs' accusations very seriously, but as set forth above, the evidence does not establish what Plaintiffs assert.  However, even assuming the validity of the ACLU's claims, Plaintiffs have not shown any harm whatsoever as a result of the purported violations.

## VI.   Conclusion.

For the reasons set forth above, Defendant has not violated the Interview Protective Order, and this Court should grant Defendant's Motion in full.

Dated:  May 16, 2012                      LAWRENCE BEACH ALLEN & CHOI, PC


                                          By _____/s/  Justin W. Clark_____
                                                 Justin W. Clark
                                                 Attorneys for Defendant
                                                 Sheriff Leroy D. Baca

9

## DECLARATION OF RAYMOND W. SAKAI

1.    The facts set forth herein are based on my personal knowledge or, as specified, upon my information and belief, based on official acts and writings.  If called upon as a witness, I could and would testify competently to the facts contained herein under oath.

2.    I am an attorney at law, duly licensed to practice before this Court and all of the courts of the State of California, and an associate of the law firm of Lawrence Beach Allen & Choi, PC, attorneys of record for Defendant in the above-captioned matter.  I am counsel of record for defendants in *Holguin v. County of Los Angeles*, Case No. CV10-8011 GW (PLAx).

3.    On October 25, 2010, Michael Holguin, who was formally an inmate in Los Angeles County jail, filed a lawsuit against the Los Angeles County Sheriff's Department ("LASD") and several LASD deputies.  Mr. Holguin alleges that excessive force was employed against him in retaliation for his complaints regarding his claim he was denied showers.

4.    On January 27, 2011, Mr. Holguin's attorneys served requests for production of documents upon the County that sought all documents relating to his custody in Men's Central Jail.  As a result, on March 18, 2011, pursuant to a protective order, Defendant County produced various documents, including an investigation report regarding the alleged incident involving Mr. Holguin.  The report contained Mr. Holguin's handwritten declaration taken by the ACLU (and later typed) that was filed in *Rutherford*.

5.    On June 14, 2011, Mr. Holguin's deposition was taken in Chuckawalla Valley State Prison, where he was serving a sentence on an unrelated matter.  I was present at the deposition and questioned Mr. Holguin.  Contrary to the ACLU's accusation, Mr. Holguin was not questioned about his declaration until after he raised the issue.  At the beginning of his deposition, in response to the question about what he reviewed in preparation for the deposition, he responded "the initial statement I made with the ACLU."  Mr. Holguin further

10

testified about his contact with the ACLU's jail monitor in response to questions about complaints regarding other deputies. Only after Mr. Holguin voluntarily revealed that he had discussed the facts of his case with the ACLU, did I question him about it. Mr. Holguin stated that he had reviewed the declaration prior to his deposition. I presented Mr. Holguin with his handwritten declaration for authentication and verification that everything in the declaration was accurate and I asked some limited additional follow-up questions. My questioning about his declaration was not extensive. The declaration was neither filed with the Court nor used by the Sheriff's Department in anyway whatsoever to seek substantive relief.

6.    Attached hereto as Exhibit "A" are true and correct copies of excerpts from Mr. Holguin's deposition along with the caption and reporter's verification pages.

I declare under penalty of perjury under the laws of the state of California and the United States of America that the foregoing is true and correct.

Executed May 16, 2012 at Glendale, California.


　　　　　　　　　　　　　　/s/  Raymond W. Sakai
　　　　　　　　　　　　　　Raymond W. Sakai

11

## DECLARATION OF NATHAN A. OYSTER

I, Nathan A. Oyster, declare:

1.       The facts set forth herein are based on my personal knowledge or, as specified, upon my information and belief, based on official acts and writing.  If called upon as a witness, I could and would testify competently to the facts contained herein under oath.

2.       I am an attorney at law, duly licensed to practice before this Court and all of the courts of the State of California, and an associate of the law firm of Lawrence Beach Allen & Choi, PC, attorneys of record for Defendant in the above-captioned matter.  I am counsel of record for defendants in *Evans Tutt v. County of Los Angeles*, U.S.D.C. Case No. CV 11-06126 SJO (AGRx).

3.       The ACLU claims that the LASD violated the Interview Protective Order entered in *Rutherford v. Baca*, U.S.D.C. Case No. CV 75 – 04111 DDP by filing a declaration from Evans Tutt in his civil action.  It is accurate that Mr. Tutt's declaration was filed with the Court, but the purpose was only to notify the Court of a pending criminal investigation, the integrity of which might be compromised by Mr. Tutt's civil suit.  It is my understanding that a criminal investigation was already underway when his civil action was filed and accordingly, my office requested that Mr. Tutt agree to stay his case until the criminal investigation was completed.  Despite the seriousness of the criminal accusations, the reasonableness of the request, and the fact that civil actions are routinely stayed pending criminal proceedings, we were unable to reach an agreement for a stay.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on May 16, 2012, at Glendale, California.

/s/ Nathan A. Oyster
Nathan A. Oyster
