O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX ROSAS and JONATHAN GOODWIN, on behalf of themselves and of those similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>LEROY BACA, Sheriff of Los Angeles County Jails; PAUL TANAKA, Undersheriff, Los Angeles Sheriff's Department; CECIL RHAMBO, Assistant Sheriff, Los Angeles Sheriff's Department and DENNIS BURNS, Chief of Custody Operations Division, Los Angeles Sheriff's Department,<br><br>　　　　　Defendants. | Case No. CV 12-00428 DDP (SHx)<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND DENYING DEFENDANT'S MOTION TO DISMISS**<br><br>[Dkt Nos. 20, 36] |

**I.　Introduction**

　　Presently before the court is Plaintiffs' Motion for Class Certification under Rule 23(b)(2). Having considered the submissions of the parties and heard oral argument, the court grants the motion and adopts the following order. The court notes

that the threshold for satisfying class certification requirements is relatively low. See Parkinson v. Hyundai Motor Am., 258 F.R.D. 580, 594 (C.D. Cal. 2008). The granting of this class certification motion is a procedural step allowing this matter to go forward. It is not intended, and does not constitute an opinion on the ultimate merits of the lawsuit.

The court has great confidence in the leadership and integrity of both sides to this dispute. The parties have proved to be effective partners in crafting cooperative solutions to issues raised in other, related matters before this court. Nothing in this order shall be read to discourage the parties from continuing to pursue collaborative efforts to address jail-related matters of mutual concern.

**I.  Background**

The Los Angeles County Sheriff's Department has the responsibility of running the largest and likely most challenging jail system in the country. It is a system which admits and discharges over 150,000 inmates a year and is responsible, among other matters, for delivering inmates to courthouses located throughout the county. The inmate population is comprised of individuals charged with crimes ranging from misdemeanors to homicides, and includes pre-trial detainees, inmates who have been convicted and sentenced, and, under California's "realignment" program, an increasing number of state prisoners.

A substantial portion of the inmate population has serious medical and mental health needs, disability issues, and drug and alcohol dependency problems. While many inmates are non-violent or low-level offenders, a significant number are hard-core gang

members or present other serious security threats.  Inmates are often housed in outdated facilities that are long past their life cycles, and were never designed to accommodate inmates as numerous and complex as today's jail population.  It is in this context, against a challenging backdrop of dwindling fiscal resources and an increasing inmate population, that the Sheriff's Department has endeavored to fulfill its custodial responsibilities to both inmates and the public.

The American Civil Liberties Union's mission, in part, is to protect inmates' constitutional rights, and further to ensure that inmates are housed in a safe, humane environment that provides opportunities for rehabilitation.  Consistent with these interests, the ACLU's monitors have, by order of this court and with the cooperation of the Sheriff's Department, had access to the jail, inmates, and senior Sheriff's Department jail supervisors.

The Sheriff's Department and the ACLU have a long history of both litigation and collaboration on jail-related matters.  During some of that history, this court has decided contested issues and worked with the parties to identify and resolve issues of mutual concern, often without the need of formal litigation.  The Los Angeles County Office of Independent Review has also been of great assistance to the court and the parties in resolving disputes.

Here, the ACLU, on behalf of Plaintiffs, has presented evidence to the court and to the Sheriff's Department of alleged instances of deputy-on-inmate and inmate-on-inmate altercations.  The ACLU asserts that such examples are the result of deficiencies in the management of the jail system.  (First Amended Complaint ¶¶ 3, 13.)

The Sheriff's Department has acknowledged the ACLU's concerns, and has made commendable efforts to implement positive jail reforms and new initiatives, such as the establishment of new investigatory and management task forces. The ACLU has made significant contributions to these reform efforts. The court has no doubt that the Sheriff's Department and the ACLU sincerely share the common goal of making the downtown Los Angeles jail the best possible facility.

The court recognizes that, while the Sheriff's Department and ACLU continue to work together to achieve this common goal, differences may arise requiring a judicial resolution. This lawsuit is a vehicle by which the plaintiffs may seek relief. Here, Plaintiffs seek only declaratory and injunctive relief on behalf of themselves and other current and future inmates in the downtown Los Angeles Jail Complex.[1] (FAC ¶¶ 3, 215.) The plaintiffs do not seek monetary damages.

**III. Legal Standard**

The party seeking class certification bears the burden of showing that each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b) are met. See Hanon v. Dataprods. Corp., 976 F.2d 497, 508-09 (9th Cir. 1992). Rule 23(a) sets forth four prerequisites for class certification:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties

---

[1] The Jail Complex is comprised of three interconnected facilities: Men's Central Jail, Twin Towers Correctional Facility, and the Inmate Reception Center (collectively, "the Jails").

4

will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); see also Hanon, 976 F.2d at 508. These four requirements are often referred to as numerosity, commonality, typicality, and adequacy. See General Tel. Co. v. Falcon, 457 U.S. 147, 156 (1982). In determining the propriety of a class action, the question is not whether the plaintiff has stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178 (1974). This court, therefore, considers the merits of the underlying claim to the extent that the merits overlap with the Rule 23(a) requirements, but will not conduct a "mini-trial" or determine at this stage whether Plaintiffs could actually prevail. Ellis v. Costco Wholesale Corp., 657 F.3d 970, 981, 983 n.8 (9th Cir. 2011).

**IV. Discussion**

    A.   Federal Rule of Civil Procedure 23(a)

        1.   Numerosity

Plaintiffs must first demonstrate that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. Rule 23(a)(1). The Jails currently house thousands of inmates, and are certain to house many more in the future. The court therefore agrees with Plaintiffs' undisputed assertion that the numerosity requirement has been satisfied.

        2.   Commonality

Second, the Plaintiffs must demonstrate that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Rule 23(a)(2) has been construed permissively. All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient . . . ." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). Indeed, "even a single common question will do," so long as that question has the capacity to generate a common answer "apt to drive the resolution of the litigation." Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541, 2551, 2556 (2011) (citations, internal quotations, and alterations omitted).

Defendant argues that the commonality requirement is lacking here because "most class members have not been harmed in any way," and that the "common denominator" of having been subjected to the risk of misconduct is insufficient. (Opp. at 4-5.) In a civil rights suit such as this one, however, "commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." Armstrong v. Davis, 275 F.3d 849, 868 (9th Cir. 2001) abrogated on other grounds by Johnson v. California, 543 U.S. 499 (2005). Under such circumstances, individual factual differences among class members pose no obstacle to commonality. Id.; see also Spalding v. City of Oakland, No. C11-2867 THE, 2012 WL 994644 at *2 (N.D. Cal. March 23, 2012).

Here, Plaintiffs contend that Sheriff's department supervisors knew of, and were deliberately indifferent to, a

6

pattern or practice of deputies using or threatening violence against inmates and facilitating inmate-on-inmate violence. As a result, Plaintiffs assert, all class members are at significant risk of excessive violence at the hands of deputies. Resolution of these common questions is likely to yield a common answer to the Eighth and Fourteenth Amendment issues Plaintiffs have raised on behalf of all inmates. Rule 23(a)(2)'s commonality requirement is, therefore, satisfied.

### 3. Typicality

Rule 23(a) also requires a plaintiff to demonstrate that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." Hanlon, 150 F.3d at 1020. The complaint alleges that named Plaintiff Rosas was threatened by Sheriff's deputies after witnessing a display of excessive force against another inmate, and was later himself the target of violence. (FAC ¶¶ 220-223.) The complaint also alleges that named Plaintiff Goodwin was physically assaulted by deputies without provocation. (FAC ¶¶ 228-231.) While the precise nature of the injuries suffered by the named Plaintiffs may differ from those suffered by other class members, the complaint alleges that the same pattern and practice of violence, and deliberate indifference thereto, exposes every class member, including the named Plaintiffs, to the same risk of violent attack.

Plaintiffs' claims are therefore typical of the claims of absent class members.

### 4. Adequacy

Finally, the plaintiffs must demonstrate that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Hanlon, 150 F.3d at 1020.

Defendant points to no conflict of interest among Plaintiffs' counsel, but asserts that counsel is nevertheless inadequate by dint of alleged misconduct in a related case. (Opp. at 5.) Defendant's contention is without merit.

Defendant also argues that named Plaintiffs Goodwin and Rosas are inadequate class representatives because they have not shown that they are likely to suffer from unlawful deputy-on-inmate violence in the future, and therefore lack Article III standing.[2] (Opp. At 6-7.) In order to demonstrate an injury in fact sufficient to confer standing, a plaintiff must demonstrate an "invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." D'Lil v. Best W. Encina Lodge & Suites, 538 F.3d 1031, 1036

---

[2] This argument also serves as the basis for Defendant's separately filed Motion to Dismiss Plaintiffs' First Amended Complaint (Dkt. No. 45).

(9th Cir. 2008), citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992). Defendant argues that the named Plaintiffs have not shown an imminent harm.

To support his argument, Defendant relies primarily upon <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95 (1983). In <u>Lyons</u>, a plaintiff sought injunctive relief after police officers allegedly applied a chokehold on the plaintiff at a traffic stop, without provocation. <u>Lyons</u>, 461 U.S. at 97. The Court held that because the plaintiff could not show a real and immediate threat that he would again be stopped and placed in a chokehold, he could not make a showing of irreparable injury and, therefore, lacked standing to pursue injunctive relief. <u>Id.</u> at 105, 111.

<u>Lyons</u>, however, is readily distinguishable. Unlike the plaintiff in <u>Lyons</u>, who could do no more than speculate that he might someday once again interact with law enforcement officers, Plaintiffs here remain incarcerated in the Jails, and will necessarily come into frequent contact with Sheriff's deputies, including some of the very deputies who are alleged to have engaged in unlawful violent activity. Furthermore, Plaintiffs here have alleged a widespread pattern of violence and indifference to that violence, supported by numerous declarations from inmates, experts, and civilian witnesses. Where defendants have engaged in a pattern of injurious acts in the past, "there is a sufficient possibility that they will engage in them in the near future to satisfy the 'realistic repetition' requirement" necessary to demonstrate an actual injury. <u>Armstrong</u>, 275 F.3d at 861;

see also LaDuke v. Nelson, 762 F.2d 1318, 1324 (9th Cir. 1985) (distinguishing Lyons from case involving a standard pattern of unconstitutional behavior). Having alleged a pattern of unlawful behavior that is likely to recur, the named Plaintiffs here have demonstrated injury in fact, and are adequate class representatives.

B.   Federal Rule of Civil Procedure 23(b)

A party seeking class certification must also demonstrate that at least one of the following three conditions is satisfied: (1) the prosecution of separate actions would create a risk of: (a) inconsistent or varying adjudications, or (b) individual adjudications dispositive of the interests of other members not a party to those adjudications; (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class; or (3) questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. See Fed. R. Civ. P. 23(b); Dukes v. Wal-Mart Stores, Inc., 603 F.3d 571, 580 (9th Cir. 2010) (en banc).

As noted above, Plaintiffs here seek certification under Rule 23(b)(2). Defendant contends that Plaintiffs have provided no evidence whatsoever that Rule 23(b)(2) is satisfied. (Opp. at 3.) The FAC clearly alleges, however, that Sheriff's command and supervisory staff have been and remain aware of the alleged pattern and practice of unlawful

10

violence and are deliberately indifferent to it. The complaint further alleges that multiple deputies ignored named Plaintiff Rosas' requests for a complaint form. (FAC ¶ 223.) Plaintiffs have also submitted expert declarations stating that Defendant has failed to rein in deputies' abusive behavior. (See, e.g., Declaration of Thomas Parker in Support of Plaintiffs' Motion for Class Certification ¶ 10). In light of these allegations, the court is satisfied that Plaintiffs have sufficiently demonstrated that the party opposing the class has acted or refused to act on grounds generally applicable to the class.

**V.   Conclusion**

For the reasons stated above, Plaintiff's Motion to Certify Class is GRANTED.[3] The court hereby certifies a class comprised of all present and future inmates confined in the Jail Complex in downtown Los Angeles, pursuant to Federal Rule of Civil Procedure 23(b)(2). The court reiterates that the certification of the plaintiff class has no bearing on the viability or veracity of Plaintiffs' claims. The court remains available to assist the parties in mediating disputes, while recognizing the possibility that further litigation may also be necessary.

IT IS SO ORDERED.

Dated: June 7, 2012

DEAN D. PREGERSON
United States District Judge

---

[3] For the reasons discussed in Section III.A.4, supra, Defendant's Motion to Dismiss the FAC is DENIED.