PETER J. ELIASBERG (SB# 189110)
peliasberg@aclu-sc.org
MARISOL ORIHEULA (SB# 261375)
morihuela@aclu-sc.org
ACLU FOUNDATION OF
SOUTHERN CALIFORNIA
1313 W. 8th Street
Los Angeles, CA 90017
Phone: (213) 977-9500
Fax: (213) 977-5299

(Counsel continued on next page)

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX ROSAS and JONATHAN GOODWIN on behalf of themselves and of those similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> LEROY BACA, Sheriff of Los Angeles County Jails, <br><br> Defendant. | CASE NO. CV 12-00428 DDP (SHx) <br><br> **JOINT RULE 26(F) REPORT** <br><br> Ctrm: 3 <br> Judge: Hon. Dean D. Pregerson <br><br> Complaint Filed: February 28, 2012 <br> FAC Filed: April 3, 2012 <br> Trial: |

JOINT RULE 26(f) REPORT

DONNA M. MELBY (SB# 86417)
donnamelby@paulhastings.com
JOHN S. DURRANT (SB# 217345)
johndurrant@paulhastings.com
JADE H. LEUNG (SB# 279651)
jadeleung@paulhastings.com
ELIZABETH C. MUELLER (SB# 278283)
bethmueller@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071-2228
Phone: (213) 683-6000
Fax: (213) 627-0705

MARGARET WINTER (*pro hac vice*)
mwinter@npp-aclu.org
ERIC BALABAN (*pro hac vice application forthcoming*)
ebalaban@npp-aclu.org
DAVID M. SHAPIRO (*pro hac vice*)
dshapiro@npp-aclu.org
NATIONAL PRISON PROJECT OF THE AMERICAN CIVIL LIBERTIES UNION FOUNDATION
915 15th St., NW
Washington, D.C. 20005
Phone: (202) 393-4930
Fax: (202) 393-4931

Attorneys for Plaintiffs
ALEX ROSAS and JONATHAN GOODWIN, on behalf of themselves and of those similarly situated


PAUL B. BEACH, State Bar No. 166265
pbeach@lbaclaw.com
JUSTIN W. CLARK, State Bar No. 235477
jclark@lbaclaw.com
LAWRENCE BEACH ALLEN & CHOI, PC
100 West Broadway, Suite 1200
Glendale, California 91210-1219
Telephone No. (818) 545-1925
Facsimile No. (818) 545-1937

Attorneys for Defendant
Sheriff Leroy D. Baca

Pursuant to Federal Rule of Civil Procedure 26(f)(2), counsel for Plaintiffs Alex Rosas and Jonathan Goodwin ("Plaintiffs") and counsel for Defendant Leroy Baca ("Defendant" or "Sheriff Baca") having conferred on July 2, 2012, pursuant to Rule 26(f) of the Federal Rules of Civil Procedure and Local Rule 26-1, respectfully submit, by and through their respective counsel, the following Joint Report.

## TOPICS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE RULE 26 AND LOCAL RULE 26-1

### I. PRELIMINARY STATEMENTS

#### A. PLAINTIFFS' PRELIMINARY STATEMENT

More than six months into this case, the pleadings have been settled, a class has been certified, and Defendant's attempt to disqualify the ACLU and Paul Hastings has failed. Sheriff Baca has categorically rejected Plaintiffs settlement overtures in writing, confounding Defendant's claim that he is interested in "resolving this matter" in the near future. (*See* Exh. 1 (Plaintiffs' proposal) and Ex. 2. (Sheriff Baca's rejection).) It is long-past time for discovery to begin.

Sheriff Baca has publicly admitted problems in the jails, but has resisted efforts to discuss the details of such problems. (*See e.g.*, "L.A. County Sheriff Lee Baca Accepts Some Blame for Jail Problems," *Los Angeles Times*, July 28, 2012 (in July 27, 2012 statements to the Citizens' Commission, Sheriff Baca stated, "We know we screwed up in the past. . . . I'm a guy that says let's go forward. . . . I just need this commission to understand the limits of digging up dirt that doesn't have any water going into it.").) Sheriff Baca may prefer not to discuss the past, but Plaintiffs are legally entitled to discovery to show that longstanding, persistent, and ongoing problems in the jails warrant injunctive relief. To that end, Plaintiffs have served carefully constructed document requests and interrogatories, attached hereto as Exhibit 3 and 4. Not only has Defendant indicated he will not voluntarily produce the requested documents or answer the interrogatories in a timely manner,

Defendant even refused to make any initial disclosures in accordance with Rule 26(a)(1), until after Plaintiffs indicated they would move to compel them. It remains unclear if Defendant has made initial disclosures that are fully compliant with Rule 26 or if he has made narrower disclosures.

Defendant has made two arguments in support of his refusal to engage in normal discovery. First, Defendant has argued that all discovery related to numerous incidents of violence should be stayed because of Fifth Amendment concerns and because discovery will purportedly jeopardize the criminal investigations and prosecutions. *See infra* at p. 21 ("the Defendant shall move for an order staying all discovery that relates to incidents, materials, and personnel that concern on-going criminal investigations"). In effect, Defendant seeks to stay nearly all discovery in this case. Such a stay is inappropriate legally and factually.

Most obviously, the Los Angeles Sheriff's Department ("LASD") has no Fifth Amendment rights to assert and lacks standing to assert Fifth Amendment rights of its employees. "It has long been settled in federal jurisprudence that the constitutional privilege against self-incrimination is essentially a personal one, applying only to natural individuals" and "cannot be utilized by or on behalf of any organization, such as a corporation." *George Campbell Painting Corp. v. Reid*, 392 U.S. 286, 288-89 (1968) (quoting *United States v. White*, 322 U.S. 694, 698-99 (1944)). In applying these principles, courts have held that public agencies have no privilege against compulsory self-incrimination. *See, e.g., Bradley v. Flannery*, No. CV F F-11-0942 AWI DLB, 2012 U.S. Dist LEXIS 47927, at *9-10 (E.D. Cal. Apr. 4, 2012) (noting that California's Department of Developmental Services, a public agency, is an "artificial organization" not entitled to the privilege against compulsory self-incrimination).

Plaintiffs have asked Defendant's counsel to provide authority that would allow government agency to avoid written discovery in a civil case because some of the agency's employees are purportedly under criminal investigation. They have provided no such authority. If third-party witnesses, such as deputies accused of

brutality, are criminally indicted, and choose to invoke the Fifth Amendment in this case, the Court is quite capable of ruling on their assertions individually. *See Sw. Marine, Inc. v. Triple A Mach. Shop, Inc.*, 720 F. Supp. 805, 809 (N.D. Cal. 1989) (denying a stay because third party witnesses' Fifth Amendment rights could be protected by individual rulings upon their assertion).[1]

Second, Defendant has raised a new argument for delay, which Defendant's counsel did not make at the Rule 26(f) conference. Despite previously stating that they would not seek to phase discovery, counsel for the Defendant now asks the Court to phase discovery in a manner that would avoid a meaningful production for the foreseeable future. Defendant claims its approach is "sensible." In fact, Defendant wants to avoid nearly all discovery, so long as "settlement discussions" among the parties are ongoing. The fact is that there are currently no settlement discussions among the parties, and, as described below, there appear to be no immediate prospects for any settlement in this case.

Plaintiffs made a detailed settlement proposal on April 24, 2012. (See Exh. 1.) Plaintiffs' proposal provided a framework for settlement that would have enabled the parties to minimize not only litigation expenses, but also provided for cooperative and inexpensive sharing of information as an alternative to time-consuming discovery. Sheriff Baca did not respond to the proposal for almost two months, while his counsel pursued both the second motion to dismiss and the disqualification motion. When the Sheriff did respond on June 13, 2012, he categorically rejected the proposal and made no counterproposal. (Exh. 2.) Should the Sheriff ever offer a serious settlement proposal Plaintiffs will consider it very

[1]It also should be noted that stays are generally disfavored, especially where, as here, a stay is sought to halt a case seeking injunctive relief for ongoing unconstitutional violations. *See Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005) (vacating a stay in part because the plaintiff sought "injunctive relief against ongoing harm"); *Melendres v. Maricopa Cnty.*, No. 07-CV-02513-PHX-GMSM, 2009 WL 2515618, at *2 (D. Ariz. 2009) (denying a stay in part because plaintiffs sought injunctive relief and had a "strong interest" in expeditiously vindicating unconstitutional police action).

-3-

carefully and will endeavor to respond in a constructive manner, but there is no such pending proposal and no basis at present for continuing to delay discovery.

Discovery is also needed for any future settlement discussions. Plaintiffs do indeed seek documents about LASD policies (*i.e.*, the first phase of Defendant's proposed discovery plan). But, such discovery will not be decisive in settlement discussions. Plaintiffs contend there is evidence that the LASD and its personnel routinely *disregard* stated policies. In order to craft appropriate injunctive relief, LASD's actual conduct is far more important than LASD's stated policies. Accordingly, fundamental analysis regarding force incidents and investigations are *necessary* to any settlement. Delaying production of such documents will only serve to delay settlement.

### B.    DEFENDANT'S PRELIMINARY STATEMENT

Defendant's approach to this litigation differs drastically from Plaintiffs'. Where Plaintiffs ask this Court to authorize 15 months of unstructured and unlimited discovery (which can only lead to waste, abuse, and prejudice), Defendant proposes a phased discovery plan aimed at promptly and efficiently resolving this matter with the use of a neutral. Defendant has no interest in getting embroiled in massive litigation proceedings (but will vigorously defend itself in same if necessary), and stands ready, willing, and able to engage in early, productive settlement discussions. Plaintiffs, on the other hand, seem intent on full scale litigation which is simply not in anyone's best interest. On the contrary, Defendant has set forth a far more sensible and structured plan that should avoid the unnecessary incursion of attorneys' fees and costs, while at the same time hopefully bringing this case to are reasonable conclusion. If Plaintiffs are truly interested in settlement, then they should have no objection to Defendant's proposal. Defendant has already made its initial disclosures and expects to participate in all relevant discovery regarding Defendant's policies concerning use of force, training, reporting, investigations, and discipline relating to same. This information can and

-4-

should serve as the basis for productive settlement discussions between the parties. However, Defendant strongly believes that unless this Court orders that certain discovery to occur in phases, several major problems will result. This can and should be avoided.

Specifically, there is no reason that discovery aimed at hundreds of thousands of inmates – as well as the tremendous amount of time and money that will be expended as a result – should occur unless it is absolutely necessary. These categories of discovery should only be permitted once all efforts at settlement have failed.

**Furthermore, as is typical in similar civil actions where state or federal criminal investigations are simultaneously on-going, all discovery aimed at information related to those investigations (such as investigation reports, witness statements, depositions, etc.), must be stayed.** Plaintiffs' Preliminary Statement cites several cases regarding this issue; however, Plaintiffs' authorities do not refute that a stay is warranted. Indeed, Plaintiffs largely dismiss significant constitutional concerns that are clearly implicated if unrestricted civil discovery is allowed to proceed in this case. For example, Plaintiffs conveniently claim that "the Court is quite capable of ruling on [deputy] assertions [of the Fifth Amendment] individually." While this is certainly true (and Defendant does not claim otherwise[2]), the reality is that when Plaintiffs seek to depose deputy personnel involved in the force incidents alleged in this case (or when they are called as witnesses at trial), ALL of them, based on the advice of their union counsel, will almost certainly invoke their Fifth Amendment rights. Thus, this Court, as the finder of fact, and at no fault of Defendant, will not receive a complete picture of any of the events that form the basis of Plaintiffs' claims. While

---

[2] Despite Plaintiffs' suggestions to the contrary, Defendant is not claiming that the Sheriff's Department itself has Fifth Amendment rights or that all discovery should be stayed. Indeed, it is very clear from Defendant's phased discovery plan that Defendant is NOT suggesting that all discovery be stayed.

Plaintiffs dismiss such concerns, one-sided proceedings are not consistent with a fair, just proceeding, FRCP Rule 1, or Defendant's rights to due process and a fair hearing.

While Defendant maintains that the Court can and should consider the need for a stay of certain categories of discovery at the Scheduling Conference, if necessary, Defendant will file a noticed motion for such relief. Until any related criminal proceedings are concluded, civil discovery about involved uses of force cannot occur without jeopardizing the investigations and prosecutions, as well as leading to unhelpful, skewed, one-sided results.

Settlement discussions can and should occur without delay, but such discovery cannot proceed, and a trial date cannot be set, until it is known when discovery can be completed, which is not the case presently.

Based on the above, the parties should proceed with discovery related to Defendant's policies. Simultaneously or immediately thereafter, the parties should proceed with settlement efforts before the District Court or other qualified judicial officer. Defendant adamantly maintains that the involvement of a strong-willed judicial officer is vital if there is any chance of reaching a settlement. This is especially true given the fact that in prior settlement discussions (in *Rutherford* and in *Peter Johnson*) the ACLU has refused to articulate complete, specific terms, has at the eleventh hour back-tracked on commitments made to the Court, Defendant, and Mr. Gennaco, and has generally refused to engage in good faith negotiations. In fact, Plaintiffs' "settlement proposal" was a perfect example of the ACLU's refusal to engage in good faith settlement discussions. Despite Plaintiffs' characterization, the proposal was nothing more than a list of onerous terms which the ACLU demanded were non-negotiable, Given the seriousness of the issues involved Defendant hopes that the ACLU is now prepared to engage in productive settlement discussions, which was certainly not evident based on their initial "proposal."

-6-

If these early settlement discussions are unsuccessful, then the parties could proceed to discovery related to inmate records (grievances, injury reports, medical records, etc). Finally, once the on-going criminal proceedings are concluded, then discovery should be had as to relevant force incidents. And when a discovery cutoff date can be set, then so too should a trial date. Finally, based on Plaintiffs' claims and their representations in preparation for the Scheduling Conference, a conservative estimate for the length of trial is 16 weeks.

## II. DISCLOSURE REQUIREMENTS UNDER RULE 26(a) (Rule 26(f)(3)(A))

### A. Plaintiffs' Position

Plaintiffs proposed that the parties exchange initial disclosures on July 18, 2012. Plaintiffs have made such disclosures. Plaintiffs further propose that the parties will supplement their initial disclosures should such supplement become necessary.

During the 26(f) conference, Defendant's counsel represented that they intended to make initial disclosures in a timely manner. They then changed that position and refused to make initial disclosures. Only after Plaintiffs sent a meet and confer letter, did Defendant submit some initial disclosures. Plaintiffs remain concerned about the thoroughness of Defendant's disclosures, since they suggest below that they have withheld some disclosures in accordance with a "phased" discovery plan that has not been approved by the Court.

Except as exempted by Rule 26(a)(1)(B), or as otherwise stipulated or ordered by the Court, a party "**must**, without awaiting a discovery request, provide to the other parties [materials described in Rule 26(a)(1)(A)(i-iv).]" (emphasis added). Rule 26(a)(1)(C) further provides that the disclosures "must" be made "at or within 14 days after the parties' Rule 26(f) conference unless a different time is set by stipulation or court order." There is no court order or stipulation exempting

Defendant from complying fully with his Rule 26(a) obligations, and this case is not a proceeding exempt from initial disclosures under Rule 26(a)(1)(B).

### B.   Defendant's Position[3]

Defendant incorporates herein Section II(C)(2) below regarding phasing of discovery.  Defendant made its initial disclosures on July 31, 2012.  Additionally, Defendant proposes that the parties exchange supplemental disclosures concerning Phase One two weeks after the Scheduling Conference, which would include additional witnesses, if any, and document disclosures.  Defendant further proposes that the parties regularly supplement these disclosures should such supplement become necessary.

## II.   DISCOVERY (Rule 26(f)(3)(B))

### A.   Subjects On Which Discovery May Be Needed

#### 1.   Plaintiffs' Subjects (Generally)

(1)   Incidents involving violence against inmates by deputies;

(2)   Incidents involving violence by inmates against inmates that were instigated or arranged by deputies;

(3)   Records of investigations of violence against inmates;

(4)   Medical records of treatment of inmate injuries;

(5)   Deputy-by-deputy records of violence towards inmates;

(6)   Deputy groups or "gangs";

(7)   Official policies regarding the existence of and policies for use of force and restraints;

(8)   Investigations of incidents involving the use of force or restraints and officer discipline;

---

[3] Throughout this Joint Report, Plaintiffs' portions contain statements about Defendant's position or purported representations in this action.  Defendant does not necessarily agree with Plaintiffs' statements, but has not edited them since they are contained in Plaintiffs', not Defendant's, portions.

(9)    Potential attempts of the LASD to conceal wrongdoing, intimidate inmates, or falsely claim an inmate injury resulted from a fall or other type of accident; and

(10)    LASD Training materials.

### 2.    Defendant's Subjects

Defendant believes that discovery on the following subjects will be necessary:

(1)    Information regarding all allegations in the operative complaint as well as Defendant's affirmative defenses thereto;

(2)    Information regarding all of the Plaintiffs' witnesses including, without limitation, the 70+ persons identified in their operative pleading, the 100+ inmates identified in Plaintiffs' initial disclosures, as well as the ACLU's jail monitors that the Defendant has paid to monitor the jails for the past 30+ years;

(3)    Medical records of treatment of inmate injuries; and,

(4)    Information regarding Plaintiffs' and the class member's incarcerations including inmate complaints / grievances, injuries, discipline, criminal histories, prior and current litigation, etc.

### B.    When Discovery Should be Completed

#### 1.    Plaintiffs' Position

Plaintiffs propose a deadline of April 19, 2013 for Plaintiffs' expert reports and a deadline of May 24, 2013 for Defendant's expert reports. Plaintiffs propose a deadline of June 28, 2013 for Plaintiffs' rebuttal expert reports. Plaintiffs believe that all discovery can and should be completed by September 3, 2013. Plaintiffs suggested schedule is the product of reasoned analysis, based on similar class action litigation.

Plaintiffs do not view Defendant's proposed discovery schedule as workable, given the factual complexity of this case. If the Court is inclined to have a shorter discovery schedule, Plaintiffs would request leave of the Court to provide a detailed

-9-

schedule by which Defendant must complete production of certain categories documents, subject to sanctions for non-compliance.

Defendant has already improperly refused to make his initial disclosures on the basis of a stay that he has not yet even sought. He has also deliberately delayed or provided incomplete discovery, leading to delays in other cases involving violence in the jails. *See, e.g., Rodriguez v. Cnty. of Los Angeles*, No. CV 10-6342 CBM (AJWx), Order Granting Sanctions Against Defendants for Repeated Failure to Comply with Deadlines for Document Production, Docket No 155, June 7, 2012.[4] Plaintiffs simply cannot risk agreeing to a tight discovery deadline, when Defendant has failed to produce properly discoverable information in a timely manner in the past and has already sought to delay the discovery process in this litigation. Furthermore, Defendant's preemptive argument below that the discovery sought by Plaintiffs is "overly broad, unduly burdensome, and harassing" is false, but such discussion is not the proper subject of a Rule 26(f) Report.

The timing of expert discovery is designed to allow further factual discovery, particularly in the event that an expert attempts to use "evidence" that has not been produced in discovery.

Defendant did not raise its "phased" approach to discovery during the Rule 26(f) conference; in fact his counsel stated in the Rule 26(f) meeting that he did not believe phased discovery was necessary. As set forth in the Preliminary Statement of this Joint Report, Defendant's proposal is an attempt to avoid public disclosure of damaging information. Defendant's proposal will impede settlement, rather than make settlement easier or quicker; it will addle the litigation process and serve mainly to allow a government agency to avoid accountability.[5]

---

[4] Defendants in the *Rodriguez* matter are represented by the firm of Lawrence Beach Allen & Choi.

[5] Defendant's accusations of "mudslinging" are confusing. (*See* Footnote 6.) There is absolutely nothing "false" contained in Plaintiffs' entries in this section or any others that are submitted by Plaintiffs herein. It is ironic that counsel level such pointed and unfounded accusations, while criticizing supposed mudslinging.

-10-

## 2. Defendant's Position

Subject to the Court's adoption of the phasing schedule set forth in Section II(C)(2) below, Defendant proposes the following discovery schedule:

Phase One (Policy Discovery) -- Defendant proposes a discovery period of three (3) months, focused on Defendant's relevant policies;

Phase Two (Discovery Re Inmate Records) – After all settlement efforts have been exhausted, Defendant proposes a discovery period of three (3) months relating to all relevant inmates records (i.e., inmate grievances, inmate injury reports, inmate medical records[6], etc.);

Phase Three (Discovery Re Force Incidents) – Once the state and federal criminal investigations/proceedings about incidents involving uses of force are concluded, Defendant proposes a discovery period of three (3) months, focused on use of force incidents.

Defendant strongly opposes Plaintiffs' schedule because there is absolutely no need for a 15-month *generic* discovery period, which will undoubtedly lead to abuse and prejudice to Defendant. Plaintiffs' proposed schedule is the latest clear indication of their intent to pursue overly broad, unduly burdensome, and harassing discovery against Defendant.[7]

Also, Defendant opposes Plaintiffs' very unusual request, which is to somehow designate expert witnesses, have them prepare reports, and conduct their depositions, before the end of percipient discovery. That is contrary to common sense and every scheduling order defense counsel is aware of in this District. Furthermore, Defendant objects to Plaintiffs' so-called "rebuttal expert reports."

---

[6] Medical records for a single inmate can easily amount to thousands of pages. For example, in the *Johnson* matter, the records for just one inmate exceeded 9,000 pages. Therefore, the production of any medical records can be extremely burdensome and costly.

[7] Plaintiffs make a number of accusations against Defendant and Defendant's counsel with respect to discovery. Defendant refuses to engage in Plaintiffs' mudslinging, which is nothing more than false accusations. Defendant has complied, and intends to comply, with its discovery obligations.

-11-

They are not allowed by Rule 26 of the Federal Rules of Civil Procedure and provide Plaintiffs with an unprecedented, unfair advantage over Defendant.

### C.    Whether Discovery Should be Done in Phases

#### 1.    Plaintiffs' Position

Discovery should not be conducted in phases, although it may be necessary to set specific, enforceable deadlines for production, in the event Defendant is not producing documents in a timely manner.

#### 2.    Defendant's Position

This Court should order discovery to occur in three phases.

Phase One (Policy Discovery), which should last three months, should focus on Defendant's policies concerning use of force, training, reporting, investigations, and discipline relating to same.

Phase Two (Discovery Re Inmate Records), which should only occur once all settlement efforts have been exhausted, and which should also last three (3) months, should focus on inmate records. There is no reason that discovery aimed at hundreds of thousands of inmates and the tremendous resources that will be expended as a result should occur unless it is absolutely necessary.

Phase Three (Discovery Re Force Incidents), which should also last three (3) months, should be aimed at use of force incidents, many of which are the subject of on-going state and federal criminal investigations. Once these criminal proceedings are concluded, this civil discovery can proceed. Permitting civil discovery into these events while they are on-going could jeopardize the subject investigations and prosecutions and would be tremendously wasteful. For example, there is no point to taking the deposition of deputies who are the subject of criminal investigations, only to have them invoke their Fifth Amendment rights. Such discovery does not serve the purpose of Rule 1 of the Federal Rules of Civil Procedure, which is an efficient search for the truth.

Under this phasing, the parties can quickly and efficiently share information

about Defendant's policies and use that information as the basis for productive settlement discussions before the District Court or other qualified judicial officer. If and only if that process is unsuccessful would the parties be forced to then incur discovery related to thousands of inmates. Finally, once the on-going criminal proceedings relating to force incidents are concluded, then discovery as to those subjects may be sought.

And when a discovery cutoff date can be set, then so too should a trial date.

## III.    ELECTRONIC DISCOVERY (Rule 26(f)(3)(C))

### A.    Plaintiffs' Position

Plaintiffs do not expect to have a significant volume of electronic documents to produce. By contrast, Plaintiffs expect to seek and receive extensive electronic discovery from LASD. Counsel for Defendant has represented to Plaintiffs that they have no reason to believe that any investigative records relating to the use of force or any other electronic documents have been destroyed or lost, and that LASD's retention policies are sufficient to retain all relevant documents in this case.

At this time, Defendant does not yet know how his electronic documents will be produced. The parties agreed to meet and confer in good faith to determine the manner and format of production.

Finally, LASD has previously advised counsel for Plaintiffs of the possible existence of video footage from use of force incidents, which Plaintiffs intend to seek in discovery.

### B.    Defendant's Position

Defendant does not anticipate any issues about disclosure or discovery of electronic information.

-13-

## IV. CLAIMS OF PRIVILEGE AND PROTECTIVE ORDER (Rule 26(f)(3)(D))

### 1. Plaintiffs' Position

Other than ordinary claims of attorney-client privilege or work-product protection, the parties are likely to seek discovery regarding the medical history of inmates. Accordingly, Plaintiffs anticipate preparing and filing a stipulated confidentiality agreement and a proposed protective order to govern the treatment of private and confidential information, including various medical privacy rights.

Plaintiffs caution that Defendant's numerous contemplated assertions of privilege should not override legitimate discovery; any protective order should not be so broad as to allow the LASD to avoid public scrutiny over non-privileged matters. The public has a right to know what is going on in the Los Angeles County jails.

### 2. Defendant's Position

Defendant anticipates that depending on the information, documents, and materials sought by Plaintiffs, Defendant will likely need to invoke the official information privilege, the attorney-client privilege, the work product doctrine, the deliberative process privilege, the Health Insurance Portability and Accountability Act ("HIPAA"), Federal Rules of Criminal Procedure Rule 6(e), and other privileges as circumstances dictate. For these reasons, as well as the sheer volume of discovery that Defendant expects Plaintiffs will propound, Defendant may need to seek protective orders from the Court.

## V. CHANGES TO THE LIMITATIONS OF DISCOVERY (Rule 26(f)(3)(E))

### A. Depositions

#### 1. Plaintiffs' Position

Plaintiffs expect to need more than a seven-hour deposition of Sheriff Baca as permitted by Federal Rule of Civil Procedure 30(d). Plaintiffs expect to ask the

-14-

Court for a reasonable extension of time to depose Sheriff Baca and potentially other deponents.

Defendant not only opposes a reasonable extension of time for the deposition, but *any* deposition of Sheriff Baca. Sheriff Baca's actions and inactions are central to this matter. He has made public statements that would seem to establish his deliberate indifference. Defendant brought a motion to ensure that Sheriff Baca would be the sole defendant. Now more than ever, Sheriff Baca's deposition is fundamental to any fair adjudication of this matter.

Plaintiffs expect that they will need to take more than 10 depositions under Federal Rule of Civil Procedure 30(2)(A)(i).

### 2.    Defendant's Position

With regard to depositions, Defendant proposes as follows:

First, because Plaintiffs' operative pleading contains and is based on allegations of more than 70 class-members/inmates/witnesses, Defendant will need more than the 10 depositions permitted under Rule 30(2)(A)(i). This is bolstered by the list of more than 100 inmates/witnesses in Plaintiffs' initial disclosures. Specifically, Defendant intends to depose every witness Plaintiffs plan to call at trial, as well as Plaintiffs' expert witnesses. Counsel for Plaintiffs have informed Defendant that at trial they will call somewhere between 40 and 50 inmate witnesses, as well as their experts. Defendant anticipates that many of Plaintiffs' witnesses are incarcerated (either in County jail or State prison) and, accordingly, requests that at the Scheduling Conference this Court authorize said depositions pursuant to Federal Rules of Civil Procedure Rule 30(a)(2)(B). Defendant has asked counsel for Plaintiffs to stipulate to such an order (which as this Court knows is common practice in inmate cases) yet counsel for Plaintiffs have not agreed.

Second, Defendant will oppose Plaintiffs' efforts to depose Sheriff Baca (let alone for more than seven hours) because the Sheriff is a high-ranking government official and Plaintiffs have not and cannot satisfy the legal standard for such a

-15-

deposition, namely that the information they seek from him cannot be obtained from other sources.  When and if Plaintiffs notice Sheriff Baca's deposition, Defendant will seek a protective order.

### B.    Interrogatories

#### 1.    Plaintiffs' Position

Due to the complexity of this case, Plaintiffs believe that Plaintiffs will need more than 25 interrogatories as set forth in Federal Rule of Civil Procedure 33(a)(1).  Plaintiffs propose that each party have the right to exchange up to 100 interrogatories.

Contrary to Defendant's statement, there is nothing unusual about a request to exchange up to 100 interrogatories, particularly given the factual complexity of the case. *See, e.g., Skinner v. Uphoff*, 410 F. Supp. 2d 1104 (D. Wyo. 2006) (holding that there was good cause for plaintiff class to serve more than 25 interrogatories in complex case involving inmate on inmate violence in prison). The suggestion below that the Plaintiffs will engage in "abusive discovery practices" misses the mark.  Counsel for Plaintiffs have every economic and practical incentive to tailor discovery to avoid a "document dump" by LASD and unnecessary document review.  That being said, counsel for Plaintiffs do expect the volume of discovery to be considerable, as would be reasonably expected in a case like this.

#### 2.    Defendant's Position

With regard to interrogatories, Defendant proposes as follows:

Defendant believes that 100 interrogatories per side is excessive and unnecessary, but Defendant would agree that each side should be entitled to propound 50 interrogatories.

-16-

### C.    Requests for Production of Documents

#### 1.    Plaintiffs' Position

The scope of Requests for Production should be governed by the Federal Rules of Civil Procedure.  The Court should eschew any arbitrary limits on Requests for Production, as Defendant has suggested.  Plaintiffs took great care in constructing its current discovery requests.   While the volume of requested information is significant, it is necessary for the proper adjudication of this case.  Plaintiffs have no desire or strategy to use the volume of discovery for litigation leverage.

#### 2.    Defendant's Position

With regard to requests for production of documents, Defendant proposes as follows:

Defendant strongly believes that this Court must limit the number of document requests both sides may propound.  Plaintiffs have already propounded more than 150 Requests for Production of documents (*see*, Exhibit "3" hereto), seeking tens of thousands of pages of records from Defendant.  Plaintiffs claim that "they took great care in constructing its current discovery requests" but that is contradicted by a close examination of the subject discovery.  For example, Plaintiffs have outrageously sought all documents between the County and Office of Independent Review – communications that are obviously privileged and not subject to production. As indicated above, Defendant anticipates that Plaintiffs will engage in similar abusive discovery practices that will highly prejudice Defendant unless the Court sets a reasonable limit or, as a preliminary measure, adopts the phased discovery plan outlined in Section II(C)(2).

-17-

### D.    Stipulation To Allow Exchange Of Discovery And Discovery Correspondence Via Email

#### 1.    Plaintiffs' Position

To reduce costs for both parties and increase the speed at which discovery can take place, Plaintiffs proposed that the parties enter into a stipulation allowing the electronic exchange of discovery requests and responses. This is a routine agreement in modern litigation. Nevertheless, Defendant has refused to stipulate to such exchange. In earlier versions of this Rule 26(f) Report, Defendant stated its position more straight-forwardly as follows: "Defendant is not willing to accept service of discovery by email." That remains Defendant's position. This refusal will needlessly make discovery slower and more expensive.

#### 2.    Defendant's Position

Defendant agrees that all discovery should be served in accordance with the Federal Rules of Civil Procedure.

### E.    Stipulation To Waive The Requirements of Rule 30(a)(2)(B)

Pursuant to Federal Rule of Civil Procedure 30(a)(2)(B), a party must obtain leave of court to depose a deponent who is confined in prison. During the July 2, 2012 conference of counsel, Defendant requested that Plaintiffs stipulate to the required order for in-custody depositions.

#### 1.    Plaintiffs' Position

Contrary to Defendant's breathless claims that Plaintiffs have refused to stipulate to its proposal, Plaintiffs are willing to discuss this issue further with Defendant. Plaintiffs are concerned about Defendant providing inmates and counsel with adequate notice to allow preparation, given the difficulties of interacting with inmate clients. Plaintiffs also are concerned about the LASD forcibly transporting inmates to locations of depositions and thereby intimidating witnesses.[8] Accordingly, Plaintiffs are open to discussing a process that

---

[8]Defendant says it is "amazing[ ]" that Plaintiffs would be concerned about intimidation of witnesses. It is, indeed, amazing that Plaintiffs should have to be

-18-

appropriately addresses these and other concerns.

Defendant's contention that Plaintiffs are "asserting that Defendant is not entitled to depose any [of] their trial witnesses" is a straw man. The only issue is whether Defendant will have to follow the Federal Rules of Civil Procedure providing that leave of Court be sought before the deposition of an incarcerated inmate is taken. Just as Plaintiffs must depose Sheriff Baca since he will be the key witness at trial, they have no intention of arguing that Defendant is not entitled to depose witnesses whom Plaintiffs intend to have testify at trial.

## 2.    Defendant's Position

Defendant has asked Plaintiffs to enter into a routine stipulation to permit in-custody depositions in this matter but, unfortunately, they have refused to agree Instead, while they claim to take the high road, Plaintiffs hurl baseless accusations at Defendant regarding the intimidation of witnesses. Plaintiffs' refusal to agree to allow Defendant to depose incarcerated parties and class-members is unprecedented. This should be a non-issue, but, in typical fashion, Plaintiffs have chosen to create difficulties where there should be none. Given that Plaintiffs and the vast majority of their witnesses are incarcerated, this position equates to Plaintiffs asserting that Defendant is not entitled to depose any of their trial witnesses. Apparently, the ACLU would prefer Defendant not assert its Constitutional rights to due process and a fair trial, which would require, at an absolute minimum, that Defendant have an opportunity to question Plaintiffs and class members under oath – *before they testify at trial.* If Plaintiffs maintain their position, then Defendant intends to file an *ex parte* application for an order authorizing in-custody depositions. Given that authorization for in-custody

_____

concerned about such things, but the sad reality is that the Sheriff's deputies have routinely intimidated inmates who allege abuse. Defendant's feigned outrage is at odds with the troubling actions of some deputies in the jails. Similarly, Defendant's claim that inmate declarations are "largely false" is unsupported and at odds with admissions by Sheriff Baca and other officials of serious problems in the jails. Such claims underscore the need for immediate and vigorous discovery in this case. Defendant's resistance to such discovery defies its claims that it has nothing to hide and that the inmates are all lying.

-19-

depositions is routine, and Plaintiffs' counsel has stipulated to the required order in the past (*see e.g.*, *Peter Johnson, et al. v. Cnty. of Los Angeles*, U.S.D.C. Case No. CV 08-03515 DDP (SHx), Docket No. 136), if Defendant is forced to seek relief from the Court, then it will seek sanctions under Federal Rules of Civil Procedure Rule 37 and under 28 U.S.C. § 1927.

In response to Plaintiffs' remarks above:

- There is no genuine issue regarding notice of the subject depositions. This is already governed by Rule 30 and must be coordinated with the Litigation Coordinator of each respective prison. Also, counsel for Plaintiffs already know these witnesses extremely well – they have even worked with each of them to craft (largely false) declarations against the Sheriff's Department.

- Amazingly, Plaintiffs use the instant Report to vaguely accuse the Sheriff's Department of an intention of engage in criminal misconduct (i.e., improper use of force and intimidation) regarding inmate depositions. Not only do Plaintiffs have no proof in support of their assertions—which are patently false— but their assertions are intentionally vague and unspecific so they cannot be tested.

## VI. OTHER ORDERS (Rule 26(f)(3)(F))

Defendant contends that several other important issues require entry of orders pursuant to Rule 26(f)(3)(F). These issues include the following:

### A. Stay of All Discovery Due to On-Going State and Federal Criminal Investigations.

#### 1. Plaintiffs' Position

If Defendant files a properly noticed motion for a stay, Plaintiffs look forward to the opportunity to brief this issue fully, because the authority and

-20-

argument provided by Defendant would not support such a stay. Until such time it is entirely improper for Defendant to assert a hoped-for "stay" as a reason not to produce documents.

Defendant's claim that Plaintiffs have "insisted" that the LASD conduct criminal investigations into each of the use of force allegations in Plaintiffs' operative pleading is incorrect. Plaintiffs have never made such a demand in part because they do not believe the LASD will conduct reasonable, unbiased investigations into the behavior of their personnel.

### 2.    Defendant's Position

In the event that the Court does not adopt the three-phased discovery plan set forth above in Section II(C)(2), the Defendant shall move for an order staying all discovery that relates to incidents, materials, and personnel that concern on-going criminal investigations.

As this Court knows, the Sheriff's Department has initiated—and counsel for Plaintiffs have insisted upon—criminal investigations into each of the use of force allegations in Plaintiffs' operative pleading. Those investigations have been initiated, are on-going, and are being turned over to the Justice System Integrity Division of the Los Angeles County District Attorney's Office for its consideration of filing state criminal charges against any culpable parties.

Also, in the federal criminal justice system, the United States Attorney's Office of the Central District of California has convened a Grand Jury that is investigating allegations of excessive force in the Los Angeles County jail system (the very same allegations pending in this matter). Counsel for Plaintiffs are cooperating with the federal criminal investigation.

Pending criminal investigations create a number of significant constitutional concerns and logistical problems that can and should be addressed by a stay of this matter until they have been completed. For example, civil discovery can interfere with criminal investigations because it can reveal publicly information, witnesses,

-21-

and documents that the governments intends to rely upon in its prosecution, and could be compromised by its disclosure. Additionally, witnesses may refuse to provide testimony or cooperation because of the fear that they may be the subject of an on-going criminal proceeding. Thus, the civil discovery process is thwarted because only one side of the relevant facts is produced.

The law is clear that this Court has discretion to stay discovery in the present case while criminal investigations are pending, in order to promote judicial economy and to protect the interests of all parties. *See e.g.,Landis v. North American Co.*, 299 U.S.248, 254, 57 S.Ct. 163 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."). "[A] court may decide in its discretion to stay civil proceedings … when the interest of justice seem [ ] to require such action." *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995), *quoting United States v. Kordel*, 397 U.S. 1, 12 n. 27, 90 S.Ct. 763, 769 n. 27 (1970) (internal quotes omitted). In making this determination, a court must consider the particular circumstances and the competing interest that are involved in each case. *Federal Sav. And Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 902 (9th Cir. 1989). "Obviously a court should consider the extent to which the defendant's fifth amendment rights are implicated." *Id; see also Grubbs v. Irey*, 2008 WL 906246, *1 (E.D. Cal. 2008) ("District courts have the authority to stay civil proceedings pending the resolution of a parallel criminal investigation."). Again, if necessary, Defendant will file a motion for a stay.

## B.   Protective Order Regarding Over-Staffing And Attorneys' Fees.

### 1.   Plaintiffs' Position

Without any basis, Defendant says counsel for Plaintiffs will "overstaff" the case. Plaintiffs take exception to this unfounded suggestion.

In a typically overreaching claim, Defendant claims that "Plaintiffs' counsel

brought no less than 18 persons with them to the last hearing in this matter." To the contrary, Defendant must be referring to summer associates at ACLU and Paul Hastings, who observed proceedings for educational purposes. Most of the student attendees have not even worked on the case, and many have now left their temporary positions with the ACLU and Paul Hastings and returned to school. As any members of the public, our staffs have the right to attend and observe hearings. Moreover, none of those students would be seeking fees for time spent attending the hearing if Plaintiffs ever file a fee petition in this matter.

### 2. Defendant's Position

Based on their conduct to date, Defendant anticipates that Plaintiffs will engage in abusive discovery practices and over-staffing of this case, both of which will result in excessive attorneys' fees and costs. Indeed, Plaintiffs' counsel list no less than nine separate attorneys on the caption of this Report; Plaintiffs' counsel brought no less than 18 persons with them to the last hearing in this matter. To address these concerns, this Court should set reasonable limits regarding staffing and require Plaintiffs' counsel to regularly lodge under seal copies of their fees invoices with the Court. *See e.g.*, Order of Court (Docket No. 60) in *Peter Johnson, et al. v. County of Los Angeles*, U.S.D.C. Case No. CV 08-03515 DDP (SHx). Alternatively, counsel for Plaintiffs should stipulate that no more than two attorneys will bill any time for the same court appearances, meetings, and the like. Tellingly, Plaintiffs refuse to make this agreement.

### C. Avoiding Duplication Of Discovery.

### 1. Plaintiffs' Position

Plaintiffs expect production of responsive documents by Defendant in this case. Plaintiffs' counsel are open to eliminating discovery requests that are duplicative of those in other cases, such as *Holguin v. County of Los Angeles*, but only if Defendant stipulates that the protective orders he has obtained in those cases

-23-

do not bar Plaintiffs' counsel from obtaining any discovery obtained by the counsel for the plaintiffs in those cases.

### 2.    Defendant's Position

Many of incidents alleged in Plaintiffs' First Amended Complaint are also the subject of separate on-going civil actions for damages in this District. Extremely burdensome discovery that is duplicative of what Plaintiffs' herein seek has already been completed in several such cases, and there is no legitimate reason Defendant should be forced to respond to such discovery again. *See e.g., Holguin v. County of Los Angeles*, U.S.D.C. Case No. CV 10-08011 GW (PLAx); *Tutt v. County of Los Angeles*, U.S.D.C. Case No. CV 11-06126 SJO (AGRx); and *Vasquez v. County of Los Angeles*, U.S.D.C. Case No. CV 11-03849 PSG (PJWx).

Given that Plaintiffs' counsel has already acknowledged that they are cooperating with the plaintiffs' counsel handling these other on-going cases, Defendant should not be forced to needlessly incur attorneys' fees and costs associated with providing duplicative discovery. And if in this case Plaintiffs will stipulate that they will not duplicate any prior discovery in other actions, Defendant will stipulate that counsel for Plaintiffs in the instant case shall be bound by the protective orders entered in the *Holguin, Tutt,* and *Vasquez* matters.

## VII.   COMPLEX CASE

The parties do not believe the procedures in the Manual for Complex Litigation are appropriate in this case.

## VIII.  DISPOSITIVE MOTION SCHEDULE

### A.    Plaintiffs' Position

Without conceding the propriety of a dispositive motion in this case, Plaintiffs propose a dispositive motion cut-off date of September 16, 2013.

### B.    Defendant's Position

Defendant anticipates filing a motion(s) for summary judgment/partial summary judgment. With regard to dispositive motions, Defendant proposes as a

-24-

dispositive motion filing cut-off date of forty-five (45) days after the deadline to complete expert discovery.

## IX.    SETTLEMENT/ALTERNATIVE DISPUTE RESOLUTION

### A.    Plaintiffs' Position

#### 1.    Possibility of Prompt Settlement or Resolution

Plaintiffs are prepared to engage in early settlement discussions with or without the use of an intermediary.  Plaintiffs propose a deadline of July 5, 2013 to engage in formal Alternative Dispute Resolution.

#### 2.    ADR Selection Pursuant to Local Rule 16-15.4

Plaintiffs suggest Magistrate Judge Carla Woehrle as a mediator.  Judge Woehrle has been used by Defendant's counsel in the past, and is agreeable to Plaintiffs and their counsel.

Plaintiffs are also willing to use another Magistrate Judge, who is not involved in the litigation, as an intermediary.  Plaintiffs have great respect for the Court, but believe settlement discussions before the Court are inappropriate at this time, particularly because the Court will be the finder of fact in the event a trial is necessary.

### B.    Defendant's Position

#### 1.    Possibility of Prompt Settlement or Resolution

As set forth in Defendant's prior filings with this Court (Docket Nos. 61 and 63), Defendant is ready, willing, and eager to engage in early settlement discussions, but believes that the participation of an effective neutral is absolutely required if any resolution is to be reached. [9]

#### 2.    ADR Selection Pursuant To Local Rule 16-15.4

While Defendant holds Magistrate Judge Woehrle in the highest

---

[9] Plaintiffs have attached settlement correspondence to this document, not to involve the Court in the settlement process, but to correct statements by the Defendants to the effect that settlement discussions are sufficiently advanced, so as to warrant a phasing of discovery.

-25-

regard, Defendant selects ADR Procedure No. 1 (appearance before the District Judge assigned to this case). Defendant will not agree to a settlement conference before a magistrate judge. However, if this Court declines to engage the parties in further settlement discussions, then Defendant welcomes suggestions of other judicial officers who would be effective.[10]

## X.    TRIAL DATE AND ESTIMATE

### 1.    Plaintiffs' Position

Plaintiffs propose a trial date of October 22, 2013. Plaintiffs estimate that they will need approximately fifteen (15) court days to present their case. Defendant's suggestion that its case will take "four times longer" than Plaintiffs' is overreaching. By Defendant's logic, Plaintiffs might need to call multiple witnesses (other deputies, inmates, etc.) to rebut Defendants rebuttal witnesses. As any party, Defendant must be disciplined in their use of the Court's time. We would expect an even division of time among the sides at trial to be appropriate, and that a 6 week trial should be sufficient for the trial of this case.

### 2.    Defendant's Position

With regard to trial, Defendant proposes a trial date of forty-five (45) days after dispositive motions are decided.

Defendant's trial estimate depends entirely on how many witnesses Plaintiffs intend to call. Counsel for Plaintiffs have informed Defendant that at trial they will call both Plaintiffs, somewhere between 40 and 50 inmate witnesses, as well as multiple expert witnesses. For each inmate witness, it is likely that Defendant will need to call several witnesses, including the jail personnel involved in the inmate's

---

[10] Plaintiffs appear to be talking out of both sides of their mouth on this issue. While they claim that a settlement conference with this Court is somehow inappropriate (despite the years of settlement discussions with this Court between the parties about the jails), they have simultaneously provided the Court with their settlement proposal to Defendant and Defendant's response thereto. Defendant remains ready, willing, and able to participate in settlement conference with the Court as described in Defendant's Reply regarding its Request for a Settlement Conference with the District Court. (*See*, Docket No. 63, for the Court's convenience, attached hereto as Exhibit "5".)

-26-

allegations, as well as the involved investigators, supervisors, custodians of records, and medical personnel. Defendant will also need to call its expert witnesses. Accordingly, Defendant anticipates that its case-in-chief could take approximately four times longer than Plaintiffs' case-in-chief. Plaintiffs remark that Defendant's estimate "seems rather excessive," but does not explain why, especially given Defendant's showing. Furthermore, Plaintiffs assert that their "suggested schedule is the product of reasoned analysis, based on similar class action litigation" yet they have not articulated any specific basis for their trial estimate nor have they refuted the undeniable reality that with respect to each use of force incident, that Defendant will have multiple trial witnesses which supports Defendant's trial estimate.

## XI.    ADDITIONAL PARTIES

The parties do not anticipate naming additional parties.

-27-

## XII.   EXPERT WITNESSES

See section II(B) above.

Dated:  August 9, 2012                    DONNA D. MELBY
                                          JOHN S. DURRANT
                                          JADE H. LEUNG
                                          ELIZABETH C. MUELLER
                                          PAUL HASTINGS LLP


                                          By_____/s/ John S. Durrant_____
                                                  John S. Durrant
                                                  Attorneys for Plaintiffs


Dated:  August 9, 2012                    PAUL B. BEACH
                                          JUSTIN W. CLARK
                                          LAWRENCE BEACH ALLEN & CHOI, PC


                                          By_____/s/ Paul B. Beach_____
                                                  Paul B. Beach
                                                  Attorneys for Defendant
                                                  County of Los Angeles

LEGAL_US_W # 72000336.29