# 2012 Annual Report on Conditions Inside Los Angeles County Jails:

## The Troubling Pattern of Deputy-on-Inmate Head Strikes and Inmate Head Injuries in the Los Angeles County Jails

ACLU National Prison Project
ACLU of Southern California
Paul Hastings LLP

**September 26, 2012**

**<u>Principal Authors</u>**

**Sarah Liebowitz**
**ACLU Foundation of Southern California, Jails Project**

**Peter Eliasberg**
**Legal Director, ACLU Foundation of Southern California**

**Esther Lim**
**ACLU Foundation of Southern California, Jails Project Coordinator**

**John Durrant**
**Attorney, Paul Hastings LLP**





TABLE OF CONTENTS

I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    METHODOLOGY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.   SEVERE HEAD INJURIES RESULTING FROM
       HEAD STRIKES ARE PREVALENT IN THE
       LOS ANGELES COUNTY JAILS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

IV.    PHOTOGRAPHS AND MEDICAL RECORDS
       CONFIRM MANY OF THE INMATE STATEMENTS
       ABOUT SIGNIFICANT HEAD INJURIES . . . . . . . . . . . . . . . . . . . . . . . 8

V.     WHEN DEPUTIES MUST USE FORCE AGAINST
       INMATES, THEY HAVE MORE APPROPRIATE
       TACTICS AT THEIR DISPOSAL THAN HEAD
       STRIKES, WHICH ALMOST ALWAYS CONSTITUTE
       UNREASONABLE AND EXCESSIVE FORCE . . . . . . . . . . . . . . . . . . . . 9

VI.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## I.   INTRODUCTION

Correctional officers should strike inmates' heads only as a matter of last resort. But in the Los Angeles County Jails, that is not the reality.

As explained below, there is clear evidence that the Los Angeles County Sheriff's Department ("LASD") deputies have used head strikes with alarming regularity in the Los Angeles County jails.  In many of those incidents the head strikes have caused significant injuries.  The manner and frequency of such head strikes strongly suggests an inappropriate use of force by deputies.

In recent years, Los Angeles Sheriff's deputies have stomped on inmates' heads, even after shackling those inmates' hands.  They have bashed inmates' faces into concrete walls.  They have fractured inmates' facial bones – noses, jaws, cheekbones, or eye sockets.  The ACLU is aware of least 11 inmates who have had their facial bones broken by LASD deputies in the past three years.  One inmate has lost vision in one eye. Others have undergone surgery.

Sixty-four people have made sworn statements describing incidents in which deputies targeted inmates' heads for attack between 2009 and 2012.  These are not mere unsubstantiated complaints.[1]  The ACLU has corroborated 12 of these allegations of head injuries with secondary evidence, such as medical records, photographic documentation, or civilian reports.  In several other instances, inmate witnesses have corroborated reports of deputy-on-inmate head strikes.

If history is any guide, LASD will respond to this evidence by attacking the ACLU[2] and blaming inmates.  They will argue that inmates' accounts of deputies using

---

[1] Fifty-four declarants are inmates or former inmates; one is a visitor to MCJ; four declarants are civilian eyewitnesses; five are inmates or former inmates who witnessed deputies striking other inmates' heads.

[2] The day after the ACLU published its September 2011 report on deputy on inmate abuse in the jails, which included accounts of deputies beating inmates from two jails chaplains, a volunteer jail tutor, and a jail monitor, Sheriff Baca stated, "[t]ruth is hard to find if you're in a rush, and the ACLU obviously felt a rush to get the report out. They don't have any substantial proof other than accusations," available at http://www.scpr.org/news/2011/09/29/29150/la-sheriff-baca-dismisses-aclu-report-jail-brutali/.

1

unjustified force are false,[3] and they will allege that inmates were the aggressors.[4]  But even assuming that the LASD is correct that the inmates were aggressive towards deputies, the attempt to blame inmates does not absolve the LASD from its use of excessive and illegal force.  For even where inmates are the aggressors, the fundamental widely recognized rule regarding use of force by a custodial officer is that head strikes are almost never permissible.  Accordingly, head injuries should be an exceedingly rare consequence of a use of force incident, even when inmates are aggressive.

The reasons for this rule are clear:  deputy-on-inmate head strikes are unnecessarily dangerous to both inmates and deputies.  According to Steve Martin, a former correctional officer and a nationally recognized corrections expert: "because closed fist head strikes, strikes to the head with blunt objects, using force so that inmates' heads strike solid objects such as walls or floors, and/or kicks [to the head] by deputies produce needless and oftentimes serious injuries (and oftentimes corresponding officer hand injuries), and such tactics are not typically as effective in neutralizing inmate resistance

---

[3] In September 2011, an LASD spokesperson responded to a third ACLU report detailing scores of incidents of deputy on inmate abuse by saying that department thoroughly investigated all complaints of abuse that it received and that most were unsubstantiated. *See* Jennifer Medina, *Report Details Wide Abuse in Los Angeles Jail System*, NY Times, Sept. 28, 2011, available at http://www.nytimes.com/2011/09/28/us/aclu-suit-details-wide-abuse-in-los-angeles-jail-system.html?_r=2&pagewanted=1&hp.  In May 2010, the LASD spokesperson responded to an ACLU report containing numerous sworn statements of deputy abuse of inmates by stating that they were "absolutely false."  *See* ACLU: LA County jail guards perpetuate violence, KPCC Radio, May 5, 2010 available at http://www.scpr.org/news/2010/05/05/14828/aclu-says-la-county-jail-guard-perpetuate-violence/.

[4] "'Most of our uses of force, even when they're inappropriate, are provoked by the inmate,' [LASD Commander James] Hellmold said. 'That's the reality of the job.'" Jack Leonard and Robert Faturechi, *D.A. In the Dark On Jail Probes*, Los Angeles Times, Dec. 4, 2011 available at http://articles.latimes.com/2011/dec/04/local/la-me-jails-da-20111205.  In fact, the Los Angeles Citizens' Commission on Jail Violence has found that even according to the LASD's own statistics, in the majority of cases (57%) in 2011 where deputies used force against inmates, the inmates had *not* assaulted the deputies.   Finding available at http://ccjv.lacounty.gov/wp-content/uploads/2012/09/CCJV-090712-Exhibits.pdf./ The Commission also found that "LASD personnel have used force against inmates disproportionate to the threat posed, *or when there was no threat at all*."  *Id.* (emphasis added).  The Commission also found the LASD's "Process for Reviewing and Investigating Force Incidents Is Not Effective" and that "[t]here are multiple deficiencies in LASD's Investigatory Process." *Id.*  .

2

as many other approved tactics that are less potentially injurious, such hard impact strikes to the head should be very infrequently used."[5]  Deputies should only employ hard strikes to the head in situations "in which the inmate is engaged in aggravated active physical aggression (officer(s) is subject to death or great bodily harm) and other less injurious tactics are impracticable."[6]

According to Mr. Martin, the impropriety of head strikes and the frequency with which inmates in the County jails suffered injuries to their heads "are strong evidence that Los Angeles Sheriffs frequently used excessive and unreasonable force, even if the deputies had used force on the injured inmates because those inmates had been aggressive towards, or assaulted the deputies."[7]

## II.    METHODOLOGY

Over the years, the ACLU Foundation of Southern California received and collected several thousand complaints and reports from inmates, including inmate declarations, in the Los Angeles County Jail system in the past year.  The ACLU receives these complaints as a result of its monitoring role in the jails: pursuant to a series of court-approved agreements between the ACLU and the LASD, the ACLU has monitored conditions in the county jails since 1985.  The ACLU has greater access to jail facilities than the general public; thus, ACLU representatives are able to speak with inmates and observe jail conditions first-hand.

As part of their monitoring efforts, representatives from the ACLU's Jails Project regularly visit the jail facilities and process inmate complaints.  In addition, inmates and family members of inmates frequently write letters and make phone calls to the ACLU to make complaints about scores of issues, including deputy-on-inmate assaults.  Signs posted in common areas of the jail facilities tell inmates that they may contact the ACLU's Jails Project with complaints about jail conditions.

The information in this report comes from the thousands of complaints the ACLU received in the past four years, in addition to the dozens of jail tours and face-to-face

---

[5] Declaration of Steve Martin, ¶ 21 (September 21, 2012).
[6] Martin Decl., ¶ 21.
[7] Martin Decl., ¶ 25.

3

interviews with inmates ACLU representatives conducted.  Medical records, witness accounts, and photographs also provide documentation of deputy-on-inmate head strikes in the jail system.

The report's findings are also based on the observations of an expert:  Steve Martin, a former correctional officer who is now a correctional consultant who has been retained as a corrections expert by, among others, the United States Department of Justice's Civil Rights Division.  Mr. Martin has reviewed and/or helped develop use of force policies and practices for scores of confinement operations throughout the United States and its territories, including for the United States government.  In addition, Mr. Martin has served as the court-appointed monitor in class-action lawsuits regarding use of force claims in jails and prisons, and jointly monitored the New York City Department of Corrections over use of force at its jail on Rikers Island.

Mr. Martin reviewed a random sample of the reports of head injuries the ACLU has gathered, analyzing 19 uses of force incidents (roughly one-third of the total).  For each incident, he reviewed inmate declarations and any supporting documentation, such as photographs of injuries and medical records.

The head injuries and attacks detailed in this report are not exhaustive.  They simply represent the experiences of those inmates who brought their beatings and injuries to the attention of the ACLU.  As the ACLU has demonstrated in the past, many inmates are too fearful of deputy retaliation to report acts of deputy-on-inmate violence,[8] are threatened by deputies with more beatings,[9] are not taken to the medical clinic or hospital when they ask the deputies for medical attention,[10] or deputies tell them that they need to say that

---

[8] *See* Sarah Liebowitz, Peter Eliasberg, Margaret Winter, & Esther Lim, "Cruel and Usual Punishment:  How a Savage Gang of Deputies Controls LA County Jails" (2011), filed in *Rutherford v. Baca*, CV 75-04111-DDP, 2006 WL 3065781 (C.D. Cal. 2006) (No. 294), p. 18.  The Los Angeles Citizens' Commission on Jail Violence found that "Anecdotal Evidence Suggests Use of Force is Underreported" and that "witnesses and inmates fear retaliation for reporting an incident." Findings available at http://ccjv.lacounty.gov/wp-content/uploads/2012/09/CCJV-090712-Exhibits.pdf./.
[9] Declaration of Mr. D, ¶ 7 (Oct. 23, 2009).
[10] Declaration of Mr. KK, ¶ 20 (June 22, 2011); Declaration of Mr. LL, ¶ 20 (Sept. 9, 2011).

4

they fell to get medical attention.[11]

## III.   SEVERE HEAD INJURIES RESULTING FROM HEAD STRIKES ARE PREVALENT IN THE LOS ANGELES COUNTY JAILS

The types of injuries inmates have suffered evidence the extent of deputy-on-inmate head strikes in the Los Angeles County Jails.  In the last three years, inmates have submitted sworn statements documenting the following:

- Deputies have broken facial bones of at least 11 inmates.[12]

- Deputies have blinded an inmate in one eye.[13]

- Deputies have sent three inmates to the operating room.[14]

- Deputies have left 14 inmates with facial gashes – often just above their eyes – so deep they required sutures.[15]

"[T]he number and extent of head injuries sustained in these use of force incidents strongly suggest that LACJ deputies at alarming levels too frequently employ hard impact head strikes during use of force incidents," Mr. Martin concluded after reviewing a random sample of the incidents of deputy-on-inmate head strikes documented by the ACLU.[16]  The injury reports, Mr. Martin said, "reflected an exceedingly high incidence of head injuries many of which included multiple head injuries to the same inmate.

---

[11] Declaration of Mr. Y, ¶ 23 (July 5, 2011); Declaration of Mr. VV, ¶ 8 (March 28, 2011).

[12] Declaration of Mr. R, ¶ 24 (Apr. 12, 2011); Declaration of Mr. K, ¶ 8 (July 14, 2010); Declaration of Mr. L, ¶ 7 (July 20, 2010); Declaration of Mr. XX, ¶¶ 15-16 (Apr. 4, 2012); Declaration of Mr. FF, ¶¶ 30-32 (Apr. 19, 2011); Declaration of Mr. J, ¶ 11 (July 26, 2010); Declaration of Mr. ZZ, ¶ 31 (Feb. 24, 2012); Declaration of Mr. G, ¶ 14 (Oct. 21, 2009); Declaration of Mr. MM, ¶ 52 (June 22, 2011); Declaration of Mr. OO, ¶¶ 14-15 (Aug. 22 2011); Declaration of Mr. PP, ¶ 6 (May 10, 2010).

[13] Declaration of Mr. BB, ¶ 28 (Apr. 12, 2011).

[14] Mr. BB Decl., ¶ 28; Mr. FF Decl., ¶¶ 30-32; Mr. J Decl., ¶ 11.

[15] Declaration of Mr. D , ¶ 6 (Oct. 23, 2009); Declaration of Mr. T, ¶ 11 (Aug. 2, 2011); Declaration of Mr. UU , ¶¶ 17-18 (Oct. 28, 2011); Declaration of Mr. Z, ¶ 31 (Nov. 24, 2010); Mr. BB Decl., ¶ 28; Declaration of Mr. EE,¶ 20 (Aug. 4, 2011); Declaration of Mr. A, ¶ 6 (June 24, 2009); Declaration of Mr. H, ¶ 7 (Oct. 26, 2009); Mr. XX Decl., ¶¶ 15-16; Mr. FF Decl., ¶¶ 30-32; Declaration of Mr. F, ¶ 6 (June 16, 2009); Declaration of Mr. NN, ¶ 50 (Aug. 22, 2011); Declaration of Mr. EEE, ¶¶ 10, 13 (Jan. 1, 2012); Mr. E, ¶ 8 (Oct. 7, 2009).

[16] Martin Decl., ¶ 14.

5

Moreover, many of these injuries required medical procedures such as suturing and staples.  Some of the inmates sustained facial fractures and tooth injuries while others required hospitalization to attend their injuries."[17]

The sworn statements, photographs, and medical records that are being submitted to the Court today demonstrate both the seriousness of the injuries resulting from deputy-on-inmate head strikes in the Los Angeles County jails and the frequency with which they occur.  In addition, the ACLU has recently obtained a declination memorandum from the Los Angeles County District Attorney's office that summarizes LASD investigators' findings on use of force by LASD personnel against an inmate that involved an LASD *supervisor* directing deputies to strike an inmate in the head, even though the inmate was lying on the ground and there were four to six LASD personnel surrounding him when the supervisor gave the order to strike the inmate in the head. Finally, internal LASD memoranda from the last few years also discuss inmates who had head injuries in the wake of force used by deputies.[18]

Several of the most severe injuries are briefly described below:

- Declaration of Mr. FF, dated April 19, 2011, ¶¶ 14-15, ¶¶ 30-34 (Deputy punched the side of inmate's face; threw inmate to floor and repeatedly kicked inmate's head, jaw, and ear.  Inmate suffered a fractured jaw, which was wired shut for one month to heal.  Inmate required surgery to remove the lens from his eye.  Inmate needs future eye surgeries, including the insertion of a tube to drain fluid from his eye; a doctor told inmate that his vision may be permanently impaired.  Inmate received stitches to the inside of his ear);

- Declaration of Mr. J, dated, July 26, 2010, ¶ 4, ¶¶ 8-11 (Deputy punched inmate in head with closed fist; two deputies then repeatedly punched inmate in the face

---

[17] Martin Decl., ¶ 14.

[18] *See* Memorandum of Captain Gregory H. Johnson, January 23, 2010 at page 1 (noting inmate suffered bruises on left and right sides of his head); i*d*. at page 2 (noting inmate suffered significant injuries to his right cheek); i*d*. at page 3 (noting inmate, whose jaw had been wired shut due to a prior incident, suffered injuries to his head and jaw); i*d*. (noting deputy elbowed inmate in the face); i*d*. at page 4 (noting inmate had been kicked in the face); i*d*. at page 5 (noting inmate suffered bruising on his forehead and two large red knots on the top of his head); *See* Memorandum of Lieutenant Mark A. McCorkle, November 23, 2009 at page 3 (noting "[r]epeated blows to the head of inmates, causing injury to deputies" as one of most prolific tactical and policy issues observed in review of more than 100 use of force incidents between 2005 and 2009 in Men's Central Jail).

6

and head, causing the inmate to lose consciousness.  When the inmate regained consciousness, the deputies were still attacking him.  Inmate needed surgery to remove a hematoma in his ear.  He suffered facial fractures, a chipped tooth, and other trauma);

- Declaration of Mr. BB, dated April 12, 2011, ¶¶ 15-17, ¶ 28 (Deputies repeatedly punched, hit, and kicked inmate in the head and body.  Deputies ignored inmate's complaints about blurry vision and a swollen head.  When they finally allowed him to see a doctor, the doctor diagnosed a detached retina and performed surgery);

- Declination memorandum re: multiple deputies use of force on Gabriel Carrillo during Mr. Carrillo's visit to Men's Central Jail, dated April 6, 2012 (an LASD sergeant directed deputies to strike Mr. Carrillo in the head with "personal weapons."  At the time of the order, Mr. Carrillo was already surrounded by at least five deputies.  The attack left Mr. Carrillo with a broken nose, a swollen eye with ecchymosis, and other facial trauma, including a gash over his right eyebrow that required stitches.)

Deputy-on-inmate head strikes have resulted in at least 11 inmates suffering broken facial bones in the last three years, including fractured jaws, noses, cheekbones, and eye sockets.[19]  Several of the attacks are detailed below:

- Declaration of Mr. K, dated July 14, 2010, ¶¶ 5-8 (Deputies hit inmate's head and neck.  Although inmate did not initiate the altercation, deputies alleged that he did, and more deputies joined the attack.  Deputies broke inmate's nose.  They caused an artery in his brain to swell.  They tore a ligament in inmate's ankle);

- Declaration of Mr. R, dated April 12, 2011, ¶¶ 6-16, ¶ 24 (After inmate cursed at a deputy for denying the inmate dinner and putting the inmate on lockdown, the deputy punched the inmate in the eye with a closed fist and repeatedly kneed inmate in the face.  Other deputies joined the attack.  One deputy stepped on inmate's face.  Inmate was left with a broken nose, a gash on his forehead, and a swollen eye);

- Declaration of Mr. ZZ, dated March 13, 2012, ¶¶ 22-29, ¶ 31 (Deputies repeatedly punched inmate in the head and ear.  Inmate suffered a fracture near the bottom of his right eye.  He needed stitches on his forehead.  His ear bled for more than a day following the attack).

Fourteen inmates have reported wounds grave enough to require sutures or staples. Several of these wounds are described in detail below:

---

[19] Many others have suffered broken bones in other parts of their bodies as a result of use of force by deputies.

7

- Declaration of Mr. NN, dated August 22, 2011, ¶ 2, ¶ 31, ¶¶ 36-45, ¶ 50 (After deputy accused inmate of calling him "gay," he slammed inmate's face into a cement wall. Inmate lost consciousness. When he came to, he was handcuffed. A deputy was sitting on his back, punching his face and bringing a closed fist down on the back of his head. Deputies then used a Taser gun on inmate, while continuing to beat him. Inmate suffered a concussion, and needed 35 stitches to his forehead);

- Declaration of Mr. H, dated October 26, 2009, ¶¶ 6-9 (After inmate complained about not receiving showers, deputies punched him in the face, eventually beating him so severely that inmate required stitches on his eyebrow, staples on his head, and surgery on his knee. In addition, he suffered a broken leg. Inmate was handcuffed during the entire assault);

- Declaration of Mr. BB, dated August 2, 2011, ¶ 9, ¶¶ 20-22 (Two deputies repeatedly punched and kicked inmate's head, face, and body while inmate lay on the ground, and slammed his face into the ground. In addition to suffering a broken collarbone, inmate needed stitches above both eyebrows and bruises under his eyes. Inmate suffered dizziness and a ringing sound in his ear).

## IV.   PHOTOGRAPHS AND MEDICAL RECORDS CONFIRM MANY OF THE INMATE STATEMENTS ABOUT SIGNIFICANT HEAD INJURIES

Independent evidence corroborates many of the deputy-on-inmate head strikes the ACLU has documented over the past three years. [20] For 12[21] of the most severe head injuries inmates have reported, the ACLU has obtained medical records, photographs, or civilian witness reports that substantiate the inmates' accounts. In addition, inmate witnesses have corroborated several other reports of deputy-on-inmate head strikes.

When confronted with accounts of deputy-on-inmate attacks, the LASD has a common refrain: Blame the inmates or claim they are lying.[22] But the corroborating documents the ACLU has gathered demonstrate that the use of force is excessive

---

[20] While the frequency of head strikes and head injuries appears to have declined since September/October 2011 when the Los Angeles Times reported that the FBI is investigating deputy abuse in the jails, the ACLU issued its September 2011 report, and the Board of Supervisors appointed the Citizens' Commission on Jail Violence, the ACLU has nonetheless received three reports of head strikes by deputies since that time.
[21] Declaration of Mr. S; Declaration of Scott Budnick, *See* Declination memorandum concerning use of force by deputies on Gabriel Carrillo and photograph; Declaration of Mr. Y; Mr. BB Decl.; Mr. EE Decl.; Mr. H Decl.; Declaration of Paulino Juarez; Mr. FF Decl.; Mr. ZZ Decl.; Mr. F Decl.; Mr. NN Decl.
[22] See footnotes 1, 2, *supra.*

8

regardless of the purported provocation, and that inmates clearly are not lying about suffering severe head injuries at the hands of LASD deputies.  Several attacks for which the ACLU has obtained corroborating evidence are described below:

- Declaration of Esther Lim, ACLU of Southern California Jails Project Coordinator, dated July 27, 2011, ¶ 3, ¶¶ 6-8 (After receiving a report that deputies had beaten inmate Mr. BB, Ms. Lim visited him in the Los Angeles Medical Center.  Ms. Lim reported that the sclera in both of Mr. BB's eyes were completely red.  He had dark bruises under both eyes, stitches over both eyebrows, a swollen lip, a broken collarbone, and bruising on his body.  Ms. Lim's account corroborated the injuries Mr. BB reported receiving; Declaration of Mr. BB, dated August 2, 2011, ¶ 9, 20-22);

- Photographs and medical records of Mr. NN, dated March 29, 2011 (Photographs of Mr. NN taken March 29, 2011, show a large sutured wound on Mr. NN's forehead.  These photographs support the account Mr. NN gave in a declaration, dated August 22, 2011, ¶¶ 36-45, ¶ 50, in which Mr. NN recounted how a deputy slammed his face into a cement wall, and deputies then punched his face and head.  Mr. NN reported suffering a concussion and needing 35 stitches to his forehead.  Mr. NN's account is further substantiated by four declarations from inmate witnesses[23]);

- Medical records of Mr. FF, dated July 2010 (Medical records from Los Angeles Medical Center substantiate the injuries Mr. FF reported receiving at the hands of deputies in his declaration, dated April 19, 2011, ¶¶ 14-15, ¶¶ 30-34, in which he reported suffering a fractured jaw, surgery to remove the lens from his eye, and stitches to the inside of his ear).

## V.    WHEN DEPUTIES MUST USE FORCE AGAINST INMATES, THEY HAVE MORE APPROPRIATE TACTICS AT THEIR DISPOSAL THAN HEAD STRIKES, WHICH ALMOST ALWAYS CONSTITUTE UNREASONABLE AND EXCESSIVE FORCE

There may be situations that warrant deputy-on-inmate force, such as inmate-on-deputy assaults.  But even when force is warranted, according to Mr. Martin, head strikes are not the answer.  There are ways of handling aggressive inmates without causing such severe – and potentially lasting – injury.  When the deputies use closed fist strikes, they also risk significant injury to their own hands.  Furthermore, head strikes are not as

---

[23] Declaration of Mr. GGG, ¶¶ 12-13 (Aug. 19, 2011); Declaration of Mr. HHH, ¶¶ 12-19 (Aug. 19, 2011); Declaration of Mr. III, ¶¶ 5-20 (Aug. 19, 2011); Declaration of Mr. JJJ, ¶¶ 9-18 (Aug. 19, 2011).

effective as other types of force in restraining inmates.

The "goal in every situation in which force is appropriate is to bring the situation under control as quickly as possible by restraining the inmate," said Mr. Martin.[24] "Head strikes are improper both because they create a far greater risk of severe injury than other well-accepted tactics, and they are less effective means of restraining or immobilizing the inmate than these tactics."[25]

According to Mr. Martin, the tactics deputies should rely on in situations demanding force include: joint locks, pressure points, arm bars, wrist locks, and strikes to muscled areas of the body, such as thighs. "Such defensive tactics are intended to neutralize the inmate's aggression and facilitate restraint without creating a needless risk of serious injury to either the inmate or the officer," Mr. Martin said.[26]

The severe head injuries detailed in this report evidence the fact that Los Angeles Sheriff's Department deputies frequently strike inmates in the head, using "excessive and unreasonable force," Mr. Martin said.[27] Even if the situations described in this report warranted the use of force, according to Mr. Martin, deputies are unnecessarily imperiling inmates' health.

## VI.  CONCLUSION

The prevalence of head strikes and head injuries strongly support the recent preliminary findings of the Citizens' Commission on Jail Violence, which the Board of Supervisors appointed shortly after the ACLU's September 28, 2011 report on deputy-on-inmate abuse.[28] In particular, the use of unnecessary and dangerous force as demonstrated by the prevalence of head strikes and severe head injuries supports the following key findings of the Commission:

- LASD personnel have used force against inmates disproportionate to the threat posed or when there was no threat at all;
- LASD does not have a comprehensive, integrated and understandable use of force policy;
- A "force first" approach has been used as a means of discipline and to establish authority rather than a last-resort response to assaultive behavior;

---

[24] Martin Decl. ¶ 24.
[25] *Id.*
[26] *Id.*
[27] Martin Decl. ¶ 25.
[28] See footnote 8, above

10

- LASD training for custody is far below both industry best practices and training standards in other correction systems;
- There is substantial evidence of failures in reporting, investigating and disciplining use of force in the jails; and
- The miniscule number of unreasonable force findings casts doubt on the integrity of the investigatory process.[29]

---

[29] Findings available at http://ccjv.lacounty.gov/wp-content/uploads/2012/09/CCJV-090712-Exhibits.pdf.

11