14-0406\PNMI150126.ejg
GREEN & SHINEE, A P.C.
RICHARD A. SHINEE State Bar No. 62767
ELIZABETH J. GIBBONS State Bar No. 147033
Attorneys at Law
16055 Ventura Boulevard, Suite 1000
Encino, California 91436
Phone: (818) 986-2440
Facsimile: (818) 789-1503
Attorneys for Intervener, ALADS

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

ALEX ROSAS, et al.,

    Plaintiffs,

v.

LEROY BACA, et al.,

    Defendants.

ASSOCIATION FOR LOS ANGELES DEPUTY SHERIFFS, On Behalf of Its Members,

    [Proposed] Intervener

Case No. 2:12 CV 00428-DDP-SH

**NOTICE OF MOTION AND MOTION TO INTERVENE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF [F.R.C.P. RULE 24(c)]**

DATE:    March 2, 2015
TIME:    10:00 A.M.
PLACE:    Courtroom 3

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on March 2, 2015 at 10:00 a.m., or as soon thereafter as counsel may be heard by the above-entitled Court, located at 312 N. Spring Street, Los Angeles, California, Intervener, Association for Los Angeles Deputy Sheriffs (hereinafter "ALADS") will and hereby does move the Court to intervene, pursuant to F.R.C.P. Rule 24 (a) as of right and, in the alternative, permissively, pursuant to F.R.C.P. Rule 24(b), as a party to the pending action.

1

This Motion is brought on the grounds that the present parties to this litigation are not and cannot adequately protect the interests of Intervener ALADS in its existing collective bargaining agreement; that the present parties cannot and are not protecting the interests of ALADS, and its members, in the terms and conditions of employment of ALADS members, over which Defendants have a statutory obligation to bargain in good faith; and that the present parties are currently in negotiations to implement changes to Department policy and practices in the Los Angeles County Jails, which changes will or may eliminate or modify specific terms and provisions of the negotiated Memoranda of Understanding ("MOU") and/or consistent past practices between ALADS and Defendants, and/or wages, hours, and other terms and conditions of employment for ALADS members, without negotiating with or the participation of ALADS, the certified bargaining agent for Los Angeles County Deputy Sheriffs.

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities and Declarations filed herewith, the Complaint in Intervention lodged herewith, the pleadings and papers on file herein, and upon such other matters as may be presented to the Court at the time of the hearing.

This Motion is made following the conferences of counsel pursuant to Local Rule 7-3, which took place on December 30, 2014, and January 5, 2015.

DATED:  January 30, 2015                    Respectfully submitted,

                                            GREEN & SHINEE, A P.C.


                                            By: _____//S//_____
                                               RICHARD A. SHINEE
                                               Attorneys for Intervener, ALADS

TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii, iii

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . 1

FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    I.    INTERVENTION AS OF RIGHT . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        A.    The Present Application is Timely . . . . . . . . . . . . . . . . . . . . . 5

        B.    ALADS Has A Protectable Interest In The Subject Matter of This Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        C.    Disposition of The Matter May Adversely Affect ALADS' Interests . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        D.    The Present Parties Are No Longer Adequately Representing The Interests of ALADS . . . . . . . . . . . . . . . . . . 14

    II.    PERMISSIVE INTERVENTION . . . . . . . . . . . . . . . . . . . . . . . . . . 17

        A.    The Application for Intervention Is Timely . . . . . . . . . . . . . 17

        B.    Common Question of Law or Fact . . . . . . . . . . . . . . . . . . . . . 18

        C.    Independent Jurisdictional Basis . . . . . . . . . . . . . . . . . . . . . . 18

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# TABLE OF AUTHORITIES

**Federal Cases:**                                                              **Page(s)**

*Beckman Industries v. International Insurance Co.*,
    966 F.2d 470, 473-474 (9th Cir.1992) . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*Bureerong v. Uvawas*,
    167 FRD 83 (CD CA 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Cabazon Band of Mission Indians v. Wilson*,
    124 F.3d 1050 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*County of Orange v. Air California*,
    799 F.2d 535, 539 (9th Cir.1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Donnelly v. Glickman*,
    159 F.3d 405, 409 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 17

*Graham v. Connor*
    490 U.S. 386 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*League of United Latin American Citizens v. Wilson*,
    131 F.3d 1297, 1302 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 17

*Officers For Justice v. Civil Service Commission*,
    934 F.2d 1092 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Sagebrush Rebellion, Inc. v. Watt*,
    713 F.2d 525 (9th Cir.1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Stallworth v. Monsanto Co.*,
    558 F.2d 257, 265(5th Cir.1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States ex rel. McGough v. Covington Techs. Co.*,
    967 F.2d 1391, 1394 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. City of Los Angeles*,
    288 F.3d 391, 397-398 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . *passim*

*United States v. State of Oregon*,
    745 F.2d 550, 553 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

**Federal Statutes:**

F.R.C.P. Rule 24(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

/ / /

/ / /

/ / /

## TABLE OF AUTHORITIES (cont'd)

**California Statutes:**                                          **Page(s)**

California Government Code:

§§ 3500, et seq . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
§ 3504.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
§ 3504.5(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
§ 3505 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13


**Miscellaneous:**                                              **Page(s)**

Local Rule:

7-3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
24(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Los Angeles County Employee Relations Ordinance . . . . . . . . . . . . . . . . . . . . . 10

# MEMORANDUM OF POINTS AND AUTHORITIES

## FACTUAL BACKGROUND

The County of Los Angeles, through its Sheriff's Department, presently, and at all relevant times herein mentioned, has employed deputy sheriffs in various assignments in or at the 9 jail facilities operated by Los Angeles County. Pursuant to Sheriff's Department long standing policy, newly hired deputy sheriffs are required to work in a custody assignment at one of the County jails. Generally, the assignments in custody division, at one of the 9 County jail facilities, last between two and ten years. In addition, the Sheriff's Department has recently created a custody division "career track" which allows deputy sheriffs to work their entire career at a County jail facility. (Steck Dec. ¶¶ 4- 6.)

In or about January, 2012, the present Plaintiffs filed this action, on behalf of themselves and those similarly situated, alleging a pattern and practice of "deputy-on-inmate violence," alleging approximately 80 specific, separate instances of claimed "deputy-on-inmate violence" at only 3 of the 9 County jail facilities. ALADS was not named as a party to this lawsuit nor ever served with a copy of the complaint. A number of ALADS members are specifically alleged in the complaint to have used excessive and unnecessary force against jail inmates in the incidents enumerated in the complaint. None of these ALADS members, although named by name in the complaint, was named as a party or served with a copy of the complaint. (Shinee Dec. p. 8, ¶ 13.)

The complaint seeks injunctive relief which, among other things, permanently enjoins the existing Defendants, and their employees, some of whom are ALADS members, from subjecting inmates housed in any of the 9 County jail facilities to physical abuse and threat of physical abuse, as well as requiring Defendants to formulate a remedy which will eliminate the alleged pattern and practice of excessive force and the threat of physical abuse, including:

(A)    adequate policy on the use of force;

1

(B) adequate investigation of all use of force incidents and inmate-on-inmate violence, with investigations performed by personnel unconnected to the attack under investigation;

(C) appropriate training in use of force and prevention of inmate-on-inmate violence;

(D) appropriate discipline of staff members found to be involved in improper use of force incidents, improper threats of violence against inmates; incitement of inmate-on-inmate attacks, or failure to report use of force incidents;

(E) appropriate selection and supervision of command and uniformed custodial staff.

The present intervention motion relates to the parties' current negotiations and other efforts aimed at implementing an already executed settlement agreement. Intervenors have been advised by representatives of the sheriff's department and the county council's office, that the currently on-going discussions are intended to create the changes to staffing, discipline, policy and training sought in the complaint. (Shinee Dec.p. 11, ¶ 32.) The topics presently subject to these on-going discussions or negotiations for the implementation of the newly created policies outlined in the settlement agreement, directly concern issues which are mandatory subjects of bargaining between the County and ALADS.

ALADS's first notice of the present parties' proposed or intended changes to the force policy, disciplinary actions in force cases, and the training and staffing of the jails was by virtue of an editorial printed in the Los Angeles Times on December 16, 2014. (Shinee Dec. pp. 9-10, ¶¶ 20-23.) According to the Times' editorial, "*The settlement [in the Rosas case] imposes a long list of policy directives on the department, covering, among other things, the training of deputies, the use of force, data and complaint tracking, and staffing - - all focused on correcting the failures that led to the mistreatment of inmates and to reducing*

2

*the number of future incidents."* (Shinee Dec. ¶21, Ex. D.)

ALADS, having not been served by the County with any notice of proposed changes to wages, hours, and working conditions for ALADS members, which will resulting from the on-going negotiations, as is required by California law, had no knowledge of the changes to the force and disciplinary policies, or to the existing training and staffing procedures at the jails, which have been proposed, or possibly agreed to, by the County, Department and Sheriff in connection with the Rosas settlement agreement. The L.A. Times editorial, however, indicated that these changes are fundamentally completed. (*Id*.)

At no time prior to or during the on-going negotiations with Plaintiffs regarding the settlement of the Rosas lawsuit, which directly concern and modify rules and policies which are clearly mandatory subjects of negotiations, did Defendants Sheriff, Department, and/or County provide ALADS with required notice of the intended changes, or meet and confer with ALADS concerning the proposed changes to mandatorily negotiable policies which will be accomplished by the settlement agreement in this litigation. (Steck Dec. ¶¶ 10-11, 17.) In doing so, the present parties to this litigation have entered into a Settlement Agreement which directly interferes with and infringes upon the rights of ALADS and its members.

In compliance with Local Rule 7-3, the parties met on December 30, 2014 and January 5, 2015, via telephone conferences, to discuss ALADS' proposed intervention motion, based upon the information ALADS learned from the Times' article. On January 5, 2015, the parties determined that there was no possibility to settle the matter without litigation and ALADS advised the other parties it intended to file the instant motion. (Shinee Dec., p. 10, ¶¶ 25-26.) On January 6, 2015, in an apparent attempt to undercut the present Motion, the Parties filed with this Court a Joint Motion For Preliminary Approval And Notice of Proposed Settlement. (Dkt No. 110.) On January 23, 2015, this Court signed an Order

3

preliminarily approving the parties' proposed settlement.  (Dkt No, 111.)

ALADS seeks to intervene in this action in order to protect its own interests in the terms of its existing, negotiated MOU as well as the interests of its members in their wages, hours, and terms and conditions of employment which will be modified or eliminated by implementation of the terms of the preliminarily approved settlement agreement.

## **ARGUMENT**

### **I.**

### **INTERVENTION AS OF RIGHT**

F.R.C.P. Rule 24(a), sets forth the basis upon which a party may intervene in an ongoing lawsuit as a matter of right.  Federal courts, including the Ninth Circuit, have identified the following factors as determinative of the merits of an application to intervene as of right:

1) the application to intervene must be timely;

2) the applicant must have an interest relating to the property or transaction which is the subject of the action;

3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest;

4) the applicant's interest must be inadequately represented by the existing parties to the suit.

See, *Cabazon Band of Mission Indians v. Wilson*, 124 F.3d 1050 (9th Cir. 1997); *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998).  In evaluating whether these requirements are met, courts "*are guided primarily by practical and equitable considerations*." *Donnelly*, 159 F.3d at p.409.  Further, courts generally "*construe[ ] [the Rule] broadly in favor of proposed interveners*."  *United States ex rel. McGough v. Covington Techs. Co.*, 967 F.2d 1391, 1394 (9th Cir. 1992).

Interveners respectfully submit that the present application complies

with each of the foregoing requirements and therefore, the application to intervene as a matter of right should be granted.

### A.    The Present Application is Timely.

In determining the timeliness of an application for intervention as of right, the Ninth Circuit considers the following three factors:  1) the stage of the proceeding at which an applicant seeks to intervene; 2) the prejudice to other parties; 3) the reason for the length of the delay.  *League of United Latin American Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997) ("*LULAC*").

In *Officers For Justice v. Civil Service Commission*, 934 F.2d 1092 (9th Cir. 1991), the Ninth Circuit narrowed the parameters of the first prong of the timeliness analysis:

> "*In analyzing timeliness, however, the focus is on the date the person attempting to intervene **should have been aware his 'interest[s] would no longer be protected adequately by the parties,'  rather than the date the person learned of the litigation***."  [Emphasis added.]
> 934 F.2d at p.1095.

In the present case, although the litigation in this matter has been on-going since approximately 2012, ALADS only become aware in December, 2014 that the litigation will directly, and negatively, affect its interests, as well as the interests of its members, and immediately thereafter began the process to intervene in this matter.  As set forth above, ALADS was not advised prior to the December 16, 2014 LA Times editorial of the County's intention to completely re-write the force policies, disciplinary policies, reporting requirements, and discipline and complaint tracking procedures which directly effect the wages, hours, and terms and conditions of employment of ALADS members.

In fact, prior to the publication of the December 16, 2014  article by the Times, ALADS had been led to believe by defendants county, department and

sheriff, that Defendants were actively litigating the merits of the allegations made in the complaint.  ALADS was led to this incorrect conclusion by the fact that the Department is presently still investigating, and interrogating ALADS members concerning, the numerous specific allegations of excessive force which are set forth in the complaint.  (Shinee Dec. pp. 8-9, ¶¶ 14-20.)

In addition, some of the personnel assigned to investigate the allegations of excessive force stated in the complaint have stated to ALADS members and representatives that many of the inmates interviewed concerning their allegations stated in  the complaint admitted that they did not write the allegations and that the incidents stated in the complaint did not occur.  This information further led ALADS to believe that the Defendants were actively contesting the factual allegations and basis for the lawsuit.  (*Id*.)

Despite its statutory obligation[1] to notify ALADS of any proposed or intended changes to negotiable terms and conditions of employment of ALADS members, the Defendants never notified ALADS that their posture in the litigation changed from actively defending the substantive basis for the lawsuit to settling the suit for, apparently, everything the Plaintiffs sought by way of remedy. Likewise, ALADS was never notified by the County that the County was negotiating with Plaintiffs to provide Plaintiffs with all the relief they sought in the

---

[1]California Government Code section 3504.5(a) provides:
> *Except in cases of emergency as provided in this section, the governing body of a public agency, and boards and commissions designated by law or by the governing body of a public agency, shall give reasonable written notice to each recognized employee organization affected of any ordinance, rule, resolution, or regulation directly relating to matters within the scope of representation proposed to be adopted by the governing body or the designated boards and commissions and shall give the recognized employee organization the opportunity to meet with the governing body or the boards and commissions.*

complaint, or that an Implementation Plan designed to change the force policies, discipline policies, and other policies related to mandatory subjects of bargaining was being developed and negotiated.

It was not until ALADS reviewed the Times' editorial that ALADS reviewed the complaint and Implementation Plan. It was upon that review that ALADS learned the breadth of the policy changes agreed to by Defendants and the extent to which Defendants intended thereby to completely re-write the policies, disciplinary penalties, reporting requirements, and discipline and complaint tracking procedures without meeting and conferring with ALADS over these changes to mandatorily negotiable subjects.

Immediately upon learning of the proposed widespread changes contemplated by the settlement agreement, ALADS took all necessary steps to initiate this intervention motion. On or about December 19, 2014, ALADS' counsel contacted counsel for Plaintiffs and Defendants in writing and notified the parties of ALADS' intent to intervene in this lawsuit. (Shinee Dec. p. 9,¶¶ 25-26.) In follow-up to that correspondence, two Rule 7.3 telephone meetings of counsel took place on December 30, 2014 and January 5, 2015, in order for the parties to attempt to resolve these issues. (Shinee Dec. ¶ 26.)

During the December 30, 2014 meeting of counsel ALADS was advised that the parties had not yet filed the signed Settlement Agreement and the Court has not yet agreed to the Implementation Plan. (*Id*.) It was the day after the second telephone meeting, which second meeting was insisted upon by counsel for the existing parties, that the parties filed their Joint Motion For Preliminary Approval And Notice of Proposed Settlement. (Docket No. 110.)

In addition to these meet and confer discussions, ALADS also sent a letter to Sheriff McDonnell on December 19, 2014, requesting to meet and confer with the Department concerning the proposed policy changes resulting from the settlement of this lawsuit as were mentioned in the L.A. Times editorial. (Shinee

Dec. p. 10, ¶¶ 24, 27.)  As a result of this correspondence, a meeting between ALADS and the Sheriff's Department took place on January 27, 2015.  (*Id.*)

At the January 27, 2015 meeting, the Department's representative, Commander Dan Dyer, advised ALADS that no one from the Sheriff's Department had been involved in any of the settlement agreement or implementation agreement negotiations but rather such negotiations involved only County counsel. Commander Dyer stated that the completed Implementation Plan was presented to him, as the representative of the Sheriff's Department, as a completed agreement. (Shinee Dec. p. 10, ¶ 27; Steck Dec. p. 4, ¶ 16.)

It is apparent from these admissions by Commander Dyer that the County intentionally excluded the Sheriff's Department's Employee Relations unit from the settlement agreement and implementation agreement negotiations in order to keep ALADS in the dark until those agreements were completed, and thereby avoid their statutory obligations of providing ALADS notice and the opportunity to bargain over the changes to wages, hours, and terms and conditions of employment contemplated by these agreements.

Any delay in ALADS' knowledge of the change in focus of this litigation, from defense on the merits to settlement for everything requested in the complaint, was due to the deliberate and unlawful conduct of Defendant County. As such, there has been no unnecessary delay by ALADS in seeking to intervene in this action.

Finally, with regard to the factor concerning potential prejudice to the parties from the requested intervention, the Ninth Circuit in *United States v. State of Oregon*, 745 F.2d 550, 553 (9th Cir. 1984) [hereinafter "*Oregon"],* found there was insufficient prejudice to the parties to preclude Idaho from intervening fifteen years after the litigation began.  In that case, Idaho sought to intervene during a new stage of the litigation that involved "*new and expanded negotiations*."  The Court reasoned, "*This change of circumstance, which suggests that the litigation is*

*entering a new stage, indicates that the stage of the proceeding and reason for delay are factors which mitigate in favor of granting the application."* The court further reasoned:

> *The key point in this appeal, however, is that the existing parties' concerns have little to do with timeliness. They do not suggest that their problems are materially different now than they would have been had Idaho sought to intervene a decade or more ago. We find no basis in the record for holding that intervention would prejudice the existing parties **because of the passage of time**. We therefore conclude that Idaho's application should not have been denied as untimely.* [Emphasis added.] *Oregon, supra*, 745 F.2d at 553.

Similarly, here, there has been a change in the focus of this litigation, one occasioned by the Defendants' apparent agreement and current focus on providing the Plaintiffs with all the relief they sought in the complaint. Although ALADS disagrees with the fundamental proposition asserted in the complaint, to wit., that ALADS members regularly and routinely viciously or savagely beat plaintiff class members for no reason, ALADS is not suggesting that these disputed factual claims must be litigated before a remedy can be fashioned.

ALADS is not interested in undoing either of the agreements already reached by the parties. Rather, ALADS is interested in participating in the presently on-going discussions and negotiations between the appointed panel of monitors and the County concerning the specific modifications of existing policies, disciplinary penalties, reporting requirements, discipline and complaint tracking procedures, and possibly other mandatory subjects of bargaining, which will be implemented as the result of those agreements. The County attorney who participated in the January 27, 2015 meeting with ALADS stated in no uncertain terms that the only way ALADS would get a seat at that negotiations table is if they were successful on this Intervention application. (Shinee Dec. p. 11, ¶ 31.)

Where, as here, the focus of the litigation has recently changed and ALADS is only seeking to intervene to negotiate as to the policy changes suggested in the Implementation Plan, this intervention will result in no prejudice to the parties.  Denial of ALADS' intervention motion will, however, cause significant prejudice to all parties.

As stated by the Department's attorney on January 27, 2015, if ALADS is not allowed to intervene in this action, Defendants will unilaterally change or eliminate negotiated provisions of the MOU, or other negotiable terms and conditions of ALADS' members' employment, in violation of the Meyers-Milias-Brown Act, California Government Code sections 3500, et seq., as well as the Los Angeles County Employee Relations Ordinance.  Such un-negotiated changes in terms and conditions of ALADS members' employment constitute an unfair labor practice under California law.

Rather than have all the policy changes implemented under the settlement agreement reversed in an Unfair Labor Practice proceeding, it is far more cost effective, not to mention more likely to effectuate the actual change which the County and Plaintiffs purport to seek, to allow ALADS to participate in the negotiations from the beginning.

It is respectfully submitted that ALADS has only recently learned that their interests are no longer being adequately represented by the parties to this litigation and, therefore, this Intervention Motion is timely and should be granted.

**B.      ALADS Has A Protectable Interest In The Subject Matter of This Action.**

The Ninth Circuit Court of Appeal specifically considered an application for intervention by a labor organization concerned about the impact of a consent decree upon the provisions of its existing collective bargaining agreement and existing terms and conditions of employment of its members in *United States v. City of Los Angeles,* 288 F.3d 391, 397-398 (9th Cir. 2002) ["*City*

*of Los Angeles*"].  In overturning the district court's denial of the Los Angeles Police Protective League's ("League") motion to intervene in that action, which was brought by the United States alleging that the city, the police department and Board of Police Commissioners engaged in a practice of depriving Los Angeles citizens of their Constitutional rights, the Court specifically addressed the requirement that an intervener have a "*significant protectable interest in the action*":

> "*An applicant has a significant protectable interest in an action if (1) it asserts an interest that is protected under some law, and (2) there is a relationship between its legally protected interest and the plaintiff's claims.  The relationship requirement is met if the resolution of the plaintiff's claims actually will affect the applicant.   The interest test is not a clear-cut or bright-line rule, because [n]o specific legal or equitable interest need be established.  Instead, the 'interest' test directs courts to make a practical, threshold inquiry,  **and is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process**.*"  [Internal quotation marks and citations omitted; emphasis added.] 288 F.3d at p.398.

The 9th Circuit found that the League, the recognized bargaining representative for all Los Angeles City police officers, had a protectable interest in the merits of the litigation "*because the complaint seeks injunctive relief against its member officers and raises factual allegations that its member officers committed unconstitutional acts in the line of duty.*" *Id*. at p. 399.  The Appellate Court likewise concluded that the League had a separate, protectable interest in the remedy sought in the litigation in that case:

> "*Thus, the Police League's interest in the consent decree is two-fold. To the extent that it contains or might contain provisions that*

11

*contradict terms of the officers' MOU, the Police League has an interest.  Further, to the extent that it is disputed whether or not the consent decree conflicts with the MOU, the Police League has the right to present its views on the subject to the district court and have them fully considered in conjunction with the district court's decision to approve the consent decree.*"  *Id*. at p. 400.

The Court ruled that the League had a protectable interest in the litigation, based upon "*state law rights to negotiate about the terms and conditions of its members' employment as LAPD officers and to rely on the collective bargaining agreement that is a result of those negotiations.*"  *Id.*

**In the present case**, ALADS is the certified bargaining representative for all Los Angeles County deputy sheriffs.  As such, ALADS has the same direct interest in the subject matter of the present litigation as was found by the *City of Los Angeles* Court to be sufficient to allow intervention as of right.

Likewise, ALADS has the same recognized interest as the League in the proposed Implementation Plan, which, like the proposed consent decree in *City of Los Angeles*, will directly affect the terms and conditions of employment for ALADS' members.  More specifically, the Proposed Implementation Plan  is apparently intended to result in a complete re-writing of force and discipline policy and procedures, at a minimum, which will effectively eliminate or significantly modify many of the existing terms and conditions of employment for ALADS' members.

The present parties to this action submitted, on January 6, 2015, a Joint Motion for Preliminary Approval and Notice of Proposed Settlement.  As such, the existing parties' present negotiations are the equivalent of the negotiations which preceded the issuance of the consent decree at issue in *City of Los Angeles*.  Any order issued by this Court as a result of the present parties' on-going negotiations will have the same practical effect as a consent decree.  As such,

ALADS here has the identical interests in this litigation as the 9th Circuit recognized in ruling that the League should have been granted leave to intervene in the *City of Los Angeles* litigation.  The same result should prevail here.

### C.   Disposition of The Matter May Adversely Affect ALADS' Interests.

As previously set forth, ALADS has a recognized interest in protecting and uphold the terms of the collective bargaining agreement which it negotiated with Defendants.  It likewise has a statutory right to negotiate with the County and Sheriff's Department over any change to the terms and conditions of its members employment.  See, California Govt Code §§ 3504.5, 3505.

The Implementation Plan specifically calls for widespread changes to the existing discipline practices of the Sheriff's Department as it relates to deputy sheriffs.  For example, the Implementation Plan requires a "*firm policy of zero tolerance for acts of dishonesty or failure to report uses of force*."[2]   Such a policy completely obliterates the Department's currently existing progressive-step method of discipline required by the existing discipline policy.  (Shinee Dec. p. 11, ¶32.)

This revision to the disciplinary policy likewise eliminates the purpose, intent, and integrity of the parties' negotiated grievance procedure set forth in the MOU.  The grievance procedure is designed to allow a disciplined employee a meaningful opportunity to meet with the disciplinary decision maker, prior to the implementation of discipline, for the purpose of obtaining a modification or elimination of the proposed penalty.  (Shinee Dec. ¶ 33.)  Under the proposed policy revision, no Department manager or supervisor will have any authority or discretion to revise proposed discipline in cases which can be interpreted to fall within these enumerated categories.

Similarly, the Implementation Agreement proposes a new use of force policy which will prohibit deputy sheriffs from using force, including pepper spray

---

[2]Docket No. 110, Ex. B, p. 10, ¶ 13.1.

or a taser, "*unless there are no other more reasonable means to control the inmate*." (Dkt No. 110, Ex. B, p. 2, ¶ 2.5) The new force policy will likewise, pursuant to the terms of the implementation plan, prevent deputies from using kicks as defense techniques unless "*there are no other more reasonable means to avoid serious physical injury*." (*Id*. at ¶ 2.6.)

Each of these modifications will eliminate the standard of objective reasonableness, as defined by the Supreme Court in *Graham v. Connor*, 490 U.S. 386 (1989) which is presently used to determine whether a deputy's use of force is within policy. The objective standard will be replaced with an undefined, subjective standard with which it will be impossible for deputies to comply.

Defendants also plan to explain these significant policy changes in only one initial 8 hour training class and 2 hours of annual on-going training. The result of these significant policy changes with such minimal training will absolutely result in a significant increase in discipline but no significant change in the "culture," which the parties claim is their goal. (Shinee Dec. p. 12, ¶¶ 34-37.)

The policy changes which will result form the implementation plan are within the scope of mandatory bargaining and, therefore, directly affect the rights of ALADS and its members. *City of L.A., supra*. In light of the Department's counsel's position that the only way ALADS will have any involvement in the negotiation of the still to be created new policies is through successful intervention in this action, it is clear that ALADS's interests will be negatively affected in its absence.

**D.    The Present Parties Are No Longer Adequately Representing The Interests of ALADS.**

The Ninth Circuit in *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525 (9th Cir.1983), addressed the showing necessary to establish the inadequate representation prong of the intervention analysis:

"*This court has consistently followed Trbovich v. United*

*Mine Workers, 404 U.S. 528, 538, n.10, 92 S.Ct. 630, 636, n.10, 30 L.Ed.2d 686 (1972) in holding that the requirement of inadequacy of representation is satisfied if the applicant shows that the representation of its interest 'may be' inadequate and that the burden of making this showing is minimal.*" 713 F.2d at 528.

In *City of L.A., supra*, the Court defined the relevant factors which are taken into consideration under this analysis:

*To determine whether the existing parties adequately represent an applicant's interest, we consider: (1) whether the interest of a present party is such that it will undoubtedly make all the intervener's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether the would-be intervener would offer any necessary elements to the proceedings that other parties would neglect. . . . The requirement of inadequate representation is satisfied if the applicant shows that representation of his interest [by existing parties] may be inadequate.*" [Internal quotation marks and citations omitted.] 288 F.3d  at p.398.

In the present case, it is respectfully submitted that ALADS has met this burden.  Defendants have chosen to directly negotiate with Class Counsel and the appointed monitors, and agreed to eliminate or significantly modify negotiated MOU provisions concerning, at a minimum, grievances, as well as modifying mandatory subjects of bargaining regarding force policies, disciplinary policies, reporting requirements, and discipline and complaint tracking procedures.  In so doing, Defendant County has deliberately excluded ALADS from negotiations concerning changes to wages, hours, and terms and conditions of employment, in

violation of State law.  As such, Defendants have ignored the bargaining rights of Interveners which are established by State law and have effectively defied their own obligations created thereby.

Defendants herein have stated, in so many words, that they have no intention of involving ALADS in any discussions of any policy changes envisioned by the implementation agreement unless ALADS is allowed to intervene in this action.  This statement alone is indisputable evidence that the present parties have no incentive or intention to protect the bargaining rights of Interveners.  In *City of L.A., supra*, the Ninth Circuit found that the existing parties to the litigation in that case did not adequately protect the interests of the League:

> *Normally, a presumption of adequate representation*
> *generally arises when the representative is a*
> *governmental body or officer charged by law with*
> *representing the interests of the absentee.  However, this*
> *presumption arises when the government is acting on*
> *behalf of a constituency that it represents.  The situation*
> *is different when the government acts as an employer, as*
> *here.  **The presumption has not been applied to parties***
> ***who are antagonists in the collective bargaining***
> ***process. The Police League is the designated***
> ***representative of its members in that endeavor; the City***
> ***is not**. ... In sum, the Police League has made the*
> *minimal showing needed to establish that the City*
> *defendants' representation "may" be inadequate.*
> [Internal quotation marks and citations omitted; emphasis
> added.]  288 F.3d at 401-402.

In the present case, ALADS again stands in the same shoes as the League.  ALADS, like the League, is the antagonist of the Defendants in the

collective bargaining relationship.  As such, ALADS has likewise made a sufficient showing that the County defendants' representation "*may*" be inadequate.  The present motion for intervention as of right should be granted.

## II.

## PERMISSIVE INTERVENTION.

ALADS submits that, although it has established compliance with the requirements for intervention as of right, it is also, in the alternative, entitled to permissive intervention in this case.  Rule 24(b) sets forth the circumstances whereby a non-party may permissively intervene in a pending action.  The factors articulated by the Ninth Circuit for determining the merits of a permissive intervention motion are as follows:

1) The applicant's motion must be timely;

2) The applicant seeking intervention must share a common question of law or fact with the main action; and

3) The court must have an independent basis for jurisdiction over the applicant's claims.

*See Donnelly, supra*, 159 F.3d at 412; *LULAC, supra*, 131 F.3d at 1308.  It is respectfully submitted that each of the foregoing factors supports Intervener's present motion.

### A.    The Application for Intervention Is Timely.

It is well-settled that the consideration of timeliness in an application for permissive intervention is the same as the analysis where the intervention is sought as of right.  *LULAC, supra*, 131 F.3d at 1308; *County of Orange v. Air California*, 799 F.2d 535, 539 (9th Cir.1986)

As previously set forth herein, the present application is timely as ALADS initiated the Rule 7.3 process within days of being learning of the potential impairment of ALADS' interests, ALADS first notice of this possibility.  As set forth in more detail above, the present intervention motion is timely.

17

## B.   Common Question of Law or Fact.

The existence of a common question of law or fact is liberally construed, in favor of prospective interveners. *Stallworth v. Monsanto Co.*, 558 F.2d 257, 265(5th Cir.1977); *Bureerong v. Uvawas*, 167 FRD 83 (CD CA 1996).

ALADS here seeks to intervene in order to obtain a place at the negotiations table in the on-going discussions concerning the changes to Department policy and practice envisioned by the implementation agreement.  The question of the impact upon the bargained for rights of ALADS and its members, as set forth in the Association's MOU, as well as the wages, hours, and terms and conditions of employment of ALADS' members, by the proposed policy changes and correlated training modifications, which the parties are presently attempting to formulate, and will thereafter present to the Court for adoption as a federally enforceable court order, presents a question of both law and fact which effects the rights of the current parties as well as those of Intervener.  See, *U.S. v. City of L.A., supra*.  As such, it is respectfully submitted that this factor weighs in favor of allowing the intervention sought herein by ALADS.

## C.   Independent Jurisdictional Basis.

In *Beckman Industries v. International Insurance Co.*, 966 F.2d 470, 473-474 (9th Cir.1992), the Ninth Circuit held that an intervener need not establish an independent basis for subject matter jurisdiction where there purpose of intervention is to challenge a protective order already entered in the litigation. Here, Interveners seek to participate in the creation and enforcement of  revised force, reporting, discipline, tracking and training policies envisioned by the already existing implementation plan.  By such participation, ALADS will be able  to protect the bargained for MOU provisions relating to the same issues as well as its statutory right to collective bargaining over these topics.  Thus, ALADS' present position is akin to that in *Beckman* and the independent jurisdictional basis requirement should not be strictly construed in this matter.

# **CONCLUSION**

For each of the foregoing reasons, ALADS respectfully requests that the Motion to Intervene be granted, in its entirety.

DATED:  January 29, 2015                    Respectfully submitted,

GREEN & SHINEE, A P.C.


By:_____//S//_____
RICHARD A. SHINEE,
Attorneys for Intervener, ALADS

<u>PROOF OF SERVICE</u>

STATE OF CALIFORNIA          )
                             ) ss.
COUNTY OF LOS ANGELES        )

I am a citizen of the United States and a resident of the County aforesaid; I am over the age of eighteen years and not a party to the within action; my business address is 16055 Ventura Boulevard, Suite 1000, Encino, California, 91436.

On the date written below, I served the within

**NOTICE OF MOTION AND MOTION TO INTERVENE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF [F.R.C.P. RULE 24(c)]**

**re: <u>Rosas v. Baca et al.</u>, Case No. CV 00428-DDP-SH**

on the interested parties in said action by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid in the United States mail at Encino, California, addressed as follows:

**SEE SERVICE LIST**

**XX**     (**FEDERAL**) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on January 30, 2015, at Encino, California.

_____//S//_____
Karen Asseraf

20

## PROOF OF SERVICE MAILING LIST

Donna D. Melby, Esq.
Paul Hastings L.L.P.
515 South Flower Street, 25th Floor
Los Angeles, CA 90071-2228

Eric G. Balaban ACLU National Prison Project
915 Fifteenth Street NW, 7th Floor
Washington, D.C. 20005

Peter J. Eliasberg
ACLU Foundation of Southern California
1313 West Eight Street, Suite 200
Los Angeles, CA 90017

Paul Beach
Lawrence, Beach, Allen & Choi, LLP
100 West Broadway, Suite 1200
Glendale, CA 91210