14-0406\PDECS150129.ejg
GREEN & SHINEE, A P.C.
RICHARD A. SHINEE State Bar No. 62767
ELIZABETH J. GIBBONS State Bar No. 147033
Attorneys at Law
16055 Ventura Boulevard, Suite 1000
Encino, California 91436
Phone: (818) 986-2440
Facsimile: (818) 789-1503
Attorneys for Intervener, ALADS

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX ROSAS, et al.,<br><br>   Plaintiffs,<br><br>v.<br><br>LEROY BACA, et al.,<br><br>   Defendants.<br><hr>ASSOCIATION FOR LOS ANGELES DEPUTY SHERIFFS, On Behalf of Its Members,<br><br>   [Proposed] Intervenor, | Case No. 2:12 CV 00428-DDP-SH<br><br>**DECLARATIONS OF DON JEFFREY STECK AND RICHARD A. SHINEE, WITH EXHIBITS THERETO, IN SUPPORT ALADS' MOTION TO INTERVENE [F.R.C.P. RULE 24(c)]**<br><br>DATE:  March 2, 2015<br>TIME:  10:00 A.M.<br>PLACE: Courtroom 3 |

   Proposed Intervenor, Association for Los Angeles Deputy Sheriffs, hereby submits the following Declarations and Exhibits in support of the Motion to Intervene, filed concurrently herewith.

DATED: January 29, 2015    Respectfully submitted,

            GREEN & SHINEE, A P.C.


            By: _____//S//_____
              RICHARD A. SHINEE
              Attorneys for Intervener, ALADS

**<u>DECLARATION OF DON JEFFREY STECK</u>**

I, Don Jeffrey Steck, hereby declare as follows:

1.      I am presently employed as a sworn Los Angeles County Deputy Sheriff.  I currently hold the elected office of President of the Association for Los Angeles Deputy Sheriffs, ALADS, the proposed Intervenor in this action.

2.      I make this declaration based upon my own personal knowledge of the facts set forth herein.  As to any facts stated to be based upon information and belief, I believe them to be true.  If called as a witness, I would and could competently testify to the facts set forth herein.

3.      I have held the elected office of President of ALADS since March 14, 2014.  I also held the elected position of treasurer from November , 2103 to March 14, 2014.  I was first elected to the ALADS Board of Directors in November, 2011 and have served on the ALADS Board of Directors continuously from November, 2011 to the present.  I have been a sworn Los Angeles County Deputy Sheriff since January, 1999.

4.      The Los Angeles County Sheriff's Department employs deputy sheriffs in various assignments in or at the 9 jail facilities it operates.  Those jail facilities are Inmate Reception Center; Men's Central Jail; Twin Towers Correctional Facility; Pitchess Detention Center, East Facility; Pitchess Detention Center, North Facility; Pitchess Detention Center, South Facility; Noth County Correctional Facility; Century Regional Detentional Facility; and Mira Loma Correctional Center.  Presently, Pitchess Detention Center, East Facility and the Mira Loma facility are closed, with some talk of these facilities being re-opened.

5.      Pursuant to Sheriff's Department long standing policy, newly hired deputy sheriffs are required to work in a custody assignment at one of the County jails.  Generally, a new deputy's assignment in custody division, at one of the 9 County jail facilities, lasts between two and ten years.

6.      In addition, the Sheriff's Department has recently created a

custody division "career track" which allows deputy sheriffs to work their entire career at a County jail facility.

7.    Pursuant to Article 31 of the negotiated Memorandum of Understanding between ALADS and the County of Los Angeles, the designated authorized agents for ALADS, for purposes of administering the terms of the MOU, are the President and the Executive Director of ALADS.

8.    Article 19, Section 1 of the negotiated MOU defines ALADS' rights under the MOU to include:

   A.    *Represent its members before management representatives regarding wages, hours, and other terms and conditions of employment.*

   B.    *Receive timely written notice of any ordinance, rule, resolution, or regulation directly related to wages, hours, and other terms and conditions of employment.*

9.    Copies of Article 31 and Article 19 of the MOU are attached hereto and marked as Exhibits A and B, respectively.

10.    Since my election as the President of ALADS in December, 2014, I have not received, as the designated authorized agent of ALADS, any written notice for the County or Sheriff's Department that the Department plans to implement changes to the use of force, discipline, or discipline tracking policies as the result of the settlement agreement between the County and the Plaintiffs in this action.

11.    Since my election as ALADS President, I have not received, as the designated authorized agent of ALADS, any written notice from the County or Sheriff's Department of any proposed changes to policy, procedures, rules or regulations which will be implemented as the result of the settlement agreement in this litigation.

12.    I was present at a meeting with Sheriff's Department

2

management representatives on January 27, 2015, which was scheduled for the specific purpose of discussing the settlement agreement in this litigation. A copy of the correspondence from the Sheriff's Department's Employee Relations unit confirming the scheduling of the January 27, 2015 meeting is attached hereto and marked as Exhibit C.

13. One of the approximately 10 Department management representatives present at the January 27, 2015 meeting was Rick Brouwer. I know Mr. Brouwer to be an attorney employed by the Office of the Los Angeles County Counsel who is assigned as counsel for the Sheriff's Department.

14. Also present as a management representative at the January 27, 2015 meeting was Commander Dan Dyer. I know Commander Dyer to be assigned to the Custody Division training bureau of the Sheriff's Department. At the meeting, Commander Dyer stated that he was the "point man" for the Sheriff's Department concerning this litigation.

15. Additionally, Lt. Daniel Lopez and Captain Greg Nelson, who I know to be assigned to the Sheriff's Department's Employee Relations Unit, were also present and participated in the January 27, 2015 meeting.

16. Commander Dyer stated during the January 27, 2015 meeting that the Department could not have given ALADS the required written notice since he, as the Department's representative, was presented with the Implementation Plan as a completed document and no one from the Sheriff's Department was involved in the preparation or creation of that document.

17. Further, ALADS maintains, in the regular course of our business, an annual file of all incoming mail from the Sheriff's Department providing written notice of proposed changes to wages, hours, and other terms and conditions of employment received that year. I have reviewed the contents of each of the incoming mail files for 2012, 2013 and 2014, and there is no written notice from the Sheriff's Department that was received by ALADS , which provides

notice of any intended changes to any Department policy, practice, procedure, rule or regulation as the result of the settlement agreement or otherwise related to this litigation.

18.    During the January 27, 2015 meeting, Mr. Brower stated that the only way that ALADS would be allowed by the County to participate in the on-going discussions concerning policy changes required by the Implementation Plan would be if this Intervention motion is granted.

I declare under the laws of the State of California that the foregoing is true and correct.  Executed this 30th day of January, 2015 at Monterey Park, CA.


_____
//S//
DON JEFFREY STECK

4

## **DECLARATION OF RICHARD A. SHINEE**

I, Richard A. Shinee, hereby declare as follows:

1.      I am an attorney at law, duly admitted to practice before all the courts of the State of California, as well as the Central District of California and the 9th Circuit Court of Appeal.  I am the senior partner in the law firm of Green & Shinee, the attorneys for Intervenor, ALADS in this litigation.

2.      The facts set forth in this declaration are true based upon my own personal knowledge.  As to those facts stated herein to be based on information and belief, I believe those facts to be true.  If called as a witness, I would and could competently testify to the facts set forth herein.

3.      I have been an attorney with Green & Shinee for approximately 35 years.  Since approximately 1980, Green & Shinee has been general counsel to the Association for Los Angeles Deputy Sheriffs, the proposed Intervenor in this action.

4.      ALADS is now and has been since 1976, the recognized bargaining representative of all members of bargaining Unit 611.  Bargaining unit 611 is comprised of all Los Angeles County Deputy Sheriffs and all District Attorney investigators.

5.      In my capacity as an attorney and partner with Green & Shinee, I have represented hundreds of deputy sheriffs in disciplinary investigations and appeal proceedings.  I have also represented ALADS in numerous Unfair Labor Practice proceedings as well as arbitration proceedings concerning enforcement of the provisions of the negotiated MOU between ALADS and the County of Los Angeles.  I have, in addition, provided advice and counseling concerning the negotiation of the ALADS MOU, the County Coalition of Unions' Fringe Benefits MOU, which defines the fringe benefits provided to all County employees, as well as side letter or operational agreements which have been negotiated between ALADS and the Sheriff's Department during the life of an agreed MOU.

6.     Based upon this experience, I am quite familiar with the terms of the ALADS MOU, as well as the practices and procedures between ALADS and the County for negotiating proposed changes which the Department or County wishes to make to wages, hours, or other terms and conditions of employment after the main, salary MOU has been agreed upon and closed.

7.     The well established, and legally required, manner in which negotiations for issues outside of the MOU, are initiated is by virtue of a written correspondence from the Sheriff's Department, almost always from the Department's Employee Relations unit, notifying ALADS of the proposed change to policy, procedure, rules or regulations which affect wages, hours, or other terms and conditions of employment.

8.     If ALADS wishes to negotiate the proposed change, ALADS will send a letter to Employee Relations asking to schedule negotiations.  If not, ALADS will simply advise Employee Relations that it has no objection to the proposed change.  If negotiations take place, a written Side Letter Agreement or Operational Agreement is executed by the parties, stating the terms of the parties' agreement.

9.     As ALADS' General Counsel, ALADS  routinely advised me of requests for bargaining received from the Sheriff's Department.

10.     I am not aware of any written notice being provided to ALADS by the Sheriff's Department, concerning the Department's intent to modify or change wages, hours, or other terms and conditions of employment due to the settlement of this lawsuit, at any time between January, 2012 and the present.

11.     Sometime beginning in mid-2012, I became aware of a lawsuit filed by the ACLU against the Sheriff's Department which contained a significant number of allegations of excessive force by deputy sheriffs assigned to County custody facilities, and primarily Men's Central Jail.

12.     I first became aware of this lawsuit because numerous ALADS

members were contacting my office for representation in administrative investigations being conducted by the Sheriff's Internal Affairs Bureau ("IAB") and Internal Criminal Investigations Bureau ("ICIB") based on the allegations stated in the lawsuit.

13. I was aware in 2012 that ALADS was not named as a party to in this lawsuit and was never served with a copy of the complaint in this case. Likewise, neither I nor my office was contacted by any deputy sheriff who advised us that they were named as a Defendant in this lawsuit or that they had been served with a copy of the Complaint in this lawsuit.

14. Beginning in 2012, and continuing through the present day, my office has represented numerous deputy sheriffs in connection with IAB or ICIB investigations arising out of the allegations of excessive force made by the ACLU in the complaint in this and the *Rutheford* cases.

15. I was advised by Lt. Steve Leavins, in 2012, that the Sheriff's Department had created a special task force, called the Special Jail Investigations Task Force ("SJITF") in response to the numerous allegations of excessive force by deputies against jail inmates which were filed by the ACLU in connection with this and the *Rutherord* lawsuits. Lt. Leavins was appointed the head of that task force upon its creation.

16. In conversations with some of the IAB and ICIB investigators conducting these SJITF investigations, as well as supervisors assigned to the SJITF, I was advised that the Department initiated separate investigations into each allegation of excessive or unnecessary force which was made in either of the two lawsuits filed by the ACLU.

17. The SJITF investigators and supervisors with whom I spoke were very focused on attempting to determine if there was any truth to any of the allegations stated in either of the ACLU lawsuits.

18. A number of the SJITF investigators with whom I spoke

7

concerning these investigations advised me that the vast majority of the allegations were false, exaggerated, or entirely made up.  I was advised by more than one investigator that, in their interviews with the inmates named in the ACLU lawsuits as victims of the alleged excessive and unnecessary force, many of these inmates stated that the allegations were not true and that they simply signed declarations because the ACLU asked them to.

19.     Based upon the information I was learning from the Department's investigators, it was my understanding that the County and Sheriff's Department were actively defending the lawsuit in this case on the merits, by taking the position that the acts of violence stated in the complaint were not true and therefore there was no evidence of the pattern and practice of excessive force alleged in the 2 ACLU complaints.

20.     My understanding that the Department was actively defending the claims of misconduct alleged against deputy sheriffs in this as well as the *Rutherford* lawsuit was bolstered by the lack of any notice from the Department that they intended to change any policies related to use of force in the County jails because of this litigation.

21.     It was not until I read an editorial which was published in the Los Angeles Times on December 16, 2014 that I, or anyone at ALADS, realized that the Department and County were not defending and litigating the merits of this lawsuit but had instead decided, at some unknown time, to agree to, apparently, all the demands made by the ACLU in this suit.

22.     A copy of the LA Times December 16, 2014 editorial is attached hereto and marked as Exhibit D.  This article was the first notice I or anyone at ALADS had that the Department had agreed to significant changes in, at least, the use of force, discipline, reporting and tracking policies for deputies assigned to the nine custody facilities run by the Department.

23.     Upon reading the editorial in the Times, I obtained a copy of

the Complaint in this litigation and reviewed it. This was the first time I was aware of the broad injunctive relief which the Plaintiffs in this case sought.

24. Based upon the information in the Times editorial, which indicated that significant changes to force and other policies in the County jails had already been agreed to by the Department, I first wrote to newly elected Sheriff McDonnell and requested that he ensure that the Department not agree to any changes in any policies affecting wages, hours, or terms and conditions of deputy sheriffs's employment without first negotiating with ALADS. A copy of my December 19, 2014 letter to Sheriff McDonnell is attached hereto and marked as Exhibit E.

25. On the same date, my partner, Elizabeth Gibbons, wrote to counsel for all parties to this litigation and advised them of ALADS' intent to intervene in this litigation. A copy of Ms. Gibbons' letter requesting a Rule 7.3 meeting with counsel is attached hereto and marked as Exhibit F.

26. In response to Ms. Gibbons' letter, two telephonic meeting of counsel were held to discuss ALADS' proposed intervention motion. Both I and Ms. Gibbons participated in both phone conferences, which were held on December 30, 2014 and January 5, 2015. In the first of those telephone conferences, counsel for the present parties stated that the Settlement Agreement and Implementation Plan had not been submitted to this Court for approval.

27. In response to my letter to Sheriff McDonnell, a meeting between ALADS and the Sheriff's Department took place on January 27, 2015. During that meeting, Commander Dan Dyer, who advised all the participants at the meeting, that he was the Department's pointman for this litigation, stated that the Sheriff's Department was never notified of any proposed changes to policy, procedure, rules or regulations until the Implementation Plan was presented to him as a completed document.

28. It was my understanding of Commander's Dyer's statements,

9

together with statements of other Department representatives in the meeting, that county counsel negotiated all the terms of the settlement agreement and implementation plan without including anyone from the Sheriff's Department in those discussions.

29. At no time during the meeting on January 27, 2015 did any representative for the Sheriffs Department state or produce any evidence that the Department had provided ALADS with written notice of any proposed changes to policy, procedures, rules, regulations, wages, hours or other terms and conditions of employment which were being proposed in connection with the settlement of this litigation.

30. During the discussion on January 27, 2015, representatives of the Sheriff's Department and the County Council's office advised the ALADS representatives present, including myself, that discussions which are currently on-going between the appointed panel monitors, the ACLU, and the Department are intended to create the changes to staffing, discipline, policy and training sought in the complaint and specified in the Settlement Agreement and Implementation Plan.

31. During these discussions, I, on behalf of ALADS, stated that ALADS is entitled to participate in these negotiations to protect the rights of ALADS members in connection with their terms and conditions of employment. County Counsel Rick Brouwer stated that the only way ALADS would be allowed by County Counsel to participate in those discussions was if the present intervention motion is granted by this Court.

32. I am aware from my review of the Implementation Plan that the parties have agreed to create a use of force policy which requires a "*firm policy of zero tolerance for acts of dishonesty or failure to report uses of force.*" (Docket No. 110, Ex. B, p. 10, ¶ 13.1.) Such a revision to the present force policy will eliminate the currently existing progressive-step method of discipline required by

the existing discipline policy.

33. This planned revision to the disciplinary policy likewise eliminates the purpose, intent, and integrity of the negotiated grievance procedure set forth in ALADs' present MOU. The grievance procedure is designed to allow a disciplined employee a meaningful opportunity to meet with the disciplinary decision maker, prior to the implementation of discipline, for the purpose of obtaining a modification or elimination of the proposed penalty. Under the proposed policy revision, no Department manager or supervisor will have any authority or discretion to revise proposed discipline in any disciplinary case which can be interpreted to fall within these enumerated categories.

34. The Implementation Agreement also proposes a new use of force policy which will prohibit deputy sheriffs from using force, including pepper spray or a taser, "*unless there are no other more reasonable means to control the inmate.*" (Dkt No. 110, Ex. B, p. 2, ¶ 2.5)

35. The proposed revision to the present force policy will likewise, pursuant to the Ierms of the Implementation plan, prevent deputies from using kicks as self-defense techniques unless "*there are no other more reasonable means to avoid serious physical injury.*" (*Id.* at ¶ 2.6.)

36. Each of these modifications will eliminate the standard of objective reasonableness, as defined by the Supreme Court in *Graham v. Connor*, which is presently used to determine whether a deputy's use of force is within policy. The objective standard will be replaced with an undefined, subjective standard with which it will be impossible for deputies to comply.

37. According to the terms of the Implementation Plan, Defendants plan to explain these significant policy changes to deputy sheriffs in only one initial 8 hour training class and 2 hours of annual on-going training.

38. The result of these significant policy changes with such minimal training will absolutely result in a significant increase in discipline but no

significant change in the "culture," which the parties claim is their goal in this litigation, because the subjective standards will provide deputy personnel with no guidance as to what is and is not acceptable force.

I declare under the penalty of perjury of the laws of the State of California that the foregoing is true and correct.

Executed this 30th day of September, 2015 at Encino, CA.


_____
                        //S//
                    RICHARD A. SHINEE

PROOF OF SERVICE

STATE OF CALIFORNIA              )
                                ) ss.
COUNTY OF LOS ANGELES           )

I am a citizen of the United States and a resident of the County aforesaid; I am over the age of eighteen years and not a party to the within action; my business address is 16055 Ventura Boulevard, Suite 1000, Encino, California, 91436.

On the date written below, I served the within

**NOTICE OF MOTION AND MOTION TO INTERVENE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF [F.R.C.P. RULE 24(c)]**

**re: Rosas v. Baca et al., Case No. CV 00428-DDP-SH**

on the interested parties in said action by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid in the United States mail at Encino, California, addressed as follows:

**SEE SERVICE LIST**

**XX**      (**FEDERAL**) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on January 30, 2015, at Encino, California.

_____
            //S//
       Karen Asseraf

13

<u>PROOF OF SERVICE MAILING LIST</u>

Donna D. Melby, Esq.
Paul Hastings L.L.P.
515 South Flower Street, 25th Floor
Los Angeles, CA 90071-2228

Eric G. Balaban ACLU National Prison Project
915 Fifteenth Street NW, 7th Floor
Washington, D.C. 20005

Peter J. Eliasberg
ACLU Foundation of Southern California
1313 West Eight Street, Suite 200
Los Angeles, CA 90017

Paul Beach
Lawrence, Beach, Allen & Choi, LLP
100 West Broadway, Suite 1200
Glendale, CA 91210