Exhibit A:    Article 31 of the MOU

Exhibit B:    Article 19 of the MOU

Exhibit C:    January 14, 2015 correspondence confirming January 27, 2015 meeting

Exhibit D:    December 16, 2014 LA Times editorial

Exhibit E:    December 16, 2014 letter to Sheriff McDonnell

Exhibit F:    December 19, 2014 LR 7-3 letter to all counsel

611PDC

## ARTICLE 31      AUTHORIZED AGENTS

For purposes of administering the terms and provisions of this Memorandum of Understanding:

A.    Management's principal authorized agent shall be County's Chief Administrative Officer or his duly authorized representative (Address: 222 North Grand Avenue, Los Angeles, California 90012; Telephone: (213) 974-2404), except where a particular Management representative is specifically designated in connection with the performance of a specified function or obligation set forth herein.

B.    ALADS' principal authorized agent shall be its President or Executive Director (Address: 2 Cupania Circle, Monterey Park, California 91755; Telephone: 323-213-4005).

Exhibit "A"
16

611PDC

**ARTICLE 19        ASSOCIATION RIGHTS**

Section 1.        ALADS Rights

It is understood and agreed that ALADS has the right to:

A.    Represent its members before Management representatives regarding wages, hours, and other terms and conditions of employment.

B.    Receive timely written notice of any ordinance, rule, resolution, or regulation directly relating to wages, hours, and other terms and conditions of employment.

C.    Inspect an employee's personnel file at a reasonable time, upon request, during normal business hours, with the exception of all material obtained from other employers and agencies at the time the employee was hired, provided an authorized ALADS representative has the employee's written consent.

D.    Use County facilities for membership meetings, (excluding meetings for the advancement of activities which have a negative impact on County operations), and conferences upon reasonable advance notice to the appropriate County official, subject to availability of such facilities.

611PDC

Section 2.        Bulletin Boards

Management agrees to provide at least one arch-file clipboard for the exclusive use of ALADS in each area or facility employing more than ten (10) employees.  ALADS shall have the right to use such arch-file clipboard to post information or material concerning the following subjects:

A.    ALADS recreational, social and related news bulletins;

B.    Scheduled ALADS meetings;

C.    Information concerning ALADS elections or the results thereof;

D.    Reports of official business of ALADS including reports of committees or the Board of Directors.

Prior to posting any of the above materials on such arch-file clipboards, such materials shall be initialed by an authorized representative of ALADS and of the Sheriff if reasonably available. All other material which ALADS desires to post shall first be approved by the Sheriff's authorized representative.

In cases where ALADS represents more than one representation unit at a work location, the space described above will become the bulletin board space for all employees represented by ALADS at that work location.

Exhibit "B"
18

611PDC

## Section 3.    Work Access For Representation Purpose

The parties agree that authorized ALADS representatives will be given access to work locations during working hours to conduct business relating solely to the provisions of this Memorandum of Understanding.    Access shall be guided by the following limitations:

1.    ALADS shall furnish a list of representatives to the department head or his designated representative.  ALADS will immediately notify the department of any change in its representatives.

2.    A representative desiring access to a work location must state the purpose and request approval from the department head or his representative within a reasonable amount of time prior to an intended visit.

3.    ALADS agrees that its representatives will not interfere with the operation of the department or any of its facilities.

4.    Access will be granted to an authorized ALADS representative if, in the opinion of the department head or his representative, such access will not interfere with operations or adversely affect security.

5.    If a requested visit is denied, an alternate time will be mutually agreed upon.

Exhibit "B"
19

611PDC

6.    An employee designated as an authorized ALADS representative must obtain permission from his/her immediate supervisor to engage, during duty hours, in business relating to this Memorandum of Understanding. Permission to leave will be granted promptly unless such absence would interfere with efficient operations. If permission is denied, an alternate time will be designated.

Section 4.        Intra-County Communications

It is agreed that during the term of this agreement ALADS may maintain a mailbox at Sheriff's Headquarters. All material which ALADS desires to teletype shall first be reviewed for approval by the Sheriff's authorized representative.

Section 5.        Reassignments

While serving as a member of the ALADS Board of Directors, an employee who is performing his/her duties at a competent level may request to remain in his/her current assignment. The employee shall not be reassigned unless such reassignment is necessitated by the needs of the service as determined by Management.

Section 6.        ALADS/Management Meetings

Management agrees to consult with the Association for Los Angeles Deputy Sheriffs in conformity with Section 5 and Section 6(a) of the Employee Relations Ordinance.

611PDC

Section 7.            Payroll Deductions and Dues

It is agreed that ALADS' dues and such other deductions as may be properly requested and lawfully permitted shall be deducted monthly by Management from the salary of each employee covered hereby who files with the County a written authorization within

the provisions of applicable State law. Remittance of the aggregate amount of all dues and other proper deductions made from the salaries of employees covered hereunder shall be made to ALADS by Management within thirty (30) working days after the conclusion of the month in which said dues and deductions were deducted.

ALADS agrees to indemnify and hold the County of Los Angeles harmless from any liabilities of any nature which may arise as a result of the application of the provisions of this Article.

Section 8.

Nothing contained in this Memorandum of Understanding shall be construed as a waiver by ALADS of its rights under Section 6 of the Employee Relations Ordinance, except for those matters specifically set forth in this Memorandum of Understanding.

Section 9.

Management also agrees to furnish to each new employee entering the Unit the letter (Exhibit A) supplied by ALADS explaining to the employee both his/her rights under the Employee Relations Ordinance and the status of ALADS as the certified majority

Exhibit "B"

21

611PDC

representative for Deputy Sheriffs, as well as material related to the services and employee benefits programs offered by ALADS. Such material shall be approved by Management prior to distribution.

Section 10.        Employee Lists

Management will provide ALADS with a list of all employees in the Unit within ninety (90) days from the date of this Memorandum of Understanding. Additional lists may be provided at no less than six month intervals when requested by ALADS at a reasonable cost determined by the office of the County Auditor-Controller.





*Jim McDonnell, Sheriff*

*County of Los Angeles*
## Sheriff's Department Headquarters
*4700 Ramona Boulevard*
*Monterey Park, California 91754-2169*

Sent via U.S. Mail and Email

January 14, 2015

Les Robbins, Executive Director
Association For Los Angeles
   Deputy Sheriffs, Inc.
2 Cupania Circle
Monterey Park, California 91755

Dear Mr. Robbins:

### ALEX ROSAS AND JONATHAN GOODWIN V. BACA ET AL.
### USDC CASE NO. 12-CV-00428

This letter serves to memorialize our ongoing mutual attempts to meet and discuss the practical consequences for your bargaining members of the *Rosas v Baca et al.* settlement. The meeting will take place on Tuesday, January 27, 2015, at 1:30 pm in the 2nd floor conference room of the Sheriff's Headquarters Building in Monterey Park.

The Department looks forward to an informative meeting with your Association on this matter. Should you or your Association have any additional questions please contact me or my staff at (323) 526-5080.

Sincerely,

JIM McDONNELL, SHERIFF

Daniel V. Lopez, Lieutenant
Employee Relations

*A Traditio.*

Exhibit "C"
23
0

# Editorial Can L.A. County jails end the culture of violence against inmates?

**By THE TIMES EDITORIAL BOARD**

DECEMBER 16, 2014, 6:33 PM

fter three years of turmoil arising from abuse of jail inmates, the Los Angeles County Board of Supervisors on Tuesday agreed to outside monitoring of nearly all aspects of its jail operation.

The settlement of a class-action lawsuit, known as the Rosas case after the lead plaintiff, caps a period in which reporting in The Times and elsewhere led to hearings and recommendations by a Citizens Commission on Jail Violence, the resignations of Sheriff Lee Baca and Undersheriff Paul Tanaka, an FBI investigation, imprisonment of seven deputies for obstructing that investigation and the election of Sheriff Jim McDonnell.

Compared with those high-profile actions, the lawsuit may be one of the less spectacular results of the department's breakdown. But it will have important consequences. The settlement imposes a long list of policy directives on the department, covering, among other things, the training of deputies, the use of force, data and complaint tracking, and staffing — all focused on correcting the failures that led to the mistreatment of inmates and to reducing the number of future incidents.

The U.S. Department of Justice is not involved in the suit, but the settlement is in essence a consent decree, similar in some ways to the decree under which the Los Angeles Police Department operated for more than a decade until the middle of last year.

Three monitors will oversee implementation and report to the court on progress. Appointees include Richard Drooyan, who served as chief counsel to the jail violence commission and headed a team that oversaw implementation of that panel's recommendations. And that's appropriate; many of the settlement's directives echo those earlier recommendations, such as keeping an assistant sheriff in charge of the Sheriff's Department's custody operations, and preparing and adhering to a manual that details when and how deputies are authorized to use force against inmates.

The other monitors are corrections experts Jeffrey A. Schwartz and Robert P. Houston.

The directives, if implemented properly, should protect inmates from beatings, well-meaning

Exhibit "D"
24

1/30/2015    Case 2:12-cv-00428-MWF-E    Document 114-1    Filed 01/30/15    Page 11 of 18    Page
Can L.A. County jails end the culture of violence against inmates? - LA Times
ID #:2518

deputies from mismanagement by superiors, and the public pocketbook from some large damage awards. They will play a key role in making Los Angeles County jails humane and safe places to await trials and serve sentences.

But it would be a mistake to see the Rosas settlement as merely the conclusion of an unfortunate three-year period in which the sheriff's jail operations went off the rails.

The problems in the department were not limited to three years or even to Baca's full 15-year tenure. On the contrary, Rosas is an outgrowth of a 39-year-old lawsuit known as Rutherford, and monitoring of jail conditions as a result of that case continues today.

That should serve as a sobering reminder that it is not necessarily enough to identify problems and promise to fix them. Such promises have been in place for 40 years, and they resulted from events that have a distressing ring of familiarity today.

In 1991, after several deputy shootings of non-white suspects, the Board of Supervisors convened a panel under the leadership of retired Los Angeles County Superior Court Judge James G. Kolts to investigate the Sheriff's Department's handling of excessive force cases. The Kolts Commission found many of the same breakdowns cited 20 years later by the panel that Drooyan served. Supervisors and the sheriff created a special counsel to monitor the department, and an Office of Independent Review to report on the sheriff's internal investigations. Already in place was a commission charged with monitoring jail conditions. Problems continued to fester.

The culture of deputy violence against inmates — a culture that too often has disregarded the rights and humanity of inmates — is inextricably linked to failures in the operation, management and oversight of the Sheriff's Department and to the inadequacy of the jail facilities. Ensuring that change in the jails is positive and permanent requires strengthening civilian oversight of the Sheriff's Department, demolishing and replacing Men's Central Jail, diverting the mentally ill to treatment when their conditions require care rather than lockup, taking other steps to responsibly reduce the inmate population, and providing the department with adequate resources to operate properly.

Rutherford and Rosas, with their ongoing monitoring requirements, together with another recent settlement under which the county acknowledged that it inadequately accommodates inmates with physical disabilities, plus a yet-to-be-concluded consent decree with the U.S. Department of Justice over mistreatment of mentally ill inmates and the still-unfulfilled recommendations of the Citizens Commission on Jail Violence, provide a patchwork of monitoring and mandates to improve the jails.

In total, the agreements are reminiscent of the LAPD consent decree. But they lack the coherence

1/30/2015    Case 2:12-cv-00428-MWF-E    Document 114-1    Filed 01/30/15    Page 12 of 18    Page
Can L.A. County jails end the culture of violence against inmates? - LA Times
ID #:2519

of the LAPD consent decree, with its single set of mandates, single judge and single monitoring team. It is by no means a foregone conclusion that, singly or collectively, the decrees, settlements and recommendations will enable the Sheriff's Department to make the turnaround it needs.

The challenge for the county, and especially for McDonnell, is to respond with a remediation program that coherently weaves together the various mandates and monitoring schemes, and to do it in a way that allows the Sheriff's Department to finally emerge from decades of substandard jailing. It will require continuing focus by the sheriff, the Board of Supervisors and the public to ensure that the problems in the jails do not fester for another 40 years.

**Follow the Opinion section on Twitter @latimesopinion**

Copyright © 2015, Los Angeles Times

Exhibit "D"

26

GREEN & SHINEE
ATTORNEYS AT LAW

RICHARD A. SHINEE
HELEN L. SCHWAB
ELIZABETH J. GIBBONS
MITCHELL S. KANDER
AUDRA C. CALL
LESLIE L. WILCOX
AMANDA J. WATERS

A PROFESSIONAL CORPORATION
16055 VENTURA BOULEVARD, SUITE 1000
ENCINO, CALIFORNIA 91436 / 2680

TELEPHONE: (818) 986-2440
FACSIMILE: (818) 789-1503

HARRY BENTON GREEN
1942-1996

OF COUNSEL
GOLDSCHMID, SILVER & SPINDEL

December 16, 2014

**VIA FAX & U.S. MAIL**

Sheriff Jim McDonnell
County of Los Angeles, Sheriff's Department
4700 Ramona Boulevard
Monterey Park, CA 91754-2169

Re:   Demand to Meet and Confer

Dear Sheriff McDonnell:

It has come to ALADS' attention that there are discussions between the Sheriff's Department and the U.S. Department of Justice concerning a possible memorandum of understanding and/or consent decree. It is our further understanding that the memorandum of understanding and/or consent decree would modify certain terms of employment of ALADS members, either by new rules or regulations or through changes in past practice. As such, the Sheriff's Department is required to bargain over these issues.

As you know, except as part of court-ordered relief after a judicial determination of liability, the Sheriff's Department cannot unilaterally change a collective bargaining agreement as a means of settling a dispute over whether the Department has engaged in constitutional violations. In settling any dispute which the Department has with the United States Government concerning the operation of the Sheriff's Department, the Department and United States Government cannot impose obligations on third parties, such as ALADS. In addition, a court may not order a consent decree which imposes obligations on a party that did not consent to the decree. *Local Number 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 528-30, (1986) (noting that parties settling their own dispute cannot impose obligations on third parties and that "*a court may not enter a consent decree that imposes obligations on a party that did not consent to the decree*"); *W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 771, (1983) ("*Absent a judicial determination, the [EEOC], not to mention the Company, cannot alter the collective bargaining agreement without the Union's consent.*"); *United States v. City of Hialeah*, 140 F.3d 968, 975 (11th Cir. 1998); *United States v. City of Miami*, 664 F.2d 435, 441-42 (5th Cir. 1981).

Any discussions which the Sheriff's Department is presently engaged in, or any negotiations with the United States Government that would modify the terms of the collective

Exhibit "E"
27

Page 2
Green & Shinee
December 16, 2014
To:    Sheriff Jim McDonnell
Re:    Request to Meet and Confer

bargaining agreement, the past practice between the parties, or which would establish new rules or regulations for deputy sheriffs, must be bargained for. *U.S. v. City of Los Angeles*, 288 F.3d 391 (9th Cir.2002).

In light of the Sheriff's Department's obligation to engage in meaningful negotiations with ALADS over the above-referenced subject matter, ALADS demands to be included in these discussions and, further, demands that no further discussions be held until such time as ALADS has been given an adequate briefing by the Sheriff's Department including an exchange of documents that have been produced by these discussions to date.

It is our hope that the start of our relationship with you as the Sheriff of Los Angeles County will be a cooperative one, with both parties engaged in good faith efforts to resolve issues such as these. We request that you direct Captain Nelson of your Labor Relations Unit, who thus far has failed to notify ALADS of these discussions, to contact ALADS' Executive Director, Les Robbins, to initiate discussions with regard to these issues.

Thank you in advance for your anticipated courtesy and cooperation.

Very truly yours,

GREEN & SHINEE, A.P.C.

By:    RICHARD A. SHINEE

RAS:plm
cc:    Jeff Steck, President, ALADS
       Les Robbins, Executive Director, ALADS
       ALADS Board of Directors
14-0406\DLJMcDonnell141216.plm

Exhibit "E"
28

GREEN & SHINEE
ATTORNEYS AT LAW

RICHARD A. SHINEE
HELEN L. SCHWAB
ELIZABETH J. GIBBONS
MITCHELL S. KANDER
AUDRA C. CALL
LESLIE L. WILCOX
AMANDA J. WATERS

A PROFESSIONAL CORPORATION
16055 VENTURA BOULEVARD, SUITE 1000
ENCINO, CALIFORNIA 91436 / 2680

TELEPHONE: (818) 986-2440
FACSIMILE: (818) 789-1503

HARRY BENTON GREEN
1942-1996

OF COUNSEL
GOLDSCHMID, SILVER & SPINDEL

December 19, 2014

Donna D. Melby, Esq.
Paul Hastings L.L.P.
515 South Flower Street, 25th Floor
Los Angeles, CA 90071-2228

*Sent Via E-Mail and U.S. Mail*

Eric G. Balaban
ACLU National Prison Project
915 Fifteenth Street NW, 7th Floor
Washington, D.C. 20005

*Sent Via E-Mail and U.S. Mail*

Peter J. Eliasberg
ACLU Foundation of Southern California
1313 West Eight Street, Suite 200
Los Angeles, CA 90017

*Sent Via E-Mail and U.S. Mail*

Paul Beach
Lawrence, Beach, Allen & Choi, LLP
100 West Broadway, Suite 1200
Glendale, CA 91210

*Sent Via E-Mail and U.S. Mail*

Re:  *Alex Rosas and Jonathan Goodwin v. Baca, et al.*
USDC Case No. 12-CV-00428

Dear Counsel:

This office represents the Association for Los Angeles Deputy Sheriffs ("ALADS"), the recognized bargaining representative for all Los Angeles County Deputy Sheriffs.  We write in this capacity to meet and confer, pursuant to Central District of California Local Rule 7-3, concerning a Motion to Intervene which ALADS intends to file in the above captioned action.

ALADS and County of Los Angeles are signatories to a Memorandum of Understanding ("MOU") which, pursuant to California Government Code sections 3500, et seq.,

Exhibit "F"
29

Page 2
Green & Shinee
December 19, 2014
To:    All Counsel in *Rosas v. Baca*
Re:    *Alex Rosas and Jonathan Goodwin v. Baca, et al.*


codifies the parties' agreements concerning wages, hours, and other terms and conditions of the employment of Los Angeles County Deputy Sheriffs by the County of Los Angeles.

ALADS recently learned, by way of an editorial published in the Los Angeles Times, posted online on December 16, 2014, that the parties to the *Rosas* litigation, including the County of Los Angeles, are presently engaged in the negotiation of a settlement agreement. According to the information reported in the LA Times, these negotiations include the appointment of a panel of monitors who will oversee implementation of a *"long list of policy directives . . . covering, among other things, the training of deputies, the use of force, data and complaint tracking, and staffing."*

This Los Angeles Times' editorial was the first indication which ALADS has had that this litigation will impact the terms of the present MOU and the terms and conditions of employment of Los Angeles County Deputy Sheriffs. In response to the information published in this editorial, we have reviewed the complaint filed in this action and confirmed that, as reported in the Times editorial, the Plaintiffs in this action are seeking relief which includes court orders precluding County and Sheriff's Department employees, i.e., ALADS members, from *"subjecting inmates in the jails to physical abuse and threats of physical abuse;"* and creating a new use of force policy, a new policy concerning investigation of force incidents, new training in the use of force and prevention of inmate-on-inmate violence, increasing discipline for department members found to be involved in improper use of force incidents, and changes to the staffing of the jails.

It is ALADS' position that the changes to policy, procedure and most importantly, discipline contemplated by the settlement agreement which, we understand, is presently being negotiated by the parties to this litigation, are mandatory subjects of bargaining between the County and/or Sheriff's Department and ALADS. As you know, except as part of court-ordered relief after a judicial determination of liability, the County and/or Sheriff's Department cannot unilaterally change the terms of a collective bargaining agreement as a means of settling a dispute over whether the Department has engaged in constitutional violations.

In addition, in settling any dispute which the Sheriff's Department has with the plaintiffs in this action concerning the operation of the Sheriff's Department or any segment thereof, the parties to this lawsuit cannot impose obligations on third parties, such as ALADS. In addition, a court may not issue a consent decree which imposes obligations on a party that did not consent to the decree. *Local Number 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 528-30, (1986) (noting that parties settling their own dispute cannot impose obligations on third parties and that *"a court may not enter a consent decree that imposes obligations on a party*

Page 3
Green & Shinee
December 19, 2014
To: All Counsel in *Rosas v. Baca*
Re: *Alex Rosas and Jonathan Goodwin v. Baca, et al.*

*that did not consent to the decree"); W.R. Grace & Co.. v. Local Union 759*, 461 U.S. 757, 771, (1983) (*"Absent a judicial determination, the [EEOC], not to mention the Company, cannot alter the collective bargaining agreement without the Union's consent."); United States v. City of Hialeah*, 140 F.3d 968, 975 (11th Cir. 1998); *United States v. City of Miami*, 664 F.2d 435, 441-42 (5th Cir. 1981).

Any discussions in which the parties to this lawsuit are presently engaged, or any negotiations for a settlement agreement or consent decree between the parties to this litigation, which would modify the terms of the existing collective bargaining agreement with ALADS, the existing past practices between ALADS and the Department, or which would establish new rules or regulations for deputy sheriffs, must be bargained for with ALADS, prior to implementation. *U.S. v. City of Los Angeles*, 288 F.3d 391 (9th Cir.2002).

In *U.S. v. City of Los Angeles*, the 9th Circuit specifically held that the Los Angeles Police Protective League ("the League"), the recognized bargaining representative for Los Angeles City police officers, had a protectable interest at stake in both the merits of the litigation, see, *Id.* at p. 399, (*"because the complaint seeks injunctive relief against its member officers and raises factual allegations that its member officers committed unconstitutional acts in the line of duty. These allegations are sufficient to demonstrate that the Police League had a protectable interest in the merits phase of the litigation."*), and the consent decree remedy sought in the litigation in that case. *Id.* at p. 400 (*"Thus, the Police League's interest in the consent decree is two-fold. To the extent that it contains or might contain provisions that contradict terms of the officers' MOU, the Police League has an interest. Further, to the extent that it is disputed whether or not the consent decree conflicts with the MOU, the Police League has the right to present its views on the subject to the district court and have them fully considered in conjunction with the district court's decision to approve the consent decree."*)

ALADS, in this case, stands in the same position as did the League in the *U.S. v. City of Los Angeles* litigation. As such, ALADS has the same right to intervene in the present litigation as the 9th Circuit found was held by the League in the *City of Los Angeles* case. ALADS, therefore, in light of this newly revealed information concerning the scope and substance of the settlement agreement/consent decree presently being negotiated by the parties to this lawsuit, intends to immediately file a Motion for Intervention as of Right, pursuant to F.R.C.P. Rule 24 (a), or permissively, pursuant to F.R.C.P. Rules 24 (b).

In the alternative to that Motion, ALADS would propose a stipulation to allow ALADS to intervene in this action, and that ALADS immediately be included in all pending or

Page 4
Green & Shinee
December 19, 2014
To:    All Counsel in *Rosas v. Baca*
Re:    *Alex Rosas and Jonathan Goodwin v. Baca, et al.*

on-going negotiations concerning resolution of this litigation along the lines of the remedies stated in the complaint.

Please advise at your earliest convenience as to your positions on ALADS' proposed Intervention Motion or, in the alternative, stipulated intervention in this action. Pursuant to Local Rule 7-3, ALADS' intervention motion will be filed on December 26, 2014 if we do not receive any response to this meet and confer request.

Thank you for your prompt attention to this matter.

Very truly yours,

GREEN & SHINEE, A P.C.

By:    ELIZABETH J. GIBBONS, ESQ.

EJG:plm
cc:    Elizabeth Christie Mueller (via e-mail only)
       John S. Durrant (via e-mail only)
       Margaret Winter (via e-mail only)
       Justin W. Clark (via e-mail only)
14-0406\DLM&C141219.plm

Exhibit "F"
32