PAUL B. BEACH, State Bar No. 166265
pbeach@lbaclaw.com
JUSTIN W. CLARK, State Bar No. 235477
jclark@lbaclaw.com
LAWRENCE BEACH ALLEN & CHOI, PC
100 West Broadway, Suite 1200
Glendale, California 91210-1219
Telephone No. (818) 545-1925
Facsimile No. (818) 545-1937

Attorneys for Defendant
Sheriff Jim McDonnell, in his official capacity only

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX ROSAS and JONATHAN GOODWIN, on their own behalf and on behalf of those similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>JIM McDONNELL, Sheriff of Los Angeles County Jails,<br><br>Defendant. | Case No. CV 12-00428 DDP (SHx)<br><br>Honorable Dean D. Pregerson<br><br>**DEFENDANT'S OPPOSITION TO ASSOCIATION OF DEPUTY SHERIFFS'S MOTION TO INTERVENE; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF COMMANDER DANIEL DYER IN SUPPORT THEREOF**<br><br>Date:   March 9, 2015<br>Time:   10:00 a.m.<br>Crtm:   3 |

TO THE HONORABLE COURT, ALL PARTIES, AND TO THEIR

COUNSEL OF RECORD:

///

///

///

///

///

1

ROSAS\Opp to Mtn to Intervene

PLEASE TAKE NOTICE that Defendant Sheriff Jim McDonnell hereby submits the following Opposition to the Proposed Intervenor, Association for Los Angeles Deputy Sheriffs (hereinafter "ALADS"), Motion to Intervene in this matter (Docket No. 113).

Dated: February 17, 2015                    LAWRENCE BEACH ALLEN & CHOI, PC


                                  By _____/s/ Paul B. Beach_____
                                      Paul B. Beach
                                      Attorneys for Defendant
                                      Sheriff Jim McDonnell,
                                      in his official capacity only

2

ROSAS\Opp to Mtn to Intervene

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................... 1

I.     Introduction.......................................................................................... 1

II.    Relevant Facts And Case History ........................................................ 2

    A.    Summary of Case History ........................................................... 2

    B.    Discussions With ALADS............................................................ 3

    C.    ALADS' Relationship With The LASD ...................................... 3

    D.    ALADS' Concerns With The Implementation Plan ...................... 5

III.   Law Governing Collective Bargaining................................................. 6

IV.    The Implementation Plan Does Not Trigger Formal Bargaining With ALADS ..................................................................................... 8

V.     Intervention, Either As A Matter Of Right, Or Permissibly, Should Be Denied ............................................................................... 11

    A.    Intervention By Right ................................................................ 12

    B.    Permissive Intervention............................................................. 14

    C.    *United States v. City of Los Angeles* Is Inapposite..................... 15

    D.    ALADS' Arguments Concerning An Adverse Impact On The Grievance Procedure In The MOU Are A Red Herring ...... 16

VI.    Conclusion ........................................................................................ 17

i

ROSAS\Opp to Mtn to Intervene

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES .......................................... 1

I.      Introduction........................................................................................ 1

II.     Relevant Facts And Case History ...................................................... 2

    A.    Summary of Case History ........................................................ 2

    B.    Discussions With ALADS......................................................... 3

    C.    ALADS' Relationship With The LASD ................................... 3

    D.    ALADS' Concerns With The Implementation Plan .................. 5

III.    Law Governing Collective Bargaining............................................... 6

IV.     The Implementation Plan Does Not Trigger Formal Bargaining With ALADS ................................................................................... 8

V.      Intervention, Either As A Matter Of Right, Or Permissibly, Should Be Denied .......................................................................... 11

    A.    Intervention By Right............................................................. 12

    B.    Permissive Intervention ......................................................... 14

    C.    *United States v. City of Los Angeles* Is Inapposite.................. 15

    D.    ALADS' Arguments Concerning An Adverse Impact On The Grievance Procedure In The MOU Are A Red Herring ...... 16

VI.     Conclusion ...................................................................................... 17

ROSAS\Opp to Mtn to Intervene

# TABLE OF AUTHORITIES

## Cases

*American Federation of State etc. Employees v. County of Los Angeles,*
  49 Cal.App.3d 356 (1975) ........................................................................ 6, 7

*Ass'n for Los Angeles Deputy Sheriffs v. Cnty. of Los Angeles,*
  166 Cal.App.4th 1625, 83 Cal.Rptr.3d 494 (2008) ................................... 9

*Berkeley Police Assn. v. City of Berkeley,*
  76 Cal.App.3d 931, 143 Cal.Rptr. 255 (1977) ........................................ 10

*Claremont Police Officers Assn. v. City of Claremont,*
  39 Cal.4th 623, Cal.Rptr.3d 69 (2006) ........................................... 8, 9, 10

*Cnty. of Los Angeles v. Los Angeles Cnty. Employee Relations Com.,*
  56 Cal. 4th 905 (2013) ............................................................................... 7

*Coachella Valley Mosquito & Vector Control Dist. v. California Public
  Employment Relations Bd.,*
  35 Cal.4th 1072 (2005) ............................................................................. 6

*County of Orange v. Air California,*
  799 F.2d 535 (9th Cir. 1986) ................................................................... 15

*Davenport v. Washington Ed. Assn.,*
  551 U.S. 177, 127 S.Ct. 2372 (2007) ....................................................... 6

*Department of Defense v. FLRA,*
  510 U.S. 487, 114 S.Ct. 1006 (1994) ....................................................... 6

*First National Maintenance Corp. v. NLRB,*
  101 S.Ct. 2573 (1980) .............................................................................. 10

*Los Angeles County Employees Assn., Local 660 v. County of Los Angeles,*
  33 Cal.App.3d 1 (1973) .............................................................................. 8

*Northwest Forest Resource Council v. Glickman,*
  82 F.3d 825 (9th Cir. 1996) ........................................................... 12, 13, 14

ii

*Stringfellow v. Concerned Neighbors in Action,*
  480 U.S. 370, 107 S.Ct. 1177 (1987) ........................................................ 17

*Teledyne Economic Development v. N.L.R.B.,*
  108 F.3d 56 (4th Cir. 1997) ...................................................................... 6

*United States v. City of Detroit,*
  712 F.3d 925 (6th Cir. 2013) .................................................................. 18

*United States v. City of Los Angeles, Cal.,*
  288 F.3d 391 (9th Cir. 2002) ...................................................... 15, 16, 17

*United States v. Oregon,*
  745 F.2d 550 (9th Cir. 1984) .................................................................. 15

*United States v. Oregon,*
  913 F.2d 576 (9th Cir. 1990) .................................................................. 13

*United States v. State of Washington,*
  86 F.3d 1499 (9th Cir. 1996) ............................................................ 13, 14

**Statutes**

29 U.S.C. § 152(2) .................................................................................... 6

California Government Code §§ 3500, *et seq.* ............................................ 6

**Rules**

Federal Rule of Civil Procedure 24(a)(2) ...................................... 12, 14, 15

Federal Rule of Civil Procedure 24(b)(2) ........................................... 14, 15

ROSAS\Opp to Mtn to Intervene

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    Introduction.

By its Motion, the Association for Los Angeles Deputy Sheriffs[1] (hereinafter, "ALADS") seeks to intervene (both as a matter of right or, in the alternative, permissibly) in this action for all purposes. According to ALADS, they are entitled to intervene because they claim the Parties herein cannot adequately represent their members' interests. Specifically, ALADS claims that the Implementation Plan developed by the Court-appointed experts herein includes changes to Los Angeles County Sheriff's Department ("LASD" or "Sheriff's Department") policies and procedures that require mandatory bargaining (referred to in this legal context as "meet and confer") under the terms of the Memorandum of Understanding ("MOU") between ALADS and the LASD, as well as relevant California statutory authorities.

As set forth in greater detail below, the Sheriff's Department disputes that formal bargaining obligations are required in this circumstance because none of the proposed reforms adversely impact wages, hours, or working conditions. Furthermore, even if some adverse impact would result, the proposed reforms fall squarely within the Sheriff's Department's fundamental management rights. Regardless of these facts, this Motion should be denied because, as set forth in the attached Declaration of Commander Daniel Dyer (hereinafter, "Dyer Declaration"), the LASD and ALADS have been and currently are engaged in good faith dialogue to resolve ALADS' concerns to the extent possible.

///

///

---

[1] ALADS is the certified representative for approximately two-thirds of the Sheriff's Department's nonsupervisory deputies, also known as "Bargaining Unit 611."

1

ROSAS\Opp to Mtn to Intervene

## II.   Relevant Facts And Case History.

### A.   Summary Of Case History.

This case was filed in January, 2012, and shortly thereafter, the Parties agreed to participate in settlement discussions with the Court acting as a neutral. (*See*, Docket No. 1, 62.)  After lengthy negotiations, the Parties reached a settlement during the summer of 2014, pursuant to which the Court appointed a panel of experts (comprised of Richard Drooyan, Robert Houston, and Jeffrey Schwartz [hereinafter, "the Panel"]) to review the Sheriff's Department's policies and procedures regarding use of force in the Los Angeles County jails, and develop a list of proposed reforms thereto. (*See*, Docket No. 101.)

On or about June, 2014, the Panel began their work.  On or about October 14, 2014, the Panel submitted their proposed reforms, known as the "Implementation Plan." (*See*, Dyer Declaration, ¶ __.)  The Implementation Plan includes 21 categories of reforms, which generally focus on revisions to existing policies and procedures that relate to use of force in the jails, training regarding use of force, and enhancements to various protocols that govern use of force investigations. (*Id.*)  On December 15, 2014, the Los Angeles County Board of Supervisors approved the settlement between the Parties and on December 17, 2014, the LASD provided notice of the Implementation Plan to ALADS. (*Id.*)

On January 6, 2015, Plaintiffs filed a Motion for Preliminary Approval of the Parties' settlement, as required by the Class Action Fairness Act of 2005. (*See*, Docket No. 110.)  On January 23, 2015, this Court granted preliminary approval of the settlement, which includes the terms outlined in the Implementation Plan, and on January 30, 2015, ALADS filed their Motion. (*See*, Docket No. 113.)  By February 6, 2015, notice to the class of the settlement was posted on the internet and in the facilities that compromise the downtown jail complex as required by this Court's January 23, 2015 Order. (*See*, Docket No. 111.)

2

ROSAS\Opp to Mtn to Intervene

**B.    Discussions With ALADS.**

On December 19, 2014, counsel for ALADS sent a letter to the Sheriff's Department and counsel for Plaintiffs, the American Civil Liberties Union of Southern California ("ACLU"), which stated ALADS' intention to file this Motion based on an assertion that the settlement involved changes to existing policies and procedures that are, according to ALADS, the subject of mandatory bargaining pursuant to the MOU between ALADS and the LASD, as well as various California statutory authorities and the Los Angeles County Code. (*See*, ALADS' Motion, Shinee Decl., ¶ 25, Exhibit "F".)

Almost immediately after the Sheriff's Department received ALADS' December 19 letter, representatives from County Counsel and the LASD contacted ALADS to schedule a meeting with them to discuss their concerns about the settlement. (*See*, Dyer Decl., ¶ __.) As set forth in greater detail in the attached Declaration from Commander Dyer, multiple meetings with ALADS have taken place over the last three weeks and several additional meetings are scheduled for the next 30 days. (*Id.*) As explained in greater detail below, the Sheriff's Department does not believe that formal negotiation with ALADS is required before the Implemental Plan reforms can be implemented; however, the LASD is very interested in maintaining a productive working relationship with ALADS. (*Id.* at ¶ __.) To that end, the LASD intends to continue good faith dialogue with ALADS and, if appropriate, recommend to the Panel that ALADS' concerns be addressed. (*Id.*)

**C.    ALADS' Relationship With The LASD.**

The relationship between the LASD and ALADS is governed by their MOU, the Myers-Milias-Brown Act ("MMBA") (which authorizes collective bargaining for employees of most local governments, including Los Angeles County), the Public Safety Officers Procedural Bills of Rights Act or "POBR" (Govt. Code §§ 3300 *et seq.*), and the Employee Relations Ordinance of the

3

ROSAS\Opp to Mtn to Intervene

County of Los Angeles (L.A. County Code, tit. 5, ch. 5.04).  Pursuant to the MOU and these authorities, only certain situations trigger the LASD's obligation to engage in formal bargaining with ALADS (which, as referenced above, is referred to in the MOU and the above authorities as "meet and confer") before changes to Department policies can be made.  In general, only changes that significantly impact wages, hours, or working conditions require "meet and confer."  With respect to the Implementation Plan and changes to existing policies outlined therein, as explained above, the LASD has agreed to discuss with ALADS their concerns, but that does not mean that the LASD believes that formal "meet and confer" is required in this circumstance.  This is because the reforms in the Plan constitute changes to existing policies and procedures which either do not involve wages, hours, or working conditions, and/or are not significant and adverse in scope with respect to ALADS members, or are the subject of fundamental management rights.  When a proposed change in policy involves matters that are the subject of fundamental management rights, no "meet and confer" is required.  As stated in Article 26 of the MOU, which governs "Management Rights":

> It is the exclusive right of the County to determine the mission of each of its constituent departments, boards, and commission, set standards of service to be offered to the public, and exercise control and discretion over its organization and operations.  It is also the exclusive right of the County to direct its employees, take disciplinary action for proper cause, relieve its employees from duty, effect work furloughs or any other alternatives because of lack of work or for other legitimate reasons, and determine the methods, means and personnel by which the County's operations are to be conducted;

MOU, Article 26 – "Management Rights".

///

4

**D.    ALADS' Concerns With The Implementation Plan.**

Based on the meetings and discussion referenced above, ALADS' concerns about the Implementation Plan focus on the following terms:

• Sections 2.1, 2.5 through 2. 8, 2.10, 2.11, and 2.13 – which address revisions to use of force policies – ALADS believes the word "objectively" should be inserted before the word "reasonable" in several places.  The LASD has discussed this suggestion and is willing to recommend to the Panel that they consider incorporating it into the Implementation Plan;

• Sections 3.1, 3.5, and 3.6 – which address training and professional development related to use of force policies – ALADS believes the amount of training required for existing Department members should be increased;

• Sections 4.2 through 4.4 – which address use of force on mentally ill inmates and other special needs populations – ALADS indicated that certain provisions in these sections should be clarified to indicate that they only apply to planned uses of force, such as cell extractions.  Here again, the LASD is willing to recommend to the Panel that they consider ALADS' proposed clarifications;

• Section 7.2 – which addresses notification to an inmate of the results of an investigation of an inmate's grievance against a staff member – ALADS indicated some clarification was needed to reflect what information would be provided to inmates to ensure that privileged information (such as the discipline imposed on personnel) is not disclosed.  Here again, the LASD does not object to recommending that the Panel clarify the Implementation Plan as suggested by ALADS;

• Sections 13.1 and 13.2 – which address disposition of use of force reviews and discipline of personnel – the decision to discipline personnel is, and always has been, a fundamental management right;

• Section 14.1 – which addresses criminal referrals and external reviews of use of force incidents – the decision to discipline personnel is, and always has been, a fundamental management right.

5

## III.   Law Governing Collective Bargaining.

The National Labor Relations Act ("NLRA") governs collective bargaining in private sector employment. *See, Department of Defense v. FLRA*, 510 U.S. 487, 503, 114 S.Ct. 1006 (1994) ("*Dept. of Defense*"); *Teledyne Economic Development v. N.L.R.B.*, 108 F.3d 56, 59 (4th Cir. 1997). However, the NLRA leaves states free to regulate labor relationships with their public employees. 29 U.S.C. § 152(2); *Davenport v. Washington Ed. Assn.*, 551 U.S. 177, 181, 127 S.Ct. 2372 (2007). Public employees in California do not have the right to bargain collectively absent enabling legislation. *American Federation of State etc. Employees v. County of Los Angeles*, 49 Cal.App.3d 356, 358 (1975) ("*American Federation*"). Rather than fashion a single overarching employment relations law, like the NLRA, the California Legislature has passed several different statutes covering specific categories of public employees. *See, Coachella Valley Mosquito & Vector Control Dist. v. California Public Employment Relations Bd.*, 35 Cal.4th 1072, 1084–86 (2005) ("*Coachella Valley*"). In 1968, the California Legislature enacted the Myers-Milias-Brown Act ("MMBA"), authorizing collective bargaining for employees of most local governments, including Los Angeles County. *See*, California Government Code (hereinafter, "Gov. Code") §§ 3500 *et seq.*, added by Stats.1968, ch. 1390, pp. 2725–2729).

"The MMBA imposes on local public entities a duty to meet and confer in good faith with representatives of recognized employee organizations, in order to reach binding agreements governing wages, hours, and working conditions of the agencies' employees." *See*, Gov. Code § 3505; *Coachella Valley*, 35 Cal.4th at 1083. The purpose of the MMBA is to:

> promote full communication between public employers and their employees by providing a reasonable method of resolving disputes regarding wages, hours and other terms and conditions of employment between public employers and public employee organizations." (§ 3500.)

6

ROSAS\Opp to Mtn to Intervene

> To that end, the MMBA establishes a comprehensive statutory scheme for resolving disputes in the arena of the public workplace. Generally speaking, the MMBA implements its dispute-resolution purposes through two statutes which attempt to reconcile (1) the interest in resolving disputes between management and workers regarding wages, hours and other terms and conditions of employment, and **(2) the interest in allowing management to make necessary decisions for the efficient operation of government, without having to meet and confer about every decision.** Section 3504 provides: The scope of representation shall include all matters relating to employment conditions and employer-employee relations, including, but not limited to, wages, hours, and other terms and conditions of employment, except, however, that the scope of representation shall include consideration of the merits, necessity, or organization of any service or activity provided by law or executive order. Section 3505 requires a public employer to meet and confer with a recognized employee organization when disputes arise over matters that fall within the scope of representation, i.e., when disputes arise over wages, hours, and other terms and conditions of public employment.

*Cnty. of Los Angeles v. Los Angeles Cnty. Employee Relations Com.,* 56 Cal. 4th 905, 915-17 (2013) (internal quotations omitted, emphasis added).

The same year the MMBA was enacted, the County passed its own ordinance conforming to the legislative policies expressed in the MMBA. *American Federation,* 49 Cal.App.3d at 358. The ordinance created the

///

///

///

///

///

7

Employee Relation Commission ("ERCOM") to administer its provisions.[2] *Los Angeles County Employees Assn., Local 660 v. County of Los Angeles*, 33 Cal.App.3d 1, 3 (1973).

## IV.    The Implementation Plan Does Not Trigger Formal Bargaining With ALADS.

To determine whether collective bargaining is required by the MMBA, courts apply a three-part test clarified by the California Supreme Court in *Claremont Police Officers Assn. v. City of Claremont* 39 Cal.4th 623, 47, Cal.Rptr.3d 69 (2006) ("*Claremont*"). In *Claremont*,

> the police department implemented a tracking program to determine whether police officers were engaging in racial profiling. The police officers association filed a petition for writ of mandate to compel the department not to implement the racial profiling tracking program until the department had satisfied the meet-and-confer requirements prescribed by the MMBA. The basic thrust of the association's petition rested on the allegation that the racial profiling tracking program constituted a matter within the "scope of representation," and that, as such, the department was required to meet and confer in accordance with the provisions of the

---

[2] In general, the Public Employment Relations Board ("PERB") has jurisdiction over MMBA disputes, but the California Legislature included an express exception for ERCOM in the MMBA. Section 3509, subdivision (d) states that, notwithstanding PERB's jurisdiction to administer the MMBA, ERCOM retains the power to consider and resolve employment relations matters "consistent with and pursuant to the policies of this chapter." Allegations of unfair labor practices by the County must be brought to ERCOM, not PERB. In essence, ERCOM is a separate agency empowered to resolve public employment labor disputes in Los Angeles County just as PERB does for all other counties in California. ERCOM must exercise its authority in a manner "consistent with and pursuant to" the policies of the MMBA as interpreted and administered by PERB. Gov. Code § 3509(d).

ROSAS\Opp to Mtn to Intervene

MMBA before implementing the program.  The trial court denied the association's petition, the court of appeal reversed the trial court, and the Supreme Court reversed the court of appeal, and held that the police department's racial profiling tracking program did not fall within the "scope of representation."

*Ass'n for Los Angeles Deputy Sheriffs v. Cnty. of Los Angeles*, 166 Cal.App.4th 1625, 1640-44, 83 Cal.Rptr.3d 494, 507-10 (2008), *as modified (Sept. 24, 2008), as modified (Oct. 6, 2008)*, quoting *Claremont,* 39 Cal.4th at p. 638, 47 Cal.Rptr.3d 69, internal citations omitted).

In reversing the Court of Appeal (and ruling that "meet and confer" was *not* required), the California Supreme Court clarified a three-part test to be applied when determining whether a matter falls within the scope of representation and, thus, must comply with the MMBA's meet-and-confer requirements:

First, we ask whether the management action has 'a significant and adverse effect on the wages, hours, or working conditions of the bargaining-unit employees.' ... If not, there is no duty to meet and confer.... Second, we ask whether the significant and adverse effect arises from the implementation of a fundamental managerial or policy decision.  If not, then ... the meet-and-confer requirement applies.... Third, if both factors are present—if an action taken to implement a fundamental managerial or policy decision has a significant and adverse effect on the wages, hours, or working conditions of the employees—we apply a balancing test.  The action 'is within the scope of representation only if the employer's need for unencumbered decision-making in managing its operations is outweighed by the benefit to employer-employee relations of bargaining about the action in question.' ... In balancing the interests to determine whether parties must meet and

9

ROSAS\Opp to Mtn to Intervene

confer over a certain matter ..., a court may also consider whether the 'transactional cost of the bargaining process outweighs its value.'"

*Id.*

**Here, while the Implementation Plan does include changes to existing Sheriff's Department policies and procedures that involve use-of-force in the jails, none of those changes significantly and adversely impact wages, hours, or working conditions.** In fact, most of terms of the Implementation Plan are *de minimis* in nature with respect to ALADS' bargaining unit members' terms and conditions of employment. For this reason alone, no "meet and confer" is required under the MMBA.

Even when the action of an employer has a significant and adverse effect on the wages, hours, or working conditions of the bargaining-unit employees (which is not the case here), the employer may yet be excepted from the duty to bargain under the "merits, necessity, or organization" language of section 3504. **If an action is taken pursuant to a fundamental managerial or policy decision, it is within the scope of representation only if the employer's need for unencumbered decision-making in managing its operations is outweighed by the benefit to employer-employee relations of bargaining about the action in question.** *First National Maintenance Corp.* v. *NLRB* 452, U.S. 666, 686, 101 S.Ct. 2573 (1980); *see also, Berkeley Police Assn. v. City of Berkeley*, 76 Cal.App.3d 931, 937, 143 Cal.Rptr. 255 (1977).[3]

---

[3]Article 26 of the MOU between ALADS and the LASD further solidifies the rights of the LASD as they relate to fundamental management rights, including, without limitation, the right to "direct its employees, take disciplinary action for proper cause, relieve its employees from duty, effect work furloughs or any other alternatives because of lack of work or for other legitimate reasons, and determine the methods, means and personnel by which the County's operations are to be conducted." MOU, Article 26 – "Management Rights".

10

ROSAS\Opp to Mtn to Intervene

Ignoring the lack of any adverse impact on wages, hours, or working conditions, the reforms outlined in the Implementation Plan without question fall within the definition of fundamental management rights. This includes, without limitation, policies that govern the Sheriff's Department's right to discipline personnel when required and to make changes to policies that govern that right. Given the importance of unencumbered decision-making regarding such policies, bargaining is not required. The execution of the best practices reflected in the Implementation Plan resolves major, expensive, and resource-draining class action litigation for injunctive relief. Moreover, if properly carried out, the system changes could also obviate the need for further oversight of the jails by federal agencies concerning the subject of use of force. Certainly, the purported possible benefit to employer-employee relations by bargaining, as asserted by ALADS, does not outweigh the need of the Sheriff's Department to resolve these institutional issues and concerns.

## V. Intervention, Either As A Matter Of Right, Or Permissibly, Should Be Denied.

As explained above, ALADS' Motion is premised upon the flawed assumption that they have a right to collective bargaining regarding the terms of the Implementation Plan, which is simply not the case. When that foundation is removed, no basis for intervention exists. Ignoring this reality for argument's sake, the overarching contention in their Motion is that ALADS should be allowed to intervene so that their interests are protected. Based on this assertion, ALADS seeks to intervene both as matter of right or, in the alternative, with this

///
///
///
///
///

11

Court's permission.  ALADS has not demonstrated that either form of intervention is required here.[4]

### A.    <u>Intervention By Right.</u>

In the absence of a statute conferring an unconditional right to intervene, which does not exist here, Federal Rule of Civil Procedure 24(a)(2) governs a party's application for intervention as of right in the federal courts.  Rule 24(a)(2) provides:

> Upon timely application anyone shall be permitted to intervene in an action ... when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed.R.Civ.P. 24(a)(2).

The Ninth Circuit has recognized that the requirements of Rule 24(a)(2) may be broken down into four elements, each of which must be demonstrated in order to provide a non-party with a right to intervene: (1) the application must be timely; (2) the applicant must have a "significantly protectable" interest relating to the transaction that is the subject of the litigation; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest must be inadequately represented by the parties before the court.  *See, Northwest Forest Resource Council v. Glickman,* 82 F.3d 825, 836 (9th Cir. 1996).  Timeliness is "the threshold requirement" for intervention as of right.

[4] Briefing concerning the standard for intervention has been addressed in the papers filed by ALADS and the ACLU so it shall not be repeated here.  Also, the County joins in the ACLU's opposition papers, which address the untimeliness of the Motion.

12

ROSAS\Opp to Mtn to Intervene

*United States v. Oregon,* 913 F.2d 576, 588 (9th Cir. 1990). In other words, if a "motion to intervene [is] not timely, [the Court] need not reach any of the remaining elements of Rule 24." *U.S. v. State of Washington,* 86 F.3d 1499, 1503 (9th Cir. 1996).

Here, while the Sheriff's Department values its relationship with ALADS and takes their concerns very seriously, the fact of the matter is that they do not have a "significantly protectable" interest with respect to the reforms set forth in the Implementation Plan. ALADS members will, of course, be required to adhere to the Sheriff's Department's policies and procedures, just as they always have been, but that fact, standing alone, does not mean that a settlement agreement that requires changes to those policies automatically triggers formal bargaining obligations. As explained in Commander Dyer's Declaration, all of the reforms in the Implementation Plan involve changes to existing policies and procedures which either do not involve wages, hours, or working conditions), and/or are not significant and adverse in scope with respect to ALADS members, or are the subject of fundamental management rights. In the case of fundamental management rights, the law in the Ninth Circuit is clear that there is no entitlement to "meet and confer." Moreover, ALADS' assertion that the Implementation Plan eliminates progressive discipline is simply not true.

Because ALADS lacks a protectable interest, the disposition in this case, including the Court's approval of the Implementation Plan, will not "as a practical matter, impair or impede the [ALADS'] ability to protect its interest." *See, Northwest Forest Resource Council v. Glickman,* 82 F.3d 825, 836 (9th Cir. 1996). Basically, ALADS does not have a sufficient interest to protect with respect to the Implementation Plan; however, even assuming such an interest exists, no changes to the MOU between ALADS and the Sheriff's Department will result from the Implementation Plan, and all of ALADS' rights thereunder will still be available to them.

13

ROSAS\Opp to Mtn to Intervene

Finally, and perhaps most importantly, whether they recognize it or not, ALADS' interests in this situation are adequately represented. The Sheriff's Department is engaged in good faith dialogue with ALADS and, with respect to their concerns that do not implicate fundamental management rights, are prepared to recommend to the Panel that they consider incorporating ALADS' reasonable suggestions. Furthermore, the goal of the Implementation Plan is to improve the Sheriff's Department's policies and procedures as they relate to use-of-force in the jails. There is little doubt that the use of best practices in this regard is in the best interests of everyone, including ALADS' members.

**B.    Permissive Intervention.**

ALADS also seeks to intervene by permission of the Court. Federal Rule of Civil Procedure 24(b)(2) governs a party's request to intervene by permission of the court. Rule 24(b)(2) provides:

> Upon timely application anyone may be permitted to intervene in an action ... when an applicant's claim or defense and the main action have a question of law or fact in common.... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Fed.R.Civ.P. 24(b)(2).

In the Ninth Circuit, there are three prerequisites for allowing permissive intervention pursuant to Rule 24(a)(2): "[A] court may grant permissive intervention where the applicant for intervention shows: (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *Nw. Forest Res. Council v. Glickman,* 82 F.3d 825, 839 (9th Cir. 1996), *as amended on denial of reh'g (May 30, 1996).*

As with motions for intervention as of right, "[a] finding of untimeliness defeats a motion for permissive intervention." *Washington,* 86 F.3d at 1507. In

14

ROSAS\Opp to Mtn to Intervene

determining timeliness under Rule 24(b)(2), precisely the same three factors—the stage of the proceedings, the prejudice to existing parties, and the length of and reason for the delay— are considered that are considered in determining timeliness under Rule 24(a)(2). *See, County of Orange v. Air California,* 799 F.2d 535, 539 (9th Cir. 1986). In the context of permissive intervention, however, courts analyze the timeliness element more strictly than with intervention as of right. *See, United States v. Oregon,* 745 F.2d 550, 552 (9th Cir. 1984).

Permissive intervention should be denied here for essentially the same reasons as intervention by right explained above. The simple fact that ALADS' members have to follow Sheriff's Department's policies, even when changes to those policies are made, does not create an entitlement on ALADS' part to be involved in any action in which policy revisions are made as part of a settlement.

C. *United States v. City of Los Angeles* **Is Inapposite.**

In support of their request to intervene, ALADS relies on *United States v. City of Los Angeles, Cal.,* 288 F.3d 391, 399-400 (9th Cir. 2002) for the proposition that the "Ninth Circuit Court of Appeal specifically considered an application for intervention by a labor organization concerned about the impact of a consent decree upon the provisions of its existing collective bargaining agreement and existing terms and conditions of employment of its members." (Motion, 10:24–28.) *City of Los Angeles* is distinguishable.

As an initial matter, unlike *City of Los Angeles,* the Parties herein have not agreed to a consent decree. While ALADS claims that "[a]ny order issued by this Court as a result of the present parties' on-going negotiations will have the same practical effect as a consent decree" (Motion, 12:27–28), that is not true. In fact, the settlement agreement here expressly disclaims liability. Second, unlike the policy changes required by the consent decree in *City Los Angeles,* here, neither Plaintiffs nor the Sheriff's Department negotiated the reforms outlined in the

15

Implementation Plan, which were created by the Court's appointed experts. Third, here, the Court has already granted preliminary approval of the Parties' settlement and, in fact, the Court presided over the settlement negotiations, making the possibility that the Court will not grant final approval, unlikely.

*City of Los Angeles* is also distinguishable because the parties in that case expressly contemplated that changes to the MOU between the City of Los Angeles and the Police Protective League would be required based on the requirements of the consent decree. *United States v. City of Los Angeles, Cal.,* 288 F.3d 391, 399-400 (9th Cir. 2002) ("under the terms of the proposed consent decree, the United States retained the right to file a motion to dissolve the decree and proceed with the suit if the City defendants and the Police League were unable to resolve a collective bargaining issue such that the consent decree could not be implemented fully."). That is certainly not the case here – no changes to the MOU between the LASD and ALADS are contemplated or required. Finally, *City of Los Angeles* did not address the impact of fundamental management rights.

### D. ALADS' Arguments Concerning An Adverse Impact On The Grievance Procedure In The MOU Are A Red Herring.

ALADS argues that the "Implementation Plan specifically calls for widespread changes to the existing discipline practices of the Sheriff's Department as it relates to deputy sheriff's…[which] completely obliterates the Department's currently existing progressive-step method of discipline required by the existing discipline policy." (Motion, 13:11–16.) This argument fails for several important reasons. First, the Implementation Plan makes no changes to the grievance process itself, which it admittedly could not do without collective bargaining with ALADS. Second, the Implementation Plan does not alter the discretion already vested in the Sheriff's Department to impose termination (or a lesser penalty) where appropriate with respect to dishonesty associated with uses of force. Third, the ultimate decision regarding discipline imposed for

16

ROSAS\Opp to Mtn to Intervene

misconduct has always resided with the Sheriff, and the Implementation Plan does not change that long established practice.

## VI.    Conclusion.

Regardless of the fact that formal bargaining with ALADS is not required in this situation, the LASD has worked, and intends to continue to work, cooperatively with ALADS to address their legitimate concerns.  The Sheriff's Department takes ALADS' concerns seriously, especially as they relate to officer safety, and is confident that continued good faith discussions should be productive. Based on these principles, and given the tremendous time, energy, and resources that have been devoted to enhancing the Sheriff's Department's force policies as part of the settlement in this case, ALADS' Motion to Intervene should be denied. Importantly, the LASD's contention that ALADS should not be permitted to intervene should not be construed as a dismissal of ALADS' concerns which, as reflected above, will be the subject of continued dialogue in the coming weeks.

Lastly, if this Court believes that any intervention in this case is warranted, then it should be strictly limited to the right of ALADS to file objections to the settlement as part of the final approval hearing process, and in no other respect. *See, Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 378, 107 S.Ct. 1177, 1183 (1987) (the district court has authority to impose conditions on the granting of a motion to intervene; e.g., *limiting* the intervenor's participation at trial, limiting discovery by intervenor, etc.); *see also, United States v. City of*

///

///

///

///

///

///

///

17

ROSAS\Opp to Mtn to Intervene

*Detroit*, 712 F.3d 925, 931(6th Cir. 2013) ("courts are not faced with an all-or-nothing choice between grant or denial: Rule 24 also provides for limited-in-scope intervention").

Dated: February 17, 2015            LAWRENCE BEACH ALLEN & CHOI, PC


By        /s/  Paul B. Beach
           Paul B. Beach
           Attorneys for Defendant
           Sheriff Jim McDonnell,
           in his official capacity only

18

ROSAS\Opp to Mtn to Intervene

## DECLARATION OF COMMANDER DANIEL DYER

I, Commander Daniel Dyer, declare as follows:

1.      I have personal knowledge of the facts stated herein, except those stated upon information and belief, and as to those matters, I believe them to be true.  If called upon to testify to the matters herein, I could and would competently do so.

2.      I am a sworn peace officer of the Los Angeles County Sheriff's Department ("LASD" or "Sheriff's Department") and have been employed by the LASD for more than 23 years.  I am presently assigned as the Administrative Commander of the Custody Services Division, which is responsible for the operation of the Los Angeles County jails.  Part of my present responsibilities include working as a liaison between the LASD and the Association of Los Angeles Deputy Sheriffs ("ALADS"), which is the primary union that represents non-supervisory peace officer employees of the LASD.  In addition, as set forth in greater detail below, part of my duties also involve overseeing the Sheriff's Department's implementation of reforms recommended by a panel of experts appointed by the Court in *Rosas v. McDonnell*, U.S.D.C. Case No. CV 12 – 00428 DDP (SHx).  Prior to my current assignment, I was the Captain of Men's Central jail from July 1, 2013 to July 20, 2014 and, before that, I was the Unit Commander of Custody Support Services ("CSS") from December 9, 2010 to January 1, 2013, which is responsible for providing administrative and logistical support to the Custody Services Division.

3.      I am informed and believe that *Rosas* was filed in January, 2012, and that shortly thereafter, the Sheriff's Department agreed to participate in settlement discussions with Plaintiffs, who are represented by the American Civil Liberties Foundation of Southern California ("ACLU").  After lengthy negotiations, the Parties reached a settlement (subject to the approval of the Los Angeles County Board of Supervisors ["BOS"]) during the summer of 2014, pursuant to which the

19

Court appointed a panel of experts (comprised of Richard Drooyan, Robert Houston, and Jeffrey Schwartz [hereinafter, "the Panel"]) to review the Sheriff's Department's policies and procedures regarding use of force in the Los Angeles County jails, and develop a list of proposed reforms thereto.

4.    In or about June, 2014, the Panel began their work. In cooperation with the Panel's charge from the Court, in September, 2014, Sheriff's Department representatives (including myself) provided documents and information to the Panel regarding the subjects of their inquiry.

5.    On October 14, 2014, the Panel submitted their proposed reforms, known as the "Implementation Plan." The Implementation Plan includes 21 categories of reforms, which generally focus on revisions to existing policies and procedures that relate to deputy use of force in the jails, training regarding use of force, and enhancements to various protocols that govern use of force investigations. On December 15, 2014, the BOS approved the settlement between the Parties. On December 17, 2014, I directed my staff to send the Implementation Plan to the Employee Relations Unit of the LASD, with instructions to provide it to ALADS. While the reforms recommended by the Panel largely involve issues that that fall under the definition of fundamental management rights (which is discussed in greater detail below) and changes to existing policies and procedures, I felt it was nonetheless appropriate to notify ALADS of the Implementation Plan, especially considering the on-going working relationship that exists between the Sheriff's Department and ALADS.

6.    On December 19, 2014, I received a letter from Elizabeth Gibbons, counsel for ALADS, which stated the intention of ALADS to file a Motion to Intervene in *Rosas* based on an assertion that the Implementation Plan involves changes to existing policies and procedures that are, according to ALADS, the subject of mandatory bargaining pursuant to the Memorandum of Understanding

20

("MOU") between ALADS and the LASD, as well as California statutory authorities and the Los Angeles County Code.

7.    Shortly after receiving the December 19 letter, while my office and County Counsel did not believe that the Implementation Plan required formal bargaining with ALADS, we immediately contacted ALADS to schedule a meeting with them to discuss their concerns. The first meeting was scheduled for a full day on January 27, 2015. After some initial general discussions, we offered to review the terms of the Implementation Plan with ALADS one-by-one. This initial meeting largely focused on section 2.1 of the Implementation Plan, which states that the "Department should have a separate, revised, free-standing, and logically organized Custody Force Manual for Custody Operations that includes all use of force policies and procedures that are in the Custody Division Manual and the section of the Manual of Policy and Procedure that are applicable to the Custody Operations." In essence, this term requires the Department to catalog existing force policies and procedures into a single cohesive manual regarding the use of force in the Custody context, and other sections (such as 2.2, 2.5 – 2.8) make minor changes to existing policy language. Based on their representations during the January 27 meeting, my understanding is that ALADS's primary concern with these sections is that they want the word "objectively" inserted before the word "reasonable" in each place in the above-referenced sections. County Counsel and the LASD have discussed the suggestion by ALADS, and are prepared to recommend to the Panel that they incorporate this minor change into the Implementation Plan, subject to their approval.

8.    Despite the fact that the first meeting was scheduled to last the entire day, counsel for ALADS adjourned the meeting after approximately three (3) hours. Given the Sheriff's Department's interests in maintaining a productive working relationship with ALADS, both County Counsel and I offered to make ourselves immediately available to participate in further meetings and/or

21

discussions with ALADS. Additional meetings were held on January 29 and February 2, 2015, with each meeting lasting approximately three (3) hours. At these follow-up meetings, additional terms of the Implementation Plan were discussed, and ALADS provided some additional feedback about certain sections. For example, with respect to section 3.1, ALADS expressed a desire for existing Department members to receive 16 hours, instead of 8 hours, of Custody specific use-of-force training. With respect to certain others sections, such as section 4.3 (which discusses use of force practices when inmates with mental illness are involved), ALADS expressed a desire to clarify that certain practices only apply to planned uses of force, such as cell extractions. Here again, the LASD is willing to recommend to the Panel that they clarify the Implementation Plan as suggested by ALADS.

9.     As set forth above, in the last three weeks alone, County Counsel and I have met with ALADS and their counsel on three separate occasions, resulting in at least nine (9) hours of discussions with them regarding their concerns about the Implementation Plan. Additional meetings are already scheduled for February 17, March 4 and 18, 2015, and both County Counsel and I have offered to make ourselves available at counsel for ALADS' convenience for further meetings in the interim. The Sheriff's Department's goal is to continue the dialogue between the LASD and ALADS in a good faith effort to resolve their concerns to the greatest extent possible, with qualification that the Sheriff's Department has made it very clear to ALADS that it does not believe that formal "meet and confer" is required in this circumstance.

10.     As referenced above, the relationship between the LASD and ALADS is governed by the MOU, the Myers-Milias-Brown Act ("MMBA") (which, I am informed and believe authorizes collective bargaining for employees of most local governments, including Los Angeles County), the Public Safety Officers Procedural Bills of Rights Act or "POBR" (Gov. Code §§ 3300 *et seq.*),

22

and the Employee Relations Ordinance of the County of Los Angeles (L.A. County Code, tit. 5, ch. 5.04). Pursuant to the MOU and these authorities, only certain situations trigger the LASD's obligation to engage in formal bargaining with ALADS (which, as referenced above, is referred to in the MOU and the above authorities as "meet and confer") before changes to Department policies can be made. In general, only changes that impact wages, hours, or working conditions require "meet and confer." With respect to the Implementation Plan and changes to existing policies outlined therein, while the LASD has agreed to discuss ALADS's concerns with them and their counsel, none of the proposed changes stated in the Plan require the LASD to "meet and confer." This is because the reforms in the Plan constitute changes to existing policies and procedures which either do not involve wages, hours, or working conditions, and/or are not significant and adverse in scope with respect to ALADS members, or are the subject of fundamental management rights. When a proposed change in policy qualifies as the subject of fundamental management rights, no "meet and confer" is required. As stated in Article 26 of the MOU, which governs "Management Rights":

> It is the exclusive right of the County to determine the mission of each of its constituent departments, boards, and commission, set standards of service to be offered to the public, and exercise control and discretion over its organization and operations. It is also the exclusive right of the County to direct its employees, take disciplinary action for proper cause, relieve its employees from duty, effect work furloughs or any other alternatives because of lack of work or for other legitimate reasons, and determine the methods, means and personnel by which the County's operations are to be conducted;

MOU, Article 26 – "Management Rights".

///

23

11.    Based on the meetings that have already taken place, I believe ALADS's concerns about the Implementation Plan focus on the following terms:

• Sections 2.1, 2.5 – 2. 8, 2.10, 2.11, and 2.13 – which address revisions to use of force policies – ALADS believes the word "objectively" should be inserted before the word "reasonable" in several places.  The LASD has discussed this addition and is willing to recommend to the Panel that they consider incorporating it into the Implementation Plan;

• Sections 3.1, 3.5, and 3.6 – which address training and professional development related to use of force policies – ALADS believes the amount of training required for existing Department members should be increased;

Sections 4.2 – 4.4 – which address use of force on mentally ill inmates and other special needs populations – ALADS indicated that certain provisions in these sections should be clarified to indicate that they only apply to planned uses of force, such as cell extractions.  Here again, the LASD is willing to recommend to the Panel that they consider ALADS's proposed clarifications;

Section 7.2 – which addresses notification to an inmate of the results of an investigation of an inmate's grievance against a staff member – ALADS indicated some clarification was needed to reflect what information should be provided to inmates to ensure that privileged information (such as the discipline imposed on personnel) is not disclosed.  Here again, the LASD does not object to recommending that the Panel consider clarifying the Implementation Plan as suggested by ALADS;

Sections 13.1 and 13.2 – which address disposition of use of force reviews and discipline of personnel – the decision to discipline personnel is, and always has been, a fundamental management right and, moreover, the Implementation Plan does not alter the process by which discipline is imposed.

Section 14.1 – which addresses criminal referrals and external reviews of use of force incidents – the decision to discipline personnel is, and always has

24

been, a fundamental management right and moreover, the Implementation Plan does not alter the process by which discipline is imposed.

12. I am informed and believe that ALADS claims in their Motion that the "Implementation Plan specifically calls for widespread changes to the existing discipline practices of the Sheriff's Department as it relates to deputy sheriff's...[which] completely obliterates the Department's currently existing progressive-step method of discipline required by the existing discipline policy." This claim ignores several important facts. First, the plain language of the Implementation Plan still affords the Department the discretion as to whether or not to terminate an employee. Thus, it is not accurate that the Implementation Plan eliminates progressive discipline. Second, the Department has always had the ability to discharge an employee if the conduct at issue was sufficiently severe. Third, the Implementation Process does not alter the grievance process available to ALADS members. Lastly, as specified in the MOU, the ultimate decision regarding discipline imposed for misconduct has always resided with the Sheriff, and the Implementation Plan does not change that practice.

13. Regardless of the fact that formal bargaining with ALADS is not required in this situation, the LASD has worked, and intends to continue to work, cooperatively with ALADS to address their concerns. The Sheriff's Department takes ALADS's concerns very seriously, especially as they relate to officer safety, and is confident that continued good faith discussions will be productive. Based on these principles, and given the tremendous time, energy, and resources that have been devoted to enhancing the Sheriff's Department's force policies as part of the settlement in this case, ALADS's Motion to Intervene should be denied. Importantly, the LASD's contention that ALADS should not be permitted to intervene should not be construed as a dismissal of ALADS's concerns which, as reflected above, will be the subject of continued dialogue in the coming weeks.

25

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed this 15 day of February, 2015 at Los Angeles, California.

_____
Daniel Dyer

26