PETER J. ELIASBERG (SB# 189110)
peliasberg@aclu-sc.org
ACLU FOUNDATION OF
SOUTHERN CALIFORNIA
1313 W. 8th Street
Los Angeles, CA 90017
Phone: (213) 977-9500
Fax: (213) 977-5299

JOHN S. DURRANT (SB# 217345)
johndurrant@paulhastings.com
ELIZABETH C. MUELLER (SB# 278283)
bethmueller@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA  90071-2228
Phone: (213) 683-6000
Fax: (213) 627-0705

MARGARET WINTER (*pro hac vice*)
mwinter@npp-aclu.org
ERIC BALABAN (*pro hac vice*)
ebalaban@npp-aclu.org
NATIONAL PRISON PROJECT OF
THE AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
915 15th St., NW
Washington, D.C. 20005
Phone: (202) 393-4930
Fax: (202) 393-4931

Attorneys for Plaintiffs
ALEX ROSAS and JONATHAN
GOODWIN, on behalf of themselves
and of those similarly situated

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX ROSAS and JONATHAN GOODWIN on behalf of themselves and of those similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>JIM MCDONNELL, Sheriff of Los Angeles County, in his official capacity,<br><br>Defendant. | CASE NO. CV 12-00428 DDP<br><br>**DECLARATION OF ESTHER LIM IN SUPPORT OF PLAINTIFFS' OPPOSITION TO ALADS'S MOTION TO INTERVENE**<br><br>**[PLAINTIFFS' OPPOSITION TO ALADS'S MOTION TO INTERVENE, DECLARATION OF JOHN DURRANT, AND OBJECTIONS TO EVIDENCE FILED AND SERVED CONCURRENTLY HEREWITH]**<br><br>Date:      March 9, 2015<br>Time:      10:00 a.m.<br><br>Honorable Dean D. Pregerson<br>Ctrm:  3 |

## DECLARATION OF ESTHER LIM

I, Esther Lim, hereby declare:

1.    I make this declaration based on my own personal knowledge and if called to testify I could and would do so competently as follows:

2.    I am the Jails Project Director for the American Civil Liberties Union Foundation of Southern California ("ACLU SoCal").

3.    On Thursday, February 12, 2015, and Friday, February 13, 2015, I went to Twin Towers Correctional Facility ("TTCF") to check to see that the *Rosas v. Baca*, "Notice of Proposed Class Action Settlement of Case Alleging Pattern of Violence Against Inmates by Sheriff's Personnel in Men's Central Jail, Twin Towers Correctional Facility and Inmate Reception Center" was posted in each of the named facilities. Attached to this declaration is a true and correct copy of the *Rosas* notice in English and Spanish, which is marked as Exhibit A.

4.    On Thursday, February 12, 2015, at about 1:50 p.m., I met with Lieutenant Burse (who left at 2:30 p.m.), Sergeant Mahaffey from Custody Support Services ("CSS"), and Sergeants Gonzalez and Manatt from the Mental Health Task Force.

5.    We walked every housing unit in both towers, and I was able to verify that the *Rosas* notice was visible to the inmates in both English and Spanish.

6.    Sergeant Gonzalez told me that in the discipline modules at TTCF, a copy of the *Rosas* notice was posted near the shower, and because there is not a traditional common area in these modules, a copy of the *Rosas* notice was given to each inmate who was housed there. Extra copies of the *Rosas* notices were in the deputy's area.

7.    I concluded my walk through of TTCF at about 3:15 p.m.

8.    Attached is a true and correct copy of the TTCF *Rosas* posting chart that Sergeant Gonzalez forwarded to me, which is marked as Exhibit B.

9.    On Friday, February 13, 2015, I went to Men's Central Jail ("MCJ")

1

to check on the *Rosas* posting.

10. At about 9:10 a.m., I met with Captain Dempsey, Lieutenant Trejo, and Sergeant Gonzalez.

11. We walked every housing module, the Attorneys' Room, the Visiting Area and the Chapel, and I verified that the *Rosas* notice was visible to the inmates in both English and Spanish in each of those areas.

12. Sergeant Gonzalez told me that the MCJ discipline areas, just like TTCF, has a copy of the *Rosas* notice posted near the shower, and because there is not a traditional common area in these modules, a copy of the *Rosas* notice was given to each inmate who was housed there. I was also able to verify with one of the inmates in the discipline unit that he was given a copy and showed me the notice. Extra copies of the *Rosas* notices were in the deputy's area.

13. I concluded my walk through of MCJ at about 10:20 a.m.

14. Attached is a true and correct copy of the MCJ *Rosas* posting chart that Sergeant Gonzalez forwarded to me, which is marked as Exhibit C.

15. At about 10:35 a.m., Sergeant Gonzalez and I walked the Inmate Reception Center ("IRC"), where I verified that the *Rosas* notice was visible to the inmates in both English and Spanish. A *Rosas* notice was posted in both the intake and clinic areas.

16. I concluded my walk through of IRC at about 10:45 a.m.

17. Attached is a true and correct copy of the IRC *Rosas* posting chart that Sergeant Gonzalez forwarded to me, which is marked as Exhibit D.

18. In addition to the *Rosas* notices at MCJ, TTCF and IRC, the notice is

\ \ \

\ \ \

\ \ \

\ \ \

\ \ \

2

also available on the ACLU SoCal website – www.aclusocal.org/rosas, in both English and Spanish.

I hereby declare under penalty of perjury of the laws of the State of California and the United States that the foregoing is true and correct to the best of my knowledge and belief. Executed this 17th day of February 2015 in Los Angeles, California.

Esther Lim

LEGAL_US_W # 81097584.3

# EXHIBIT A

**NOTICE OF PROPOSED CLASS ACTION SETTLEMENT OF CASE ALLEGING PATTERN OF VIOLENCE AGAINST INMATES BY SHERIFF'S PERSONNEL IN MEN'S CENTRAL JAIL, TWIN TOWERS CORRECTIONAL FACILITY AND INMATE RECEPTION CENTER**

This notice is about a proposed settlement of a class action lawsuit against the Los Angeles County Sheriff ("the Sheriff" or "Defendant") involving alleged violations of the Eighth and Fourteenth Amendments to the United States Constitution.

**ABOUT THE LAWSUIT:**

In 2012, two inmates who were housed in the Los Angeles County jail facilities in downtown Los Angeles  filed this lawsuit against the Los Angeles County Sheriff under the United States Constitution alleging that inmates in Men's Central Jail, Twin Towers Correctional Facility, and the Inmate Reception Center ("the Downtown Jail Complex") were being subjected to a pattern of unnecessary and excessive force by Los Angeles Sheriff's Department ("the Department") personnel, and that the Sheriff was aware of the problem and had not taken reasonable steps to prevent the excessive force. Specifically, they alleged, among other things, that the Sheriff had not put in place an adequate use of force policy, training on use of force was inadequate, investigations of use of force incidents were cursory, use of force incidents were not adequately documented and tracked, and discipline for Department personnel who used excessive force and supervisors who condoned it was non-existent or overly lenient. The Sheriff denies any and all allegations of wrongdoing. The parties have reached a settlement and this notice provides details of that settlement.

**THE PARTIES:**

Current or former inmates Alex Rosas and Jonathan Goodwin ("Plaintiffs") represent a class of inmates certified by the Court, which is defined as "all inmates, now and in the future, in the custody of the Los Angeles County Sheriff's Department in the Jail Complex in downtown Los Angeles" ("the Plaintiff Class"). The Defendant in the case is Sheriff Jim McDonnell, in his official capacity only. If you are a present or future inmate in Men's Central Jail, Twin Towers Correctional Facility, or the Inmate Reception Center, you are a member of the Plaintiff Class in this case.

**ABOUT THE SETTLEMENT:**

The following is only a summary of the provisions of the settlement. The written agreement between the parties has the full terms of the proposed settlement that was preliminarily approved by the Court. There are instructions below if you want more information about this settlement.

The settlement is for injunctive relief only, which means that the parties are seeking a Court order requiring the LASD to remedy the alleged pattern of excessive force at the Downtown Jail Complex. This lawsuit has never included a claim for money damages, and the settlement does not involve money damages. This means that the settlement

does **not** entitle you or any member of the Plaintiff Class to a cash payment. It also means that the settlement does **not** in any way limit you from bringing a claim for damages, if you have such a claim apart from this settlement.

### Appointment of Expert Panel and Creation of, and Monitoring of Compliance with, Remedial Plan

The settlement provides that the Court will appoint three experts, Richard Drooyan, former Chief Counsel of the Citizens' Commission on Jail Violence, Robert Houston, former Director of the Nebraska Department of Corrections, and Jeffrey Schwartz, an independent corrections consultant ("the Expert Panel"), to develop a plan to address and remedy the alleged pattern of excessive force ("the Remedial Plan"). Defendant agrees to implement all the provisions in the Remedial Plan within various time frames after final approval by the Court. The settlement also provides that the Expert Panel will monitor the Department's implementation of, and continued compliance with, the terms of the Remedial Plan and make periodic reports to the Court on its findings.

### The Contents of the Remedial Plan

The Remedial Plan addresses 21 major areas: (1) Leadership, Administration and Management; (2) Use of Force Policies and Practices; (3) Training and Professional Development Related to Use of Force; (4) Use of Force on Mentally Ill Prisoners and Other Special Needs Populations; (5) Data Tracking and Reporting of Force Incidents; (6) Inmate Grievances and Other Complaints of Excessive Force; (7) Inmate Supervision, Staff Inmate Relations, and Communication with Prisoners; (8) Retaliation Against Inmates; (9) Security Practices; (10) Management Presence in Housing Units; (11) Management Review of Force Incidents and Data; (12) Reviews and Investigations of Use of Force Incidents; (13) Disposition of Use of Force Reviews and Staff Discipline Issues; (14) Criminal Referrals and External Reviews of Use of Force Incidents; (15) Documentation and Recording of Force Incidents; (16) Health Care Assessments and Documentation Following Force Incidents; (17) Use of Restraints; (18) Adequate Staffing and Staff Rotations; (19) Early Warning System Related to Use of Force; (20) Protocols for Planned Uses of Force; (21) Organizational Culture Related to Use of Force.

The Remedial Plan contains more than 100 specific provisions that the Department must implement. A number of the provisions of the Plan are set forth below in summary fashion.

- The Sheriff should be personally engaged in the management of the Downtown Jail Complex by the Department's jail facilities, and the Sheriff should regularly and adequately monitor the Department's use of force policies and practices;
- The Department will revise and re-organize its use of force policies for Custody Operations and add policies including ones restricting the use of chemical agents and kicking inmates, and requiring that inmates' medical records be checked whenever possible before using Tasers or chemical agents;

2

- Deputies assigned to the Downtown Jail Complex must receive, among other training, a one-time, eight-hour use of force policy training course and a yearly two-hour refresher course; a one-time, four-hour course in ethics, professionalism and treating inmates with respect and a two-hour refresher course every other year;
- The use of force manual shall include, and the Department shall abide by, a requirement that a mental health professional be present whenever there is a planned cell extraction of an inmate with mental illness, and all custody personnel receive custody specific, scenario based, skill development training on identifying and working with mentally ill inmates;
- The Department will track the status of all investigations, reviews and evaluations of all Custody use of force incidents and allegations of force to ensure that investigations, reviews, and evaluations are completed appropriately and timely;
- The Department must ensure that grievance/complaint forms are reasonably available to all inmates at all times, all grievances/complaints are properly tracked in a database, and that the Custody Division Manual includes a provision that failure to provide a grievance form, destroying a grievance form and retaliating against an inmate for filing a grievance form may be a cause for discipline;
- The Department's policies must prohibit personnel from retaliating against inmates;
- The Department's policies must provide that following a use of force incident, involved staff may not escort an inmate to medical, or segregation unless no other Department personnel is reasonably available;
- Department personnel with a rank of Unit Commander or above must periodically tour the jail facilities;
- All custody Sergeants should receive an initial 16-hour block of training in conducting use of force investigations, reviewing use of force reports, and the Department's new protocols for conducting such investigations, and a two-hour refresher course every year;
- The Department must have a firm policy of zero tolerance for acts of dishonesty or failure to report uses of force. If the Department does not terminate a member who is found to have been dishonest or used excessive force, the Department must document the reasons why the member was not terminated;
- The Department must arrange for a documented medical assessment of each inmate upon whom force is used as soon as practical after the force incident;
- The Department must reorganize its policies on the use of restraints in the jails and add safeguards to ensure that they are used only in appropriate circumstances and in a way that minimizes risk of injury or medical distress;
- The Department must maintain its Custody-wide rotation policies and rotate Department personnel at least as often as provided in those policies;
- The Department must develop and maintain a formal Early Warning System to identify potentially problematic LASD personnel based upon objective criteria such as number of force incidents, inmate grievances, allegations of misconduct, performance reviews, and policy violations; and

3

- The Department will not transfer or assign a staff member to Custody as a formal or informal sanction for problem deputies.

### IF YOU WANT MORE DETAILS:

There is a group of lawyers, **Rosas Plaintiffs' Class Counsel**, representing Plaintiffs and the class in this case. You can get a list of these lawyers, a copy of the settlement agreement, and a copy of the experts' remedial plan from the following websites: www.aclusocal.org/rosas; www.aclu.org/[to be added] and www.lasd.org.

For their work in this case, Defendant has agreed to pay **Rosas Plaintiffs' Class Counsel** $950,000 in attorney's fees, subject to approval by the Court.

**To ask questions about the settlement of this case you can:**

(1) Send a letter to **Rosas Plaintiffs' Class Counsel**, c/o ACLU of Southern California, 1313 West 8th Street, Los Angeles, CA 90017.

(2) Send an email to rosaslawsuit@aclusocal.org.

### IF YOU DO NOT OBJECT TO THIS SETTLEMENT:

You do not have to do anything.

### IF YOU OBJECT TO THIS SETTLEMENT:

You must mail a statement explaining why you object to the settlement. The deadline is _____, 2015. Please be sure to include your name, address (if available), telephone number (if available), your signature, a reference to this settlement or the case (*Rosas v. McDonnell*), the portions of the settlement to which you object, and the reasons you object. Mail your objection to:

Rosas Plaintiffs' Class Counsel
c/o ACLU of So. Cal
1313 W. 8th Street
Los Angeles, CA 90017

Rosas Plaintiffs' Class Counsel will provide your objection to the federal judge assigned to this matter, the Honorable Dean D. Pregerson, and to Defendant's Counsel. You must mail your objection by the above deadline; you cannot object to this settlement after the deadline has passed. Even if you object, you do not have the ability to "opt out" of this settlement if the Court approves it.

**HEARING REGARDING FINAL APPROVAL OF THIS SETTLEMENT:**

The Court will also hold a hearing about this settlement on _____. The hearing date could change. Please check any of the websites listed above close to the date of the hearing for information about any possible change in the hearing date.

The Court gets to decide whether to allow members of the Plaintiff Class who timely served objections to this settlement to speak at the hearing.

The address for the court is:

U.S. Federal District Court, Courtroom 3
312 North Spring Street,
Los Angeles, CA 90012

You can get more details about the hearing from the places listed above.

Para recibir una copia en español, puede solicitar una copia por medio de los miembros de LASD o puede ir a los sitios web enumerados anteriormente.

## AVISO DE SOLUCIÓN PROPUESTA DE DEMANDA COLECTIVA DE CASO QUE ALEGA PATRÓN DE VIOLENCIA CONTRA LOS RECLUSOS POR EL PERSONAL DEL ALGUACIL EN LA CÁRCEL CENTRAL DE HOMBRES, INSTALACIONES CORRECCIONALES TWIN TOWERS Y CENTRO DE RECEPCIÓN DE RECLUSOS

Este aviso es sobre una solución propuesta de una demanda colectiva en contra del Alguacil del Condado de Los Ángeles ("Alguacil" o "Demandado") que se relaciona con supuestas violaciones de las Enmiendas Octava y Catorceava de la Constitución de Estados Unidos.

### ACERCA DE LA DEMANDA:

En el 2012, dos reclusos que fueron alojados en las Instalaciones de la Cárcel del Condado de Los Ángeles, en el centro de Los Angeles presentaron esta demanda en contra del Alguacil del Condado de Los Ángeles bajo La Constitución de Estados Unidos alegando que los reclusos en la Cárcel Central de Hombres, Instalaciones Correccionales Twin Towers, y el Centro de Recepción de Reclusos ("el Complejo Carcelario del Centro") estaban siendo sometidos a un patrón de fuerza innecesaria y excesiva por parte de personal del Departamento del Alguacil de Los Angeles ("Departamento"), y que el Alguacil estaba consciente del problema y no había tomado medidas razonables para evitar la fuerza excesiva. Específicamente, alegaron, entre otras cosas, que el Alguacil no había puesto en marcha una política adecuada de uso de fuerza, la capacitación sobre el uso de fuerza era inadecuada, las investigaciones de incidentes de uso de fuerza eran someras, el uso de incidentes de fuerza no se documentó y rastreó adecuadamente, y la disciplina para el personal del Departamento que empleaba la fuerza y sus supervisores que la condonaban era inexistente o excesivamente indulgente. El Alguacil niega cualquier y toda denuncia de irregularidades. Las partes han llegado a una solución y este aviso proporciona detalles de esa solución.

### LAS PARTES:

Reclusos actuales o antiguos Alex Rosas y Jonathan Goodwin ("Partes Demandantes") representan una clase de reclusos certificada por el Tribunal, que se define como "todos los reclusos, ahora y en el futuro, bajo la custodia del Departamento del Alguacil del Condado de Los Ángeles, en el Complejo Carcelario en el centro de Los Ángeles" ("la Clase Demandante"). La Parte Demandada en el caso es el Alguacil Jim McDonnell, sólo en su capacidad oficial. Si usted es un recluso presente o futuro en la Cárcel Central de Hombres, Instalaciones Correccionales Twin Towers, o el Centro de Recepción de Reclusos, usted es un miembro de la Clase Demandante en este caso.

### ACERCA DE LA SOLUCIÓN:

Lo siguiente es sólo un resumen de las disposiciones de la solución. La solución escrita entre las partes tiene los términos completos de la propuesta de solución que fue preliminarmente aprobada por el Tribunal. Hay instrucciones a continuación si quiere más información acerca de esta solución.

La solución es sólo una medida cautelar, lo que significa que las partes están procurando una orden judicial que requiere a LASD remediar el presunto patrón de fuerza excesiva en el Complejo Carcelario del Centro. Esta demanda nunca ha incluido una reclamación por daños y perjuicios monetarios, y la solución no implica daños monetarios. Esto significa que la solución

1

no le da a usted o cualquier miembro de la Clase Demandante derecho a un pago en efectivo. También significa que la solución no limita de modo alguno que usted presente una demanda por daños y perjuicios, si usted tiene tal demanda aparte de esta solución.

**Nombramiento de Grupo de Expertos y la creación de, y Supervisión de Cumplimiento con, el Plan de Remediación**

La solución establece que el Tribunal nombrará tres expertos, Richard Drooyan, ex Abogado Jefe de la Comisión Ciudadana sobre Violencia Carcelaria, Robert Houston, ex director del Departamento de Prisiones de Nebraska, y Jeffrey Schwartz, consultor de correcciones independiente ("el Grupo Experto"), para desarrollar un plan para abordar y remediar el presunto patrón de fuerza excesiva ("el Plan de Remediación "). La Parte Demandada acuerda aplicar todas las disposiciones del Plan de Remediación dentro de varios marcos de tiempo después de la aprobación final por parte del Tribunal. La Solución también establece que el grupo de expertos supervisará la aplicación del Departamento, y el cumplimiento continuo de los términos del Plan de Remediación y hará informes periódicos al Tribunal sobre sus conclusiones.

**Contenido del Plan de Remediación**

El Plan de Remediación aborda 21 áreas principales: (1) Liderazgo, Administración y Gestión; (2) Políticas y Prácticas del Uso de la Fuerza; (3) Formación y Desarrollo Profesional Relacionados con el Uso de la Fuerza; (4) Uso de la Fuerza sobre Reclusos Mentalmente Enfermos y Otras Poblaciones con Necesidades Especiales; (5) Seguimiento de Datos y Generación de Informes de Incidentes de la Fuerza; (6) Quejas y Denuncias de Reclusos y Otras Quejas de Uso Excesivo de la Fuerza; (7) Supervisión del Reclusos, Relaciones de Personal y Reclusos, y Comunicación con los Reclusos; (8) Represalias contra Reclusos; (9) Prácticas de Seguridad; (10) Presencia de Gestión en Unidades de Vivienda; (11) Repaso de la Gestión de Incidentes y Datos de la Fuerza; (12) Repasos e Investigaciones de Incidentes de Uso de la Fuerza; (13) Disposición de Uso de Repasos de la Fuerza y Problemas de Disciplina de Personal; (14) Remisiones Penales y Repasos Externos del Uso de Incidentes de la Fuerza; (15) Documentación y Registro de Incidentes de Fuerza; (16) Evaluaciones de Atención Médica y Documentación Tras Incidentes de Fuerza ; (17) Uso de Restricción; (18) Dotación de Personal Adecuado y Rotaciones de Personal ; (19) Sistema de Alerta Temprana Relacionada con el Uso de la Fuerza; (20) Protocolos para la Planificación de Usos de la Fuerza; (21) Cultura Organizacional Relacionada con el Uso de la Fuerza.

El Plan de Remediación contiene más de 100 disposiciones específicas que el Departamento debe implementar. Varias de las disposiciones del Plan se exponen a continuación de manera sumaria.

- El Alguacil debería participar personalmente en la gestión del Complejo Carcelario del Centro por las Instalaciones de la cárcel del Departamento, y el Alguacil debería supervisar con regularidad y de manera adecuada la utilización por el Departamento de políticas y prácticas de la fuerza;
- El Departamento actualizará y reorganizará el uso de políticas de uso de la fuerza para las Operaciones de Custodia y añadirá políticas incluyendo las que restringen el uso de agentes químicos y patear a los reclusos, y que requieran que los registros médicos de los reclusos se verifiquen siempre que sea posible antes de utilizar armas Taser o agentes químicos;

2

- Los ayudantes del Alguacil asignados al Complejo Carcelario del Centro deben recibir, entre otro tipo de formación, un curso de ocho horas de formación de una sola ocasión sobre política del uso de la fuerza y un curso de actualización anual de dos horas; un curso de cuatro horas de una sola ocasión sobre la ética, el profesionalismo y el tratamiento de los reclusos con respeto y un curso de actualización de dos horas cada dos años;

- El uso del manual de fuerza deberá incluir, y el Departamento acatará, el requisito de que un profesional de salud mental esté presente cada vez que haya una extracción de una celda planificada de un recluso con enfermedad mental, y todo el personal de custodia recibirá capacitación específica a la custodia, basada en escenarios, para el desarrollo en la identificación y el trabajo con reclusos con enfermedades mentales;

- El Departamento hará un seguimiento de la situación de todas las investigaciones, repasos y evaluaciones de todo el uso de los incidentes de la fuerza y las denuncias de la fuerza por parte de la Custodia para garantizar que las investigaciones, repasos y evaluaciones se realicen de manera adecuada y oportuna;

- El Departamento tiene que asegurarse de que los formularios de queja/reclamaciones estén razonablemente disponibles para todos los reclusos en todo momento, que todas las quejas/reclamaciones sean correctamente seguidas en una base de datos, y que el Manual de la División de Custodia incluya una disposición que el no proporcionar un formulario de queja, la destrucción de un formulario de queja y el tomar represalias contra un recluso por la presentación de un formulario de queja puede ser un motivo de disciplina;

- Las políticas del Departamento deben establecer que tras un incidente de uso de fuerza, el personal involucrado no puede escoltar a un recluso a servicios médicos, o a segregación a menos que ningún otro personal del Departamento esté razonablemente disponible;

- Personal del Departamento con un rango de comandante de unidad o más alto deberá periódicamente recorrer las instalaciones de la cárcel;

- Todos los Sargentos de Custodia deben recibir un conjunto inicial de 16 horas de formación sobre conducir investigaciones del uso de la fuerza, repasar los informes de uso de la fuerza, y los nuevos protocolos del Departamento para la realización de tales investigaciones, y un curso de actualización de dos horas cada año;

- El Departamento debe tener una política firme de cero tolerancia para los actos de deshonestidad o el no reportar usos de la fuerza. Si el Departamento no termina a un miembro que se determine haber sido deshonesto o haber usado fuerza excesiva, el Departamento debe documentar las razones por las cuales el miembro no se terminó;

- El Departamento debe hacer arreglos para una evaluación médica documentada de cada recluso sobre quien se utilice la fuerza tan pronto como sea posible después del incidente del uso de la fuerza;

- El Departamento debe reorganizar sus políticas sobre el uso de restricciones en las cárceles y añadir salvaguardias para garantizar que se utilicen solamente en circunstancias apropiadas y de manera que se minimice el riesgo de lesiones o problemas médicos;

- El Departamento debe mantener su política de rotación de toda la Custodia y rotar el personal del Departamento al menos con la frecuencia que se proporciona en esas políticas;

- El Departamento debe desarrollar y mantener un Sistema de Alerta Temprana formal para identificar a personal de LASD potencialmente problemático basándose en criterios objetivos, como el número de incidentes de uso de la fuerza, quejas de los reclusos, acusaciones de mala conducta, evaluaciones de desempeño, y violaciones de política; y

3

- El Departamento no transferirá o asignará a un miembro del personal de Custodia como una sanción formal o informal para ayudantes de Alguacil problemáticos.

### SI QUIERE MÁS DETALLES:

Hay un grupo de abogados, **Rosas Plaintiffs' Class Counsel**, que representa a Demandantes y a la clase en este caso. Usted puede obtener una lista de estos abogados, una copia del acuerdo de solución, y una copia del plan de recuperación de los expertos de los siguientes sitios web: www.aclusocal.org/rosas; www.aclu.org/[to be added] y www.lasd.org.

Por su trabajo en este caso, la Parte Demandada ha acordado pagar a **Rosas Plaintiffs' Class Counsel** $950,000 en honorarios de abogados, sujeto a la aprobación por parte del Tribunal.

**Para hacer preguntas acerca de la solución de este caso usted puede:**

(1) Enviar una carta a **Rosas Plaintiffs' Class Counsel**, c/o ACLU of Southern California, 1313 West 8th Street, Los Angeles, CA 90017.

(2) Enviar un correo electrónico a rosaslawsuit@aclusocal.org.

### SI USTED NO SE OPONE A ESTA SOLUCIÓN:

Usted no tiene que hacer nada.

### SI SE OPONE A ESTA SOLUCIÓN:

Usted debe enviar una declaración explicando por qué usted se opone a la solución. La fecha límite es el 24 de Marzo 2015. Por favor asegúrese de incluir su nombre, dirección (si está disponible), número de teléfono (si está disponible), su firma, una referencia a la presente solución o el caso (*Rosas v. McDonnell*), las partes de la solución a las que usted se opone, y las razones por las que se opone. Envíe por correo su objeción a:

Rosas Plaintiffs' Class Counsel
c/o ACLU of So. Cal
1313 W. 8th Street
Los Angeles, CA 90017

Rosas Plaintiffs' Class Counsel proporcionará su objeción al juez federal asignado a este asunto, Su Señoría Dean D. Pregerson, y al Abogado de la Parte Demandada. Usted debe enviar su objeción para la fecha indicada; no puede objetar a esta solución después de que la fecha límite haya pasado. Incluso si usted se opone, usted no tiene la capacidad de "no participar" en esta solución si el Tribunal la aprueba.

4

**AUDIENCIA CON RESPECTO A LA APROBACIÓN FINAL DE ESTA SOLUCIÓN:**

El Tribunal también celebrará una audiencia sobre esta solución el 20 de Abril 2015. La fecha de la audiencia podría cambiar. Por favor verifique en cualquiera de los sitios web que aparecen arriba cerca de la fecha de la audiencia para obtener información sobre cualquier posible cambio de la fecha de la audiencia.

El Tribunal puede decidir si se debe permitir a los miembros de la Clase Demandante que presentaron oportunamente objeciones a esta solución hablar en la audiencia.

La dirección del Tribunal es:

U.S. Federal District Court, Courtroom 3
312 North Spring Street,
Los Angeles, CA 90012

Puede obtener más detalles sobre la audiencia en los lugares mencionados anteriormente.

Para recibir una copia en español, puede solicitar una copia por medio de los miembros de LASD o puede ir a los sitios web enumerados anteriormente.

# EXHIBIT B

| FACILITY | LOCATION | DATE Posted | NOTES |
|---|---|---|---|
| TTCF | T121A | 2/4/2015 | Handed to each inmate |
| TTCF | T121B | 2/4/2015 | Handed to each inmate |
| TTCF | T121C | 2/4/2015 | Handed to each inmate |
| TTCF | T121D | 2/4/2015 | Handed to each inmate |
| TTCF | T121E | 2/4/2015 | Handed to each inmate |
| TTCF | T121F | 2/4/2015 | Handed to each inmate |
| TTCF | T131A | 2/4/2015 | Posted on window of dayroom |
| TTCF | T131B | 2/4/2015 | Posted on window of dayroom |
| TTCF | T131C | 2/4/2015 | Posted on window of dayroom |
| TTCF | T131D | 2/4/2015 | Posted on window of dayroom |
| TTCF | T131E | 2/4/2015 | Posted on window of dayroom |
| TTCF | T131F | 2/4/2015 | Posted on window of dayroom |
| TTCF | T132A | 2/4/2015 | Posted on window of dayroom |
| TTCF | T132B | 2/4/2015 | Posted on window of dayroom |
| TTCF | T132C | 2/4/2015 | Posted on window of dayroom |
| TTCF | T132D | 2/4/2015 | Posted on window of dayroom |
| TTCF | T132E | 2/4/2015 | Posted on window of dayroom |
| TTCF | T132F | 2/4/2015 | Posted on window of dayroom |
| TTCF | T141A | 2/4/2015 | Posted on window of dayroom |
| TTCF | T141B | 2/4/2015 | Posted on window of dayroom |
| TTCF | T141C | 2/4/2015 | Posted on window of dayroom |
| TTCF | T141D | 2/4/2015 | Posted on window of dayroom |
| TTCF | T141E | 2/4/2015 | Posted on window of dayroom |
| TTCF | T141F | 2/4/2015 | Posted on window of dayroom |
| TTCF | T142A | 2/4/2015 | Posted above phones |
| TTCF | T142B | 2/4/2015 | Posted above phones |
| TTCF | T142C | 2/4/2015 | Posted above phones |
| TTCF | T142D | 2/4/2015 | Posted above phones |
| TTCF | T142E | 2/4/2015 | Posted above phones |
| TTCF | T142F | 2/4/2015 | Posted above phones |
| TTCF | T151A | 2/4/2015 | Posted above phones |
| TTCF | T151B | 2/4/2015 | Posted above phones |
| TTCF | T151C | 2/4/2015 | Posted above phones |
| TTCF | T151D | 2/4/2015 | Posted above phones |
| TTCF | T151E | 2/4/2015 | Posted above phones |
| TTCF | T151F | 2/4/2015 | Posted above phones |
| TTCF | T152A | 2/4/2015 | Posted above phones |
| TTCF | T152B | 2/4/2015 | Posted above phones |
| TTCF | T152C | 2/4/2015 | Posted above phones |
| TTCF | T152D | 2/4/2015 | Posted above phones |
| TTCF | T152E | 2/4/2015 | Posted above phones |
| TTCF | T152F | 2/4/2015 | Posted above phones |
| TTCF | T161A | 2/4/2015 | Posted above phones |
| TTCF | T161B | 2/4/2015 | Posted above phones |

| TTCF | T161C | 2/4/2015 | Posted above phones |
|------|-------|----------|---------------------|
| TTCF | T161D | 2/4/2015 | Posted above phones |
| TTCF | T161E | 2/4/2015 | Posted above phones |
| TTCF | T161F | 2/4/2015 | Posted above phones |
| TTCF | T162A | 2/4/2015 | Posted above phones |
| TTCF | T162B | 2/4/2015 | Posted above phones |
| TTCF | T162C | 2/4/2015 | Posted above phones |
| TTCF | T162D | 2/4/2015 | Posted above phones |
| TTCF | T162E | 2/4/2015 | Posted above phones |
| TTCF | T162F | 2/4/2015 | Posted above phones |
| TTCF | T171A | 2/4/2015 | Posted above phones |
| TTCF | T171B | 2/4/2015 | Posted above phones |
| TTCF | T171C | 2/4/2015 | Posted above phones |
| TTCF | T171D | 2/4/2015 | Posted above phones |
| TTCF | T171E | 2/4/2015 | Posted above phones |
| TTCF | T171F | 2/4/2015 | Posted above phones |
| TTCF | T172A | 2/4/2015 | Posted above phones |
| TTCF | T172B | 2/4/2015 | Posted above phones |
| TTCF | T172C | 2/4/2015 | Posted above phones |
| TTCF | T172D | 2/4/2015 | Posted above phones |
| TTCF | T172E | 2/4/2015 | Posted above phones |
| TTCF | T172F | 2/4/2015 | Posted above phones |
| TTCF | T211A | 2/4/2015 | Handed to each inmate |
| TTCF | T211B | 2/4/2015 | Handed to each inmate |
| TTCF | T211C | 2/4/2015 | Handed to each inmate |
| TTCF | T211D | 2/4/2015 | Handed to each inmate |
| TTCF | T211E | 2/4/2015 | Handed to each inmate |
| TTCF | T211F | 2/4/2015 | Handed to each inmate |
| TTCF | T232A | 2/4/2015 | Posted on window of dayroom |
| TTCF | T232B | 2/4/2015 | Posted on window of dayroom |
| TTCF | T232C | 2/4/2015 | Posted on window of dayroom |
| TTCF | T232D | 2/4/2015 | Posted on window of dayroom |
| TTCF | T232E | 2/4/2015 | Posted on window of dayroom |
| TTCF | T232F | 2/4/2015 | Posted on window of dayroom |
| TTCF | T241A | 2/4/2015 | Posted on window of dayroom |
| TTCF | T241B | 2/4/2015 | Posted on window of dayroom |
| TTCF | T241C | 2/4/2015 | Posted on window of dayroom |
| TTCF | T241D | 2/4/2015 | Posted on window of dayroom |
| TTCF | T241E | 2/4/2015 | Posted on window of dayroom |
| TTCF | T241F | 2/4/2015 | Posted on window of dayroom |
| TTCF | T242A | 2/4/2015 | Posted on window of dayroom |
| TTCF | T242B | 2/4/2015 | Posted on window of dayroom |
| TTCF | T242C | 2/4/2015 | Posted on window of dayroom |
| TTCF | T242D | 2/4/2015 | Posted on window of dayroom |
| TTCF | T242E | 2/4/2015 | Posted on window of dayroom |
| TTCF | T242F | 2/4/2015 | Posted on window of dayroom |
| TTCF | T251A | 2/4/2015 | Posted on window of dayroom |

| TTCF | T251B | 2/4/2015 | Posted on window of dayroom |
|---|---|---|---|
| TTCF | T251C | 2/4/2015 | Posted on window of dayroom |
| TTCF | T251D | 2/4/2015 | Posted on window of dayroom |
| TTCF | T251E | 2/4/2015 | Posted on window of dayroom |
| TTCF | T251F | 2/4/2015 | Posted on window of dayroom |
| TTCF | T252A | 2/4/2015 | Posted on window of dayroom |
| TTCF | T252B | 2/4/2015 | Posted on window of dayroom |
| TTCF | T252C | 2/4/2015 | Posted on window of dayroom |
| TTCF | T252D | 2/4/2015 | Posted on window of dayroom |
| TTCF | T252E | 2/4/2015 | Posted on window of dayroom |
| TTCF | T252F | 2/4/2015 | Posted on window of dayroom |
| TTCF | T261A | 2/4/2015 | Posted on window of dayroom |
| TTCF | T261B | 2/4/2015 | Posted on window of dayroom |
| TTCF | T261C | 2/4/2015 | Posted on window of dayroom |
| TTCF | T261D | 2/4/2015 | Posted on window of dayroom |
| TTCF | T261E | 2/4/2015 | Posted on window of dayroom |
| TTCF | T261F | 2/4/2015 | Posted on window of dayroom |
| TTCF | T262A | 2/4/2015 | Posted on window of dayroom |
| TTCF | T262B | 2/4/2015 | Posted on window of dayroom |
| TTCF | T262C | 2/4/2015 | Posted on window of dayroom |
| TTCF | T262D | 2/4/2015 | Posted on window of dayroom |
| TTCF | T262E | 2/4/2015 | Posted on window of dayroom |
| TTCF | T262F | 2/4/2015 | Posted on window of dayroom |
| TTCF | T271A | 2/4/2015 | Posted on window of dayroom |
| TTCF | T271B | 2/4/2015 | Posted on window of dayroom |
| TTCF | T271C | 2/4/2015 | Posted on window of dayroom |
| TTCF | T271D | 2/4/2015 | Posted on window of dayroom |
| TTCF | T271E | 2/4/2015 | Posted on window of dayroom |
| TTCF | T271F | 2/4/2015 | Posted on window of dayroom |
| TTCF | T272A | 2/4/2015 | Posted on window of dayroom |
| TTCF | T272B | 2/4/2015 | Posted on window of dayroom |
| TTCF | T272C | 2/4/2015 | Posted on window of dayroom |
| TTCF | T272D | 2/4/2015 | Posted on window of dayroom |
| TTCF | T272E | 2/4/2015 | Posted on window of dayroom |
| TTCF | T272F | 2/4/2015 | Posted on window of dayroom |

# EXHIBIT C

| FACILITY | LOCATION | DATE Posted | NOTES |
|---|---|---|---|
| MCJ | 1700A | 2/4/2015 | On Wall Across from showers (K10) |
| MCJ | 1700B | 2/4/2015 | On Wall Across from showers (K10) |
| MCJ | 1750C | 2/4/2015 | On Wall Across from showers (K10) |
| MCJ | 1750D | 2/4/2015 | On Wall Across from showers (K10) |
| MCJ | 1750E | 2/4/2015 | On Wall Across from showers (K10) |
| MCJ | 1750F | 2/4/2015 | On Wall Across from showers (K10) |
| MCJ | 1751G | 2/4/2015 | On Wall Across from showers (K10) |
| MCJ | 1750 | 2/4/2015 | Outside of Door to Law Library |
| MCJ | 2100/2300 | 2/4/2015 | Entry and Upstairs Dayroom |
| MCJ | 2200/2400 | 2/4/2015 | Entry and Downstairs Dayroom |
| MCJ | 2500/2700 | 2/4/2015 | Entry, Upstairs Dayroom, & Law Library |
| MCJ | 2600/2800 | 2/4/2015 | Entry and Downstairs Dayroom |
| MCJ | 2900 | 2/4/2015 | Main Hallway |
| MCJ | 2904 | 2/4/2015 | Handed to each inmate (2) |
| MCJ | 3100A | 2/4/2015 | On Wall Across from showers (K10) |
| MCJ | 3100B | 2/4/2015 | On Wall Across from showers (K10) |
| MCJ | 3100C | 2/4/2015 | On Wall Across from showers (K10) |
| MCJ | 3100D | 2/4/2015 | On Wall Across from showers (K10) |
| MCJ | 3300A | 2/4/2015 | On Wall Across from showers (K10) |
| MCJ | 3300B | 2/4/2015 | On Wall Across from showers (K10) |
| MCJ | 3300C | 2/4/2015 | On Wall Across from showers (K10) |
| MCJ | 3300D | 2/4/2015 | On Wall Across from showers (K10) |
| MCJ | 3200/3400 | 2/4/2015 | Entry and Downstairs Dayroom |
| MCJ | 3600/3800 | 2/4/2015 | Entry and Downstairs Dayroom |
| MCJ | 3500A | 2/4/2015 | On Wall Across from showers (K10) |
| MCJ | 3500B | 2/4/2015 | On Wall Across from showers (K10) |
| MCJ | 3500C | 2/4/2015 | On Wall Across from showers (K10) |
| MCJ | 3500D | 2/4/2015 | On Wall Across from showers (K10) |
| MCJ | 3700 | 2/4/2015 | Entry and Downstairs Dayroom |
| MCJ | 3000 Yard | 2/4/2015 | Posted at Top of Stairs to yard |
| MCJ | 3000 Yard | 2/12/2015 | Posted on wall adjacent to I/M phones |
| MCJ | 3000 Chapel | 2/4/2015 | Entryway |
| MCJ | 4300 | 2/4/2015 | Entryway |
| MCJ | 4400 | 2/4/2015 | Entryway |
| MCJ | 4500 | 2/4/2015 | Entryway |
| MCJ | 4600 | 2/4/2015 | Entryway |
| MCJ | 4700 | 2/4/2015 | Entryway |
| MCJ | 4800 | 2/4/2015 | Entryway |
| MCJ | 5100 | 2/4/2015 | Inside Front of Dorm |
| MCJ | 5200 | 2/4/2015 | Inside Front of Dorm |
| MCJ | 5300 | 2/4/2015 | Inside Front of Dorm |
| MCJ | 5400 | 2/4/2015 | Inside Front of Dorm |
| MCJ | 5500 | 2/4/2015 | Inside Front of Dorm |
| MCJ | 5550 | 2/4/2015 | Inside Front of Dorm |
| MCJ | 5600 | 2/4/2015 | Inside Front of Dorm |
| MCJ | 5700 | 2/4/2015 | Inside Front of Dorm |
| MCJ | 5800 | 2/4/2015 | Inside Front of Dorm |
| MCJ | 5900 | 2/4/2015 | Inside Front of Dorm |
| MCJ | 5000 Chapel | 2/12/2015 | Entryway |
| MCJ | 6000 | 2/12/2015 | Elevator landing |
| MCJ | 6000 | 2/4/2015 | Shower Room # 6021 |

| MCJ | 6000 | 2/12/2015 | East wall of dayroom #6023 |
|---|---|---|---|
| MCJ | 6051 | 2/4/2015 | Near T.V. |
| MCJ | 6052 | 2/4/2015 | Near T.V. |
| MCJ | 6053 | 2/4/2015 | Near T.V. |
| MCJ | 7000 | 2/4/2015 | Elevator Landing |
| MCJ | 7000 | 2/12/2015 | North wall of dayroom #7029 |
| MCJ | 7000 | 2/4/2015 | On Wall Across from showers (K10) |
| MCJ | 7100 | 2/4/2015 | Near Telephones |
| MCJ | 7100 | 2/4/2015 | On Wall Across from showers (K10) |
| MCJ | 7200 | 2/4/2015 | On Wall Across from bench Room # 7212 |
| MCJ | 7200 | 2/12/2015 | South wall of dayroom #7214 |
| MCJ | 8000 | 2/4/2015 | Elevator Landing |
| MCJ | 8000 | 2/4/2015 | On Wall Across from showers (K10) |
| MCJ | 8100 | 2/4/2015 | Near Telephones |
| MCJ | 8100 | 2/4/2015 | Dining Room Area Room # 8109 |
| MCJ | 8200 | 2/4/2015 | On Wall above I/M bench next to Deputy Office |
| MCJ | 9100 | 2/4/2015 | Inside Front of Dorm |
| MCJ | 9200 | 2/4/2015 | Inside Front of Dorm |
| MCJ | 9300 | 2/4/2015 | Inside Front of Dorm |
| MCJ | 9400 | 2/4/2015 | Inside Front of Dorm |
| MCJ | 9500 | 2/4/2015 | Inside Front of Dorm |
| MCJ | 9504 | 2/4/2015 | Inside Front of Dorm |
| MCJ | 9000 Yard | 2/4/2015 | Roof Entryway (readable from yard) |
| MCJ | Visiting | 2/4/2015 | Entryway |
| MCJ | Attorney Room | 2/4/2015 | Entryway |

# EXHIBIT D

| FACILITY | LOCATION | DATE Posted | NOTES |
| --- | --- | --- | --- |
| IRC | Booking Front | 2/4/2015 | On wall across from Deputy Desk |
| IRC | Booking Front | 2/4/2015 | Cell # A |
| IRC | Clinic | 2/4/2015 | On Wall in clinic waiting area |
| IRC | 231A | 2/4/2015 | Posted on window of dayroom |
| IRC | 231B | 2/4/2015 | Posted on window of dayroom |
| IRC | 231C | 2/4/2015 | Posted on window of dayroom |
| IRC | 231D | 2/4/2015 | Posted on window of dayroom |
| IRC | 231E | 2/4/2015 | Posted on window of dayroom |
| IRC | 231F | 2/4/2015 | Posted on window of dayroom |