# EXHIBIT P

## IMPLEMENTATION PLAN

The Court Monitors appointed by United States District Judge Dean Pregerson in the matter entitled *Rosas, et al. v. Baca,* Case No. CV 12-00428 DDP, have developed this Implementation Plan that the Los Angeles Sheriff's Department (the "Department") shall be required to implement as part of the settlement of the *Rosas* case. The Court Monitors understand that the items in this Implementation Plan set forth below will be mandatory when submitted by the parties to the Court and ordered by the Court as part of the settlement.

With respect to the policy changes set forth below, the Court Monitors will monitor (1) the Department's implementation of the policy change; (2) the Department's adherence in practice to the policy change through the monitoring period; and (3) the Department's investigation of any alleged or potential violations of the revised policies. Any violations of these revised policies should be timely and appropriately investigated and appropriately disciplined up to and including termination.

In view of the on-going negotiations between the County of Los Angeles (the "County") and the United States Department of Justice regarding mentally ill and suicidal inmates, we have not made any recommendations to address issues regarding these inmates other than relating to the use of force against these inmates.

1.    **Leadership, Administration and Management (expect to be completed by June 30, 2015):**

1.1    Custody Operations should continue to be headed by an Assistant Sheriff with no areas of responsibility other than Custody Operations.

1.2    The Sheriff should be personally engaged in the management of the Department's jail facilities, and the Sheriff should regularly and adequately monitor the Department's use of force policies and practices, and its compliance with this court-ordered Implementation Plan.

1.3    Department managers should be held accountable should they fail to address use of force problems at the Department's jail facilities.

1.4    The Department should report regularly to the Board of Supervisors on use of force and the status of the Department's compliance with this Implementation Plan.

2.    **Use of Force Policies and Practices (expect to be completed by June 30, 2015):**

2.1    The Department should have a separate, revised, free-standing, and logically organized Custody Force Manual for Custody Operations that includes all use of force policies and procedures that are in the Custody Division Manual and the sections of the Manual of Policy and Procedures that are applicable to the Custody Operations. The Custody Force Manual should not include sections of the Manual of Policy and

1

Procedures that are only applicable to other areas of the Department and should not include sections that are not applicable to the use of force by Department members.

2.2    The Department's Custody use of force policies should provide that force used by Department members:  (a) must be used as a last resort; (b) must be the minimal amount of force that is necessary and objectively reasonable to overcome the resistance; (c) must be terminated as soon as possible consistent with maintaining control of the situation; and (d) must be de-escalated if resistance decreases.

2.3    The Department's Custody use of force policies should provide that it is a violation of Department policy to cause or facilitate inmate-on-inmate violence or to harass or otherwise verbally provoke an inmate to justify the use of force against the inmate.  The policies should also provide that staff are prohibited from publicly humiliating inmates; from using slurs concerning race, gender, ethnicity, or sexual-orientation; using obscenities; or exposing prisoners to an unreasonable risk of being assaulted by fellow prisoners.

2.4    The Department's Custody use of force policies should provide that force may not be used as discipline or corporal punishment.

2.5    The Department's Custody use of force policies should provide that a Department member may not strike an inmate or use chemical agents or a taser on an inmate who is restrained unless the inmate is assaultive and presents an immediate threat of injury to a Department member or another person, and unless there are no other more reasonable means to control the inmate.

2.6    The Department's Custody use of force policies should provide that striking an inmate in the head or kicking an inmate who is on the ground, or kicking an inmate who is not on the ground anywhere above the knees is prohibited unless the inmate is assaultive and presents an imminent danger of serious injury to a Department member or another person and there are no other more reasonable means to avoid serious physical injury.  The Department's Custody use of force policies should also provide that kicking an inmate who is not on the ground below the knees is prohibited unless the inmate is physically assaultive, and the kick is utilized to create distance between the member and the assaultive inmate.

2.7    The Department's Custody use of force policies should provide that Department members confronted with a situation in which force may be required must call a supervisor to the scene as soon as time and circumstances permit.

2.8    The Department's Custody use of force policies should provide that all Department members are responsible for preventing excessive force, and that Department members witnessing excessive force have a duty to attempt to stop, reduce or control the force being used.

2.9    The Department's Custody use of force policies should provide that when confronting an armed inmate, every effort should be made to control the inmate at a

distance and avoid the types of force that would subject Department members to close contact with the inmate.

2.10    The Department's Custody use of force policies should provide that Department members may only use instruments of force or weapons that are (1) authorized by the Department and (2) for which they have been trained, except that Department members may use any available instruments or weapons to prevent imminent loss of life or serious bodily injury if there are no other more reasonable alternative available.

2.11    The Department's Custody use of force polices should provide that Department members are required to wait a sufficient amount of time after applying chemical agents to allow the chemical agents to take full effect before applying additional chemical agents or other force in a cell extraction or other planned use of force.

2.12    The Department's Custody use of force policies should provide that chemical agents and Tasers and other electronic stun devices should not be used: (a) gainst an inmate when he or she no longer presents a danger or is no longer resistant; (b) against inmates known to suffer  medical conditions that may be aggravated or affected by such agents; or (c) in a manner contradictory to the manufacturer's recommendations or Department training.

2.13    The Department's Custody use of force policies should provide that, when time and circumstances permit, an inmate's medical/mental health records should be checked before chemical agents or Tasers and other electronic stun devices are used against the inmate.  If a medical check finds these items are contra-indicated, they should not be used (subject, however, to the exception in 2.10, above).

**3.    Training and Professional Development Related to Use of Force (curriculum for 3.1 through 3.4 expected to be implemented by June 30, 2015 with training completed by December 31, 2016; 3.5 and 3.6 to be completed by June 30, 2015 ):**

3.1    Use of force training requirements for all existing Department members in Custody Operations should include, at a minimum, a one-time eight (8) hour use of force policy training course for all members assigned to custody and then a two (2) hour refresher course every year.

3.2    Training requirements for all existing Department members in Custody Operations should include, at a minimum, a one-time four (4) hour training course in ethics, professionalism and treating inmates with respect, and then a two (2) hour refresher course on these subjects at least every other year.

3.3    New Department members should receive a minimum of six weeks of classroom, custody training, which may include training in the Academy or the Jail Continuum and in Crisis Intervention and Conflict Resolution (see 4.9 below), in addition to the in-service training they receive while assigned in the jails.  With the exception of

3

one week of the Department's Jail Operations Continuum training, all of this training should occur before new Department members receive in-service training in the jails, and this training should include at least 12 to 16 hours of both Custody-specific, scenario-based use of force policy training and training in ethics, professionalism and treating inmates with respect.

 3.4 Custody-based, use of force scenarios should be included as part of the use of force policy training provided by the Custody Training & Standard Bureau on an in-service and refresher basis.

 3.5 Unit Commanders should determine what additional training, counseling or mentoring may be required when a personnel complaint against a Department member involving the use of force is resolved with a finding that it "Appears Employee Conduct Could Have Been Better"; direct that the Department member undergo such additional training, counseling or mentoring; and document the action taken.

 3.6 To ensure a meaningful probationary period, new Department members assigned to Custody Operations should be reviewed within six months after being assigned to Custody and again before their first post-probationary assignment.

**4. Use of Force on Mentally Ill Prisoners and Other Special Needs Populations (expect to be completed by June 30, 2015 for Recommendations 4.1 through 4.5 and training completed by December 31, 2016 for Recommendations 4.6 through 4.9):**

 4.1 The Department's Custody use of force policies should require a mental health professional to be on-scene to attempt to resolve the situation without force whenever there is a cell extraction or, to the extent possible, any other similar planned use of force.

 4.2 The Department's Custody use of force policies should require supervisors investigating the use of force by Department members to interview any mental health professionals who witnessed the force incident and/or attempted to resolve the incident without force, about the members' use of force and the mental health professional's efforts to resolve the matter without the use of force. With the consent of the mental health professional, the interview should be recorded on videotape or audiotape.

 4.3 The Department's Custody use of force policies should provide that in situations involving an acutely psychotic or other severely mentally disabled inmate, following an initial burst of a chemical agent that has not produced compliance, the Department should discontinue the further use of chemical agents if the inmate is sufficiently mentally disabled that he or she cannot conform his or her behavior to commands.

 4.4 The Department's Custody use of force policies should provide that in situations involving a mentally ill inmate who does not present an obvious danger to himself or herself or to anyone else, and who refuses to exit his or her cell without force, there should be a reasonable "cooling off" period after all other non-force attempts at

resolution have been tried and failed. Following this "cooling off" period, either a mental health professional, Department supervisor, or watch commander should again try to gain compliance without the use of force.

4.5    The Department's Custody use of force policies should provide that whenever a planned use of force is precipitated by a medical or mental health provider's order (*e.g.*, a cell extraction following a psychiatrist's order that an inmate be moved for treatment purposes), the prescribing provider should be notified and allowed an opportunity to intervene in an effort to de-escalate the situation and to determine if the provider's order should remain in effect. If the prescribing provider is unavailable, then another medical or mental health provider should be notified to carry out these duties.

4.6    The Department should provide a minimum of 32 hours of Custody-specific, scenario-based, skill development training to all Deputy Sheriffs assigned to the Men's Central Jail, the Twin Towers Correctional Facilities, or the Inmate Reception Center, or who are assigned to work with mentally ill inmates at the Century Regional Detention Facility (the "Deputies in the Designated Facilities") on Crisis Intervention and Conflict Resolution with eight (8) hours of refresher training every other year.

4.7    The Department should provide a minimum of eight (8) hours of custody specific, scenario based, skill development training on identifying and working with mentally ill inmates to all existing Custody personnel with a four (4) hour refresher course every other year. For Deputies in the Designated Facilities, this training may be a part of the 32 to 40 hours of Crisis Intervention and Conflict Resolution training described above.

4.8    The Department should provide a minimum of eight (8) hours of custody specific, scenario-based, skill development training on identifying and working with mentally ill inmates to all new members as part of the Jail Operations Continuum .

4.9    The Department should provide a minimum of 32 hours of custody specific, scenario-based, skill development training in Crisis Intervention and Conflict Resolution to new Department members in the Academy or in Custody before they are assigned to any jail facilities.

4.10    Within six months following the completion of the implementation of Recommendations 4.5 through 4.9, the Department should complete an evaluation regarding the effectiveness of the Crisis Intervention and Conflict Resolution training and should submit a written report to the Board of Supervisors recommending whether or not the training should be extended to the remaining Deputies in Custody Operations and/or to Custody Assistants.

**5.    Data Tracking and Reporting of Force Incidents (expect to be completed by June 30, 2015):**

5.1    The Department should track the status of all investigations, reviews and evaluations of all Custody use of force incidents and allegations of force to ensure that investigations, reviews, and evaluations are completed appropriately and timely. As soon

as practical, but no later than the end of the shift during which the use of force incident or allegation of force occurred, the supervisor or Internal Affairs investigator assigned to conduct the initial investigation should enter the use of force incident or the force allegation into a Department database with a summary description of the force incident or allegation and the Category of the force incident as it is known at the time. The database should be updated promptly to reflect any changes in the status of the investigation, review or evaluation and changes in the Category of the force incident.

      5.2     Evaluations of force incidents by Unit Commanders should be reviewed as follows:

      All Category 1 Force cases and Category 2 cases not that do not meet the criteria for a roll-out by the Custody Force Review Team should be reviewed by a least one Commander in Custody Operations;

      All allegations of force should be reviewed by at least two Commanders in Custody Operations;

      Category 2 Force cases that meet the criteria for a roll-out by the Custody Force Review Team should be reviewed by the Custody Force Review Committee; and

      Category 3 Force cases should be reviewed by the Executive Force Review Committee.

      5.3     The Department's Custody use of force policies should provide that any unexplained tactical decisions pertaining to uses of force or any discrepancies among witnesses and/or evidence should be referred by the reviewing Commander(s) or committee in writing back to the incident investigator for additional investigation and then reported back in writing to the reviewing Commander(s) or committee.

**6.     Inmate Grievances and Other Complaints of Excessive Force (expected to be completed by December 31, 2015):**

      6.1     Inmate grievances and inmate requests should be reported on separate forms, whether on paper or electronically.

      6.2     The Department must ensure that grievance forms are reasonably available to inmates at all times.

      6.3     The inmate grievance form should have a prominent box that says, "Emergency Grievance" with boxes to check for "yes" or "no" and a space for a description of the emergency. When an inmate requests a grievance form for an emergency grievance, the inmate should be given the form immediately.

      6.4     The Department's inmate grievance forms should include "use of force" as a specific category of "grievances against staff" for inmates to check to ensure that such grievances are brought to the Unit Commanders' attention and properly handled.

6

6.5     The Department's inmate grievance forms should include "retaliation" and "harassment" as specific categories of "grievances against staff" for inmates to check to ensure that such grievances are brought to the Unit Commanders' attention and properly handled.

6.6     The Department's inmate grievance forms should have a check box indicating whether the complaint was upheld or denied and a statement next to the "denied" box that the inmate has the right to appeal and how long he or she has to appeal.

6.7     The Custody Division Manual should provide that Department members should give all grievances marked "emergency" to a supervisor as soon as possible. Supervisors should review all emergency grievances as soon as possible to determine if the situation requires immediate action to protect the life or safety of the inmate and, if so, should immediately notify the Watch Commander/Shift Supervisor of the non-medical emergency. The Watch Commander/Shift Supervisor should immediately confirm that the non-medical emergency exists, take such action as is necessary to protect the inmate, and as soon as time and circumstances permit provide the inmate with a written response documenting what action was taken to address the emergency.

6.8     If the Department determines that a non-medical emergency does not exist, it should notify the inmate as soon as practical that the grievance will be handled as a non-emergency grievance and document why it was determined not to be an emergency.

6.9     All emergency grievances should be forwarded to the Inmate Grievance Coordinator along with information about the decision made and when the inmate was notified about that decision. The Inmate Grievance Coordinator should review the emergency grievance to determine if it was handled in accordance with policy and should notify the Unit Commander if it was not handled properly.

6.10    Grievances should be collected from the locked grievance boxes on each living unit no less frequently than once per day. The time of the collection and the person doing the collection should be recorded in the living unit log and in a separate grievance collection log maintained by the Inmate Grievance Coordinator. Grievances should be reviewed by the Department within 24 hours of the collection of the grievance.

6.11    The Custody Division Manual should provide that failing to provide an inmate with a grievance form when requested, failing to respond appropriately to a grievance, destroying or concealing grievances, attempting to intimidate an inmate from filing a grievance, and retaliating against an inmate who has filed a grievance, may each be a cause for disciplinary action.

6.12    All inmate grievances should be entered into and tracked in an inmate grievance database that reflects the nature and status of the grievance, and personnel responsible for the Department's handling of the grievance.

6.13    The Inmate Grievance Coordinator should regularly track the Department's handling of inmate grievances to ensure that the investigations are completed timely and reasonably, and that inmates are notified of the results of the investigations.

6.14    The Inmate Grievance Coordinator should provide a monthly report to Unit Commanders and senior management in Custody Operations of the status of inmate grievances, the timeliness of the Department's investigations of the grievances, responses to grievances and grievance appeals, and notifications to inmates of the results of the investigations and grievance appeals.

6.15    The Inmate Grievance Coordinator should analyze inmate grievances monthly to identify any problematic trends and should provide that analysis in a monthly report to Unit Commanders and senior management in Custody Operations.

6.16    The Department should establish a centralized unit with a sworn supervisor, custody assistants and civilian personnel to be responsible for collecting the inmate grievances and requests from inmates or from secured boxes; reviewing and categorizing the grievances and requests; forwarding them for investigation or handling; and responding to inmates. Department personnel should be co-located in the Twin Towers and other personnel should be co-located in the Pitchess Detention Center.

6.17    There should be a 30-day deadline for filing use of force grievances by inmates.

6.18    There should be no deadline for filing Prison Rape Elimination Act ("PREA") grievances by inmates

6.19    The Department should adhere to the requirements in Custody Division Manual 5-12/000.00 and 5-12/010.00 and respond to inmate grievances "within 15 calendar days after the submission of the complaint," absent exceptional circumstances, which must be documented.

6.20    Inmates should have 15 days from receipt of a denial of a grievance to file an appeal of the grievance; however, if the inmate receives the denial while in punitive segregation, the inmate should have 15 days after release from segregation to file the appeal.

7.    **Inmate Supervision, Staff Inmate Relations, and Communication with Prisoners (expected to be completed by June 30, 2015):**

7.1    Inmates who submit grievances should be advised that a Conflict Resolution Meeting under the Department's Conflict Resolution policy in 5-12/000.00 (Inmate Requests for Service and Complaints (Non-Medical/Non-Mental Health)) is voluntary for both the inmate and the involved personnel to address a grievance instead of the Department conducting a personnel investigation and making a finding to resolve the grievance. If the Conflict Resolution meeting is successful, the grievances should be

marked "closed through conflict resolution" in the grievance database and properly documented.

7.2     An inmate should be advised of the results of the Department's investigation of the inmate's grievance against personnel, but not any sanction imposed, within 10 days of the Department's adjudication of the grievance.

7.3     The Department should ensure that there are adequate avenues for constructive prisoner-staff communication, such as Town Hall meetings.

**8.     Retaliation Against Inmates (expected to be completed by June 30, 2015):**

8.1     The Department policies should prohibit personnel from retaliating against inmates.

8.2     The Department should combine the "Complaints of Retaliation" provisions in 5-12/000.00 and 5-12/010.00 into one section in the Custody Division Manual to ensure that there is a single, consistent policy on the handling of such grievances regardless of who receives the grievance and who is the subject of the grievance.

8.3     Unit Commanders' evaluations of investigations of inmate grievances or complaints that Department members used any level of force to retaliate against inmates should be reviewed by the Custody Force Review Committee to assess the correctness of the evaluations.

**9.     Security Practices (expected to be completed by June 30, 2015):**

9.1     The Department should conduct and document cell checks of inmates in general population cells as well as in segregation and protective custody units at least every 30 minutes on an irregular schedule. The Department should conduct and document cell checks of inmates in the high observation units and the forensic inpatient units at least every 15 minutes on an irregular schedule. All cell checks should be conducted by an officer at the cell front. Should the Department and/or the County reach an agreement with the United States Department of Justice regarding cell checks at the jails that provides for a schedule of checks in general population, segregation, and protective custody units, then those provisions will supersede this provision.

9.2     The Department's Custody use of force policies should provide that, following a use of force or interaction with a recalcitrant inmate, the staff member escorting an inmate to medical, holding or segregation should not be the same staff member involved in the confrontation or use of force unless there is no other staff member reasonably available to escort the inmate.

9.3     The Department's Custody use of force policies should provide that Department members have a duty to protect inmates and to take appropriate steps to intervene in inmate-on-inmate violence as soon as it is reasonably safe to do so.

**10.     Management Presence in Housing Units (expected to be completed by June 30, 2015):**

10.1     Senior managers from the rank of Unit Commanders and above should be required to periodically tour the jail facilities, including nights and weekends.

10.2     Housing units should document visits to jail facilities by Department managers (above the rank of Sergeant) in electronic records or visitor logs.

**11.     Management Review of Force Incidents and Data (expected to be completed by June 30, 2015):**

11.1     The Custody Force Rollout Team's involvement in reviewing the correctness of the Unit Commanders' evaluations of the force incidents should not delay the Department's investigation of force incidents.

**12.     Reviews and Investigations of Use of Force Incidents (expected to be completed by June 30, 2015):**

12.1     All custody Sergeants should receive an initial 16-hour block of training in conducting use of force investigations, reviewing use of force reports, and the Department's new protocols for conducting such investigations, and a two (2) hour refresher course every year.

12.2     Inmate witnesses to force incidents should be asked to be interviewed, and interviewed, away from other inmates.

12.3     No Department member involved in the use of force incident should be present for, or participate in, the request for interview or the interview itself absent exigent circumstances, which must be justified in the supervisors' subsequent reports.

12.4     Force investigations should not be conducted by the direct supervisor of the Department members involved in the use of force incident if the supervisor directed, participated in, or planned the use of force.

12.5     Use of force investigation packages should have a standard order and format.

**13.     Disposition of Use of Force Reviews and Staff Discipline Issues (expected to be completed by June 30, 2015):**

13.1     The Department should have a firm policy of zero tolerance for acts of dishonesty or failure to report uses of force. If the Department does not terminate a member who is found to have been dishonest, used excessive force, or violated PREA, the Department should document the reasons why the member was not terminated and, in addition to the discipline that is imposed, the Department should place the member on a

10

formal and adequate performance review program and closely monitor the member's performance.

13.2    All findings of dishonesty, excessive force, and PREA violations by Department members in Custody Operations, the punishment imposed by the Department, and the reasons why any member was not terminated for the acts of dishonesty, excessive force, or violation of PREA should be reported to the Office of Inspector General each quarter.

**14.    Criminal Referrals and External Reviews of Use of Force Incidents (expected by June 30, 2015):**

14.1    Prior to submission, all referrals of an inmate for criminal prosecution for assaulting a staff member, or related charges, arising from an incident involving the use of force by Department members, should be reviewed by a Unit Commander to ensure that the charges are not being brought to help justify the staff use of force.

14.2    The Department should timely forward to the District Attorney's office incidents of officer misconduct that may amount to criminal violations.

**15.    Documentation and Recording of Force Incidents (expected to be completed by June 30, 2015):**

15.1    The Department's Custody use of force policies should provide that every Department member who uses or assists in the use of Reportable Force, and every supervisor who directed that force be used, should be required to complete a separate and independent written report before going off duty, unless the Watch Commander/ Supervising Lieutenant determines that there are exigent circumstances, such as the Department member's physical or medical condition, that impair the Department member's ability to complete the report before going off duty, in which case the report should be completed as soon as possible and the reasons for the delay should be documented.

15.2    The Department's Custody use of force policies should provide that every Department member who witnesses the use of force by another Department member should be required to prepare an independent written report unless the Watch Commander/Supervising Lieutenant specifically designates which witnesses will write reports because there are a large number of Department members who witnessed the same incident.

15.3    The Department's Custody use of force policies should provide that a Department member who uses force should describe in his or her written report the force used by any other Department member in response to an inmate's actions during the incident as well as his or her own force.

15.4    The Department's Custody use of force policies should provide that a Department member using force or witnessing force should describe in his or her written

11

report any visible or apparent injuries to Department members, inmates or other persons involved in a use of force.

15.5    The Department's Custody use of force policies should provide that a Department member who wants to make any clarifications or changes after viewing a video of a force incident should be required to either prepare a supplemental report or specifically note any changes to the Department member's initial report that were made after viewing the video of the force incident.

15.6    The Department's Custody use of force policies should provide that, to the extent practical, Department members should be separated until they have completed their use of force reports and/or witness reports on use of force incidents.

15.7    Watch Commanders/Supervising Lieutenants and Unit Commanders should review Department members' force reports to ensure that they reflect each member's individual perceptions and recollections of the events and that they do not have common wording or phrasing that would suggest inappropriate collaboration on force reports.

**16.    Health Care Assessments and Documentation Following Force Incidents (expected to be completed by June 30, 2015):**

16.1    The Department should require a documented medical assessment of each inmate upon whom force is used as soon as practical after the force incident.

16.2    With reasonable accommodations for privacy, the Department should require supervisors investigating force incidents to photograph any injury, swelling or redness sustained by each Department member who asserts orally or in a written force report that the Department member was assaulted by an inmate or note the absence of any injury, swelling or redness in the force package.

16.3    Medical staff treating an injured inmate should be required to report to the Department any injuries related to a use of force or an allegation by the inmate of a use of force.

**17.    Use of Restraints (expected to be completed by June 30, 2015):**

17.1    Instead of the introductory paragraph in 5-03/130.00 (Medically Ordered Restraint Devices), the Custody Force Manual should have a separate section that sets forth the general principles governing the use of restraints as follows: (1) restraints are either security restraints or medically ordered restraints; (2) restraints should not be used to punish inmates; (3) restraint devices should only be used when there is a potential threat of physical harm, destruction of property, or escape, or to escort or transport inmates; (4) caution must be used to guard against the risk of medical distress; (5) the longer the restraint, the greater the risk; (6) restraints should never be placed on the head, nose, or neck of an inmate or in any other manner that may interfere with breathing or blood flow; (7) in-cell security restraints should not be used except in emergency circumstances and for the shortest period of time possible; (8) inmates should not be

12

restrained to fixed objects unless the object is designed for that purpose, and then only for the shortest period of time possible; (9) choke-hold type restraints, including carotid restraints, are prohibited absent life threatening or high risk assaultive situations where no other means of controlling the inmate is available; (10) it is the responsibility of Department members approving or applying restraints (other than restraints used to escort or transport inmates) to ensure that there is frequent, careful, and documented monitoring of the condition of the inmate(s) in restraints; and (11) medical assistance should be summoned immediately whenever an inmate appears to be experiencing medical distress or complains of difficulty breathing.

17.2    The Department should combine and conform all provisions related to restraints on pregnant inmates into one section in the Custody Division Manual (by combining the *Restraining Pregnant Inmates* section under 5-03/130.00 (Medically Ordered Restraint Devices) and Section 5-03/115 (Pregnant Inmates)).

17.3    The Department's Custody use of force policies should provide that a medical professional should examine an inmate as soon as the inmate is placed in the Safety Chair with a use of force, or if the inmate struggles against the chair restraints, and should perform a vitals check every hour while the inmate is in the Safety Chair.

17.4    The Department's Custody use of force policies should provide that Department members should check at least every 20 minutes on the welfare of any inmate in restraints other than restraints used in escorting or transporting inmates, and verify and document that the inmate is not in undue pain and that the restraints are not creating injury or obvious medical problem.

17.5    The Department's Custody use of force policies should provide that Department members should avoid, to the extent possible under the circumstances, placing their weight on an inmate's back or shoulders in a way that impairs the inmate's breathing.  Once an inmate is controlled, he or she should be placed on his or her side to minimize breathing problems and the risk of medical distress or positional asphyxia. Inmates carried by members, or by gurney or stretcher, should be placed on their side if practical.

17.6    The Department's Custody use of force policies should provide that any inmate who is subjected to a multi-point restraint or who is otherwise restrained in a supine position for an extended period of time should be observed continuously so that if the inmate is on his or her back, the inmate does not vomit and asphyxiate, and if on his or her stomach does not stop breathing because of his or her body weight compressing the chest.  Medical staff should be called to the scene at the first sign of such distress.

17.7    The Department's Custody use of force policies should provide that multi-point restraints may only be ordered where an inmate poses an immediate threat of serious harm to himself or others and, in the absence of exigent circumstances, such restraints may only be ordered by a medical or mental health professional.

17.8    The Department's Custody use of force policies should provide that multi-point restraints may only be used until the inmate no longer poses such an immediate threat of serious harm as determined by a medical or mental health professional, and the continued use of the multi-point restraint should be assessed by a medical or mental health professional at least every hour to determine if the inmate continues to pose an immediate threat of serious harm to himself or others.

17.9    The Department's Custody use of force policies should provide that the decision to use a multi-point restraint may be made by a shift supervisor if a medical or mental health professional is not available and there is no alternative such as a safety chair, in which case the supervisor should be responsible for monitoring the inmate's condition and determining whether to release the inmate from the multi-point restraint.

17.10    The Department's Custody use of force policies should provide that medication may not be used solely for security purposes.

**18.    Adequate Staffing and Staff Rotations (expected to be completed by June 30, 2015):**

18.1    The Department should  maintain its Custody-wide rotation policies and rotate Department members at least as often as provided in those policies.

18.2    The Department should audit semi-annually each unit's compliance with its rotation policies.

**19.    Early Warning System Related to Use of Force (expected to be completed by December 31, 2015):**

19.1    The Department should develop a formal Early Warning System to identify potentially problematic Department members based upon objective criteria such as number of force incidents, inmate grievances, allegations of misconduct, performance reviews, and policy violations.  This system should be in addition to subjective assessments and personnel reviews by management.

19.2    The Compliance Lieutenants in each facility should review monthly the reports generated by the Department's Early Warning System to identify potentially problematic Department members and promptly notify the Department member's Unit Commander and the Assistant Sheriff for Custody Operations in writing.

19.3    Unit Commanders should, in consultation with the appropriate Chief, determine whether a non-disciplinary performance mentoring program is appropriate for Department members identified through the Early Warning System and, if so, place the Department member in the program with specific performance metrics.  If the Department decides not to place a Department member identified through the Early Warning System on a performance mentoring program, it should document the reasons for the decision.

**20.    Protocols for Planned Uses of Force (expected to be completed by June 30, 2015):**

20.1    The Custody Force Manual should indicate that there are two types of force: Reactive Force and Planned Force, and it should eliminate the definitions of rescue force, directed force, and medical assistance force, which do not reflect the Department's force policies or provide guidance in the use of force

20.2    Reactive Force should be defined as force that is used in response to an immediate threat to the safety of any Department member or inmate, the immediate threat of the destruction of a substantial amount of property, or the immediate threat of an escape, and when there is no time to plan or wait for assistance.

20.3    Planned Force should be defined to be all force other than Reactive Force. With respect to Planned Force, the Department's policies should require, time and circumstances permitting, that: (1) a medical staff person be on scene or, if impractical or unsafe, on stand by; (2) the event be video recorded; (3) a supervisor be on scene to direct the Use of Force; and (4) Shift Supervisor approval for the Use of Force.

**21.    Organizational Culture Related to Use of Force:**

21.1    The Department's policies should provide that the Department will not transfer or assign a staff member to Custody as a formal or informal sanction for problem deputies.

# EXHIBIT Q



**STATEMENT OF PROCEEDINGS FOR THE**

**REGULAR MEETING OF THE BOARD OF SUPERVISORS**

**OF THE COUNTY OF LOS ANGELES HELD IN ROOM 381B**

**OF THE KENNETH HAHN HALL OF ADMINISTRATION**

**500 WEST TEMPLE STREET, LOS ANGELES, CALIFORNIA 90012**

**Wednesday, November 12, 2014**

**9:30 AM**

Present:     Supervisor Molina, Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe

Video Link for the Entire Meeting  (03-1075)

***Attachments:***     Video Transcript

Invocation led by Indra Zuno, Tarzana (3).

Pledge of Allegiance led by Tiffany Apodaca, Former Petty Officer, United States Navy, Compton (2).

I.  PRESENTATIONS/SET MATTER

Presentation of scroll in honor of declaring November 2014 as National Adoption Awareness Month, as arranged by Supervisor Yaroslavsky.

Presentation of scrolls to members of the Third District executive secretary staff, in grateful appreciation for their outstanding service to constituents of the Third Supervisorial District, as arranged by Supervisor Yaroslavsky.

Presentation of scroll to outgoing Sheriff John Scott who has served with distinction and honor during his ten-month tenure as Sheriff of Los Angeles County, as arranged by Supervisor Knabe.

Presentation of scrolls to the team of survivor-advocates, in recognition of their leadership at the County's 3rd Annual Empowerment Conference for the victims of child sex trafficking, as arranged by Supervisor Knabe.

Presentation of awards to various County Departments, as winners of the 2014 California State Association of Counties Challenge Awards Competition, as arranged by Supervisor Knabe.

Presentation of the 2014 California State Association of Counties Circle of Service Award to William T Fujioka, as arranged by Supervisor Knabe.

Presentation of scroll to Monsignor Felix S. Diomartich, in recognition of his 100th birthday, as arranged by Supervisor Antonovich.

Presentation of scroll to the Los Angeles County Department of Parks and Recreation, in recognition of the 60th Anniversary of the Underwater Unit, as arranged by Supervisor Antonovich.

Presentation of pet(s) to the television audience for the County's Pet Adoption Program, as arranged by Supervisor Antonovich.  (14-5099)

**S-1.**     <u>11:00 a.m.</u>

Report by the District Attorney with a comprehensive assessment of mental health diversion programs used by the County; and the California Victim Compensation and Victim-Witness Assistance Programs, as requested at the meetings of May 6, 2014 and July 29, 2014. (Continued from the meetings of 9-9-14 and 10-7-14)   (14-3165)

**Ezra Gale, Jessica Farris, Reverend Larry Foy, Reverend Peter Laarman, Luis Garcia y Ayvens, Sofia Quinones, Mary Sutton, Kwazi Nkrumah, Jayda Rasberry, Jas Wade and other interested persons addressed the Board.**

**Jackie Lacey, District Attorney, Donna Wills, Director of Victim Witness Assistance Program, Lydia Bodin, Deputy in Charge, Bureau of Prosecution Support Operations, District Attorney's Office, Winston Peters, Assistant Public Defender, Jim Smith, Chief of Police, City of Monterey Park, Dr. Robin Kay, Deputy Director, Department of Mental Health, and Wesley Ford, Director of Substance Abuse Prevention and Control, Department of Public Health, addressed the Board and responded to questions.**

**Supervisor Antonovich made a motion that the Board:**

1. **Request the District Attorney to work with the Chief Executive Officer to develop a comprehensive Victims Services Strategic Plan and report back to the Board at the same time the Comprehensive Diversion Plan for the Mentally Ill report is presented, including a fiscal analysis and the following components:**

   a. **Establishing new victims sites, especially in Sheriff's stations;**

   b. **Expanding services to victims of non-violent crimes, while continuing to prioritize services for victims of violence and threats of violence;**

   c. **Increasing service levels at existing sites where necessary;**

   d. **Adding specialized advocacy units, including for victims of hate crimes, human trafficking and financial crimes;**

e. Increasing the staff within the Restitution Enhancement Program; and

f. Identifying gaps in services, which can be provided by community-based organizations.

2. Direct the Executive Director of the Countywide Criminal Justice Coordination Committee to:

a. Establish a sub-committee to make recommendations on the formation of a local restitution collection system with authority to collect restitution from offenders sentenced under Penal Code Section 1170(h) to be chaired by a representative from the District Attorney's Office and include appropriate representatives as necessary, including the Sheriff's Department, Probation Department, Department of Auditor-Controller and the Treasurer and Tax Collector;

b. Explore opportunities in which the County and/or the court can mitigate financial impacts on victims emanating from participating in the criminal justice process; and

c. Provide the report to the Board on the above at the same time the District Attorney's report is due.

After discussion, on motion of Supervisor Antonovich, seconded by Supervisor Knabe, the District Attorney's reports were received and filed; and the Board took the following actions:

1. Requested the District Attorney to work with the Chief Executive Officer to develop a comprehensive Victims Services Strategic Plan and report back to the Board at the same time the Comprehensive Diversion Plan for the Mentally Ill report is presented, including a fiscal analysis and the following components:

a. Establishing new victims sites, especially in Sheriff's stations;

b. Expanding services to victims of non-violent crimes, while continuing to prioritize services for victims of violence and threats of violence;

    c. Increasing service levels at existing sites where necessary;

    d. Adding specialized advocacy units, including for victims of hate crimes, human trafficking and financial crimes;

    e. Increasing the staff within the Restitution Enhancement Program; and

    f. Identifying gaps in services which can be provided by community-based organizations.

2. Directed the Executive Director of the Countywide Criminal Justice Coordination Committee to:

    a. Establish a sub-committee to make recommendations on the formation of a local restitution collection system with authority to collect restitution from offenders sentenced under Penal Code Section 1170(h) to be chaired by a representative from the District Attorney's Office and include appropriate representatives as necessary, including the Sheriff's Department, Probation Department, Department of Auditor-Controller and the Treasurer and Tax Collector;

    b. Explore opportunities in which the County and/or the court can mitigate financial impacts on victims emanating from participating in the criminal justice process; and

    c. Provide the report to the Board on the above at the same time the District Attorney's report is due.

        **Ayes:**    5 -    Supervisor Molina, Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe

**_Attachments:_**    Report
                  Motion by Supervisor Antonovich
                  Report
                  Video
                  Audio

Board of Supervisors                Statement Of Proceedings                November 12, 2014

## II.  SPECIAL DISTRICT AGENDAS

### STATEMENT OF PROCEEDINGS FOR THE MEETING OF THE COMMUNITY DEVELOPMENT COMMISSION OF THE COUNTY OF LOS ANGELES WEDNESDAY, NOVEMBER 12, 2014 9:30 A.M.

**1-D.**    Recommendation: Approve minutes of the meetings of the Community Development Commission for the month of September 2014.  (14-5016)

**On motion of Supervisor Yaroslavsky, seconded by Supervisor Knabe, this item was approved.**

| | | |
|---|---|---|
| **Ayes:** | 4 - | Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe |
| **Absent:** | 1 - | Supervisor Molina |

*Attachments:*        Board Letter

## STATEMENT OF PROCEEDINGS FOR THE MEETING OF
## THE HOUSING AUTHORITY
## OF THE COUNTY OF LOS ANGELES
## WEDNESDAY, NOVEMBER 12, 2014
## 9:30 A.M.

**1-H.**    Recommendation: Approve minutes of the meetings of the Housing Authority for the month of September 2014.  (14-5015)

**On motion of Supervisor Antonovich, seconded by Supervisor Ridley-Thomas, this item was approved.**

|  |  |  |
|---|---|---|
| **Ayes:** | 4 - | Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe |
| **Absent:** | 1 - | Supervisor Molina |

_Attachments:_    Board Letter

---

STATEMENT OF PROCEEDINGS FOR THE MEETING OF
THE REGIONAL PARK AND OPEN SPACE DISTRICT
OF THE COUNTY OF LOS ANGELES
WEDNESDAY, NOVEMBER 12, 2014
9:30 A.M.

**1-P.**    Recommendation: Allocate $250,000 in Specified Excess Funds available to the First Supervisorial District, pursuant to the Safe Neighborhood Parks Proposition of 1996, to the Mountains Recreation and Conservation Authority (MRCA) for a grant to North East Trees (NET) for the proposed Hazard Park Riparian Restoration Project (Project) (1); authorize the Director of Parks and Recreation, in his capacity as the Director of the Regional Park and Open Space District, to award a grant to NET for the proposed Project, after the MRCA assigns its right to apply to NET, when applicable conditions have been met, and administer the grant as of the date of this action and pursuant to guidelines in the Procedural Guide for Specified, Per Parcel, and Excess Funds Projects, otherwise the funds shall remain in the Excess Funds account; and find that the proposed Project is exempt from the California Environmental Quality Act.    (14-5004)

**On motion of Supervisor Ridley-Thomas, seconded by Supervisor Knabe, this item was approved.**

|  | | |
|---|---|---|
| **Ayes:** | 4 - | Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe |
| **Absent:** | 1 - | Supervisor Molina |

*Attachments:*    Board Letter

2-P.    Recommendation: Approve an alternative plan of expenditure to reallocate $178,500 in unspent Specified Funds, pursuant to the Safe Neighborhood Parks Proposition of 1996 and allocate $150,000 in County Excess Funds available to the First Supervisorial District, to the Department of Parks and Recreation for a grant to the San Gabriel Valley Conservation Corps (SGVCC) for the proposed Whittier Narrows Tree Planting Project (Project) (1); authorize the Director of Parks and Recreation, in his capacity as the Director of the Regional Park and Open Space District, to award a grant to SGVCC for the proposed Project, after the Department assigns its right to apply to the SGVCC, if applicable conditions have been met, and administer the grant as of the date of this action and pursuant to guidelines in the Procedural Guide for Specified, Per Parcel, and Excess Funds Project, otherwise the funds shall remain in the Assessment and Excess Funds accounts; and find that the proposed Project is exempt from the California Environmental Quality Act. (14-5005)

**On motion of Supervisor Ridley-Thomas, seconded by Supervisor Knabe, this item was approved.**

Ayes:    4 -    Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe

Absent:    1 -    Supervisor Molina

*Attachments:*    Board Letter

**Board of Supervisors**                    **Statement Of Proceedings**                    **November 12, 2014**

**3-P.**    Recommendation: Allocate $500,000 in Cities Excess Funds available to the First Supervisorial District, pursuant to the Safe Neighborhood Parks Proposition of 1996, to the City of Los Angeles for a grant amendment to Amigos de Los Rios for the proposed Wellness Center Park/Fitness Zone Project (Project) located at the University of Southern California Medical Center in Los Angeles (1); authorize the Director of Parks and Recreation, in his capacity as the Director of the Regional Park and Open Space District, to award a $500,000 grant amendment to Amigos de Los Rios for the proposed Project, after the City assigns the right to apply to Amigos de Los Rios, if applicable conditions have been met, and administer the grant amendment as of the date of this action and pursuant to procedures in the Procedural Guide for Specified, Per Parcel, and Excess Funds Project, otherwise funds shall remain in the Excess Funds account.   (14-5006)

**On motion of Supervisor Ridley-Thomas, seconded by Supervisor Knabe, this item was approved.**

|  |  |  |
|---|---|---|
| **Ayes:** | 4 - | Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe |
| **Absent:** | 1 - | Supervisor Molina |

*Attachments:*        Board Letter

**4-P.**    Recommendation: Allocate $1,000,000 in unspent Specified Excess Funds available to the First Supervisorial District, pursuant to the Safe Neighborhood Parks Proposition of 1996, to the Mountains Recreation and Conservation Authority (MRCA) for a grant to the Los Angeles County Metropolitan Transportation Authority (Metro) for the proposed Los Angeles Plaza Park General Improvements Project (Project) (1); authorize the Director of Parks and Recreation, in his capacity as the Director of the Regional Park and Open Space District, to award a grant to Metro for the proposed Project, after the MRCA assigns its right to apply to Metro, if applicable conditions have been met, and administer the grant as of the date of this action and pursuant to procedures in the Procedural Guide for Specified, Per Parcel, and Excess Funds Projects, otherwise the funds shall remain in the Excess Funds account; and find that the proposed Project is exempt from the California Environmental Quality Act.   (14-5007)

**On motion of Supervisor Ridley-Thomas, seconded by Supervisor Antonovich, this item was approved.**

>         **Ayes:**    4 -    Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe
>
>         **Absent:**    1 -    Supervisor Molina

*Attachments:*        Board Letter
                    Video
                    Audio

**Board of Supervisors**                    **Statement Of Proceedings**                    **November 12, 2014**

5-P.    Recommendation: Allocate $100,000 in County Excess Funds available to the First Supervisorial District, pursuant to the Safe Neighborhood Parks Proposition of 1996, to the Department of Parks and Recreation for the proposed Benjamin Dominguez Concrete Play Sculptures General Improvements Project (Project) at Whittier Narrows Recreation Area (1); authorize the Director of Parks and Recreation, in his capacity as the Director of the Regional Park and Open Space District, to award a grant to the Department, when applicable conditions have been met, and administer the grant as of the date of this action and pursuant to procedures in the Procedural Guide for Specified, Per Parcel, and Excess Funds Projects, otherwise the funds shall remain in the Excess Funds account; and find that the proposed Project is exempt from the California Environmental Quality Act. (14-5008)

**On motion of Supervisor Ridley-Thomas, seconded by Supervisor Knabe, this item was approved.**

**Ayes:**    4 -    Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe

**Absent:**    1 -    Supervisor Molina

*Attachments:*    Board Letter

---

*County of Los Angeles*                    *Page 12*

**6-P.**    Recommendation: Allocate $333,000 in Cities Excess Funds available to the Third Supervisorial District, pursuant to the Safe Neighborhood Parks Proposition of 1996, to the City of Los Angeles for a grant to the Los Angeles River Revitalization Corporation (LARRC) for the proposed La Kretz Crossing Bridge Project (Project) (3); authorize the Director of Parks and Recreation, in his capacity as the Director of the Regional Park and Open Space District, to award a grant to LARRC, after the City assigns its right to apply for the funds to LARRC, when applicable conditions have been met, and administer the grant as of the date of this action and pursuant to procedures in the Procedural Guide for Specified, Per Parcel, and Excess Funds Projects, otherwise the funds shall remain in the Excess Funds account, certify that the Board, as a responsible agency under the California Environmental Quality Act (CEQA), has independently considered and reached its own conclusions regarding the environmental effects of the proposed Project and the Mitigated Negative Declaration and Mitigation Monitoring Program adopted by the City, as lead agency, determine that the documents adequately address the environmental impacts of the proposed Project, and find that the Board has complied with the requirements of CEQA with respect to the process for a responsible agency, and adopt by reference the City's Mitigated Negative Declaration and Mitigation Monitoring Program.   (14-5056)

**On motion of Supervisor Ridley-Thomas, seconded by Supervisor Antonovich, this item was adopted.**

>   **Ayes:**    4 -    Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe
>
>   **Absent:**   1 -    Supervisor Molina

*Attachments:*      Board Letter
                    Video
                    Audio

**7-P.**    Recommendation: Approve minutes of the meetings of the Regional Park and Open Space District for the month of September 2014.  (14-5018)

**On motion of Supervisor Ridley-Thomas, seconded by Supervisor Knabe, this item was approved.**

>   **Ayes:**    4 -    Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe
>
>   **Absent:**   1 -    Supervisor Molina

*Attachments:*      Board Letter

### III.  BOARD OF SUPERVISORS    1 - 7

1.    Recommendations for appointment/reappointment to Commissions/ Committees/Special Districts (+ denotes reappointments): **Documents on file in the Executive Office.**

Supervisor Yaroslavsky
Simon Pastucha+, Small Craft Harbor Design Control Board  (14-5072)

**On motion of Supervisor Antonovich, seconded by Supervisor Yaroslavsky, this item was approved.**

|  |  |  |
|---|---|---|
| **Ayes:** | 4 - | Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe |
| **Absent:** | 1 - | Supervisor Molina |

2.    Recommendation to approve and authorize the Chief Executive Officer to execute the following agreements: **Documents on file in the Executive Office.**

Supervisor Molina
Mariachi Plaza Festival Foundation in the amount of $1,000
Mujeres de la Tierra in the amount of $1,000  (14-5033)

**On motion of Supervisor Molina, seconded by Supervisor Yaroslavsky, this item was duly carried by the following vote:**

|  |  |  |
|---|---|---|
| **Ayes:** | 3 - | Supervisor Molina, Supervisor Yaroslavsky and Supervisor Knabe |
| **Abstentions:** | 2 - | Supervisor Ridley-Thomas and Supervisor Antonovich |

3.  Recommendation as submitted by Supervisor Yaroslavsky: Authorize the Director of Public Works to enter into an Agreement with LA River Revitalization Corporation (LARRC) to contribute $250,000 toward costs of the proposed Atwater Landing Project (Project) that are eligible to be funded from Measure R Local Return funds, the necessary funds are made available from the Third Supervisorial District's Road Construction Program included in the Measure R Local Return Fund Fiscal Year 2014-15 Budget; and find that the recommended authorization for the proposed Project is not a project pursuant to Section 15378(b) of the California Environmental Quality Act (CEQA) because it is an organizational or administrative activity of government and involves the creation of a government funding mechanism which does not commit to any specific project which may result in a potentially significant physical impact on the environment, the City of Los Angeles, as lead agency under CEQA, and LARRC, would be required to complete the environmental review process and make any necessary findings under CEQA.  (14-5100)

    **On motion of Supervisor Yaroslavsky, seconded by Supervisor Antonovich, this item was duly carried by the following vote:**

    | | | |
    |---|---|---|
    | **Ayes:** | 3 - | Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe |
    | **Abstentions:** | 1 - | Supervisor Ridley-Thomas |
    | **Absent:** | 1 - | Supervisor Molina |

    *Attachments:*    Motion by Supervisor Yaroslavsky

4.  Recommendation as submitted by Supervisor Yaroslavsky: Declare November 2014 Adoption Awareness Month and encourage interested individuals and families in the community to consider the benefits and rewards of adopting a waiting child by calling (888) 811-1121 or visiting the website www.ShareYourHeartLA.org; and instruct the Auditor-Controller to print "November is Adoption Awareness Month. Call 888-811-1121 to become a foster or adoptive parent" on all County warrants during the month of November and for the Department of Human Resources to include the same message on the electronic paystub viewer on e-CAPS.  (14-5121)

    **On motion of Supervisor Yaroslavsky, seconded by Supervisor Antonovich, this item was approved.**

    | | | |
    |---|---|---|
    | **Ayes:** | 4 - | Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe |
    | **Absent:** | 1 - | Supervisor Molina |

    *Attachments:*    Motion by Supervisor Yaroslavsky

5.  Recommendation as submitted by Supervisor Knabe: Establish a $10,000 reward offered in exchange for information leading to the apprehension and/or conviction of the person or persons responsible for the fatal hit and run of 20-year-old Daniel Gomez, whose body was discovered lying in the road, located in the area of Spring St. and Karen Ave. in the City of Long Beach on September 13, 2014, shortly after midnight.  (14-5076)

    **On motion of Supervisor Knabe, seconded by Supervisor Yaroslavsky, this item was approved.**

    **Ayes:    4 -    Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe**

    **Absent:    1 -    Supervisor Molina**

    *Attachments:*    Motion by Supervisor Knabe
                      Notice of Reward

6.  Recommendation as submitted by Supervisor Molina: Authorize County Counsel to explore potential legal actions against Exide Technologies either individually or in concert with other jurisdictions or public agencies and report back to the Board in one week with legal options to shutter Exide and abate the toxic conditions surrounding the facility and the affected neighborhoods. (14-5102)

    **Gladys Limon, Frank Villalobos and Mark Lopez addressed the Board.**

    **On motion of Supervisor Molina, seconded by Supervisor Yaroslavsky, this item was approved.**

    **Ayes:    5 -    Supervisor Molina, Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe**

    **By Common Consent, there being no objection, the foregoing motion was reconsidered to allow an additional member of the public to address the Board.  Arnold Sachs addressed the Board.**

    **On motion of Supervisor Molina, seconded by Supervisor Yaroslavsky, this item was approved.**

    **Ayes:    5 -    Supervisor Molina, Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe**

    *Attachments:*    Motion by Supervisor Molina
                      Report
                      Video
                      Audio

7.    Executive Officer of the Board's recommendation: Approve minutes for the September 2014 meetings of the Board of Supervisors and Special Districts for which the Board is the governing body.  (14-5019)

**On motion of Supervisor Antonovich, seconded by Supervisor Yaroslavsky, this item was approved.**

**Ayes:**    4 -    Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe

**Absent:**    1 -    Supervisor Molina

*Attachments:*    Board Letter

## IV.  CONSENT CALENDAR    8 - 60

### Chief Executive Office

8.    Recommendation: Approve the introduction of an ordinance amending the gas pipeline franchise granted to Southern California Gas Company (SoCalGas) to extend the term of the franchise through December 31, 2015, becoming operative January 1, 2015; instruct the Chairman to sign an amendment to the Graffiti Abatement and Coordination Agreement to extend the Agreement through December 31, 2015, for the prevention and removal of graffiti from the above-ground facilities of SoCalGas; and find that the project is exempt from the California Environmental Quality Act. (Relates to Agenda No. 61) (14-5032)

**On motion of Supervisor Yaroslavsky, seconded by Supervisor Ridley-Thomas, this item was approved.**

**Ayes:**    4 -    Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe

**Absent:**    1 -    Supervisor Molina

*Attachments:*    Board Letter

Agreement No. 77183, Supplement 3

9.    Recommendation: Approve the introduction of an ordinance amending the electrical franchise granted to Southern California Edison Company (Edison) to extend the term of the franchise through December 31, 2015, becoming operative January 1, 2015; instruct the Chairman to sign an amendment to the Graffiti Abatement and Coordination Agreement to extend the Agreement through December 31, 2015, for the prevention and removal of graffiti from the above-ground facilities of Edison; and find that the project is exempt from the California Environmental Quality Act. (Relates to Agenda No. 62)  (14-5051)

**On motion of Supervisor Yaroslavsky, seconded by Supervisor Ridley-Thomas, this item was approved.**

|        |      |                                                                                         |
|--------|------|-----------------------------------------------------------------------------------------|
| **Ayes:** | 4 -  | Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe |
| **Absent:** | 1 -  | Supervisor Molina                                                                       |

*Attachments:*    Board Letter

Agreement No. 77184, Supplement 4

**County Operations**

10.    Recommendation: Approve the use of $600,000 from the County's Information Technology Fund to develop a Data Center Requirement Assessment and Consolidation Strategy; authorize the Chief Executive Officer to execute a work order and any necessary change orders with Gartner Consulting at an amount not to exceed $600,000 for consulting services under the as needed Strategic Planning and Related Services Master Agreement; and approve a 60-day extension to return to the Board with a written Strategy Report. **(Chief Information Office)** (14-5055)

**Dr. Genevieve Clavreul addressed the Board.**

**On motion of Supervisor Ridley-Thomas, seconded by Supervisor Antonovich, this item was approved.**

|        |      |                                                                                         |
|--------|------|-----------------------------------------------------------------------------------------|
| **Ayes:** | 4 -  | Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe |
| **Absent:** | 1 -  | Supervisor Molina                                                                       |

*Attachments:*    Board Letter
                  Video
                  Audio

11.     Recommendation: Approve a resolution to adopt Plan Amendment No. 2014-00003-(1), which among other things, adopts the East Los Angeles Third Street Plan to be part of the East Los Angeles Community Plan (Community Plan); and adopt amendments to the land use policy map of the Countywide General Plan and the Community Plan for the area governed in the Third Street Plan. **(County Counsel)** (Relates to Agenda Item Nos. 57, 58 and 59) (14-5026)

**On motion of Supervisor Knabe, seconded by Supervisor Antonovich, this item was adopted.**

> **Ayes:**  3 -  Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe
>
> **Absent:**  2 -  Supervisor Molina and Supervisor Ridley-Thomas

*Attachments:*     Resolution


12.     Recommendation:  Adopt findings and conditions for approval of Conditional Use Permit No. 2013-00021-(4) and Parking Permit No. 2013-00009-(4), part of Project No. R2013-00317-(4), to authorize the development of 17 multi-family lots with 91 detached residential condominium units, seven private open space lots and one private street on 13.86 gross acres located at 1st Avenue and Candlelight Drive in the unincorporated community of East La Mirada in the Southeast Whittier Zoned District applied for by Brookfield Residential.  **(County Counsel)**  (Relates to Agenda Item Nos. 13 and 60) (14-3807)

**On motion of Supervisor Yaroslavsky, seconded by Supervisor Ridley-Thomas, this item was adopted.**

> **Ayes:**  4 -  Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe
>
> **Absent:**  1 -  Supervisor Molina

*Attachments:*     Findings and Conditions

**13.** Recommendation: Adopt findings and conditions for approval of Vesting Tentative Tract Map No. 072216-(4), part of Project No. R2013-00317-(4), to authorize the development of 17 multi-family lots with 91 detached residential condominium units, seven private open space lots and one private street lot on 13.86 gross acres located at 1st Avenue and Candlelight Drive in the unincorporated community of East La Mirada in the Southeast Whittier Zoned District. **(County Counsel)** (Relates to Agenda Item Nos. 12 and 60) (14-5097)

**On motion of Supervisor Yaroslavsky, seconded by Supervisor Ridley-Thomas, this item was adopted.**

> **Ayes:**   4 -   Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe
>
> **Absent:**   1 -   Supervisor Molina

*Attachments:*    Findings and Conditions

**14.** Recommendation: Adopt an amended resolution to the Real Estate Fraud Notification Program to revise the timeframe for notifying the party or parties subject to a Notice of Default or Notice of Sale, including the occupants of that property from 20 days to 14 days and revise the sunset clause from January 1, 2015 to January 1, 2020; and authorize the continued mailing of notices to a party or parties subject to a Notice of Default or Notice of Sale within a specific timeframe. **(Registrar-Recorder/County Clerk)**   (14-5069)

**On motion of Supervisor Yaroslavsky, seconded by Supervisor Ridley-Thomas, this item was adopted.**

> **Ayes:**   4 -   Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe
>
> **Absent:**   1 -   Supervisor Molina

*Attachments:*    Board Letter

| Board of Supervisors | Statement Of Proceedings | November 12, 2014 |
|---|---|---|

15.     Recommendation: Authorize the acceptance of compromise offers of settlement from individuals who were injured in a third-party compensatory accident and who received medical care at the following County facilities: **(Treasurer and Tax Collector)**

Harbor-UCLA Medical Center
Account No. 12742713 in the amount of $1,243.12
Account No. 12742703 in the amount of $11,015.30
Account No. 12777185 in the amount of $8,165.72
Account No. 12748565 in the amount of $14,812.64
Account No. 12711887 in the amount of $4,876.14

LAC+USC Medical Center
Account No. 12849795 in the amount of $5,000.00
Account No. 12856014 in the amount of $9,610.66
Account No. 12698327 in the amount of $5,926.21
Account No. 12815407 in the amount of $5,824.45  (14-4996)

**On motion of Supervisor Yaroslavsky, seconded by Supervisor Ridley-Thomas, this item was approved.**

**Ayes:**    4 -    Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe

**Absent:**    1 -    Supervisor Molina

*Attachments:*     Board Letter

---

*County of Los Angeles*                    *Page 21*

**Children and Families' Well-Being**

16.    Revised recommendation: Authorize the Senior Deputy Director of Children and Family Services to execute a funding agreement with Children and Families First-Proposition 10 Commission (First 5 LA) to fund the extension of nine existing Partnership for Families (PFF) contracts being administered by First 5 LA from January 1, 2015 through June 30, 2016 using $15,999,471 in State Realignment Funds; extend the funding agreement with First 5 LA on a month-to-month basis, at a monthly cost of $888,859, for the period of July 1, 2016 through December 31, 2016 until the execution of new County PFF contracts; execute amendments to the agreement for changes to the terms and conditions and any increases or decreases to the maximum annual agreement total not to exceed 10% for additional and necessary services, provided sufficient funding is available. **(Department of Children and Family Services)**  (14-5071)

**On motion of Supervisor Yaroslavsky, seconded by Supervisor Ridley-Thomas, this item was approved.**

**Ayes:**    4 -    Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe

**Absent:**    1 -    Supervisor Molina

*Attachments:*    Revised Board Letter

**Board of Supervisors**                    **Statement Of Proceedings**                    **November 12, 2014**

17.    Recommendation: Instruct the Chairman to sign an amendment to the Los Angeles Eligibility, Automation Determination, Evaluation and Reporting System Information Technology Agreement with Unisys Corporation to extend the term of the agreement for two one-year periods, commencing on May 1, 2015, authorize to increase the amount from $125,875,906 to $179,875,906 for the second extended option term and increase the aggregate Total Maximum Contract Sum for the agreement from $467,378,543 to $521,378,543, add provisions for the Data Destruction, Disabled Veterans Business Enterprise Preference Program and Transitional Job Opportunities Preference Program and update the name of the Contractor's Vice President and General Manager. **(Department of Public Social Services and Chief Information Office)**   (14-5034)

**On motion of Supervisor Yaroslavsky, seconded by Supervisor Ridley-Thomas, this item was approved.**

Ayes:    4 -    Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe

Absent:    1 -    Supervisor Molina

*Attachments:*    Board Letter

Agreement No. 68587, Supplement 16

*County of Los Angeles*                    **Page 23**

Health and Mental Health Services

18.    Recommendation: Adopt and instruct the Chairman to execute a resolution approving the acceptance of Senate Bill (SB) 82 Investment in Mental Health Wellness Act of 2013 grant award from the California Health Facilities Financing Authority (CHFFA) for the grant period beginning April 24, 2014 and ending April 24, 2016 in the amount of $40,892,700 from CHFFA to fund capital projects associated with the expansion and implementation of Urgent Care Centers (UCCs), Crisis Residential Treatment Programs and Mobile Crisis Support Teams Countywide (Programs); and approve an appropriation adjustment for Fiscal Year (FY) 2014-15 in the total amount of $20,120,000 to increase Salaries and Employee Benefits in the amount of $1,571,000, Services and Supplies in the amount of $18,414,000 and Capital Assets in the amount of $135,000 to provide spending authority for capital projects and expand and implement Programs, fully funded with the SB 82 CHFFA grant award, State Mental Health Services Act (MHSA) revenue, Federal Financial Participation Medi-Cal, and the shift of appropriation from Other Charges; and authorize the Director of Mental Health to take the following related actions: **(Department of Mental Health) 4-VOTES**

Execute the CHFFA Investment in Mental Health Wellness Grant Program and forward them to CHFFA, effective upon execution by CHFFA;

Execute amendments to the Grant Agreement that extend the term of the Grant Agreement, allow for the receipt of additional SB 82 CHFFA grant funds, rollover of unspent funds, redirection of grant funds among the categories of SB 82 CHFFA grant services, implement any required program and/or policy changes, renew any similar CHFFA Grant Agreement for additional SB 82 CHFFA grant awards in subsequent fiscal years, accept additional SB 82 CHFFA grant funding; and

Execute Memoranda of Understanding (MOU) with local law enforcement agencies for the provision and expansion of Law Enforcement Teams outlining the roles and responsibilities of the Department and the law enforcement agency, including allowing for mutual indemnification, with no funding attached to these MOUs; and fill 19 full-time equivalent ordinance positions.  (14-5012)

**On motion of Supervisor Knabe, seconded by Supervisor Ridley-Thomas, this item was adopted.**

> Ayes:    5 -    Supervisor Molina, Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe

*Attachments:*    Board Letter

19.    Recommendation: Authorize the Interim Director of Public Health to accept and implement a Notice of Award (NA) from the Centers for Disease Control and Prevention (CDC), in the amount of $3,520,000 to support the Chronic Disease Prevention Strategy in Los Angeles Project for the budget period of September 30, 2014 through September 29, 2015; accept future awards and/or amendments that are consistent with the requirements of the CDC NA that extend the term through September 29, 2018 at amounts to be determined by the CDC; reflect non-material and/or ministerial revisions to the award's terms and conditions; allow for the rollover of unspent funds and/or redirection of funds; adjust the term of the award through March 31, 2019; and/or provide an increase or decrease in funding by up to 25% above or below each grant term's annual base amount. **(Department of Public Health)** (14-5021)

**Dr. Genevieve Clavreul addressed the Board.**

**On motion of Supervisor Ridley-Thomas, seconded by Supervisor Antonovich, this item was approved.**

> Ayes:    4 -    Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe
>
> Absent:    1 -    Supervisor Molina

*Attachments:*    Board Letter
                   Video
                   Audio

**Board of Supervisors**                    **Statement Of Proceedings**                    November 12, 2014

---

Community Services

20. Recommendation: Instruct the Chairman to sign an amendment to the Option Agreement Regarding Leasehold Interest for the Anchorage at the Marina Del Rey Hotel, Parcel 43 at 13534 Bali Way in Marina Del Rey (4), granting MDR Marina, L.P. an extension for up to 12 months from November 17, 2014 to obtain certain regulatory approvals and satisfy certain other conditions for the proposed marina leasehold project; authorize the Director of Beaches and Harbors to approve required amendments to the existing Reciprocal Easement Agreement dated August 30, 2013 to coordinate the construction and operation of each of the hotel and marina projects and execute and deliver documentation, including without limitation, a lender estoppel certificate for Parcel 43 to facilitate development of the parcel. **(Department of Beaches and Harbors) 4-VOTES** (14-5002)

**On motion of Supervisor Yaroslavsky, seconded by Supervisor Ridley-Thomas, this item was approved.**

Ayes: 4 - Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe

Absent: 1 - Supervisor Molina

*Attachments:*    Board Letter

Agreement No. 77866, Supplement 1

---

*County of Los Angeles*                    *Page 26*

21.  Recommendation: Authorize the Director of Internal Services, as the County's Purchasing Agent, to proceed with the acquisition of two refuse trucks for the Department of Beaches and Harbors, at an estimated total of $305,000 each (3 and 4). **(Department of Beaches and Harbors)**  (14-4997)

**On motion of Supervisor Yaroslavsky, seconded by Supervisor Ridley-Thomas, this item was approved.**

|  |  |  |
|---|---|---|
| **Ayes:** | 4 - | Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe |
| **Absent:** | 1 - | Supervisor Molina |

*Attachments:*    Board Letter

22.  Recommendation: Establish the proposed Puente Hills County Regional Park Master Plan Project, Capital Project No. 69770 (Project), to proceed with a Park Master Plan (Plan), conceptual plan alternatives, and the required environmental documents for the proposed Puente Hills County Regional Park (4) with a Project budget in the amount of $814,000, approve an appropriation adjustment to transfer Sanitation Special Districts of Los Angeles County funds in the amount of $814,000 from the Department of Parks and Recreation's Trust Account to the Project; and authorize the Director of Parks and Recreation to use a Board-approved, as-needed design consultant to provide a Plan and environmental document services for a fee not to exceed $813,382 for the Project. **(Department of Parks and Recreation) 4-VOTES** (14-5030)

**On motion of Supervisor Ridley-Thomas, seconded by Supervisor Antonovich, this item was approved.**

|  |  |  |
|---|---|---|
| **Ayes:** | 4 - | Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe |
| **Absent:** | 1 - | Supervisor Molina |

*Attachments:*    Board Letter

Case 2:12-cv-00428-MWF-E    Document 120-7    Filed 02/17/15    Page 45 of 91    Page ID #:2988

**23.** Recommendation: Find that security services can be performed more economically by an independent contractor; approve and instruct the Chairman to sign a contract with General Security Services, Inc. for security services at the Department of Parks and Recreation's Administrative, East, South, and Regional Headquarters, the 72nd St. Staging Area, and the Los Angeles County Arboretum and Botanic Garden, collectively known as the Central Region facilities (1, 2 and 5), at an approximate annual base amount of $418,023, increasing annually by approximately $600, effective December 1, 2014, for a five-year term with three one-year renewal options, for a maximum potential term of eight years and an approximate total of $3,364,767, not including Cost of Living Adjustments, to be exercised by the Director of Parks and Recreation; find that the approval of the contract is exempt from the California Environmental Quality Act; and authorize the Director to take the following related actions: **(Department of Parks and Recreation)**

Exercise the three contract renewal options annually, if in the opinion of the Director, the contractor has successfully performed the previous contract period, services are still required and cost effective and renewal may include a Cost of Living Adjustment, per option year;

Increase the contract cost by up to 10% during each contract year, averaging up to $42,060 annually, as a contingency amount for unforeseen services/emergencies and/or additional work within the scope of the contract, which could increase the total annual contract amount to an average of $462,655; and

Suspend, terminate, or assign the contract in accordance with the approved terms and conditions of the contract. (14-5022)

**On motion of Supervisor Yaroslavsky, seconded by Supervisor Ridley-Thomas, this item was approved.**

Ayes:    4 -    Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe

Absent:    1 -    Supervisor Molina

Attachments:    Board Letter

Agreement No. 78299

**Statement Of Proceedings**

24.  Recommendation: Approve the request to submit a grant application to the Regional Park and Open Space District for County Excess Funds, available to the Fifth Supervisorial District, pursuant to the Safe Neighborhood Parks Proposition of 1996, in the amount of $3,700,000 to partially fund the proposed Castaic Sports Complex Olympic-Size Pool Project (Project) (5); and authorize the Director of Parks and Recreation, as agent of the County, to accept the grant funds, execute the agreement, conduct all negotiations, and submit all documents, including, but not limited to, amendments, Memorandum of Unrecorded Grant Agreement and payment requests, which may be necessary for the completion of the Project. **(Department of Parks and Recreation)** (14-4995)

**On motion of Supervisor Yaroslavsky, seconded by Supervisor Ridley-Thomas, this item was approved.**

Ayes:  4 -  Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe

Absent:  1 -  Supervisor Molina

*Attachments:*  Board Letter


25.  Recommendation: Adopt a resolution to submit a grant application to the Regional Park and Open Space District for County Excess Funds, available to the First Supervisorial District, pursuant to the Los Angeles County Safe Neighborhood Parks Proposition of 1996, in an amount of $100,000, to partially fund the proposed Whittier Narrows Dominguez Play Sculpture Rehabilitation Project (Project) at Whittier Narrows Recreation Area (1); adopt a Youth Employment Plan for the proposed Project; authorize the Director of Parks and Recreation as agent of the County, to accept the grant funds, execute the agreement, conduct all negotiations, and submit all documents, including, but not limited to, amendments, deed restrictions, Memorandum of Unrecorded Grant Agreement, and payment requests, which may be necessary for the completion of the Project; and find that the proposed Project is exempt from the California Environmental Quality Act. **(Department of Parks and Recreation)** (14-5062)

**On motion of Supervisor Yaroslavsky, seconded by Supervisor Ridley-Thomas, this item was adopted.**

Ayes:  4 -  Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe

Absent:  1 -  Supervisor Molina

*Attachments:*  Board Letter

26.    Recommendation: Adopt a resolution assigning the County's right to apply for $372,500 of County Excess Funds, available to the Third Supervisorial District, allocated to the Department of Parks and Recreation by the Regional Park and Open Space District, pursuant to the Safe Neighborhood Parks Proposition of 1996, for the Greater Los Angeles Zoo Association to partially fund the estimated total project cost of $745,000 for the proposed Los Angeles Zoo General Improvements Project (Project) (3); and find that the proposed Project is exempt from the California Environmental Quality Act. **(Department of Parks and Recreation)**   (14-5066)

**On motion of Supervisor Yaroslavsky, seconded by Supervisor Ridley-Thomas, this item was adopted.**

Ayes:    4 -    Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe

Absent:    1 -    Supervisor Molina

*Attachments:*    Board Letter

27.    Recommendation: Approve and authorize the Director of Parks and Recreation to execute a Memorandum of Understanding (MOU) with the Mountains Recreation and Conservation Authority for the maintenance and servicing of park and open space property in the Santa Monica Mountains, including Wilacre Park, in an amount not to exceed $930,000; and authorize the Director to execute amendments to the MOU as necessary. **(Department of Parks and Recreation)**  (14-4984)

**Ameer Flippin addressed the Board.**

**Russ Guiney, Director of Parks and Recreation, Lisa Sogher, Deputy Executive Officer, Mountains Recreation and Conservation Authority (MRCA), and Mark J. Saladino, County Counsel, responded to questions posed by the Board.  Jeffrey Maloney, Chief Staff Counsel for the MRCA, was also present.**

**After discussion, Supervisor Antonovich made a motion, seconded by Supevisor Ridley-Thomas, to approve the item as a one-time allocation to the MRCA.**

**Said motion failed to carry by the following vote:**

| | | |
|---|---|---|
| **Ayes:** | 2 - | Supervisor Ridley-Thomas and Supervisor Antonovich |
| **Noes:** | 1 - | Supervisor Yaroslavsky |
| **Abstentions:** | 2 - | Supervisor Molina and Supervisor Knabe |

**On motion of Supervisor Yaroslavsky, this item was duly carried by the following vote:**

| | | |
|---|---|---|
| **Ayes:** | 3 - | Supervisor Molina, Supervisor Yaroslavsky and Supervisor Knabe |
| **Noes:** | 2 - | Supervisor Ridley-Thomas and Supervisor Antonovich |

*Attachments:*    Board Letter
                 Video
                 Audio

**28.**    Recommendation: Instruct the Chairman to sign contracts with LAC Group and AppleOne Employment Services to provide temporary librarian and library assistant personnel services for a period of four years with a one-year renewal option and six month-to-month extension options for a combined annual total not to exceed $600,000, effective upon Board approval or December 1, 2014, whichever is later; and authorize the County Librarian to take the following related actions: **(Public Library)**

Execute amendments for future unanticipated changes in the scope of work and increase the contract amount to cover the cost of such changes, up to 10% of the original contract amount;

Exercise the one-year renewal option and six month-to-month extension options under the terms of the contracts; and

Execute amendments to implement additions and/or changes of certain terms as required by the Board during the term of the contract and adjust the contract amount due to such changes, if necessary. (14-5052)

**On motion of Supervisor Ridley-Thomas, and by Common Consent, there being no objection, this item was continued to November 25, 2014.**

**Ayes:**    4 -    Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe

**Absent:**    1 -    Supervisor Molina

*Attachments:*    Board Letter

29.    Recommendation: Accept a grant award in the amount of $123,500 from First 5 LA to expand the Family Place Libraries program, which provides information on good health, early learning, parental involvement, and access to supportive community services at the Baldwin Park, Hollydale, La Puente, Norwood and Pico Rivera Libraries (1); and authorize the County Librarian to execute any documents and agreements related to the acceptance and use of the grant funds. **(Public Library)**   (14-5054)

**On motion of Supervisor Yaroslavsky, seconded by Supervisor Ridley-Thomas, this item was approved.**

|  |  |  |
|---|---|---|
| **Ayes:** | 4 - | Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe |
| **Absent:** | 1 - | Supervisor Molina |

_**Attachments:**_        Board Letter

30. Recommendation: Approve an increase in the budget for the Martin Luther King, Jr. Inpatient Tower Renovation Project (Project) (2) from $281,430,000 to $284,313,000; approve an appropriation adjustment for the Project in the amount of $2,883,000, offset with tax-exempt commercial paper; authorize the Director of Public Works to execute change orders with Hensel Phelps Construction Company for the following; and find that the recommended actions are within the scope of the previously approved categorical exemption for the Project: **(Department of Public Works) 4-VOTES**

Removal and reinstallation of existing utilities in the intensive care units in an amount not to exceed $258,000;

Provision of additional server cabinets and associated support systems in an amount not to exceed $500,000; and

Additional work for various low-voltage systems in an amount not to exceed $350,000. (14-5058)

**Dr. Genevieve Clavreul addressed the Board.**

**On motion of Supervisor Ridley-Thomas, seconded by Supervisor Antonovich, this item was approved.**

| | | |
|---|---|---|
| **Ayes:** | 4 - | Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe |
| **Absent:** | 1 - | Supervisor Molina |

*Attachments:*     Board Letter
                          Video
                          Audio

31.     Recommendation: Authorize the Director of Public Works to execute cost-sharing Memoranda of Understanding for the implementation of Coordinated Integrated Monitoring Programs to comply with the National Pollutant Discharge Elimination System Municipal Separate Storm Sewer System Permit, including necessary amendments, provided that the County's estimated average annual cost-share for each Memorandum of Understanding, including amendments and a 10% contingency, does not exceed $750,000 and an aggregate total of $3,500,000 per year; and find that the proposed actions are exempt from the California Environmental Quality Act. **(Department of Public Works)**   (14-5013)

**On motion of Supervisor Yaroslavsky, seconded by Supervisor Ridley-Thomas, this item was approved.**

              **Ayes:**   4 -    Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe

              **Absent:**   1 -    Supervisor Molina

*Attachments:*     Board Letter


32.     Recommendation: Adopt a resolution of intention to transfer tentative subdivision territory known as Tract No. 71497 located in the City of La Mirada (4), from Tax Assessment Zone B to Tax Assessment Zone A within County Lighting Maintenance District 10045 and La Mirada Zone B to La Mirada Zone A of County Lighting District Landscaping and Lighting Act-1 (LLA-1), and order the levying of assessments within the annexed territories for Fiscal Year (FY) 2015-16; set January 27, 2015 for public hearing regarding the proposed transfer of approved tentative subdivision territory and levy of annual assessments based on the FY 2014-15 Annual Engineer's Report, which establishes assessments based on land use type for all zones within County Lighting District LLA-1 for street lighting purposes with an annual base assessment rate for a single-family home of $20 for La Mirada Zone A, which represents a $19 increase over the current $1 base assessment rate for La Mirada Zone B; and find that the project is exempt from the California Environmental Quality Act. **(Department of Public Works)**   (14-5041)

**On motion of Supervisor Yaroslavsky, seconded by Supervisor Ridley-Thomas, this item was adopted.**

              **Ayes:**   4 -    Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe

              **Absent:**   1 -    Supervisor Molina

*Attachments:*     Board Letter

**33.**    Recommendation: Adopt the findings and orders of the Building Rehabilitation Appeals Board, which provides for the arrest and abatement of neighborhood deterioration and the elimination of unsightly, unsafe, and unhealthful conditions, which constitute a public nuisance at the following unincorporated locations: **(Department of Public Works)**

> 352 Santa Mariana Ave., La Puente (1)
> 18814 Altario St., La Puente (1)
> 1254 Bannon Ave., La Puente (1)
> 616 S. Bonnie Beach Pl., Los Angeles (1)
> 1756 E. 87th St., Los Angeles (2)
> 1132 E. 80th St., Los Angeles (2)
> 3571 Olympiad Dr., Los Angeles (2)
> 5020 W. 135th St., Hawthorne (2)
> 1209 Lancewood Ave., Hacienda Heights (4)
> 2437 Stonyvale Rd., Tujunga (5)
> 29830 Central Ave., Val Verde (5)
> 38909 Ocotillo Dr., Palmdale (5)  (14-5020)

**On motion of Supervisor Yaroslavsky, seconded by Supervisor Ridley-Thomas, this item was adopted.**

|  |  |  |
|---|---|---|
| **Ayes:** | 4 - | Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe |
| **Absent:** | 1 - | Supervisor Molina |

*Attachments:*    Board Letter
Board Letter
Board Letter
Board Letter

**34.**    Recommendation: Approve the proposed Crescenta Valley Skate Park Project (Project) located in the City of La Crescenta (5), Capital Project No. 69700, Specs. 7306, with a total Project budget of $2,090,000; and find that the Project is exempt from the California Environmental Quality Act. **(Department of Public Works)**   (14-5024)

**On motion of Supervisor Yaroslavsky, seconded by Supervisor Ridley-Thomas, this item was approved.**

|  |  |  |
|---|---|---|
| **Ayes:** | 4 - | Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe |
| **Absent:** | 1 - | Supervisor Molina |

*Attachments:*    Board Letter

35.   Recommendation: Acting as the Governing Body of the County Flood Control District, authorize the Chief Engineer to enter into an agreement with the City of Los Angeles for maintenance of the Echo Park Lake Rehabilitation Project Low-Flow Diversion Structure, Project No. 481, Line B (Project) (1), and take all steps necessary to implement the agreement and accept the Diversion Structure, as part of the District's Flood Control System, and assume maintenance responsibility for the Diversion Structure and manhole; and acting as a responsible agency for the Project, consider the Final Environmental Impact Report (EIR) prepared and certified by the City as the lead agency for the Project; certify that the Board has independently considered and reached its own conclusions regarding the environmental effects of the Project, as shown in the Final EIR; adopt the Mitigation Monitoring Program (MMP), finding that the MMP is adequately designed to ensure compliance with the mitigation measures during Project implementation; find that there are no further feasible alternatives or feasible mitigation measures within the Board's power that would substantially lessen or avoid any significant effect the Project would have on the environment; and determine that the significant adverse effects of the Project have either been reduced to an acceptable level or are outweighed by the specific considerations of the Project, as outlined in the Environmental Findings of Fact and Statement of Overriding Considerations, which are adopted and incorporated by reference. **(Department of Public Works)**   (14-5042)

**On motion of Supervisor Yaroslavsky, seconded by Supervisor Ridley-Thomas, this item was adopted.**

| | | |
|---|---|---|
| **Ayes:** | 4 - | Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe |
| **Absent:** | 1 - | Supervisor Molina |

*Attachments:*    Board Letter

36.    Recommendation: Acting as the Governing Body of the County Flood Control District, authorize the Chief Engineer of the District to execute cost-sharing Memoranda of Understanding (MOU) for the implementation of Coordinated Integrated Monitoring Programs to comply with the National Pollutant Discharge Elimination System Municipal Separate Storm Sewer System Permit, including necessary amendments, provided that the District's estimated average annual cost-share for each MOU, including amendments and a 10% percent contingency, does not exceed $300,000 and an aggregate $1,200,000 per year; and find that the proposed actions are exempt from the California Environmental Quality Act. **(Department of Public Works)** (14-5010)

**On motion of Supervisor Yaroslavsky, seconded by Supervisor Ridley-Thomas, this item was approved.**

| | | |
|---|---|---|
| **Ayes:** | 4 - | Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe |
| **Absent:** | 1 - | Supervisor Molina |

_Attachments:_    Board Letter

37.    Recommendation: Acting as the Governing Body of the County Flood Control District (District), certify that the Final Environmental Impact Report (FEIR) for the Devil's Gate Reservoir Sediment Removal and Management Project (Project) (5) has been completed in compliance with the California Environmental Quality Act and reflects the independent judgment and analysis of the District; find that the Board has reviewed and considered the information contained in the FEIR prior to approving the Project; adopt the Mitigation Monitoring and Reporting Program for the Recommended Alternative, finding that the Mitigation Monitoring and Reporting Program for the Recommended Alternative is adequately designed to ensure compliance with the mitigation measures during implementation of the Project; determine that the significant adverse effects of the Project have either been reduced to an acceptable level or are outweighed by the specific considerations of the Recommended Alternative, as outlined in the Environmental Findings of Fact and Statement of Overriding Considerations, which are adopted and incorporated by reference; approve the Alternative 3, Configuration D, Option 2 of the Project in conjunction with Alternative 5 as the Recommended Alternative, which is described and analyzed in the FEIR; and authorize the District to carry out the Recommended Alternative. **(Department of Public Works)**   (14-5009)

**The Honorable Bill Bogaard, Mayor, City of Pasadena, Tecumseh Shackelford, Tim Martinez, Mitchell Tsai, Rhoads Stephenson, Henreen Nunley, Nina Chomsky, Timothy Brick, Kelly Gardner, Doris Davis, Don Bremmer, David Czamanske, LB Nye, Dorothy Wong, Rebecca Shields Moose and Penny Simon addressed the Board.**

**Gary Hildebrand, Deputy Director, Christopher Stone, Assistant Deputy Director, and Keith Lilley, Civil Engineer, Water Resources Division, representing the Department of Public Works, responded to questions posed by the Board.**

**Supervisor Antonovich made a motion to also instruct the Director of Public Works to:**

1. **Further reduce community impacts by including the following provisions in the Devil's Gate Reservoir Sediment Removal and Management Project design plans and specifications:**

    a. **Limit hauling hours to Monday through Friday from 7 a.m. to 3:30 p.m.**

    b. Hauling to occur only between April 15 to October 15 with the ability to go until December, if there is a late wet season and a dry fall.

    c. Exclude work on major holidays and major Rose Bowl events.

    d. Prohibit trucks from staging on city streets.

    e. Balance truck traffic between the Cities of La Cañada Flintridge and Pasadena.

    f. Work with the permitting agencies and stakeholders to restore habitat in the project area that is consistent with the Hahamonga Master Plan;

2. Continue collaboration on project design and implementation with the Altadena Town Council and Cities of La Cañada Flintridge and Pasadena; and

3. Implement a regular maintenance routine, consistent with the Environmental Impact Report by removing accumulated sediment annually to reduce the future frequency of major sediment removal projects.

After discussion, on motion of Supervisor Antonovich, seconded by Supervisor Knabe, this item was adopted as amended; and the Director of Public Works was instructed to:

1. Further reduce community impacts by including the following provisions in the Devil's Gate Reservoir Sediment Removal and Management Project design plans and specifications:

    a. Limit hauling hours to Monday through Friday from 7 a.m. to 3:30 p.m.

    b. Hauling to occur only between April 15 to October 15 with the ability to go until December, if there is a late wet season and a dry fall.

    c. Exclude work on major holidays and major Rose Bowl events.

d. Prohibit trucks from staging on city streets.

e. Balance truck traffic between the Cities of La Cañada Flintridge and Pasadena.

f. Work with the permitting agencies and stakeholders to restore habitat in the project area that is consistent with the Hahamonga Master Plan;

2. Continue collaboration on project design and implementation with the Altadena Town Council and Cities of La Cañada Flintridge and Pasadena; and

3. Implement a regular maintenance routine, consistent with the Environmental Impact Report by removing accumulated sediment annually to reduce the future frequency of major sediment removal projects.

Said item was duly carried by the following vote:

    **Ayes:**  4 -  Supervisor Molina, Supervisor Ridley-Thomas, Supervisor Antonovich and Supervisor Knabe

    **Noes:**  1 -  Supervisor Yaroslavsky

*Attachments:*    Board Letter
Motion by Supervisor Antonovich
Public Works' PowerPoint
Video
Audio

## Public Safety

38.     Recommendation: Authorize the Chief Probation Officer to execute contracts with six Community-Based Organizations, including Asian Youth Center, Soledad Enrichment Action, Inc., Star View Children and Family Services, Aviva Family and Children's Services, Child and Family Guidance Center and Special Services for Groups to provide home-based services to high-risk/high-needs youth in ten service areas under the Juvenile Justice Crime Prevention Act, similar to the standardized contract, for an initial contract estimate of $94,000 each, commencing January 1, 2015 through June 30, 2015; execute contract amendments to extend the contract term for up to four 12-month periods at an estimated annual amount of $188,000 each; and execute amendments to the contracts for any decrease or increase not to exceed 10% of the contract rates and/or 180 days to the period of performance pursuant to the terms of the contract. **(Probation Department)** (14-5063)

**On motion of Supervisor Ridley-Thomas, seconded by Supervisor Antonovich, this item was continued to November 18, 2014.**

> **Ayes:**    4 -    Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe
>
> **Absent:**  1 -    Supervisor Molina

*Attachments:*    Board Letter
                  Motion by Supervisor Molina
                  Video
                  Audio

39.    Recommendation: Authorize the Chief Probation Officer to execute contracts with three Community-Based Organizations, including Star View Children and Family Services, Asian American Drug Abuse Programs, Inc. and Asian Youth Center to provide intensive family-centered home-based gender-specific services to high-risk female youth in five clusters under the Juvenile Justice Crime Prevention Act, similar to the standardized contract, for an initial contract amount estimated at $47,000 each, commencing January 1, 2015 through June 30, 2015; execute contract amendments to extend the contract term for up to four 12-month periods at an estimated annual amount of $94,000 each; and execute amendments to the contracts for any decrease or increase not to exceed 10% of the contract rate and/or 180 days to the period of performance pursuant to the terms of the contract. **(Probation Department)** (14-5068)

**On motion of Supervisor Ridley-Thomas, seconded by Supervisor Antonovich, this item was continued to November 18, 2014.**

**Ayes:**    4 -    Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe

**Absent:**    1 -    Supervisor Molina

*Attachments:*    Board Letter
Motion by Supervisor Molina
Video
Audio

Board of Supervisors                    Statement Of Proceedings                    November 12, 2014

40.    Recommendation: Authorize the Chief Probation Officer to execute contracts
       with six Community-Based Organizations, including Soledad Enrichment
       Action, Inc., South Bay Workforce Investment Board, Community Career
       Development, Inc., Jewish Vocational Service of Los Angeles, Communities in
       Schools-San Fernando Valley and Special Services for Groups to provide
       employment services to high-risk/high-needs youth in ten service areas under
       the Juvenile Justice Crime Prevention Act, similar to the standardized contract,
       for an initial contract amount estimated at $94,000 each, commencing January
       1, 2015 through June 30, 2015; execute contract amendments to extend the
       contract term for up to four 12-month periods at an estimated annual amount
       of $188,000 each; and execute amendments to the contracts for any decrease
       or increase not to exceed 10% of the contract rates and/or 180 days to the
       period of performance pursuant to the terms of the contract. **(Probation
       Department)**  (14-5070)

       **Eric Preven addressed the Board.**

       **On motion of Supervisor Ridley-Thomas, seconded by Supervisor
       Antonovich, this item was continued to November 18, 2014.**

                          **Ayes:**    4 -    Supervisor Ridley-Thomas, Supervisor
                                              Yaroslavsky, Supervisor Antonovich and Supervisor
                                              Knabe

                          **Absent:**  1 -    Supervisor Molina

       _Attachments:_       Board Letter
                            Motion by Supervisor Molina
                            Video
                            Audio

_County of Los Angeles_                      **Page 44**

**41.** Recommendation: Authorize the Chief Probation Officer to execute an amendment to the contract with Sentinel Offender Services, LLC, extending the term of the contract to provide an Electronic Monitoring Program for the Probation Department for a 12-month period, commencing December 1, 2014 through November 30, 2015. **(Probation Department)**   (14-5000)

**Eric Preven addressed the Board.**

**On motion of Supervisor Knabe, seconded by Supervisor Yaroslavsky, this item was duly carried by the following vote:**

|  |  |  |
|---|---|---|
| **Ayes:** | 3 - | Supervisor Ridley-Thomas, Supervisor Yaroslavsky and Supervisor Knabe |
| **Abstentions:** | 1 - | Supervisor Antonovich |
| **Absent:** | 1 - | Supervisor Molina |

*Attachments:*   Board Letter
              Video
              Audio

42.    Recommendation: Authorize the Public Defender to incur incidental expenses estimated at $10,000 above the Department's delegated authority, to host a Juvenile Delinquency Law Seminar, which will provide juvenile delinquency law training for attorneys and support staff of the Public Defender's Office, Alternate Public Defender's Office, as well as attorneys from other County Public Defender offices and the private bar, and provide State Bar required Minimum Continuing Legal Education credit to attorneys in attendance. **(Public Defender)**  (14-4998)

**On motion of Supervisor Yaroslavsky, seconded by Supervisor Ridley-Thomas, this item was approved.**

|  |  |  |
|---|---|---|
| **Ayes:** | 4 - | Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe |
| **Absent:** | 1 - | Supervisor Molina |

*Attachments:*    Board Letter

43.    Recommendation: Approve the transfer of funds from Services and Supplies to reimburse the Sheriff's Special Appropriation Fund totaling $34,652.39. **(Sheriff's Department)**  (14-4993)

**On motion of Supervisor Knabe, seconded by Supervisor Antonovich, this item was approved.**

|  |  |  |
|---|---|---|
| **Ayes:** | 3 - | Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe |
| **Absent:** | 2 - | Supervisor Molina and Supervisor Ridley-Thomas |

*Attachments:*    Board Letter

**Miscellaneous Communications**

44.    Los Angeles County Claims Board's recommendation: Authorize settlement of the matter entitled <u>Jane Doe by Deborah Epperson v. County of Los Angeles,</u> Norwalk Superior Court Case No. VC 061 354 in the amount of $675,000 and instruct the Auditor-Controller to draw a warrant to implement this settlement from the Sheriff's Department's budget.

This lawsuit concerns allegations of sexual assault and battery by a Sheriff's Deputy. (14-4992)

**On motion of Supervisor Ridley-Thomas, seconded by Supervisor Antonovich, this item was approved.**

|  |  |  |
|---|---|---|
| **Ayes:** | 4 - | Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe |
| **Absent:** | 1 - | Supervisor Molina |

*Attachments:*    Board Letter
                 Video
                 Audio

45.    Los Angeles County Claims Board's recommendation: Authorize settlement of the matter entitled <u>Logan Cigrang v. County of Los Angeles, et al.,</u> United States District Court Case No. CV 12-10406, in the amount of $600,000 and instruct the Auditor-Controller to draw a warrant to implement this settlement from the Probation Department's budget.

This lawsuit alleges that due to improper supervision by Probation Department employees a former juvenile ward sustained physical injuries. (14-4991)

**On motion of Supervisor Yaroslavsky, seconded by Supervisor Ridley-Thomas, the settlement was approved and the corrective action plan was continued to December 16, 2014.**

|  |  |  |
|---|---|---|
| **Ayes:** | 4 - | Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe |
| **Absent:** | 1 - | Supervisor Molina |

*Attachments:*    Board Letter

**46.** Request from the City of Burbank: Render specified services relating to the conduct of a Primary Nominating Election to be held on February 24, 2015 and a General Municipal Election to be held on April 14, 2015.   (14-5003)

**On motion of Supervisor Yaroslavsky, seconded by Supervisor Ridley-Thomas, this item was approved; and the Registrar-Recorder/ County Clerk was instructed to comply with the City's request, provided that the City pays all related costs.**

| | | |
|---|---|---|
| **Ayes:** | 4 - | Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe |
| **Absent:** | 1 - | Supervisor Molina |

*Attachments:*      Board Letter

**47.** Request from the City of Cerritos: Render specified services relating to the conduct of a General Municipal Election to be held on March 3, 2015. (14-5049)

**On motion of Supervisor Yaroslavsky, seconded by Supervisor Ridley-Thomas, this item was approved; and the Registrar-Recorder/ County Clerk was instructed to comply with the City's request, provided that the City pays all related costs.**

| | | |
|---|---|---|
| **Ayes:** | 4 - | Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe |
| **Absent:** | 1 - | Supervisor Molina |

*Attachments:*      Board Letter

48.   Request from the City of Covina: Render specified services relating to the conduct of a General Municipal Election to be held on March 3, 2015. (14-5044)

**On motion of Supervisor Yaroslavsky, seconded by Supervisor Ridley-Thomas, this item was approved; and the Registrar-Recorder/ County Clerk was instructed to comply with the City's request, provided that the City pays all related costs.**

|  |  |  |
|---|---|---|
| **Ayes:** | 4 - | Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe |
| **Absent:** | 1 - | Supervisor Molina |

*Attachments:*      Board Letter

49.   Request from the City of Glendora: Render specified services relating to the conduct of a General Municipal Election to be held on March 3, 2015. (14-5045)

**On motion of Supervisor Yaroslavsky, seconded by Supervisor Ridley-Thomas, this item was approved; and the Registrar-Recorder/ County Clerk was instructed to comply with the City's request, provided that the City pays all related costs.**

|  |  |  |
|---|---|---|
| **Ayes:** | 4 - | Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe |
| **Absent:** | 1 - | Supervisor Molina |

*Attachments:*      Board Letter

50. Request from the City of La Verne: Render specified services relating to the conduct of a General Municipal Election to be held on March 3, 2015. (14-5046)

   **On motion of Supervisor Yaroslavsky, seconded by Supervisor Ridley-Thomas, this item was approved; and the Registrar-Recorder/ County Clerk was instructed to comply with the City's request, provided that the City pays all related costs.**

   | | | |
   |---|---|---|
   | **Ayes:** | 4 - | Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe |
   | **Absent:** | 1 - | Supervisor Molina |

   *Attachments:*      Board Letter

51. Request from the City of Redondo Beach: Render specified services relating to the conduct of a General Municipal Election to be held on March 3, 2015. (14-5047)

   **On motion of Supervisor Yaroslavsky, seconded by Supervisor Ridley-Thomas, this item was approved; and the Registrar-Recorder/ County Clerk was instructed to comply with the City's request, provided that the City pays all related costs.**

   | | | |
   |---|---|---|
   | **Ayes:** | 4 - | Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe |
   | **Absent:** | 1 - | Supervisor Molina |

   *Attachments:*      Board Letter

52. Request from the City of San Dimas: Render specified services relating to the conduct of a General Municipal Election to be held on March 3, 2015. (14-5043)

   **On motion of Supervisor Yaroslavsky, seconded by Supervisor Ridley-Thomas, this item was approved; and the Registrar-Recorder/ County Clerk was instructed to comply with the City's request, provided that the City pays all related costs.**

   | | | |
   |---|---|---|
   | **Ayes:** | 4 - | Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe |
   | **Absent:** | 1 - | Supervisor Molina |

   *Attachments:*      Board Letter

53. Request from the City of Temple City: Render specified services relating to the conduct of a General Municipal Election to be held on March 3, 2015. (14-5048)

    **On motion of Supervisor Yaroslavsky, seconded by Supervisor Ridley-Thomas, this item was approved; and the Registrar-Recorder/ County Clerk was instructed to comply with the City's request, provided that the City pays all related costs.**

    | | | |
    |---|---|---|
    | **Ayes:** | 4 - | Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe |
    | **Absent:** | 1 - | Supervisor Molina |

    *Attachments:*      Board Letter

54. Request from the City of Vernon: Render specified services relating to the conduct of a Special Municipal Election to be held on February 17, 2015. (14-5050)

    **On motion of Supervisor Yaroslavsky, seconded by Supervisor Ridley-Thomas, this item was approved; and the Registrar-Recorder/ County Clerk was instructed to comply with the City's request, provided that the City pays all related costs.**

    | | | |
    |---|---|---|
    | **Ayes:** | 4 - | Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe |
    | **Absent:** | 1 - | Supervisor Molina |

    *Attachments:*      Board Letter

Board of Supervisors                    Statement Of Proceedings                    November 12, 2014

### Ordinances for Adoption

**55.** Ordinance for adoption amending County Code, Title 5 - Personnel portions of Sections 5.27.040, 5.27.240, 5.28.040, 5.28.240, 5.33.040, and 5.37.040 to update the County contribution provisions in each of the County's cafeteria plans for health insurance purposes; portions of Sections 5.36.025 and 5.36.029 to revise the health insurance eligibility rules and County subsidy rates for certain monthly permanent part-time employees; and portions of Sections 5.27.220, 5.27.240, 5.27.500, 5.27.510, 5.28.220, 5.28.240, 5.28.500, and 5.28.510 to update the definitions of the applicable Retirement Plans and the election options of the Survivor Income Benefit available in the Flexible Benefit Plans.  (14-4688)

**On motion of Supervisor Yaroslavsky, seconded by Supervisor Ridley-Thomas, the Board adopted Ordinance No. 2014-0045 entitled, "An ordinance amending Title 5 - Personnel of the Los Angeles County Code, relating to fringe benefit changes." This ordinance shall take effect and become operative on and after December 1, 2014.**

**This item was duly carried by the following vote:**

|  |  |  |
|---|---|---|
| **Ayes:** | 4 - | Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe |
| **Absent:** | 1 - | Supervisor Molina |

*Attachments:*     Ordinance
                   Certified Ordinance

---

*County of Los Angeles*                    **Page 52**

56.    Ordinance for adoption amending County Code, Title 6 - Salaries, by adding and establishing the salary for one unclassified classification; restoring, establishing the salary, and changing the title of one unclassified classification; deleting two non-represented employee classifications; and adding, deleting, and/or changing certain classifications and numbers of ordinance positions in the Departments of Animal Care and Control, Beaches and Harbors, Board of Supervisors, Children and Family Services, District Attorney, Fire, Health Services, Internal Services, Mental Health, Parks and Recreation, Public Defender, Public Social Services, Registrar-Recorder/County Clerk, and Sheriff.  (14-4949)

**On motion of Supervisor Yaroslavsky, seconded by Supervisor Ridley-Thomas, the Board adopted Ordinance No. 2014-0046 entitled, "An ordinance amending Title 6 - Salaries of the Los Angeles County Code relating to the addition, deletion, and changing of certain classifications and numbers of ordinance positions in various departments to implement the findings of classification studies." This ordinance shall take effect November 12, 2014.**

**This item was duly carried by the following vote:**

|  |  |  |
|---|---|---|
| **Ayes:** | 4 - | Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe |
| **Absent:** | 1 - | Supervisor Molina |

*Attachments:*    Ordinance
                          Certified Ordinance

57.    Ordinance for adoption of Advance Planning Case No. 2014-00002-(1) to amend the County Code, Title 22 - Planning and Zoning, relating to the East Los Angeles Community Standards District (CSD); the proposed amendments to the CSD revise existing development standards and establish new development standards for future development in residential, commercial and industrial zones to enhance community aesthetics, encourage pedestrian-oriented development, and reinvest in older buildings. (Relates to Agenda Item Nos. 11, 58 and 59)   (14-5027)

**On motion of Supervisor Ridley-Thomas, seconded by Supervisor Antonovich, the Board adopted Ordinance No. 2014-0047 entitled, "An ordinance amending Title 22 - Planning and Zoning of the Los Angeles County Code, to revise and add new development standards to the East Los Angeles Community Standards District to encourage pedestrian-oriented development and investment in existing older buildings, and to enhance the aesthetics of the community." This ordinance shall take effect December 12, 2014.**

**This item was duly carried by the following vote:**

Ayes:    4 -    Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe

Absent:    1 -    Supervisor Molina

*Attachments:*    Ordinance
                 Certified Ordinance

58.    Ordinance for adoption of Zone Change No. 2014-00005-(1) to change the zoning of East Los Angeles Zoned District Nos. 1, 2, and 4 to Specific Plan zoning. (Relates to Agenda Items Nos. 11, 57 and 59)   (14-5028)

**On motion of Supervisor Ridley-Thomas, seconded by Supervisor Antonovich, the Board adopted Ordinance No. 2014-0048Z entitled, "An ordinance amending Section 22.16.230 of Title 22 - Planning and Zoning of the Los Angeles County Code, changing the regulations for the execution of the General Plan, relating to the East Los Angeles Zoned District Nos. 1, 2, and 4." This ordinance shall take effect December 12, 2014.**

**This item was duly carried by the following vote:**

     **Ayes:** 4 - Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe

     **Absent:** 1 - Supervisor Molina

*Attachments:*  Ordinance
       Certified Ordinance

59.  Ordinance for adoption of Specific Plan No. 2014-00001-(1) to adopt the East
     Los Angeles Form-Based Code Specific Plan as part of Title 22 - Planning and
     Zoning of the Los Angeles County Code for establishing standards and
     regulations for development in the area encompassed by the East Los
     Angeles Third Street Plan. (Relates to Agenda Item Nos. 11, 57 and 58)
     (14-5029)

     **On motion of Supervisor Ridley-Thomas, seconded by Supervisor
     Antonovich, the Board adopted Ordinance No. 2014-0049 entitled, "An
     ordinance amending Title 22 - Planning and Zoning of the Los Angeles
     County Code, to create a specific plan known as the East Los Angeles
     Third Street Form-Based Code Specific Plan." This ordinance shall take
     effect December 12, 2014.**

     **This item was duly carried by the following vote:**

                    Ayes:    4 -    Supervisor Ridley-Thomas, Supervisor
                                    Yaroslavsky, Supervisor Antonovich and Supervisor
                                    Knabe

                    Absent:  1 -    Supervisor Molina

     *Attachments:*     Ordinance
                        Certified Ordinance

| Board of Supervisors | Statement Of Proceedings | November 12, 2014 |
|---|---|---|

**60.** Ordinance for adoption of Zone Change Case No. 2013-00002-(4) to change the zoning of an approximate 13.86 gross acre-site from Light Agriculture - 7,000 sq ft minimum lot size (A-1-7,000) to Residential Planned Development - 8.3 Dwelling Units Per Net Acre - Development Program (RPD-8.3U-DP), part of Project No. R2013-00317-(4), which authorizes the development of 17 multi-family lots with 91 detached residential condominium units, seven private open space lots, and one private street lot located on 1st Avenue and Candlelight Drive in the unincorporated community of East La Mirada in the Southeast Whittier Zoned District applied for by Brookfield Residential. (Relates to Agenda Item Nos. 12 and 13) (14-5098)

**On motion of Supervisor Yaroslavsky, seconded by Supervisor Ridley-Thomas, the Board adopted Ordinance No. 2014-0050Z entitled, "An ordinance amending Section 22.16.230 of Title 22 - Planning and Zoning of the Los Angeles County Code, changing regulations for the execution of the General Plan, relating to the Southeast Whitter Zoned District Number 82." This ordinance shall take effect December 12, 2014.**

**This item was duly carried by the following vote:**

**Ayes:** 5 - Supervisor Molina, Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe

*Attachments:* Ordinance
Certified Ordinance

## V.  ORDINANCES FOR INTRODUCTION    61 - 62

61.  Ordinance for Introduction amending the gas pipeline distribution franchise granted to Southern California Gas Company (SoCalGas) to extend the term of the SoCalGas franchise through December 31, 2015, becoming operative January 1, 2015. (Relates to Agenda No. 8)  (14-5031)

**On motion of Supervisor Knabe, seconded by Supervisor Antonovich, the Board introduced, waived reading and ordered placed on the agenda for adoption an ordinance entitled, "An ordinance amending Ordinance No. 6765, as amended, relating to the gas distribution franchise granted to Southern California Gas Company, a California corporation."**

|  |  |  |
|---|---|---|
| **Ayes:** | 4 - | Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe |
| **Absent:** | 1 - | Supervisor Molina |

*Attachments:*    Ordinance

62.  Ordinance for introduction amending the electrical transmission and distribution franchise granted to the Southern California Edison Company, to extend the term of the franchise through December 31, 2015, becoming operative January 1, 2015. (Relates to Agenda No. 9)    (14-5053)

**On motion of Supervisor Knabe, seconded by Supervisor Yaroslavsky, the Board introduced, waived reading and ordered placed on the agenda for adoption an ordinance entitled, "An ordinance amending Ordinance No. 7062, as amended, relating to the electrical transmission and distribution franchise granted to Southern California Edison Company, a California corporation."**

|  |  |  |
|---|---|---|
| **Ayes:** | 4 - | Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe |
| **Absent:** | 1 - | Supervisor Molina |

*Attachments:*    Ordinance

### VI.  DISCUSSION ITEMS    63 - 64

63.    Report by the Chief Executive Officer with a cost analysis of alternative
custody and treatment programs discussed in the Sheriff's March 2014 Draft
Proposed Population Management Solutions, as requested at the meeting of
May 6, 2014. (Continued from the meetings of 7-15-14, 7-29-14, 9-9-14 and
10-7-14)  (13-3345)

**By Common Consent, there being no objection, this item was continued
to January 20, 2015.**

| | | |
|---|---|---|
| **Ayes:** | 4 - | Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe |
| **Absent:** | 1 - | Supervisor Molina |

*Attachments:*    Report

**Statement Of Proceedings**

## Public Hearing

64. Hearing on Project No. R2007-02733-(5), Advance Planning No. 2007-00019-(5), Zone Change No. 2014-00009-(5), Advance Planning No. 2014-00009-(5) and the Environmental Impact Report, Findings of Fact and Statement of Overriding Considerations, and Mitigation Monitoring and Reporting Program associated with Environmental Assessment No. 2014-00021-(5), for the proposed Antelope Valley Area Plan (Area Plan), located in the unincorporated Antelope Valley area, which includes a comprehensive update to the existing Area Plan, and minor amendments to the Los Angeles Countywide General Plan within the Antelope Valley; authorize changes in zoning for the Project Area for consistency with the proposed Area Plan; and amend the County Code, Title 22 - Planning and Zoning for consistency with the proposed Area Plan. (The Regional Planning Commission has recommended approval of this project.) **(Department of Regional Planning)** (14-4771)

**All persons wishing to testify were sworn in by the Executive Officer of the Board. Carl Nadela and Susan Tae, representing the Department of Regional Planning, testified. Opportunity was given for interested persons to address the Board. Ron Jones, Janet Lammon, Steve Kinney, Mark Majer, Cynthia Morgan, Sarah Kleinbreg, Judith Fuentes, Susan Zahnter, Margaret Rhyne, Ginger Stout, and other interested persons addressed the Board. Correspondence was presented.**

**Larry Hafetz, Assistant County Counsel, addressed the Board and recommended that the Board certify the Environmental Impact Report.**

**On motion of Supervisor Antonovich, seconded by Supervisor Knabe, the Board closed the public hearing and took the following actions:**

1. **Certified that the Board has reviewed and considered the environmental information in the Final Environmental Impact Report (Final EIR); certified that the Final EIR has been completed in accordance with the California Environmental Quality Act (CEQA) and the State and County CEQA guidelines and reflects the independent judgment of the Board as to the environmental consequences of the proposed Project; certified the Final EIR; adopted the Findings of Fact and Statement of Overriding Considerations prepared for the Project, and adopted the Mitigation Monitoring and Reporting Program;**

2. Indicated its intent to approve the proposed Area Plan, Advance Planning No. 2007-00019-(5), associated Zone Change No. 2014-00009-(5) and Zoning Code Amendments Advance Planning No. 2014-00009-(5), as recommended by the Regional Planning Commission (RPC) with the following additional changes recommended by the Regional Planning staff:

   a. Add a provision that ensures that if a conflict exists between the Antelope Valley Area Plan (AVAP) and any new or existing Significant Ecological Area (SEA) ordinance, the provisions in the AVAP shall control;

   b. Adjust the Significant Ecological Area (SEA) designation within the East and Central Economic Opportunity Areas (EOA) to the boundaries which generally align with the existing adopted SEAs and do not include any additional SEA expansion in the EOAs; also, remove the SEA designation from the Rural Land - Maximum 1 Dwelling Unit per gross acre (RL1), Rural Commercial (CR) and Light Industrial (IL) in the West EOA;

   c. When any project in the West EOA proceeds with a Specific Plan, pursuant to Government Code Sections 65359 and 65450 through 65457, a plan amendment will not be required as long as the proposed development is consistent with the AVAP;

   d. Within the West EOA, the SEA overlay/designation shall apply only to the portion of the parcel or lot that are indicated as SEAs in the Land Use Policy Map (Map 2.1) of the AVAP; if a portion of such a lot has an SEA overlay/designation, only that portion of the lot shall be subject to the SEA regulations, not the entire lot notwithstanding Section 22.56.215 of the County Code;

   e. Delete the Community Plan requirement from the Central and East EOAs in the AVAP;

f.  Make zoning consistent with the adopted Land Use Policy Map in the West EOA by changing Heavy Agriculturual - 10 Acre Minimum Required Lot Area (A 2-10) to Residential Planned Development (RPD) to allow the appropriate density in that area; and RPD zoning be allowed to convert uses to Commercial Planned Development (CPD) if the densities within the EOA remain the same;

g.  Delete the policy and process outlined in the AVAP Chapter 8 Implementation calling for a review of the SEA in the Antelope Valley every two years;

h.  Add a definition for "legal lot" within the AVAP, and include how any lot brought into compliance with the Subdivision Map Act after the Plan effective date will be subject to the zoning requirements in effect at the time of lot creation; define a "legal lot" as including "any lot that would otherwise currently qualify for a conditional certificate of compliance wherein the conditions imposed therein shall not include a requirement for compliance with the new land use/and or zoning designations imposed by this AVAP";

i.  Delete the definition of Master-Planned development reference on page I-8 of the AVAP;

j.  Change AVAP Land Use Policy 5.1 to state: "Ensure that development is consistent with the Sustainable Communities Strategy adopted in 2012, an element of the Regional Transportation Plan developed by the Southern California Association of Governments";

k.  Change AVAP Land Use Policy 2.2 to state: "Limit the amount of potential development within Scenic Resource Areas, including water features, significant ridgelines, and Hillside Management Areas, through appropriate land use designations, as indicated in the AVAP Land Use Policy Map 2.1";

l.  Modify AVAP policies and map to delete conflicting language that restricts growth in the EOA's; clarify the proposed Area Plan to exclude from EOAs the applicability of other proposed policies limiting development, including Policies Land Use Element (LU) 2.2 and Conservation and Open Space Element (COS) 5.2 Scenic Resource Areas, LU 2.3 Agricultural Resource Areas, LU 2.5 and COS 16.1 riparian areas, groundwater recharge basins, and vegetated areas, Policy 2.6 proximity to National Forests, LU 3.1 seismic areas, LU 3.3 fire hazard zones currently lacking proximate fire response services, LU 3.4, COS 4.5 and COS 19.1 Hillside Management Areas, LU 3.5 landslide and liquefaction areas, and LU 3.6 airport influence areas; and additionally, remove the Rural Preserve Area map designation from the EOAs;

m.  Change land use designation and zoning of existing Unlimited Commercial (C-3) portions of Assessor's Parcel Number (APN) 3083-001-057 and APN 3036-024-903 from Rural Land 10 use - Maximum Dwelling Unit per 10 Gross Acres (RL10) and Heavy Agricultural - Minimum Two Acre Required Lot Area (A-2-2) zoning, to Rural Commercial (CR) and Rural Commercial Mixed Use (C-RU) zoning;

n.  Change the land use designation and zoning of APN 3054-020-011 from rural Land (RL1) and Light Agricultural one-acre (A-1-1) to IL and Light Manufacturing - Development Program (M-1-DP) zoning;

o.  Prohibit ground mounted utility-scale renewable energy projects in all SEA and EOA designated areas in the AVAP;

p.  Exempt from the SEA Ordinance single family residences and their accessory structures and animal keeping areas and facilities located within the boundaries of the AVAP;

q.  Exempt from the SEA Ordinance all previously disturbed farmland located within the boundaries of the AVAP;

r.  Exempt from the SEA Ordinance minor subdivisions located within the boundaries of the AVAP;

s.  Exempt from the SEA Ordinance the rebuilding and replacement of structures destroyed in a catastrophic event;

t. Instruct the Director of Planning to incorporate this AVAP as modified and adopted into the Countywide General Plan Update currently being prepared;

u. Instruct the Director of Planning to meet and work with Antelope Valley based farmers and the County Farm Bureau members to properly identify and define Agricultural Resource Areas; and

3. Instructed County Counsel to prepare the final documents and ordinance for the AVAP Update and bring back to the Board for the Board's consideration.

**Ayes:**    5 -    Supervisor Molina, Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe

*Attachments:*    Board Letter
Motion by Supervisor Antonovich
Audio
Video
Audio

### VII.  MISCELLANEOUS

**65.**    **Additions to the agenda which were posted more than 72 hours in advance of the meeting, as indicated on the supplemental agenda.** (12-9995)

**65-A.**    Recommendation as submitted by Supervisor Knabe: Waive the $250 fee for the use of the Board Hearing Room, excluding the cost of liability insurance, for the Retired Employees of Los Angeles County's retirement seminar, to be held on November 13, 2014, from 11:00 a.m. to 1:00 p.m.; and instruct Departments with employees in the Civic Center area to send an e-mail to their employees to advise them of the free November 13, 2014 retirement seminar and post flyers in the appropriate areas within their offices.  (14-5176)

**On motion of Supervisor Knabe, seconded by Supervisor Ridley-Thomas, this item was approved.**

|  |  |  |
|---|---|---|
| **Ayes:** | 4 - | Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe |
| **Absent:** | 1 - | Supervisor Molina |

*Attachments:*        Motion by Supervisor Knabe

**65-B.**    Recommendation as submitted by Supervisors Antonovich and Ridley-Thomas: Instruct the Chief Executive Officer and the Director of Parks and Recreation to report back to the Board in writing within 30 days with a plan to produce a Countywide Comprehensive Parks and Recreation Needs Assessment, with the final report to be developed in collaboration with other Directors of appropriate County Departments and Commissions, cities, State and local agencies and non-profit organizations that will assess potential Countywide parks and recreation projects, as well as long-term operations and maintenance needs, with the report to include, but not be limited to, a list of potential projects that will meet the needs of the County as demographics change over time and a projection of the total funds required to complete the needed projects.  (14-5189)

**On motion of Supervisor Antonovich, seconded by Supervisor Ridley-Thomas, this item was approved.**

|  |  |  |
|---|---|---|
| **Ayes:** | 4 - | Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe |
| **Absent:** | 1 - | Supervisor Molina |

*Attachments:*        Motion by Supervisors Antonovich and Ridley-Thomas
                            Report

**65-C.** Recommendation as submitted by Supervisor Antonovich: Establish a $10,000 reward offered in exchange for information leading to the apprehension and/or conviction of the person or persons responsible for vandalizing the veterans' memorial wall at Alhambra Park on or about November 5, 2014.  (14-5184)

**On motion of Supervisor Antonovich, and by Common Consent, there being no objection, this item was referred back to Supervisor Antonovich's office.**

|  |  |  |
|---|---|---|
| **Ayes:** | 4 - | Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe |
| **Absent:** | 1 - | Supervisor Molina |

_**Attachments:**_    Motion by Supervisor Antonovich

**65-D.** Recommendation as submitted by Supervisor Ridley-Thomas: Instruct the Director of Public Works to report back to the Board in writing with the estimated costs for upgrading the roof, air handlers, chiller and cooling towers, hot water boilers, electrical system, and complying with the Americans with Disabilities Act and Title 24 requirements, so that a comprehensive inventory of associated costs for occupying the building located at 1977 Saturn Street in Monterey Park (Saturn Property) can be known and evaluated by the Board; instruct County Counsel to establish a policy for Board consideration within 60 days regarding the acceptance of unsolicited real property that ensures transparency, fairness to other property owners and real estate brokers who have unlisted properties and addresses potential conflicts and other ethical improprieties; and instruct the Chief Executive Officer to take the following actions:

Disclose all parties to the proposed $38,450,000 acquisition of the Saturn Property, including the principals, brokers and County employees involved;

Complete a comprehensive analysis consistent with the Board-approved Facility Location Policy that includes a detailed analysis of all properties it evaluated prior to completing an acquisition for the Saturn Property and report back to the Board in writing;

Return to the Board for approval to consummate the acquisition of 1977 Saturn Street only after the aforementioned due diligence has been completed and reported as directed; and

Include a Facility Location Policy analysis in all future Board Letters whereby the request to initiate real property purchase or lease is being requested.  (14-5186)

**Arnold Sachs and Eric Preven addressed the Board.**

**On motion of Supervisor Knabe, and by Common Consent, there being no objection, this item was continued to November 18, 2014.**

|  |  |  |
|---|---|---|
| **Ayes:** | 4 - | Supervisor Ridley-Thomas, Supervisor Yaroslavsky, Supervisor Antonovich and Supervisor Knabe |
| **Absent:** | 1 - | Supervisor Molina |

_**Attachments:**_    Motion by Supervisor Ridley-Thomas
                  Video
                  Audio

**Board of Supervisors**                    **Statement Of Proceedings**                    **November 12, 2014**

      <u>**Public Comment    68**</u>

**68.**    Opportunity for members of the public to address the Board on items of interest that are within jurisdiction of the Board.

    **Andrea Campbell, Jacqueline Ayer, Saba Maskel, Jabriel Muhammad, Eric Preven, Fran Sereseres and Sheliah Ward addressed the Board.** (14-5343)

    *Attachments:*    <u>Video</u>
                          <u>Audio</u>

**Adjournments    69**

69.    On motions, duly seconded and unanimously carried, the meeting was adjourned in memory of the following persons:

**Supervisor Molina**
Richard Durado

**Supervisor Ridley-Thomas**
Herbert Bridges

**Supervisor Knabe**
Anderson Dale Bard
Tom Blackman
Ruben Ramirez
Doug Schneider
Janet Switzer

**Supervisors Antonovich and Knabe**
Philip M. Crane
William R. Wise

**Supervisor Antonovich**
Donald Werner Clark
Edward George Dadulak Jr.
Virginia Rose Footman
Carmen C. Harris
Kenneth Edward Moore
Radul "Rudy" Radovich
Jerry L. Spain  (14-5322)

### IX.  CLOSED SESSION MATTERS FOR NOVEMBER 12, 2014

**CS-1.**  CONFERENCE WITH LEGAL COUNSEL - EXISTING LITIGATION
(Paragraph (1) of subdivision (d) of Government Code Section 54956.9)

Alex Rosas, et al. v. Leroy Baca, et al., United States District Court, Central District, Case No. CV12-00428 PSG (SHx)

This lawsuit concerns allegations of violence in the Los Angeles County Jails.

**No reportable action was taken.**  (12-0821)

**CS-2.**  CONFERENCE WITH LEGAL COUNSEL - EXISTING LITIGATION
(Paragraph (1) of Subdivision (d) of Government Code Section 54956.9)

Jason May v. County of Los Angeles, Superior Court Case No. BC 539170

This is an employment discrimination matter involving the Department of Children and Family Services.

**In Open Session, this item was taken off calendar.**  (14-4980)

**CS-3.**  PUBLIC EMPLOYMENT
(Government Code Section 54957)

Consideration of candidates for the position of Chief Executive Officer.

**No reportable action was taken.**  (14-5101)

**CS-4.**  PUBLIC EMPLOYMENT
(Government Code Section 54957)

Interview and consideration of candidates for the position of Director of Public Health.

**No reportable action was taken.**  (14-4969)

**CS-5.** <u>PUBLIC EMPLOYMENT</u>
(Government Code Section 54957)

Interview and consideration of candidates for the position of Executive Director of the Office of Child Protection.

**In Open Session, this item was continued one week to November 18, 2014.** (14-4971)

**CS-6.** <u>CONFERENCE WITH LABOR NEGOTIATORS</u>
(Government Code Section 54957.6)

Agency designated representatives: William T Fujioka, Chief Executive Officer and designated staff

Employee Organization(s) for represented employees: The Coalition of County Unions, AFL-CIO; Local 721, SEIU, Union of American Physicians and Dentists; Guild For Professional Pharmacists; Peace Officers Counsel of California; Association of Public Defender Investigators; Association of Deputy District Attorneys; Los Angeles County Association of Environmental Health Specialists, Professional Peace Officers Association; and

Unrepresented employees (all).

**No reportable action was taken.** (13-4431)

**Report of Closed Session** (CSR-14)

*Attachments:*    <u>Audio Report of Closed Session 11/12/14</u>

### Recess    70

**70.**    The meeting recessed at 1:12 p.m following Item Nos. 11 and 43.

The meeting was reconvened and was called to order by the Chair Pro Tem presiding at 2:15 p.m.

Present were Supervisors Gloria Molina, Mark Ridley-Thomas, Zev Yaroslavsky, and Michael D. Antonovich , Chair Pro Tem presiding.  (14-5299)

### Closing    71

Open Session adjourned to Closed Session at 4:30 p.m. following adjournments to:

### CS-1.
Confer with Legal Counsel on existing litigation, pursuant to Paragraph (1) of subdivision (d) of Government Code Section 54956.9:

Alex Rosas, et al. v. Leroy Baca, et al., United States District Court, Central District, Case No. CV12-00428 PSG (SHx)

This lawsuit concerns allegations of violence in the Los Angeles County Jails.

### CS-3.
Consider candidates for the position of Chief Executive Officer, pursuant to Government Code Section 54957

### CS-4.
Interview and consider candidates for the position of Director of Public Health, pursuant to Government Code Section 54957

## CS-6.

Confer with Labor Negotiators, pursuant to Government Code Section 54957.6:

Agency designated representatives: William T Fujioka, Chief Executive Officer and designated staff

Employee Organization(s) for represented employees:  The Coalition of County Unions, AFL-CIO; Local 721, SEIU, Union of American Physicians and Dentists; Guild For Professional Pharmacists; Peace Officers Counsel of California; Association of Public Defender Investigators; Association of Deputy District Attorneys; Los Angeles County Association of Environmental Health Specialists, Professional Peace Officers Association; and

Unrepresented employees (all)

Closed Session convened at 4:35 p.m.  Present were Supervisors Gloria Molina, Mark Ridley-Thomas, Zev Yaroslavsky, and Michael D. Antonovich, Chair Pro Tem presiding.  Absent was Supervisor Don Knabe.

Closed Session adjourned at 5:28 p.m.  Present were Supervisors Gloria Molina, Mark Ridley-Thomas, Zev Yaroslavsky, and Michael D. Antonovich, Chair Pro Tem presiding.  Absent was Supervisor Don Knabe.

Open Session reconvened at 5:29 p.m. for the purpose of reporting actions taken in Closed Session.  Present were Supervisors Mark Ridley-Thomas, Zev Yaroslavsky, and Michael D. Antonovich, Chair Pro Tem presiding.  Absent were Supervisors Gloria Molina and Don Knabe.

The Board of Supervisors of the County of Los Angeles, and ex officio the governing body of all other special assessment and taxing districts, agencies and authorities for which said Board so acts, adjourned its meeting at 5:30 p.m.

The next Regular Meeting of the Board will be Wednesday, November 18, 2014 at 9:30 a.m.   (14-5300)

The foregoing is a fair statement of the proceedings of the regular meeting held November 12, 2014, by the Board of Supervisors of the County of Los Angeles and ex officio the governing body of all other special assessment and taxing districts, agencies and authorities for which said Board so acts.

Sachi A. Hamai, Executive Officer
Executive Officer-Clerk
of the Board of Supervisors

By _____

Carmen Gutierrez
Chief, Board Services Division