# EXHIBIT S



STATEMENT OF PROCEEDINGS FOR THE

REGULAR MEETING OF THE BOARD OF SUPERVISORS

OF THE COUNTY OF LOS ANGELES HELD IN ROOM 381B

OF THE KENNETH HAHN HALL OF ADMINISTRATION

500 WEST TEMPLE STREET, LOS ANGELES, CALIFORNIA 90012

Tuesday, December 16, 2014

9:30 AM

Present:     Supervisor Solis, Supervisor Ridley-Thomas, Supervisor Kuehl, Supervisor Knabe and Supervisor Antonovich

Video Link for the Entire Meeting  (03-1075)

**Attachments:**     Video Transcript

Invocation led by Rabbi Lisa Edwards, Beth Chayim Chadashim, Los Angeles (3).

Pledge of Allegiance led by Byron Shibata, Major, United States Air Force Reserve, Los Angeles (2).

I.  PRESENTATIONS/SET MATTERS

Presentation of scroll to Adam Melendez, owner of Promotional Design Group and Creative Inflatables, in recognition of his significant donations in both goods and services to the Department of Animal Care and Control, which have directly impacted and improved the lives of homeless animals across Los Angeles County, as arranged by Supervisor Knabe.

Presentation to Michael Arnold, for his outstanding service as Executive Director of the Los Angeles Homeless Services Authority, as arranged by Supervisor Knabe.

Presentation of scroll to Mendell Thompson, Chief Executive Officer of America's Christian Credit Union, as arranged by Supervisor Antonovich.

Presentation of scrolls to the San Gabriel Valley Boy Scouts, Western L.A. County Council Boy Scouts, and Southern California Edison, as arranged by Supervisor Antonovich.

**Board of Supervisors**                 **Statement Of Proceedings**                 **December 16, 2014**

Presentation of scroll to the Los Angeles Children's Chorus, as arranged by Supervisor Antonovich.

Presentation of pet(s) to the television audience for the County's Pet Adoption Program, as arranged by Supervisor Antonovich.

Presentation of scroll to Sal Martinez, in recognition of his many years of service on the Probation Commission, as arranged by Supervisor Solis. (14-0050)

**S-1.**    11:00 a.m.

Health Department Budget Committee of the Whole/Joint Meeting of the Board of Supervisors:

Report by the Director of Health Services on the financial status of the Department, to include a regular report on the status of the Department's planning activities.  (08-1665)

**On motion of Supervisor Antonovich, and by Common Consent, there being no objection, this item was continued to June 16, 2015.**

**Ayes:**    5 -    Supervisor Solis, Supervisor Ridley-Thomas, Supervisor Kuehl, Supervisor Knabe and Supervisor Antonovich

**S-2.**    11:30 a.m.

The Chief Probation Officer's status report of the Probation Department's implementation of AB 109, as requested at the meeting of December 11, 2012. (Continued from the meetings of 10-21-14 and 11-18-14)  (13-0268)

**By Common Consent, there being no objection, this item was continued to January 27, 2015.**

**Ayes:**    5 -    Supervisor Solis, Supervisor Ridley-Thomas, Supervisor Kuehl, Supervisor Knabe and Supervisor Antonovich

**S-3.**    <u>12:00 p.m.</u>

Status reports as requested by the Board relating to violence in the Los Angeles County jail facilities and the Citizens' Commission on Jail Violence's recommendations as presented to the Board at the meeting of October 9, 2012: (Continued from the meeting of 11-18-14)

Report by the implementation monitor on the Citizens' Commission on Jail Violence recommendations.

Report by the Sheriff on his vision for the implementation of the Citizens' Commission on Jail Violence recommendations and reforms related to the Sheriff's Department organizational chart, including the duties of each proposed position as recommended by the Commission.

Report by the Interim Chief Executive Officer and County Counsel on the fiscal analysis and what it would entail to implement the Office of Inspector General.   (12-5525)

**At the meeting of November 18, 2014, this item was continued to January 20, 2015.**

**Board of Supervisors**                    **Statement Of Proceedings**                    December 16, 2014

## II.  BOARD OF SUPERVISORS    1 - 6

1.      Recommendations for appointment/reappointment and removal of appointments for the following Commissions/Committees/ Special Districts (+ denotes reappointments): **Documents on file in the Executive Office.**

<u>Supervisor Solis</u>
Anthony Bravo, Los Angeles County Board of Retirement effective January 1, 2015 (Rotational)

<u>Supervisor Kuehl</u>
Judy Abdo, Los Angeles County Children and Families First-Proposition 10 Commission (aka First 5 L.A.), effective December 22, 2014
Valerie Rose Villarreal, Board of Investments (Rotational)
Harold L. Karpman (removal), Ronald D. Rosen (removal), and Hope Warschaw (removal), Los Angeles County Arts Commission

<u>Supervisor Knabe</u>
Olivia Cueva-Fernandez+, and Carol Maldonado+, Wilmington Cemetery District
David Mercer+, Real Estate Management Commission; also waive limitation of length of service requirement pursuant to County Code Section 3.58.030B

<u>Supervisor Antonovich</u>
Tevan Aroustamian+, Los Angeles County Law Enforcement Public Safety Facilities
Henry W. Hearns, Hospitals and Health Care Delivery Commission
David Owens+, Lancaster Cemetery District
Mason Yost+, Assessment Appeals Board

<u>California Contract Cities Association</u>
Mark Waronek, Contract Cities Liability Trust Fund Claims Board (14-5677)

---

*County of Los Angeles*                    *Page 5*

**Board of Supervisors**                    **Statement Of Proceedings**                    December 16, 2014

On motion of Supervisor Ridley-Thomas, seconded by Supervisor Antonovich, this item was approved.

**Ayes:**    5 -    Supervisor Solis, Supervisor Ridley-Thomas, Supervisor Kuehl, Supervisor Knabe and Supervisor Antonovich

2.    Recommendation as submitted by Supervisors Antonovich and Kuehl: Instruct the Chief Executive Office's Service Integration Branch and the Director of Personnel to compile a directory of the County's 88 cities, in addition to the local school districts, the Metropolitan Transit Authority, the Southern California Air Quality Management District, the Ports of Los Angeles and Long Beach, Metrolink, Southern California Association of Governments, and the business community; send a five-signature letter to each City Mayor, City Manager and agency to establish a foster youth career development internship program; and track the progress and report back to the Board in 30 days. (14-5673)

**Supervisor Solis made a friendly amendment to Supervisors Antonovich and Kuehl's joint motion, seconded by Supervisor Kuehl, to also include local community colleges and universities as potential partners and send a five-signature letter asking each to establish a foster youth career development internship program on their campus.   Supervisors Antonovich and Kuehl accepted Supervisor Solis' friendly amendment.**

**On motion of Supervisor Antonovich, seconded by Supervisor Solis, this item was approved as amended.**

                        Ayes:    5 -    Supervisor Solis, Supervisor Ridley-Thomas, Supervisor Kuehl, Supervisor Knabe and Supervisor Antonovich

*Attachments:*    Motion by Supervisors Antonovich and Kuehl
                  Motion by Supervisor Solis
                  Report
                  Video
                  Audio

| Board of Supervisors | Statement Of Proceedings | December 16, 2014 |
|---|---|---|

3. Recommendation as submitted by Supervisor Antonovich: Instruct the Director of Health Services to provide updates on a semi-annual basis on the Department's Budget Committee of the Whole report, with the next report to be presented in June 2015; and if there are any significant decreases or increases in revenue before or after the next report, the Director of Health Services is instructed to notify the Board immediately.    (14-5692)

**Nicole Parson addressed the Board.**

**On motion of Supervisor Solis, seconded by Supervisor Antonovich, this item was approved.**

Ayes:    5 -    Supervisor Solis, Supervisor Ridley-Thomas, Supervisor Kuehl, Supervisor Knabe and Supervisor Antonovich

*Attachments:*    Motion by Supervisor Antonovich
Report
Video
Audio

---

*County of Los Angeles*    *Page 8*

4.    Recommendation as submitted by Supervisor Ridley-Thomas: Approve the creation of a Jails Special Counsel (JSC) unit as special counsel to the Board within the Executive Office to provide legal representation on the delivery of mental health services and suicide prevention in the jails, with the organizational reporting relationship to the Board to mirror that of the Children's Special Investigation Unit; instruct County Counsel to draft an ordinance amending Title 2 and Title 6 of the County Code to create and define the position of the JSC unit that includes one lead attorney, one attorney, one paralegal, one support staff and one analyst by October 22, 2014; instruct County Counsel to draft a Memorandum of Understanding between the JSC unit and the Departments of Mental Health, County Counsel, Coroner, Health Services, Probation, Public Social Services, and Public Health, where necessary by October 22, 2014; instruct the Interim Chief Executive Officer to identify funding for the JSC unit; instruct the Acting Executive Officer to identify and secure office space; and instruct the Acting Executive Officer, in conjunction with County Counsel, to report back to the Board at its October 14, 2014 meeting as a Set Item, with a status report to include an assessment of filling these positions from existing County employees or by conducting an external recruitment. (Continued from the meetings of 10-7-14, 10-21-14, 11-5-14 and 12-2-14)

Also consideration of Supervisor Antonovich's amending motion to instruct County Counsel to report back in two weeks with a proposed plan to have dedicated attorney-client representation to the Board that consists of subject matter legal experts with the most knowledge to advise the Board on all aspects of the legal issues pertaining to the delivery of mental health services in the jails within the County Counsel's office as it continues its on-going negotiations with the Department of Justice relative to jail mental health services and suicide prevention, as well as all other aspects of the delivery of health and mental health services in County jails. (Continued from the meetings of 11-5-14 and 12-2-14)  (14-4527)

**On motion of Supervisor Ridley-Thomas, seconded by Supervisor Antonovich, this item was continued to January 13, 2015.**

Ayes:    5 -    Supervisor Solis, Supervisor Ridley-Thomas, Supervisor Kuehl, Supervisor Knabe and Supervisor Antonovich

Attachments:    Motion by Supervisor Ridley-Thomas
                Motion by Supervisor Antonovich

5.      Acting Executive Officer of the Board's recommendation: Approve the Conflict of Interest and Disclosure Codes for the Local Public School Funding Authority, ABC Unified School District, Alameda Corridor Transportation Authority, Alhambra Unified School District, Department of Parks and Recreation, El Segundo Unified School District, Fire Department, Lennox School District, Los Angeles Convention and Exhibition Center Authority, Probation Department and South Pasadena Unified School District, effective the day following Board approval.  (14-5487)

**Arnold Sachs addressed the Board.**

**On motion of Supervisor Ridley-Thomas, seconded by Supervisor Antonovich, this item was approved.**

                    **Ayes:**    5 -    Supervisor Solis, Supervisor Ridley-Thomas, Supervisor Kuehl, Supervisor Knabe and Supervisor Antonovich

*Attachments:*        Board Letter
                      Video
                      Audio

6.      Acting Executive Officer of the Board's recommendation: Approve the recommendation of the Reward Committee to distribute reward funds in amount of $8,500 to one of the claimants and $1,500 to be split equally among the three additional claimants, to be paid from the Board's discretionary funds to the individuals who provided information to law enforcement that led to the arrest and conviction of Gregory Shiga, the person responsible for the arson and burglary of St. John Vianney Catholic Church on April 16, 2011 in the City of Hacienda Heights.  (14-5640)

**On motion of Supervisor Solis, seconded by Supervisor Antonovich, this item was approved.**

                    **Ayes:**    5 -    Supervisor Solis, Supervisor Ridley-Thomas, Supervisor Kuehl, Supervisor Knabe and Supervisor Antonovich

*Attachments:*        Board Letter

## III.  CONSENT CALENDAR    7 - 51

### Chief Executive Office

7.    Recommendation: Instruct the Director of Internal Services to accept and sign a Grant Award Agreement with the South Coast Air Quality Management District (AQMD), Mobile Source Air Pollution Reduction Review Committee (AQMD-MSRC) in the amount of $425,000 to partially fund the purchase and installation of up to 575 bicycle racks and lockers and conduct educational outreach for the Bicycle Parking and Rider Program (Bike Program), at various County sites within the AQMD area for a grant period of 38 months from the date of execution with a matching fund requirement; adopt a resolution authorizing the Director of Internal Services to sign required grant documents, including applications, agreements, amendments, modifications, augmentations, extensions, payment requests, reports and grant renewals necessary for completion of the Bike Program; approve an appropriation adjustment for Fiscal Year (FY) 2014-15 in a total amount of $425,000 to increase the Services and Supplies appropriation in the Internal Services Department's FY 2014-15 Budget to provide spending authority for the purchase and installation of bicycle racks and lockers funded by AQMD; and authorize the Interim Chief Executive Officer to take the following related actions: **4-VOTES**

Utilize Assembly Bill 2766 funding in the amount of $370,000 from the Rideshare Program and $55,000 in Net County Cost to maximize and draw down the match requirement for a total Bike Program cost of $850,000; and

As an agent for the County, apply and submit a grant application to the AQMD-MSRC for the Bike Program in future FYs and execute all required documents, including assurances and certifications, when and if, such future funding becomes available.   (14-5630)

**On motion of Supervisor Ridley-Thomas, seconded by Supervisor Antonovich, this item was adopted.**

Ayes:    5 -    Supervisor Solis, Supervisor Ridley-Thomas, Supervisor Kuehl, Supervisor Knabe and Supervisor Antonovich

*Attachments:*    Board Letter

8.   Recommendation: Authorize the Interim Chief Executive Officer to complete the development of the proposed Vermont Corridor Development Concept, to provide the Board with information to develop, design and construct a proposed new building at the Vermont Ave. site to house departmental administrative staff from the Department of Mental Health and detail possible options to address the programmatic, physical and logistical challenges currently facing the Vermont Corridor in a manner that integrates the Community Development Commission's "Alhambra Model" with County financing in order to alleviate blight; authorize the Interim Chief Executive Officer to finalize a Request for Proposals (RFP) for the proposed replacement of the Department of Mental Health headquarters and proposed future development of County-owned properties located at 550, 510 and 433 S. Vermont Ave. and 3175 W. Sixth St. in Los Angeles (2) upon completion of the new Department of Mental Health headquarters building; and direct the Interim Chief Executive Officer to return to the Board to obtain approval to issue the final RFP by February 10, 2015. (Continued from the meetings of 11-18-14 and 12-2-14)  (14-5233)

**On motion of Supervisor Kuehl, seconded by Supervisor Antonovich, this item was referred back to the Chief Executive Office.**

Ayes:    5 -    Supervisor Solis, Supervisor Ridley-Thomas, Supervisor Kuehl, Supervisor Knabe and Supervisor Antonovich

*Attachments:*    Board Letter

9.    Recommendation: Approve the additions, deletions, and changes to existing Board-adopted policies and positions for inclusion in the 2015-16 State Legislative Agenda; and instruct the Interim Chief Executive Officer and affected County Departments to work with the Los Angeles County Legislative Delegation, other counties and local governments, and stakeholders to pursue these policies, positions, and priorities in the State Legislature and with the Administration and its agencies. (Continued from the meeting of 12-9-14) (14-5436)

**Supervisor Knabe made a motion that the Board add to the County's Legislative Agenda support for proposals that create and retain jobs in California, and specifically in Los Angeles County, including proposals that reduce the costs and burdens of unnecessary government regulations, fees and taxes on businesses, and which streamline inspection, permit and approval procedures and processes so businesses can be set up and running as quickly as possible.**

**After discussion, said motion failed to carry by the following vote:**

>    **Ayes:**    2 -    Supervisor Knabe and Supervisor Antonovich
>
>    **Noes:**    3 -    Supervisor Solis, Supervisor Ridley-Thomas and Supervisor Kuehl

**The following portions of the 2013-14 State Legislative Agenda were duly carried by the following vote:**

**Section 2. ENVIRONMENT, NATURAL RESOURCES AND RECREATION, Subsection 2.5 Watershed Management and Flood Control, Item No. 4:**

4.    **Support legislation to allow counties, flood control districts, and other public agencies to implement stormwater fees, upon voter approval and/or consistent with the requirements of Proposition 218 of 1996, to adequately fund clean water programs; and**

**Section 4, HEALTH, Subsection 4.10 Implementation of Health Care Reform, Item Nos. 1-18:**

1.  Support legislation that would implement provisions of Federal health care reform by increasing access to care while maintaining and/or expanding the County's funding as a safety net provider to continue health care, emergency and trauma care services, and medical education programs through the existing infrastructure of hospitals, Multi-Service Ambulatory Care Centers, health centers, and public-private partnerships;

2.  Oppose legislation that would result in the reduction of the County's funding as a safety net provider of health care to the uninsured, emergency and trauma care services and medical educational programs in order to implement Federal health care reform;

3.  Support proposals that establish funding for workforce development and infrastructure for mental health care and substance abuse providers under Federal health care reform;

4.  Support proposals to reform Medicaid, including the State Safety Net Care Pool and Section 1115 Waiver components, to increase Medicaid funds for priority areas, such as primary and preventive health care, without reducing total available Medicaid funding levels;

5.  Support proposals which define essential health benefits, pursuant to Federal health care reform, in a comprehensive manner that promote high-quality, patient-centered, and cost-effective health care service;

6.  Support proposals that expand health care coverage to the fullest extent allowed under the Affordable Care Act, without eroding existing coverage;

7.  Support proposals that simplify the health coverage enrollment and renewal processes to administer and facilitate use and access for clients;

8.  Support proposals that simplify and coordinate the health care enrollment and renewal process with existing programs such as CalFresh; and continue the use of county human services agencies to administer initial and ongoing Medi-Cal eligibility, including the Los Angeles County LEADER system and other county automation consortia, which interface with the Health Care Exchange;

9.  Support proposals that expand and enhance data matching to minimize paper verifications and decrease processing time for enrollment for health care coverage;

10. Support proposals that provide coverage expansion built upon the traditional delivery systems used by the Medi-Cal and uninsured such as the Two-Plan Model and safety net providers;

11. Support proposals that incorporate the Low-Income Health Plans created under the 2010 California Medicaid Waiver into the new delivery systems created under the Affordable Care Act;

12. Support proposals that include incentives for providers to deliver high-quality, coordinated, integrated, and cost-effective care across all levels of health care delivery;

13. Support proposals to ensure that coverage expansion includes mechanisms that protect existing patient-provider relationships from unnecessary disruption and ensure continuity of care;

14. Support proposals that create comprehensive benefits to the fullest extent allowed in the Affordable Care Act, including mental health and substance use disorder services, without eroding previously implemented Federal Medical options and existing waivers;

15. Support proposals that maintain the Prevention and Public Health Fund, recognizing that health improvement results from investments in population health efforts and not just medical care;

16. Support proposals that continue funding for the safety net system to maintain services for populations not covered by the Affordable Care Act;

17. Support proposals that allow the State to take full advantage of opportunities under the Affordable Care Act to maximize revenues such as, opting into enhanced benefits, special payments and incentives for innovation and quality; and

18. Support proposals that seek to minimize disruption in patient care and that help ensure access to essential HIV services, including support services, as patients transition from Federal Ryan White-funded services to other systems of care supported by the Federal Medicaid Expansion;

Section 4. HEALTH, Subsection 4.13 Dental Health Coverage, Item Nos. 1 and 2:

1. Support proposals to require public and private insurers to offer full coverage for dental and oral health care services; and

2. Support proposals that improve access to dental and oral health care services for children and adults; and

Section 12, UTILITIES AND INFRASTRUCTURE, Subsection 12.1 Energy, Item No. 16 to support proposals and funding which assist local governments in the development and implementation of Climate Action Plans that aim to reduce energy and water consumption, equipment and fleet emissions, and other greenhouse gas emissions targeted under AB 32 (Chapter 488, Statues of 2006). (14-5436)

| | | |
|---|---|---|
| **Ayes:** | 4 - | Supervisor Solis, Supervisor Ridley-Thomas, Supervisor Kuehl and Supervisor Knabe |
| **Noes:** | 1 - | Supervisor Antonovich |

The following portions of the 2013-14 State Legislative Agenda were duly carried by the following vote:

General State Legislative Principles, Item No. 5 to support proposals that reduce the two-thirds vote requirement for increasing revenues;

and

Section 11 Transportation, Item No. 9 to support legislation to reduce the vote requirement for enacting a county-wide sales or gas tax transportation measure. (14-5436)

| | | |
|---|---|---|
| **Ayes:** | 3 - | Supervisor Solis, Supervisor Ridley-Thomas and Supervisor Kuehl |
| **Noes:** | 2 - | Supervisor Knabe and Supervisor Antonovich |

The following portions of the Recommended Changes to the 2015-16 State Legislative Agenda were duly carried by the following vote:

Section 10. SOCIAL SERVICES, Subsection 10.2 CalWORKs, Item Nos. 21, 22 and 23:

21.  Support proposals that reimburse counties for payments and services to children who receive General Relief/General Assistance not aided by CalWORKs due to the Maximum Family Grant rule and live in a family where no one else is receiving a CalWORKs grant;

22.  Support proposals to repeal the CalWORKs Maximum Family Grant rule which prohibits a CalWORKs grant increase for any child born into a family receiving CalWORKs Program aid for ten continuous months prior to the birth of a child; and

23.  Support proposals to repeal the CalWORKs 100-hour rule for working families who are low-income and apply for the CalWORKs Program. (14-5436)

| | | |
|---|---|---|
| **Ayes:** | 4 - | Supervisor Solis, Supervisor Ridley-Thomas, Supervisor Kuehl and Supervisor Knabe |
| **Noes:** | 1 - | Supervisor Antonovich |

On motion of Supervisor Ridley-Thomas, seconded by Supervisor Antonovich, the balance of the 2013-14 State Legislative Agenda and Recommended Changes to the 2015-16 State Legislative Agenda were approved with the exception of the following portions which were referred back to the following departments:

1.  Section 12. UTILITIES AND INFRASTRUCTURE, Subsection 12.1 Energy, Item No. 18 to support legislation that enables local governments to receive reimbursement for qualifying activities

| Board of Supervisors | Statement Of Proceedings | December 16, 2014 |
|---|---|---|

when intervening and participating in energy regulatory proceedings, to the Department of Internal Services; and

2.    <u>Section 12. UTILITIES AND INFRASTRUCTURE, Subsection 12.4 Underground Utilities</u>, Item No. 2 to support legislation that exempts routine infrastructure maintenance activities of public agencies that excavate less than 12-inches deep from existing law which requires any party planning to conduct an excavation to contact the State's notification center prior to excavation, to the Department of Public Works.   (14-5436)

**Ayes:**   5 -     Supervisor Solis, Supervisor Ridley-Thomas, Supervisor Kuehl, Supervisor Knabe and Supervisor Antonovich

*Attachments:*     Board Letter
2013-14 State Legislative Agenda
Video
Audio

10. Recommendation: Approve and instruct the Mayor to sign a five-year lease with the Harbor-UCLA Medical Foundation Incorporated (MFI) with one five-year extension option, for the use of approximately 9,462 rentable sq ft of medical office space for the Harbor-UCLA Medical Center located at 21840 S. Normandie Ave., Torrance (2); authorize the Interim Chief Executive Officer to amend the lease if MFI has a need to reduce the amount of space occupied during the lease term; authorize the Director of Health Services to accept all rental payments to offset building maintenance costs under the lease; and find that the project is exempt from the California Environmental Quality Act. (14-5575)

**Arnold Sachs addressed the Board.**

**Supervisor Ridley-Thomas made a motion to direct the Acting Executive Officer of the Board to secure the services of a qualified consultant to review the County's real property leasing and acquisition procedures and practices for the conformity with all applicable laws and ordinances as well as current state-of-the-art standards in the industry, for the review of the recent transactions including the proposed Saturn Property acquisition to identify weaknesses, if any, in the County's practices and procedures; and provide a written report on the findings of the consultant within 90 days that includes recommendations for improving the process in order to provide enhanced transparency, fairness and maximum cost effectiveness in compliance with Board adopted policies.**

**Supervisor Kuehl made a friendly amendment to Supervisor Ridley-Thomas's motion to direct the Interim Chief Executive Officer to consult with County Counsel in terms of selecting a qualified consultant; and to confer and report back to the Board with a determination on the maximum cost of the services. Supervisor Ridley-Thomas accepted Supervisor Kuehl's friendly amendment.**

**After discussion, on motion of Supervisor Ridley-Thomas, seconded by Supervisor Antonovich, this item was approved as amended.**

Ayes: 5 - Supervisor Solis, Supervisor Ridley-Thomas, Supervisor Kuehl, Supervisor Knabe and Supervisor Antonovich

Attachments: Board Letter
Motion by Supervisor Ridley-Thomas
Report
Video
Audio

Agreement No. 78322

**11.**    Recommendation: Approve and instruct the Mayor to sign a seven-year lease amendment with U.S. REIF SIC Bristol Culver, LLC for the Office of the Assessor's continued occupancy of 30,507 sq ft of office space and 120 on-site parking spaces (Project) located at 6120 Bristol Pkwy., Culver City (2), at an initial annual rental cost of $1,043,340, approximately 34% offset from other governmental entities and 66% Net County Cost; authorize the Interim Chief Executive Officer and the Assessor to implement the Project, effective upon Board approval, but no sooner than June 1, 2015; and find that the proposed lease amendment is exempt from the California Environmental Quality Act.  (14-5610)

**On motion of Supervisor Kuehl, seconded by Supervisor Antonovich, this item was approved.**

> **Ayes:**    5 -    Supervisor Solis, Supervisor Ridley-Thomas, Supervisor Kuehl, Supervisor Knabe and Supervisor Antonovich

*Attachments:*    Board Letter

Agreement No. 72440, Supplement 2

**12.**    Recommendation: Adopt the Designation of Applicant's Agent Resolution for Non-State Agencies, authorizing the Interim Chief Executive Officer to apply for and seek reimbursement of disaster assistance funds from the Federal and State governments.  (14-5581)

**On motion of Supervisor Kuehl, seconded by Supervisor Antonovich, this item was adopted.**

> **Ayes:**    5 -    Supervisor Solis, Supervisor Ridley-Thomas, Supervisor Kuehl, Supervisor Knabe and Supervisor Antonovich

*Attachments:*    Board Letter

**County Operations**

13.  Recommendation: Approve and authorize the Director of Consumer Affairs to execute a no-cost Memorandum of Understanding with Los Angeles County Superior Court to improve coordination of Self-Help Legal Access Center services in courthouse locations from January 1, 2015 through August 31, 2016. **(Department of Consumer Affairs)**   (14-5483)

**On motion of Supervisor Ridley-Thomas, seconded by Supervisor Antonovich, this item was approved.**

> **Ayes:**   5 -   Supervisor Solis, Supervisor Ridley-Thomas, Supervisor Kuehl, Supervisor Knabe and Supervisor Antonovich

*Attachments:*      Board Letter

**Children and Families' Well-Being**

14.  Recommendation: Approve and instruct the Mayor to sign a contract with DNA Diagnostics Center, Inc. (DDC) to perform Genetic Testing for Disputed Parentage, Court Testimony and Related Services for a period of three years commencing on January 22, 2015 or the day after Board approval, whichever is later through January 21, 2018 at a maximum annual contract amount of $250,000 fully funded by Federal and State revenue, included in the Fiscal Year 2014-15 Budget, with funding for future years to be included in the Department's budget requests; authorize the Director of Child Support Services to increase the annual contract amount by 10%, and execute amendments to the contract to extend services with DDC for up to two additional one-year periods, for a maximum total contract term of five years. **(Child Support Services Department)**   (14-5622)

**On motion of Supervisor Kuehl, seconded by Supervisor Antonovich, this item was approved.**

> **Ayes:**   5 -   Supervisor Solis, Supervisor Ridley-Thomas, Supervisor Kuehl, Supervisor Knabe and Supervisor Antonovich

*Attachments:*      Board Letter

Agreement No. 78315

15.    Recommendation: Authorize the Directors of Child Support Services and Public Social Services and the Public Defender to enter into contracts with Lead Staffing Corporation, Staffmark, HR Management, Inc., and Top Tempo to provide temporary personnel for as-needed secretarial/clerical and accounting services for the Child Support Services Department, Public Defender and the Department of Public Social Services on a short-term, intermittent basis, for a one-year period beginning January 29, 2015 through January 28, 2016, with up to two one-year extension options; authorize the Directors of Child Support Services and Public Social Services and the Public Defender to execute the extension options provided sufficient funding is available, execute amendments to the agreement if the original contracting entity has merged, been purchased, or otherwise changed and execute applicable documents, and execute amendments to increase the annual contract amount by 10% if needed; and instruct the Mayor to sign the contracts. **(Child Support Services Department)** (14-5618)

**Robert Lucas addressed the Board.**

**Lisa Garrett, Director of Personnel, and Cynthia Banks, Director of Community and Senior Services, responded to questions posed by the Board.**

**Supervisor Solis made a motion to amend the item to approve the recommended temporary services agreements for one year and require Board approval to exercise extension options; and to instruct the Director of Personnel, in consultation with the Director of Community and Senior Services and Interim Chief Executive Officer, to analyze the feasibility of creating a temporary services registry to be used by all County departments for secretarial/clerical and accounting services utilizing Workforce Investment Board participants and community college students, and report back to the Board in 45 days.**

**Supervisor Antonovich made a motion to amend the item to instruct the Director of Public Social Services to coordinate with the Director of Personnel to include all Greater Avenues for Independence (GAIN) and General Relief Opportunities for Work (GROW) participants in the County on the temporary services registry for secretarial/clerical and accounting services.**

After discussion, on motion of Supervisor Solis, seconded by Supervisor Antonovich, the Board approved the item as amended to:

1.  Approve the recommended temporary services agreements for one year, and require Board approval to exercise the extension options;

2.  Instruct the Director of Personnel, in consultation with the Director of Community and Senior Services and Interim Chief Executive Officer, to analyze the feasibility of creating a temporary services registry to be used by all County departments for secretarial/clerical and accounting services utilizing Workforce Investment Board participants and community college students, and report back to the Board in 45 days; and

3.  Instruct the Director of Public Social Services to coordinate with the Director of Personnel to include all GAIN and GROW participants in the County on the temporary services registry for secretarial/clerical and accounting services.

Ayes:      5 -      Supervisor Solis, Supervisor Ridley-Thomas, Supervisor Kuehl, Supervisor Knabe and Supervisor Antonovich

*Attachments:*      Board Letter
Motion by Supervisor Solis
Motion by Supervisor Antonovich
Report
Video
Audio

Agreement Nos. 78320, 78321, and 78322

**16.**   Recommendation: Authorize the Director of Children and Family Services to execute an amendment to the Community Child Abuse Councils Coordination (CCACC) Services Contract with the Los Angeles Community Child Abuse Councils Coordination Project to extend the contract six months, effective January 1, 2015 through June 30, 2015, at an estimated cost of $45,000 to allow sufficient time for completion of the Request for Proposal process for the provision of CCACC services; execute contract amendments to increase/decrease the maximum annual contract amount by up to 10%; and execute amendments to extend the contract term on a month-to-month basis for up to six months in the event that a new contract is not in place. **(Department of Children and Family Services)**   (14-5631)

**On motion of Supervisor Knabe, seconded by Supervisor Antonovich, this item was approved.**

> **Ayes:**   5 -   Supervisor Solis, Supervisor Ridley-Thomas, Supervisor Kuehl, Supervisor Knabe and Supervisor Antonovich

*Attachments:*      Board Letter

**Health and Mental Health Services**

**17.**   Recommendation: Authorize the Director of Health Services to execute a Sponsored Programs Agreement with the University of Southern California (University), effective upon Board approval with an indefinite term, for the provision of various research and non-research projects (Sponsored Programs) conducted by the University at the LAC+USC Medical Center (1), at no cost to the County; authorize the Director to execute a Data Use Agreement with Sponsored Program managers for the use and disclosure of information in a limited data set for specified limited purposes; and execute future amendments to the agreement. **(Department of Health Services)** (14-5573)

**On motion of Supervisor Kuehl, seconded by Supervisor Antonovich, this item was approved.**

> **Ayes:**   5 -   Supervisor Solis, Supervisor Ridley-Thomas, Supervisor Kuehl, Supervisor Knabe and Supervisor Antonovich

*Attachments:*      Board Letter

18. Recommendation: Authorize the Director of Health Services to execute a Shared Services Agreement with Martin Luther King, Jr.-Los Angeles Healthcare Corporation, effective upon execution by both parties, allowing the Department of Health Services' Martin Luther King, Jr. Outpatient Center and Martin Luther King, Jr. Community Hospital (2) to supply one another clinical or support services; authorize the Director to execute amendments to the agreement to add, delete and/or change non-substantive terms and conditions and add/delete service types or reduce/increase the scope of services and/or revise fee amounts; and approve an interim ordinance authority, pursuant to County Code Section 6.06.020, for four budgeted positions and authorize the Director to fill these positions subject to allocation by the Chief Executive Office Compensation and Classification Division. **(Department of Health Services)** (14-5593)

    **On motion of Supervisor Kuehl, seconded by Supervisor Antonovich, this item was approved.**

    **Ayes:** 5 - Supervisor Solis, Supervisor Ridley-Thomas, Supervisor Kuehl, Supervisor Knabe and Supervisor Antonovich

    *Attachments:*    Board Letter

19. Recommendation: Authorize the Director of Health Services to execute an amendment to the Etreby Outpatient Pharmacy Information System Agreement with Cerner Healthcare Solutions, Inc. for continued SureScripts e-Prescribing services and adding pharmacy claims transactions services for all Department of Health Services pharmacies, effective upon Board approval, at an estimated annual amount of $1,131,200; and authorize the Director to amend the agreement in subsequent agreement term optional years for continued funding of the additional services. **(Department of Health Services)** *(NOTE: The Chief Information Officer recommended approval of this item.)* (14-5580)

    **On motion of Supervisor Kuehl, seconded by Supervisor Antonovich, this item was approved.**

    **Ayes:** 5 - Supervisor Solis, Supervisor Ridley-Thomas, Supervisor Kuehl, Supervisor Knabe and Supervisor Antonovich

    *Attachments:*    Board Letter

20.   Recommendation: Authorize the Director of Health Services to accept the following compromise offers of settlement, totaling $63,444 for patients who received medical care at either County facilities and/or non-County operated facilities under the Trauma Center Service Agreement or Impacted Hospital Program: **(Department of Health Services)**

County Facilities

Olive View-UCLA Medical Center (MC) Account No. 10277433 in the amount of $6,400

Rancho Los Amigos National Rehabilitation Center - Various Account Nos. in the amount of $20,000

Harbor-UCLA MC - Various Account Nos. in the amount of $24,169

Non-County Facilities

Emergency Medical Services - Account No. 285 in the amount of $4,375

Impacted Hospital Program - Account No. 652265 in the amount of $8,500  (14-5560)

**On motion of Supervisor Ridley-Thomas, seconded by Supervisor Antonovich, this item was approved.**

Ayes:    5 -    Supervisor Solis, Supervisor Ridley-Thomas, Supervisor Kuehl, Supervisor Knabe and Supervisor Antonovich

*Attachments:*    Board Letter

21.    Recommendation: Authorize the acceptance of the Senate Bill 82 (SB82) Investment in Mental Health Wellness Act of 2013 grant award in the amount of $31,177,000 from the Mental Health Services Oversight and Accountability Commission (MHSOAC) for the grant period of March 24, 2014 through June 30, 2017, for the implementation of mobile mental health triage teams that provide intensive case management and linkage services for individuals with mental illness or emotional disorders who require crisis interventions; authorize the Director of Mental Health to enter into a Standard Agreement with MHSOAC to implement the expansion of Statewide crisis services, effective upon execution by MHSOAC through June 30, 2017; approve an appropriation adjustment for Fiscal Year (FY) 2014-15 to increase Salaries and Employee Benefits in the amount of $3,062,000 and Services and Supplies in the amount of $4,417,000 to provide spending authority to implement the Mobile Mental Health Triage Program funded by the MHSOAC grant award and Federal Financial Participation (FFP) revenue; and authorize the Director of Mental Health to take the following related actions: **(Department of Mental Health) 4-VOTES**

Execute amendments to the agreement with MHSOAC that extend the term of the agreement, allow for the receipt of additional grant funds, rollover of unspent funds, redirection of grant funds among the categories of SB82 MHSOAC grant services, implement required program and/or policy changes, renew any similar MHSOAC agreement for additional SB82 MHSOAC grant awards in subsequent FYs and accept additional SB82 MHSOAC grant funding;

Execute an amendment on a sole source basis to Violence Intervention Program (VIP) Community Mental Health Center, Inc., an existing Department of Mental Health Legal Entity (LE) Agreement, to provide crisis stabilization mental health services through Children/Youth Crisis Placement Stabilization Teams for children/youth at the Child Welcome Center or Youth Welcome Center, adding $1,230,500 to the Maximum Contract Amount (MCA), establishing a new MCA for FY 2014-15, funded by the Investment in Mental Health Wellness Act of 2013 grant funds and FFP revenue, effective upon Board approval;

Execute future amendments to existing LE agreements, including VIP, to allocate a portion of the grant award to meet grant requirements and continue supporting existing programs and services for each LE, provided that the County's total payments for each FY does not exceed a 20% increase from the applicable Board-approved MCA, the increase is for additional services or program and/or policy changes, and provided that the Board has appropriated sufficient funds for all changes;

Add and fill 69 full-time equivalent positions pursuant to Section 6.06.020 of the County Code and subject to allocation by the Interim Chief Executive Officer; and

Utilize funds for Client Supportive Services from either the Mental Health Services Act or this grant award, as authorized by MHSOAC, to assist clients with basic living expenses and achieve and sustain self-sufficiency.  (14-5583)

**On motion of Supervisor Ridley-Thomas, seconded by Supervisor Antonovich, this item was approved.**

**Ayes:**   5 -   Supervisor Solis, Supervisor Ridley-Thomas, Supervisor Kuehl, Supervisor Knabe and Supervisor Antonovich

*Attachments:*       Board Letter

22.     Recommendation: Authorize the Director of Mental Health to execute a sole source consultant services agreement with the Academy of Cognitive Therapy, Ltd., (ACT) to provide specialized training, consultation, and technical assistance with the implementation of an Evidence-Based Practice to Department of Mental Health contracted agencies and directly operated clinical staff, in the amount of $2,485,800, effective upon Board approval through June 30, 2017, with a one-year extension option and a Total Compensation Amount (TCA) of $2,485,800, fully funded by State Mental Health Services Act revenue included in the Department's Fiscal Year 2014-15 Adopted Budget; execute future amendments to the agreement, provided that the County's total payments to the contractor under the agreement does not exceed a 10% increase from the applicable Board-approved TCA, any increase is used to provide additional services or reflect program and/or policy changes, and the Board has appropriated sufficient funds for all changes. **(Department of Mental Health)**   (14-5594)

**On motion of Supervisor Kuehl, seconded by Supervisor Antonovich, this item was approved.**

    **Ayes:**   5 -   Supervisor Solis, Supervisor Ridley-Thomas, Supervisor Kuehl, Supervisor Knabe and Supervisor Antonovich

*Attachments:*     Board Letter

23.  Recommendation: Authorize the Director of Mental Health to execute an amendment to the existing Department of Mental Health, Health Insurance Portability and Accountability Act Remediation Project with Sierra-Cedar, Inc. (Sierra-Cedar), effective upon Board approval to approve the assignment of the agreement to Sierra-Cedar, provide continued maintenance services of the Integrated System in the amount of $4,005,095, extend the term of the agreement through June 30, 2017, provide an additional $600,000 in Pool Dollars for professional services/change orders, and increase the maximum contract sum to $36,340,646 funded by 2011 Sales Tax Realignment revenue; extend the term of the agreement for up to two additional three-month periods for a total extension not to exceed six months, through December 31, 2017; and terminate the agreement for convenience when the Department's planned replacement system, Integrated Behavioral Health Information System, is fully developed and operational, as determined by the Director. **(Department of Mental Health)** *(NOTE: The Chief Information Officer recommended approval of this item.)* (14-5591)

**On motion of Supervisor Ridley-Thomas, seconded by Supervisor Antonovich, this item was approved.**

**Ayes:** 5 - Supervisor Solis, Supervisor Ridley-Thomas, Supervisor Kuehl, Supervisor Knabe and Supervisor Antonovich

*Attachments:*     Board Letter

24.    Recommendation: Authorize the Interim Director of Public Health to execute 21 amendments to HIV/AIDS Care Services contracts for the provision of benefit specialty services (BSS), medical care coordination (MCC), ambulatory outpatient medical (AOM), oral health care (OHC), and nutrition support services (NSS); execute amendments with five providers to increase the annual funding in a total amount of $458,633 for the provision of HIV/AIDS MCC, AOM, and OHC services, effective upon Board approval through February 28, 2015, increasing the total contractual obligation from $1,281,960 to $1,740,593, 100% funded by the Ryan White Program (RWP) Part A funds, execute amendments to extend the term of the contracts at the annual amounts for March 1, 2015 through February 28, 2017, 100% funded by RWP Part A funds; execute amendments to the contracts that provide an increase or decrease in funding of up to 25% above or below each term's revised annual base maximum obligation, effective upon amendment execution or at the beginning of the applicable contract term and make corresponding service adjustments, as necessary; and authorize the Interim Director to take the following related actions: **(Department of Public Health)**

Execute amendments with 13 providers to increase the annual funding in a total amount of $671,214 for the provision of HIV/AIDS BSS, effective upon Board approval through February 28, 2015 or March 31, 2015, increasing the total contractual obligation from $1,069,745 to $1,740,959, 100% funded by RWP Part A funds;

Execute amendments with three providers for the provision of HIV/AIDS NSS to increase the annual funding in a total amount of $72,702, effective upon Board approval through February 28, 2015 and $489,834 for the period of March 1, 2015 through February 29, 2016, increasing the total contractual obligation from $1,233,309 to $1,795,845, 100% funded by RWP Part A funds; and

Execute amendments to the contracts that provide an increase or decrease in funding of up to 10% above or below each term's revised annual base maximum obligation and make corresponding service adjustments, as necessary. (14-5613)

**On motion of Supervisor Ridley-Thomas, seconded by Supervisor Antonovich, this item was approved.**

| | | |
|---|---|---|
| **Ayes:** | 5 - | Supervisor Solis, Supervisor Ridley-Thomas, Supervisor Kuehl, Supervisor Knabe and Supervisor Antonovich |

*Attachments:*    Board Letter

### Community Services

25.    Recommendation: Adopt a resolution authorizing the Director of Beaches and Harbors to accept grant funds in the amount of $300,000 from the California Department of Parks and Recreation, Division of Boating and Waterways, for the Marina del Rey Public Boat Launch Area Improvements Project (Project) (4); approve an appropriation adjustment to account for the $300,000 grant allocated to the Marina Replacement Accumulative Capital Outlay Fund for the Project; and authorize the Director of Beaches and Harbors to negotiate a grant agreement and sign all necessary documents to accept the grant and act as lead agent for the County when conducting business with the State on matters related to the grant. **(Department of Beaches and Harbors) 4-VOTES** (14-5565)

**On motion of Supervisor Kuehl, seconded by Supervisor Antonovich, this item was adopted.**

Ayes:    5 -    Supervisor Solis, Supervisor Ridley-Thomas, Supervisor Kuehl, Supervisor Knabe and Supervisor Antonovich

*Attachments:*    Board Letter

26. Recommendation: Establish Capital Project No. 70006 for the Browns Canyon Property Acquisition Project (Project) located in the unincorporated area of Chatsworth (5) and the total Project budget of $2,503,000; approve an appropriation adjustment to transfer $2,503,000 from the Sunshine Canyon Landfill Mitigation Fund to the Project to fully fund the property acquisition, escrow fees, planning, feasibility and design studies, perimeter fencing, and Sheriff's Department security services; approve the Notice of Intention to purchase a 27.15 plus acre parcel of improved real property located at 12080 Browns Canyon Rd. from Ivor Green and Yvonne Green, Trustees of the Ivor Green and Yvonne Green Trust Agreement, for the purchase price of $2,340,000; set January 27, 2015 for public hearing to receive comments and consummate the proposed acquisition; and find that the proposed acquisition of improved real property and the planning, feasibility and design studies are exempt from the California Environmental Quality Act. **(Department of Parks and Recreation) 4-VOTES** (14-5675)

**Arnold Sachs addressed the Board.**

**On motion of Supervisor Ridley-Thomas, seconded by Supervisor Antonovich, this item was approved.**

Ayes:    5 -    Supervisor Solis, Supervisor Ridley-Thomas, Supervisor Kuehl, Supervisor Knabe and Supervisor Antonovich

*Attachments:*    Board Letter
Video
Audio

27.    Recommendation: Authorize the Director of Public Works to request the California Department of Transportation and the California Department of Finance to extend budget authority for five Federally-funded projects and one State-funded project that will not be completed by December 31, 2014, and enter into necessary cooperative agreements with the State Departments for a two-year extension of budget authority, with funding for the projects included in the Road Fund Fiscal Year 2014-15 Budget. **(Department of Public Works)** (14-5574)

**On motion of Supervisor Kuehl, seconded by Supervisor Antonovich, this item was approved.**

**Ayes:**    5 -    Supervisor Solis, Supervisor Ridley-Thomas, Supervisor Kuehl, Supervisor Knabe and Supervisor Antonovich

*Attachments:*    Board Letter

28.    Recommendation: Award an as-needed consultant services agreement to Alternative Resources, Inc. for the County's Advanced Solid Waste Conversion Technology Project for an initial three-year term with two one-year renewal options, and a maximum amount not to exceed $1,500,000, for a three-year term commencing upon the date of full execution of the contract, with the date of these contracts being automatically extended for a given project that has been authorized but not completed prior to the stated expiration date to allow for the completion of such services; and authorize the Director of Public Works to execute the contract with Alternative Resources, Inc. and suspend work, exercise one or both one-year renewal options, if in the opinion of the Director, Alternative Resources, Inc. has successfully performed during the previous contract periods and services are still required, and execute amendments to the contract for necessary changes to the project scope of work. **(Department of Public Works)** (14-5578)

**On motion of Supervisor Ridley-Thomas, seconded by Supervisor Antonovich, this item was continued three weeks to January 6, 2015.**

**Ayes:**    5 -    Supervisor Solis, Supervisor Ridley-Thomas, Supervisor Kuehl, Supervisor Knabe and Supervisor Antonovich

*Attachments:*    Board Letter

**Board of Supervisors**                    **Statement Of Proceedings**                    **December 16, 2014**

**29.**    Recommendation: Approve the project and adopt the plans and specifications for the Resurfacing of Roadway Pavement on El Segundo Blvd. - Avalon Blvd. to Central Ave., et al. project (Project) in the City of Compton and the unincorporated community of Willowbrook (2), at an estimated construction contract total between $2,400,000 and $3,300,000; advertise and set for bids to be received before 11:00 a.m. on January 13, 2015; find that the Project is exempt from the California Environmental Quality Act; and authorize the Director of Public Works to take the following related actions: **(Department of Public Works)**

Determine the bid of the apparent responsible contractor with the lowest responsive bid;

Execute a consultant services agreement with the apparent responsible contractor with the lowest responsive bid, to prepare a baseline construction schedule, a storm water pollution prevention plan, a site-specific health and safety plan and a soil management plan for an amount not to exceed $17,500, funded by existing project funds;

Award and execute a construction contract to the apparent responsible contractor with the lowest responsive bid and deliver the Project; and

Execute change orders within the same monetary limits delegated to the Director, allow substitution of subcontractors and relief of bidders, accept the Project upon final completion, release retention money and extend the date and time for the receipt of bids consistent with the requirements.  (14-5570)

**On motion of Supervisor Kuehl, seconded by Supervisor Antonovich, this item was adopted.**

**Ayes:**    5 -    Supervisor Solis, Supervisor Ridley-Thomas, Supervisor Kuehl, Supervisor Knabe and Supervisor Antonovich

*Attachments:*    Board Letter

**30.**    Recommendation: Approve the continuation of the County's contribution toward the Pasadena Tournament of Roses Post-Parade Float Viewing Park-and-Ride Shuttle Services in the City of Pasadena for the 2015 through 2017 event years; approve the payment of $40,000 each for Fiscal Years 2014-15, 2015-16 and 2016-17 to the Pasadena Tournament of Roses Association to offset the costs of shuttling the public between the park-and-ride lots and the post-parade float viewing venue; and find that the services are exempt from the California Environmental Quality Act. **(Department of Public Works)**   (14-5572)

**On motion of Supervisor Kuehl, seconded by Supervisor Antonovich, this item was approved.**

**Ayes:**    5 -    Supervisor Solis, Supervisor Ridley-Thomas, Supervisor Kuehl, Supervisor Knabe and Supervisor Antonovich

*Attachments:*        Board Letter

31.  Recommendation: Adopt the findings and orders of the Building Rehabilitation Appeals Board, which provides for the arrest and abatement of neighborhood deterioration and the elimination of unsightly, unsafe, and unhealthful conditions, which constitute a public nuisance at the following unincorporated locations: **(Department of Public Works)**

    635 Findlay Ave., Los Angeles (1)
    4054 E. Cesar Chavez Ave., Los Angeles (1)
    1218 S. Ditman Ave., Los Angeles (1)
    964 Van Pelt Ave., Los Angeles (1)
    4937 Escalon Ave., Los Angeles (2)
    1175 E. 59th Pl., Los Angeles (2)
    23025 E. Avenue O, Palmdale (5)
    9358 W. Avenue H, Lancaster (5)
    36575 165th St. East, Llano (5)
    40593 168th St. East, Lancaster (5)
    39817 17th St. West, Palmdale (5)   (14-5558)

    **On motion of Supervisor Kuehl, seconded by Supervisor Antonovich, this item was adopted.**

    **Ayes:**  5 -  Supervisor Solis, Supervisor Ridley-Thomas, Supervisor Kuehl, Supervisor Knabe and Supervisor Antonovich

    *Attachments:*    Board Letter
                      Board Letter
                      Board Letter

32.  Recommendation: Approve the final map for Tract No. 70853-01 in the unincorporated community of Del Aire (2) and accept grants and dedications as indicated on the final map for Tract No. 70853-01. **(Department of Public Works)**  (14-5585)

    **On motion of Supervisor Kuehl, seconded by Supervisor Antonovich, this item was approved.**

    **Ayes:**  5 -  Supervisor Solis, Supervisor Ridley-Thomas, Supervisor Kuehl, Supervisor Knabe and Supervisor Antonovich

    *Attachments:*    Board Letter

33.    Recommendation: Acting as the Governing Body of the County Flood Control District (District), accept $27,300,000 in grant funding from the California Department of Water Resources (DWR) on behalf of the Local Project Sponsors (LPS) in the Greater Los Angeles County Integrated Regional Water Management Region, to partially fund the construction of 14 projects, one of which is to be implemented by the District; authorize the Chief Engineer to execute a grant agreement with DWR upon Board approval; and authorize the Chief Engineer to take the following related actions: **(Department of Public Works)**

Acting as an agent for the District, execute amendments to the grant agreement as necessary to complete the projects, including extensions, minor changes in project scope, and alterations in the project budget or grant amount up to 10%;

Execute a Memorandum of Understanding with each of the LPS, with the exception of the District, that will establish responsibilities and liabilities between the District, LPS and the DWR regarding the grant and its related projects; and

Accept 2.5% of the State grant reimbursements from each LPS, with the exception of the District, not to exceed a total of $656,100 to provide technical and contract management staff support to administer the grant. (14-5582)

**Arnold Sachs addressed the Board.**

**On motion of Supervisor Ridley-Thomas, seconded by Supervisor Antonovich, this item was approved.**

Ayes:    5 -    Supervisor Solis, Supervisor Ridley-Thomas, Supervisor Kuehl, Supervisor Knabe and Supervisor Antonovich

*Attachments:*    Board Letter

34.  Recommendation: Acting as the Governing Body of the County Flood Control District (District), find that the District's Miscellaneous Easement, Private Drain 2304, Parcels 7EX, 8EX and 9EX in the City of Malibu (3), are no longer required for the purposes of the District; authorize and instruct the Mayor to execute the Quitclaim of Easements to the underlying fee owners; and find that the actions are exempt from the California Environmental Quality Act. **(Department of Public Works)**  (14-5576)

**On motion of Supervisor Kuehl, seconded by Supervisor Antonovich, this item was approved.**

**Ayes:**  5 -  Supervisor Solis, Supervisor Ridley-Thomas, Supervisor Kuehl, Supervisor Knabe and Supervisor Antonovich

*Attachments:*    Board Letter

35.  Recommendation: Acting as the Governing Body of the County Flood Control District (District), as the responsible agency for the North Atwater Crossing Project (Project), find that the use agreement between the District and the City of Los Angeles for public recreation purposes along portions of the Los Angeles River Parcels 201, 254, 267 and 582, located in the Atwater Village area of the City (3) will not interfere with the District's use of the Los Angeles River; authorize the Chief Engineer to sign the use agreement and authorize delivery to the City; and consider the Mitigated Negative Declaration (MND) prepared and adopted by the City as the lead agency, together with any comments received during the public review process; certify that the Board has independently considered and reached its own conclusions regarding the environmental effects of the Project as shown in the MND, find that there is no substantial evidence the Project will have a significant effect on the environment and adopt the Mitigation Monitoring Program for the Project. **(Department of Public Works)**  (14-5588)

**On motion of Supervisor Ridley-Thomas, seconded by Supervisor Antonovich, this item was adopted.**

**Ayes:**  5 -  Supervisor Solis, Supervisor Ridley-Thomas, Supervisor Kuehl, Supervisor Knabe and Supervisor Antonovich

*Attachments:*    Board Letter

36.    Recommendation: Acting as the Governing Board of the County Waterworks District No. 40, Antelope Valley (District), authorize the Director of Public Works to accept $1,666,244 in grant funding from the Proposition 84, Round 3 Implementation Grant Program from the California Department of Water Resources on behalf of the District to partially fund the construction of the 60th St. West Wellhead Arsenic Treatment Project (Project) (5); execute amendments to the grant agreement necessary for completion of the Project, including extensions, minor changes in project scope and alterations in the project budget or grant amount of up to 10%; and execute a Memorandum of Agreement (MOA) and documents to effectuate the terms of the MOA with the California Department of Corrections and Rehabilitation to obtain a Right of Entry License Agreement to access State property to construct, operate and maintain the Project. **(Department of Public Works)**   (14-5584)

**On motion of Supervisor Kuehl, seconded by Supervisor Antonovich, this item was approved.**

**Ayes:**    5 -    Supervisor Solis, Supervisor Ridley-Thomas, Supervisor Kuehl, Supervisor Knabe and Supervisor Antonovich

*Attachments:*    Board Letter

**Public Safety**

37.    Recommendation: Acting as the Governing Body of the Consolidated Fire Protection District (District), approve and instruct the Mayor to sign a sole-source Computer Aided Dispatching System Master Maintenance Services Contract for a five-year maximum term for ongoing maintenance and enhancements of the District's 24/7 emergency response dispatching system, with Northrop Grumman Systems Corporation, for the period January 1, 2015 through December 31, 2019 with the following total maximum contract expenditure for each contract year, totaling $2,605,623; authorize the Fire Chief to execute an annual price adjustment consisting of the maximum expenditures; authorize the Fire Chief to suspend and/or terminate the contract if necessary; and find that the contract is exempt from the California Environmental Quality Act: **(Fire Department)** *(NOTE: The Chief Information Officer recommended approval of this item.)*

> 2015 maximum expenditure at $497,022;
> 2016 maximum expenditure at $510,805;
> 2017 maximum expenditure at $521,347;
> 2018 maximum expenditure at $532,414; and
> 2019 maximum expenditure at $544,035  (14-5611)

**On motion of Supervisor Kuehl, seconded by Supervisor Antonovich, this item was approved.**

> **Ayes:**    5 -    Supervisor Solis, Supervisor Ridley-Thomas, Supervisor Kuehl, Supervisor Knabe and Supervisor Antonovich

*Attachments:*    Board Letter

Agreement No. 78316

38. Recommendation: Approve and instruct the Mayor to sign a Supplemental Law Enforcement Services Agreement with the City of Pasadena for supplemental law enforcement services provided by the Sheriff's Department during the 126th Tournament of Roses Parade on January 1, 2015 at an estimated cost of $850,474. **(Sheriff's Department)**   (14-5623)

   **On motion of Supervisor Kuehl, seconded by Supervisor Antonovich, this item was approved.**

   **Ayes:**   5 -    Supervisor Solis, Supervisor Ridley-Thomas, Supervisor Kuehl, Supervisor Knabe and Supervisor Antonovich

   *Attachments:*      Board Letter

   Agreement No. 78317

39. Recommendation: Approve and instruct the Mayor to execute an agreement with City Terrace Service, Inc., for vehicle towing and long-term storage services for the Sheriff's Central Property and Evidence Unit, with an initial term of January 21, 2015 through January 20, 2018 with up to two one-year and six month-to-month extension options, for a maximum term not to exceed five years and six months, and an estimated annual contract total of $125,000; authorize the Sheriff to execute change orders and amendments, including modifications that do not materially affect the term of the agreement, add new or revised standard County contract provisions adopted by the Board, and execute the extension options and assignment of rights or delegation of duties pursuant to the Assignment by Contractor provision. **(Sheriff's Department)** (14-5616)

**On motion of Supervisor Kuehl, seconded by Supervisor Antonovich, this item was approved.**

**Ayes:**   5 -   Supervisor Solis, Supervisor Ridley-Thomas, Supervisor Kuehl, Supervisor Knabe and Supervisor Antonovich

*Attachments:*      Board Letter

Agreement No. 78318

40. Recommendation: Authorize the Sheriff, as an agent for the County, to execute a Transit Law Enforcement Services Agreement with Antelope Valley Transit Authority for law enforcement services provided by the Sheriff's Department retroactively from July 1, 2013 through June 30, 2018 at an approximate annual cost of $120,000, without negative impact on law enforcement services in the unincorporated areas of the County. **(Sheriff's Department)** (14-5619)

**On motion of Supervisor Kuehl, seconded by Supervisor Antonovich, this item was approved.**

**Ayes:**   5 -   Supervisor Solis, Supervisor Ridley-Thomas, Supervisor Kuehl, Supervisor Knabe and Supervisor Antonovich

*Attachments:*      Board Letter

**41.** Recommendation: Approve a Model Master Agreement for independent contractors to provide Polygraph Examination Services on an as-needed basis for the term of January 17, 2015 through January 16, 2018, with up to four one-year extension options not to exceed seven years; authorize the Sheriff to execute agreements for services similar to the Model Agreement provided that sufficient funding is available; and authorize the Sheriff to execute change orders and amendments, including modifications that do not materially affect terms of the agreement, add new or revised standard County contract provisions adopted by the Board, and execute the extension options and assignment of rights or delegation of duties pursuant to the Assignment by Contractor provision. **(Sheriff's Department)**   (14-5614)

**On motion of Supervisor Ridley-Thomas, seconded by Supervisor Antonovich, this item was approved.**

Ayes:   5 -   Supervisor Solis, Supervisor Ridley-Thomas, Supervisor Kuehl, Supervisor Knabe and Supervisor Antonovich

*Attachments:*      Board Letter

42.    Recommendation: Approve and authorize the Sheriff to finalize and execute an agreement with NEC Corporation of America for the provision and maintenance of a Multimodal Biometric Identification System Solution (MBIS Solution) for the Sheriff's Data Systems Bureau to replace the existing Automated Fingerprint Identification System for a six-year term commencing upon execution, with a four-year extension option and a maximum possible term of ten years and a potential maximum contract total of $24,424,000; and authorize the Sheriff to take the following related actions: **(Sheriff's Department)**

Execute change notices and amendments or modifications to add and/or update standard County contract provisions required, exercise extension options and assignment of rights and/or delegation of duties pursuant to agreement provisions;

Acquire goods or services related to the MBIS Solution using allocated Pool Dollars without increasing the maximum contract total;

Amend the agreement to reflect changes to sales/use tax as a result of changes in applicable State or local law; and

Amend the agreement to acquire additional workstations using Pool Dollars in the event of a substantial expansion of a law enforcement agency supported by the MBIS Solution, by increasing the amount of available Pool Dollars and the maximum contract sum accordingly. (14-5625)

**On motion of Supervisor Kuehl, seconded by Supervisor Antonovich, this item was approved.**

**Ayes:**    5 -    Supervisor Solis, Supervisor Ridley-Thomas, Supervisor Kuehl, Supervisor Knabe and Supervisor Antonovich

*Attachments:*    Board Letter

43.    Recommendation: Authorize the Sheriff, as an agent for the County, to accept and execute a Grant Award Agreement with the California Department of Parks and Recreation, Division of Boating and Waterways in the amount of $80,000, with no match requirement, for the Fiscal Year 2014-15 Law Enforcement Equipment Grant Program, funding the Marina del Rey Sheriff's Station for the grant period of October 15, 2014 through June 30, 2029 (2, 3 and 4); and adopt a resolution authorizing the Sheriff to accept and execute the agreement and submit all required grant documents, including agreements, modifications, extensions and payment requests necessary for completion of the Program. **(Sheriff's Department)**   (14-5615)

**On motion of Supervisor Knabe, seconded by Supervisor Antonovich, this item was continued three weeks to January 6, 2015.**

Ayes:    5 -    Supervisor Solis, Supervisor Ridley-Thomas, Supervisor Kuehl, Supervisor Knabe and Supervisor Antonovich

*Attachments:*    Board Letter

44.    Recommendation: Approve and authorize the Sheriff to pay for incidental expenses in an amount not to exceed $54,000 for the Sheriff's Department's 27th Annual City Manager's Educational Seminar, to be held February 26 and February 27, 2015 at the Marriott Hotel in Marina del Rey, which will be attended by contract City Managers, public safety directors and Department executive staff, to discuss a wide variety of law enforcement issues and strategies that affect the delivery of law enforcement services to contract cities, the cost of the conference is recovered in the rates contract cities pay for their law enforcement services and budgeted to the Department's Contract Law Enforcement Bureau. **(Sheriff's Department)**   (14-5624)

**On motion of Supervisor Kuehl, seconded by Supervisor Antonovich, this item was approved.**

Ayes:    5 -    Supervisor Solis, Supervisor Ridley-Thomas, Supervisor Kuehl, Supervisor Knabe and Supervisor Antonovich

*Attachments:*    Board Letter

**Miscellaneous Communications**

45.    Los Angeles County Claims Board's recommendation: Approve the Corrective Action Plan for the matter entitled <u>Logan Cigrang v. County of Los Angeles, et al.</u>, United States District Court Case No. CV 12-10406.

This lawsuit alleges that due to improper supervision by Probation Department employees a former juvenile ward sustained physical injuries. (Continued from the meeting of 11-12-14)  (14-4991)

**On motion of Supervisor Kuehl, seconded by Supervisor Antonovich, this item was approved.**

Ayes:    5 -    Supervisor Solis, Supervisor Ridley-Thomas, Supervisor Kuehl, Supervisor Knabe and Supervisor Antonovich

*Attachments:*    Board Letter

46.    Los Angeles County Claims Board's recommendation: Authorize settlement of the matter entitled <u>Joel Ruben Fonseca v. County of Los Angeles, et al.</u>, Los Angeles Superior Court Case No. KC 065 323 in the amount of $299,000, and instruct the Auditor-Controller to draw a warrant to implement this settlement from the Sheriff's Department's budget.

This lawsuit arises from alleged injuries sustained in a vehicle accident involving a Sheriff's Deputy and a motorcyclist.  (14-5595)

**On motion of Supervisor Kuehl, seconded by Supervisor Antonovich, this item was approved.**

Ayes:    5 -    Supervisor Solis, Supervisor Ridley-Thomas, Supervisor Kuehl, Supervisor Knabe and Supervisor Antonovich

*Attachments:*    Board Letter

47.    Los Angeles County Claims Board's recommendation: Authorize settlement of the matter entitled <u>Derek Griscavage v. County of Los Angeles, et al.</u>, United States District Court Case No. CV 12-10721 in the amount of $350,000, and instruct the Auditor-Controller to draw a warrant to implement this settlement from the Sheriff's Department's budget.

This lawsuit concerns allegations of the use of excessive force by Sheriff's Deputies on an inmate while in the custody of the Sheriff's Department. (14-5596)

**On motion of Supervisor Ridley-Thomas, seconded by Supervisor Antonovich, this item was approved.**

> **Ayes:**    5 -    Supervisor Solis, Supervisor Ridley-Thomas, Supervisor Kuehl, Supervisor Knabe and Supervisor Antonovich

*Attachments:*    Board Letter

48.    Los Angeles County Claims Board's recommendation: Authorize settlement of the matter entitled <u>Vicente Perez, et al. v. County of Los Angeles</u>, Los Angeles Superior Court Case No. TC 027 184 in the amount of $1,650,000, and instruct the Auditor-Controller to draw a warrant to implement this settlement from the Department of Health Services' budget.

This lawsuit concerns allegations of medical malpractice by LAC+USC Medical Center that contributed to the death of the plaintiffs' spouse and mother. (14-5597)

**On motion of Supervisor Kuehl, seconded by Supervisor Antonovich, this item was approved.**

> **Ayes:**    5 -    Supervisor Solis, Supervisor Ridley-Thomas, Supervisor Kuehl, Supervisor Knabe and Supervisor Antonovich

*Attachments:*    Board Letter

| Board of Supervisors | Statement Of Proceedings | December 16, 2014 |
|---|---|---|

**49.** Request from the City of La Habra Heights: Render specified services relating to the conduct of a General Municipal Election to be held on March 3, 2015. (14-5629)

**On motion of Supervisor Kuehl, seconded by Supervisor Antonovich, this item was approved; and the Registrar-Recorder/County Clerk was instructed to comply with the City's request, provided that the City pays all related costs.**

> Ayes: 5 - Supervisor Solis, Supervisor Ridley-Thomas, Supervisor Kuehl, Supervisor Knabe and Supervisor Antonovich

*Attachments:* Board Letter

**50.** Request from the City of Signal Hill: Render specified services relating to the conduct of a General Municipal Election to be held on March 3, 2015. (14-5626)

**On motion of Supervisor Kuehl, seconded by Supervisor Antonovich, this item was approved; and the Registrar-Recorder/County Clerk was instructed to comply with the City's request, provided that the City pays all related costs.**

> Ayes: 5 - Supervisor Solis, Supervisor Ridley-Thomas, Supervisor Kuehl, Supervisor Knabe and Supervisor Antonovich

*Attachments:* Board Letter

**51.** Request from the City of Vernon: Render specified services relating to the conduct of a General Municipal Election to be held on April 14, 2015. (14-5628)

**On motion of Supervisor Kuehl, seconded by Supervisor Antonovich, this item was approved; and the Registrar-Recorder/County Clerk was instructed to comply with the City's request, provided that the City pays all related costs.**

> Ayes: 5 - Supervisor Solis, Supervisor Ridley-Thomas, Supervisor Kuehl, Supervisor Knabe and Supervisor Antonovich

*Attachments:* Board Letter

## IV.  MISCELLANEOUS

52.    **Additions to the agenda which were posted more than 72 hours in advance of the meeting, as indicated on the supplemental agenda.** (12-9995)

52-A.    Recommendation as submitted by Supervisor Ridley-Thomas: Proclaim January 27 through January 29, 2015 as "Homeless Count Week 2015" and instruct the Interim Chief Executive Officer to work with the Executive Director of Los Angeles Homeless Services Authority, the Directors of Public Social Services, Child Support Services, Mental Health, Health Services, Public Health, Parks and Recreation, Personnel, Children and Family Services, Public Works and Community and Senior Services, the County Librarian, Executive Director of the Community Development Commission, Chief Information Officer, Policy Roundtable for Child Care, the Superintendent of Schools and the Sheriff, to ensure support for the 2015 Homeless Count and encourage staff to volunteer at this event.  (14-5739)

**On motion of Supervisor Ridley-Thomas, seconded by Supervisor Antonovich, this item was approved.**

Ayes:    5 -    Supervisor Solis, Supervisor Ridley-Thomas, Supervisor Kuehl, Supervisor Knabe and Supervisor Antonovich

*Attachments:*    Motion by Supervisor Ridley-Thomas

**52-B.** Recommendation as submitted by Supervisor Ridley-Thomas: Authorize the Director of Health Services to act as the County's agent pursuant to the Martin Luther King, Jr. (MLK) Community Hospital lease agreement that was signed and approved by the Board in April of 2014 and to facilitate activities which support the Hospital's timely opening, subject to approval by County Counsel and notification to the Board and Interim Chief Executive Officer, when exercise of authority results in an expenditure of less than $500,000 with no Net County Cost (NCC) and is related to the following specific areas:

> The tripartite agreement among the County, MLK Community Hospital and Cerner governing the Hospital's electronic health record system;

> Temporary, non-clinical expansion activities either on or off campus;

> Temporary space use agreements to allow MLK Community Hospital access to County-operated space on campus at no new NCC, for the purposes of training and start-up activities to terminate no later than six months after the Hospital opening;

> Temporary space use agreements to allow the Worker Education Resource Center access to County-operated space on campus at no new NCC, for the purposes of staff recruitment activities for MLK Community Hospital, to terminate no later than 12 months after the Hospital opening;

> Temporary adjustments needed to accommodate MLK Community Hospital employee and guest parking needs to terminate three months after the Hospital opening; and

> Facilitate with other responsible County Departments, such as the Department of Public Works and the Chief Executive Office, to achieve design and construction changes needed to improve safety and maintenance needs for the Azul Healing Garden.  (14-5738)

**Dr. Mitchell Katz, Director of Health Services, and Dr. Mark Ghaly, Deputy Director, Community Health and Integrated Health Programs, Department of Health Services, responded to questions posed by the Board.**

**Supervisor Knabe made a friendly amendment to Supervisor Ridley-Thomas' motion to instruct the Director of Health Services to report back to the Board quarterly on the activities and expenditures related to the delegated authority.  Supervisor Ridley-Thomas accepted Supervisor Knabe's friendly amendment.**

**After discussion, on motion of Supervisor Knabe, seconded by Supervisor Ridley-Thomas, this item was approved as amended.**

**Ayes:**    5 -    Supervisor Solis, Supervisor Ridley-Thomas, Supervisor Kuehl, Supervisor Knabe and Supervisor Antonovich

**Attachments:**    Motion by Supervisor Ridley-Thomas
Report
Video
Audio

**53.**    **Items not on the posted agenda, to be presented and (if requested) referred to staff or placed on the agenda for action at a future meeting of the Board, or matters requiring immediate action because of an emergency situation or where the need to take immediate action came to the attention of the Board subsequent to the posting of the agenda.** (12-9996)

**53-A.**    Report by the Chief Executive Office on storm preparations and the County's coordination with the cities on emergency efforts, as requested by Supervisor Knabe. (14-5774)

**Rita Robinson, Deputy Chief Executive Officer, presented a verbal report and responded to questions posed by the Board.**

**After discussion, no action was taken by the Board.**

*Attachments:*    Video
                        Audio

Board of Supervisors                    **Statement Of Proceedings**                    December 16, 2014

**Public Comment    55**

55.    Opportunity for members of the public to address the Board on items of interest that are within jurisdiction of the Board.

**Robert Lucas, Irene Pang, Francisco Rivera, Josh Liddy, David Serrano, Arnold Sachs and Eric Preven addressed the Board.** (15-0014)

*Attachments:*    Video
                           Audio

**Adjournments    56**

56.    On motions, duly seconded and unanimously carried, the meeting was adjourned in memory of the following persons:

**Supervisor Kuehl and All Members of the Board**
Mary Ann Mobley

**Supervisors Kuehl, Knabe and Solis**
Beverly Nemer Karp

**Supervisor Kuehl**
Richard J. Edelman
Phil Stern
Ann Beth Vinetz
Ken Weatherwax

**Supervisor Knabe**
Henry "Hank" Osterhoudt

**Supervisor Antonovich and All Members of the Board**
Lester R. Miguel

**Supervisor Antonovich**
Carol Branch
Daniel Joseph Donohue
Jean Shin Douglas
Robert L. Hemmings
Martin John Zaninovich  (14-5771)

*County of Los Angeles*                    **Page 55**

## V.  ITEMS CONTINUED FROM PREVIOUS MEETINGS FOR FURTHER DISCUSSION AND ACTION BY THE BOARD

**A-1.**    Continue local emergencies as a result of the following: (a) Discovery of an infestation of fruit flies, as proclaimed on May 10, 1990; (b) Conditions of extreme peril to the health and safety of persons arising as a result of Swine Influenza A virus within Los Angeles County, as proclaimed on April 28, 2009 and ratified by the Board on April 28, 2009; (c) Conditions of extreme peril to the health and safety of persons and property arising as a result of the severe winds beginning in Los Angeles County on November 30, 2011, as proclaimed on December 1, 2011 and ratified by the Board on December 1, 2011; and (d) Conditions of extreme peril to the safety of persons and property arising as a result of wildfires beginning on May 30, 2013, in the areas of San Francisquito Canyon, Lake Hughes, Lake Elizabeth, and Green Valley areas in Los Angeles County, as proclaimed on June 3, 2013 and ratified by the Board on June 4, 2013; (e) Conditions of extreme peril to the safety of persons and property arising as a result of wildfires beginning on January 16, 2014, affecting Glendora, Azusa, Duarte and surrounding areas in Los Angeles County, as proclaimed on January 16, 2014 and ratified by the Board on January 21, 2014; (f) Conditions of extreme peril to the safety of persons and property as a result of severe winter rainstorms beginning on February 27, 2014 affecting East San Gabriel Valley communities, Lake Hughes, Lake Elizabeth and surrounding areas in Los Angeles County, as proclaimed on March 7, 2014 and ratified by the Board on March 11, 2014; and (g) conditions of extreme peril to the safety of persons, and public property as a result of summer thunderstorms beginning August 3, 2014, affecting the San Gabriel Mountain and Foothill communities and surrounding areas in Los Angeles County, as proclaimed and ratified by the Board on August 5, 2014.  (A-1)

**This item was reviewed and continued.**

### VI.  CLOSED SESSION MATTERS FOR DECEMBER 16, 2014

**CS-1.**  CONFERENCE WITH LEGAL COUNSEL - EXISTING LITIGATION
(Paragraph (1) of subdivision (d) of Government Code Section 54956.9)

Alex Rosas, et al. v. Leroy Baca, et al., United States District Court, Central District, Case No. CV12-00428 PSG (SHx)

This lawsuit concerns allegations of violence in the Los Angeles County Jails.

**The Board authorized settlement of the matter entitled Alex Rosas, et al. v. Leroy Baca, et al. The details of the settlement will be made available once finalized by all parties. The vote of the Board was unanimous with all Supervisors being present.   (12-0821)**

*Attachments:*    Settlement Agreement


**CS-2.**  CONFERENCE WITH LEGAL COUNSEL - EXISTING LITIGATION
(Paragraph (1) of subdivision (d) of Government Code Section 54956.9)

Gonzalo Martinez v. County of Los Angeles, et al., Federal District Court Case No. CV 14-05456 DSF

This Federal civil rights lawsuit concerns allegations of excessive use of force by Sheriff's deputies.

**In Open Session, this item was continued to January 6, 2015.  (14-5688)**

**CS-3.**  CONFERENCE WITH LEGAL COUNSEL - EXISTING LITIGATION
(Paragraph (1) of subdivision (d) of Government Code Section 54956.9)

State of California, County of Los Angeles, et al., ex rel. Christopher J. Schroen v. BP America Production Company, et. al., San Francisco Superior Court Case No. CGC-12-522063

This lawsuit concerns allegations of natural gas overcharges to the County.

**The Board authorized County Counsel to intervene and join the State Attorney General in prosecuting the matter entitled State of California, County of Los Angeles, et al., ex rel. Christopher J. Schroen v. BP America Production Company, et. al. The vote of the Board was unanimous with all Supervisors being present.   (14-5690)**

*Attachments:*    Settlement Agreement

**CS-4.** CONFERENCE WITH LEGAL COUNSEL - ANTICIPATED LITIGATION
(Paragraph (2) of subdivision (d) of Government Code Section 54956.9)

Significant exposure to litigation (one case)

**No reportable action was taken.**  (10-2476)

**CS-5.** PUBLIC EMPLOYMENT
(Government Code Section 54957)

Consideration of candidates for the position of Director of Public Health.

**No reportable action was taken.**  (14-5571)

**CS-6.** PUBLIC EMPLOYMENT
(Government Code Section 54957)

Consideration of candidates for the position of Treasurer and Tax Collector.

**No reportable action was taken.** (14-5569)

**CS-7.** PUBLIC EMPLOYMENT
(Government Code Section 54957)

Interview and consideration of candidates for the position of Executive Director of the Office of Child Protection.

**No reportable action was taken.** (14-4971)

**CS-8.** DEPARTMENT HEAD PERFORMANCE EVALUATIONS
(Government Code Section 54957)

Department Head performance evaluations

**No reportable action was taken.** (11-1977)

**CS-9.** CONFERENCE WITH LABOR NEGOTIATORS
(Government Code Section 54957.6)

Agency designated representatives: Sachi A. Hamai, Interim Chief Executive Officer and designated staff

Employee Organization(s) for represented employees: The Coalition of County Unions, AFL-CIO; Local 721, SEIU, Union of American Physicians and Dentists; Guild For Professional Pharmacists; Peace Officers Counsel of California; Association of Public Defender Investigators; Association of Deputy District Attorneys; Los Angeles County Association of Environmental Health Specialists, Professional Peace Officers Association; and

Unrepresented employees (all).

**No reportable action was taken.** (13-4431)

**Report of Closed Session** (CSR-14)

*Attachments:*    Audio Report of Closed Session 12/16/14

Closing    57

57.    Open Session adjourned to Closed Session at 11:47 a.m. following adjournments to:

CS-1.
Confer with Legal Counsel on existing litigation, pursuant to Paragraph (1) of subdivision (d) of Government Code Section 54956.9:

Alex Rosas, et al. v. Leroy Baca, et al., United States District Court, Central District, Case No. CV12-00428 PSG (SHx)

This lawsuit concerns allegations of violence in the Los Angeles County Jails.

CS-3.
Confer with Legal Counsel on existing litigation, pursuant to Paragraph (1) of subdivision (d) of Government Code Section 54956.9:

State of California, County of Los Angeles, et al., ex rel. Christopher J. Schroen v. BP America Production Company, et. al., San Francisco Superior Court Case No. CGC-12-522063

This lawsuit concerns allegations of natural gas overcharges to the County.

CS-4.
Confer with Legal Counsel on anticipated litigation, pursuant to Paragraph (2) of subdivision (d) of Government Code Section 54956.9:

Significant exposure to litigation (one case)

CS-5.
Consider candidates for the position of Director of Public Health, pursuant to Government Code Section 54957.

CS-6.
Consider candidates for the position of Treasurer and Tax Collector, pursuant to Government Code Section 54957.

CS-7.
Consider candidates for the position of Executive Director of the Office of Child Protection, pursuant to Government Code Section 54957.

**CS-8.**

Consider Department Head performance evaluations, pursuant to Government Code Section 54957.

**CS-9.**

Confer with Labor Negotiators, pursuant to Government Code Section 54957.6:

Agency designated representatives: Sachi A. Hamai, Interim Chief Executive Officer and designated staff

Employee Organization(s) for represented employees: The Coalition of County Unions, AFL-CIO; Local 721, SEIU, Union of American Physicians and Dentists; Guild For Professional Pharmacists; Peace Officers Counsel of California; Association of Public Defender Investigators; Association of Deputy District Attorneys; Los Angeles County Association of Environmental Health Specialists, Professional Peace Officers Association; and

Unrepresented employees (all)

Closed Session convened at 11:55 a.m. Present were Supervisors Hilda L. Solis, Mark Ridley-Thomas, Sheila Kuehl, Don Knabe and Michael D. Antonovich, Mayor presiding.

Closed Session adjourned at 1:58 p.m. Present were Supervisors Mark Ridley-Thomas, Sheila Kuehl, Don Knabe and Hilda L. Solis, Chair Pro Tem presiding. Absent was Supervisor Michael D. Antonovich.

Open Session reconvened at 1:59 p.m. Present were Supervisors Mark Ridley-Thomas, Sheila Kuehl, Don Knabe and Hilda L. Solis, Chair Pro Tem presiding. Absent was Supervisor Michael D. Antonovich.

The Board of Supervisors of the County of Los Angeles, and ex officio the governing body of all other special assessment and taxing districts, agencies and authorities for which said Board so acts, adjourned its meeting at 2:01 p.m.

The next Regular Meeting of the Board will be Tuesday, January 6, 2015 at 9:30 a.m. (14-5773)

The foregoing is a fair statement of the proceedings of the regular meeting held December 16, 2014, by the Board of Supervisors of the County of Los Angeles and ex officio the governing body of all other special assessment and taxing districts, agencies and authorities for which said Board so acts.

Patrick Ogawa, Acting Executive Officer
Executive Officer-Clerk
of the Board of Supervisors

By

Adela Guzman
Head Board Specialist, Agenda
Preparation Section

# EXHIBIT T

PAUL
HASTINGS



December 24, 2014

**By Email**

Elizabeth J. Gibbons, Esq.
Green & Shinee, P.C.
16055 Ventura Boulevard, Suite 1000
Encino, California 91436

　　　Re: *Rosas v. Scott*, Case No. CV 12-00428 DDP

Dear Counsel:

We are writing on behalf of the members of the Plaintiff Class in the above-referenced matter in response to your December 19, 2014 letter on behalf of the Association for Los Angeles Deputy Sheriffs ("ALADS"). Your attempt to file a motion to intervene pursuant to Rule 24 of the Federal Rules of Civil Procedure ("Rule 24") is defective for the reasons set forth below. We are pleased to discuss these issues with you during a meet and confer during the week of December 29, 2014.

## I.    FACTUAL BACKGROUND

The *Rosas* lawsuit was initiated nearly three years ago – on January 18, 2012 – with the filing of the original Complaint by named Plaintiffs Alex Rosas and Jonathan Goodwin on behalf of a putative class of all current and future members of Men's Central Jail, Twin Towers Correctional Facility, and the Inmate Reception Center (collectively, "the Los Angeles County jails"). (Dkt. 1.) The Complaint chronicled dozens of incidents of savage beatings of inmates in the Los Angeles County jails and threats of violence by Los Angeles Sheriff's Department deputies, and alleged violations of inmates' Eighth Amendment and Fourteenth Amendment rights. (*See generally id.*)

To remedy "the pattern of excessive force and physical abuse in [the] jails," the Complaint requested an injunction and other relief including the following:

a)　"adequate policy on the use of force";

b)　"adequate investigation of all use of force incidents and inmate-on-inmate violence, with investigations performed by personnel unconnected to the attack under investigation";

c)　"appropriate training in use of force and prevention of inmate-on-inmate violence";

PAUL
HASTINGS

Elizabeth J. Gibbons, Esq.
December 24, 2014
Page 2

d) "appropriate discipline of staff members found to be involved in improper use of force incidences . . ."; and

e) "appropriate selection and supervision of command and uniformed custodial staff."

(*Id.* at Prayer for Relief, ¶¶ 2-3.)  The filing of the Complaint received a considerable amount of press, including in the *Los Angeles Times*, the *Los Angeles Daily News*, and local televisions stations.

Following the resolution of Defendant's pleading challenges and Plaintiffs' motion for class certification, Defendant filed, on June 29, 2012, a request to schedule a settlement conference before a judicial officer.  (*See* Dkt. 59; *see also* Dkt. 60 & 61.)  Plaintiffs filed a response to Defendant's request on July 3, 2012, which contained a copy of a detailed framework for settlement that Plaintiffs made to Defendant on April 24, 2012 as well as Defendant's response thereto dated June 13, 2012.  (Dkt. 62-1 at 4-5, 7-8.)  On July 6, 2012, Defendant filed a reply in support of his request for a settlement conference in which Defendant noted that "the Sheriff's Department is genuinely interested in pursuing settlement discussions."  (Dkt. 63 at 2.)  The Court entered an order on August 10, 2012 scheduling a settlement conference to be held at August 31, 2012 at 10:00 a.m.  (Dkt. 68.)  Following a continuance, the settlement conference was held on October 12, 2012.  (Dkt. 74 & 81.)

In the following years, the parties continued their settlement negotiations with the assistance of the Court.  Each of the settlement conferences held by Judge Pregerson was separately listed on the Court's docket as part of scheduling orders and/or minute orders – in total, there were **more than 20 public filings and orders on the Court's docket** explicitly referring to the parties' settlement negotiations.  A brief summary of the publicly-available information about the parties' settlement conferences is listed below.

- May 21, 2013:  The parties filed a stipulation that stated "the Parties are currently engaged in ongoing settlement talks and discovery for settlement purposes[.]"  (Dkt. 88.)

- September 30, 2013:  The Court entered an order setting a settlement conference for October 23, 2013 at 10:00 a.m.  (Dkt. 93.)

- October 23, 2013:  The Court entered minutes noting that a settlement conference was conducted and that a further settlement conference was scheduled for January 9, 2014 at 2:30 p.m.  (Dkt. 95.)

PAUL
HASTINGS

Elizabeth J. Gibbons, Esq.
December 24, 2014
Page 3

- January 9, 2014:  The Court entered minutes from a settlement conference – again noting that a settlement conference was held and scheduling a further conference for February 28, 2014.  (Dkt. 96 & 97.)

- February 28, 2014:  The Court entered minutes from a settlement conference.  (Dkt. 98.)

- May 15, 2014:  The Court entered a minute order scheduling a "status conference re: settlement" for May 22, 2014.  (Dkt. 99.)

- May 22, 2014:  The Court entered minutes of a settlement conference and noted that an additional "status conference re: settlement" was set for June 12 2014.  (Dkt. 100.)  The Court entered a separate minute order stating that the parties discussed "settlement of this entire matter" and that "[t]he parties agree that a panel of experts, comprised of Richard Drooyan, Robert Houston, and Jeffrey Schwartz, shall be retained to *prepare an Action Plan relating to certain policies and practices employed in the Los Angeles County Jails*.  The parties will submit a list of areas of concern to the Panel no later than Wednesday, May 28, 2014.  *The Panel has been granted broad authority, including the authority to address subjects not raised by the parties and/or to conclude that further action is not required on certain issues*."  (Dkt. 101 (emphases added).)  The minute order required the parties to "circulate a proposed Settlement Agreement memorializing this understanding by May 29, 2014."  (*Id.*)

- June 12, 2014:  The Court entered minutes of a settlement conference and set an additional conference for July 10, 2014.  (Dkt. 102.)

- July 9, 2014:  The Court entered a minute order setting the settlement conference scheduled on July 10, 2014 for an earlier time.  (Dkt. 103.)

- July 10-11, 2014:  The Court entered minutes of the settlement conference that took place on July 10, 2014.  (Dkt. 104 & 105.)

- September 19, 2014:  The Court entered a minute order setting deadlines for the finalization of the settlement agreement and for the expert panel to complete the action plan.  (Dkt. 107 ("The parties shall finalize the Settlement Agreement no later than September 26, 2014.").)

- October 3, 2014:  The Court entered a minute order continuing the deadline for the expert panel to complete the action plan.  (Dkt. 108.)

PAUL
HASTINGS

Elizabeth J. Gibbons, Esq.
December 24, 2014
Page 4

The parties executed a settlement agreement in late September 2014, followed by the expert panel's finalization of an action plan in October 2014. At that time, the settlement agreement and action plan were submitted to the Los Angeles County Board of Supervisors ("Board of Supervisors") for approval. The fact that the Board of Supervisors was discussing the *Rosas* litigation was listed publicly on the Board of Supervisors' agendas – listed on the County's website – on at least two occasions. The Board of Supervisors approved the settlement on December 16, 2014.

## II.   **LEGAL STANDARD**

As a threshold matter on any motion to intervene, the court must determine whether the request is timely. *United States v. State of Or. ("Oregon")*, 913 F.2d 576, 588 (9th Cir. 1990) ("Timeliness is the threshold requirement for intervention."); *see also United States v. State of Wash. ("Washington")*, 86 F.3d 1499, 1503, 1506-07 (9th Cir. 1996) (noting that timeliness is a requirement for intervention as of right and permissive intervention); Fed. R. Civ. P. 24(a) & (b) (same).[1] To determine whether a motion to intervene is timely, the court considers the following criteria:  (1) the stage of the proceedings; (2) whether the parties would be prejudiced; and (3) the reason for any delay in moving to intervene. *Washington*, 86 F.3d at 1503.

### A.   The Stage of the Proceeding Weighs Against Granting Intervention

With respect to the first factor, the court focuses on the stage of the proceeding at which an applicant seeks to intervene. *Smith v. Marsh*, 194 F.3d 1045, 1050 (9th Cir. 1999). When considering the stage of the proceeding, the court evaluates the degree to which the substantive and procedural issues have been settled. *Id.* at 1050-51. Where "the

---

[1] "[C]ourts will grant a motion to intervene as of right where (1) the motion is timely, (2) the applicant asserts 'an interest relating to the property or transaction which is the subject of the action,' (3) the disposition may impair the applicant's ability to protect her interest, and (4) 'the applicant's interest is not adequately represented by the existing parties.'" *Hufnagle v. Rino Int'l Corp.*, No. CV 10-08695 DDP VBKX, 2012 WL 6553743, at *1 (C.D. Cal. Dec. 14, 2012) (Pregerson, J.) (citing *McGough v. Covington Techs. Co.*, 967 F.2d 1391, 1394 (9th Cir.1992); Fed.R.Civ.P. 24(a)). As the ALADS' proposed motion to intervene is subject to denial on the grounds that it is untimely, this letter will not belabor the other reasons why intervention is improper – not the least of which are that the ALADS has no support for its contention that (1) the proposed settlement would impair the ALADS' ability to protect its interests, or that (2) the ALADS' interests are not adequately represented by the existing parties. Plaintiffs reserve their right to argue these grounds and/or any other grounds in any opposition to the ALADS' motion for intervention.

PAUL
HASTINGS

Elizabeth J. Gibbons, Esq.
December 24, 2014
Page 5

district court has substantively – and substantially – engaged the issues," the stage of proceeding factor weighs "heavily" against allowing intervention. *Id.*

Here, the ALADS seeks to intervene in the *Rosas* lawsuit after nearly three years of litigation, after numerous motions had been ruled on by this Court, after the exchange of voluminous discovery between the parties, and after two and a half years of intensive settlement negotiations before the Court. The culmination of this lengthy process is a detailed settlement and action plan mutually agreed to by the parties – and approved by the Board of Supervisors – which provides for an expert panel to advise on and monitor the implementation of certain reforms in the Los Angeles County jails. At this juncture, the only thing left is for the settlement to receive preliminary and final approval from the Court pursuant to the Federal Rules of Civil Procedure and for the reforms set forth in the action plan to be carried out.

The late stage of the proceedings at which the ALADS has attempted to intervene should weigh against intervention. In similar cases, courts in the Ninth Circuit have held that intervention after a settlement was reached by the parties was untimely. *See, e.g., Orange Cnty. v. Air Cal.*, 799 F.2d 535, 538 (9th Cir. 1986) (affirming denial of motion for intervention and holding that "the fact that Irvine waited until after all the parties had come to an agreement after five years of litigation should nevertheless weigh heavily against Irvine"); *Aleut Corp. v. Tyonek Native Corp.*, 725 F.2d 527, 530 (9th Cir. 1984) (district court did not abuse its discretion in denying motion to intervene, because court "could properly conclude that intervention on the eve of settlement following several years of litigation was not timely"); *Hufnagle*, 2012 WL 6553743, at *2 (holding that the first factor weighs against finding the motion to intervene timely, because Derivative Plaintiffs brought the application "at the eleventh hour, a mere two days prior to a final settlement approval hearing that is the product of over two years of litigation and extensive settlement negotiations").

Because the current case has progressed substantially to a settlement and this Court has substantively engaged the issues, the first factor – the stage of the proceeding – weighs heavily in favor of denying intervention.

### B.     The Prejudice to the Parties Weighs Against Granting Intervention

With respect to the second timeliness factor, the Court considers the presence or absence of prejudice to the existing parties in connection with the proposed intervention. *Smith*, 194 F.3d at 1051. Prejudice is often found in cases where invention may have the effect of "prolong[ing] the litigation, threaten[ing] the parties' settlement," and/or delaying relief to the parties of the lawsuit. *See, e.g., Cal. Dep't of Toxic Substances Control v. Commercial Realty Projects, Inc.*, 309 F.3d 1113, 1119 (9th Cir. 2002) (affirming denial of motion to intervene); *Aleut Corp.*, 725 F.2d at 530

PAUL
HASTINGS

Elizabeth J. Gibbons, Esq.
December 24, 2014
Page 6

(district court did not abuse its discretion in denying motion to intervene, because court "could properly conclude that intervention on the eve of settlement following several years of litigation was not timely and that to permit it would have prejudiced the rights of the [other parties] impermissibly").

The parties would face serious prejudice from the ALADS' intervention, because the intervention would seriously disrupt a delicate and complex settlement insofar as it would require the parties to reopen negotiations, revisit settled issues, and delay the final approval of the settlement. This is especially problematic in this case because it took the parties more than two and a half years to reach a settlement – after numerous lengthy settlement conferences mediated by Judge Pregerson involving a variety of stakeholders including counsel for Plaintiffs, Defendant, and the County of Los Angeles, representatives of the Los Angeles Sheriff's Department, and the members of the expert panel *and* a lengthy process to reach consensus on the expert panel's action plan. The final result was a true settlement insofar that both sides won some issues and lost some issues. It is unlikely that the settlement will hold should another party join the mix.

Under similar circumstances, numerous courts in this circuit have refused to allow non-parties to intervene in lawsuits at the eleventh hour where there was a potential for disruption of a settlement. *See, e.g., Hufnagle*, 2012 WL 6553743, at *2 (denying motion to intervene and holding that "[t]he possibility that intervention at this late date may disrupt a long discussed, otherwise agreed-upon settlement also bears upon the prejudice to the parties to this suit"); *Empire Blue Cross & Blue Shield v. Janet Greeson's A Place For Us, Inc.*, 62 F.3d 1217, 1220 (9th Cir. 1995) (affirming denial of motion to intervene because "modification could prejudice the parties" and possibly "'unravel' the original settlement"); *Oregon*, 913 F.2d at 588 (holding that it was not an abuse of discretion for district court to find that "intervening at this stage . . . would seriously prejudice all the parties to the suit because the plan is complex and delicately balanced"); *Orange Cnty.*, 799 F.2d at 538 (affirming denial of motion to intervene where "[t]he district court felt that to allow Irvine to intervene 'at this late date' would be the undoing of five years of protracted litigation finally resolved by the Stipulated Judgment" as intervention would "clearly" prejudice the parties involved).

Where, as here, intervention could have the result of prolonging already protracted litigation and delaying important relief to the parties of the lawsuit, courts have been especially reluctant to grant motions to intervene. *See, e.g., United States v. Alisal Water Corp.*, 370 F.3d 915, 923 (9th Cir. 2004) (denying intervention where "Silverwood's intervention could complicate and delay long standing efforts by the United States to ensure safe drinking water on behalf of the public"); *Cal. Dep't of Toxic Substances Control*, 309 F.3d at 1119 (holding that district court did not abuse its discretion by denying motion to intervene in a long-litigated environmental action that

PAUL
HASTINGS

Elizabeth J. Gibbons, Esq.
December 24, 2014
Page 7

would, among other things, "unnecessarily prolong the litigation, threaten the parties' settlement, and further delay cleanup and development of the [Landfill]" (alteration in the original)); *Smith*, 194 F.3d at 1051 (affirming denial of motion to intervene where intervention would lead to the introduction of "additional issues at such a late stage in the proceedings [and that this] would cause undue delay"); *Alaniz v. Tillie Lewis Foods*, 572 F.2d 657, 659 (9th Cir. 1978) ("In evaluating the second factor, courts have emphasized the seriousness of the prejudice which results when relief from long-standing inequities is delayed.  Here, the [consent] decree is already being fulfilled; to countermand it now would create havoc and postpone the needed relief.").

Because any intervention by ALADS has the potential of disrupting a delicate settlement and delaying relief to the Plaintiff Class, the second factor – the prejudice to the parties – weighs heavily in favor of denying intervention.

C.   **There is No Adequate Reason for the Nearly Three Year Delay in Seeking Intervention**

With respect to the third timeliness factor, the Court considers the explanation for any delay in seeking intervention.  *Washington*, 86 F.3d at 1503.  "[A] party seeking to intervene must act as soon as he knows or has reason to know that his interests might be adversely affected by the outcome of the litigation."  *Oregon*, 913 F.2d at 589 (internal quotation marks and citation omitted); *Cal. Dep't of Toxic Substances Control*, 309 F.3d at 1120.  A "substantial lapse of time weighs heavily against intervention."  *Washington*, 86 F.3d at 1503.

Although the ALADS contends that it received its "first indication . . . that this litigation will impact the terms of the present MOU and the terms and conditions of employment of Los Angeles County Deputy Sheriffs" in a December 16, 2014 editorial (*see* Letter at 2.), this misrepresents the standard for intervention.  *See Oregon*, 913 F.2d at 589 (non-party must file motion to intervene "as soon as he . . . *has reason to know* that his interests *might* be adversely affected by the outcome of the litigation" (emphasis added)); *Cal. Dep't of Toxic Substances Control*, 309 F.3d at 1120.  The ALADS should have been aware that its interests might be adversely affected by the outcome of this litigation as early as January 18, 2012 when the Complaint was filed.  As the ALADS acknowledged in its letter, the Prayer for Relief in the Complaint requests broad-ranging injunctive relief to remedy the pervasive problems in the Los Angeles County jails and explicitly references proposed changes that would affect deputies such as revised force policies, trainings, investigations, and discipline.  (*See id.*; *see also* Dkt. 1 (Compl.) at 2-3.)  Given that the Complaint is publicly-available and received significant press coverage – including in the *Los Angeles Times*, which is the paper where the editorial appeared that the ALADS contends first alerted it to the settlement – the ALADS has no adequate reason for its claim that it was not aware that the lawsuit might implicate its

PAUL
HASTINGS

Elizabeth J. Gibbons, Esq.
December 24, 2014
Page 8

interests. *See Alisal Water Corp.*, 370 F.3d at 923 (holding that filing of complaint put intervenor on constructive notice of United States' potentially adverse interest and the need to intervene).

Any claim that the ALADS' delay in seeking intervention was due to its lack of awareness that the parties were engaged in settlement negotiations similarly falls flat. The ALADS had ample notice of the parties' settlement negotiations, as the Court's docket is replete with references to the fact that the parties were engaged in extensive settlement negotiations for the past two and a half years. Indeed, the Court's online docket contains 35 references to the word "settlement" in 22 different docket entries dated as early as June 29, 2012. (*See* Dkt. 59.) Moreover, the Court made clear the potential broad-ranging nature of the settlement being discussed by the parties in its minute order dated May 22, 2014, which noted that the parties discussed "settlement of this entire matter," agreed to the retention of the expert panel to "prepare an Action Plan relating to certain policies and practices employed in the Los Angeles County Jails," and noted that "[t]he Panel has been granted broad authority, including the authority to address subjects not raised by the parties." (Dkt. 101.) The engagement of the expert panel, development of the action plan, and the parties' finalization of the settlement agreement was mentioned in other orders dated September 19 and October 3, 2014. (*See* Dkt. 107 & 108.)

Courts in the Ninth Circuit routinely deny motions for intervention where the non-party seeking intervention had prior notice that the nature of the case might impact its interests. *See, e.g., Alaniz*, 572 F.2d at 659 ("The crux of appellants' argument is that they did not know the settlement decree would be to their detriment. But surely they knew the risks. To protect their interests, appellants should have joined the negotiations before the suit was settled."); *Hufnagle*, 2012 WL 6553743, at *1 (non-party did not have an adequate reason for delayed motion to intervene, because they had notice of "the substance of the settlement proposal" and "the nature of the assets in issue in th[e] case" due to court filings); *Cal. Dep't of Toxic Substances Control*, 309 F.3d at 1120 ("While Cities were not certain that the consent decree would be adverse to their interests, they had reason to know that negotiations might produce a settlement decree to their detriment. . . ." (internal citations omitted)); *Orange Cnty.*, 799 F.2d at 538 ("Irvine should have contemplated that due to the serious existing facility constraints at JWA, a likely result of the negotiations would be an agreement to look to other facilities for help, including El Toro. In order to protect itself against this eventuality, Irvine should have intervened sooner.").

As the ALADS either knew or should have known that the lawsuit and/or the parties' settlement might implicate its interests, it should have sought to intervene to protect its

# PAUL
## HASTINGS

Elizabeth J. Gibbons, Esq.
December 24, 2014
Page 9

interests at an earlier date.  In short, the ALADS' proposed motion to intervene is too little, too late.

## III.    **CONCLUSION**

For the foregoing reasons, the ALADS' proposed motion to intervene is defective on the ground that it is untimely.  Accordingly, we plan to oppose any attempt for the ALADS to intervene in the *Rosas* litigation at this late stage.  Please let us know when you are available during the week of December 29 for a meet and confer.


Sincerely,

Peter J. Eliasberg, ACLU Foundation of Southern California
Margaret Winter, ACLU National Prison Project
John Durrant, Paul Hastings LLP


cc:    Roger Granbo, Esq.
       Rod Castro-Silva, Esq.
       Paul Beach, Esq.
       Justin Clark, Esq.

# EXHIBIT U

-----Original Message-----
From: Peter Eliasberg
Sent: Tuesday, December 30, 2014 3:32 PM
To: 'gsras@socal.rr.com'
Subject: RE: Rosas v. Baca

Elizabeth, I do not have your colleague's e-mail address, so I am providing it to you, https://www.aclusocal.org/wp-content/uploads/2014/11/rosas-stlmnt-agrmnt_001.pdf
Sincerely,

1

Peter Eliasberg