14-0406\PREPLYLASD150223.ejg
GREEN & SHINEE, A P.C.
RICHARD A. SHINEE State Bar No. 62767
ELIZABETH J. GIBBONS State Bar No. 147033
Attorneys at Law
16055 Ventura Boulevard, Suite 1000
Encino, California 91436
Phone: (818) 986-2440
Facsimile: (818) 789-1503
Attorneys for Intervener, ALADS

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX ROSAS, et al.,<br><br>      Plaintiffs,<br><br>v.<br><br>LEROY BACA, et al.,<br><br>      Defendants.<br><br>ASSOCIATION FOR LOS ANGELES DEPUTY SHERIFFS, On Behalf of Its Members,<br><br>      Proposed Intervener, | Case No. 2:12 CV 00428-DDP-SH<br><br>**INTERVENER'S MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO DEFENDANTS' OPPOSITION TO ALADS' MOTION TO INTERVENE**<br><br>DATE:    March 9, 2015<br>TIME:    10:00 A.M.<br>PLACE:  Courtroom 3<br>          Hon. Dean D. Pregerson |

## **TABLE OF CONTENTS**

                                                                **Page(s)**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii, iii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    I.    DEFENDANTS HAVE A STATUTORY DUTY TO BARGAIN WITH ALADS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    II.   THE RECENT DISCUSSIONS BETWEEN THE DEPARTMENT AND ALADS DO NOT CONSTITUTE GOOD FAITH NEGOTIATIONS AS REQUIRED BY THE CALIFORNIA GOVERNMENT CODE . . . . . . . . . . . . . . . . . . . 10

    III.  U.S. V. CITY OF LOS ANGELES CONTROLS . . . . . . . . . . . . . 14

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## <u>TABLE OF AUTHORITIES</u>

**<u>State Cases:</u>** **<u>Page(s)</u>**

*Claremont Police Officers Association v. City of Claremont* (2006)
39 Cal.4th 623 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 3

*Fire Fighters Union v. City of Vallejo* (1974)
12 Cal.3d 608 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5

*International Association of Firefighters, Local 188, AFL-CIO v.
City of Richmond* (2011)
51 Cal.4th 259 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 16

*Social Workers' Union, Local 535 v. Alameda County Welfare Dept.* (1974)
11 Cal.3d 382 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*Solano County Employees' Assn. v. County of Solano* (1982)
136 Cal.App.3d 256 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Vernon Fire Fighters v. City of Vernon* (1980)
107 Cal.App.3d 802 . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8, 10, 16


**<u>Federal Cases:</u>** **<u>Page(s)</u>**

*Firefighters, Local 188, Ibid*; *First National Maintenance Corp. v. NLRB* (1981)
452 U.S. 666 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

*Georgia Power Co. v. NLRB*
427 F.3d 1354 (11th Cir, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Graham v. Connor* (1989)
490 U.S. 386 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*International Union, United Automobile, Aerospace, and Agricultural Implement
Workers v. Scofield*
382 U.S. 205 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Swan v. Peterson,*
6 F.3d 1373, 1383 & n.10 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . 18

*TruServ Corp. v. NLRB*
347 U.S. App. D.C. 61, 254 F.3d 1105, 1119 (D.C. Cir. 2001) . . . . . . . . . . 6

*United States v. City of Los Angeles*
288 F.3rd 391 (9th Cir, 2002) . . . . . . . . . . . . . . . . 14, 15, 16, 17, 18, 19

*United States v. Michigan*
940 F.2d 143 (6th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Oregon*
839 F.2d 635 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . 18

## TABLE OF AUTHORITIES (cont'd)

**State Statutes:**

**Page(s)**

California Government Code:

Section 3404.5 (a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
Section 3405 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
Section 3504.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
Section 3505 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 13

**INTRODUCTION**

Defendants oppose the intervention motion filed by ALADS on the grounds that 1) ALADS has no interest in this litigation because all the policy and rule changes contemplated by the parties' agreement are solely matters of management prerogative over which the Department has no legal duty to bargain with ALADS; 2) despite its lack of statutory obligation to bargain with ALADS, the Department is nonetheless benevolently listening to ALADS's concerns about the effects of the proposed rules and policy changes required by the parties' Implementation Plan, thereby, apparently, rendering the Motion moot; and 3) the policy and rule changes contemplated by the Implementation Plan, which are characterized by Plaintiff ACLU as "*a [sic] historic opportunity to stand against the problems of the past*," will result in no changes to the existing disciplinary policies of the Sheriff's Department.  Intervenors respectfully submit that these arguments are both factually and legally insufficient to defeat ALADS' intervention in this case.

**ARGUMENTS**

**I.**

**DEFENDANTS HAVE A STATUTORY DUTY TO BARGAIN WITH ALADS**

The gravamen of Defendant's opposition to ALADS' intervention is that ALADS has no interest in this action because the Department has no obligation to bargain with ALADS over any of the proposed changes to policy, procedures, and work rules required by the Settlement Agreement and Implementation Plan.  This position is based upon the Defendant's incorrect interpretation of the California Supreme Court's decision in *Claremont Police Officers Association v. City of Claremont* (2006) 39 Cal.4th 623.  By the Department's reasoning, the *Claremont* decision stands for the proposition that a public employer has no duty to bargain over any issue which the employer believes

relates in any way to a fundamental policy issue.  This is not, however, what the Court in *Claremont* actually held.

The *Claremont* Court determined that there was a distinction between an employer's duty to bargain over a fundamental managerial or policy decision as opposed to the implementation of that decision.  In other words, if the subject matter at hand implicates a fundamental management policy, whether or not a duty to bargain exists is dependent upon a balancing test, which the Court articulated.  Here, the proposed work rule modifications do not constitute a fundamental management or policy decision, but rather concern a number of long recognized mandatory subjects of bargaining.  As such, the *Claremont* analysis and the teaching of *Claremont* is neither applicable nor controlling here.

In *International Association of Firefighters, Local 188, AFL-CIO v. City of Richmond* (2011) 51 Cal.4th 259, the California Supreme Court elaborated on *Claremont*, pointing out that the United States Supreme Court has identified three categories of management decisions.  The first category relates to decisions that have only an indirect and attenuated impact on employment and thus are not mandatory subjects of bargaining.  The second category, which is relevant here, are those decisions which ". . . *directly define the employment relationship, such as wages, **workplace rules**, and the order of succession of layoffs and recalls.* ***Decisions in this second category are always mandatory subjects of bargaining***."  [Emphasis added.]  *Id*. at p. 272.  The third category, to which the balancing test applies, are those decisions which constitute a hybrid of the first two categories.  *Id*. at 273.

The Department, in its opposition, attempts to conflate the second and third categories, by arguing that it has no duty to bargain over issues which have long been recognized as mandatory subjects of bargaining since these issues also, according to the Department, reflect fundamental policy decisions.  Neither the *Claremont* Court, nor any Court thereafter, has, as the Department urges this Court

to do, expanded the third category of management decisions to completely engulf, and eliminate, the second category of decisions which are "*always mandatory subjects of bargaining*."  The work rule changes required by the Implementation Plan here fall squarely into the second, always mandatorily negotiable category.

The changes in work rules at issue here will increase both the opportunities to discipline deputies as well as the severity of disciplinary penalties for ALADS members; will increase deputies' workloads; and directly implicate the safety of deputy sheriffs as they perform their duties.  Each of these constitutes a well established mandatory subject of bargaining and easily fall into the category not subject to the *Claremont* balancing analysis, as enunciated both by the United States Supreme Court and the California Supreme Court.  *Firefighters, Local 188, Ibid*; *First National Maintenance Corp. v. NLRB* (1981) 452 U.S. 666, 676 - 680.

The factual circumstances before the *Claremont* Court likewise confirm that the California Supreme Court did not intend to over rule a long line of Federal and State legal precident, *sub silencio*.  The *Claremont* Court held that the City was not required to negotiate over its proposed plan to implement a study of officer conduct related to alleged racial profiling.

It is well settled that California courts will look to federal law for guidance in interpreting state statutes whose language parallels that of the federal statutes.  *Social Workers' Union, Local 535 v. Alameda County Welfare Dept.* (1974) 11 Cal.3d 382, 391.  The scope-of-representation language of California Government Code section 3504 is taken directly from the federal Labor Relations Act (NLRA).  While California's exception to a public employer's bargaining obligation for "*merits, necessity, or organization*" has no direct analogue in the language of the NLRA, federal courts have incorporated the meaning of this exception into their interpretation of "*wages, hours, and terms and conditions of employment*."  *Fire Fighters Union v. City of Vallejo* (1974) 12 Cal.3d 608, 617-618.  Consequently, federal precedents provide persuasive, though not

limiting, authority in determining the bargaining obligations of Defendants in this case. *Ibid*.; *Social Workers' Union, Local 535, supra*, 11 Cal.3d at p. 391.

Specifically, changes to work rules which implicate employee safety have long been recognized as mandatory subjects of bargaining.  See, *Solano County Employees' Assn. v. County of Solano* (1982) 136 Cal.App.3d 256, 265 (county rule precluding employees' use of their motorcycles  at work is mandatory subject of bargaining).  Likewise, the imposition of work rules which increase the potential for employee discipline must always be bargained with the union.  See, *Vernon Fire Fighters v. City of Vernon* (1980) 107 Cal.App.3d 802, 817 (requiring City to bargain prior to imposition of rule prohibiting firefighters' use of city facilities to wash private automobiles during off-duty time).

Defendant claims in its opposition brief, that the decision to discipline employees "*is and always has been*" a fundamental management right over which it has no obligation whatsoever to negotiate.  (Def. Opp. p. 5, lines 23-28).  No where in its brief, however, does Defendants cite any case or other legal authority which stands for the proposition that discipline "*is and always has been*" a fundamental management right.  The California Court of Appeal in *Vernon Fire Fighters, supra*, applying well established and long standing Federal Court and NLRB precident, held to the contrary:

> *There is no question that the penalty provision exposed Captain Podlas to jeopardy, nor that it affected employee tenure and conditions.  The fact that the disciplinary provision directly affected employment security is clearly demonstrated in the instant case in that the council resolved that Podlas be suspended for three shifts and deprived of overtime for a six-month period; moreover, Fire Chief Colvin further recommended that Podlas be reduced in rank from "Captain Grade One" to "Captain*

*Grade Three." Therefore, **the imposed discipline directly affected the captain's wages, and the recommended discipline went to the heart of any meaningful definition of "job security." Because both wages and demotions are clearly within the prohibitory scope of the MMBA's meet and confer requirements, a disciplinary rule directly affecting either is also clearly within that scope*. [Internal quotation marks omitted; emphasis added.] 107 Cal. App. 3d 802, 816 n. 14.

Likewise, any change in work rules which results in increased employee workload is similarly a long standing, well recognized, mandatory subject of bargaining. As the California Supreme Court noted in *Fire Fighters Union v. City of Vallejo, supra*:

*First, the federal authorities uniformly recognize "workload" issues as mandatory subjects of bargaining whose determination may not be reserved to the sole discretion of the employer. (See, e.g., Gallenkamp Stores Co. v. N.L.R.B. (9th Cir. 1968) 402 F.2d 525, 529, fn. 4.) Thus, for example, in Beacon Piece Dyeing & Finishing Co., Inc. (1958) 121 N.L.R.B. 953, 954, 956, the National Labor Relations Board held that an employer could not unilaterally increase an employee's workload by assigning to him the operation of an extra machine. Similarly, the courts have recognized rules and practices affecting employees safety as mandatory subjects of bargaining since they indirectly concern the terms and conditions of his employment. ( N.L.R.B. v. Gulf Power Company (5th Cir. 1967) 384 F.2d 822.)* 12 Cal. 3d at

619-620

Likewise, "*the unilateral whittling away at grievance procedures*," by virtue of employer-implemented alternative procedures, have been held to violate the employer's mandatory obligation to bargain.  *Georgia Power Co. v. NLRB*, 427 F.3d 1354 (11th Cir, 2005); see also, *TruServ Corp. v. NLRB*, 347 U.S. App. D.C. 61, 254 F.3d 1105, 1119 (D.C. Cir. 2001) (holding that an employer "*was not free to replace unilaterally the contractual grievance procedure*"), cert. denied, 534 U.S. 1130, 122 S. Ct. 1070, 151 L. Ed. 2d 972 (2002).  Each of these mandatory subjects of bargaining are directly implicated by the changes required by the parties' Implementation Plan.

Specifically, section 2.5 of the Plan provides, in pertinent part,

*The Department's Custody use of force policy should provide that a Department member may not strike an inmate or use chemical agents or a taser on an inmate who is restrained ... and unless there are no other more reasonable means to control the inmate.*

Presently, all Department force policies, and all Department force training, state and teach that Deputies are allowed, and expected, to use "*objectively reasonable force*," as that term is specifically defined by the U.S. Supreme Court in *Graham v. Connor* (1989) 490 U.S. 386, 396-397, and its progeny.  The change in the standard by which a particular use of force will be judged, from the objective reasonableness standard articulated in *Graham v. Connor* to the subjective test of " *unless there are no other more reasonable means to control the inmate*," as required by the language of, for example, sections 2.5, 2.6, and 2.10 of the Implementation Plan, directly implicates officer safety and, therefore is a mandatory subject of bargaining.

Likewise, the imposition of this new, subjective standard for determining the propriety of a deputy's use of force significantly increases the

6

occasions for discipline of deputy sheriffs under this revised standard of review. As such, these proposed rules are mandatorily subject to bargaining before they can legally be implemented by Defendants.

Section 9.1 of the Plan requires documented cell checks, in all housing areas, "*at least every 30 minutes on an irregular schedule*." These cell checks are currently performed by deputy sheriffs on a schedule of once per hour. This provision of the Implementation Plan immediately doubles the work load of every deputy sheriff assigned to every housing location at every jail facility in the County. This direct and significant impact on deputies' workloads is a mandatory subject of bargaining.

Section 13 of the Plan requires implementation of a "*firm zero tolerance policy*" for all alleged acts of dishonesty and failure to report force. These rule changes directly and dramatically increase disciplinary penalties for ALADS members. Although the Department argues, in its opposition papers, that Department managers presently have the authority to fire a deputy sheriff accused of lying or failing to report force, the Department's currently published Guidelines for Discipline do not require, as would the "*firm zero tolerance policy*" of Section 13, discharge in every single circumstance. (See, Ex. J, Guidelines for Discipline.)

Under the current Guidelines for Discipline, the failure to report force can presently result in a suspension of 15 to 30 days **or** discharge. (Ex. J at p. 33.) The failure to report force which is witnessed, rather than used, by a deputy sheriff presently has a maximum penalty of 15 days suspension. (*Id.*) Lying to a supervisor presently carries a penalty range of 10 days to discharge. Lying to a supervisor or falsifying a report about a force incident carries 20 days to discharge. Lying during an investigation, either criminal or administrative, poses a potential penalty of 25 days suspension to discharge. (*Id.* at pp. 29, 30.)

Giving a supervisor false information concerning the reason for initiating or continuing a vehicle pursuit, for example, presently results in a penalty

of 10 to 15 days suspension, but not discharge. (*Id*. at p. 34.)  The misuse or abuse of sick time, which invariably involves an allegation of lying about the reason for an absence, presently results in a suspension of 1 to 3 days, but not discharge. (*Id*. at p. 31; see also, p. 30.)  Involvement in deceitful business practices likewise presently carries a disciplinary penalty of 5 to 15 days off. (*Id*. at p. 26.)

The implementation of the "*firm zero tolerance policy for acts of dishonesty*" required by Section 13 significantly increases both the opportunities for discipline and the harshness of the penalties imposed for perceived acts of dishonesty.  This policy will, for example, require the discharge of any deputy sheriff who simply denies any accusation of misconduct, no matter how minor, if the Department thinks that the accusation is true.  This rule change clearly implicates issues related to discipline and job security, two indisputably mandatory subjects of collective bargaining.  *Vernon Fire Fighters, supra*, 107 Cal. App. 3d at 816, n. 14 ("*Because both wages and [job security] are clearly within the prohibitory scope of the MMBA's meet and confer requirements, a disciplinary rule directly affecting either is also clearly within that scope*."

This policy likewise, despite the Department's blanket, unexplained claims to the contrary, directly, adversely, impacts and "*whittles away*" the purpose and effectiveness of the contractual grievance procedure.  Specifically, the negotiated Grievance procedure presently allows a deputy sheriff to grieve, or appeal for modification, reduction or elimination of proposed discipline, to first her unit commander and second to a Review Board which consists of her Chief, her Commander, and two peers selected by the disciplined deputy.  (Shinee Dec.  ¶¶ 35-37.)

Under the existing negotiated grievance procedure, the Captain, the Chief, Commander and two peers of the disciplined employee all have the authority to reduce, modify, or eliminate any proposed discipline for any alleged act or type of misconduct.  By imposing the "*firm zero tolerance policy*" required

by the Implementation Plan, the Department will effectively strip each of these participants in the grievance procedure of any authority to modify, reduce or eliminate any proposed discipline when an act of dishonesty or failure to report force is involved.  This, even though it is done without directly saying so, effectively and completely dismantles the negotiated grievance procedure and, therefore, is, as Defendant free admits, (Def. Opp. p. 16, lines 23-25) a mandatory subject of bargaining.

These, and other similar, related provisions of the Plan clearly implicate well settled mandatory subjects of bargaining.  California Government Code sections 3504.5 and 3505 requires the Department to both notifying ALADS **in writing** of the proposed changes, and to meet and confer with ALADS, **before** such rule changes are implemented.[1]

---

[1]California Government Code section 3404.5 (a) provides:
*Except in cases of emergency as provided in this section, the governing body of a public agency, and boards and commissions designated by law or by the governing body of a public agency, shall give reasonable written notice to each recognized employee organization affected of any ordinance, rule, resolution, or regulation directly relating to matters within the scope of representation proposed to be adopted by the governing body or the designated boards and commissions and shall give the recognized employee organization the opportunity to meet with the governing body or the boards and commissions.*

Section 3405 of that Code provides:
*The governing body of a public agency, or such boards, commissions, administrative officers or other representatives as may be properly designated by law or by such governing body, shall meet and confer in good faith regarding wages, hours, and other terms and conditions of employment with representatives of such recognized employee organizations, as defined in subdivision (b) of Section 3501, and shall consider fully such presentations as are made by the employee organization on behalf of its members prior to arriving at a determination of policy or course of action.*

*"Meet and confer in good faith" means that a public agency, or such representatives as it may designate, and representatives of recognized employee organizations, shall have the mutual obligation personally to meet and confer promptly upon request by either party and continue for a reasonable period of time in order to exchange freely information, opinions, and proposals, and to endeavor to reach agreement on matters within the scope of representation prior to the adoption by the public agency of its final budget for the ensuing year. The*

The Department's failure to notify ALADS in writing, and to negotiate with ALADS, prior to agreeing to implement the changes in work rules required by the Implementation Plan, which clearly implicate employee safety, workloads, and discipline, as well as adversely impact the grievance procedure, is in direct violation of the statutory duties which the Department owes to ALADS. *Vernon Fire Fighters, supra*, 107 Cal. App. 3d 802, 811 ("*The [no car washing] rule, being unilaterally adopted by the city council without prior notice to or meeting and conferring with the Union, was void in its entirety for procedural violation of section 3505 of the Government Code (MMBA).*")  As such, ALADS' rights as the exclusive bargaining representative for all Los Angeles County Deputy Sheriffs, have already been violated by the conduct of the parties to this litigation.  ALADS therefore has a protected interest in this litigation which entitles ALADS to intervene as of right.

## II.

### THE RECENT DISCUSSIONS BETWEEN THE DEPARTMENT AND ALADS DO NOT CONSTITUTE GOOD FAITH NEGOTIATIONS AS REQUIRED BY THE CALIFORNIA GOVERNMENT CODE

Defendants assert that they have reached out to ALADS and have engaged in good faith discussions regarding ALADS' concerns over the Implementation Plan.  (Def. Opp. at p. 3, lines 10-22; see also, p.13, lines 5-19, p.17, lines 4-14.)  Defendants further claim that these discussions are above and beyond their obligations under the Government Code and therefore satisfy any interest ALADS has in this litigation without the necessity of ALADS'

---

*process should include adequate time for the resolution of impasses where specific procedures for such resolution are contained in local rule, regulation, or ordinance, or when such procedures are utilized by mutual consent.*

intervention.  (*Id.*)  The fallacy of the Department's argument begins with its false premise that the meetings between ALADS and the Department in January and February, 2015 constitute compliance with the Department's bargaining obligations under the law.

First, contrary to Commander Dyer's statements in his Declaration, the Department has been anything but clear in its position regarding whether it considers the three meetings between the parties to constitute meet and confer bargaining.  As set forth in more detail in the Declaration of Richard A. Shinee, at the first meeting between ALADS and the Department on January 27, 2015, Mr. Shinee specifically asked the Department's representatives at the meeting if they believed the Department was obligated to bargain over the policy and rule changes envisioned by the Implementation Plan.  (Shinee Dec. at ¶¶ 14-15.)

Lt. Daniel Lopez, who is assigned to the Department's Employee Relations Unit, replied to Mr. Shinee's inquiry by stating unequivocally that the rule changes did require negotiation before they could be implemented.  One of the Department's attorneys in attendance, Mr. Brouwer, immediately contradicted Lt. Lopez and stated that the Department had no obligation to negotiate over the rule changes, claiming that each individual rule change had to be discussed separately to determine if it was negotiable.  Later in the same meeting, Mr. Brouwer agreed that since many of the proposed rule changes directly impact employee discipline and officer safety issues, the Department was required to bargain over these changes.  (*Id.*)

At the second meeting, which took place on January 30, 2015, Mr. Shinee began the meeting by discussing ground rules, commonly the first issue resolved in a formal meet and confer session but irrelevant if the meeting is not for the purposes of negotiations.  (Shinee Dec. at ¶ 18.)  Mr. Brouwer specifically agreed to Mr. Shinee's proposed ground rules that the parties would exchange written proposals for language changes and when any such changes were agreed

upon, a tentative agreement on that topic would be signed as the negotiations progressed, rather than wait until the end. (*Id*. at ¶ 19.)

Mr. Brouwer likewise agreed that final written agreement would be drafted reflecting all points of agreement when the negotiations were complete. (*Id*. at P20-21.)  No written agreements or memorialization of agreements would be necessary or even contemplated if these meetings were, as Commander Dyer now characterizes them, simply the Department listening to ALADS' concerns about the policy and rule changes required by the Implementation Plan.

Mr. Shinee also specifically asked at the January 30, 2015 meeting, if any of the Department representatives present had the authority to agree to any changes to the proposed policy and rule modifications discussed at the meeting. Mr. Brouwer stated that any changes had to be agreed to by both the Panel of three experts as well as the Plaintiffs in this litigation.  When Mr. Shinee replied to Mr. Brower that ALADS should be negotiating these proposed rule changes directly with Plaintiffs and the panel, Mr. Brouwer responded that the only way that would happen is if this intervention Motion is granted.  Mr. Brouwer, however, agreed that any agreement reached during these negotiations would be formally memorialized in a written agreement between ALADS and the Department, which is the usual practice between those parties during meet and confer sessions. (Shinee Dec. at P 21-22.)

Likewise, while it is clear from Commander Dyer's Declaration that he and Mr. Brouwer, at a minimum, agreed prior to the first meeting with ALADS on January 27, 2015, that the changes required by the Implementation Plan were not mandatory subjects of bargaining, this position was never made known to ALADS.  Instead, the Department's representatives vacillated, contradicted each other, cagily refused to commit to a position on whether the meetings were bargaining sessions, and eventually agreed upon ground rules which are followed during actual negotiation sessions.  It is impossible to accurately classify this

conduct by the Department as "good faith."

In addition, during the meetings on both January 27 and 30, 2015 ALADS asked Commander Dyer directly if he was involved in the preparation of the content of the Implementation Plan.  Contrary to his representations to this Court in his Declaration, Commander Dyer stated to ALADS in the meetings that no one from the Department had any input into the Implementation Plan, that it was prepared by County Counsel, Plaintiffs' counsel and the Panel,  and that he first saw the plan as a completed "done deal" sometime in late summer of 2014. (Shinee Dec. ¶¶ 25-28.)

The representations made to this Court, and those made to ALADS during the January and February meetings, concerning the object and purpose of those meetings are diametrically opposed.  These misrepresentations significantly undermine the Defendants' claim that they are conferring with ALADS in good faith.

Defendant's representations made to this Court, in any event, establish that the Department is, and has been, defying its lawful obligation to negotiate in good faith with ALADS over the policy and rule changes required by the Implementation Plan.  The Department's newly revealed plan to discuss ALADS' concerns with ALADS and bring those concerns to the Panel's attention, if the Department feels they are worthy of such review, does not come close to the statutory definition of the Department's obligation to meet and confer in good faith.  Cal. Govt. Code § 3505.  The appropriate remedy available to this Court to rectify the Defendants' continuing unlawful conduct is to grant the instant Motion to Intervene, in its entirety.

## III.

### *U.S. V. CITY OF LOS ANGELES* CONTROLS

Defendant's attempts to distinguish the 9th Circuit's decision in *United*

*States v. City of Los Angeles*, 288 F.3rd 391 (9th Cir, 2002) are unavailing.

First, there is no substantive difference between the completed Consent Decree in *City of Los Angeles* and the Settlement Agreement and Implementation Plan agreed upon by the parties here.  Neither the Consent Decree nor the Implementation Plan followed a litigated finding of Constitutional violations, a pattern or practice of unconstitutional policing, or of any actual violation of any law or any provision of the Constitution.  *Id*. at 396 ("*Before filing this suit, the United States discussed the issues with the City defendants.  The parties agreed to enter into a consent decree that would resolve the suit.  They negotiated a draft consent decree that was approved by the Los Angeles City Council.  Accordingly, on the same day that the United States filed the complaint in this action, the parties filed a "Joint Application to Enter Consent Decree" and lodged a proposed consent decree with the district court*.")

Both the Consent Decree and Implementation Plans are essentially agreed policy and rule revisions which will be implemented by the respective law enforcement agencies.  The present parties' use of the panel of experts to prepare the written plan, which both parties directly participated in creating[2], is insufficient to differentiate this case from the circumstances involved in *City of Los Angeles.*

The members of the Panel were not selected or appointed independently by the Court.  As with every other term of the Settlement Agreement and Implementation Plan, the Panel members were agreed upon after negotiation by the parties.  As with the Consent Decree in *City of Los Angeles*, there has not

---

[2]   The Parties' Settlement Agreement provides:

*1.      The Court will appoint Richard Drooyan, Jeffrey Schwartz, and Robert Houston ("the Panel") . . . .*

\* \* \*

*2.      In the event Mr. Drooyan becomes unavailable ..., then Defendant will select his replacement.  If Mr. Schwartz becomes unavailable . . . then Class Counsel will select his replacement.  If Mr. Houston becomes unavailable . . . then the parties will meet and confer to reach agreement regarding a replacement.*

been any litigation of and there has not been any judicial finding of any truth to the merits of Plaintiff's claims of a pattern and practice of Constitutional violations by Defendants.

According to the Declaration submitted by John Durrant, counsel for Plaintiffs in this action, in support of Plaintiffs' opposition to ALADS' intervention, the Sheriff's Department was directly and actively involved in the creation and modification of the Implementation Plan.  See, Durrant Dec., Docket No. 120-3, pp. 5-6, and Exhibits J, K, L, M, and N thereto.  The use of the Panel as a proxy to prepare the Department's agreed upon terms does not differentiate this case from *City of Los Angeles* in any substantively relevant manner.

In both this and the *City of Los Angeles* case, the defendant public safety agency deliberately excluded their employees' legally recognized bargaining representative from any involvement in the negotiation of the policy changes demanded by the Plaintiffs, here the ACLU and in *City of Los Angeles* the Federal Department of Justice.  The Sheriff's Department here more than just ignored ALADS, it deliberately misled ALADS as to the focus of the litigation in this case.

While this fact is directly relevant to the timeliness argument, as stated fully in ALADS' reply to the Plaintiffs' opposition to this motion, it also establishes the controlling precedent of the *City of Los Angeles* decision.  Here, the Sheriff's Department was specifically on notice. by virtue of that decision, that it was not free to "*unilaterally change a collective bargaining agreement[3] as a means of settling a dispute over whether the employer has engaged in constitutional*

---

[3]It should be noted that it is well established that "'*an existing and acknowledged practice' affecting conditions of employment has the same dignity as 'an existing agreement or rule.*'" *Vernon Firefighters, supra*, 107 Cal. App. 3d 802, 817, quoting  *International Assn. of Fire Fighters Union v. City of Pleasanton* (1976) 56 Cal.App.3d 959, 972.  Any unilateral change to any existing term or condition of employment, or other mandatory subject of bargaining, whether specifically included in the written MOU or not, is unlawful.

*violations.*" *City of Los Angeles, supra*, 288 F.3d at 400. Yet, that is exactly what the Department has done here.

The 9th Circuits's holding that the League had a protectable interest in the litigation directly defeats the current parties' claims that ALADS holds no such interest. The fact that the City of Los Angeles did not, in its litigation, assert the legally indefensible claim that changes to work rules which directly implicate discipline, officer safety, and the negotiated grievance procedure are not subject to negotiation, does not make the Department's assertion of that claim here correct or determinative of ALADS' intervention motion, as Defendant contends.

Defendant's claim that the Department is adequately representing ALADS and its members interests in this litigation, because now, after the agreement to policy changes has been finalized by the parties and awaits only Court approval, the Department is listening to ALADS' concerns about those changes, was rejected by the *City of Los Angeles* Court:

> *Normally, a presumption of adequate representation generally arises when the representative is a governmental body or officer charged by law with representing the interests of the absentee. However, this presumption arises when the government is acting on behalf of a constituency that it represents. The situation is different when the government acts as an employer, as here.* **The presumption has not been applied to parties who are antagonists in the collective bargaining process. The Police League is the designated representative of its members in that endeavor; the City is not**. [Internal quotation marks and citations omitted; emphasis added.] 288 F.3d at 401-402.

Defendants here assert that they are adequately representing ALADS'

and its members rights since all the changes it is agreeing to are within its exclusive prerogative.  This false premise, together with the Department's positions that its employees are required to follow its policies, even if those policies are changed by the Department, (Def. Opp, p, 15, lines 9-13), and that no modification of the negotiated grievance procedure is required by the Implementation Plan, (*Id*. at pp. 16-17), illustrate the degree to which the Defendants are disinterested in, or oblivious to, and therefore unable to protect, the rights of ALADS and its members.

Defendants go so far as to assert that ALADS has no protectable interest in this litigation because this Court's approval of the Implementation Plan "*will not 'as a practical matter, impair or impede the [ALADS] ability to protect its interests'.*" (Def. Opp., p. 13, lns. 20-24.)  This argument was also rejected by the *City of Los Angeles* Court:

> *The United States argues that these provisions do not, as*
> *a practical matter, impair the Police League's rights*
> *because it is purely speculative that the parties will not*
> *agree on what provisions are subject to collective*
> *bargaining and on how any disputes over those*
> *provisions should be resolved.  **This analysis is flawed***
> ***because the relevant inquiry is whether the consent***
> ***decree "may" impair rights "as a practical matter"***
> ***rather than whether the decree will "necessarily"***
> ***impair them***.  *Fed. R. Civ. P. 24(a)(2)*." [Emphasis
> added.]  288 F.3d at 401.

Similarly rejected by the 9th Circuit was the District Court's finding that the LAPPL could adequately protect its marginal interest in the litigation by appearing as amicus curiae. *City of Los Angeles*, 288 F.3d at 400 ("*amicus status is insufficient to protect the Police League's rights because such status does not*

*allow the Police League to raise issues or arguments formally and gives it no right of appeal.*"); see also, *International Union, United Automobile, Aerospace, and Agricultural Implement Workers v. Scofield*, 382 U.S. 205, 215-16, (1965) (discussing the difference between party and amicus status); *Swan v. Peterson*, 6 F.3d 1373, 1383 & n.10 (9th Cir. 1993) (noting that amici cannot introduce issues not raised by the parties), cert. denied, 130 L. Ed. 2d 393, 115 S. Ct. 479 (1994); *United States v. Michigan*, 940 F.2d 143, 165-66 (6th Cir. 1991) (noting limitations on the rights of amici); *United States v. Oregon*, 839 F.2d 635, 639 (9th Cir. 1988) (citing 9th Circuit's precedents "*recognizing practical limitations on the ability of intervention applicants to protect interests in the subject of the litigation after court-ordered equitable remedies are in place*"[citations omitted]).

Defendant simply ignores this portion of the *City of Los Angeles* holding, and urges this Court to do the same. (Def. Opp. p. 17, lines 15-21.) Defendant's suggestion of limiting ALADS' participation in this lawsuit to less than amicus status, and to that of only filing objections to the settlement as part of the final approval hearing process, is insufficient, as a matter of law, to protect ALADS' rights which may be significantly impaired by the proposed disposition of this case.

The 9th Circuit's decision in *City of Los Angeles* directly controls this court's determination of whether ALADS has a protectable interest at stake in this litigation. As more fully set forth in ALADS' Reply to the Opposition filed by Plaintiffs, the *City of Los Angeles* decision similarly informs this court's decision on the merits of the parties' arguments concerning the timeliness of ALADS' motion. Defendant's claim that the *City of Los Angeles* decision is distinguishable should be rejected and ALADS' Motion granted in its entirety.

## **CONCLUSION**

For each of the foregoing reasons, together with those set forth in ALADS' moving papers as well as ALADS' reply to the Opposition filed by

Plaintiffs herein, ALADS respectfully submits that its motion to Intervene should be granted, in its entirety.

DATED:  February 24 , 2015                    Respectfully submitted,

GREEN & SHINEE, A P.C.


By:_____//S//_____
         RICHARD A. SHINEE,
         Attorneys for Intervener, ALADS

19

PROOF OF SERVICE

STATE OF CALIFORNIA                    )
                                       ) ss.
COUNTY OF LOS ANGELES                  )

I am a citizen of the United States and a resident of the County aforesaid; I am over the age of eighteen years and not a party to the within action; my business address is 16055 Ventura Boulevard, Suite 1000, Encino, California, 91436.

On the date written below, I served the within

**INTERVENOR'S MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO DEFENDANTS' OPPOSITION TO ALADS' MOTION TO INTERVENE**

**re: Rosas v. Baca et al., Case No. CV 00428-DDP-SH**

on the interested parties in said action by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid in the United States mail at Encino, California, addressed as follows:

**SEE SERVICE LIST**

**XX**        (**FEDERAL**) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on February 24, 2015, at Encino, California.

_____
              //S//
          Karen Asseraf

20

## PROOF OF SERVICE MAILING LIST

Donna D. Melby, Esq.
Paul Hastings L.L.P.
515 South Flower Street, 25th Floor
Los Angeles, CA 90071-2228

Eric G. Balaban ACLU National Prison Project
915 Fifteenth Street NW, 7th Floor
Washington, D.C. 20005

Peter J. Eliasberg
ACLU Foundation of Southern California
1313 West Eight Street, Suite 200
Los Angeles, CA 90017

Paul Beach
Lawrence, Beach, Allen & Choi, LLP
100 West Broadway, Suite 1200
Glendale, CA 91210