14-0406\PREPLYACLU150223.ejg
GREEN & SHINEE, A P.C.
RICHARD A. SHINEE State Bar No. 62767
ELIZABETH J. GIBBONS State Bar No. 147033
Attorneys at Law
16055 Ventura Boulevard, Suite 1000
Encino, California 91436
Phone: (818) 986-2440
Facsimile: (818) 789-1503
Attorneys for Intervener, ALADS

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX ROSAS, et al., | Case No. 2:12 CV 00428-DDP-SH |
| Plaintiffs, | |
| v. | **INTERVENER'S MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO PLAINTIFFS' OPPOSITION TO ALADS' MOTION TO INTERVENE** |
| LEROY BACA, et al., | |
| Defendants. | |
| ASSOCIATION FOR LOS ANGELES DEPUTY SHERIFFS, On Behalf of Its Members, | DATE:     March 9, 2015<br>TIME:     10:00 A.M.<br>PLACE:    Courtroom 3 |
| Proposed Intervener, | Hon. Dean D. Pregerson |

# **TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ALADS' MOTION IS NOT UNTIMELY . . . . . . . . . . . . . . . . . . . . . 2

III.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

# TABLE OF AUTHORITIES

**Federal Cases:**                                                                       **Page(s)**

*Aleut Corp. v. Tyonek Native Corp.*
   725 F.2d 527 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Cabazon Band of Mission Indians v. Wilson*
   124 F.3d 1050 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*County of Orange v. Air California*
   799 F.2d 535 (9th Cir.1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Donnelly v. Glickman,*
   159 F.3d 405 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Hufnagle v. Rino Int'l Corp.*
   No. CV 10-08695 DDP VBKX, 2012 WL 6553743, at 7 *2
   (C.D. Cal. Dec. 14, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*League of United Latin American Citizens v. Wilson*
   131 F.3d 1297, (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Peruta v. Cnty. of San Diego*
   771 F.3d 570, 572 (9th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Smith v. Marsh*
   194 F.3d 1045 (9th Cir.1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. City of Los Angeles*
   288 F.3d 391 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 11


**Statutes:**                                                                            **Page(s)**

   Cal. Govt. Code § 825 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

# I.

# **<u>INTRODUCTION</u>**

Plaintiffs oppose the intervention motion filed by ALADS on the grounds that the motion is untimely.  ALADS respectfully submits that its relationship with the named Defendant in this case, and the statutory obligations of the named Defendant in this case differentiate ALADS from the interveners in the cases relied upon by Plaintiffs.

The only named Defendant in this case is the Sheriff of Los Angeles County.  The Sheriff is, however, sued in his official capacity only, making this actually a case against the County and the Sheriff's Department, the public agencies represented by the Sheriff.  The County and the Department have a statutory obligation to inform ALADS in writing prior to taking any action which will modify or change any policy or rule concerning wages, hours, or terms and conditions of employment.

Plaintiffs, in their opposition, in one breath call the changes mandated by the Implementation Plan an "*historic opportunity to stand against the problems of the past*" (Pl. Opp. p. 23, lines 9-10), and in another refer to those changes as not implicating any interest of ALADS' at all (Pl. Opp., p. 11, lines 15-17.  Plaintiffs also refer to the number of "*stakeholders*" who were involved and included in the negotiations leading up to the Settlement Agreement and Implementation Plan (Pl. Opp. p. 12, line 2, p. 13, n. 12, line 27) yet argue that the Deputy Sheriffs whose job duties are the primary focus of these agreements will only destroy a perfect agreement if they are allowed to participate in this litigation.

While Plaintiffs seek to dismiss ALADS as the skunk at the garden party, as a practical matter, which is the standard by which this Court is to assess the present motion, it is ALADS and their members who will be most directly and substantially impacted by the changes required by these parties' agreements.  The parties to this case, from the moment it was filed, were fully aware of the

existence, and interests, of ALADS in the litigation and chose to exclude ALADS from the proceedings.  ALADS, on the other hand, was not aware, due in large part to misinformation received from the Department, until December, 2014, that the settlement in this case focused on changes to work rules for deputy sheriffs.

ALADS has a statutorily defined relationship with the Sheriff's Department.  The statutory definition of that relationship places the burden on the Sheriff's Department to specifically and directly inform ALADS of any proposed changes, to be imposed by any means, which will impact wages, hours, or other terms and conditions of employment for ALADS' members.

Under the statutorily defined relationship, ALADS is not relegated to checking the court dockets for every lawsuit filed against the County, Sheriff, or Sheriff's Department to try to guess if the litigation might impact its or its members rights.  Under that statutorily defined relationship, ALADS is not required to obtain information concerning potential changes to its members working conditions from publications like the National Law Journal or even the Los Angeles Times.

The named Defendant in this lawsuit had a statutory obligation to notify ALADS, in writing, prior to entering into any agreement which would change, modify, or adversely impact the wages, hours, and other terms and conditions of ALADS' members employment.  Neither the Plaintiff nor the Defendant herein can, as they attempt to, rely upon Defendants' violation of its statutory obligation as a justification for precluding ALADS from participating in the settlement of this litigation.

## II.

## ARGUMENT

## ALADS' MOTION IS NOT UNTIMELY

ALADS does not disagree with the three part test used to determine timeliness of an intervention application, as stated in Plaintiffs' opposition papers.

ALADS does, however, dispute Plaintiffs' attempt to place on ALADS the burden of uncovering the Department's plans to change work rules and discipline policies and, on the basis of that improper burden, assert that this Motion is untimely.

In none of the cases cited or relied upon by Plaintiffs did the proposed Intervener have a statutorily defined relationship with an existing party to the case. In *League of United Latin American Citizens v. Wilson*, 131 F.3d 1297, (9th Cir. 1997), the proposed intervener, the Alan C. Nelson Foundation of Americans for Responsible Immigration ("ACNFARI"), was a group whose members had participated in the drafting and sponsorship of Proposition 187. The litigation into which ACNFARI sought to intervene concerned directly, and only, the Constitutional validity of Prop 187. The Intervener was a politically motivated group, created and existing for the sole purpose of drafting and sponsoring Prop 187. Clearly, that group would be in direct notice of and have a specific reason for following every detail of that particular litigation.

*County of Orange v. Air California*, 799 F.2d 535 (9th Cir.1986) likewise involved litigation over a one-time, major public works project, the future development of commercial airline activity at John Wayne Airport ("JWA"). The litigation at issue was initiated by the County of Orange, in which the airport is located, and was filed against 13 airlines, an aircraft manufacturer, the City of Newport Beach (Newport), which is located adjacent to JWA, and several citizens' groups generally opposed to any increase in operations at JWA. Not named by Orange County was the City of Irvine, the municipality located closest to the airport.

The City of Irvine attempted to intervene in the litigation after a settlement was reached by the named parties. In finding Irvine's motion untimely, the Court noted that the negotiations concerning that settlement were "*well publicized*." *Id*. at pp. 537, 538. In addition to there being no statutory requirement that the County of Orange notify the City of Irvine prior to agreeing to

anything which would adversely affect Irvine's interests, the negotiations, and the issues in dispute in those negotiations, were broadly publicized. Here, the only publicity about this lawsuit was the publication of the ACLU's press release the day the lawsuit was filed, and the LA Times editorial after the settlement was reached. (See, Durrant Dec., and Exs. B through H thereto.)

In addition to the lack of publicity, the Sheriff's Department and County here specifically kept the negotiations concerning this settlement agreement secret from the Department's own Employee Relations unit, and ALADS, until the agreement was completed. (See, Dyer Declaration at P 5, lines 9-17.) As Commander Dyer admits in his Declaration, the first time the Department's Employee Relations Unit was advised of the agreement, and told to send it to ALADS, was after the agreement was fully executed and approved by the County Board of Supervisors. (*Id.*) These facts completely distinguish this case from the *Orange County* case.

*Aleut Corp. v. Tyonek Native Corp.*, 725 F.2d 527 (9th Cir. 1984) involved litigation over profit sharing distributions between a number of native Alaskan regional corporations, which held title to public lands in Alaska, and the village corporations within those regions, concerning profits from exploitation of sand and gravel resources. Unlike the litigation in this case, which was one of numerous lawsuits filed against the County and Sheriff's Department alleging use of excessive force against deputy sheriffs, the litigation in *Aleut Corp.* was one action, which dealt directly with the ownership of the intervener's property rights in profits from sand and gravel exploitation.

Unlike the intervener village corporations in *Aleut Corp.*, whose property interests were directly at stake in the litigation, about which they were at all times well aware, ALADS had nothing directly at stake in the litigation at the time it was filed. In *Aleut Corp.* the amount of money to which the village would be entitled from sales of sand and gravel directly and significantly affected the

4

financial resources of the village.

Here, the litigation involved accusations of use of excessive force by deputies in the course and scope of their employment. Defendant County is solely, statutorily, required to provide for the involved deputy sheriffs' litigation defense and indemnification of all non-punitive damages awarded by a jury. Cal. Govt. Code § 825. ALADS has no obligation to participate in or monitor the conduct of such litigation. ALADS, likewise, does not have the resources to monitor the progress of every lawsuit filed against the County claiming any type of misconduct by a deputy sheriff in the course and scope of his or her duties.

Plaintiffs also rely upon the District Court's decision in *Hufnagle v. Rino Int'l Corp.*, No. CV 10-08695 DDP VBKX, 2012 WL 6553743, at 7 *2 (C.D. Cal. Dec. 14, 2012), obviously because it was decided by this Court. That decision is, like all the others cited by Plaintiffs, distinguishable from the instant case.

In *Hufnagle*, the Court denied intervention by the Plaintiffs in a derivative lawsuit who claimed an interest in assets which were the subject of the settlement in the main suit. As the Court in *Hufnagle* pointed out, the derivative plaintiffs, much like ALADS here, had no knowledge of the settlement discussions between the parties, or of which assets were in dispute until the Plaintiffs filed a motion for preliminary approval of the settlement agreement. 2012 WL 6553743, at *2.

The derivative plaintiffs in *Hufnagle*, unlike ALADS in this case, waited over four months after Plaintiffs moved for final approval of the class action settlement, which motion was filed three months after derivative plaintiffs were aware that their interest in the assets was at stake, and 2 days before the scheduled hearing on that final approval motion. (*Id.*) Here, ALADS filed its

5

motion one month and 11 days[1] after it became aware that its interests were at stake in this litigation, and only one week after this Court granted preliminary approval to the proposed settlement. If anything, the conduct of the derivative plaintiffs in *Hufnagle*, establishes the timeliness of ALADS' motion here.

Plaintiffs make much of the fact that ALADS filed its intervention motion two weeks after the earliest date, under the Court's local rules, the motion could have been filed, claiming that ALADS must have intentionally waited to file the motion in order to deliberately extend the time before a final approval motion may be filed. (Pl. Opp. pp.9-10.) As stated in the Declaration of Richard A. Shinee, filed concurrently herewith, the only reason that the motion was not filed earlier in January was due to a death in Ms. Gibbons's family which distracted Ms. Gibbons from finalizing the motion papers. (Shinee Dec. ¶¶ 60-61.)

Plaintiffs next rely on the decision in *Smith v. Marsh*, 194 F.3d 1045 (9th Cir.1999) for the proposition that the litigation here has progressed too far to allow ALADS to intervene. *Smith*, however, involved litigation over law school admissions policy, about which the proposed interveners, a group of non-white law school applicants, apparently were well aware.

Unlike the present case, the proposed interveners in *Smith* waited over a year after their knowledge of the lawsuit's potential impact on their rights to seek intervention. ALADS filed its motion in just over a month. As the *Smith* court stated:

> *Students claim in their opening brief before this court*
> *that they "were definitively able to determine that their*
> *interests were inadequately represented only after*

---

[1] ALADS became aware that its interests were at risk in this litigation on December 16, 2014. On December 19, 2014, ALADS' counsel wrote to all counsel for the parties requesting to meet and confer regarding their planned motion to intervene. On December 30 2014 and January 5, 2015, the meet and confer discussions between counsel took place. ALADS' motion was filed on January 30, 3015, less than a month later, and two weeks after the earliest date the motion could be filed under the Court's Local Rules.

*reviewing closely the briefs filed and the [district court's] April 22, 1998 decision on the [Law School's] motion for summary judgment."* **Such a claim, if true, could constitute a proper explanation for delay. The crucial date for assessing the timeliness of a motion to intervene is when proposed intervenors should have been aware that their interests would not be adequately protected by the existing parties**.  194 F.3d 1045, 1052.

Here, ALADS' knowledge that this lawsuit could have even potential impact on its rights came from the information stated in the L.A. Times' December 16, 2014 editorial.  Prior to this editorial, ALADS was under the reasonable belief, based upon conversations with Department managers as well as the still on-going Federal Department of Justice investigations into the use of force at the County jails, that any changes to the Department's force or related policies would result from a consent decree between the Department and the Federal Government.  (Shinee Dec. ¶¶ 58-59.)

It was just two days after learning the information from the Times editorial that ALADS began the process of moving to intervene, which necessarily included participating in meet and confer discussions with the existing parties.  As such, the decision in *Smith* is not controlling here.

Plaintiffs rely upon a number of cases which stand for the proposition that intervention should not be allowed where the involvement of the new party might upset an existing or potential settlement.  (Pl. Opp. pp. 12-15.)  None of these cases, however, involved the proposed intervention of a labor union, whose existence and rights were not only at all times well known to the original parties, but to whom one of the original parties owed a statutory duty of notice.  These facts significantly change the analysis of the potential prejudice factor.

Unlike any of the proposed interveners in any of the cases cited by

Plaintiffs, the existence and interests of ALADS were at all times known to the original parties to this lawsuit.  Those parties were on notice, by virtue of the 9th Circuit's decision in *United States v. City of Los Angeles*, 288 F.3d 391 (9th Cir. 2002), that ALADS, as the recognized exclusive bargaining representative for all Los Angeles County deputy sheriffs, had a protectable interest in litigation which included a settlement agreement which would result in police department policy changes.

Further, the evidence before this Court establishes that the Sheriff's Department, either intentionally or unintentionally, provided ALADS with incorrect information by indicating that an expected consent decree with the federal government would attempt to impose the types of changes to the department's force and related policies, but never mentioned this litigation having any such potential impact.  (Shinee Dec. ¶¶ 57-59.)

By deliberately excluding ALADS from any involvement in the lawsuit, or the settlement negotiations, the original parties assumed the risk that ALADS would later find out that their rights were at risk and seek to intervene.  As the 9th Circuit specifically held in *City of Los Angels, supra*:

> ***Except as part of court-ordered relief after a judicial
> determination of liability***, *an employer cannot
> unilaterally change a collective bargaining agreement as
> a means of settling a dispute over whether the employer
> has engaged in constitutional violations.  Local Number
> 93, Int'l Ass'n of Firefighters v. City of Cleveland, 478
> U.S. 501, 528-30, 92 L. Ed. 2d 405, 106 S. Ct. 3063
> (1986) (noting that parties settling their own dispute
> cannot impose obligations on third parties and that "a
> court may not enter a consent decree that imposes
> obligations on a party that did not consent to the*

*decree"); W.R. Grace & Co. v. Local Union 759, 461 U.S. 757, 771, 76 L. Ed. 2d 298, 103 S. Ct. 2177 (1983) ("Absent a judicial determination, the [EEOC], not to mention the Company, cannot alter the collective bargaining agreement without the Union's consent."); United States v. City of Hialeah, 140 F.3d 968, 975 (11th Cir. 1998); United States v. City of Miami, 664 F.2d 435, 441-42 (5th Cir. 1981).* [Emphasis added.]  288 F.3d at p. 400.

The current claims of impending prejudice, which Plaintiffs assert will occur if ALADS is allowed to intervene, are the predictable and expected result of the parties' decision to ignore the teachings of the 9th Circuit in *City of Los Angles* and settle their differences behind ALADS' back.

Finally, Plaintiffs' argument that ALADS' "admission" that it knew its rights were at issue because it believed the Sheriff's Department could properly represent its interests in this litigation (Pl. Opp. at p. 16, lines 7-9, p. 18, lines 4-7, is a complete misstatement of ALADS' arguments in its moving papers.  ALADS moved to intervene immediately after it learned that its interests might be adversely affected by the settlement in this case.  ALADS had no knowledge prior to December 16, 2014, that this litigation could have such an impact.

ALADS has never asserted that it believed the Sheriff's Department could protect its interests in this litigation because ALADS never knew its interests were even involved in this lawsuit until it was settled.  ALADS' discussion, in its opening brief, of the fact that neither party can actually protect its interests in this lawsuit was simply a discussion of one of the four elements considered by Courts in deciding intervention motions.  See, *Cabazon Band of Mission Indians v. Wilson*, 124 F.3d 1050 (9th Cir. 1997); *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998).  (ALADS's Motion, pp. 14-17.)

9

Plaintiffs contend that this lawsuit was the biggest, most important lawsuit, most publicized lawsuit, and that ALADS therefore had an obligation to not only pay close attention to it but to check the court's docket on its progress regularly. (Pl. Opp. pp. 18-19.) Other than the Plaintiffs' press releases which it issued to coincide with the 2012 filing of this lawsuit, Plaintiff offers no evidence of any other press coverage of this litigation until the December 19, 2014 Times editorial reporting the completed settlement, to which ALADS immediately responded. (See, Durrant Dec., pp. 1-3 and Ex. B through H.) The only other evidence related to the progress of the litigation offered by Plaintiffs is correspondence between the Sheriff's Department and Plaintiffs, none of which ALADS was privy to or had any knowledge about. (Durrant Dec., pp. 3-5, Ex. I through M.)

Contrary to Plaintiffs' assertions, ALADS was legally entitled to rely upon the Sheriff's Department obligation to lawfully comply with its statutory duty to notify ALADS of any changes to wages, hours, and working conditions its planned to undertake as the result of this litigation, before it agreed to undertake those changes. ALADS was entitled to believe, as the result of the Department's lack of notice that this litigation, rather than the much discussed potential consent decree from the Federal Department of Justice, posed the possibility of resulting in widespread changes to the Department's force and discipline policies, among other things, that its rights were not in danger from this litigation.

The issue presently before the Court is not, as Plaintiffs argue, whether ALADS should have known about the lawsuit and settlement efforts (Pl. Opp. p. 21, lines 10-12), it is whether ALADS knew its rights were at risk earlier than December, 2014. See, *Peruta v. Cnty. of San Diego,* 771 F.3d 570, 572 (9th Cir. 2014)("*Under ... longstanding [Ninth Circuit] precedent, a party seeking to intervene must act as soon as he 'knows or has reason to know that his interests*

*might be adversely affected by the outcome of the litigation.' "*) There is no evidence that ALADS had the required notice prior to December 16, 2014.  As such, the present Motion is timely and should be granted, in its entirety.  See, *City of Los Angeles, supra*, 288 F.3d 391, 398 ("*The district court found the Police League's motion to intervene to be timely, a conclusion not challenged on appeal. . . . [T]he motion was filed only* **approximately one and half months** *after the suit was filed.*[2])

### III.

### CONCLUSION

For each of the foregoing reasons, together with those set forth in ALADS' moving papers as well as ALADS' reply to the Opposition filed by Defendant herein, ALADS respectfully submits that its motion to Intervene should be granted, in its entirety.

DATED:  February 24, 2015

Respectfully submitted,

GREEN & SHINEE, A P.C.

By:_____//S//_____
RICHARD A. SHINEE,
Attorneys for Intervener, ALADS

---

[2] Although the LAPPL filed its lawsuit within one and a half months of the filing of the lawsuit, the lawsuit there was only filed after the terms of the consent decree, the equivalent of the Implementation Plan in this case, were fully agreed upon by the Federal Government and the City of Los Angeles.  The LAPPL's motion was therefore filed almost the identical amount of time after that union had knowledge of its rights being at risk as ALADS filed its motion after obtaining the same knowledge.

<u>PROOF OF SERVICE</u>

STATE OF CALIFORNIA        )
                          ) ss.
COUNTY OF LOS ANGELES     )

I am a citizen of the United States and a resident of the County aforesaid; I am over the age of eighteen years and not a party to the within action; my business address is 16055 Ventura Boulevard, Suite 1000, Encino, California, 91436.

On the date written below, I served the within

**INTERVENOR'S MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO PLAINTIFFS' OPPOSITION TO ALADS' MOTION TO INTERVENE**

**re: <u>Rosas v. Baca et al.,</u> Case No. CV 00428-DDP-SH**

on the interested parties in said action by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid in the United States mail at Encino, California, addressed as follows:

**SEE SERVICE LIST**

**XX**        (**FEDERAL**) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on February 24, 2015, at Encino, California.

_____
//S//
Karen Asseraf

12

## PROOF OF SERVICE MAILING LIST

Donna D. Melby, Esq.
Paul Hastings L.L.P.
515 South Flower Street, 25th Floor
Los Angeles, CA 90071-2228

Eric G. Balaban ACLU National Prison Project
915 Fifteenth Street NW, 7th Floor
Washington, D.C. 20005

Peter J. Eliasberg
ACLU Foundation of Southern California
1313 West Eight Street, Suite 200
Los Angeles, CA 90017

Paul Beach
Lawrence, Beach, Allen & Choi, LLP
100 West Broadway, Suite 1200
Glendale, CA 91210