# EXHIBIT A

# IMPLEMENTATION PLAN

The Court Monitors appointed by United States District Judge Dean Pregerson in the matter entitled *Rosas, et al. v. Baca,* Case No. CV 12-00428 DDP, have developed this Implementation Plan that the Los Angeles Sheriff's Department (the "Department") shall be required to implement as part of the settlement of the *Rosas* case. The Court Monitors understand that the items in this Implementation Plan set forth below will be mandatory when submitted by the parties to the Court and ordered by the Court as part of the settlement.

With respect to the policy changes set forth below, the Court Monitors will monitor (1) the Department's implementation of the policy change; (2) the Department's adherence in practice to the policy change through the monitoring period; and (3) the Department's investigation of any alleged or potential violations of the revised policies. Any violations of these revised policies should be timely and appropriately investigated and appropriately disciplined up to and including termination.

In view of the on-going negotiations between the County of Los Angeles (the "County") and the United States Department of Justice regarding mentally ill and suicidal inmates, we have not made any recommendations to address issues regarding these inmates other than relating to the use of force against these inmates.

1. **Leadership, Administration and Management (expect to be completed by June 30, 2015):**

    1.1  Custody Operations should continue to be headed by an Assistant Sheriff with no areas of responsibility other than Custody Operations.

    1.2  The Sheriff should be personally engaged in the management of the Department's jail facilities, and the Sheriff should regularly and adequately monitor the Department's use of force policies and practices, and its compliance with this court-ordered Implementation Plan.

    1.3  Department managers should be held accountable should they fail to address use of force problems at the Department's jail facilities.

    1.4  The Department should report regularly to the Board of Supervisors on use of force and the status of the Department's compliance with this Implementation Plan.

2. **Use of Force Policies and Practices (expect to be completed by June 30, 2015):**

    2.1  The Department should have a separate, revised, free-standing, and logically organized Custody Force Manual for Custody Operations that includes all use of force policies and procedures that are in the Custody Division Manual and the sections of the Manual of Policy and Procedures that are applicable to the Custody Operations. The Custody Force Manual should not include sections of the Manual of Policy and

1

Procedures that are only applicable to other areas of the Department and should not include sections that are not applicable to the use of force by Department members.

2.2     The Department's Custody use of force policies should provide that force used by Department members: (a) must be used as a last resort; (b) must be the minimal amount of force that is necessary and objectively reasonable to overcome the resistance; (c) must be terminated as soon as possible consistent with maintaining control of the situation; and (d) must be de-escalated if resistance decreases.

2.3     The Department's Custody use of force policies should provide that it is a violation of Department policy to cause or facilitate inmate-on-inmate violence or to harass or otherwise verbally provoke an inmate to justify the use of force against the inmate. The policies should also provide that staff are prohibited from publicly humiliating inmates; from using slurs concerning race, gender, ethnicity, or sexual-orientation; using obscenities; or exposing prisoners to an unreasonable risk of being assaulted by fellow prisoners.

2.4     The Department's Custody use of force policies should provide that force may not be used as discipline or corporal punishment.

2.5     The Department's Custody use of force policies should provide that a Department member may not strike an inmate or use chemical agents or a taser on an inmate who is restrained unless the inmate is assaultive and presents an immediate threat of injury to a Department member or another person, and unless there are no other more reasonable means to control the inmate.

2.6     The Department's Custody use of force policies should provide that striking an inmate in the head or kicking an inmate who is on the ground, or kicking an inmate who is not on the ground anywhere above the knees is prohibited unless the inmate is assaultive and presents an imminent danger of serious injury to a Department member or another person and there are no other more reasonable means to avoid serious physical injury. The Department's Custody use of force policies should also provide that kicking an inmate who is not on the ground below the knees is prohibited unless the inmate is physically assaultive, and the kick is utilized to create distance between the member and the assaultive inmate.

2.7     The Department's Custody use of force policies should provide that Department members confronted with a situation in which force may be required must call a supervisor to the scene as soon as time and circumstances permit.

2.8     The Department's Custody use of force policies should provide that all Department members are responsible for preventing excessive force, and that Department members witnessing excessive force have a duty to attempt to stop, reduce or control the force being used.

2.9     The Department's Custody use of force policies should provide that when confronting an armed inmate, every effort should be made to control the inmate at a

distance and avoid the types of force that would subject Department members to close contact with the inmate.

2.10 The Department's Custody use of force policies should provide that Department members may only use instruments of force or weapons that are (1) authorized by the Department and (2) for which they have been trained, except that Department members may use any available instruments or weapons to prevent imminent loss of life or serious bodily injury if there are no other more reasonable alternative available.

2.11 The Department's Custody use of force polices should provide that Department members are required to wait a sufficient amount of time after applying chemical agents to allow the chemical agents to take full effect before applying additional chemical agents or other force in a cell extraction or other planned use of force.

2.12 The Department's Custody use of force policies should provide that chemical agents and Tasers and other electronic stun devices should not be used: (a) gainst an inmate when he or she no longer presents a danger or is no longer resistant; (b) against inmates known to suffer medical conditions that may be aggravated or affected by such agents; or (c) in a manner contradictory to the manufacturer's recommendations or Department training.

2.13 The Department's Custody use of force policies should provide that, when time and circumstances permit, an inmate's medical/mental health records should be checked before chemical agents or Tasers and other electronic stun devices are used against the inmate. If a medical check finds these items are contra-indicated, they should not be used (subject, however, to the exception in 2.10, above).

3. **Training and Professional Development Related to Use of Force (curriculum for 3.1 through 3.4 expected to be implemented by June 30, 2015 with training completed by December 31, 2016; 3.5 and 3.6 to be completed by June 30, 2015 ):**

3.1 Use of force training requirements for all existing Department members in Custody Operations should include, at a minimum, a one-time eight (8) hour use of force policy training course for all members assigned to custody and then a two (2) hour refresher course every year.

3.2 Training requirements for all existing Department members in Custody Operations should include, at a minimum, a one-time four (4) hour training course in ethics, professionalism and treating inmates with respect, and then a two (2) hour refresher course on these subjects at least every other year.

3.3 New Department members should receive a minimum of six weeks of classroom, custody training, which may include training in the Academy or the Jail Continuum and in Crisis Intervention and Conflict Resolution (see 4.9 below), in addition to the in-service training they receive while assigned in the jails. With the exception of

3

one week of the Department's Jail Operations Continuum training, all of this training should occur before new Department members receive in-service training in the jails, and this training should include at least 12 to 16 hours of both Custody-specific, scenario-based use of force policy training and training in ethics, professionalism and treating inmates with respect.

3.4 Custody-based, use of force scenarios should be included as part of the use of force policy training provided by the Custody Training & Standard Bureau on an in-service and refresher basis.

3.5 Unit Commanders should determine what additional training, counseling or mentoring may be required when a personnel complaint against a Department member involving the use of force is resolved with a finding that it "Appears Employee Conduct Could Have Been Better"; direct that the Department member undergo such additional training, counseling or mentoring; and document the action taken.

3.6 To ensure a meaningful probationary period, new Department members assigned to Custody Operations should be reviewed within six months after being assigned to Custody and again before their first post-probationary assignment.

4. **Use of Force on Mentally Ill Prisoners and Other Special Needs Populations (expect to be completed by June 30, 2015 for Recommendations 4.1 through 4.5 and training completed by December 31, 2016 for Recommendations 4.6 through 4.9):**

4.1 The Department's Custody use of force policies should require a mental health professional to be on-scene to attempt to resolve the situation without force whenever there is a cell extraction or, to the extent possible, any other similar planned use of force.

4.2 The Department's Custody use of force policies should require supervisors investigating the use of force by Department members to interview any mental health professionals who witnessed the force incident and/or attempted to resolve the incident without force, about the members' use of force and the mental health professional's efforts to resolve the matter without the use of force. With the consent of the mental health professional, the interview should be recorded on videotape or audiotape.

4.3 The Department's Custody use of force policies should provide that in situations involving an acutely psychotic or other severely mentally disabled inmate, following an initial burst of a chemical agent that has not produced compliance, the Department should discontinue the further use of chemical agents if the inmate is sufficiently mentally disabled that he or she cannot conform his or her behavior to commands.

4.4 The Department's Custody use of force policies should provide that in situations involving a mentally ill inmate who does not present an obvious danger to himself or herself or to anyone else, and who refuses to exit his or her cell without force, there should be a reasonable "cooling off" period after all other non-force attempts at

4

resolution have been tried and failed. Following this "cooling off" period, either a mental health professional, Department supervisor, or watch commander should again try to gain compliance without the use of force.

4.5 The Department's Custody use of force policies should provide that whenever a planned use of force is precipitated by a medical or mental health provider's order (*e.g.*, a cell extraction following a psychiatrist's order that an inmate be moved for treatment purposes), the prescribing provider should be notified and allowed an opportunity to intervene in an effort to de-escalate the situation and to determine if the provider's order should remain in effect. If the prescribing provider is unavailable, then another medical or mental health provider should be notified to carry out these duties.

4.6 The Department should provide a minimum of 32 hours of Custody-specific, scenario-based, skill development training to all Deputy Sheriffs assigned to the Men's Central Jail, the Twin Towers Correctional Facilities, or the Inmate Reception Center, or who are assigned to work with mentally ill inmates at the Century Regional Detention Facility (the "Deputies in the Designated Facilities") on Crisis Intervention and Conflict Resolution with eight (8) hours of refresher training every other year.

4.7 The Department should provide a minimum of eight (8) hours of custody specific, scenario based, skill development training on identifying and working with mentally ill inmates to all existing Custody personnel with a four (4) hour refresher course every other year. For Deputies in the Designated Facilities, this training may be a part of the 32 to 40 hours of Crisis Intervention and Conflict Resolution training described above.

4.8 The Department should provide a minimum of eight (8) hours of custody specific, scenario-based, skill development training on identifying and working with mentally ill inmates to all new members as part of the Jail Operations Continuum .

4.9 The Department should provide a minimum of 32 hours of custody specific, scenario-based, skill development training in Crisis Intervention and Conflict Resolution to new Department members in the Academy or in Custody before they are assigned to any jail facilities.

4.10 Within six months following the completion of the implementation of Recommendations 4.5 through 4.9, the Department should complete an evaluation regarding the effectiveness of the Crisis Intervention and Conflict Resolution training and should submit a written report to the Board of Supervisors recommending whether or not the training should be extended to the remaining Deputies in Custody Operations and/or to Custody Assistants.

5. **Data Tracking and Reporting of Force Incidents (expect to be completed by June 30, 2015):**

5.1 The Department should track the status of all investigations, reviews and evaluations of all Custody use of force incidents and allegations of force to ensure that investigations, reviews, and evaluations are completed appropriately and timely. As soon

5

as practical, but no later than the end of the shift during which the use of force incident or allegation of force occurred, the supervisor or Internal Affairs investigator assigned to conduct the initial investigation should enter the use of force incident or the force allegation into a Department database with a summary description of the force incident or allegation and the Category of the force incident as it is known at the time. The database should be updated promptly to reflect any changes in the status of the investigation, review or evaluation and changes in the Category of the force incident.

     5.2     Evaluations of force incidents by Unit Commanders should be reviewed as follows:

All Category 1 Force cases and Category 2 cases not that do not meet the criteria for a roll-out by the Custody Force Review Team should be reviewed by a least one Commander in Custody Operations;

All allegations of force should be reviewed by at least two Commanders in Custody Operations;

Category 2 Force cases that meet the criteria for a roll-out by the Custody Force Review Team should be reviewed by the Custody Force Review Committee; and

Category 3 Force cases should be reviewed by the Executive Force Review Committee.

     5.3     The Department's Custody use of force policies should provide that any unexplained tactical decisions pertaining to uses of force or any discrepancies among witnesses and/or evidence should be referred by the reviewing Commander(s) or committee in writing back to the incident investigator for additional investigation and then reported back in writing to the reviewing Commander(s) or committee.

**6.     Inmate Grievances and Other Complaints of Excessive Force (expected to be completed by December 31, 2015):**

     6.1     Inmate grievances and inmate requests should be reported on separate forms, whether on paper or electronically.

     6.2     The Department must ensure that grievance forms are reasonably available to inmates at all times.

     6.3     The inmate grievance form should have a prominent box that says, "Emergency Grievance" with boxes to check for "yes" or "no" and a space for a description of the emergency. When an inmate requests a grievance form for an emergency grievance, the inmate should be given the form immediately.

     6.4     The Department's inmate grievance forms should include "use of force" as a specific category of "grievances against staff" for inmates to check to ensure that such grievances are brought to the Unit Commanders' attention and properly handled.

6

  6.5 The Department's inmate grievance forms should include "retaliation" and "harassment" as specific categories of "grievances against staff" for inmates to check to ensure that such grievances are brought to the Unit Commanders' attention and properly handled.

  6.6 The Department's inmate grievance forms should have a check box indicating whether the complaint was upheld or denied and a statement next to the "denied" box that the inmate has the right to appeal and how long he or she has to appeal.

  6.7 The Custody Division Manual should provide that Department members should give all grievances marked "emergency" to a supervisor as soon as possible. Supervisors should review all emergency grievances as soon as possible to determine if the situation requires immediate action to protect the life or safety of the inmate and, if so, should immediately notify the Watch Commander/Shift Supervisor of the non-medical emergency. The Watch Commander/Shift Supervisor should immediately confirm that the non-medical emergency exists, take such action as is necessary to protect the inmate, and as soon as time and circumstances permit provide the inmate with a written response documenting what action was taken to address the emergency.

  6.8 If the Department determines that a non-medical emergency does not exist, it should notify the inmate as soon as practical that the grievance will be handled as a non-emergency grievance and document why it was determined not to be an emergency.

  6.9 All emergency grievances should be forwarded to the Inmate Grievance Coordinator along with information about the decision made and when the inmate was notified about that decision. The Inmate Grievance Coordinator should review the emergency grievance to determine if it was handled in accordance with policy and should notify the Unit Commander if it was not handled properly.

  6.10 Grievances should be collected from the locked grievance boxes on each living unit no less frequently than once per day. The time of the collection and the person doing the collection should be recorded in the living unit log and in a separate grievance collection log maintained by the Inmate Grievance Coordinator. Grievances should be reviewed by the Department within 24 hours of the collection of the grievance.

  6.11 The Custody Division Manual should provide that failing to provide an inmate with a grievance form when requested, failing to respond appropriately to a grievance, destroying or concealing grievances, attempting to intimidate an inmate from filing a grievance, and retaliating against an inmate who has filed a grievance, may each be a cause for disciplinary action.

  6.12 All inmate grievances should be entered into and tracked in an inmate grievance database that reflects the nature and status of the grievance, and personnel responsible for the Department's handling of the grievance.

6.13    The Inmate Grievance Coordinator should regularly track the Department's handling of inmate grievances to ensure that the investigations are completed timely and reasonably, and that inmates are notified of the results of the investigations.

6.14    The Inmate Grievance Coordinator should provide a monthly report to Unit Commanders and senior management in Custody Operations of the status of inmate grievances, the timeliness of the Department's investigations of the grievances, responses to grievances and grievance appeals, and notifications to inmates of the results of the investigations and grievance appeals.

6.15    The Inmate Grievance Coordinator should analyze inmate grievances monthly to identify any problematic trends and should provide that analysis in a monthly report to Unit Commanders and senior management in Custody Operations.

6.16    The Department should establish a centralized unit with a sworn supervisor, custody assistants and civilian personnel to be responsible for collecting the inmate grievances and requests from inmates or from secured boxes; reviewing and categorizing the grievances and requests; forwarding them for investigation or handling; and responding to inmates.  Department personnel should be co-located in the Twin Towers and other personnel should be co-located in the Pitchess Detention Center.

6.17    There should be a 30-day deadline for filing use of force grievances by inmates.

6.18    There should be no deadline for filing Prison Rape Elimination Act ("PREA") grievances by inmates

6.19    The Department should adhere to the requirements in Custody Division Manual 5-12/000.00 and 5-12/010.00 and respond to inmate grievances "within 15 calendar days after the submission of the complaint," absent exceptional circumstances, which must be documented.

6.20    Inmates should have 15 days from receipt of a denial of a grievance to file an appeal of the grievance; however, if the inmate receives the denial while in punitive segregation, the inmate should have 15 days after release from segregation to file the appeal.

### 7.    Inmate Supervision, Staff Inmate Relations, and Communication with Prisoners (expected to be completed by June 30, 2015):

7.1    Inmates who submit grievances should be advised that a Conflict Resolution Meeting under the Department's Conflict Resolution policy in 5-12/000.00 (Inmate Requests for Service and Complaints (Non-Medical/Non-Mental Health)) is voluntary for both the inmate and the involved personnel to address a grievance instead of the Department conducting a personnel investigation and making a finding to resolve the grievance.  If the Conflict Resolution meeting is successful, the grievances should be

8

marked "closed through conflict resolution" in the grievance database and properly documented.

      7.2    An inmate should be advised of the results of the Department's investigation of the inmate's grievance against personnel, but not any sanction imposed, within 10 days of the Department's adjudication of the grievance.

      7.3    The Department should ensure that there are adequate avenues for constructive prisoner-staff communication, such as Town Hall meetings.

**8.    Retaliation Against Inmates (expected to be completed by June 30, 2015):**

      8.1    The Department policies should prohibit personnel from retaliating against inmates.

      8.2    The Department should combine the "Complaints of Retaliation" provisions in 5-12/000.00 and 5-12/010.00 into one section in the Custody Division Manual to ensure that there is a single, consistent policy on the handling of such grievances regardless of who receives the grievance and who is the subject of the grievance.

      8.3    Unit Commanders' evaluations of investigations of inmate grievances or complaints that Department members used any level of force to retaliate against inmates should be reviewed by the Custody Force Review Committee to assess the correctness of the evaluations.

**9.    Security Practices (expected to be completed by June 30, 2015):**

      9.1    The Department should conduct and document cell checks of inmates in general population cells as well as in segregation and protective custody units at least every 30 minutes on an irregular schedule. The Department should conduct and document cell checks of inmates in the high observation units and the forensic inpatient units at least every 15 minutes on an irregular schedule. All cell checks should be conducted by an officer at the cell front. Should the Department and/or the County reach an agreement with the United States Department of Justice regarding cell checks at the jails that provides for a schedule of checks in general population, segregation, and protective custody units, then those provisions will supersede this provision.

      9.2    The Department's Custody use of force policies should provide that, following a use of force or interaction with a recalcitrant inmate, the staff member escorting an inmate to medical, holding or segregation should not be the same staff member involved in the confrontation or use of force unless there is no other staff member reasonably available to escort the inmate.

      9.3    The Department's Custody use of force policies should provide that Department members have a duty to protect inmates and to take appropriate steps to intervene in inmate-on-inmate violence as soon as it is reasonably safe to do so.

10. **Management Presence in Housing Units (expected to be completed by June 30, 2015):**

    10.1 Senior managers from the rank of Unit Commanders and above should be required to periodically tour the jail facilities, including nights and weekends.

    10.2 Housing units should document visits to jail facilities by Department managers (above the rank of Sergeant) in electronic records or visitor logs.

11. **Management Review of Force Incidents and Data (expected to be completed by June 30, 2015):**

    11.1 The Custody Force Rollout Team's involvement in reviewing the correctness of the Unit Commanders' evaluations of the force incidents should not delay the Department's investigation of force incidents.

12. **Reviews and Investigations of Use of Force Incidents (expected to be completed by June 30, 2015):**

    12.1 All custody Sergeants should receive an initial 16-hour block of training in conducting use of force investigations, reviewing use of force reports, and the Department's new protocols for conducting such investigations, and a two (2) hour refresher course every year.

    12.2 Inmate witnesses to force incidents should be asked to be interviewed, and interviewed, away from other inmates.

    12.3 No Department member involved in the use of force incident should be present for, or participate in, the request for interview or the interview itself absent exigent circumstances, which must be justified in the supervisors' subsequent reports.

    12.4 Force investigations should not be conducted by the direct supervisor of the Department members involved in the use of force incident if the supervisor directed, participated in, or planned the use of force.

    12.5 Use of force investigation packages should have a standard order and format.

13. **Disposition of Use of Force Reviews and Staff Discipline Issues (expected to be completed by June 30, 2015):**

    13.1 The Department should have a firm policy of zero tolerance for acts of dishonesty or failure to report uses of force. If the Department does not terminate a member who is found to have been dishonest, used excessive force, or violated PREA, the Department should document the reasons why the member was not terminated and, in addition to the discipline that is imposed, the Department should place the member on a

formal and adequate performance review program and closely monitor the member's performance.

     13.2    All findings of dishonesty, excessive force, and PREA violations by Department members in Custody Operations, the punishment imposed by the Department, and the reasons why any member was not terminated for the acts of dishonesty, excessive force, or violation of PREA should be reported to the Office of Inspector General each quarter.

**14.    Criminal Referrals and External Reviews of Use of Force Incidents (expected by June 30, 2015):**

     14.1    Prior to submission, all referrals of an inmate for criminal prosecution for assaulting a staff member, or related charges, arising from an incident involving the use of force by Department members, should be reviewed by a Unit Commander to ensure that the charges are not being brought to help justify the staff use of force.

     14.2    The Department should timely forward to the District Attorney's office incidents of officer misconduct that may amount to criminal violations.

**15.    Documentation and Recording of Force Incidents (expected to be completed by June 30, 2015):**

     15.1    The Department's Custody use of force policies should provide that every Department member who uses or assists in the use of Reportable Force, and every supervisor who directed that force be used, should be required to complete a separate and independent written report before going off duty, unless the Watch Commander/ Supervising Lieutenant determines that there are exigent circumstances, such as the Department member's physical or medical condition, that impair the Department member's ability to complete the report before going off duty, in which case the report should be completed as soon as possible and the reasons for the delay should be documented.

     15.2    The Department's Custody use of force policies should provide that every Department member who witnesses the use of force by another Department member should be required to prepare an independent written report unless the Watch Commander/Supervising Lieutenant specifically designates which witnesses will write reports because there are a large number of Department members who witnessed the same incident.

     15.3    The Department's Custody use of force policies should provide that a Department member who uses force should describe in his or her written report the force used by any other Department member in response to an inmate's actions during the incident as well as his or her own force.

     15.4    The Department's Custody use of force policies should provide that a Department member using force or witnessing force should describe in his or her written

report any visible or apparent injuries to Department members, inmates or other persons involved in a use of force.

15.5 The Department's Custody use of force policies should provide that a Department member who wants to make any clarifications or changes after viewing a video of a force incident should be required to either prepare a supplemental report or specifically note any changes to the Department member's initial report that were made after viewing the video of the force incident.

15.6 The Department's Custody use of force policies should provide that, to the extent practical, Department members should be separated until they have completed their use of force reports and/or witness reports on use of force incidents.

15.7 Watch Commanders/Supervising Lieutenants and Unit Commanders should review Department members' force reports to ensure that they reflect each member's individual perceptions and recollections of the events and that they do not have common wording or phrasing that would suggest inappropriate collaboration on force reports.

## 16. Health Care Assessments and Documentation Following Force Incidents (expected to be completed by June 30, 2015):

16.1 The Department should require a documented medical assessment of each inmate upon whom force is used as soon as practical after the force incident.

16.2 With reasonable accommodations for privacy, the Department should require supervisors investigating force incidents to photograph any injury, swelling or redness sustained by each Department member who asserts orally or in a written force report that the Department member was assaulted by an inmate or note the absence of any injury, swelling or redness in the force package.

16.3 Medical staff treating an injured inmate should be required to report to the Department any injuries related to a use of force or an allegation by the inmate of a use of force.

## 17. Use of Restraints (expected to be completed by June 30, 2015):

17.1 Instead of the introductory paragraph in 5-03/130.00 (Medically Ordered Restraint Devices), the Custody Force Manual should have a separate section that sets forth the general principles governing the use of restraints as follows: (1) restraints are either security restraints or medically ordered restraints; (2) restraints should not be used to punish inmates; (3) restraint devices should only be used when there is a potential threat of physical harm, destruction of property, or escape, or to escort or transport inmates; (4) caution must be used to guard against the risk of medical distress; (5) the longer the restraint, the greater the risk; (6) restraints should never be placed on the head, nose, or neck of an inmate or in any other manner that may interfere with breathing or blood flow; (7) in-cell security restraints should not be used except in emergency circumstances and for the shortest period of time possible; (8) inmates should not be

restrained to fixed objects unless the object is designed for that purpose, and then only for the shortest period of time possible; (9) choke-hold type restraints, including carotid restraints, are prohibited absent life threatening or high risk assaultive situations where no other means of controlling the inmate is available; (10) it is the responsibility of Department members approving or applying restraints (other than restraints used to escort or transport inmates) to ensure that there is frequent, careful, and documented monitoring of the condition of the inmate(s) in restraints; and (11) medical assistance should be summoned immediately whenever an inmate appears to be experiencing medical distress or complains of difficulty breathing.

17.2    The Department should combine and conform all provisions related to restraints on pregnant inmates into one section in the Custody Division Manual (by combining the *Restraining Pregnant Inmates* section under 5-03/130.00 (Medically Ordered Restraint Devices) and Section 5-03/115 (Pregnant Inmates)).

17.3    The Department's Custody use of force policies should provide that a medical professional should examine an inmate as soon as the inmate is placed in the Safety Chair with a use of force, or if the inmate struggles against the chair restraints, and should perform a vitals check every hour while the inmate is in the Safety Chair.

17.4    The Department's Custody use of force policies should provide that Department members should check at least every 20 minutes on the welfare of any inmate in restraints other than restraints used in escorting or transporting inmates, and verify and document that the inmate is not in undue pain and that the restraints are not creating injury or obvious medical problem.

17.5    The Department's Custody use of force policies should provide that Department members should avoid, to the extent possible under the circumstances, placing their weight on an inmate's back or shoulders in a way that impairs the inmate's breathing. Once an inmate is controlled, he or she should be placed on his or her side to minimize breathing problems and the risk of medical distress or positional asphyxia. Inmates carried by members, or by gurney or stretcher, should be placed on their side if practical.

17.6    The Department's Custody use of force policies should provide that any inmate who is subjected to a multi-point restraint or who is otherwise restrained in a supine position for an extended period of time should be observed continuously so that if the inmate is on his or her back, the inmate does not vomit and asphyxiate, and if on his or her stomach does not stop breathing because of his or her body weight compressing the chest. Medical staff should be called to the scene at the first sign of such distress.

17.7    The Department's Custody use of force policies should provide that multi-point restraints may only be ordered where an inmate poses an immediate threat of serious harm to himself or others and, in the absence of exigent circumstances, such restraints may only be ordered by a medical or mental health professional.

17.8    The Department's Custody use of force policies should provide that multi-point restraints may only be used until the inmate no longer poses such an immediate threat of serious harm as determined by a medical or mental health professional, and the continued use of the multi-point restraint should be assessed by a medical or mental health professional at least every hour to determine if the inmate continues to pose an immediate threat of serious harm to himself or others.

17.9    The Department's Custody use of force policies should provide that the decision to use a multi-point restraint may be made by a shift supervisor if a medical or mental health professional is not available and there is no alternative such as a safety chair, in which case the supervisor should be responsible for monitoring the inmate's condition and determining whether to release the inmate from the multi-point restraint.

17.10   The Department's Custody use of force policies should provide that medication may not be used solely for security purposes.

**18.    Adequate Staffing and Staff Rotations (expected to be completed by June 30, 2015):**

18.1    The Department should maintain its Custody-wide rotation policies and rotate Department members at least as often as provided in those policies.

18.2    The Department should audit semi-annually each unit's compliance with its rotation policies.

**19.    Early Warning System Related to Use of Force (expected to be completed by December 31, 2015):**

19.1    The Department should develop a formal Early Warning System to identify potentially problematic Department members based upon objective criteria such as number of force incidents, inmate grievances, allegations of misconduct, performance reviews, and policy violations. This system should be in addition to subjective assessments and personnel reviews by management.

19.2    The Compliance Lieutenants in each facility should review monthly the reports generated by the Department's Early Warning System to identify potentially problematic Department members and promptly notify the Department member's Unit Commander and the Assistant Sheriff for Custody Operations in writing.

19.3    Unit Commanders should, in consultation with the appropriate Chief, determine whether a non-disciplinary performance mentoring program is appropriate for Department members identified through the Early Warning System and, if so, place the Department member in the program with specific performance metrics. If the Department decides not to place a Department member identified through the Early Warning System on a performance mentoring program, it should document the reasons for the decision.

**20.    Protocols for Planned Uses of Force (expected to be completed by June 30, 2015):**

20.1    The Custody Force Manual should indicate that there are two types of force: Reactive Force and Planned Force, and it should eliminate the definitions of rescue force, directed force, and medical assistance force, which do not reflect the Department's force policies or provide guidance in the use of force

20.2    Reactive Force should be defined as force that is used in response to an immediate threat to the safety of any Department member or inmate, the immediate threat of the destruction of a substantial amount of property, or the immediate threat of an escape, and when there is no time to plan or wait for assistance.

20.3    Planned Force should be defined to be all force other than Reactive Force. With respect to Planned Force, the Department's policies should require, time and circumstances permitting, that: (1) a medical staff person be on scene or, if impractical or unsafe, on stand by; (2) the event be video recorded; (3) a supervisor be on scene to direct the Use of Force; and (4) Shift Supervisor approval for the Use of Force.

**21.    Organizational Culture Related to Use of Force:**

21.1    The Department's policies should provide that the Department will not transfer or assign a staff member to Custody as a formal or informal sanction for problem deputies.