**SCHEPER KIM & HARRIS LLP**
RICHARD E. DROOYAN (Bar No. 65672)
601 West Fifth Street, 12th Floor
Los Angeles, CA  90071-2025
Telephone: (213) 613-4655
Facsimile:  (213) 613-4656
Email:  rdrooyan@scheperkim.com

**Monitor and on behalf of Monitors**
**Jeffrey Schwartz and Robert Houston**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| ALEX ROSAS, et al.<br><br>                    Plaintiffs,<br><br>          v.<br><br>LOS ANGELES COUNTY SHERIFF LEROY BACA, in his Official Capacity,<br><br>                    Defendant. | CV No. 12-00428 DDP<br><br>**PANEL'S FIRST REPORT** |

Pursuant to the Section V of the Settlement Agreement And Release of Claims, the Monitor appointed by this Court, Jeffrey Schwartz, Robert Houston, and Richard Drooyan (collectively the "Panel") hereby submits the attached Panel's Report "evaluating Defendant's Compliance with Action Plan" prepared by the Panel and approved by the Court for the six-month period from July 1, 2015, to December 31, 2015.  This Report takes into consideration the comments from the parties in accordance with Section V of the Agreement.  The Panel is available to answer any questions the Court may have regarding my Report at such times as are convenient for the Court and the parties.

DATED:  April 6, 2016                    Respectfully submitted,

                                         SCHEPER KIM & HARRIS LLP
                                         RICHARD E. DROOYAN

                                         By:  /s/ Richard E. Drooyan
                                              Richard E. Drooyan
                                              Monitor and on behalf of Monitors Jeffrey
                                              Schwartz and Robert Houston

## PANEL'S REPORT

The Settlement Agreement and Release (the "Agreement") between Plaintiff Alex Rosas, on behalf of himself and the Plaintiff Class, and the Sheriff of the County of Los Angeles (the "Sheriff" or "Defendant") in *Alex Rosas, et al. v. Leroy Baca,* Case No. CV 12-00248-DPP (the "*Rosas*" case) provides that the Court-appointed Monitors (the "Panel") will "prepare and submit to the Parties and the Court periodic reports evaluating Defendant's compliance with the Action Plan ('Reports') [developed by the Panel] at intervals the Panel shall determine."[1]  This Report sets forth the status of, and assesses, the implementation of the provisions of the Action Plan during the period from July 1, 2015, through December 31, 2015 (the "Initial Reporting Period"), and is created for the purposes of the settlement of the *Rosas* case.

The Panel began its monitoring activities in May 2014.  This Report is based upon the Panel's reviews of policies, procedures and directives proposed and/or implemented by the Department, multiple tours of the jails, numerous meetings with Department personnel, reviews of training courses, and the "Self-Assessment Status Report December 2015" (the "Self-Assessment") submitted by the Los Angeles Sheriff's Department (the "Department") to the Panel on January 5, 2016, which the Panel urges the Department to provide to Class Counsel, if it has not already done so.   This Report also takes into consideration the comments of the County and the Plaintiffs in the *Rosas* case as well as  some of the activities that the Sheriff and the Department have undertaken to implement provisions of the Action Plan after the end of the Initial Reporting Period.

The Agreement provides that "[w]hen the Panel certifies that any recommendation of the Action Plan has been implemented, it shall commence a period of monitoring the Defendant's compliance with respect to the recommendation ('Compliance Period')."   On December 11, 2015, the Panel certified that as of November 18, 2015, the Department had "adopted policies, directives, and practices that implement" the 67 recommendations in the Action Plan.[2]  The policies and directives were reviewed and approved by the Panel, and the Department provided the Panel with internal communications to verify that the

---

[1] In October 2014, the Panel submitted an Implementation Plan to the Parties and the Court as required under the Agreement.  This Report uses the term "Action Plan," which is used by the Parties in the Agreement to refer to the Implementation Plan.

[2] The "practices" were existing practices that were not the subject of a new policy or directive.  As with the new policies and directives, the Panel will monitor the Department's adherence to existing practices that satisfy provisions of the Action.

policies and directives were communicated to Department personnel before November 18, 2015.  In addition, the Department implemented the Panel's recommendation regarding ethics training for existing personnel in the six month period prior to the Initial Reporting Period.

We agree, as Plaintiffs suggest, that "policies required in the Action Plan are the first step" and "sustained implementation of the policies and trainings will, however, serve as the true indicator of [the Department's] progress."  Plaintiff's Comments at 1.  Prior to certifying the Department's policies that implemented many of the 67 recommendations, the Panel reviewed and commented on numerous drafts submitted by the Department, and took into consideration the language of specific provisions of the Action Plan, the practicality of implementing other provisions, and the extent to which the proposed policies, individually and collectively, adequately addressed these recommendations.   Although the Department should consider seriously any further revisions that Plaintiffs may suggest to enhance the existing policies so as "to ensure that prisoners 'are not subjected to excessive force in the Jail Complex,'"  Plaintiff's Comments at 1.  Quoting Action Plan at 2, the Panel believes that the policies it certified satisfy those portions of the requirements of the Action Plan.

There are an additional 35 recommendations in the Action Plan that were not implemented by the Department in the Initial Reporting Period.  There are also two recommendations in the Action Plan that have been superseded by the Joint Settlement Agreement and Stipulated Order of Resolution in the *United States of America v. County of Los Angeles, et al.,* No. 2:15-cv-05903 (the "DOJ case") pending before this Court.[3]

The Parties have agreed to use December 1, 2015 as the date by which the Panel will commence its monitoring of the Department's compliance with the Panel's recommendations that were implemented by the Department during the Initial Reporting Period.  The Panel is still in the process of attempting to develop Compliance Measures by which it will determine the Department's compliance with these recommendations for the 12-month and 18-month periods required under the Agreement.

The Panel believes that  the Department has made substantial progress in implementing the recommendations of the Action Plan and reforming its Custody

---

[3] §4.10 pertains to the extension of the Crisis Intervention and Conflict Resolution training to additional Department members in Custody Operations and §9.1 pertains to Safety Checks, both of which are governed by terms of the Settlement Agreement in the DOJ case.

Operations. We have had a constructive dialogue with, and the cooperation of, Department and County Counsel personnel responsible for the implementation of the recommendations in the Action Plan, toured the jails on multiple occasions, and have had numerous conversations with both inmates and staff. It is our strong impression that the Department has achieved a positive change in the culture in the jails with enhanced supervision, training, and professionalism, and we note that there has been a significant reduction in uses of force resulting in serious injuries, greater management accountability, and improved inmate-staff communications. The implementation of the recommendations in the Action Plan is, of course, only the first phase, and the monitoring of these recommendations will present its own challenges that will require the continuing cooperation of the Department.

## ACTION PLAN IMPLEMENTATION

### 1.    Leadership, Administration and Management

The four recommendations in this section (§1.1 through §1.4) of the Action Plan require that Custody Operations be headed by an Assistant Sheriff with no other areas of responsibility; the Sheriff be personally engaged in management of the Department's jail facilities; Department managers be held accountable for any failures to address force problems in the jails; and the Department regularly report to the Board of Supervisors on use of force and its compliance with the Action Plan.  Custody Operations has been headed by an Assistant Sheriff with no other areas of responsibility since well before December 1, 2015, and is continuing this structure under the new Assistant Sheriff for Custody Operations who was hired to replace Assistant Sheriff Terri McDonald.

The Department also provided policies regarding the responsibilities of the Sheriff, the Assistant Sheriff for Custody Operation, and command staff, and described reporting practices to implement each of these provisions, effective December 1, 2015.  These policies did not explicitly state that Unit Commanders "will be 'held accountable should they fail to address use of force problems'" in their jail facilities, and the Department has agreed to revise the policies to incorporate the language from §1.3 of the Action Plan as requested by Plaintiff's Counsel.  The Panel does not believe that it is necessary for the Department to set forth in advance what penalties may be imposed if commanders do not address force problems in the jails, as long as the Department does, in fact, hold them accountable if they fail to address problems in their facilities.

The Panel has also discussed with County Counsel the County's reporting to the Board of Supervisors, and we have advised County Counsel that we expect the County to make public reports to the Board at least quarterly on the Department's use of force and the implementation of the Action Plan.   Although it is possible that, in response to these public reports, the Board may raise issues about incidents that are the subject of litigation and that may be discussed in closed session under California law, the  Department must publicly report on its compliance efforts. The Panel expects to review the County's reports to the Board to ensure that they accurately reflect the Panel's understanding of the status of the County's implementation of the Action Plan.

## 2.    Use of Force Policies and Practices

The first recommendation in this section (§2.1) requires the Department to "have a separate, revised, free-standing, and logically organized Custody Force Manual for Custody Operations[.]"  On October 16, 2015, the Department provided the Panel with a Custody Operations Force Manual with separate sections on Use of Force Policy, Use of Force with Special Populations, Restraints, Escorting, Chemical Agents, Reporting, Review, Special Weapons, and Deputy-Involved Shootings.  This implements §2.1, effective December 1, 2015.

The remaining twelve recommendations (§2.2 through §2.13) require the Department to adopt new use of force policies for Custody Operations.   As noted in the introduction to this report, over the course of a number of months, the Department submitted drafts of proposed use of force polices to the Panel to implement these recommendations.   The Panel reviewed the drafts, required changes where appropriate, and ultimately approved use of force policies for Custody Operations that implement these recommendations, effective December 1, 2015.  Although, as noted by Plaintiffs, the Department's policies do not always use "the specific language" set forth in the Action Plan (e.g., §§ 2.6, 2.8 and 2.10), nothing in the Agreement or the Action Plan requires that the Department's policies track the exact wording in the Action Plan.  The Panel believes that the Department's policy to implement Section 2.6 satisfies the intent of the section as written, the policy to implement Section 2.8 imposes a duty on Department members that is reasonable and practical, and the policy to implement Section 2.10 is reflected in several provisions.  See 7-01/020.0 ("Department members may only use authorized weapons for which they have been trained to promote a safe and effective response to situations"); 7-08/000.00 ("deployment of special weapons (which have been authorized by the Department)"); 7-08/010.00 (list of authorized special weapons and chemical agents).

Beginning in the next reporting period from, the Panel will review random completed "force packages" for force incidents after December 1, 2015, obtain reports from the Department,[4] tour the basin facilities, and interview inmates and staff to assess the Department's continuing Compliance with the specific use of force recommendations during the Compliance Period.[5]

---

[4] The underlying data upon which the Department's reports are based will be subject to audit by the Panel.

[5] The process for assessing the Department's continuing Compliance with other policies adopted by the Department to implement other provisions of the Action Plan discussed below will be similar.

- 5 -

### 3.      Training and Professional Development Related to Use of Force

The first four recommendations of this section (§3.1 through §3.4) require that Department members receive training in use of force policies, ethics, professionalism, and treating inmates with respect, and new Department members receive additional Custody specific training in these areas in the Academy or the Jail Continuum in Custody Operations.

The Self-Assessment reports that the Department has waited to develop its use of force training until after the Panel approved the new use of force policies, and it anticipates offering the course in early 2016.  The monitors have not yet reviewed either the curriculum or the training materials for the use of force training.

The Panel reviewed the Department's proposed Ethics curriculum and training materials, attended several training sessions, and approved the Department's Ethics training in May 2015.  The Department had initiated ongoing in-service training prior to Panel approval of the curriculum or the training itself, but the panel determined that the changes in the training ultimately approved should not require those staff already trained to repeat the course.  As the Department notes, for existing personnel, Compliance will be determined for a particular subject matter when a certain percentage of the existing personnel who are on duty as of the date  the training  is approved by the Panel have received the required training.[6]  Thus, compliance with §3.2, which requires such Ethics training for existing personnel, will be determined when a certain percentage (still to be determined by the Panel) of the existing personnel as of May 1, 2015, have received the Ethics training and have attended the refresher course as required by the Action Plan until the Agreement is terminated.

The Department reports that new deputies are required to complete a six-week Jail Operations and Jail Operations Continuum course that includes custody-specific, scenario based use-of-force training and training in ethics, professionalism and treating inmates with respect, and that new Custody Assistants receive training in these subjects during their nine-week Academy training.  The Panel has not reviewed the curriculum or training materials for Jail Operations and Jail Operations Continuum in these subjects.  For new personnel, Compliance will

---

[6] This formula only applies to the initial training of existing personnel, and is subject to confirming that existing personnel receive refresher training as required by the Action Plan until the Agreement is terminated under Section VIII, ¶2.

be determined as a percentage of the new members  in Custody Operations who have received the new training.

§3.5 requires Unit Commanders to determine what additional training, counseling or mentoring may be required when a personnel complaint involving the use of force is resolved with a finding that it "Appears Employee Conduct Could Have Been Better."  The Department provided the Panel with a draft policy to implement this recommendation, which it anticipates will be published in the next reporting period as part of the Department's revision of its policies and procedures for handling inmate requests and grievances discussed below.  The Panel recommends that the Department provide Plaintiffs' Counsel with drafts of revised policies for handling inmate requests and grievances for Counsel's input before finalizing and adopting these policies.

The Department issued 3-01/020.15 to require unit commanders  to review new Department members within 90 days months of being initially assigned to a *Unit* and again before the end of their probationary period, to implement §3.6.  The Panel certified the Department's implementation of §3.6 as of December 1, 2015, as the policy technically meets the requirement of §3.6 that the initial assessment be within "six months of [a probationary employee] being assigned to *Custody*." The Panel, however, shares the Plaintiff's concern, that "[n]inety days may be an insufficient time in which to assess and employee's conduct," and the Department has agreed to extend the 90-day period to six months for the initial probationary review.

Compliance with §3.6 will require that Unit Commanders conduct meaningful and thorough assessments of the probationary employee's performance within 90 days of the initial assignment and again "30 days prior to the end of the probationary period."   The Panel will randomly review initial and final assessments of probationary employees to assess compliance with this provision.

**4.    Use of Force on Mentally Ill Prisoners and Other Special Needs
Populations**

The first five recommendations (§4.1 through §4.5) require the Department
to adopt specific use of force policies for Custody Operations for dealing with
mentally ill prisoners.   The Panel reviewed drafts of Department use of force
policies to implement these recommendations, required changes where appropriate,
and ultimately approved the policies, effective December 1, 2015.

The next four recommendations (§4.6 through §4.9) require the Department
to provide Custody-specific, scenario-based, skill development training for existing
and new personnel in Crisis Intervention and Conflict Resolution and on
"identifying and working with mentally ill inmates."  On November 6, 2015, with
input from a Subject Matter Expert in the DOJ case, the Panel approved the
curriculum for the "De-escalation & Verbal Resolution Training ("DeVRT") that
the Department developed to address these recommendations.

The Department provided the Panel with training materials for DeVRT on
December 28, 2015.  The Panel provided its comments to the Department on
February 2, 2016, and  met with the Department on March 4, 2016, to review the
training materials.  Following that meeting, the Panel approved the Department's
DeVRT training materials.

Although, as reported by the Department, 427 Department members have
received DeVRT training as of December 31, 2015.  The Panel has advised the
Department that these members may have to undergo some additional training in
subjects included in the approved DeVRT curriculum that were not covered in the
DeVRT training that occurred before the Panel approved the curriculum and
training materials.  At the meeting on March 4, 2016, the Department agreed that
in 2017 these Department members will attend the first eight-hour refresher course,
which will consist of the additional subjects added to the DeVRT training after
November 6, 2015.  Compliance will be determined once the required percentage
of Department members have received the required DeVRT training though the 32-
hour course and the eight-hour refresher course.  The members who received
DeVRT training before the Panel approved the Department's DeVRT training
materials will be included in the denominator of the formula to calculate a
compliance percentage, but will not be included in the numerator until they have
completed the eight-hour refresher course.

The final recommendation in this section (§4.10) is moot because the extension of the training in Crisis Intervention and Conflict Resolution to additional personnel is required by the Settlement Agreement in the DOJ case.

## 5.    Data Tracking and Reporting of Force Incidents

The three recommendations in this section (§5.1 through §5.3) require the Department to track use of force investigations, reviews, and evaluations; provide for appropriate reviews of the evaluations of force incidents; and conduct additional investigation of discrepancies and unexplained tactical decisions.  The Panel reviewed drafts of Department policies to implement these recommendations, required changes where appropriate, and ultimately approved the policies, effective December 1, 2015.

## 6.    Inmate Grievances and Other Complaints of Excessive Force

The recommendations in this section (§6.1 through §6.20) require extensive changes in how the Department handles inmate grievances and requests for service.   As noted in the Self-Assessment, on December 1, 2015, the Department submitted to the Panel a series of new policies that substantially revised the Department's inmate grievance system.   On December 21, 2015, the Panel met with the leadership from the Custody Division Grievance Team to review the policies.  The Department has submitted successive drafts of the revised policies to the Panel for review and comments, and incorporated nearly all the Panel's recommendations[7] as well as recommendations of the Office of Inspector General.  The Panel recommends that the Department provide the latest drafts of these policies to Plaintiffs' Counsel for their review and comment before finally adopting these policies.  With the exception of one recommendation discussed below, the Panel anticipates that the policies issued by Department in the next reporting period will substantially overhaul the inmate grievance system and implement the recommendations in section six of the Action Plan.

The policies reviewed by the Panel for the inmate grievance system contemplated by the Department do not "establish a centralized unit with sworn personnel, custody assistants, and civilian personnel" that would be "co-located" in the Twin Towers Correctional Facility and the Pitchess Detention Center as required by §6.16, although they do provide for some additional centralized oversight.  Based upon the policies reviewed by the Panel and conversations with

[7] The Department has provided reasonable explanations in those instances in which it did not adopt the Panel's recommendations.

Department personnel about these policies, the Panel recognizes that the Department has given a great deal of consideration about how best to organize the inmate grievance system going forward.   The Panel has advised the Department that it will defer to the Department's judgment on the organization of the system with the understanding that the Panel reserves the right to re-visit the Department's compliance with §6.16 if the Panel concludes that the Department is not effectively and efficiently handling inmate grievances and requests for service.

**7.    Inmate Supervision, Staff Inmate Relations, and Communications with Prisoners**

The three recommendations in this section (§7.1 through §7.3) require the Department to advise inmates of the voluntary Conflict Resolution Meeting available under the Department's Conflict Resolution Policy; advise inmates of the results of Department investigations of inmate grievances; and ensure adequate avenues for constructive prisoner-staff communications.  The Panel reviewed drafts of Department policies to implement these recommendations, required changes where appropriate, and ultimately approved the policies, effective December 1, 2015.

**8.    Retaliation Against Inmates**

Two of the recommendations in this section (§8.1 and §8.3) require the Department to prohibit personnel from retaliating against inmates and require the Custody Force Review Committee to review evaluations of investigations of inmate grievances that force was used to retaliate against the inmate.  The Panel reviewed drafts of Department policies to implement these recommendations, required changes where appropriate, and ultimately approved the policies, effective December 1, 2015.

The remaining section (§8.2)  has not yet been implemented by the Department.  It requires the Department to combine policies pertaining to "Complaints of Retaliation" into one section in the Custody Division Manual, which the Department plans as part of the overhaul of the inmate grievance system in the next Reporting Period.

**9.    Security Practices**

The first recommendation in this section (§9.1), which pertains to cell checks, is moot because it is covered by the Settlement Agreement in the DOJ case.  The remaining two recommendations (§9.2 and §9.3) require the

Department's use of force policies to provide that (1) staff members involved in a force incident should not escort the inmate to medical, holding or segregation after the incident and (2) Department members have a duty to protect inmates and to intervene as soon as it is reasonably safe to do so.  Although the Panel reviewed drafts of Department policies to implement these recommendations, required changes where appropriate, and ultimately approved the policies, effective December 1, 2015, they do not track the language of §9.3.  As requested by Plaintiffs' Counsel, the Department has advised us that it will add language consistent with this section to its Force Prevention Principles.

## 10.    Management Presence in Housing Units

The two recommendations in this section (§10.1 and §10.2) require senior managers to periodically tour the jails and the Department to document visits by managers (above the rank of Sergeants) in electronic records or visitor logs.  The Panel reviewed drafts of Department policies to implement these recommendations, required changes where appropriate, and ultimately approved the policies, effective December 1, 2015.

## 11.    Management Review of Force Incidents & Data

The single recommendation in this section (§11.1) requires that the Custody Force Rollout Team's involvement in reviewing the correctness of evaluations of force incidents not delay the Department's investigation of such incidents.  The Panel reviewed drafts of the Department policy to implement this recommendations and approved the policy, effective December 1, 2015.

## 12.    Reviews and Investigations of Force Incidents

The first recommendation in this section (§12.1) requires that all Custody Sergeants receive additional training in conducting force investigations and reviewing force reports.  The Department has not yet implemented this provision. The Department has provided the Panel with a course outline entitled Supervisor Orientation on Use of Force Investigations and Documentation, as well as powerpoint training materials.  The Panel has provided its comments to the Department on these materials, which the Department is considering.  The Panel anticipates that the Department will begin providing the additional training to Custody Sergeants in the next Reporting Period.

The next three recommendations (§12.2 through §12.4) require the Department to adopt policies and practices regarding the interviewing of inmates in

- 11 -

connection with force incidents and the escorting of inmates involved in such incidents.  The Panel reviewed drafts of the Department policy to implement these recommendations, required changes where appropriate, and ultimately approved the polices, effective December 1, 2015.

The final recommendation requires that use of force investigative packages should have a standard order and format.  Based upon the policy adopted by the Department, the Panel determined that the Department has implemented this recommendation, effective December 1, 2015.

### 13.    Disposition of Use of Force Reviews and Staff Discipline Issues

The two recommendations in this section (§13.1 and §13.2) require the documentation of reasons and reporting to the Office of Inspector General whenever the Department does not terminate a member who has been found to have been dishonest, used excessive force, or violated the Prisoner Rape Elimination Act ("PREA").  The Department did not implement these recommendations during the First Reporting Period.  The Panel anticipates that the Department will implement these recommendations in the next Reporting Period.

### 14.    Criminal Referrals and External Reviews of Use of Force Incidents

The two recommendations in this section (§14.1 and §14.2) require (1) an additional review of referrals of an inmate for criminal prosecution arising from an incident involving the use of force by a Department members and (2) timely referrals to the District Attorney of "officer misconduct that may amount to criminal violations."  The Panel reviewed and approved the Department directive to implement §14.1, effective December 1, 2015.  The Department considers the timely referrals to the District Attorney's office to be a practice in place as of December 1, 2015, which will be subject to monitoring by the Panel  to assess the timeliness of the Department's referrals for criminal prosecution.

### 15.    Documentation and Recording of Force Incidents

The seven recommendations in this section (§15.1 through §15.7) require the Department to have specific polices and procedures regarding the reporting of force incidents by Department members, the separation of Department members before writing reports of force incidents, and the review of force reports by Watch Commanders/Supervising Lieutenants and Unit Commanders.  The Panel reviewed drafts of Department policies to implement these recommendations, required

- 12 -

changes where appropriate, and ultimately approved the policies, effective December 1, 2015.

## 16.    Health Care Assessments and Documentation Following Force Incidents

The three recommendations in this section (§16.1 through §16.3) require the Department to have policies for medical assessments of inmates and Department members involved in force incidents.  The Panel reviewed drafts of Department policies to implement these recommendations, required changes where appropriate, and ultimately approved the policies, effective December 1, 2015.  The Department has advised the Panel that it will revise 7-07/000 to make it clear that the documented medical assessment of the inmate must be completed "as soon as practical" as requested by Plaintiff's Counsel.

## 17.    Use of Restraints

The first recommendation in this section (§17.1) requires that the Custody Force Manual include "a separate section that sets forth the general principles governing the  use of restraints" identified in this recommendation."  This Department has included such a separate section in the Manual, which implements §17.1, effective December 1, 2015.

The remaining nine recommendations (§17.2 through §17.10) require the Department to adopt specific policies for the use of restraints in Custody Operations.   The Panel reviewed  drafts of use of force policies to implement these recommendations, required changes where appropriate, and ultimately approved policies that implement these recommendations, effective December 1, 2015.  With respect to the comments of Plaintiff's Counsel, 7-03/030.00 does have the "limiting language" in the first paragraph that is required to address the requirement of §17.7 that "multi-point restraints[8] may only be ordered where an inmate poses an immediate threat of serious harm to himself or others," and it is reasonable to allow them to be used when it is "necessary to provide medical care as determined by medical staff."  It also provides in the first paragraph that "[u]nder no circumstances should custody personnel request that "medical staff medicate an inmate for security purposes" as required by §17.10.  The Panel believes that the Department's policy, which requires the "use of medically ordered restraint devices" to be "determined by medical or mental health staff," is more restrictive than what is set forth in §17.9, which would permit a shift

---

[8] Multi-point restraints are a category of Medically Ordered Restraint Devices under this policy.

supervisor to authorize the use of a multi-point restraint if medical or mental health professionals are not available.

## 18.    Adequate Staffing and Staff Rotations

The two recommendations in this section (§18.1 and §18.2) require the Department to (1) maintain Custody-wide rotations policies and (2) audit each unit's compliance with its rotations policies.  The existing policies did not require rotations of personnel among different jails.  The Panel reviewed the drafts and approved the policy for Custody Operations that implements these two recommendations, effective December 1, 2015.

## 19.    Early Warning System Related to Use of Force

The three recommendations in this section (§19.1 through §19.3) require the Department to develop a formal Early Warning System to identify potentially problematic employees based upon objective criteria.   The Department reports that it "anticipates that substantive provisions related to the Early Warning System will be ready for monitoring in late 2016."

## 20.    Protocols for Planned Use of Force

The three recommendations in this section (§20.1 through §20.3) require the Department to have two categories of force:  Reactive Force and Planned Force.  The Panel reviewed the drafts of Department policies to implement these recommendations, required changes where appropriate, and ultimately approved use of force policies for Custody Operations that implements these three recommendations, effective December 1, 2015.  We note, however, that the force packages we have reviewed refer to force as "Directed" force and "Rescue" force rather than using the terms and "Reactive Force" and "Planned Force," which are required in order for the Department to establish compliance with several of the Panel's recommendations.

## 21.    Organizational Culture Related to Use of Force

The recommendation in this section (§21.1) requires that the Department's policies "provide that the Department will not transfer or assign a staff member to Custody as a formal or informal sanction for problem employees."   The Department reports that it "anticipates that policy consistent with this recommendation will be revised and published in the second quarter of 2016."

- 14 -