PETER J. ELIASBERG
(SB# 189110)
peliasberg@aclu-sc.org
ACLU FOUNDATION OF
SOUTHERN CALIFORNIA
1313 W. 8th Street
Los Angeles, CA 90017
Phone: (213) 977-9500
Fax: (213) 977-5299

SAM S. PUATHASNANON
(SB# 198430)
sampuathasnanon@paulhastings.com
KYLE M. JONES (SB# 307814)
kylejones@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071-2228
Phone: (213) 683-6000
Fax: (213) 627-0705

ERIC BALABAN (*pro hac vice*)
ebalaban@npp-aclu.org
NATIONAL PRISON PROJECT OF
THE AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
915 15th St., NW
Washington, D.C. 20005
Phone: (202) 393-4930
Fax: (202) 393-4931

Attorneys for Plaintiffs
ALEX ROSAS and JONATHAN
GOODWIN, on behalf of themselves
and of those similarly situated

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX ROSAS and JONATHAN GOODWIN on behalf of themselves and of those similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> JIM MCDONNELL, Sheriff of Los Angeles County, in his official capacity, <br><br> Defendant. | CASE NO. CV 12-00428 DDP (MRW) <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT AGREEMENT** <br><br> Date: October 16, 2017 <br> Time: 10:00 A.M. <br><br> Honorable Dean D. Pregerson <br> Ctrm: 9c |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................. 1

II.  FACTUAL SUMMARY ...................................................................... 1

    a.  The Court Ratified the Agreement .............................................. 1

    b.  Plaintiffs' Entitlement to the Documents under the Agreement ......... 2

    c.  Plaintiffs' Request for Documents and Meet and Confer Efforts ....... 2

III.  ARGUMENT ..................................................................................... 4

    a.  This Court Has Jurisdiction to Enforce the Agreement ................... 5

    b.  Plaintiffs Have Independent Right to Access Requested Documents .................................................................................. 6

    c.  The Agreement Is Not Ambiguous .............................................. 7

    d.  Plaintiffs' Requests Are Reasonable .......................................... 9

    e.  Defendant's Objections Are Not Well Taken ................................ 11

        i.  The Requests Do Not Exceed the Scope of the Action Plan Provisions Referenced .................................................. 11

        ii.  The Requests Are Not Premature ............................................. 13

        iii.  The Requests Are Not Overbroad ........................................... 13

        iv.  The Requests Are Not Vague and Ambiguous ........................... 16

        v.  The Requests Are Not Unduly Burdensome .............................. 17

        vi.  The Requests Are Not Compound ........................................... 20

        vii.  Defendant's Privilege Objections Are Not Sufficiently Specific ............................................................................... 21

IV.  CONCLUSION ................................................................................. 23

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5

*In re Ex Parte Application of Mentor Graphics Corporation*,
   No. 16-mc-80037, 2017 WL 55875 (N.D. Cal. Jan. 4, 2017) ............................ 18

6

7

*Bank of the West v. Super. Ct.*,
   2 Cal. 4th 1254 (Cal. 1992) ................................................................................ 7

8

9

*Blankenship v. Hearst Corp.*,
   519 F.2d 418 (9th Cir. 1975) ............................................................................ 11

10

11

*Burlington North & Santa Fe Ry. v. U.S. Dist. Court for the Dist. of
   MT*,
   408 F.3d 1142 (9th Cir. 2005) .......................................................................... 22

12

13

*California v. Randtron*,
   284 F.3d 969 (9th Cir. 2002) .............................................................................. 5

14

15

*CFPB v. CashCall, Inc.*,
   No. CV 15-07522-JFW, 2016 WL 7444910 (C.D. Cal. July 8,
   2016) ................................................................................................................. 11

16

17

*In re Convergent Technologies Securities Litigation*,
   108 F.R.D. 328 (N.D. Cal. 1985) ..................................................................... 13

18

19

*Dang v. Cross*,
   No. CV 00 13001 GAF(RZX), 2002 WL 432197 (C.D. Cal. March
   18, 2002) ........................................................................................................... 20

20

21

*Dore v. Arnold Worldwide, Inc.*
   139 P.3d 56 (Cal. 2006) ...................................................................................... 8

22

23

*Gates v. Rowland*,
   39 F.3d 1439 (9th Cir. 1994) ............................................................................. 7

24

25

*Gorrell v. Sneath*,
   No. 1:12-cv-0554-JLT, 2013 WL 4517909 (E.D. Cal. Aug. 26,
   2013) ................................................................................................................. 17

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFFS' MOTION TO
ENFORCE SETTLEMENT AGREEMENT

*Herbert v. Lando*,
   441 U.S. 153 (1979) ........................................................................22

*Jeff D. v. Andrus*,
   899 F.2d 753 (9th Cir. 1989) ...........................................................7

*Kokkonen v. Guardian Life Ins. Co. of America*,
   511 U.S. 375 (1994) ..........................................................................5

*People ex rel. Lockyear v. R.J. Reynolds Tobacco*,
   107 Cal. App. 4th 516 (Cal. Ct. App. 2003)......................................8

*Medina v. Cty. of San Diego*,
   No. 08CV1252 BAS RBB, 2014 WL 4793026 (S.D. Cal. Sept. 25,
   2014) .................................................................................................23

*Miller v. Pancucci*,
   141 F.R.D. 292 (C.D. Cal. 1992) ....................................................23

*Nehad v. Browder*,
   Case No. 15-CV-1386 WQH NLS, 2016 WL 2745411 (S.D. Cal.
   May 10, 2016)...................................................................................23

*Palmer v. Truck Ins. Exchange*,
   21 Cal. 4th 1109 (Cal. 1999) .............................................................8

*Rodriquez v. City of Fresno*,
   No. CV F 09-CV-1176 AWI MJS, 2010 WL 5059644 (E.D. Cal.
   Dec. 6, 2010) ...................................................................................21

*Soto v. City of Concord*,
   162 F.R.D. 603 (N.D. Cal.1995) .....................................................11

*Thomas v. Hickman*,
   No. 1:06-cv-00215-AWI-SMS, 2007 WL 4302974 (E.D. Cal. Dec.
   6, 2007).......................................................................................11, 17

*Thompson v. Enomoto*,
   915 F.2d 1383 (9th Cir. 1990).............................................................7

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFFS' MOTION TO
ENFORCE SETTLEMENT AGREEMENT

1

2

**Statutes**

3

Cal. Civ. Code

§ 1636 ............................................................................................... 7
§ 1638 ............................................................................................... 7
§ 1644 ............................................................................................... 7

4

5

**Other Authorities**

6

Fed. R. Civ. Proc. 26(b)(5)(A)........................................................... 22

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFFS' MOTION TO
ENFORCE SETTLEMENT AGREEMENT

1  **I.   INTRODUCTION**

2      Plaintiffs respectfully request that the Court enforce the terms of the parties'

3  settlement agreement, which grants Plaintiffs "reasonable access to the Jail

4  Complex in downtown Los Angeles, including without limitation staff, inmates,

5  and documents, for inspection to evaluate compliance with the Action Plan."  (Joint

6  Motion for Preliminary Approval and Notice of Proposed Settlement ["Joint

7  Motion for Settlement"] [Dkt. No. 110], Ex. A, § VI.)  Both Parties negotiated these

8  terms, and the Court adopted and incorporated them into an enforceable Order.

9      Plaintiffs seek records from Defendant, yet Defendant has steadfastly refused

10  to provide them.  Defendant contends that the plain language of the Agreement is

11  ambiguous.  Defendant interprets this language to allow Plaintiffs to access

12  documents only after the Monitors certify substantial compliance with an Action

13  Plan provision, despite this section's silence as to the Monitors, to findings of

14  compliance, or any other contingency or condition precedent.  Defendant also has

15  failed to meet its burden as to a host of other objections it has raised to Plaintiffs'

16  requests.  Accordingly, the Court should order Defendant to produce the documents

17  requested by Plaintiffs.

18  **II.   FACTUAL SUMMARY**

19      **a.   The Court Ratified the Agreement**

20      This action began in January 2012 when Plaintiffs Alex Rosas and Jonathan

21  Goodwin filed a Complaint on behalf of a class of similar prisoners ("Plaintiffs") in

22  certain Los Angeles County jails.  (Complaint [Dkt. No. 1] at 1:8-24.)  On June 7,

23  2012, the Court granted Plaintiffs' motion for class certification.  (June 7, 2012

24  Order [Dkt. No. 54].)  In 2015, the Court entered an Order Approving Class

25  Settlement, Retaining Jurisdiction to Enforce Terms of Settlement Agreement, and

26  Dismissing Action ("April 21, 2015 Order").  (*See* April 21, 2015 Order [Dkt. No.

27  135].)

28

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFFS' MOTION TO
ENFORCE SETTLEMENT AGREEMENT

1    The April 21, 2015 Order brought the Settlement Agreement and Release of

2    Claims ("Agreement") and the Implementation Plan ("Action Plan") under the

3    Court's authority.[1]  The Court "adopt[ed] and incorporat[ed] by referenc[e] the

4    terms of the Settlement Agreement, including the [Action Plan] developed by

5    Richard Drooyan, Jeffrey Schwartz, and Robert Houston" (the "Monitors").  (April

6    21, 2015 Order [Dkt. No. 135] at 2:20-26.)  The Court via the April 21, 2015 Order

7    also "retain[s] jurisdiction for purposes of enforcing the provisions of the

8    Settlement Agreement . . . ." (April 21, 2015 Order [Dkt. No. 135] at 4:20-23.)

9       **b.    Plaintiffs' Entitlement to the Documents under the Agreement**

10   The Agreement plainly requires Defendant to produce requested documents

11   to class counsel.  Under the heading, "Inspection by Class Counsel," Plaintiffs,

12   upon "reasonable notice," are granted "reasonable access" to certain Los Angeles

13   County jails,[2] "including without limitation . . . documents for inspection to

14   evaluate compliance with the Action Plan."  (Joint Motion for Settlement [Dkt. No.

15   110], Ex. A, § VI.)  This right to inspect relevant documents is unconditional.  It

16   requires no action by the Court, no showing by Plaintiffs, and is independent of the

17   Monitors' work.  Similarly, the Agreement sections granting the Monitors' right to

18   evaluate and monitor Defendant's compliance are not conditioned on any action by

19   Plaintiffs.  (*See id.* at § II.1 [authorizing the Monitors to develop Action Plan,

20   monitor Defendant's compliance with Action Plan, and advise the Court on

21   Defendant's compliance]; § V [directing the Monitors to "prepare and submit . . .

22   periodic reports evaluating Defendant's compliance with the Action Plan . . . ."].)

23      **c.    Plaintiffs' Request for Documents and Meet and Confer Efforts**

24   On July 1, 2016 Plaintiffs requested from Defendant documents related to

25   Defendant's compliance with the Action Plan for the period of January 1, 2016

26   _____

27   [1] The Action Plan has previously been filed with the Court as Dkt. No. 133-2.
     [2] The "Jail Complex in downtown Los Angeles" is defined in the Agreement as the

28   Men's Central Jail, the Twin Towers Correctional Facility, and the Inmate
     Reception Center.  (Joint Motion for Settlement [Dkt. No. 110], Ex. A, Recital B.)

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFFS' MOTION TO
ENFORCE SETTLEMENT AGREEMENT

1   through June 30, 2016. (Declaration of Sam Puathasnanon ISO Motion to Enforce

2   Settlement Agreement ["SSP Decl."], at ¶ 8, Ex. D.) Defendant responded on July

3   28, 2016, providing only the policies it revised to conform to the Action Plan and

4   otherwise refusing to provide documents in response to Plaintiffs' requests. (SSP

5   Decl., at ¶ 9, Ex. E.) Defendant argued that Plaintiffs' requests were unreasonable

6   because the Monitors were exclusively responsible for monitoring Defendant's

7   compliance with the Action Plan. (SSP Decl., at ¶ 9, Ex. E.) Defendant also

8   objected to Plaintiffs' requests on the grounds that documents responsive to the

9   requests were confidential, protected by privilege or statute, or the requests were

10   overbroad and unduly burdensome. (SSP Decl., at ¶ 9, Ex. E.)

11       Plaintiffs responded to Defendant's objections and arguments on

12   December 20, 2016. (SSP Decl., at ¶ 10, Ex. F.) In the spirit of good-faith

13   negotiation required under the Agreement, Plaintiffs (1) reduced their document

14   requests by more than half ; (2) narrowed the relevant period to the three months

15   between January 1, 2017 and March 31, 2017; (3) proposed a production date six

16   months in the future (May 30, 2017); (4) suggested that the parties enter into a

17   protective order over any documents produced; and (5) offered to meet and confer

18   to resolve any remaining issues.[3] (SSP Decl., at ¶ 10, Ex. F.)

19       Receiving no response, Plaintiffs followed up on March 8, 2017. Plaintiffs

20   reiterated their desire to meet and confer to determine whether (1) Defendant would

21   produce the requested documents and (2) the parties could enter into a protective

22   order concerning the documents. (SSP Decl., at ¶ 11, Ex. G.) Soon after, the

23   parties met and conferred in person on April 18, 2017. (SSP Decl., at ¶ 12.)

24   Although the parties engaged in an earnest discussion, they could not resolve these

25   issues. (*Id.*) The central disagreement involved Plaintiffs' right to review

26

---

27   [3] The 35 document requests included in the December 20, 2016 correspondence, along with the specific objections Defendant raised in its June 5, 2017 letter, are
28   reproduced in the attached Appendix A for the Court's convenience.

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFFS' MOTION TO
ENFORCE SETTLEMENT AGREEMENT

1  documents under the Agreement.  (*Id.*)  Defendant agreed to provide specific

2  objections to Plaintiffs' December 20, 2016 document requests.  (*Id.*)

3  On June 5, 2017, Defendant reiterated its prior argument that the Monitors

4  have sole authority to monitor Defendant's compliance until the Monitors deem

5  Defendant "substantially compliant" with the Action Plan.  (SSP Decl., at ¶ 13,

6  Ex. H.)  Defendant also stated the following objections to specific requests: (1)

7  Plaintiffs' requests are premature because the Monitors have not yet found

8  Defendant in substantial compliance with the Action Plan;[4] (2) the requests are

9  overbroad or irrelevant; (3) the requests are vague and ambiguous; (4) the requests

10  are unduly burdensome; (5) the requests are compound and (6) the documents

11  requested are confidential, privileged, or statutorily protected from disclosure.

12  (SSP Decl., at ¶ 13, Ex. H.)

13  Defendant offered to provide, pursuant to a protective order, Plaintiffs with

14  documents it had already provided to the Monitors, but only once the Monitors

15  determined that Defendant had substantially complied with a particular Action Plan

16  provision.  (SSP Decl., at ¶ 13, Ex. H.)  This final correspondence made clear that

17  the parties would not be able to resolve the dispute, leading to this Motion.

## III.   ARGUMENT

19  Section VI of the Agreement expressly grants Plaintiffs the right,

20  independent from the Monitors, to review Defendant's documents.  (Joint Motion

21  for Settlement [Dkt. No. 110], Ex. A, § VI.)    Based on the parties' consent and

22  recommendation, the Court incorporated the Agreement into its April 21, 2015

23  Order.

24

25

26  [4] Defendant makes this objection to every request except for Request Nos. 1, 7, and 17.  Defendant has produced documents in response to Request Nos. 1 and 17.  In

27  response to Request No. 7, Defendant stated that "[p]ursuant to the Monitors' Second Report" Action Plan provision 9.1 is moot as it is covered by the

28  "settlement agreement in the DOJ case . . . ."  (*See* Appendix A, Request Nos. 1, 7, and 17.)

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFFS' MOTION TO
ENFORCE SETTLEMENT AGREEMENT

1    Nonetheless, despite the clear language of the Agreement, Defendant refuses

2    to produce the requested documents to Plaintiffs.  Specifically, Defendant argues:

3    "[s]imply put, the Agreement allows for Plaintiffs' counsel to review compliance

4    once the Court appointed Monitors . . . determine[] the Los Angeles County

5    Sheriff's Department . . . is substantially compliant with the Provisions of the

6    Agreement."  (SSP Decl., at ¶ 13, Ex. H.)[5]  However, that is not what Section VI

7    plainly provides.  Nowhere in that section, or in any other section of the Agreement,

8    is Plaintiffs' right to review documents restricted to the period after the Monitors

9    deem Defendant in substantial compliance.   Defendant has merely made up this

10   self-serving restriction.  Therefore, as discussed in more detail below, the Court

11   should enforce the plain terms of Section VI and order Defendant to produce the

12   requested documents.

13        **a.    This Court Has Jurisdiction to Enforce the Agreement**

14        Pursuant to its April 21, 2015 Order, the Court reserved jurisdiction to

15   enforce the Agreement, including the authority to compel Defendant to produce

16   documents.  *See California v. Randtron*, 284 F.3d 969, 974 (9th Cir. 2002) ("The

17   district court had jurisdiction to enforce the settlement agreement because the

18   district court incorporated the agreement into the Consent Decree.") ("*Randtron*

19   *III*"); *see also Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 381

20   (1994).  Here, Section III of the April 21, 2015 Order specifies that the Court

21   "adopts and incorporates by reference the terms of the Settlement Agreement . . . ."

22   (April 21, 2015 Order (Dkt. No. 135) at 2:20-24.)  In addition, Section VIII of this

23   Order retains jurisdiction for the Court to enforce "the provisions of the Settlement

24   Agreement . . . ."  Under Section VI of the Agreement, the Court is responsible for

25   _____

26   [5] Defendant reiterates this analysis in its "premature" objections to Plaintiffs'

27   requests.  (*See* e.g.*, Appendix A*, Request No. 2 ["Objection.  The request is
     premature as the Monitors have yet to find the Department substantially compliant

28   with Paragraph 1.1 of the Agreement."].)

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFFS' MOTION TO
ENFORCE SETTLEMENT AGREEMENT

resolving "any disputes concerning objections to document requests."  (Joint Motion for Settlement [Dkt. No. 110], Ex. A, § VI.)

### b.  Plaintiffs Have Independent Right to Access Requested Documents

Section VI unambiguously grants Plaintiffs an independent right—a right that is not dependent on any other factors—to reasonable access to Defendant's documents to evaluate its compliance with the Action Plan.  This section reads:

> *On reasonable notice, Class Counsel will have reasonable access to the Jail Complex in downtown Los Angeles, including without limitation staff, inmates, and documents, for inspection to evaluate compliance with the Action Plan.*  Class Counsel shall provide Defendant's counsel with 10 days' notice before any document request and 4 days' notice before any on-site inspection.  Defendant's counsel shall have the right to be present for any jail inspection and/or discussion with Sheriff's Department personnel.  Defendant reserves the right to object, whether on privilege grounds or otherwise, to any document request made by Class Counsel.  The Parties agree to negotiate in good faith to resolve any disputes concerning objections to document requests from Class Counsel and if the dispute cannot be resolved, to submit the issue to the Court for resolution.  Any information or documents obtained by Class Counsel under this section, may be used solely for purposes of this action and may not be used in any other action for any purpose.  Nothing in this section shall restrict monitoring activities by the ACLU (such as readily available access to Title 15 logs) in *Rutherford v. Scott*, Case No. CV 75-04111-DDP.  (Joint Motion for Settlement [Dkt. No. 110], Ex. A, § VI [emphasis added].)

The first sentence of this section grants this independent right to Plaintiffs, and none of the other sections abridge or remove this right.  The meaning of this section is self-evident.  Plaintiffs have "reasonable access" to the jails affected by the settlement.  Plaintiffs' reasonable access includes "without limitation staff, inmates, *and documents*."  (emphasis added).  Plaintiffs have reasonable access to documents "for inspection to evaluate compliance with the Action Plan."

Notably, Section VI does not prohibit Plaintiffs' right—as Defendant asserts—to reasonable access to documents until after the Monitors determine that Defendant is substantially compliant with an Action Plan provision.  (*See* Joint

Motion for Settlement [Dkt. No. 110], Ex. A.) Had the parties wanted to so limit Plaintiffs' right to review documents, they could have done so. In fact, the parties did condition some of their rights under the Agreement on triggering events. For example, the parties agreed to condition Defendant's right to seek termination of provisions of the Action Plan until after it "sustain[ed] compliance" with those provisions for proscribed periods of time. (Joint Motion for Settlement [Dkt. No. 110], Ex. A, ¶ VIII.2 [limiting Defendant's right to seek termination until Defendant sustains compliance with an individual Action Plan provision for 18 months and sustains simultaneous compliance with all provisions within its group for 12 months].) Where the parties did not include such limiting language, no such limitation applies.

### c.    The Agreement Is Not Ambiguous

Despite Section VI's clear language, Defendant argues that Section VI is ambiguous. Under the terms of the Agreement and controlling law, the Court must enforce the plain language of Section VI.

Courts apply principles of local contract law to interpret settlement agreements. *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989) ("An agreement to settle a legal dispute is a contract and its enforceability is governed by familiar principles of contract law."); *see also* Agreement Section XIV.2 (requiring interpretation "under and pursuant to the laws of the State of California"). Under California law, the goal of contractual interpretation is to give effect to the mutual intention of the parties. *Thompson v. Enomoto*, 915 F.2d 1383, 1388 (9th Cir. 1990); Cal. Civ. Code § 1636. Interpretation begins with the contractual language, which "is to govern . . . if the language is clear and explicit." *Thompson*, 915 F.2d at 1388, Cal. Civ. Code § 1638. Words in a contract are generally understood in their ordinary and popular sense. *Gates v. Rowland*, 39 F.3d 1439, 1444 (9th Cir. 1994); Cal. Civ. Code § 1644; *see also Bank of the West v. Super. Ct.*, 2 Cal. 4th 1254, 1264 (Cal. 1992) ("In interpreting an unambiguous contractual

1    provision we are bound to give effect to the plain and ordinary meaning of the

2    language used by the parties.").

3         Here, the language of the Agreement is plain:  Section VI states that

4    Plaintiffs may have "reasonable access to the Jail Complex in downtown

5    Los Angeles, including without limitation . . . documents, for inspection to evaluate

6    compliance with the Action Plan."  This language allows Plaintiffs to evaluate

7    Defendant's compliance.   Section VI does not make any reference to the Monitors.

8    Nor does it reference any limit to Plaintiffs' ability to monitor other than

9    "reasonable" notice and access.

10        Defendant's assertion that the language is ambiguous must fail.   A provision

11   is ambiguous if it is susceptible to more than one reasonable interpretation.  *People

12   ex rel. Lockyear v. R.J. Reynolds Tobacco*, 107 Cal. App. 4th 516, 524-25 (Cal. Ct.

13   App. 2003).  However, contractual language is not ambiguous just because a word

14   or phrase may have multiple meanings.  *Palmer v. Truck Ins. Exchange*, 21 Cal. 4th

15   1109, 1115 (Cal. 1999) (ambiguity requires language "susceptible to two or more

16   reasonable constructions despite the plain meaning of its terms within the context of

17   the [contract] as a whole").

18        Defendant's interpretation is flatly inconsistent with the language of the

19   Agreement.  It seeks to add the following language (in italics) that does not exist in

20   Section VI:  "On reasonable notice, Class Counsel will have reasonable access to

21   the Jail Complex in downtown Los Angeles, including without limitation staff,

22   inmates, and documents, for inspection to evaluate compliance with the Action

23   Plan, *after the Monitors have determined that Defendant is substantially compliant

24   with the Provisions of the Agreement.*"  Because Defendant's interpretation of

25   Section VI is unreasonable, its interpretation must be denied.  *Dore v. Arnold

26   Worldwide, Inc.* 139 P.3d 56, 61 (Cal. 2006) ("When a dispute arises over the

27   meaning of contract language, the first question to be decided is whether

28

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFFS' MOTION TO
ENFORCE SETTLEMENT AGREEMENT

the language is 'reasonably susceptible' to the interpretation urged by the party.  If it is not, the case is over.").

Defendant's interpretation is also irreconcilable with other provisions of the Agreement.  Under the Agreement, the parties granted both Plaintiffs and the Monitors the right to monitor Defendant's compliance.  Section VI does not tie Plaintiffs' right to the Monitors' right, or even mention the Monitors.  The Monitors' rights and responsibilities are set out in separate sections of the Agreement.  (*See,* e.g., Joint Motion for Settlement [Dkt. No. 110], Ex. A, §§ II, III, and V.)  Moreover, Plaintiffs have the right to comment on the Monitors' compliance reports, and the Monitors must consider those comments and revise their report where they deem it appropriate.  (Joint Motion for Settlement [Dkt. No. 110], Ex. A, § V.)  Defendant's refusal to produce documents thus far has impeded Plaintiffs' ability to meaningfully assess and comment on the Monitors' Reports, as is their right.  While Defendant has freely given the Monitors access to documents to prepare these reports, it has refused to share any of these documents with Plaintiffs, despite repeated requests.  Plaintiffs cannot meaningfully comment on the Monitors' reports without having access—at a minimum—to the very documents the Monitors have relied upon in drafting those reports, as well as the documents they have requested.

Thus, Section VI unambiguously grants Plaintiffs an independent right to monitor via document review Defendant's compliance, read both on its own and as part of the larger Agreement.  Accordingly, it must be interpreted to mean what it says:  Plaintiffs' reasonable access to Defendant's documents to monitor compliance is not conditioned on whether the Monitors have made any certification of compliance.

### d.    Plaintiffs' Requests Are Reasonable

Each of Plaintiffs' requests is tailored to their authorized purpose under Section VI of the Agreement:  evaluating Defendant's compliance with the Action

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFFS' MOTION TO
ENFORCE SETTLEMENT AGREEMENT

Plan.  (Joint Motion for Settlement [Dkt No. 110], Ex. A, § VI.)  Plaintiffs have

tried to make their requests as reasonable as possible, even reducing the number of

requests by more than half in response to Defendant's concerns.

For example, Plaintiffs' Request No. 4 seeks "[a]ny reports submitted to the

Sheriff on use of force incidents, investigations, and training at the facilities, and

any responses by the Sheriff regarding these reports."  This request is reasonable

because it would assist Plaintiffs in determining whether Defendant was complying

with Action Plan provision 1.2, which requires the Sheriff to be "personally

engaged in the management of the Department's Jail facilities, and . . . regularly

and adequately monitor the Department's use of force policies and practices, and its

compliance with [the Action] Plan."  (Action Plan [Dkt. No. 133-2], § 1.2.)  The

Action Plan, in turn, includes numerous training requirements, which under

provision 1.2 the Sheriff is obligated to monitor.  (*See,* e.g., Action Plan [Dkt. No.

133-2], §§ 3.1-3.6 ["Training and Professional Development Related to use of

Force"].)  Moreover, Plaintiffs' request is also reasonable because it seeks only a

small subset of documents that would prove or disprove whether the Sheriff is

"personally engaged in the management of the Department's Jail facilities."

(Action Plan [Dkt. No. 133-2], § 1.2.)

Section VI also requires that Plaintiffs provide Defendant with "reasonable

notice" for requested documents.  Plaintiffs satisfied this condition with their

December 20, 2016 letter.  In this letter, Plaintiffs allowed Defendant five months

to gather and produce the documents it requested.  This length of time greatly

exceeds the notice required by the Agreement, which requires only "10 days' notice

before any document request."  (Joint Motion for Settlement [Dkt No. 110], Ex. A,

§ VI.)  Thus, Plaintiffs have provided reasonable notice for their outstanding

requests.

Plaintiffs' requests are also reasonable given the nature of their

constitutional claims.  Courts analyzing requests in civil rights excessive force

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFFS' MOTION TO
ENFORCE SETTLEMENT AGREEMENT

cases similar to the current matter recognize the need to construe broadly the already liberal discovery standard under the Federal Rules.  *See Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal.1995) (citing *Kelly v. City of San Jose*, 114 F.R.D. 653, 667-68 (N.D. Cal. 1987)) ("[I]n the context of civil rights excessive force cases against police departments, plaintiffs may suffer great difficulties if courts impose demanding relevancy standards on them.").

### e.      Defendant's Objections Are Not Well Taken

Defendant's objections are muddled, insufficiently specific, or irrelevant, and are inadequate to bar Plaintiffs access to the requested documents.

Under the Federal Rules of Civil Procedure "the party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections."  *CFPB v. CashCall, Inc.*, No. CV 15-07522-JFW (RAOx), 2016 WL 7444910, at *1 (C.D. Cal. July 8, 2016); *accord Blankenship v. Hearst Corp.,* 519 F.2d 418, 429 (9th Cir. 1975) ("Under the liberal discovery principles of the Federal Rules defendant [are] required to carry a heavy burden of showing why discovery was denied.").  The objecting party must "state specifically how . . . each question is overly broad [or] unduly burdensome" or waive such objections if they are not "sufficiently specific."  *Thomas v. Hickman*, No. 1:06-cv-00215-AWI-SMS, 2007 WL 4302974, at *6 (E.D. Cal. Dec. 6, 2007).  Having failed to state its objections with sufficient specificity, Defendant has failed to carry its burden.

### i.      The Requests Do Not Exceed the Scope of the Action Plan Provisions Referenced

As a result of its muddled objections, Defendant claims that numerous requests are overbroad, irrelevant, and unduly burdensome for the same reason: they supposedly exceeded the "scope" or failed to meet the "purpose" of the Action

Plan provision, or Compliance Measures[6] for the Action Plan provision, referenced in the request.[7]  This objection is not well taken.  First, Section VI of the Agreement does not reference the "scope" or "purpose" of Action Plan provisions or the Compliance Measures.  Section VI does not state that Plaintiffs' right to access Defendant's documents is limited to such "scope" or "purpose."  Rather, Plaintiffs have the right to review documents "to evaluate compliance with the Action Plan." (Joint Motion for Settlement [Dkt No. 110], Ex. A, § VI.)  Accordingly, an objection on such grounds does not relieve Defendant of its obligation to produce documents in response to Plaintiffs' requests.  Regardless, the Plaintiffs' requests do not exceed the "scope" or "purpose" of the Action Plan provisions, as each request will elicit documents that would show whether Defendant complied with the Action Plan.

Defendant's argument that the requests exceed what the Compliance Measures require also fails.  The Compliance Measures were devised by the Monitors to explain their own methodology for assessing compliance with the Action Plan.  The Monitors made clear that the measures themselves are not court-ordered, and in no way change or diminish the parties' rights and responsibilities under the Agreement.  (*See* SSP Decl., ¶ 4, Ex. A [specifying that the Compliance Measures do not "change or alter the terms of the parties Settlement Agreement" and that if the Compliance Measures conflict with the Agreement "the Settlement

---

[6] Defendant used the term "Compliance Measures" in its June 5, 2017 correspondence to refer to the Monitoring Plan and Compliance Measures drafted by the Monitors.  (*See* SSP Decl., at ¶ 13, Ex. H.)  For the benefit of clarity, Plaintiffs also adopt this term to refer to this document.  Plaintiffs have also attached a true and correct copy of the Compliance Measures as Exhibit A to the declaration filed herewith.  (*See* SSP Decl., at ¶ 4, Ex. A.)

[7] (*See Appendix A*, Request Nos. 3, 5, 9, 11-12, 15-16, 19, 23, 27 [all claimed overbroad as outside the scope of Action Plan provision and Compliance Measures]; 2-5, 8, 11-13, 15-16, 26-27, 33-34 [all claimed irrelevant as outside the scope of Action Plan provision and Compliance Measures]; and 5, 9, 11-16, 26-27, 34 [all claimed burdensome as outside the scope of Action Plan provision and Compliance Measures].)

1    Agreement will control"].)  The Agreement is equally clear that Plaintiffs have the

2    right to "evaluate compliance with the Action Plan," not Defendant's compliance

3    with the Compliance Measures.

4                    **ii.      The Requests Are Not Premature**

5          Defendant objects to a large quantity of Plaintiffs' requests as "premature"

6    because "the Monitors have yet to find [Defendant] substantially compliant" with

7    the Action Plan provisions referenced in the request.[8]  Plaintiffs' right to access

8    Defendant's documents is not predicated on any action by the Monitors, including

9    the Monitors' finding that Defendant has substantially complied with certain Action

10   Plan provisions.  *See* Sections III.b-c, *supra*.  Thus, Plaintiffs' requests are not

11   "premature."

12                   **iii.     The Requests Are Not Overbroad**

13         Defendant objects to several more of Plaintiffs' requests as overbroad

14   separate from the objections discussed in Section III.e.i, *supra*.  In particular,

15   Defendant offers objections that a request is "overbroad in time and scope,"

16   (Request No. 2), "overbroad because it seeks documents violative of the attorney-

17   client and work-product privileges" (Request Nos. 4 and 5), or overbroad due to its

18   use of terms that include "any" or "all" (Request Nos. 6, 9, 10, 20).  Regardless of

19   Defendant's rationale, the requests are not overbroad.  They seek documents that

20   would assist Plaintiffs in determining Defendant's compliance with the Action

21   Plan.

22         Under the Federal Rules of Civil Procedure, a request is only overbroad if it

23   seeks documents irrelevant to the claims in the litigation.  *See In re Convergent*

24   *Technologies Securities Litigation*, 108 F.R.D. 328, 339 (N.D. Cal. 1985) (defining

25   overbroad discovery as "discovery into subjects having no meaningful connection

26   _____

27   [8] (*See Appendix A*, Request Nos. 2-6, 8-16, 18-35.)  The only requests to which
     Defendant does not make this objection are Request No. 1 (to which it produced
     documents), Request No. 7 (which it claims is mooted under the settlement
28   agreement in the DOJ case), and Request No. 17 (to which it produced documents).

1   to claims or defenses with real potential viability").  Here, each request made by

2   Plaintiffs seeks documents relevant to Defendant's compliance with the Action

3   Plan, and Plaintiffs have identified the specific provisions targeted by each request.[9]

4          Defendant's objections fail to show that Plaintiffs' requests will elicit

5   documents other than those that will help it evaluate Defendant's compliance with

6   the Action Plan.  For example, Defendant objects to Request No. 2, which seeks

7   "documentation indicating the Assistant Sheriff's involvement in any investigations

8   or hearings of staff or prisoners," as "overbroad in time and scope."  This objection

9   is too nonspecific to be valid.  It is also incorrect.  This request is not overbroad in

10  time because Plaintiffs' December 20, 2016 correspondence stated that it requested

11  documents that cover "the time frame January 1, 2017 through March 31, 2017."

12  (SSP Dec., ¶ 10, Ex. F.)  This request is not overbroad in scope because documents

13  concerning the Assistant Sheriff's involvement in these activities will show whether

14  Defendant is complying with Action Plan provision 1.1, which requires an

15  Assistant Sheriff to head "Custody Operations."  Under Defendant's own policies,

16  the Assistant Sheriff "commands and is responsible for the activities of" Custody

17  Operations, which covers all jail facilities.  (SSP Decl. at ¶ 6, Ex. B, p. 6.)  The

18  Assistant Sheriff "shall judge the performance of personnel assigned to his

19  respective areas of responsibility," including "enforcing Department policy and

20  procedures . . . recommending disciplinary action affecting personnel . . . [and]

21  ensuring that personnel . . . receive the appropriate training required for their

22  position," among other duties.  (*Id.* at pp. 6-8.)  Documentation of the Assistant

23  Sheriff's involvement, if any, in investigations or hearings goes directly to whether

24  the Assistant Sheriff is fulfilling her responsibilities under this policy as the head of

25  Custody Operations.  Indeed, this request seeks only a small cross-section of

26  activities that the Assistant Sheriff would be involved in as head of "Custody

27  ─────────────
[9] Requests that do not reference specific Action Plan provisions reference conduct

28  applicable to a large variety of Action Plan provisions.  (*See Appendix A*, Request Nos. 1, 8, 13, and 35.)

14

Operations," which narrows the amount of responsive documents and reduces any risk of overbreadth.

Defendant also objects to Request Nos. 4 and 5 as overbroad because the requests seek "documents violative of the attorney-client and attorney work-product privileges." Notwithstanding Defendant's failure to provide any description of supposedly privileged documents,[10] this objection is misstated. Whether responsive documents would be privileged does not affect the overbreadth of the request. Overbreadth turns on whether the request would return a large volume of documents that are not relevant to Plaintiffs' evaluation of Defendant's compliance.

Finally, Defendant objects to Request Nos. 6, 9, and 20 because they request "any" or "all" of a certain type of document.[11] This objection is unpersuasive. No rule prohibits a party from seeking "any" or "all" of a particular category of document. Instead, the appropriate inquiry is whether the responsive documents would be relevant to Defendant's compliance with the Action Plan.

Regardless, each request elicits documents that would help Plaintiffs evaluate Defendant's compliance without requiring Plaintiffs to provide a large volume of irrelevant documents. All Request No. 6 seeks is evidence that senior managers toured the jail facilities, which is required under Action Plan provision 10.1. (Action Plan [Dkt. No. 133-2], § 10.1 ["Senior managers from the rank of unit Commanders and above should be required to periodically tour the jail facilities, including nights and weekends."].) Plaintiffs asked for "any logs and/or other documentation" showing that managers toured the facilities, leaving it to Defendant to produce the documents that are the easiest for the department to collect.

---

[10] Plaintiffs discuss Defendant's failure to provide a privilege log in Section III.e.vii, *infra*.

[11] (*See Appendix A*, Request Nos. 6 ["[Y]our request for '[any] logs and/or other documentation' is . . . overbroad . . . ."], 9 ["This request is overbroad . . . as it seeks ALL incident reports documenting prisoner-on-prisoner violence from January 1, 2017 through March 31, 2017."], and 20 ["This request is overbroad . . . as to the terms 'any documentation' and 'any discipline.'"].)

Similarly, Request No. 9 seeks "[a]ll incident reports documenting prisoner-on-prisoner violence" because Action Plan provision 9.3 requires Defendant's policies to "provide that Department members have a duty . . . to intervene in inmate-on-inmate violence." (Action Plan [Dkt. No. 133-2], § 9.3.)  The requested incident reports will document whether or not (and when) any department members intervened, which is clearly relevant to determining whether the Defendant is properly implementing the policy required by the Action Plan.

Finally, by request 20, Plaintiffs seek "[a]ny documentation" concerning department members found to be dishonest, to have used excessive force, or violated PREA but were not terminated as required under Action Plan Provision 13.1.  That provision requires a "firm policy of zero tolerance" for this conduct and, if the employee is not fired, obligates Defendant to "document the reasons why the [employee] was not terminated . . . ."  (Action Plan [Dkt. No. 133-2], § 13.1.)

Despite the use of "any" or "all" in these requests, Plaintiffs seek a narrow category of documents that would allow them to evaluate Defendant's compliance with identified provisions of the Action Plan.

### iv.    The Requests Are Not Vague and Ambiguous

Defendant also objects to several requests on the grounds that terms used within the requests are vague and ambiguous,[12] or the request fails to mention an

_____

[12] (*See Appendix A*, Request Nos. 2 ["vague and ambiguous as to the phrase 'Assistant Sheriff's involvement in any investigations or hearings of staff or prisoners"]; 3 ["vague and ambiguous as to the phrase 'effective policies and procedures'"]; 4 ["vague and ambiguous as to the phrase 'any responses'"]; 6 ["your request for 'logs and/or other documentation' is vague"]; 8 ["vague and ambiguous as to the phrase 'centralized log'"]; 10 ["The phrase 'unit logs' is vague, ambiguous, and uncertain"]; 11 ["The phrase 'internal investigations' is vague, ambiguous, and uncertain"]; 13 ["[Defendant] objects to Plaintiffs' definitions of force packages  . . . as vague and ambiguous"]; 14 ["this request is vague, ambiguous as to 'Section B'"]; 16 ["this request is vague and ambiguous as to the phrase '[a]ll referrals to internal or external agencies,' as well as 'investigations.'"]; 20 ["vague and ambiguous as to the terms 'any documentation' and 'any discipline.'"]; 25 ["This request is vague and ambiguous as to the term 'complaints.'"].); and 34 ["As phrased, this request is vague, ambiguous"].)

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFFS' MOTION TO
ENFORCE SETTLEMENT AGREEMENT

action plan provision.[13]  These objections are invalid.  In these requests, Plaintiffs have placed Defendant upon reasonable notice of what documents are requested.

Under the Federal Rules of Civil Procedure, a request for production of documents is adequate if it "describes items with 'reasonable particularity.'" *Gorrell v. Sneath*, No. 1:12-cv-0554-JLT, 2013 WL 4517909, at *2 (E.D. Cal. Aug. 26, 2013).  "Thus, a request is sufficiently clear if it places the party upon reasonable notice of what is called for and what is not."  *Id.* (quotations omitted).  Further, "the responding party should exercise reason and common sense to attribute ordinary definitions to terms and phrases used in discovery documents." *Thomas,* 2007 WL 4302974, at *6 (internal quotations omitted).  Objection to a request for documents as vague and ambiguous is akin to stating that the responding party does not know what documents are requested.

Plaintiffs appropriately describe the documents they request.  Defendant does not offer any alternative interpretations for Plaintiffs' requests or describe how the requests may elicit several different categories of documents.  Plaintiffs concede, however, that Request No. 14 is vague and ambiguous because it inadvertently references a "Section B" that is otherwise absent from the requests. "Section B" should be replaced by "Request No. 13."  When read in this light, the request is no longer vague and ambiguous.

### v.   The Requests Are Not Unduly Burdensome

Defendant objects to several of Plaintiffs' requests as unduly burdensome[14] on the basis that they have not sufficiently identified the information requested,[15] they are duplicative of other document requests by Plaintiffs,[16] or seek all of a

---

[13] (*See Appendix A*, Request No. 30 ["this request is vague and ambiguous as Plaintiffs' counsel has not identified any paragraphs of the [Action Plan] that correspond to this request."].)
[14] Several of Defendant's objections merely state that a particular request is "burdensome."  Plaintiffs interpret these as "unduly burdensome" objections.
[15] (*See Appendix A*, Request No. 3.)
[16] (*See Appendix A*, Request Nos. 19, 20, 24, 29, and 30.)

category of requested documents.[17]  However articulated, Defendant's rationale misses the mark.  Even if Defendant had stated a valid objection, any burden faced by Defendant is outweighed by Plaintiffs' need for these documents to determine if Defendant is complying with the Action Plan.  Showing undue burden is a high bar for a party to carry.  Courts weigh the producing party's difficulties gathering and producing the requested information against the receiving party's benefit of having the information.  *In re Ex Parte Application of Mentor Graphics Corporation*, No. 16-mc-80037, 2017 WL 55875, at *3 (N.D. Cal. Jan. 4, 2017) ("The court considers this factor in the context of the relevance of the material, the need for the discovery, the breadth of the request, the time period covered by the request, and the particularity of the request and burden imposed.").

Like Defendant's prior objections, its undue burden objections are not sufficiently specific.  They contain no information about the hours of labor, numbers of documents, or overwhelming difficulty necessary to respond to the requests.  Indeed, Plaintiffs drafted the requests to reduce the amount of burden on Defendant, focusing on easier-to-produce items such as (1) documents likely to be preserved in a specific location as they are created,[18] (2) records that summarize information from several sources,[19] or (3) a narrowed subset of documents that would provide a bellwether for compliance with a broader Action Plan provision.[20]

For example, Plaintiffs' Request No. 27 seeks "[a]ny documentation of reviews conducted of Department members during the probationary period and post-probationary period," citing Action Plan provision 3.6.  Defendant objects on

---

[17] (*See Appendix A*, Request No. 9.)
[18] (*See*, e.g., *Appendix A*, Request Nos. 21-32 [requesting training materials, which are likely to be saved in a single place or under the control of a single instructor].)
[19] (*See*, e.g., *Appendix A*, Request No. 7 [requesting centralized logs that track force incidents, inmate grievances, allegations of misconduct, performance review, and policy violations].)
[20] (*See*, e.g., *Appendix A*, Request No. 2 [requesting only documentation indicating Assistant Sheriff's connection with "investigations or hearings of staff or prisoners" to evaluate compliance with Action Plan provision 1.1, which requires "Custody Operations . . . to be headed by an Assistant Sheriff . . . ."].)

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFFS' MOTION TO
ENFORCE SETTLEMENT AGREEMENT

1    the ground that it is overbroad because it seeks "reviews conducted by members

2    without any limitation as to time or quantity." The request, like all requests, is

3    limited in time, seeking only those reviews that were done over a three-month

4    period, from January-March 2017. (*See* SSP Decl., ¶ 7, Ex. F.) Defendant provides

5    no information on the number of reviews it conducted, the number of employees

6    who served their probationary period during these three months, or the monetary

7    costs for compliance. Even if Defendant did make a showing that a response would

8    be burdensome, that would not overcome Plaintiffs' need for the documents, which

9    go directly to Defendant's compliance with provision 3.6, requiring that new

10   Department members assigned to the Jail "be reviewed within six months after

11   being assigned to Custody and again before their first post-probationary

12   assignment." (Action Plan [Dkt. No. 133-2], § 3.6.)[21]

13          In addition, Defendant objects to Request Nos. 19 and 20 because they are

14   duplicative of Requests 18 and 20 and 18 and 19, respectively. These objections

15   are unfounded because Requests 18, 19, and 20 do not overlap. Request 18 seeks

16   documented findings of certain conduct or violations, Request 19 seeks

17   documentation showing that the conduct or violations led to a termination, and

18   Request 20 seeks documentation showing that the conduct or violations led to a

19   punishment other than termination.

20

21

---

22   [21] This provision in the Action Plan is directly rooted in the findings of the Citizens'

23   Commission on Jail Violence about the inadequacy of the probationary period for custody deputies and the Commission's Recommendation 6.4 which provides:

24   "There should be a meaningful probationary period for new deputies in Custody.

25   New deputies should have a meaningful probationary period during their first twelve months in Custody. The Department must rigorously assess each new

26   deputy's abilities and fitness for service and terminate deputies who cannot meet

27   the requisite standards." This recommendation occurs at page 137 of the Report of the Citizens' Commission on Jail Violence and is available at the following URL:

28   http://ccjv.lacounty.gov/wp-content/uploads/2012/09/CCJV-Report.pdf.

MEMORANDUM OF POINTS AND AUTHORITIES
                                                IN SUPPORT OF PLAINTIFFS' MOTION TO
                                                ENFORCE SETTLEMENT AGREEMENT

Defendant's objections that Requests 29 and 30 are duplicative of Request 28 meet a similar fate.  All of these requests seek curricula or training materials, but Request 28 seeks those related to "Crisis Intervention and Conflict Resolution," Request 29 seeks those related to "identifying and working with mentally ill inmates," and Request 30 seeks those related to "De-escalation & Verbal Resolution."

Finally, Defendant objects to Request 9 because it seeks "all" incident reports documenting prisoner-on-prisoner violence, and "Department members' efforts to intervene as soon as possible," during a three-month period.  However, using "any" or "all" in requests for discovery does not make the request unduly burdensome. *Dang v. Cross*, No. CV 00 13001 GAF(RZX), 2002 WL 432197, at *4 (C.D. Cal. March 18, 2002) (upholding Magistrate Judge's ruling that interrogatories containing requests for "all facts" were not unduly burdensome).  Moreover, Plaintiffs' need for these documents outweighs any burden on Defendant.  The Action Plan requires, "Department members have a duty to protect inmates and to take appropriate steps to intervene in inmate-on-inmate violence as soon as it is reasonably safe to do so." (Action Plan, [Dkt. No. 133-2], § 9.3.)  Plaintiffs cannot assess Defendant's compliance with this remedy without reviewing the underlying incident reports that describe prisoner-on-prisoner assaults and staff's response to them.  Accordingly, Defendant's unduly burdensome objections should be denied.

### vi.   The Requests Are Not Compound

Defendant objects to several requests on the grounds that these requests are compound.[22]  These objections are not well taken, as they are non-specific and fail to explain how these requests are compound.  Despite this lack of explanation, Defendant appears to object to Plaintiffs' definitions of certain documents and Plaintiffs' signaling that it may request additional documents after reviewing the documents requested, not to the multi-part nature of the requests.  These are not

---

[22] (*See Appendix A*, Request Nos. 13, 14, and 34.)

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFFS' MOTION TO
ENFORCE SETTLEMENT AGREEMENT

1  appropriate grounds for a compound objection.  For example, Requests 13 and 14

2  do not request multiple types of documents; instead, they define the documents

3  sought (use of force packages and use of force investigation packages, respectively)

4  to include specific items.  The specific items listed are taken from requirements of

5  the Action Plan, and from Defendant's own descriptions of the contents of use of

6  force packages.  (*See* SSP Decl., at ¶ 7 Ex. C.)  For example, Plaintiffs request

7  documentation that a shift supervisor approved a planned use of force, as required

8  by Action Plan provision 20.3; documentation of all de-escalation efforts

9  undertaken before force was used, as required by Action Plan provisions 2.2, 2.8-

10  2.9, and 4.5; and documents showing that prohibited forms of force (such as

11  striking a prisoner in the head or kicking him while on the ground) are justified

12  under the narrow exceptions written in Action Plan provisions 2.5 and 2.6.  (*See*

13  Action Plan [Dkt. No. 133-2], §§ 2.2, 2.5, 2.6, 2.8, 2.9, 4.5, 20.3.)  Defendant may

14  not offer a compound objection simply because a particular definition includes

15  several different items calculated to gather evidence of Defendant's compliance

16  with a number of Action Plan provisions.  Finally, Request 34 merely requests one

17  category of documents: "[a] log of all inmate grievances filed January 1, 2017 to

18  March 31, 2017."  The other parts of this request merely inform Defendant that

19  Plaintiffs "may request additional information and documentation" after reviewing

20  the requested log.  It does not request additional documents.  Accordingly,

21  Defendant's compound objections are meritless.

22          **vii.   Defendant's Privilege Objections Are Not Sufficiently**
                     **Specific**

23

24          Defendant has not sufficiently described the documents that they claim to be

25  privileged.  Thus, Defendant may not rely on its privilege objections to avoid

26  responding to Plaintiffs' requests.  *See Rodriquez v. City of Fresno*, No. CV F 09-

27  CV-1176 AWI MJS, 2010 WL 5059644, at *5 (E.D. Cal. Dec. 6, 2010) ("[T]he

28  party asserting a privilege has the burden to establish that it applies."); *see also*

FED. R. CIV. PROC. 26(b)(5)(A).  Blanket assertions of privilege, like those offered by Defendant, are insufficient to relieve a party's obligation to produce documents.

Instead, Defendant had to provide Plaintiffs with information about the allegedly privileged documents when responding to Plaintiffs' requests so Plaintiffs may analyze whether they are, in fact, privileged.  *See Burlington North & Santa Fe Ry. v. U.S. Dist. Court for the Dist. of MT,* 408 F.3d 1142, 1149-50 (9th Cir. 2005) ("[B]oilerplate assertion of an evidentiary privilege in response to a discovery request do not satisfy the demands of Rule 26(b)(5) . . . and is not a proper assertion of the privilege.")

In its June 5, 2017 letter, Defendant claimed three privileges in its objections: the attorney-client privilege,[23] the attorney work-product privilege,[24] and the official information privilege.[25]  Defendant failed to produce a privilege log identifying the specific documents it claims are privileged.  Defendant did not describe specific documents or provide other information to allow Plaintiffs to determine whether responsive documents would, in fact, be privileged.  Its privilege claims therefore are waived.  *See Burlington North*, 408 F.3d at 1149-50 (finding that defendant's failure to serve a privilege log until five months after the discovery requests were served was sufficient grounds to find a waiver of the attorney-client privilege).  In addition, notwithstanding any claimed privilege, Defendant already offered to produce documents for requests 21, 22, 24, 28, 29, and 32, pursuant to a protective order.

Even if Defendant had not waived his objection, Plaintiffs doubt that documents claimed as privileged would actually be protected from disclosure as "[f]ederal law disfavors privileges barring disclosure or relevant evidence, and limits even those rooted in the Constitution." *Herbert v. Lando,* 441 U.S. 153, 175 (1979).  More specifically, Courts have found that the types of documents requested

---

[23] (*See Appendix A*, Request Nos. 4 and 5.)
[24] (*See Appendix A*, Request Nos. 4 and 5.)
[25] (*See Appendix A*, Request Nos. 4, 21-24, 28-30, and 32.)

in Requests 4, 21-24, 28-30, and 32 (reports to the Sheriff, responses from the

Sheriff, and training materials) are not protected from disclosure.  *See,* e.g., *Nehad*

*v. Browder*, Case No. 15-CV-1386 WQH NLS, 2016 WL 2745411, at *4 (S.D. Cal.

May 10, 2016) (requiring production of use of force reports, internal affair reports,

and police officer's training records following police officer's fatal shooting of

individual); *Medina v. Cty. of San Diego*, No. 08CV1252 BAS RBB, 2014 WL

4793026, at *16 (S.D. Cal. Sept. 25, 2014) (internal police investigation report not

protected by the attorney-client privilege or work product doctrine); *Miller v.*

*Pancucci,* 141 F.R.D. 292, 301-02 (C.D. Cal. 1992) (ordering disclosure of training

records and internal investigatory files) .

## IV.   <u>CONCLUSION</u>

The Court has retained jurisdiction to enforce the Agreement.  By its plain

terms, the Agreement requires Defendant to give Plaintiffs reasonable access to the

Defendant's documents to evaluate Defendant's compliance with the Action Plan.

Defendant's "interpretation" of the Agreement is inconsistent with the Agreement's

plain language.  Defendant's interpretation has also significantly interfered with

Plaintiffs' ability to monitor Defendant's compliance with the Agreement and, thus,

to adequately represent the class.  Plaintiffs' requests for documents are reasonable

as they will assist Plaintiffs in monitoring Defendant's compliance.  Plaintiffs even

reduced the number of requests by greater than half to accommodate Defendant's

concerns and reduce its burden.  Defendant's remaining objections are meritless

and insufficient to warrant the Court's denying Plaintiffs the documents they seek.

Thus, Plaintiffs respectfully request that the Court order Defendant to produce the

documents Plaintiffs requested.

///

///

///

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFFS' MOTION TO
ENFORCE SETTLEMENT AGREEMENT

DATED:  September 18,  2017     Respectfully Submitted,


                                ACLU FOUNDATION OF
                                SOUTHERN CALIFORNIA


                                By:_____/s/ PETER ELIASBERG_____
                                        PETER ELIASBERG


                                NATIONAL PRISON PROJECT OF THE
                                AMERICAN CIVIL LIBERTIES UNION
                                FOUNDATION


                                By:_____/s/ ERIC BALABAN_____
                                        ERIC BALABAN


                                PAUL HASTINGS LLP


                                By:_____/s/ KYLE M. JONES_____
                                        KYLE M. JONES


                                Attorneys for Plaintiffs
                                ALEX ROSAS and JONATHAN GOODWIN on
                                behalf of themselves and of those similarly
                                situated