# EXHIBIT A

## MONITORING PLAN AND COMPLIANCE MEASURES

In determining the Sheriff's Department's Compliance with the substantive provisions of the Action Plan (developed by the Monitors as the "Implementation Plan"), as measured by the Compliance Measures set forth below, the Monitors may, as they deem necessary, conduct spot checks of Men's Central Jail ("MCJ"), the Twin Towers Correctional Facility ("TTCF"), and the Inmate Reception Center ("IRC")(collectively the "Downtown Jail Complex); audit the records of the facilities in the Downtown Jail Complex, including the records of inmates housed in these facilities; and interview inmates and staff at these facilities at any time. The Monitors reserve the right to select the records that must be reviewed to determine the Department's compliance under the Compliance Measures during the compliance periods, to request and review additional records and categories of records as necessary to assess the Department's Compliance with the Action Plan, and to seek and consider information and documents from Plaintiffs as well as the Department as part of their assessment of the Department's Compliance.

The Department must notify the Monitors and Plaintiffs when the policies and procedures required under the Compliance Measures and approved by the Monitors are implemented or modified, and when and how Department members are notified of the approved policies and procedures. In addition, the Department must maintain the approved policies in its Custody Manual.

In determining the percentages in the quantitative Compliance Measures, the Monitors will exclude force packages that do not involve incidents that are pertinent to the Substantive Paragraph of the Action Plan that is being assessed by the Monitors.

The Monitors reserve the right to rely on qualitative assessments in addition to the quantitative requirements of the Compliance Measures in determining the Department's Compliance, particularly where the sample population is too small to obtain statistically significant results or the results are within a few percentage points -- either above or below -- of the quantitative requirement. The qualitative assessments will take into consideration the nature and extent of any violations of Department policies; the supervision, disciplinary record, number, and experience of Department personnel involved in the violations; the involvement of supervisors; the quality of the Department's investigations; supervisors' responses to force incidents; Unit Commanders' assessments of the supervisors' performances; and the corrective measures and/or discipline imposed. Further, notwithstanding the quantitative Compliance Measures, the Monitors will determine whether there are systemic problems with the Department's adherence to the policies required by the Implementation Plan, the timeliness and adequacy of its investigation of alleged or potential violations of these policies, or the imposition of discipline for founded violations and, if so, they may find that the Department has not achieved Compliance with specific provisions of the plan under these circumstances.

In some instances, the Compliance Measures provide that the Department will review certain records, report the results of its review to the Monitors, and make the records and videotapes available to the Monitors for their review. In those instances, the Monitors will randomly review the records and videotapes to the extent necessary to confirm the accuracy of the Department's reported results.

1

If the Monitors determine that the Department is in Compliance with a provision of the Implementation Plan – as determined by a quantitative threshold and/or a qualitative assessment – beginning with the period January 1, 2017, through June 30, 2017, the Department shall be deemed to have implemented the provision as of the beginning of the period.   If the Monitors determine that the Department is not in Compliance in this (or any following six-month reporting period), the 12 and 18 month monitoring periods will be restarted per the terms of the Settlement Agreement, and Compliance will be determined as of the beginning of the next reporting period in which the Monitors determine that the Department is in Compliance with the Compliance Measures.

This Monitoring Plan does not change or alter the terms of the parties Settlement Agreement, including the time frames specified in the Settlement Agreement.  In the event of any conflicts between the Monitoring Plan and the Settlement Agreement, the Settlement Agreement will control.

**SUBSTANTIVE PROVISION**

1.1     Custody Operations should continue to be headed by an Assistant Sheriff with no areas of responsibility other than Custody Operations.

**COMPLIANCE MEASURE**

Compliance requires Custody Operations to be headed by an Assistant Sheriff with no areas of responsibility other than Custody Operations beginning on July 1, 2015, for the duration of the Compliance Periods in the Settlement Agreement.

3

**SUBSTANTIVE PROVISION**

1.2      The Sheriff should be personally engaged in the management of the Department's jail facilities, and the Sheriff should regularly and adequately monitor the Department's use of force policies and practices, and its compliance with this court-ordered Implementation Plan.

**COMPLIANCE MEASURE**

1.      The Department will provide on a semi-annual basis  a report setting forth the Sheriff's personal involvement in managing the Department's jail facilities and monitoring the Department's use of force policies and practices, and its compliance with the Implementation Plan.   The report will be due within thirty days after the end of semi-annual period beginning with the period from January 1, 2017 through June 30, 2017.

2.      The Sheriff will meet with the Monitors at least once every six-months to discuss the Department's implementation of the Implementation Plan and his personal involvement in overseeing the Custody Operations.

3.      Compliance requires three consecutive reports setting forth the Sheriff's personal involvement in adequately managing the jail facilities and the monitoring of the Department's use of force policies and practices, and its compliance with the Implementation Plan.

4

**SUBSTANTIVE PROVISION**

1.3     Department managers should be held accountable should they fail to address use of force problems at the Department's jail facilities.

**COMPLIANCE MEASURES**

1.     On a quarterly basis, the Department will review all use of force packets in which Department in personnel in Custody Operations were found to have (i) violated the Department's use of force policies; (ii) engaged in misconduct; or (iii) failed to report a force incident.

2.     On a quarterly basis, the Department will review the use of force statistics for Custody Operations and determine if there has been a "substantial increase" in (i) force incidents in a jail facility by more than 25% from either the prior quarter or the corresponding quarter in the prior year or (ii) Category 3 force incidents by more than 25% from either the prior quarter or the corresponding quarter in the prior year.

3.     Compliance requires the Department to submit to the Monitors, on a quarterly basis, a report that:

(a)     sets forth the total number and rank of Department personnel found to have violated the Department's use of force policies in the jails;

(b)     identifies each facility in which there was a substantial increase (as defined in Compliance Measure 1.3-2) in the number of force incidents;

(c)     assesses whether the Unit Commander and Commander appropriately addressed any Category 3 force incidents, substantial increases in force incidents, violations of the Department's use of force policies resulting in administrative investigations, or the supervision of Department members involved in a substantial increases in the number of force incidents; and

(d)     indicate what steps the Department took to hold Unit Commanders and Commanders accountable if they failed to address any Category 3 force incidents, substantial increases in force incidents, violations of the Department's use of force policies investigations; or the supervision of Department members involved in a substantial increases in the number of force incidents.
.

4.     The Monitors will determine whether the Department's quarterly report fairly and reasonably assesses force incidents, policy violations, and supervision as required by Compliance Measure 1.3-3(c).

5.     The records reviewed by the Department in connection with preparation of the reports required by Compliance Measure 1.3-3, including force packages and personnel reviews, will be  available to the Monitors.

**SUBSTANTIVE PROVISION**

1.4     The Department should report regularly to the Board of Supervisors on use of force and the status of the Department's compliance with this Implementation Plan.

**COMPLIANCE MEASURE**

1.      At least three times per year, and additionally as requested by the Board of Supervisors, the Department will report publicly to the Board of Supervisors on

(a)     its use of force in the jails, including implementation of new use of force policies; use of force statistics and trends; training of Department personnel on use of force policies and procedures; the total number of cases referred for administrative or criminal investigations for violations of the Department's use of force policies; and (without disclosing confidential personnel information) summaries of the results of investigations and discipline imposed for violations of the Department's use of force policies and misconduct involving force.

( b)    the status of the Department's compliance with the Implementation Plan and any impediments to the Department's compliance.

2.      The Department will provide the Monitors with a copy of its reports to the Board and the transcript of the  proceedings.

3.      The Monitors will assess the accuracy and completeness of the Department's reports.

6

**SUBSTANTIVE PROVISION**

2.1     The Department should have a separate, revised, free-standing, and logically organized Custody Force Manual for Custody Operations that includes all use of force policies and procedures that are in the Custody Division Manual and the sections of the Manual of Policy and Procedures that are applicable to the Custody Operations.  The Custody Force Manual should not include sections of the Manual of Policy and Procedures that are only applicable to other areas of the Department and should not include sections that are not applicable to the use of force by Department members.

**COMPLIANCE MEASURE**

The Department will provide the Monitors with a separate, free-standing Custody Force Manual that includes all force policies applicable to the use of force in Custody Operations.  The Department may modify individual policies and procedures as appropriate to ensure that the Manual is targeted for use of force by Department members in Custody Operations, so long as the revised policies and procedures comply with the Implementation Plan, but it must maintain a separate, free-standing and logically organized Custody Force Manual for the duration of the Compliance Period.

**SUBSTANTIVE PROVISION**

2.2     The Department's Custody use of force policies should provide that force used by Department members:  (a) must be used as a last resort; (b) must be the minimal amount of force that is necessary and objectively reasonable to overcome the resistance; (c) must be terminated as soon as possible consistent with maintaining control of the situation; and (d) must be de-escalated if resistance decreases.

**COMPLIANCE MEASURE**

1.     The Department must implement use of force policies that reflect the Force Prevention Principles of Paragraph 2.2, and include these policies in the Custody Force Manual.

2.     The Force Prevention Principles of Paragraph 2.2 must be covered in the Department's use of force training.

3.     Reviews of force incidents must reflect that the Unit Commander considered the Force Prevention Principles of Paragraph 2.2 in reviewing the force incident.

4.     The Department will provide the Monitors with a list of all force incidents in Men's Central Jail, the Twin Towers Correctional Facility, and the Inmate Reception Center that occur on or after January 1, 2016, which shall be updated monthly by the Department to reflect the current status of the Department's investigation of the force incidents and any subsequent force incidents.  For each force incident, the list shall reflect location of the force incident; the category of the incident; whether the force involved the use of chemical agents, weapons or restraints; the type of weapon or restraints used; whether the force was part of a cell extraction, a planned use of force, or directed by a physician; and whether inmates or staff were injured.

5.     On a quarterly basis, the Monitors will randomly select and review 25 completed force packages (and reserve the right to review additional force packages if necessary) to determine whether the Unit Commanders considered the Force Prevention Principles of Paragraph 2.2;[1] and

6.     Compliance will require that 90% of the force packages reflect consideration of the Force Prevention Principles of Paragraph 2.2 in the Unit Commander's review.[2]

---

[1] The Monitors may, in their discretion, select and review more than 25 completed force packages each quarter if they determine that it is necessary in order to assess compliance with the requirements of any of the provisions of the Implementation Plan.

[2] As noted in the Introduction, the Monitors reserve the right to consider qualitative assessments of the particular provisions in additional to the quantitative measures , and the Monitors will consider whether there are systemic problems with the Department's adherence to provisions of the Implementation Plan in assessing the Department's compliance under the Compliance Measures.  This note is applicable to, and incorporated by reference, in all of the Compliance Measures set forth herein.

**SUBSTANTIVE PROVISION**

2.3     The Department's Custody use of force policies should provide that it is a violation of Department policy to cause or facilitate inmate-on-inmate violence or to harass or otherwise verbally provoke an inmate to justify the use of force against the inmate.  The policies should also provide that staff are prohibited from publicly humiliating inmates; from using slurs concerning race, gender, ethnicity, or sexual-orientation; using obscenities; or exposing prisoners to an unreasonable risk of being assaulted by fellow prisoners.

**COMPLIANCE MEASURE**

1.     The Department must implement use of force policies that reflect the requirements of Paragraph 2.3, and include these policies in the Custody Force Manual.

2.     The requirements of Paragraph 2.3 must be covered in the Department's use of force training and reflected in the training materials.

3.     On a quarterly basis, the Department will randomly select and review up to a maximum of 25 completed force packages involving Department responses to inmate-on-inmate violence and incident reports concerning allegations of battery by an inmate on an inmate, and determine whether there was any evidence that a Department member caused or facilitated the violence, and the Department will report on the results of the review to the Monitors.

4.     On a quarterly basis, the Department will report on the status and available results of any grievance, administrative, or ICIB investigations of any incident, that, if founded, would be violations of paragraph 2.3.

5.     The force packages and records reviewed by the Department shall be available to the Monitors for their review and inspection to verify compliance.[3]

6.     Absent multiple incidents involving violations of Paragraph 2.3 in the 25 force packages or incident reports reviewed by the Department during the compliance period, which the Monitors will consider separately in determining whether the Department is in compliance with Paragraph 2.3, compliance will require the Department to impose discipline[4] for any conduct by a Department member found to be in violation of policies required by Paragraph 2.3 during the compliance period.

_____

[3] Access to the records of the Downtown Jail Complex and inmates housed in those facilities also shall be provided to staff hired by the Monitors to assist them in the performance of their duties under the Settlement Agreement.

[4] As used in these Compliance Measures, the imposition of discipline will be determined when the Department has provided its notice of disciplinary action to the employee.  Identifying information may be redacted or removed from reports regarding discipline.   As used in these Compliance Measures, "discipline" may include performance log entries, written reprimands, days off. and discharge.  The nature and extent of the discipline imposed may be considered by the Monitors in their qualitative assessments of the Department's compliance.

9

**SUBSTANTIVE PROVISION**

2.4     The Department's Custody use of force policies should provide that force may not be used as discipline or corporal punishment.

**COMPLIANCE MEASURES**

1.      The Department must implement use of force policies that reflect the requirements of Paragraph 2.4 and include these policies in the Custody Force Manual.

2.      The requirements of Paragraph 2.4 must be covered in the Department's use of force training and reflected in the training materials.

3.      On a quarterly basis, the Department will randomly select and report on the status, and any available results, of up to a maximum of 25 investigations of inmate grievances that, if founded, would reflect violations of Paragraph 2.4.

4       The records reviewed by the Department shall be available to the Monitors for their review and inspection.

5.      On a quarterly basis, the Monitors will review 25 force packages, which may be same or different than the force packages reviewed pursuant to Compliance Measure 2.2-5, and determine if the Department is in compliance with the requirements of Paragraph 2.4

6.      Compliance will require that:

(a)     the Department imposes discipline for any conduct by a Department member found to be in violation of policies required by Paragraph 2.4; and

(b)     the force used in 95% of the force packages reflect practices consistent with the policies required by Paragraph 2.4.

10

**SUBSTANTIVE PROVISION**

2.5     The Department's Custody use of force policies should provide that a Department member may not strike an inmate or use chemical agents or a taser on an inmate who is restrained unless the inmate is assaultive and presents an immediate threat of injury to a Department member or another person, and unless there are no other more reasonable means to control the inmate.

**COMPLIANCE MEASURES**

1.     The Department must implement use of force policies that reflect the requirements of Paragraph 2.5 and include these policies in the Custody Force Manual.

2.     The requirements of Paragraph 2.5 must be covered in the Department's use of force training and reflected in the training materials.

3.     On a quarterly basis, the Department will report to the Monitors on the status and any available results of  investigations of force incidents in which a chemical agent or taser was used on an inmate who was restrained and any discipline imposed for any violations of Paragraph 2.5.

4.     The records reviewed by the Department shall be available to the Monitors for their review and inspection to verify compliance.

5.     Compliance will require that:

(a)     the Department imposes discipline for any conduct by a Department member found to be in violation of policies required by Paragraph 2.5; and

(b)     the force used in 95% of the force packages reflect practices consistent with the polices required by Paragraph 2.5.

11

**SUBSTANTIVE PROVISION**

2.6     The Department's Custody use of force policies should provide that striking an inmate in the head or kicking an inmate who is on the ground, or kicking an inmate who is not on the ground anywhere above the knees is prohibited unless the inmate is assaultive and presents an imminent danger of serious injury to a Department member or another person and there are no other more reasonable means to avoid serious physical injury.  The Department's Custody use of force policies should also provide that kicking an inmate who is not on the ground below the knees is prohibited unless the inmate is physically assaultive, and the kick is utilized to create distance between the member and the assaultive inmate.

**COMPLIANCE MEASURES**

1.     The Department must implement use of force policies that reflect the requirements of Paragraph 2.6 and include these policies in the Custody Force Manual.

2.     The requirements of Paragraph 2.6 must be covered in the Department's use of force training and reflected in the training materials.

3.     On a quarterly basis, the Monitors will review all completed packages of incidents in which an inmate was struck in the head or kicked.

4.     Compliance will require that 90% of the force packages reflect  practices consistent with the policies required by Paragraph 2.6.

12

**SUBSTANTIVE PROVISION**

2.7     The Department's Custody use of force policies should provide that Department members confronted with a situation in which force may be required must call a supervisor to the scene as soon as time and circumstances permit.

**COMPLIANCE MEASURES**

1.     The Department must implement use of force policies that reflect the requirements of Paragraph 2.7 and include these policies in the Custody Force Manual.

2.     The requirements of Paragraph 2.7 must be covered in the Department's use of force training and be reflected in the training materials.

3.     The Monitors will review 25 completed force packages, which may be the same or different than the force packages reviewed pursuant to Compliance Measure 2.2-5, and interviews of Department personnel.

4.     Compliance will require that 90% of the force packages reflect practices consistent with the policies required by Paragraph 2.7.

13

**SUBSTANTIVE PROVISION**

2.8     The Department's Custody use of force policies should provide that all Department members are responsible for preventing excessive force, and that Department members witnessing excessive force have a duty to attempt to stop, reduce or control the force being used.

**COMPLIANCE MEASURES**

1.     The Department must implement use of force policies that reflect the requirements of Paragraph 2.8 and include these policies in the Custody Force Manual.

2.     The requirements of Paragraph 2.8 must be covered in the Department's use of force training and reflected in the training materials.

3.     The Monitors will assess the Department's compliance with the requirements of Paragraph 2.8 based upon reviews of completed force packages of Category 3 force incidents, reviews of videotapes of force incidents in which a Department member was found to have used excessive force in violation of  the Department's use of force policies, and interviews of Department personnel and inmates by the Monitors, and interviews conducted by Department investigators.

4.     Compliance will require that 90% of the force incidents reviewed by the monitors pursuant to Compliance Measure 2.8-3 reflect practices consistent with the policies required by Paragraph 2.8.

.

14

**SUBSTANTIVE PROVISION**

2.9      The Department's Custody use of force policies should provide that when confronting an armed inmate, every effort should be made to control the inmate at a distance and avoid the types of force that would subject Department members to close contact with the inmate.

**COMPLIANCE MEASURES**

1.      The Department must implement use of force policies that reflect the requirements of Paragraph 2.9 and include these policies in the Custody Force Manual.

2.      The requirements of Paragraph 2.9 must be covered in the Department's use of force training and reflected in the training materials.

3.      The Monitors will review completed force packages for incidents involving force used against an armed inmate to assess compliance with the requirements of Paragraph 2.9.

4.      Compliance will require that 90% of the force packages reviewed reflect practices consistent the policies required by Paragraph 2.9.

**SUBSTANTIVE PROVISION**

2.10    The Department's Custody use of force policies should provide that Department members may only use instruments of force or weapons that are (1) authorized by the Department and (2) for which they have been trained, except that Department members may use any available instruments or weapons to prevent imminent loss of life or serious bodily injury if there are no other more reasonable alternative available.

**COMPLIANCE MEASURES**

1.    The Department must implement use of force policies that reflect the requirements of Paragraph 2.10 and include these policies in the Custody Force Manual.

2.    The requirements of Paragraph 2.10 must be covered in the Department's use of force training and reflected in the training materials.

3.    On a quarterly basis, the Department will review all completed force packages for incidents involving the use of a taser or other weapon (but not including chemical agents), up to a maximum of the first 25 such incidents that occurred in the quarter, by Department members, as well as relevant training records for the involved staff and the authorization for the use of weapons in that situation, and report to the Monitors on the Department's compliance with the requirements of Paragraph 2.10.

4.    The incidents referenced in Compliance Measure 2.10-3 shall be included on the list provided to the Monitors pursuant to Compliance Measure 2.2-4.  The records reviewed by the Department will also be available to the Monitors for their inspection and review to verify compliance.

5.    Compliance will require that 90% of the force packages reviewed reflect practices consistent the policies required by Paragraph 2.10.

16

**SUBSTANTIVE MEASURES**

2.11    The Department's Custody use of force polices should provide that Department members are required to wait a sufficient amount of time after applying chemical agents to allow the chemical agents to take full effect before applying additional chemical agents or other force in a cell extraction or other planned use of force.

**COMPLIANCE MEASURES**

1.    The Department must implement use of force policies that reflect the requirements of paragraph 2.11 and include these policies in the Custody Force Manual.

2.    The requirements of paragraph 2.11 must be covered in the Department's use of force training and reflected in the training materials.

3.    On a quarterly basis, the Department will report on the status and any available completed investigations of planned use of force incidents in which the use of a chemical agent was followed by the use of additional force, including the additional use of chemical agents.

4.    The records reviewed by the Department, including any videos of the incidents, shall be made available to the Monitors for their review and inspection to verify compliance.

5.    Compliance will require that:

   (a)    the Department imposes discipline or training on any Department member found to have violated policies required by Paragraph 2.11; and

   (b)    90% of the force packages reviewed reflect practices consistent with the policies required by Paragraph 2.11.

17

**SUBSTANTIVE PROVISION**

2.12    The Department's Custody use of force policies should provide that chemical agents and Tasers and other electronic stun devices should not be used:  (a) against an inmate when he or she no longer presents a danger or is no longer resistant; (b) against inmates known to suffer  medical conditions that may be aggravated or affected by such agents; or (c) in a manner contradictory to the manufacturer's recommendations or Department training.

**COMPLIANCE MEASURE**

1.    The Department must implement use of force policies that reflect the requirements of paragraph 2.12 and include these policies in the Custody Force Manual.

2.    The requirements of paragraph 2.12 must be covered in the Department's use of force training and reflected in the training materials.

3.    On a quarterly basis, the Department will review for compliance all completed force packages, up to a maximum of the first 25 such incidents that occurred in the quarter, for incidents involving the use of a chemical agent or Taser or other electronic stun device, and also review the medical records of inmates against whom the force was used if those records are not included in the force packages.

4.    The records reviewed by the Department shall be made available to the Monitors for their review and inspection to verify compliance

5.    Compliance will require that

(a)    the Department imposes discipline for any conduct by a Department member found to be in violation of policies required by Paragraph 2.12; and

(b)    90% of the force packages reviewed reflect practices consistent with the policies required by Paragraph 2.12.

18

**SUBSTANTIVE PROVISION**

2.13    The Department's Custody use of force policies should provide that, when time and circumstances permit, an inmate's medical/mental health records should be checked before chemical agents or Tasers and other electronic stun devices are used against the inmate.  If a medical check finds these items are contra-indicated, they should not be used (subject, however, to the exception in 2.10, above).

**COMPLIANCE MEASURES**

1.      The Department must implement use of force policies that reflect the requirements of Paragraph 2.13 and include these policies in the Custody Force Manual.

2.      The requirements of Paragraph 2.13 must be covered in the Department's use of force training and reflected in the training materials.

3.      On a quarterly basis, the Department will all completed force packages, up to a maximum of the first 25 such incidents that occurred in the quarter for incidents involving the use of a chemical agent or Taser or other electronic stun device, by Department members, which may or may not be the same as the packages reviewed for compliance with Compliance Measure 2.12-3.

4.      The records reviewed by the Department shall be made available to the Monitors for their review and inspection.

5.      Compliance requires that

    (a)      the Department imposes discipline for any conduct by a Department member found to be in violation of policies required by Paragraph 2.13; and

    (b)      that 90% of the force packages reviewed reflect practices consistent with the policies required by  Paragraph 2.13.

19

**SUBSTANTIVE PROVISION**

3.1    Use of force training requirements for all existing Department members in Custody Operations should include, at a minimum, a one-time eight (8) hour use of force policy training course for all members assigned to custody and then a two (2) hour refresher course every year.

**COMPLIANCE MEASURE**

1.    The Monitors will assess whether the Department's use of force curriculum and training materials satisfy the requirements  of the Implementation Plan and observe the use of force training.

2.    Once the Monitors approve the Department's use of force curriculum and training materials, they will assess the Department's Compliance as follows:

(a)    90% of the Deputies and Custody Assistants who were assigned to Custody or to a Custody facility as of October 1, 2016 ("Retained Personnel"), must complete the required use of force training determined through the following formula:

Number of Trained Personnel as of the Completion Date
Number of Retained Personnel remaining as of the Completion Date.

(b)    90% of the Retained Personnel who have completed the initial training course must receive the two hour refresher course within twelve months of completing the required use of force training as determined through the following formula:

Number of Trained Personnel remaining in custody for twelve months after completing the required use of force training who receive the Refresher Course
 Number of Retained Personnel remaining in custody for twelve months after completing the required use of force training

20

**SUBSTANTIVE PROVISION**

3.2    Training requirements for all existing Department members in Custody Operations should include, at a minimum, a one-time four (4) hour training course in ethics, professionalism and treating inmates with respect, and then a two (2) hour refresher course on these subjects at least every other year.

**COMPLIANCE MEASURES**

1.    The Monitors will assess whether the Department's ethics curriculum and training materials satisfy the requirements  of the Implementation Plan and observe the ethics training.

2.    Once the Monitors approve the Department's ethics curriculum and training materials, they will assess the Department's Compliance as follows:

(a)    90% of the Deputies and Custody Assistants who were assigned to Custody or to a Custody facility as of July 1, 2016 ("Retained Personnel"), must complete the required ethics training determined through the following formula:

Number of Trained Personnel as of the Completion Date
Number of Retained Personnel remaining as of the Completion Date.

(b)    90% of the Retained Personnel who have completed the initial training course must receive the two hour refresher course within 24 months of completing the required ethics training as determined through the following formula:

Number of Trained Personnel remaining in custody for 24 months after completing the required ethics training who receive the Refresher Course
Number of Retained Personnel remaining in custody for 24 months after completing the required ethics training

21

**SUBSTANTIVE PROVISION**

3.3     New Department members should receive a minimum of six weeks of classroom, custody training, which may include training in the Academy or the Jail Continuum and in Crisis Intervention and Conflict Resolution (see 4.9 below), in addition to the in-service training they receive while assigned in the jails.  With the exception of one week of the Department's Jail Operations Continuum training, all of this training should occur before new Department members receive in-service training in the jails, and this training should include at least 12 to 16 hours of both Custody-specific, scenario-based use of force policy training and training in ethics, professionalism and treating inmates with respect.

**COMPLIANCE MEASURES**

1.     The Monitors will assess whether the Department's six weeks of custody-specific training for new deputies and Custody Assistants encompass the terms of the Implementation Plan and observe portions of the custody-specific training as appropriate.

2,     Once the Monitors approve the Department's custody-specific training for new deputies, they will assess the Department's Compliance as follows:

a)     95% of new Deputy Sheriffs sworn after July 1, 2015, who successfully complete the Jail Operations Continuum and are assigned to custody must complete the required custody-specific training as part of the Academy or Jail Operations Continuum; and

(b)     95% of new Custody Assistants hired after July 1, 2015, who successfully complete the Custody Assistant Academy must complete the required custody-specific training as part of their Academy training.

22

**SUBSTANTIVE PROVISION**

3.4     Custody-based, use of force scenarios should be included as part of the use of force policy training provided by the Custody Training & Standard Bureau on an in-service and refresher basis.

**COMPLIANCE MEASURES**

The Monitors will assess whether the Department's use of force curriculum encompasses the custody-based use of force scenarios and observe the actual training.  Compliance will require that the Monitors approve the use of force curriculum.

**SUBSTANTIVE PROVISION**

3.5    Unit Commanders should determine what additional training, counseling or mentoring may be required when a personnel  complaint against a Department member involving the use of force is resolved with a finding that it "Appears Employee Conduct Could Have Been Better"; direct that the Department member undergo such additional training, counseling or mentoring; and document the action taken.

**COMPLIANCE MEASURES**

1.    On a quarterly basis, the Department shall review all inmate grievances against personnel involving the use of force and force packages that were resolved in the prior quarter with a finding that it "Appears Employee Conduct Could Have Been Better."

2.    The Department shall report the results of the review to the Monitors.

3.    Records reviewed by the Department, including the inmate grievances, shall be available to the Monitors for review and inspection.

4.    Compliance will require that 90% of the force packages resolved with a finding that it "Appears Employee Conduct Could Have Been Better" reflect documentation that the Unit Commander reasonably determined what additional training, counseling or mentoring was required.

**SUBSTANTIVE PROVISION**

3.6    To ensure a meaningful probationary period, new Department members assigned to Custody Operations should be reviewed within six months after being assigned to Custody and then again before their first post-probationary assignment.

**COMPLIANCE MEASURES**

1.    On a quarterly basis, the Department will randomly select and review the personnel records of 50 the Deputy Sheriffs and 25 Custody Assistants  (excluding personnel on medical or military leave) who were in a probationary assignment in custody at any point during the prior quarter to determine if each individual was reviewed within six months of assignment to Custody and again prior to his or her one year service anniversary in time to separate the trainee while on probation, if necessary, with personalized assessments of the Deputy Sheriffs or Custody Assistants measured against meaningful criteria.

2.    The Department shall report to the Monitors the results of the reviews undertaken pursuant to Compliance Measure 3.6-1.

3.    Records reviewed by the Department shall be available to the Monitors for review and inspection to confirm that probationary Department members received individualized reviews by unit commanders with input from supervising sergeants and shift commanders.

4.    Compliance will require that

(a)    95% of the new Department members in Custody Operations for six months or longer were reviewed within six months after being assigned to Custody.

(b)    95% of the new Department members in Custody Operations for one year or longer were reviewed before their first post-probationary assignment.

25

**SUBSTANTIVE PROVISION**

4.1    The Department's Custody use of force policies should require a mental health professional to be on-scene to attempt to resolve the situation without force whenever there is a cell extraction or, to the extent possible, any other similar planned use of force.

**COMPLIANCE MEASURES**

1.    The Department must implement use of force policies that reflect the requirements of Paragraph 4.1 and include these policies in the Custody Force Manual.

2.    The requirements of Paragraph 4.1 must be covered in the Department's use of force training and reflected in the training materials.

3.    On a quarterly basis, the Department shall review completed force packages for cell extractions and similar planned uses of force up to a maximum of the first 25 such incidents that occurred in the quarter to determine if a mental health professional was on-scene.

4.    The records reviewed by the Department shall be available to the Monitors for their review and inspection to verify compliance

5.    On a quarterly basis, the Department will provide the Monitors with a list of all cell extractions and similar force incidents in the mental health housing units in the Twin Towers Correctional Facility or involving inmates on a mental health caseload.  The Monitors may review the force packages for these incidents in addition to the records reviewed by the Department.

6.    Compliance will require that a mental health professional be on the scene of 95% of non-emergency cell extractions and similar planned uses of force unless the documentation in the force package provides a substantial reason why this was not possible.

26

**SUBSTANTIVE PROVISION**

4.2    The Department's Custody use of force policies should require supervisors investigating the use of force by Department members to interview any mental health professionals who witnessed the force incident and/or attempted to resolve the incident without force, about the members' use of force and the mental health professional's efforts to resolve the matter without the use of force.  With the consent of the mental health professional, the interview should be recorded on videotape or audiotape.

**COMPLIANCE MEASURES**

1.    The Department must implement use of force policies that reflect the requirements of Paragraph 4.2 and include these policies in the Custody Force Manual.

2.    The requirements of Paragraph 4.2 must be covered in the Department's use of force training and reflected in the training materials.

3.    On a quarterly basis, the Department shall review completed force packages for all cell extractions and similar planned uses of force up to a maximum of the first 25 such incidents that occurred in the quarter, which may be the same as the packages reviewed pursuant to Compliance Measure 4.1-3, to determine if any mental health professional were on-scene and interviewed.

4.    The records reviewed by the Department shall be available to the Monitors for their review and inspection to verify compliance.

5.    Compliance will require that 95% of the on-scene mental health professionals be interviewed in connection with non-emergency cell extractions and similar planned uses of force witnessed by the mental health professionals.

27

**SUBSTANTIVE PROVISION**

4.3     The Department's Custody use of force policies should provide that in situations involving an acutely psychotic or other severely mentally disabled inmate, following an initial burst of a chemical agent that has not produced compliance, the Department should discontinue the further use of chemical agents if the inmate is sufficiently mentally disabled that he or she cannot conform his or her behavior to commands.

**COMPLIANCE MEASURES**

1.     The Department must implement use of force policies that reflect the requirements of Paragraph 4.3 and include these policies in the Custody Force Manual.

2.     The requirements of Paragraph 4.3 must be covered in the Department's use of force training and reflected in the training materials.

3.     On a quarterly basis, the Department will report on the status and any available results of force investigations of planned use of force incidents in which a chemical agent was used in a situation involving an acutely psychotic or other severely mentally disabled inmate, or an inmate assigned to the High Observation Housing in the Twin Towers Correctional Facility, followed by the use of additional force.

4.     Records reviewed by the Department and any videos of the force incidents shall be available to the Monitors for their review and inspection to verify compliance.

5.     Compliance will require that

(a)     the Department imposes appropriate discipline or training on any Department member found to have violated policies required by paragraph 4.3 during the compliance period; and

(b)     90% of the force packages reviewed reflect practices consistent with the policies required by Paragraph 4.3.

**SUBSTANTIVE PROVISION**

4.4     The Department's Custody use of force policies should provide that in situations involving a mentally ill inmate who does not present an obvious danger to himself or herself or to anyone else, and who refuses to exit his or her cell without force, there should be a reasonable "cooling off" period after all other non-force attempts at resolution have been tried and failed. Following this "cooling off" period, either a mental health professional, Department supervisor, or watch commander should again try to gain compliance without the use of force.

**COMPLIANCE MEASURES**

1.     The Department must implement use of force policies that reflect the requirements of Paragraph 4.4 and include these policies in the Custody Force Manual.

2.     The requirements of Paragraph 4.4 must be covered in the Department's use of force training and reflected in the training materials.

3.     On a quarterly basis, the Department will report on the status and any available results of investigations of force used against mentally ill inmates inside their cells in High Observation Housing or Medium Observation Housing in the Twin Towers Correctional Facility or mental health housing units in Men's Central Jail, and whether there was a cooling off period as required by Paragraph 4.4.

4.     Records reviewed by the Department and any videos of the incidents requested by the Monitors, shall be available to the Monitors  for their review and inspection to verify compliance.

5.     Compliance will require that

    (a)     the Department imposes appropriate discipline or training on any Department member found to have violated policies required by paragraph 4.4  during the compliance period; and

    (b)     90% of the force packages reviewed reflect practices consistent with the policies required by Paragraph 4.4.

29

**SUBSTANTIVE PROVISION**

4.5    The Department's Custody use of force policies should provide that whenever a planned use of force is precipitated by a medical or mental health provider's order (*e.g.*, a cell extraction following a psychiatrist's order that an inmate be moved for treatment purposes), the prescribing provider should be notified and allowed an opportunity to intervene in an effort to de-escalate the situation and to determine if the provider's order should remain in effect.  If the prescribing provider is unavailable, then another medical or mental health provider should be notified to carry out these duties.

**COMPLIANCE MEASURES**

1.    The Department must implement use of force policies that reflect the requirements of Paragraph 4.5 and include these policies in the Custody Force Manual.

2.    The requirements of Paragraph 4.5 must be covered in the Department's use of force training and reflected in the training materials.

3.    On a quarterly basis, the Department will report on the status and any available results of all investigations of force precipitated by a medical or mental health provider's order

4.    Records reviewed by the Department and any videos of the force incident shall be made available to the Monitors  for their review and inspection to verify compliance.

5.    Compliance will require that

    (a)    the Department imposes appropriate discipline or training on any Department member found to have violated policies required by Paragraph 4.5 or during the compliance period; and

    (b)    90% of the force packages reviewed reflect practices consistent with the policies required by Paragraph 4.5.

**SUBSTANTIVE PROVISION**

4.6     The Department should provide a minimum of 32 hours of Custody-specific, scenario-based, skill development training to all Deputy Sheriffs assigned to the Men's Central Jail, the Twin Towers Correctional Facilities, or the Inmate Reception Center, or who are assigned to work with mentally ill inmates at the Century Regional Detention Facility (the "Deputies in the Designated Facilities") on Crisis Intervention and Conflict Resolution with eight (8) hours of refresher training every other year.

**COMPLIANCE MEASURES**

1.     The Monitors will assess whether the Department's Crisis Intervention and Conflict Resolution training satisfies the requirements of Paragraph 4.6 and attend the Crisis Intervention and Conflict Resolution training.

2.     Once the Monitors approve the Department's curriculum and training materials, and have observed and approved the presentation of the course, they will assess the Department's Compliance as follows:

> 90% of the Deputies who were assigned to a Designated Facility as of July 1, 2015 ("Retained Personnel"), must complete the required training[5] determined through the following formula:
>
> Number of Trained Personnel as of the Completion Date
> Number of Retained Personnel remaining as of the Completion Date.

---

[5] For Deputy Sheriffs who attended the Department's De-Escalation and Verbal Resolution Training ("DeVRT") after the Monitors approved the curriculum, but before they approved the presentation, the Monitors have agreed that the deputies will be deemed to have received the required training once they attend refresher courses that cover the subjects not included in the DeVRT before it was finally approved by the Monitors.

**SUBSTANTIVE PROVISION**

4.7    The Department should provide a minimum of eight (8) hours of custody specific, scenario based, skill development training on identifying and working with mentally ill inmates to all existing Custody personnel with a four (4) hour refresher course every other year.  For Deputies in the Designated Facilities, this training may be a part of the 32 to 40 hours of Crisis Intervention and Conflict Resolution training described above.

**COMPLIANCE MEASURES**

1.    The Monitors will assess whether the Department's training on dealing with mentally ill inmates satisfies the requirements of Paragraph 4.7 and attend training sessions.

2.    Once the Monitors approve the Department's training, they will assess the Department's Compliance as follows:

> 90% of the Deputies who were assigned to a Custody Facility as of July 1, 2015 ("Retained Personnel"), must complete the required training determined through the following formula:
>
> Number of Trained Personnel as of the Completion Date
> Number of Retained Personnel remaining as of the Completion Date.

**SUBSTANTIVE PROVISION**

4.8    The Department should provide a minimum of eight (8) hours of custody specific, scenario-based, skill development training on identifying and working with mentally ill inmates to all new members as part of the Jail Operations Continuum.

**COMPLIANCE MEASURES**

1.    The Monitors will assess whether the Department's training on dealing with mentally ill inmates satisfies the requirements of Paragraph 4.8 and attend training sessions.

2.    Compliance will require that 95% of new Deputy Sheriffs who were sworn in after July 1, 2015, completed the Jail Operations Continuum, and were assigned to custody complete the required training as part of Jail Operations Continuum.  This training may be a part of the 32 to 40 hours of Crisis Intervention and Conflict Resolution training described below in Paragraph 4.9 provided in Jail Operations Continuum.

**SUBSTANTIVE PROVISION**

4.9     The Department should provide a minimum of 32 hours of custody specific, scenario-based, skill development training in Crisis Intervention and Conflict Resolution to new Department members in the Academy or in Custody before they are assigned to any jail facilities.

**COMPLIANCE MEASURES**

1.     The Monitors will assess whether the Department's training on dealing with mentally ill inmates satisfied the requirements of Paragraph 4.9 and attend training sessions.

2.     Compliance will require that 95% of new Deputy Sheriffs who were sworn in after July 1, 2015, completed the Jail Operations Continuum, and were assigned to custody, and 95% of the new Custody Assistants who were hired after July 1, 2015 and successfully completed their Academy training[6] must complete the required training as part of the Academy or in the Jail Operations Continuum.

---

[6] For new Deputy Sheriffs and Custody Assistants who attended the Department's De-Escalation and Verbal Resolution Training ("DeVRT") after the Monitors approved the curriculum, but before they approved the presentation, they will be deemed to have received the required training once they attend refresher courses that cover the subjects not included in the DeVRT before it was finally approved by the Monitors.

34

**SUBSTANTIVE PROVISION**

4.10    Within six months following the completion of the implementation of Recommendations 4.5 through 4.9, the Department should complete an evaluation regarding the effectiveness of the Crisis Intervention and Conflict Resolution training and should submit a written report to the Board of Supervisors recommending whether or not the training should be extended to the remaining Deputies in Custody Operations and/or to Custody Assistants.

**COMPLIANCE MEASURES**

This term is moot since the proposed settlement with the Department of Justice extends these requirements to the remaining Deputies and Custody Assistants.

**SUBSTANTIVE PROVISION**

5.1     The Department should track the status of all investigations, reviews and evaluations of all Custody use of force incidents and allegations of force to ensure that investigations, reviews, and evaluations are completed appropriately and timely.  As soon as practical, but no later than the end of the shift during which the use of force incident or allegation of force occurred, the supervisor or Internal Affairs investigator assigned to conduct the initial investigation should enter the use of force incident or the force allegation into a Department database with a summary description of the force incident or allegation and the Category of the force incident as it is known at the time.  The database should be updated promptly to reflect any changes in the status of the investigation, review or evaluation and changes in the Category of the force incident.

**COMPLIANCE MEASURES**

1.     The Department's Force Reporting Procedures should reflect that  use of force incidents or force allegations are entered into a Department database before the end of the investigators' shifts during which the incidents or allegations occurred or within two hours after the end of the shifts if the force incident occurred within one hour before the end of the shifts.

2.     The Department will provide the Monitors the list of all force incidents in Men's Central Jail, the Twin Towers Correctional Facility, and the Inmate Reception Center that occur on or after January 1, 2016, as required by Compliance Measure 2.2-4.

3.     On a quarterly basis, the Department shall provide the Monitors with database screen shots for the first five consecutive force incident in each month during the quarter sufficient to show the status of the investigations, reviews and evaluations of the force incidents.

4.     On a quarterly basis, the Monitors shall randomly select and review 25 completed force packages, which may be the same or different than the force packages reviewed pursuant to Compliance Measure 2.2-5, and determine that the incident or allegation was entered into the database as required by Compliance Measure 5.1-1.

5.     On a quarterly basis, the Department shall provide the Monitors with a report of all completed investigations of force incidents that were closed during the previous quarter.

6.     Compliance will require that:

(a)     95% of the force incidents or allegations were entered into the database as required by Compliance Measure 5.1-1;

(b)     90% of the investigations of Deputies were completed and, if appropriate, discipline was imposed within one year from the time the Department learned of the incident or allegation or other deadline extended by law; and

(c)     90% of the investigations of Custody Assistants were completed, and if appropriate, discipline was imposed timely as provided by law.

36

**SUBSTANTIVE PROVISION**

5.2    Evaluations of force incidents by Unit Commanders should be reviewed as follows:

> All Category 1 Force cases and Category 2 cases not that do not meet the criteria for a roll-out by the Custody Force Review Team  should be reviewed by a least one Commander in Custody Operations;
>
> All allegations of force should be reviewed by at least two Commanders in Custody Operations;
>
> Category 2 Force cases that meet the criteria for a roll-out by the Custody Force Review Team should be reviewed by the Custody Force Review Committee; and
>
> Category 3 Force cases should be reviewed by the Executive Force Review Committee.

**COMPLIANCE MEASURES**

1.    The Department will revise the Custody Division Manual to reflect the responsibilities for conducting these reviews required by Paragraph 5.2.

2.    On a quarterly basis, the Monitors will randomly select and review 25 completed force packages, which may be the same or different than the force packages reviewed pursuant to Compliance Measure 2.2-5, and determine if the evaluations were reviewed as required by Paragraph 5.2.

3.    Compliance will require that:

> (a)    The Custody Division Manual is revised to reflects the requirements of Paragraph 5.2; and
>
> (b)    90% of the Unit Commanders evaluations were reviewed as required by Paragraph 5.2

37

**SUBSTANTIVE PROVISION**

5.3     The Department's Custody use of force policies should provide that any unexplained tactical decisions pertaining to uses of force or any discrepancies among witnesses and/or evidence should be referred by the reviewing Commander(s) or committee in writing back to the incident investigator for additional investigation and then reported back in writing to the reviewing Commander(s) or committee.

**COMPLIANCE MEASURES**

1.     The Department must implement use of force policies that reflect the requirements of paragraph 5.3 and include these policies in the Custody Force Manual.

2.     90% of the force packages reviewed by the Monitors pursuant to Compliance Measure 5.2-2 must reflect compliance with the requirements of Paragraph 5.3.

**SUBSTANTIVE PROVISION**

6.1      Inmate grievances and inmate requests should be reported on separate forms, whether on paper or electronically.

**COMPLIANCE MEASURES**

Compliance will require that the Department uses different forms for grievances and for requests and provides exemplars of each form to the Monitors.

**SUBSTANTIVE PROVISION**

6.2     The Department must ensure that grievance forms are reasonably available to inmates at all times.

**COMPLIANCE MEASURES**

1.      One randomly selected day per facility each quarter , a Department member at the rank of sergeant or above will inspect 25% of the housing areas  to verify that grievance forms are reasonably available to inmates, and the Department will report to the Monitors quarterly on the results of the inspections.

2.      The Monitors shall conduct random inspections of the facilities throughout the quarter to assess whether grievance forms are reasonably available.

3.      Compliance will requires that

     (a)     95% of the housing areas inspected by the Department have the required forms reasonably available; and

     (b)     During Monitor visits, 95% of the housing areas inspected by the Monitors have the required forms reasonably available.

40

**SUBSTANTIVE PROVISION**

6.3     The inmate grievance form should have a prominent box that says, "Emergency Grievance" with boxes to check for "yes" or "no" and a space for a description of the emergency. When an inmate requests a grievance form for an emergency grievance, the inmate should be given the form immediately.

**COMPLIANCE MEASURES**

1.     The Department shall provide the Monitors with an  inmate grievance form which reflects the Emergency Grievance box and description area as described in Paragraph 6.3.

2.     On a quarterly basis, the Department shall randomly select and provide the Monitors with 25 inmate grievances (and an additional 25 if requested by the Monitors) with the "Emergency Grievance" box checked,

3.     Compliance will require that

(a)     the Department's grievance form reflects the requirements for Emergency Grievances;

(b)     the Department's policies require that inmates who have an emergency grievance be given the form immediately; and

4.     The Monitors will verify the Department's compliance with Paragraph 6.3 through interviews of staff and inmates.

41

**SUBSTANTIVE PROVISION**

6.4    The Department's inmate grievance forms should include "use of force" as a specific category of "grievances against staff" for inmates to check to ensure that such grievances are brought to the Unit Commanders' attention and properly handled.

**COMPLIANCE MEASURES**

1.    The Department shall provide the Monitors with an inmate grievance form which reflects "use of force" as a specific category of "grievances against staff" for inmates to check.

2.    On a quarterly basis, the Department shall provide the Monitors with all inmate grievance against staff at Men's Central Jail, the Inmate Reception Center, and Twin Towers Correctional Facility involving a claim of excessive or unnecessary "use of force."

3.    Compliance will require that

(a)    the Department's grievance forms include the specific category required by Paragraph 6.4;

(b)    the Department's policies require that use of force grievances against staff are brought to the attention of the Unit Commander; and

(c)    the Monitors verify that 90% of the use of force grievances against staff are brought to the attention of a Unit Commander within 10 days of receipt, and properly handled consistent with Department policy.

42

**SUBSTANTIVE PROVISION**

6.5     The Department's inmate grievance forms should include "retaliation" and "harassment" as specific categories of "grievances against staff" for inmates to check to ensure that such grievances are brought to the Unit Commanders' attention and properly handled.

**COMPLIANCE MEASURES**

1.      The Department shall provide the Monitors with an  inmate grievance form which reflects "retaliation" and "harassment" as specific categories of "grievances against staff" for inmates to check .

2.      On a quarterly basis, the Department shall provide the Monitors with all inmate grievances against staff at Men's Central Jail, Twin Towers Correctional Facility, or the Inmate Reception Center involving a claim of retaliation or harassment.

3.      Compliance will require that

(a)     the Department's grievance forms include the specific category required by Paragraph 6.5;

(b)     the Department's policies require that grievances for retaliation or harassment by staff are brought to the attention of the Unit Commander; and

(c)     the Monitors verify that 90% of the retaliation or harassment grievances against staff were brought to the attention of a Unit Commander within 10 days of receipt, and properly handled consistent with Department policy.

**SUBSTANTIVE PROVISION**

6.6      The Department's inmate grievance forms should have a check box indicating whether the complaint was upheld or denied and a statement next to the "denied" box that the inmate has the right to appeal and how long he or she has to appeal.

**COMPLIANCE MEASURES**

1.      The Department shall provide the Monitors with exemplars of inmate grievance forms that reflect a check box indicating the outcome of the inmate's grievance  and a statement next to the "denied" box that the inmate has the right to appeal and how long he or she has to appeal.

2.      Compliance will require that the Department's grievance forms include the specific box and statement consistent with paragraph 6.6 and the policies that support paragraph 6.6.

44

**SUBSTANTIVE PROVISION**

6.7     The Custody Division Manual should provide that Department members should give all grievances marked "emergency" to a supervisor as soon as possible.  Supervisors should review all emergency grievances as soon as possible to determine if the situation requires immediate action to protect the life or safety of the inmate and, if so, should immediately notify the Watch Commander/Shift Supervisor of the non-medical emergency.  The Watch Commander/Shift Supervisor should immediately confirm that the non-medical emergency exists, take such action as is necessary to protect the inmate, and as soon as time and circumstances permit provide the inmate with a written response documenting what action was taken to address the emergency.

**COMPLIANCE MEASURES**

1.     The Custody Division Manual should reflect the procedures required by Paragraph 6.7.

2.     On a quarterly basis, the Department shall randomly select and review up to 25 grievances marked "emergency" by an inmate and provide the Monitors with a report regarding the Department's handling of the grievance in compliance with the requirements of Paragraph 6.7.

3.     On a quarterly basis, the Department shall provide the Monitors with a log denoting all grievances marked "emergency" that were determined by the Department to require immediate action , which shall reflect the date and nature of the grievance, and the Department's response to the grievance.

4.     The records reviewed by the Department under Compliance Measure 6.7-2 and reflected on the log required under Compliance Measure 6.7-3 will be available to the Monitors for review and inspection to verify compliance.

5.     Compliance will require that:

(a)     The Custody Division Manual reflects the procedures required by Paragraph 6.7; and

(b)     95% of the  grievances selected pursuant to Compliance Measure 6.7-2 were handled as required by Paragraph 6.7.

45

**SUBSTANTIVE PROVISION**

6.8     If the Department determines that a non-medical emergency does not exist, it should notify the inmate as soon as practical that the grievance will be handled as a non-emergency grievance and document why it was determined not to be an emergency.

**COMPLIANCE MEASURES**

1.      The Custody Division Manual should reflect the procedures required by Paragraph 6.8.

2.      On a quarterly basis, the Department shall select and review 50 consecutive grievances marked "emergency" by inmates, which may be include the grievances reviewed pursuant to Compliance Measure 6.7-2, and provide a report to the Monitors regarding the Department's compliance with the requirements of Paragraph 6.8.

3.      The records reviewed by the Department will be available to the Monitors for review and inspection to verify compliance.

4.      Compliance will require that:

(a)     The Custody Division Manual reflects the procedures required by Paragraph 6.8; and

(b)     90% of the grievances marked "emergency" in which the Department determined that a non-medical emergency does not exist were handled as required by Paragraph 6.8, including notifying the inmate within 72 hours of the determination.

**SUBSTANTIVE PROVISION**

6.9    All emergency grievances should be forwarded to the Inmate Grievance Coordinator along with information about the decision made and when the inmate was notified about that decision.  The Inmate Grievance Coordinator should review the emergency grievance to determine if it was handled in accordance with policy and should notify the Unit Commander if it was not handled properly.

**COMPLIANCE MEASURES**

1.    The Custody Division Manual should reflect the procedures required by Paragraph 6.9.

2.    On a quarterly basis, the Monitors shall select and review 25 consecutive grievances marked "emergency" by the inmates, which may be same or different than the grievances reviewed pursuant to Compliance Measure 6.7-2.

3.    Compliance will require that:

(a)    The Custody Division Manual reflects the procedures required by Paragraph 6.9; and

(b)    90% of the  grievances marked "emergency" were forwarded to and reviewed by the Inmate Grievance Coordinator, and were handled as required by Paragraph 6.9.

**SUBSTANTIVE PROVISION**

6.10    Grievances should be collected from the locked grievance boxes on each living unit no less frequently than once per day.  The time of the collection and the person doing the collection should be recorded in the living unit log and in a separate grievance collection log maintained by the Inmate Grievance Coordinator.  Grievances should be reviewed by the Department within 24 hours of the collection of the grievance.

**COMPLIANCE MEASURES**

1.    The Custody Division Manual should reflect the procedures required by paragraph 6.10.

2.    On a quarterly basis, for  one  week per quarter selected by the Monitors, the Department will produce the e-Udal records (living unit log) of 25% randomly selected housing areas at MCJ and 25% of the housing areas at TTCF reflecting the approximate time of collection and the identification of the person doing the collection.  The Department will also produce records reflecting the collection of this data in the dashboard system (grievance collection log) maintained by the Inmate Grievance Coordinator reflecting when the grievances were reviewed by the Department.

3    The records produced by the Department will be available to  the Monitors for review and inspection to verify compliance with Paragraph 6.10.

4.    During the Monitors' visits, the Monitors shall visibly inspect the grievance collection boxes and review the grievance collection log.

5.    Compliance will require that:

(a)    The Custody Division Manual reflects the procedures required by Paragraph 6.10;

(b)    The records produced pursuant to Compliance Measure 6.10-2 reflects that grievances were collected a least once a day for 90% of the selected housing areas; and

(c)    90% of the grievances (i) were recorded in both the living unit and Inmate Grievance Coordinator logs and (ii) were reviewed within 24 hours of collection.[7]

---

[7] If the time of collection is not known, the 24 hours will be from the time of the first collection recorded from each collection round.

48

**SUBSTANTIVE PROVISION**                             .

6.11    The Custody Division Manual should provide that failing to provide an inmate with a grievance form when requested, failing to respond appropriately to a grievance, destroying or concealing grievances, attempting to intimidate an inmate from filing a grievance, and retaliating against an inmate who has filed a grievance, may each be a cause for disciplinary action.

**COMPLIANCE MEASURE**

1.    On a quarterly basis, the Department will provide the Monitors with a log of any inmate grievances  about the matters encompassed by Paragraph 6.11 and the result of the investigations of those grievances.

2.    The grievances and records upon which the results of the investigation are based will be available to the Monitors, who shall as they deem necessary interview inmates to ascertain the Department's compliance with Paragraph 6.11.

3.    Compliance will require that

    (a)    The Custody Division Manual reflects the requirements of Paragraph 6.11; and

    (b)    the Department imposes appropriate corrective action against any member who is found to have engaged in the conduct encompassed by policies required by Paragraph 6.11.

**SUBSTANTIVE PROVISION**

6.12    All inmate grievances should be entered into and tracked in an inmate grievance database that reflects the nature and status of the grievance, and personnel responsible for the Department's handling of the grievance.

**COMPLIANCE MEASURES**

1.    The Custody Division Manual should reflect the procedures required by Paragraph 6.12.

2.    The Monitors will inspect the inmate grievance database to verify that it is accurate and up-to-date.

3.    On a quarterly basis, the Monitors shall review 25 consecutive grievances to determine if they were entered and tracked in the inmate grievance database in compliance with the requirements of Paragraph 6.12

4.    Compliance will require that:

    (a)    The Custody Division Manual reflects the procedures required by Paragraph 6.12; and

    (b)    95% of the grievances were entered into and tracked as required by Paragraph 6.12.

50

**SUBSTANTIVE PROVISION**

6.13    The Inmate Grievance Coordinator should regularly track the Department's handling of inmate grievances to ensure that the investigations are completed timely and reasonably, and that inmates are notified of the results of the investigations.

**COMPLIANCE MEASURES**

1.    The Custody Division Manual should reflect the procedures required by Paragraph 6.13.

2.    The Inmate Grievance Coordinator should maintain a log that tracks the status of the Department's handling of inmate grievances.

3.    On a quarterly basis, the Department shall review 50 consecutive grievances, which may include the grievances reviewed pursuant to Compliance Measure 6.12-3, to determine if they were completed timely and reasonably, and the inmates were notified of the results of the investigations; the Department shall also provide a report to the Monitors regarding the results of the Department review for compliance with the requirements of Paragraph 6.13.

4.    The records reviewed by the Department and the Inmate Grievance Coordinator's log will be available to the Monitors for review and inspection and the Department's report will be subject to verification by the Monitors or staff retained by the Monitors..

5.    Compliance will require that:

(a)    The Custody Division Manual reflects the procedures required by Paragraph 6.13;

(b)    The Inmate Grievance Coordinator has maintained a log that will track the Department's handling of inmate grievances to insure timely and accurate responses;

(c)    no later than March 1, 2017, 75% of grievances are handled timely in accordance with Paragraph 6.13 of the Action Plan;

(d)    no later than September 1, 2017, 85% of grievances are handled timely in accordance with Paragraph 6.13 of the Action Plan; and

(e)    no later than March 1, 2018, 95% of grievances are handled timely in accordance with paragraph 6.13 of the Action Plan.

51

Case 2:12-cv-00428-MWF-E    Document 152-4    Filed 09/18/17    Page 53 of 109   Page ID #:3710

**SUBSTANTIVE PROVISION**

6.14    The Inmate Grievance Coordinator should provide a monthly report to Unit Commanders and senior management in Custody Operations of the status of inmate grievances, the timeliness of the Department's investigations of the grievances, responses to grievances and grievance appeals, and notifications to inmates of the results of the investigations and grievance appeals.

**COMPLIANCE MEASURES**

1.    The Custody Division Manual should reflect the procedures required by Paragraph 6.14.

2.    On a quarterly basis, the Department will provide the Monitors with the Inmate Grievance Coordinator's monthly reports for the prior quarter, and make available to the Monitors the records upon which the reports are based.

3.    Compliance will require that:

(a)    The Custody Division Manual reflects the procedures required by Paragraph 6.14; and

(b)    the Inmate Grievance Coordinator's monthly reports have the information required by Paragraph 6.14.

**SUBSTANTIVE PROVISION**

6.15    The Inmate Grievance Coordinator should analyze inmate grievances monthly to identify any problematic trends and should  provide that analysis in a monthly report to Unit Commanders and senior management in Custody Operations.

**COMPLIANCE MEASURES**

1.    The Custody Division Manual should reflect the procedures required by Paragraph 6.15.

2.    On a quarterly basis, the Department shall provide the Monitors with the Inmate Grievance Coordinator's monthly reports for the prior quarter, and make available to the Monitors the records upon which the reports are based.

3.    Compliance will require that:

(a)    The Custody Division Manual reflects the procedures required by Paragraph 6.15; and

(b)    the Inmate Grievance Coordinator's monthly reports have the information required by Paragraph 6.15.

**SUBSTANTIVE PROVISION**

6.16    The Department should establish a centralized unit with a sworn supervisor, custody assistants and civilian personnel to be responsible for collecting the inmate grievances and requests from inmates or from secured boxes; reviewing and categorizing the grievances and requests; forwarding them for investigation or handling; and responding to inmates.  Department personnel should be co-located in the Twin Towers and other personnel should be co-located in the Pitchess Detention Center.

**COMPLIANCE MEASURES**

Compliance will require the Department to establish a centralized command  to oversee the handling of inmate grievances, and, if the Monitors determine that the grievance personnel are not effective in addressing inmate grievances, to co-locate grievance personnel in TTCF, CRDF, and the Pitchess Detention Center.

**SUBSTANTIVE PROVISION**

6.17    There should be a 30-day deadline for filing use of force grievances by inmates.

**COMPLIANCE MEASURES**

1.    The Custody Division Manual should reflect the deadline required by Paragraph 6.17.

2.    On a quarterly basis, the Department shall select review and review 50 consecutive use of force grievances for compliance with the requirements of Paragraph 6.17.

3.    The records reviewed by the Department will be available to the Monitors for review and inspection to verify compliance

4.    Compliance will require that:

(a)    The Custody Division Manual reflects the deadline required by Paragraph 6.17; and

(b)    none of the use of force grievances filed within 30 days of the force incident were  rejected by the Department as untimely.

55

**SUBSTANTIVE PROVISION**

6.18    There should be no deadline for filing Prison Rape Elimination Act ("PREA") grievances by inmates.

**COMPLIANCE MEASURES**

1.    The Custody Division Manual should reflect that there is no deadline PREA grievances.

2.    On a quarterly basis, the Department shall review all PREA grievances, and report to the Monitor's on the Department's compliance with Paragraph 6.18.

3.    The records reviewed by the Department will be available to the Monitors for review and inspection to verify compliance.

4.    Compliance will require that:

   (a)    The Custody Division Manual reflects the that there is no deadline for filing PREA grievances; and

   (b)    none of the PREA grievances were rejected by the Department as untimely.

56

**SUBSTANTIVE PROVISION**

6.19    The Department should adhere to the requirements in Custody Division Manual 5-12/000.00 and 5-12/010.00 and respond to inmate grievances "within 15 calendar days after the submission of the grievance," absent exceptional circumstances, which must be documented.

**COMPLIANCE MEASURES**

1.    On a quarterly basis, the Department shall select and review 50 consecutive grievances, which may be the same or different than the grievances reviewed pursuant to Compliance Measure 6.12-3, and report to the Monitors on the Department's compliance with the requirements of Paragraph 6.19.

2.    The records reviewed by the Department will be available to the Monitors for review and inspection to verify compliance.

3.    Compliance will require that

(a)    The Inmate Grievance Coordinator to maintain a record that will track the Departments handling of inmate grievances;

(b)    no later March 1, 2017, 75% of grievances are timely handled as required by paragraph 6.19 of the Action Plan;

(c)    no later than September 1, 2017, 85% of grievances are handled timely as required by paragraph 6.19 of the Action Plan; and

(d)    no later than March 1, 2018, 95% of grievances are handled timely as required by paragraph 6.19 of the Action Plan.

**SUBSTANTIVE PROVISION**

6.20    Inmates should have 15 days from receipt of a denial of a grievance to file an appeal of the grievance; however, if the inmate receives the denial while in punitive segregation, the inmate should have 15 days after release from segregation to file the appeal.

**COMPLIANCE MEASURES**

1.      The Custody Division Manual should reflect the deadline required by Paragraph 6.20.

2.      On a quarterly basis, the Department shall randomly select and review 25 consecutive appeals for compliance with the requirements of Paragraph 6.20.

3.      The records reviewed by the Department will be available to the Monitors for review and inspection.

4.      Compliance will require that:

   (a)    The Custody Division Manual reflects the deadline required by Paragraph 6.20; and

   (b)    No more than 5% of appeals filed within 15 days of the denial of a grievance (or within 15 days after release from segregation) were rejected by the Department as untimely.

58

**SUBSTANTIVE PROVISION**

**7**.1      Inmates who submit grievances should be advised that a Conflict Resolution Meeting under the Department's Conflict Resolution policy in 5-12/000.00 (Inmate Requests for Service and Complaints (Non-Medical/Non-Mental Health)) is voluntary for both the inmate and the involved personnel to address a grievance instead of the Department conducting a personnel investigation and making a finding to resolve the grievance.  If the Conflict Resolution meeting is successful, the grievances should be marked "closed through conflict resolution" in the grievance database and properly documented.

**COMPLIANCE MEASURES**

1.      The Department will provide the Monitors with written materials, which may be the inmate grievance form, advising inmates of the Conflict Resolution policy and procedures.

2.      On a quarterly basis, the Department will provide the Monitors with a summary report of the Conflict Resolution meetings.

3.       Records of Conflict Resolution meetings will be available to the Monitors for their review and inspection.

4.      Compliance will require that

    (a)      the Custody Division Manual reflects the requirements of Paragraph 7.1;

    (b)      the Department has written or electronic materials  advising inmates of the Conflict Resolution policy in 5-12/000.00; and

    (c)      the Department maintain records of all Conflict Resolution meetings.

59

**SUBSTANTIVE PROVISION**

7.2     An inmate should be advised of the results of the Department's investigation of the inmate's grievance against personnel, but not any sanction imposed, within 10 days of the Department's adjudication of the grievance.

**COMPLIANCE MEASURES**

1.     The Custody Division Manual should reflect the procedures required by paragraph 7.2.

2.     On a quarterly basis, the Department shall select and review 25%, but not more than 50, consecutive grievances against staff and report to the Monitors on the Department's compliance with the requirements of Paragraph 7.2.

3.     The records reviewed by the Department will be available to the Monitors for review and inspection, and the Department's report will be subject to verification by the Monitors or staff hired by the Monitors.

4.     Compliance will require that:

    (a)     The Custody Division Manual reflects the procedures required by Paragraph 7.2;

    (b)     The Inmate Grievance Coordinator to maintain a record that will track the Departments handling of inmate grievances; and

    (c)     90% of the grievances were handled as required by Paragraph 7.2.

**SUBSTANTIVE PROVISION**

7.3     The Department should ensure that there are adequate avenues for constructive prisoner-staff communication, such as Town Hall meetings.

**COMPLIANCE MEASURES**

1.     The Department shall maintain logs of all Town Hall meetings.

2.     The logs of Town Hall meetings and programs and documentation of other prisoner-staff communications shall be made available to the Monitors for their review and inspection.

3.     The Monitors will periodically interview inmates (including inmates in disciplinary or administrative segregation, mental health housing or high-security units) and staff to assess the adequacy of prisoner-staff communications.

4.     Compliance will require that:

    (a)     on a monthly basis, each jail facility conducts Town Hall meetings for inmates who are not in disciplinary or administrative segregation, mental health housing, or  high-security units; and

    (b)     staff and inmate interviews confirm the adequacy of prisoner-staff communications, including communications with prisoners in disciplinary or administrative segregation, mental health housing, and high security units.

**SUBSTANTIVE PROVISION**

8.1     The Department's policies should prohibit personnel from retaliating against inmates.

**COMPLIANCE MEASURES**

1.     The Department must implement an anti-retaliation policy and include this policy in the Custody Force Manual and as a part of in-service and Academy training.

2.     On a quarterly basis, the Department will randomly select and review the results of investigations of 25 consecutive inmate grievances of violations of the anti-retaliation policy.

3.     On a quarterly basis, the Department will report on the status and any available results of investigations of  violations of the anti-retaliation policy.

4.     The records reviewed by the Department will be available to the Monitors  for review and inspection.  The Monitors will also interview staff and inmates to assess compliance with Paragraph 8.1

5.     Compliance will require that the Department:

(a)     implements and includes the anti-retaliation policy in the Custody Force Manual;

(b)     includes the anti-retaliation policy as part of in-service and Academy training; and

(c)     imposes discipline for any conduct by a Department member found to be in violation of policies required by Paragraph 8.1.

**SUBSTANTIVE PROVISION**

8.2     The Department should combine the "Complaints of Retaliation" provisions in 5-12/000.00 and 5-12/010.00 into one section in the Custody Division Manual to ensure that there is a single, consistent policy on the handling of such grievances regardless of who receives the grievance and who is the subject of the grievance.

**COMPLIANCE MEASURES**

Compliance requires that the Complaints of Retaliation provisions be combined into one section in the Custody Division Manual.

**SUBSTANTIVE PROVISION**

8.3     Unit Commanders' evaluations of investigations of inmate grievances that Department members used any level of force to retaliate against inmates should be reviewed by the Custody Force Review Committee to assess the correctness of the evaluations.

**COMPLIANCE MEASURES**

1.     On a quarterly basis, the Department will randomly select and review up to a maximum of 25 completed investigations of inmate grievances claiming that Department members used force to retaliate against inmates.

2.     The records reviewed by the Department will be available to the Monitors  for review and inspection.

3.     Compliance will require that all Unit Commanders' evaluations of investigations of inmate grievances claiming that force was to retaliate against them were reviewed within three weeks by the Custody Force Review Committee.

**SUBSTANTIVE PROVISION**

9.1     The Department should conduct and document cell checks of inmates in general population cells at least every 30 minutes on an irregular schedule.  Cell checks for segregation units and protective custody units should be conducted and documented at least every 15 minutes, on an irregular schedule.  All cell checks should be conducted by an officer at the cell front.  Should the Department and/or the County reach an agreement with the United States Department of Justice that provides for a schedule of checks in general population, segregation, and protective custody units, then those provisions will supersede this provision.

**COMPLIANCE MEASURES**

This provision is moot since it is covered by the Settlement Agreement between the County and the United States Department of Justice.

**SUBSTANTIVE PROVISION**

9.2     The Department's Custody use of force policies should provide that, following a use of force or interaction with a recalcitrant inmate, the staff member escorting an inmate to medical, holding or segregation should not be the same staff member involved in the confrontation or use of force unless there is no other staff member reasonably available to escort the inmate.

**COMPLIANCE MEASURES**

1.     The Department must implement use of force policies that reflect each of the requirements of Paragraph 9.2, and include these policies in the Custody Force Manual.

2.     Each of the requirements of Paragraph 9.2 must be covered in the Department's use of force training and reflected in the training materials.

3.     On a quarterly basis, the  Monitors will randomly select and review 25 completed force packages, which may be the same or different than the force packages reviewed pursuant to Compliance Measure 2.2-5 and determine whether the Department member involved in the force incident subsequently escorted the inmate to medical, housing or segregation.

4.     Compliance will require that in 90% of the packages reviewed during the compliance period, no Department member involved in the force incident subsequently escorted the inmate to medical, housing or segregation unless it is documented that there was no other staff member reasonably available to escort the inmate.

66

**SUBSTANTIVE PROVISION**

9.3     The Department's Custody use of force policies should provide that Department members have a duty to protect inmates and to take appropriate steps to intervene in inmate-on-inmate violence as soon as it is reasonably safe to do so.

**COMPLIANCE MEASURES**

1.      The Department must implement use of force policies that reflect each of the requirements of Paragraph 9.3, and include these policies in the Custody Force Manual.

2.      Each of the requirements of Paragraph 9.3 must be covered in the Department's use of force training and reflected in the training materials.

3.      On a quarterly basis, the Department will randomly select up to 25 completed force packages or incident reports involving inmate-on-inmate violence and assess whether Department members took appropriate steps to intervene as soon as it is reasonably safe to do so.

4.      The records reviewed by the Department and the Department's assessment will be available to the Monitors for review and inspection, who will independently assess the Department conclusions.

5.      Compliance will require that 90% of the records selected and reviewed reflect appropriate steps to intervene.

67

**SUBSTANTIVE MEASURE**

10.1    Senior managers from the rank of Unit Commanders and above should be required periodically to tour the jail facilities, including nights and weekends.

**COMPLIANCE MEASURES**

1.    The Department must implement a policy requiring senior managers to periodically tour the jail facilities, including nights and weekends, and the policy should be included in the Custody Division Manual.[8]

2.    The Department must maintain records reflecting these tours.

3.    Compliance will require that

(a)    Unit Commanders tour and inspect their facilities on at least two evenings and one weekend day per quarter;

(b)    Commanders in Custody Operations tour and inspect each facility at the Downtown Jail Complex under their commands at least once a week during the dayshifts and on two nights or weekend days per quarter;

(c)    Chiefs in Custody Operations tour and inspect each facility at the Downtown Jail Complex under their commands at least once every two weeks during the day shifts and on one night or weekend day per quarter;

(d)    The Assistant Sheriff for Custody tour and inspect each facility at the Downtown Jail Complex at least twice every quarter, one of which should be at night or on a weekend day; and.

(e)    The Sheriff to tour and inspect each facility at the Downtown Jail Complex at least once every quarter.

---

[8] As used in this measure and similar measures, tours of jail facilities are not required when the manager is on leave, vacation or away from the facility location including when traveling for Department purpose.

68

**SUBSTANTIVE PROVISION**

10.2    Housing units should document visits to jail facilities by Department managers (above the rank of Sergeant) in electronic records or visitor logs.

**COMPLIANCE MEASURES**

1.    On a quarterly basis:

(a)    The Department will randomly select visiting records or e-Udal records for one week for Twin Towers, IRC, and Men's Central Jail to verify that the Department is documenting visits by Department managers at the rank of Lieutenant and above.

b.    The Department will provide to the Monitors daily In-service documents for two randomly weeks (selected by the Monitors) for Twin Towers, IRC and Men's Central Jail to reflect that Lieutenants are in each facility daily.

2.    Compliance requires the Department to demonstrate that visits to jail facilities by Department managers (above the rank of Sergeant) are being documented as required by Paragraph 10.2.

**SUBSTANTIVE PROVISION**

11.1    The Custody Force Rollout Team's involvement in reviewing the correctness of the Unit Commanders' evaluations of force incidents should not delay the Department's investigation of the force incidents.

**COMPLIANCE MEASURES**

1.    The Custody Division Manual should provide that the Custody Force Rollout Team's involvement should not delay the Department's investigation of force incidents.

2.    On a quarterly basis, the Department will review all force packages reviewed by CFRT in which there was finding of a policy violation or misconduct to verify that any discipline was imposed timely within the applicable limitations period and report to the Monitors on the results of the review.

3.    The records reviewed by the Department will be available to the Monitors  for review and inspection.

4.    Compliance will require that  95% of the investigations reviewed by CFRT were not delayed beyond the period permitted by law for imposing discipline.

70

**SUBSTANTIVE PROVISION**

12.1    All custody Sergeants should receive an initial 16-hour block of training in conducting use of force investigations, reviewing use of force reports, and the Department's new protocols for conducting such investigations, and a two (2) hour refresher course every year.

**COMPLIANCE MEASURES**

1.    The Monitors will assess whether the Department's curriculum for new Sergeants encompasses the 16-hour block of training required by Paragraph 12.1, and observe a training session.

2.    The Department shall develop and provide to the Monitors for their approval, the curriculum for a two-hour refresher course.

3.    Once the Monitors review and approve the Department's 16 hour initial curriculum and the course presentation, they will assess the Department's Compliance as follows:

> 90% of the Sergeants who were assigned to Custody or to a Custody facility as of October 1, 2016 ("Retained Sergeants"), must complete the required training determined through the following formula:
>
> Number of Trained Sergeants as of the Completion Date
> Number of Retained Sergeants remaining as of the Completion Date.

4.    Compliance will also require that 95% of Sergeants promoted after October 1, 2016 complete the required training before or within 90 days after they assume their duties in Custody or after the training is approved and begins, whichever is later.

71

**SUBSTANTIVE MEASURE**

12.2    Inmate witnesses to force incidents should be asked to be interviewed, and interviewed, away from other inmates.

**COMPLIANCE MEASURES**

1.      The Custody Division Manual must include a policy providing that inmate witnesses to force incidents should be asked to be interviewed and, if the inmate agrees, interviewed, away from other inmates.

2.      Each of the requirements of Paragraph 12.2 must be covered in the Department's 16-hour block of training for Sergeants required by Paragraph 12.1, and reflected in the training materials.

3.      On a quarterly basis, the Monitors will review 25 completed force packages, which may be the same or different than the force packages reviewed pursuant to Compliance Measure 2.2-5, and determine if the inmates were asked to be interviewed and, if the inmates agreed, were interviewed away from other inmates.

4.      The Monitors will observe video of interviews or re-interviews of inmate witnesses to verify that they were asked to be interviewed and, if the inmates agreed, were interviewed by the Department away from other inmates.

5.      Compliance will require that 90% of force packages reflect that all percipient inmate witnesses were asked to be interviewed and, and if the inmates agreed, were interviewed away from other inmates.

**SUBSTANTIVE MEASURE**

12.3    No Department member involved in the use of force incident should be present for, or participate in, the request for interview or the interview itself absent exigent circumstances, which must be justified in the supervisors' subsequent reports.

**COMPLIANCE MEASURES**

1.    The Department must implement use of force policies that reflect each of the requirements of Paragraph 12.3, and include these policies in the Custody Force Manual.

2.    Each of the requirements of Paragraph 12.3 must be covered in the Department's 16-hour block of training for Sergeants required by Paragraph 12.1, and reflected in the training materials.

3.    On a quarterly basis, the  Monitors will review 25 completed force packages, which may be the same or different than the force packages reviewed pursuant to Compliance Measure 2.2-5, and determine whether the Department member involved in the force incident was present for or involved in the interview of any inmate witnesses.

4.    The Monitors will observe video of interviews or  re-interview inmate witnesses to verify that they were interviewed by the Department away from the Department members involved in the force incident.

5.    Compliance will require that 95% of the force packages, videos reviewed, and interviews conducted reflect that no Department member involved in the force incident was present for or participated in the interview of the inmate unless it is documented that there was no other staff member available to conduct the interviews.

73

**SUBSTANTIVE PROVISION**

12.4    Force investigations should not be conducted by the direct supervisor of the Department members involved in the use of force incident if the supervisor directed, participated in, or planned the use of force.

**COMPLIANCE MEASURES**

1.    The Department must implement use of force policies that reflect each of the requirements of Paragraph 12.4, and include these policies in the Custody Force Manual.

2.    Each of the requirements of Paragraph 12.4 must be covered in the Department's 16-hour block of training for Sergeants required by Paragraph 12.1, and reflected in the training materials.

3.    On a quarterly basis, the Monitors will review 25 completed force packages, which may be the same or different than the force packages reviewed pursuant to Compliance Measure 2.2-5, and determine whether a supervisor of the Department member involved in the force incident conducted the investigation of the force incident.

4.    Compliance will require that 95% of the force packages collected reflect that no supervisors who directed, participated in, or planned the use of force conducted the investigations.

**SUBSTANTIVE PROVISION**

12.5    Use of force investigation packages should have a standard order and format.

**COMPLIANCE MEASURES**

1.    The Department shall provide the Monitors with a description of the standard order and format for use of force packages, which shall be included in the training materials for the 16-hour block training for Sergeants required by Paragraph 12.1 and the Custody Division Manual.

2.    The Monitors will randomly review force packages for purposes of assessing the Department's compliance with Paragraph 12.5 and other requirements of the Implementation Plan.

3.    Compliance will require that 95% of the force packages have substantially the same order and format as required by the Department's policies

**SUBSTANTIVE PROVISION**

13.1    The Department should have a firm policy of zero tolerance for acts of dishonesty or failure to report uses of force.  If the Department does not terminate a member who is found to have been dishonest, used excessive force, or violated PREA, the Department should document the reasons why the member was not terminated and, in addition to the discipline that is imposed, the Department should place the member on a formal and adequate performance review program and closely monitor the member's performance.

**COMPLIANCE MEASURES**

1.    On a quarterly basis, the Monitors shall review all completed internal investigations in which there was a finding of dishonesty, a failure to report uses of force, or a violation of PREA.

2.    If a Department member is not terminated as a result of a finding of dishonesty, a failure to report uses of force, or a violation of PREA, the Department will provide to the Monitors documentation of (a) the reasons why the member was not terminated and (b) the formal performance review program on which the member has been placed.

3.    Compliance will require that 95% of the investigations for dishonesty, a failure to report uses of force, or a violation of PREA reveal that the member was either

(a)    terminated; or

(b)    the Department

(i)    documented the reasons why the member was not terminated;

(ii)    placed the member on a formal performance review program that is closely monitored by a supervisor; and

(iii)    imposed appropriate discipline short of termination.

76

**SUBSTANTIVE PROVISION**

13.2    All findings of dishonesty, excessive force, and PREA violations by Department members in Custody Operations, the punishment imposed by the Department, and the reasons why any member was not terminated for the acts of dishonesty, excessive force, or violation of PREA should be reported to the Office of Inspector General each quarter.

**COMPLIANCE MEASURES**

1.    On a quarterly basis, the Monitors shall review all completed internal investigations in which there was a finding of dishonesty, excessive force, or a violation of PREA.

2.    Compliance will require the Department to report to the Office of Inspector General all findings of dishonesty, excessive force, or PREA violations; the punishment imposed; and the reasons why any member was not terminated for such violations, and to provide a copy of the report to the Monitors.

77

**SUBSTANTIVE PROVISION**

14.1    Prior to submission, all referrals of an inmate for criminal prosecution for assaulting a staff member, or related charges, arising from an incident involving the use of force by Department members, should be reviewed by a Unit Commander to ensure that the charges are not being brought to help justify the staff use of force.

**COMPLIANCE MEASURES**

1.    On a quarterly basis, the Department will review all referrals of an inmate for criminal prosecution for assaulting a staff member, or related charges, arising from an incident involving the use of force by Department members to determine if the referral was first reviewed by a Unit Commander who verified that the charges were not being brought to help justify the staff's use of force.

2.    The records reviewed by the Department will be available to the Monitors for review and inspection.

3.    Compliance will require that 95% of referrals of an inmate for criminal prosecution for assaulting a staff member, or related charges, arising from an incident involving the use of force by Department members were first reviewed by a Unit Commander who verified that the charges were not being brought to help justify the staff's use of force.

**SUBSTANTIVE PROVISION**

14.2    The Department should timely forward to the District Attorney's office incidents of officer misconduct that may amount to criminal violations.

**COMPLIANCE MEASURES**

1.    On a quarterly basis, for all cases of alleged officer misconduct in a custody facility involving a possible criminal violations that were referred to the District Attorney's office, the Department will provide the Monitors with a report setting forth(a) the date of the incident, (b)  when the Department learned of the incident; and (c) when the Department referred the case to the District Attorney's office.

2.    Compliance will require that 90% of the cases were referred to the District Attorney's office for possible prosecution within six months of the Department learning of alleged misconduct that may amount to criminal violations unless the Monitors determine that there was good cause for the delay beyond six months.

**SUBSTANTIVE PROVISION**

15.1    The Department's Custody use of force policies should provide that every Department member who uses or assists in the use of Reportable Force, and every supervisor who directed that force be used, should be required to complete a separate and independent written report before going off duty, unless the Watch Commander/ Supervising Lieutenant determines that there are exigent circumstances such as the Department member's physical or medical condition that impair the Department member's ability to complete the report before going off duty, in which case the report should be completed as soon as possible and the reasons for the delay should be documented.

**COMPLIANCE MEASURES**

1.    The Department must implement use of force policies that reflect the requirements of Paragraph 15.1, and include these policies in the Custody Force Manual.

2.    The requirements of Paragraph 15.1 must be covered in the Department's use of force training.

3.    Force packages must reflect that all written reports of Reportable Force are completed timely per the requirements of Paragraph 15.1.

4.    On a quarterly basis, the Monitors will randomly select and review 25 completed force packages, which may be the same or different than the force packages reviewed pursuant to Compliance Measure 2.2-5, and determine whether written reports of Reportable Force were completed within the time required by Paragraph 15.1.

5.    Compliance will require that 90% of the reports from staff members required to complete reports were completed within the time required by Paragraph 15.1.

**SUBSTANTIVE PROVISION**

15.2    The Department's Custody use of force policies should provide that every Department member who witnesses the use of force by another Department member should be required to prepare an independent written report unless the Watch Commander/Supervising Lieutenant specifically designates which witnesses will write reports because there are a large number of Department members who witnessed the same incident.

**COMPLIANCE MEASURES**

1.    The Department must implement use of force policies that reflect the requirements of Paragraph 15.2, and include these policies in the Custody Force Manual.

2.    The requirements of Paragraph 15.2 must be covered in the Department's use of force training.

3.    On a quarterly basis, the Monitors will randomly select and review 25 completed force packages, which may be the same or different than the force packages reviewed pursuant to Compliance Measure 2.2-5, and determine whether all Department members who witnesses force prepared written reports of the force incident unless the Watch Commander/Supervising Lieutenant specifically designates which witnesses will write reports because there are a large number of Department members who witnessed the same incident.

4.    Compliance will require that 95% of the force packages reflect that all Department members who witnessed the use of force prepared written reports unless otherwise designated by the Watch Commander or Supervising Lieutenant pursuant to the exception in Paragraph 15.2.

**SUBSTANTIVE PROVISION**

15.3    The Department's Custody use of force policies should provide that a Department member who uses force should describe in his or her written report the force used by any other Department member in response to an inmate's actions during the incident as well as his or her own force.

**COMPLIANCE MEASURES**

1.    The Department must implement use of force policies that reflect the requirements of Paragraph 15.3, and include these policies in the Custody Force Manual.

2.    The requirements of Paragraph 15.3 must be covered in the Department's use of force training.

3.    On a quarterly basis, the Monitors will randomly select and review 25 completed force packages, which may be the same or different than the force packages reviewed pursuant to Compliance Measure 2.2-5, and determine whether written reports by members who use force describe the force used by any other Department member or indicate that they did not observe any other member use force;

4.    Compliance will require that 90% of the force packages reflect that written reports by members who use force describe the force used by any other Department member or indicate that they did not observe any other member use force.

**SUBSTANTIVE PROVISION**

15.4    The Department's Custody use of force policies should provide that a Department member using force or witnessing force should describe in his or her written report, any visible or apparent injuries to Department members, inmates or other persons involved in a use of force.

**COMPLIANCE MEASURES**

1.    The Department must implement use of force policies that reflect the requirements of Paragraph 15.4, and include these policies in the Custody Force Manual.

2.    The requirements of Paragraph 15.4 must be covered in the Department's use of force training.

3.    On a quarterly basis, the Monitors will randomly select and review 25 completed force packages, which may be the same or different than the force packages reviewed pursuant to Compliance Measure 2.2-5, and determine whether all written reports by members who use force describe in their written reports, any visible or apparent injuries to Department members, inmates or other persons involved in a use of force or indicate that they did not observe any visible or apparent injuries.

4.    Compliance will require that 90% of the packages reflect that written reports by members who use force describe any visible or apparent injuries to Department members, inmates or other persons involved in a use of force or indicate that they did not observe any visible or apparent injuries.

**SUBSTANTIVE PROVISION**

15.5    The Department's Custody use of force policies should provide that a Department member who wants to make any clarifications or changes after viewing a video of a force incident should be required to either prepare a supplemental report or specifically note any changes to the Department member's initial report that were made after viewing the video of the force incident.

**COMPLIANCE MEASURES**

1.    The Department must implement use of force policies that reflect the requirements of Paragraph 15.5, and include these policies in the Custody Force Manual.

2.    The requirements of Paragraph 15.5 must be covered in the Department's use of force investigations training.

3    On a quarterly basis, the Department will randomly select 25 completed force packages in which there was a video of a force incident reviewed by a Department members and determine whether any clarifications or changes made by Department members after viewing a video of the force incident were either in a supplemental report or specifically noted as required by Paragraph 15.5;

4.    The records reviewed by the Department will be available to the Monitors for review and inspection.

5.    Compliance will require that 95% of the packages reflect that clarifications or changes made by Department members after viewing a video of a force incident should be in a supplemental report or specifically note that the changes to the Department member's initial report were made after viewing the video of the force incident.

84

**SUBSTANTIVE PROVISION**

15.6    The Department's Custody use of force policies should provide that, to the extent practical, Department members should be separated until they have completed their use of force reports and/or witness reports on use of force incidents.

**COMPLIANCE MEASURES**

1.    The Department must implement use of force policies that reflect the requirements of Paragraph 15.6, and include these policies in the Custody Force Manual.

2.    The requirements of Paragraph 15.6 must be covered in the Department's use of force investigations training.

3.    On a quarterly basis, the Department will review all completed category 2 and 3 force packages, and if necessary interview the responding sergeants and supervising lieutenants, and determine if reporting Department members were separated until they had completed their reports absent good cause for the any lack of separation, and the Department  will report the results to the Monitors.

4.    The records reviewed by the Department, including any videotapes, will be available to the Monitors for review and inspection to verify compliance.

5.    Compliance will require that Department members were separated in 90% of the category 2 and 3 force incidents unless exigent circumstances existed and the reasons were documented.

**SUBSTANTIVE PROVISION**

15.7    Watch Commanders/Supervising Lieutenants and Unit Commanders should review Department members' force reports to ensure that they reflect each member's individual perceptions and recollections of the events and that they do not have common wording or phrasing that would suggest inappropriate collaboration on force reports.

**COMPLIANCE MEASURES**

1.    The Department must implement use of force policies that reflect the requirements of Paragraph 15.7, and include these policies in the Custody Force Manual.

2.    The requirements of Paragraph 15.7 must be covered in the Department's use of force investigations training.

3.    On a quarterly basis, the Monitors will randomly select and review 25 completed force packages, which may be the same or different than the force packages reviewed pursuant to Compliance Measure 2.2-5, and determine if  the force reports have common wording or phrasing that would suggest inappropriate collaboration on force reports.

4.    Compliance will require that 95% of the packages reflect that the force reports do not have common wording or phrasing that would suggest inappropriate collaboration on force reports.

86

**SUBSTANTIVE PROVISION**

16.1    The Department should require a documented medical assessment of each inmate upon whom force is used as soon as practical after the force incident.

**COMPLIANCE MEASURE**

1.    The Department must implement policies that reflect the requirements of Paragraph 16.1, and include these policies in the Custody Force Manual.

2.    On a quarterly basis, the Monitors will randomly select and review 25 completed force packages, which may be the same or different than the force packages reviewed pursuant to Compliance Measure 2.2-5, and determine whether each contains a documented medical assessment of each inmate upon whom force was used that was completed as soon as practical.

3.    Compliance will require that 90% of the force packages have the required documented medical assessment.

87

**SUBSTANTIVE PROVISION**

16.2    With reasonable accommodations for privacy, the Department should require supervisors investigating force incidents to photograph any injury, swelling or redness sustained by each Department member who asserts orally or in a written force report that the Department member was assaulted by an inmate or note the absence of any injury, swelling or redness in the force package.

**COMPLIANCE MEASURES**

1.    The Department must implement policies that reflect the requirements of paragraph 16.2, and include these policies in the Custody Force Manual.

2.    On a quarterly basis, the Monitors will randomly select and review 25 completed force packages, which may be the same or different than the force packages reviewed pursuant to Compliance Measure 2.2-5, and determine whether the packages contain the photographs or information required by Paragraph 16.2 if Department members asserted that they were assaulted by an inmate or otherwise injured in a use of force incident.

3.    Compliance will require that 90% of the force packages in which a Department member asserted that he or she was assaulted by an inmate or otherwise injured in a use of force incident have the photograph or information required by Paragraph 16.2.

**SUBSTANTIVE PROVISION**

16.3    Medical staff treating an injured inmate should be required to report to the Department any injuries related to a use of force or an allegation by the inmate of a use of force.

**COMPLIANCE MEASURES**

1.    The Department must implement policies that reflect the requirements of Paragraph 16.3, and include these policies in the Custody Force Manual.

2.    On a quarterly basis, the Department will review all category 2 and 3 force packages to verify that each contains a an inmate injury report from the medical staff of the inmate's injuries.

3.    As permitted by law or court order, the Department will make available to the Monitors the records reviewed by the Department.

4.    Compliance will require that 90% of the force packages reviewed pursuant to Compliance Measure 16.3-2have the required inmate injury report of the inmates' injuries.

**SUBSTANTIVE PROVISION**

17.1    Instead of the introductory paragraph in 5-03/130.00 (Medically Ordered Restraint Devices), the Custody Force Manual should have a separate section that sets forth the general principles governing the use of restraints as follows: (1) restraints are either security restraints or medically ordered restraints; (2) restraints should not be used to punish inmates; (3) restraint devices should only be used where there is a potential threat of physical harm, destruction of property, or escape, or to escort or transport inmates; (4) caution must be used to guard against the risk of medical distress; (5) the longer the restraint, the greater the risk; (6) restraints should never be placed on the head, nose, or neck of an inmate or in any other manner that may interfere with breathing or blood flow; (7) in-cell security restraints should not be used except in emergency circumstances and for the shortest period of time possible; (8) inmates should not be restrained to fixed objects unless the object is designed for that purpose, and then only for the shortest period of time possible; (9) choke-hold type restraints, including carotid restraints, are prohibited absent life threatening or high risk assaultive situations where no other means of controlling the inmate is available; (10) it is the responsibility of Department members approving or applying restraints (other than restraints used to escort or transport inmates) to ensure that there is frequent, careful, and documented monitoring of the condition of the inmate(s) in restraints; and (11) medical assistance should be summoned immediately whenever an inmate appears to be experiencing medical distress or complains of difficulty breathing.

**COMPLIANCE MEASURES**

1.    The Department must implement use of force policies that reflect the requirements of paragraph 17.1, and include these policies in the Custody Force Manual.

2.    The requirements of paragraph 17.1 must be covered in the Department's use of force training.

3.    The Custody Force Manual shall have a separate section that sets forth the general principles governing the use of restraints as required by paragraph 17.1.

4.    On a quarterly basis, the Department shall randomly select and review 25 force packages involving incidents in which in-cell, medical, or carotid restraints were used, and report to the Monitors on the Department's adherence to the policies and restraint procedures set forth in paragraph 17.

5.    The records reviewed by the Department will be made available to the Monitors for their review and inspection; and the Monitors will review videotapes  of incidents in which restraints were used to assess the Department's adherence to the policies and procedures set forth in paragraph 17.1.

6.    Compliance will require that 90% of the force packages and videotapes reviewed pursuant to paragraphs 4 and 5 above reflect adherence to the policies and procedures set forth in paragraph 17.1.

90

**SUBSTANTIVE PROVISION**

17.2    The Department should combine and conform all provisions related to restraints on pregnant inmates into one section in the Custody Division Manual (by combining the *Restraining Pregnant Inmates* section under 5-03/130.00 (Medically Ordered Restraint Devices) and Section 5-03/115 (Pregnant Inmates)).

**COMPLIANCE MEASURES**

Compliance will require that

1.    the Custody Division Manual combines the *Restraining Pregnant Inmates* section under 5-03/130.00 (Medically Ordered Restraint Devices) and Section 5-03/115 (Pregnant Inmates);  and.

2.    the requirements of paragraph 17.2 must be covered in the Department's use of force training.

**SUBSTANTIVE PROVISION**

17.3    The Department's Custody use of force policies should provide that a medical professional should examine an inmate as soon as the inmate is placed in the Safety Chair with a use of force, or if the inmate struggles against the chair restraints, and should perform a vitals check every hour while the inmate is in the Safety Chair.

**COMPLIANCE MEASURES**

1.    The Department must implement use of force policies that reflect the requirements of paragraph 17.3, and include these policies in the Custody Force Manual.

2.    The requirements of paragraph 17.3 must be covered in the Department's use of force training.

3.    On a quarterly basis, the Department will provide the Monitors with completed force packages involving incidents in which an inmate was placed in a Safety Chair with a use of force and a log listing any other incidents in which an inmate was place in a Safety Chair (setting forth the date, location, and reason the inmate was placed in the Safety Chair)

4.    The Monitors will review the force packages and log provided pursuant to Compliance Measure 17.3-3 to determine if the Department complied with the requirements of paragraph 17.3.

5.    Compliance will require that 90% of the incidents in which an inmate was placed in a Safety Chair with a use of force, or where the inmate struggled against the chair restraints, a medical professional examined the inmate as soon as possible after he or she was place in the chair, and that in all incidents involving a safety chair a vitals check was performed every hour in which the inmate was in the chair.

**SUBSTANTIVE PROVISION**

17.4    The Department's Custody use of force policies should provide that Department members should check at least every 20 minutes on the welfare of any inmate in restraints other than restraints used in escorting or transporting inmates, and verify and document that the inmate is not in undue pain and that the restraints are not creating injury or obvious medical problem.

**COMPLIANCE MEASURES**

1.    The Department must implement use of force policies that reflect the requirements of paragraph 17.4, and include these policies in the Custody Force Manual.

2.    The requirements of paragraph 17.4 must be covered in the Department's use of force training.

3.    On a quarterly basis, the Department will randomly select and review 25 instances in which an inmate was placed in Medically Ordered Restraint Devices (as defined in CDM 7-03/030.00)

4.    The records reviewed by the Department will be made available to the Monitors for their inspection and review.

5.    Compliance will require that in 90% of the incidents in which an inmate was placed in a Medically Ordered Restraint Device, a Department member or medical personnel checked at least every 20 minutes on the welfare of the inmate and verified that the inmate is not in undue pain and that the restraints are not creating injury or obvious medical problem.

93

**SUBSTANTIVE PROVISION**

17.5    The Department's Custody use of force policies should provide that Department members should avoid, to the extent possible under the circumstances, placing their weight on an inmate's back or shoulders in a way that impairs the inmates breathing.  Once an inmate is controlled, he or she should be placed on his or her side to minimize breathing problems and the risk of medical distress or positional asphyxia.  Inmates carried by members or by gurney or stretcher, should be placed on their side if practical.

**COMPLIANCE MEASURES**

1.      The Department must implement use of force policies that reflect the requirements of paragraph 17.5, and include these policies in the Custody Force Manual.

2.      The requirements of paragraph 17.5 must be covered in the Department's use of force training.

3.      On a quarterly basis, the Monitors will randomly select and review 25 completed force packages, which may be the same or different than the force packages reviewed pursuant to Compliance Measure 2.2-5, review any available videotapes of the force incident, and determine if the force packages reflect adherence to paragraph 17.5.  The Monitors may request and review additional force packages if necessary to determine the Department's compliance with Paragraph 17.5.

4.      To the extent it can be determined in the reviewed packages, compliance will require that 95% reflect adherence to the policy requirements in Paragraph 17.5 to minimize the chance of positional asphyxia.

94

**SUBSTANTIVE PROVISION**

17.6    The Department's Custody use of force policies should provide that any inmate who is subjected to a multi-point restraint or who is otherwise restrained in a supine position for an extended period of time should be observed continuously so that if the inmate is on his or her back, the inmate does not vomit and asphyxiate, and if on his or her stomach does not stop breathing because of his or her body weight compressing the chest.  Medical staff should be called to the scene at the first sign of such distress.

**COMPLIANCE MEASURES**

1.    The Department must implement use of force policies that reflect the requirements of paragraph 17.6, and include these policies in the Custody Force Manual.

2.    The requirements of paragraph 17.6 must be covered in the Department's use of force training.

3.    On a quarterly basis the Department will randomly select and review up to a maximum of 25 completed force packages involving instances in which an inmate was placed in a multi-point restraint or otherwise restrained in a supine position for an extended period of time to determine compliance with the requirements of paragraph 17.6.

4.    The records reviewed by the Department, and any videotapes of the incidents, will be made available to the Monitors for their inspection and review to verify compliance.

5.    Compliance will require that 95% of force packages involving instances in which an inmate was placed in a multi-point restraint or otherwise restrained in a supine position for an extended period of time reflect adherence to the requirements of paragraph 17.6.

95

**SUBSTANTIVE PROVISION**

17.7    The Department's Custody use of force policies should provide that multi-point restraints may only be ordered where an inmate poses an immediate threat of serious harm to himself or others and, in the absence of exigent circumstances, such restraints may only be ordered by a medical or mental health professional.

**COMPLIANCE MEASURES**

1.    The Department must implement use of force policies that reflect the requirements of paragraph 17.7, and include these policies in the Custody Force Manual.

2.    The requirements of paragraph 17.7 must be covered in the Department's use of force training.

3.    On a quarterly basis, the Department will randomly select and review up to a maximum of 25 completed force packages involving instances in which an inmate was placed multi-point restraints to determine compliance with the requirements of paragraph 17.7.

4.    The records reviewed by the Department, and any available videotapes, will be made available to the Monitors for their inspection and review to verify compliance.

5.    Compliance will require that in 90% of the instances in which  an inmate was placed in a multi-point restraints, the inmate posed an immediate threat of serious harm to himself or others and, in the absence of exigent circumstances, the restraints were ordered by a medical or mental health professional.

**SUBSTANTIVE PROVISION**

17.8    The Department's Custody use of force policies  should provide that multi-point restraints may only be used until the inmate no longer poses such an immediate threat of serious harm as determined by a medical or mental health professional, and the continued use of the multi-point restraint should be assessed by a medical or mental health professional at least every hour to determine if the inmate continues to pose an immediate threat of serious harm to himself or others.

**COMPLIANCE MEASURES**

1.    The Department must implement use of force policies that reflect the requirements of paragraph 17.8, and include these policies in the Custody Force Manual.

2.    The requirements of paragraph 17.8 must be covered in the Department's use of force training.

3.    On a quarterly basis, the Department will randomly select and review up to a maximum of 25 completed force packages involving instances in which an inmate was placed multi-point restraints to determine compliance with the requirements of paragraph 17.8.

4.    The records reviewed by the Department, and any available videotapes, will be made available to the Monitors for their inspection and review to verify compliance.

5.    Compliance will require that in 95% of the instances  in which an inmate was placed in a multi-point restraints for more than an hour, the use of the multi-point restraint was assessed at least every hour by a medical or mental health professional who determined whether the inmate continued to pose an immediate threat of serious harm to himself or others.

**SUBSTANTIVE PROVISION**

17.9    The Department's Custody use of force policies should provide that the decision to use a multi-point restraint may be made by a shift supervisor if a medical or mental health professional is not available and there is no alternative such as a safety chair, in which case the supervisor should be responsible for monitoring the inmate's condition and determining whether to release the inmate from the multi-point restraint.

**COMPLIANCE MEASURES**

1.    The Department must implement use of force policies that reflect the requirements of paragraph 17.9, and include these policies in the Custody Force Manual.

2.    The requirements of paragraph 17.9 must be covered in the Department's use of force training.

3.    On a quarterly basis, the Department will randomly select and review up to a maximum of 25 completed force packages involving instances in which an inmate was placed multi-point restraints to determine compliance with the requirements of paragraph 17.9.

4.    The records reviewed by the Department will be made available to the Monitors for their inspection and review to verify compliance.

5.    Compliance will require that in 90% of the instances in  which a shift supervisor made the decision to place an inmate in a multi-point restraint, a medical or mental health professional was not available to make the decision, the shift supervisor monitored the inmate's condition, and the shift supervisor ordered the release of the inmate upon determining that the inmate no longer posed an immediate threat of serious harm to himself or others.

98

**SUBSTANTIVE PROVISION**

17.10   The Department's Custody use of force policies should provide that medication may not be used solely for security purposes.

**COMPLIANCE MEASURES**

1.      The Department must implement use of force policies that reflect the requirements of paragraph 17.10, and include these policies in the Custody Force Manual.

2.      The requirements of paragraph 17.10 must be covered in the Department's use of force training.

3.      The Department shall provide the Monitors with a log documenting the administration of involuntary medications in the Downtown Jail Complex, noting the booking number of the inmate, the date of administration, the housing location, and the reason the medication was administered.

4.      The Monitors shall interview involved medical or mental health personnel and review the log of involuntary administrations to assess the Department's compliance with paragraph 17.10, and verify that there are no apparent instances in which medication was used solely for security purposes.

**SUBSTANTIVE PROVISION**

18.1    The Department should maintain its Custody-wide rotation policies and rotate Department members at least as often as provided in those policies.

**COMPLIANCE MEASURES**

1.    Each jail facility unit must develop and maintain a rotation policy approved by a Custody Division Chief or a Commander.

2.    90% of the available Department members must be rotated at least as often as provided in the unit's approved rotation policy.

**SUBSTANTIVE PROVISION**

18.2    The Department should audit semi-annually each unit's compliance with its rotation policies.

**COMPLIANCE MEASURES**

1.    The Department must audit each unit's compliance with its rotation policies every six months.

2.    The Department must document the results of the audits of each unit's compliance with its rotations policies, and provide the documentation to the Monitors.

**SUBSTANTIVE PROVISION**

19.1     The Department should develop a formal Early Warning System to identify potentially problematic Department members based upon objective criteria such as number of force incidents, inmate grievances, allegations of misconduct, performance reviews, and policy violations.  This system should be in addition to subjective assessments and personnel reviews by management.

**COMPLIANCE MEASURES**

1.     The Department must develop an Early Warning System to identify potentially problematic Department members as required by paragraph 19.1.

2.     The Department will provide the Monitors with a detailed description of the Early Warning System, exemplars of the documentation generated by the system; and monthly reports generated by the system to identify potentially problematic Department members.

3.     Compliance will require the Department's implementation of  a functioning Early Warning System approved by the Monitors.

**SUBSTANTIVE PROVISION**

19.2    The Compliance Lieutenants in each facility should review monthly the reports generated by the Department's Early Warning System to identify potentially problematic Department members and promptly notify the Department member's Unit Commander and the Assistant Sheriff for Custody Operations in writing.

**COMPLIANCE MEASURES**

1.    On a quarterly basis, the Department will review the monthly reports generated by the Early Warning System and the Compliance Lieutenants' notifications to Unit Commanders and the Assistant Sheriff for Custody Operations to verify that

    a.    the Early Warning System identifies potentially problematic employees upon objective criteria such as number of force incidents, inmate grievances, allegations of misconduct, performance reviews, and policy violation; and

    b.    the Compliance Lieutenants have made the notifications required by paragraph 19.2.

2.    The records reviewed by the Department will be available to the Monitors for their review and inspection.

3.    Compliance will require that the Compliance Lieutenants notify the appropriate Unit Commander and the Assistant Sheriff for Custody Operations in writing of potentially problematic employees identified on the monthly reports generated by the Early Warning System with ten days of receiving the monthly reports 90% of the time, and within twenty days 95% of the time.

**SUBSTANTIVE PROVISION**

19.3    Unit Commanders should, in consultation with the appropriate Chief, determine whether a non-disciplinary performance mentoring program is appropriate for Department members identified through the Early Warning System and, if so, place the Department member in the program with specific performance metrics.  If the Department decides not to place a Department member identified through the Early Warning System on a performance mentoring program, it should document the reasons for the decision.

**COMPLIANCE MEASURES**

1.    On a quarterly basis, the Department will review the monthly reports generated by the Early Warning System and any documentation of meetings between Unit Commanders and the appropriate Chief, to verify that, for each problematic Department member identified on the report, the Unit Commanders consulted with the appropriate Chief to determine whether a non-disciplinary performance mentoring program was appropriate for the Department member and, if so, the member was placed in a program with specific performance metrics.

2.    The records reviewed by the Department will be available to the Monitors.

3.    Compliance will require that

a.    for each potentially problematic Department member identified through the Early Warning System, the Unit Commander consulted with the appropriate Chief and determined whether a non-disciplinary performance mentoring program is appropriate 95% of the time.

b.    for each Department member identified through the Early Warning System who is not placed on a performance mentoring program, that the Unit Commander documents the reasons for the decision 95% of the time.

104

**SUBSTANTIVE PROVISION**

20.1    The Custody Force Manual should indicate that there are two types of force: Reactive Force and Planned Force, and it should eliminate the definitions of rescue force, directed force, and medical assistance force, which do not reflect the Department's force policies or provide guidance in the use of force

**COMPLIANCE MEASURES**

1.    The Custody Force Manual must comply with the requirements of provisions of 20.1.

2.    On a quarterly basis, the Monitors will randomly select and review 25 completed force packages, which may be the same or different than the force packages reviewed pursuant to Compliance Measure 2.2-5, and determine compliance with the provisions of 20.1.

3.    Compliance will require that the force used was identified as "reactive" or "planned" force in 90% of the force packages reviewed by the Monitors.

**SUBSTANTIVE PROVISION**

20.2    Reactive Force should be defined as force that is used in response to an immediate threat to the safety of any Department member or inmate, the immediate threat of the destruction of a substantial amount of property, or the immediate threat of an escape, and when there is no time to plan or wait for assistance.

**COMPLIANCE MEASURES**

The Custody Force Manual must comply with the requirements of provision 20.2

**SUBSTANTIVE PROVISION**

20.3    Planned Force should be defined to be all force other than Reactive Force.  With respect to Planned Force, the Department's policies should require, time and circumstances permitting, that: (1) a medical staff person be on scene or, if impractical or unsafe, on stand by; (2) the event be video recorded; (3) a supervisor be on scene to direct the Use of Force; and (4) Shift Supervisor approval for the Use of Force.

**COMPLIANCE MEASURES**

1.    The Custody Force Manual must comply with the requirements of provision 20.3

2.    The Department must implement use of force policies that reflect the requirements of paragraph 20.3, and include these policies in the Custody Force Manual.

3.    The requirements of paragraph 20.3 must be covered in the Department's use of force training.

4.    On a quarterly basis, the Monitors will randomly select and review 25 completed force packages. which may be the same or different than the force packages reviewed pursuant to Compliance Measure 2.2-5, and determine compliance with the provisions of paragraph 20.3.

5.    Compliance will require that 90% of the packages reviewed comply with the requirements of provision 20.3.

107

**SUBSTANTIVE PROVISION**

21.1    The Department's policies should provide that the Department will not transfer or assign a staff member to Custody as a formal or informal sanction for problem deputies.

**COMPLIANCE MEASURES**

1.    The Department must implement  policies consistent with  the requirements of paragraph 21.1, and include these policies in the Custody Force Manual.

2.    On a quarterly basis, the Department will review the personnel records of all Department members who are transferred to Custody Operations from other Divisions (excluding new members who are assigned initially to Custody Operations from the Academy, and members who have been newly demoted to Custody Assistant).

3.    The Department shall provide the Monitors with a log, updated quarterly, that identifies each member who was transferred to Custody Operations within six months of a finding of misconduct or a policy violation and sets forth the reason(s) for the member's transfer.

4.    The personnel records reviewed by the Department shall be available to the Monitors (the names and identifying information can be redacted from the records).

5.    Compliance will require that no member was transferred to Custody within six months following a finding of misconduct or a policy violation as a sanction for that misconduct or violation.