# EXHIBIT E



# COUNTY OF LOS ANGELES

## OFFICE OF THE COUNTY COUNSEL

648 KENNETH HAHN HALL OF ADMINISTRATION
500 WEST TEMPLE STREET
LOS ANGELES, CALIFORNIA 90012

TELEPHONE
(213) 893-5699
FACSIMILE
(213) 626-2105
TDD
(323) 633-0901

MARY C. WICKHAM
County Counsel

July 28, 2016

VIA E-MAIL
VIA REGULAR MAIL

Peter Eliasberg
American Civil Liberties Union
1313 W. Eighth Street
Los Angeles, CA 90017

>    Re:    ***Rosas, et al. v. Jim McDonnell, et al.***, U.S. District Court Case No. 12-00428 DDP

Dear Mr. Eliasberg:

On behalf of the Los Angeles County Sheriff's Department ("LASD" or the "Department"), we write to respond to Plaintiffs' request for documents, dated July 1, 2016, in the above named matter ("*Rosas*"). We received Plaintiffs' request, via regular mail, on July 5, 2016. Enclosed, please find copies of all the published policies that you have requested, including additional copies of those already provided to you in response to your prior requests.

As to the remaining documents that Plaintiffs request in the July 1, 2016, letter, the Department respectfully declines to provide them. The Department recognizes that the *Rosas* settlement agreement ("Agreement") allows you, "[o]n reasonable notice," to have "reasonable access to... documents, for inspection to evaluate compliance with the Action Plan." (Agreement, ¶ VI.) However, the Department also "reserves the right to object, whether on privilege grounds or otherwise, to any document request made by Class Counsel." (*Id.*)

The Department hereby objects, and further contends that Plaintiffs' July 1, 2016 document request is not "reasonable," nor contemplated by the terms of the Agreement.

### No Ongoing Discovery or Provision of Confidential Documents

First, the Agreement does not permit Plaintiffs to seek open and continuous discovery from LASD related to its compliance, particularly when the Court has appointed a panel of monitors to execute that function. Many categories of the documents that Plaintiffs seek—

Peter Eliasberg
July 28, 2016
Page 2

including force packages, draft policies and trainings, and investigative materials—contain confidential Department and personnel information, some of which is protected by statute, and some of which is protected by privilege.  The Department does not concede that Plaintiffs have any valid claim to these documents, and in any event, draft documents are not relevant to "evaluat[ing] compliance with the Action Plan" because only final versions carry the Panel's approval. (See Agreement, ¶ VI.)  Thus, the Department respectfully declines to make those documents available to Plaintiffs and maintains that the Agreement does not require it to do so.

### Compliance Monitoring is the Panel's Role, Not Plaintiffs'

Second, it appears Plaintiffs are seeking documents for the sole purpose of ascertaining whether the Department is compliant with the Agreement.  However, the Department maintains that monitoring LASD's compliance with the Implementation Plan (the "Plan") and Agreement is the role of the Panel of monitors, not Plaintiffs.

The Plan calls for the Department to be monitored by a Panel of three monitors—one of which was selected by the ACLU and one of which was agreed to by the ACLU and LASD — not the Panel **and** Plaintiffs' counsel. (See Agreement, ¶ II ["The court will appoint Richard Drooyan, Jeffrey Schwartz, and Robert Houston ('the Panel')…to develop a corrective action plan ('Action Plan') designed to ensure that the Plaintiff Class are not subjected to excessive force…and to monitor and advise the Court on [LASD's] compliance with the Action Plan"]; Agreement, ¶ VIII [the Panel, not Plaintiffs' Counsel, "certifies that any recommendation of the Action Plan has been implemented" and "shall commence…monitoring the Defendant's compliance…"]; see also Court-approved Implementation Plan, p.1 ["the Court Monitors will monitor (1) [LASD's] implementation of the policy change; (2) [LASD's] adherence in practice to the policy change through the monitoring period; and (3) [LASD's] investigation of any alleged or potential violations of the revised policies"].)  Plainly, the parties did not contemplate or agree to include the ACLU as a fourth or alternative monitor.

It is also the Panel's role to determine the means by which the Department can best prove compliance.  To that end, and as you are aware, the Panel has been persistently working to draft compliance measures, and those measures are not yet final.  Once they are, the Department will continue to work closely and openly with the Panel to move LASD toward compliance with the Agreement.  We respectfully ask that you give the Panel and the Department an opportunity to do so as intended in the Agreement.  Doing otherwise would put LASD in the position of reporting to two sets of monitors, which is not reasonable or called for by the Agreement.

### Plaintiffs' Document Requests Are Overbroad and Burdensome

Third, Plaintiffs' document requests are overbroad and burdensome, and not tailored to evaluate the paragraphs referenced in the letter.  For example, Plaintiffs request "complete force packages for each force incident occurring January 1, 2016 to present." (Plaintiffs' July 1, 2016

Peter Eliasberg
July 28, 2016
Page 3

letter, p. 3.) In other words, Plaintiffs want **all** force packages since the beginning of this year, but are purportedly only looking for things related to "Prisoner-on-Prisoner Violence." (*Id.*, p. 2.) Again, the Department does not concede that Plaintiffs have a valid claim to any force packages, but even if they did, seeking **all** force packages is unduly burdensome and not narrowly tailored to evaluate "Prisoner-on-Prisoner Violence."

**Conclusion**

Involving Plaintiffs to the degree that their document requests suggest, which appears to include the day-to-day compliance tasks of policy review and revision and re-inspection of materials that the Panel has already reviewed to evaluate compliance, is not "reasonable" and is outside the scope of the Agreement. Most importantly, involving Plaintiffs in this manner will not only distract the Panel from the responsibilities it was appointed to carry out, but will significantly delay LASD's compliance with the Agreement and the Plan. To the extent that you have concerns or questions about the Department's compliance, your remedy is to direct those concerns to the Panel and leave resolution to the Panel's discretion.

Very truly yours,

MARY C. WICKHAM
County Counsel

By

TIANA J. MURILLO
Deputy County Counsel
Health Services Division

KAREN JOYNT
Senior Deputy County Counsel
Law Enforcement Services Division

TJM

Cc:    Rodrigo Castro-Silva, Senior Assistant County Counsel
       Kelly Harrington, Assistant Sheriff

Enclosures