# EXHIBIT F





<u>**Via Electronic Mail and First Class Mail**</u>

December 20, 2016                                                                                            06325.00822

Karen Joynt
Senior Deputy County Counsel
Los Angeles County Counsel
500 West Temple St., Sixth Floor
Los Angeles, CA 90012

Re:     *Rosas v. Baca*, Case No. CV 12-00428 DDP (SHx) (C.D. Cal.)

Dear Karen:

We write in response to your July 28, 2016 letter, wherein you provided a response to the Plaintiffs' request for documentation by letter dated July 1, 2016.  The documentation sought in that request generally covered the period from January 1, 2016 until June 30, 2016.

The July 28, 2016 correspondence contained certain published policies of the Los Angeles County Sheriff's Department ("LASD"), however, the LASD declined to provide any additional documents.  The LASD objected to the production of any additional materials on the grounds that (i) Plaintiffs allegedly sought confidential Department and personnel information that was protected by statute and by privilege; (ii) the role of monitoring compliance was that of the Monitors and not Plaintiffs; and (iii) the Plaintiffs' document requests were overbroad and burdensome.

We respectfully disagree, but hope to come to a mutually acceptable resolution.

**A.      Plaintiffs are Entitled to Documents in Order to Evaluate the County's Compliance.**

   *1.      The Settlement Agreement Provides the Plaintiffs with the Right to Inspect Documents to Ensure Compliance.*

As a threshold matter, the Settlement Agreement specifically contemplates Plaintiffs' role in monitoring compliance with the Action Plan, and provides for Plaintiffs' right to access documents in order to do so.  Section VI provides the following:

> On reasonable notice, Class Counsel will have reasonable access to the Jail Complex in downtown Los Angeles, including without limitation staff, inmates, and <u>documents, for inspection to evaluate compliance with the Action Plan.</u>  Class Counsel shall provide

LEGAL_US_W # 88202741.1

Karen Joynt
Senior Deputy County Counsel
December 20, 2016
Page 2

> Defendant's counsel with 10 days' notice before any document
> request and 4 days' notice before any on-site inspection.

[Emphasis added].

   2.    *Case Law Supports the Plaintiffs' Ongoing Role to Ensure Compliance.*

As a matter of law, many courts have acknowledged Plaintiffs' counsels' roles in monitoring compliance with orders granting relief in institutional reform cases, notwithstanding the existence of a court monitor.

For example, in *Duran v. Carruthers*, 885 F.2d 1492 (10th Cir. 1989), a Special Master was appointed to monitor compliance with a consent decree in an action brought by inmates under Section 1983 against the governor, the warden, and other state officials, alleging violations of federal rights. The Plaintiffs, on occasion, sought to hold defendants in contempt for noncompliance and the defendants sought modification or outright vacation of the consent decree. The district court in *Duran* awarded plaintiffs attorneys' fees and costs for monitoring defendants' compliance with the decree and various disputes that arose subsequent to entry of the decree. Defendants appealed, and argued that in light of the Special Master and the internal monitoring structure, plaintiffs' monitoring of compliance was "essentially gratuitous, self-initiated and redundant," as well as being "unnecessary, duplicative and superfluous." The Tenth Circuit disagreed. "To hold so would mean that the plaintiffs must accept reports of the Special Master and the defendants' own compliance officer at face value and they would be unable to make any real challenge, backed with facts established by monitoring, to such reports." *Id.* at 1495.

Likewise, in *Keith v. Volpe*, 833 F.2d 850, 855-58 (9th Cir. 1987), the Ninth Circuit Court of Appeals upheld the district court's order of $399,415 in supplemental attorneys' fees to the plaintiffs' counsel. In part, the defendant argued that the existence of other monitoring entities created by the consent decree precluded an attorneys' fees award to the Center for post-judgment monitoring services by the plaintiff. The Court rejected that argument by finding the plaintiffs' monitoring activities were not duplicative. *Id.* at 858.

More recently in *Ginest v. Bd. of Cty. Comm'rs of Carbon Cty.*, 423 F. Supp. 2d 1237, 1240 (D. Wyo. 2006) a monitor was appointed to monitor compliance with a remedial plan, which included numerous new jail policies following the entry of a consent decree in a class action suit brought by county jail inmates. In ruling on the plaintiffs' motion for attorneys' fees the Court reasoned that even with the presence of a monitor:

Karen Joynt
Senior Deputy County Counsel
December 20, 2016
Page 3

> [T]his does not mean that plaintiffs' counsel could properly thereafter do nothing and turn a blind eye to whatever activities the compliance monitor undertook after appointment. The perspective of plaintiffs' counsel in engaging in review of compliance monitor activities's [sic] is substantially different than that of defendants' counsel or the compliance monitor himself. It is not a reasonable [sic] to assume that the compliance monitor and plaintiffs' counsel performed precisely the same activities after approval of the Remedial Plan by the Court, with the same focus of interest, as defendants have suggested.

423 F.Supp.2d at 1240.

It is clear from each of these cases that plaintiffs have been repeatedly permitted to play a role with monitoring consent decrees despite the presence of an independent monitor. [1]

---

[1] The three cited cases are not the only case law on point. *See also Garrity v. Sununu*, 752 F.2d 727, 738 (1st Cir. 1984) (validating attorney services to monitor compliance and stating that "relief would occur more speedily and reliably if the monitoring referred to occurred, and that this was a necessary aspect of plaintiffs' 'prevailing' in the case."); *Walker v. U.S. Dep't of Housing & Urban Dev.*, 99 F.3d 761, 769 (5th Cir. 1996) (concluding that plaintiffs had a right to monitor compliance with a consent decree "because an adversarial perspective is useful."); *Loyd v. Ala. Dep't of Corr.*, 176 F.3d 1336, 1342 (11th Cir. 1999) ("The party opposing termination must be given the opportunity to challenge or supplement the findings of the monitor and to present evidence concerning the scope of the challenged relief and whether there are 'current and ongoing' violations of federal rights in the prison."); *West v. Manson*, 163 F. Supp. 2d 116, 118 n. 3 (D. Conn. 2001) ("[C]ounsel's duties and obligations to their clients do not cease when monitors are appointed to oversee Consent Judgments in class action lawsuits. Counsel must be ever vigilant after Consent Judgments are entered to ascertain that the monitors carefully enforce the mandates prescribed in those court orders."); *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 336 F. Supp. 2d 370, 403 (D. N. J. 2004) (holding that monitoring by plaintiffs' counsel was not unreasonable or duplicative where a Special Master had been assigned to oversee compliance, because "the special Master does not fill the shoes of Petitioners' counsel in the oversight process, as the Special Master is the Court's 'alter ego' and does not act in the interest of any particular party.").

Karen Joynt
Senior Deputy County Counsel
December 20, 2016
Page 4

**B.**     **Plaintiffs are Willing to Meet and Confer to Come to a Mutually Acceptable Resolution.**

In order to foster the spirit of cooperation that has developed between both sides, Plaintiffs are willing to work with the County in order to resolve these issues in a mutually acceptable manner.

First, as for the County's concern that Plaintiffs have requested documents containing personal or confidential personnel information, Plaintiffs are willing to consider entering into a protective order, with an "Attorneys' Eyes Only" designation, in order to protect sensitive personnel information from disclosure to anyone other than essentials. In addition, Plaintiffs are willing to consider the redaction of highly sensitive information such as home addresses, social security numbers, and the like.

Second, we acknowledge the significant amount of time and effort required to bring the Department into compliance with the Agreement and the Implementation Plan. Plaintiffs do not wish to curtail this process, or impede your progress in any way. However, as discussed above, the Plaintiffs still have a vital role to play in monitoring compliance with the Settlement Agreement, and access to documents is necessary to allowing Plaintiffs to play that role.

Third, as indicated below, the Plaintiffs are revising the information requested and are now asking for information to be provided for activities after January 1, 2017.

At the very least, because the parties appear to be at impasse over the issue of the Plaintiffs monitoring the implementation of the Settlement Agreement, we would propose a "meet-and-confer" meeting to discuss that legal issue and whether the revised document request has been sufficiently narrowed in scope.

**C.**     **Revised Document Request**

By May 30, 2017, we are requesting the following documentation that covers the time frame January 1, 2017 through March 31, 2017.

   *1.     Document Requests Relating to Leadership, Administration and Management*

- Any policies that have been revised to conform to the requirements set forth in the Implementation Plan.

- Any documentation indicating the Assistant Sheriff's involvement in any investigations or hearings of staff or prisoners. *See id.* § 1.1.

Karen Joynt
Senior Deputy County Counsel
December 20, 2016
Page 5

- Any documentation indicating that the Assistant Sheriff has been trained on all effective policies and procedures. *See id.* § 1.1.

- Any reports submitted to the Sheriff on use of force incidents, investigations, and training at the facilities, and any responses by the Sheriff regarding these reports. *See id.* § 1.2.

- Any other documentation indicating the Sheriff's personal involvement in the management of the facilities (logs or reports reviewed by the Sheriff, reports produced by the Sheriff, etc.). *See id.* § 1.2.

- Any logs and/or other documentation (including electronic records) indicating the date and time period during which senior managers toured the jail facilities from January 1-8, and March 1-8. *See id.* §§ 10.1-10.2.

- All logs recording checks conducted by officers and supervisors from January 1-8 and March 1-8, 2017. *See id.* § 9.1.

- Copies of centralized log that tracks all force incidents, inmate grievances, allegations of misconduct, performance reviews, and policy violations by Department members.

    2.    *Document Requests Related to Prisoner-on-Prisoner Violence*

- All incident reports documenting prisoner-on-prisoner violence from January 1, 2017 – March 31, 2017, and Department members' efforts to intervene as soon as possible. *See id.* § 9.3.

- All relevant unit logs documenting prisoner-on-prisoner violence from January 1, 2017— March 31, 2017. *See id.* § 9.3.

- All relevant internal investigations regarding prisoner-on-prisoner violence from January 1, 2017 – March 31, 2017. *See id.* § 9.3.

- All relevant grievances alleging prisoner-on-prisoner violence from January 1, 2017 to March 31, 2017. *See id.* § 9.3.

    3.    *Document Requests Related to Use of Force Packages*

- A log of all force packages for each force incident occurring January 1, 2017 to March 31, 2017 (defined to include all uses of physical force, chemical agents, weapons, restraints, tasers, and other electronic stun gun devices; cell extractions; incidents involving prisoners on the mental health caseload; incidents prompted by a medical or

LEGAL_US_W # 88202741.1

Karen Joynt
Senior Deputy County Counsel
December 20, 2016
Page 6

mental health provider's order; and incidents which a Department member asserts that s/he was assaulted by an inmate).[2] From this log, Plaintiffs will choose a sufficient number of force packages to review.  The chosen force packages must then be produced to Plaintiffs.

- The above-referenced log must be sufficient to allow the plaintiffs to identify relevant use of force packages to assess compliance with each substantive provision of the Action Plan.  For example, the log should allow plaintiffs to identify whether chemical agents or weapons (specifying the type of weapon used) were utilized (to identify relevant incidents for compliance measures 2.10 and 2.12); whether the prisoner involved was restrained (to identify relevant incidents for measure 2.5); whether the prisoner was kicked in the head or struck while on the ground (for measure 2.6); whether force was used as part of a cell extraction or a planned use of force (for measure 4.1);  whether the prisoner involved was on the mental health caseload (measures 4.3 and 4.4);  and whether the force incident involved the use of restraints (measure 71.1 *et seq.*). Again this list is not exhaustive, and we would be happy to identify additional data points needed if you provide us with the current log.

Please note that Plaintiffs have defined these force packages to include, *inter alia*, the following documents and information that are required under the Settlement Agreement and Implementation Plan (as well as the use of force investigation packages which are further detailed below):[3]

- o  All written reports (and supplemental reports) completed by Department members or supervisors who are involved in, witness, or approved planned and unplanned force incidents. *See id.* §§ 15.1-15.5, 20.3.

- o  Any forms or other documentation indicating that a shift supervisor approved a planned use of force. *See id.* § 20.3.

- o  Any documentation describing de-escalation efforts, or other actions undertaken by Department members and mental health staff to prevent use of force, including planned use of force incidents that were precipitated by a medical or mental health provider's order and whether the prescribing provider was notified. *See id.* §§ 2.2, 2.8-2.9, 4.5.

- o  Any documentation justifying use of force that is prohibited in 2.5-2.6.

---

[2] *See, e.g., id.* §§ 2.2-2.6, 2.11-2.12, 8.1.
[3] The Force Package contents have been also explicated in Policy 7-07/000.00 Use of Force Review.

Karen Joynt
Senior Deputy County Counsel
December 20, 2016
Page 7

- o Any documented review of force reports by Watch Commanders/Supervising Lieutenants and Unit Commanders to ensure that the reports contain the requisite level of detail and were independently completed. *See id.* §§ 15.6-15.7.

- o Videos of force incidents (planned or unplanned), and any supplemental reports submitted by Department members after viewing a video of a force incident. *See id.* §§ 15.5,[4] 20.3.

- o Any videos, recordings, or other documentation memorializing interviews with inmate witnesses or mental health professionals. *See id.* §§ 4.2, 12.2-12.3.

- o Documentation of evaluations of force incidents by Unit Commanders, Custody Force Review Committee, and the Executive Force Review Committee. *See id.* § 5.2.

- o Any documentation produced by the incident investigator that further explains tactical decisions that resulted in use of force or discrepancies among witnesses and/or evidence. *See id.* § 5.3.

- o Any documentation ordering the use of medication and the justification for that order *See id.* § 17.10.[5] Plaintiffs have requested that the Department maintain log documenting the administration of involuntary medications (noting the name and booking number of the prisoner, the date of administration, the housing location of the prisoner at the time of administration, and the reason the medication was administered).

- o Documentation indicating that a medical staff person and a supervisor were on scene for planned force incidents, or that a supervisor was called to the scene as soon as possible for unplanned force incidents (*e.g.*, logbook entries). *See id.* §§ 2.7, 4.1, 20.3.

- o Any documentation indicating that medical and mental health records were consulted prior to uses of force, restraints, or chemical agents on an inmate. *See id.* § 2.13.[6]

- o Any documentation indicating that a medical professional examined a prisoner while restraints were being used, including when a prisoner is placed in a Safety Chair. *See id.* § 17.3.[7]

---

[4] Policy 3-10/115.00 Video Review and Admonishment.
[5] Policy 7-03/030.00 Medically Ordered Restraint Devices.
[6] Policy 7-01/040.00 Planned Use of Force; 7-08/030.00 TASER-Electronic Immobilization Device.
[7] Policy 7-03/040.00 Safety Chair.

Karen Joynt
Senior Deputy County Counsel
December 20, 2016
Page 8

 o Any documentation of wellness checks conducted while a prisoner is in restraints, and of constant observation of a prisoner who is subjected to multi-point restraints or who is otherwise restrained in a supine position. *See id.* §§ 17.4,[8] 17.6.[9]

 o Any medical assessments completed after a use of force incident. *See id.* § 16.1.[10]

 o Any documentation demonstrating that the staff member who escorts a prisoner to medical, holding, or segregation after a use of force incident is not the same staff member involved in the confrontation or use of force. *See id.* § 9.2.[11]

 o Any reports by medical staff to the Department describing injuries sustained by the inmate during a force incident, or prisoner allegations to medical staff that force was used on them. *See id.* § 16.3.

 o Medical and mental health records of any inmate who was subjected to use of force, chemical agents, tasers, and restraints.

 o Photographs of any injuries to prisoners or Department members, including when Department members allege that they were assaulted by an inmate. *See id.* §§ 16.2, 16.3.

 o All documentation indicating that chemical agents were used on a prisoner. This should include the time the chemical agent was applied, whether additional chemical agents were applied after the initial application (and, if so, at what time), the prisoner's reaction to the chemical agents, and whether any injuries were sustained. *See id.* §§ 4.3-4.4.

 o Any documentation regarding the approval and use of restraints on a prisoner. This should include when and how the restraints are applied; the kind of restraints used; any breaks in the duration of their use; when their use was terminated; and, for multi-point restraints, the order of their use by a medical or mental health professional (or if unavailable, order by a shift supervisor), and their documented approvals of their continued use at least every hour. *See id.* §§ 17.1, 17.5-17.9.

---

[8] Policy 7-03/000.00 Security Restraints and Handcuffing Inmates; Policy 7-03/030.00 Medically Ordered Restraint Devices; 7-03/040.00 Safety Chair.

[9] Policy 7-03/030.00 Medically Ordered Restraint Devices.

[10] Policy 7-07/000.00 Use of Force Review Procedures.

[11] Policy 7-01/010.00 Force Prevention Principles; Policy 7-02/020.00 Handling Insubordinate, Recalcitrant, Hostile, or Aggressive Inmates.

Karen Joynt
Senior Deputy County Counsel
December 20, 2016
Page 9

### 4. *Document Requests Related to Use of Force Investigation Packages*

- Of the use of force packages chosen for review in Section B, their corresponding use of force investigation packages. *See id.* §§ 12.4-12.5. These packages shall include investigation or hearing reports following force incidents, any disciplinary/corrective action taken, and related disciplinary and personnel records. This shall also include reports from any investigation, disciplinary hearing, and/or other measure conducted against managers for failing to address use of force problems (*id.* § 1.3).

    o The goal in reviewing these use of force packages is to ensure compliance with each substantive provision of the Action Plan.

- Any documentation of the Custody Force Rollout Team's reviews of the Unit Commanders' evaluations of force incidents. *See id.* § 11.1.

- All referrals to internal or external agencies and related documentation of those investigations and any discipline/corrective action taken.

    o All cases of alleged officer misconduct that were investigated by the Internal Criminal Investigations Bureau. *See id.* § 14.2.

    o Any referrals to the District Attorney's office of incidents of officer misconduct. *See id.* § 14.2.

    o All referrals of an inmate for criminal prosecution for assaulting a staff member arising from an incident involving the use of force. *See* Implementation Plan § 14.1.

- Copy of the directive that implements 14.1 relating to criminal referrals. *See id.* § 14.1; *see also* Panel's First Report (DE 141) at 14 (stating that the Panel reviewed and approved a directive to implement § 14.1).

- All documented findings of dishonesty, excessive force, and PREA violations by Department members in Custody Operations. *See id.* § 13.2.

- Any documentation indicating that a Department member was terminated or sanctioned for dishonesty, use of excessive force, or violating PREA. *See id.* § 13.2.

- Any documentation which shows that a Department member was found to have been dishonest, used excessive force, or violated PREA, yet was not terminated. *See id.* § 13.1.

Karen Joynt
Senior Deputy County Counsel
December 20, 2016
Page 10

   o   Any documentation explaining why this Department member was not terminated.

   o   Any discipline imposed short of termination.

   o   Any reports to the Office of Inspector General regarding Department members receiving an adverse finding yet not terminated. *See id.* § 13.2.

   5.   *Document Requests Related to Training*

- Current of use of force curriculum and training materials (all lesson plans, presentations, and other materials) and use of force refresher curriculum and training materials. *See id.* § 3.1.

- Current ethics, professionalism, and treating inmates with respect curricula and training materials (all lesson plans, presentations, and other materials) and current draft of ethics refresher curriculum and training materials. *See id.* § 3.2.

- Current curricula and training materials for pre-service Custody training (six-week Jail Operations and Jail Operations Continuum course). *See id.* § 3.3.

- Custody-based, use of force scenarios that are used as part of the training. *See id.* § 3.4.

- All personnel complaints against Department members that has resulted in a finding that it "Appears Employee Conduct Could Have Been Better." *See id.* § 3.5.

- Any evidence that disciplinary actions were undertaken after a finding that it "Appears Employee Conduct Could Have Been Better." *See id.* § 3.5.

- Any documentation of reviews conducted of Department members during the probationary period and post-probationary period. *See id.* § 3.6.

- Current curriculum, training materials, and testing materials for Crisis Intervention and Conflict Resolution course and refresher course. *See id.* § 4.6.

- Current curriculum, training materials, and testing materials on identifying and working with mentally ill inmates course and refresher course. *See id.* §§ 4.7-4.8.

- Current curriculum, training materials, and testing materials on De-escalation & Verbal Resolution. *See* DE 141 at 10 ("The Department provided the Panel with training materials for DeVRT on December 28, 2015.").

LEGAL_US_W # 88202741.1

Karen Joynt
Senior Deputy County Counsel
December 20, 2016
Page 11

- Any documentation that indicates that the aforementioned trainings were conducted (including, but not limited, dated sign-in sheets, pre and post-tests of officers and deputies). *See* Implementation Plan §§ 4.6-4.10.

- Curricula and training materials for Sergeants on conducting use of force investigations, including the course outline entitled "Supervisor Orientation on use of Force Investigations and Documentation," the related PowerPoint training materials, and another other materials that were provided to the Panel in relation to these provisions. *See id.* § 12.1.

  6.    *Document Requests Related to Inmate Grievance System*

- Any documentation supporting the decision to eliminate the need for a centralized unit with sworn personnel, custody assistants, and civilian personnel that is in charge of collecting and reviewing inmate grievances. *See id.* § 6.16; DE 141 at 9-10.

- A log of all inmate grievances filed January 1, 2017 to March 31, 2017, including grievances filed against staff. *See, e.g.,* Implementation Plan §§ 6.3-6.6.

  o  After reviewing the log of inmate grievances, the plaintiffs may request additional information and documentation relating to the inmate grievance system including, but not limited to, the following:

    ▪ All receipts of inmate grievances provided to the filer from January 1, 2017 to March 31, 2017.

    ▪ All documentation pertaining to the Department's adjudication of inmate grievances, and notification of the filer of the grievance status/disposition. This shall include responses to inmate grievances (including any denials or actions undertaken in response to grievances), investigations and hearing conducted in response to inmate grievances, and any evaluations/reviews of investigations conducted.

    ▪ Any documented reasons why an inmate did not receive a response to his/her grievance within 15 days. *See id.* § 6.19.

    ▪ All appeals filed January 1, 2017 to March 31, 2017, any documentation indicating whether the appeal was accepted or rejected, and (for any rejected appeals) documented proof that the inmate was not housed in punitive segregation when s/he received the denial. *See id.* § 6.20.

Karen Joynt
Senior Deputy County Counsel
December 20, 2016
Page 12

- Copy of relevant pages of living unit log indicating when grievances are collected, and copy of grievance collection log maintained by the Inmate Grievance Coordinator, which documents the reason for each grievance and whether the grievance was submitted as an emergency grievance. *See id.* § 6.10.

- Any documented reviews by the Inmate Grievance Coordinator of emergency grievances. *See id.* § 6.9.

- Any corrective action taken against any Department member who is found to have engaged in the conduct prohibited in § 6.11.

- All documentation pertaining to Conflict Resolution Meetings (requests and documentation from the meeting). *See id.* § 7.1.

7.    *Documents Provided to Monitoring Team*

- To the extent not covered by the above-listed requests, any other documents provided to the Monitoring Team.

Please let us know at your earliest convenience when the Department is available to meet and confer on these topics.  We look forward to your continued cooperation.

Sincerely,

Peter Eliasberg, ACLU-SC
Esther Lim, ACLU-SC
Eric Balaban, ACLU-NPP
Stephen Turanchik, Paul Hastings LLP
Story Cunningham, Paul Hastings LLP

LEGAL_US_W # 88202741.1