# EXHIBIT H



# COUNTY OF LOS ANGELES

## OFFICE OF THE COUNTY COUNSEL

648 KENNETH HAHN HALL OF ADMINISTRATION
500 WEST TEMPLE STREET
LOS ANGELES, CALIFORNIA 90012-2713

MARY C. WICKHAM
County Counsel

June 5, 2017

TELEPHONE
(213) 893-6755
FACSIMILE
(213) 626-2105
TDD
(213) 633-0901
E-MAIL
kjoynt@counsel.lacounty.gov
apark@counsel.lacounty.gov

VIA E-MAIL AND U.S. MAIL

Stephen Turanchik
Paul Hastings LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071

Peter Eliasberg
American Civil Liberties Union
1313 West 8th Street
Los Angeles, CA 90017

Eric Balaban
American Civil Liberties Union
915 15th Street NW
Washington, D.C. 20005

Re:    *Rosas v. Baca*, Case No. CV 12-00428 DDP (SHx) (C.D. Cal.)

Dear Counsel:

Please allow this correspondence to serve as a follow up to our meet and confer on April 18, 2017, regarding Plaintiffs' request for various documents. We reiterate that we recognize the important role Plaintiffs' counsel plays in the implementation of the *Rosas* Agreement ("Agreement") and welcome the cooperation and collaboration between the parties.

With regards to Plaintiffs' December 20, 2016 requests for documents, we respectfully object to the below listed requests at this time. As fully detailed in our correspondence of July 28, 2016 and March 15, 2017, Plaintiffs' requests are equivalent to an additional set of compliance measures, which would in essence institutionalize Plaintiffs' counsels' role as a Monitor. We disagree with a second set of Monitoring in this matter. We acknowledge that Plaintiffs' counsel is entitled to some records under the Agreement. The Agreement states "Class Counsel will have reasonable access to… documents, for inspection to evaluate compliance with the Action Plan." Simply put, the Agreement allows for Plaintiffs' counsel to review compliance once the Court appointed Monitors ("Monitors") have determined the Los Angeles County Sheriff's Department ("Department") is substantially compliant with the Provisions of the Agreement. To do otherwise, would be extremely burdensome as it would force the Department to comply with both the Monitors' requirements and Plaintiffs' counsels' requirement, which would effectively undermine the parties' mutual goal to achieve the terms of the Agreement.

Stephen Turanchik
Peter Eliasberg
Eric Balaban
**June 5, 2017**
Page 2

In addition, as you are aware, the Panel, undeniably established experts in correctional systems, have spent the time to diligently educate themselves on the Department's practices, procedures and methods, in drafting the Compliance Measures relevant to each Paragraph of the Agreement to demonstrate compliance. Several of your requests go beyond the scope of the thoughtfully drafted Compliance Measures by the Panel or the related Paragraphs and are therefore overbroad and burdensome as further described below.

The Department must also object to several of Plaintiffs' requests as overbroad and burdensome, as they request documents beyond what is required in the Agreement. Other requests are duplicative as they are identical or closely related to the documents that are requested by the Monitors.

Further, many of the requests seek documents, such as employment records, which may be protected from disclosure by the official information privilege pursuant to *Evidence Code* § 1040, as well as *Evidence Code* § 1043, *Penal Code* §§ 832.5 and 832.7, *Government Code* § 6254, and the deliberative process privilege. The Department further objects on the grounds that Plaintiffs' requests seek documents that may violate the privacy rights of third-parties and the Department's current and former employees in violation of Article I, Section 1 of the California Constitution, the U.S. Constitution and *Code of Procedure* § 1985.6. Also, some requests are so overbroad as to seek documents violative of the attorney-client and attorney work-product privileges. *Nacht & Lewis Architects Inc. v. Superior Court of Sacramento* (1996) 47 Cal. App. 4th 214, 217.

Several requests also seek documents protected from disclosure by the Health Insurance Portability and Accountability Act ("HIPAA") and the California Confidentiality of Medical Information Act ("CMIA") as documents related to use of force investigations include personal medical information of inmates and/or deputies provided by medical professionals.

The Department is agreeable to making the documents produced to the Monitors available to Plaintiffs' counsel for inspection to evaluate compliance, pursuant to a protective order, following a finding of substantial compliance by the Monitors. If you have a reasonable interest in reviewing documents beyond those dictated by the Compliance Measures, after your inspection of the documents made available, we are agreeable to meet further about the inspection of documents related to your concerns or review of the Monitor's conclusions. Notably, we reiterate that the Agreement does not permit Plaintiffs to seek open and continuous discovery from the Department related to compliance.

Moreover, with respect to Plaintiffs' request for documents related to training, the related Paragraphs and corresponding Compliance Measures require the Monitors to approve the relevant

Stephen Turanchik
Peter Eliasberg
Eric Balaban
**June 5, 2017**
Page 3

curriculum and training materials. The Paragraphs and Compliance Measures do not require Plaintiffs' approval of these materials, and therefore this request is burdensome and irrelevant as it goes beyond the scope of the Agreement. The Department again reminds Plaintiffs that Plaintiffs' Monitor, Jeffrey Schwartz, has actively participated in the creation of the curriculum, materials and presentation of these courses. Nonetheless, should it be valuable to you, we are willing to make the current curriculum and materials, already approved by the Monitors, available to you pursuant to a protective order. Alternatively, if you believe it will be more valuable for a representative to attend a DeVrt training course, we are willing to discuss this option.

In addition to the foregoing objections, additional objections and comments to the specific document requests of December 20, 2016 are provided as follows:

## I. DOCUMENT REQUESTS RELATING TO LEADERSHIP, ADMINISTRATION AND MANAGEMENT.

**Request No. 1**: Any policies that have been revised to conform to the requirements set forth in the Implementation Plan.

**Response to Request No. 1**: This request has been completed. While not required by the Agreement, in the spirit of cooperation, in a correspondence dated April 10, 2016, we provided the following as policies:

- CDM 7-01/000.00 Preamble To Force Manual – Custody Division Manual;
- CDM 7-01/010.00 Force Prevention Principles;
- CDM 7-01/010.05 Reporting Prevented Uses Of Force;
- MPP 3-10/010.00 Use Of Force Defined;
- CDM 7-01/020.00 Authorized Use Of Force;
- MPP 3-10/030.00 Unreasonable Force;
- CDM 7-01/030.00 Prohibited Force;
- CDM 7-01/040.00 Planned Use Of Force;
- CDM 7-01/050.00 Inmate Extractions;
- CDM 7-01/050.05 Inmate Extraction Procedures;
- CDM 7-01/050.10 Inmate Extraction Teams;
- CDM 7-01/050.15 Use Of Special Weapons During Inmate Extractions;
- CDM 7-02/000.00 Planned Use Of Force For Inmates With Special Needs;
- CDM 7-02/010.00 Pregnant Inmates;
- CDM 7-02/020.00 Handling Insubordinate, Recalcitrant, Hostile, Or Aggressive Inmates;

Stephen Turanchik
Peter Eliasberg
Eric Balaban
**June 5, 2017**
Page 4

- CDM 7-02/030.00 Jail Mental Health Evaluation Team (JMET);
- CDM 7-03/010.00 Waist Chain Procedures;
- MPP 3-01/110.21 Hobbling Defined;
- MPP 3-01/110.22 Total Appendage Restraint Procedure (TARP);
- CDM 7-03/020.00 Use Of Force Against Restrained Inmates;
- CDM 7-03/030.00 Medically Ordered Restraint Devices;
- CDM 7-03/040.00 Safety Chair;
- CDM 7-04/000.00 Escorting Procedures For Combative Or Uncooperative Inmates;
- MPP 3-10/105.00 Medical Treatment And Transporting Suspects;
- CDM 7-05/000.00 Chemical Agents;
- CDM 7-05/010.00 Aerosol Chemical Agents;
- CDM 7-06/000.00 Use Of Force Reporting Procedures;
- MPP 3-10/115.00 Video Review And Admonishment;
- CDM 7-06/010.00 Video Recording Procedures;
- CDM 7-06/020.00 Use Of Force Package;
- CDM 7-06/030.00 Inmate Assault And Force Reporting In F.A.S.T. And P.D.E.;
- CDM 7-07/000.00 Use Of Force Review Procedures;
- CDM 7-07/010.00 Custody Force Response Team;
- CDM 7-07/020.00 Custody Force Review Committee;
- MPP 3-10/120.00 IAB Force/Shooting Response Teams;
- MPP 3-10/130.00 Activation Of The IAB Force/Shooting Response Teams;
- CDM 7-07/030.00 Compliance Lieutenant;
- CDM 7-08/000.00 Deployment Of Special Weapons;
- CDM 7-08/010.00 Authorized Special Weapons;
- CDM 7-08/020.00 Pepperball Launcher;
- CDM 7-08/030.00 Electronic Immobilization Devise (TASER) Procedures;
- CDM 7-08/040.00 Specialty Impact Munitions;
- CDM 7-08/050.00 Stinger Grenades;
- CDM 7-08/060.00 Baton Launching Weapon Systems;
- CDM 7-08/070.00 Rubber Ball Blast Grenade;
- MPP 3-10/300.00 Deputy-Involved Shootings-General Provisions;
- MPP 3-10/310.00 Preliminary Responsibilities;
- MPP 3-10/400.00 Deputy-Involved Shootings-Person Hit;
- MPP 3-10/410.00 Deputy Responsibilities;
- MPP 3-10/420.00 Supervisor's Responsibilities;

Stephen Turanchik
Peter Eliasberg
Eric Balaban
**June 5, 2017**
Page 5

- MPP 3-10/430.00 Unit Responsibility-Deputy Shot;
- MPP 3-10/440.00 Homicide Bureau's Responsibilities;
- MPP 3-10/450.00 Professional Standards Division (PSD) Responsibility;
- MPP 3-10/460.00 Critical Incident Response-Department Psychologist;
- MPP 3-10/470.00 Communications And Rumor Control;
- MPP 3-10/500.00 Deputy Involved Shootings-No One Hit;
- MPP 3-10/200.00 Use Of Firearms And Deadly Force;
- MPP 3-10/150.00 Tactical Incidents;
- MPP 3-10/600.00 Statistical Compilation-Shots Fired By Or At Deputies-No Person Wounded Or Killed.

In that same correspondence, while not required by the Agreement, in the spirit of cooperation, we also made available to you the grievance policies, approved by the Monitors, for your review and comment.

On July 28, 2016, we provided you a copy of all published policies you requested in your July 2, 2016 correspondence, as well as, Custody Operations Directive 15-007 Filing Assault on Staff Criminal Reports.  We also included additional copies of polices already provided to you in response to your prior requests, including Volume 7 of the Custody Division Manual.

In addition, on March 15, 2017, pursuant to your December 20, 2016 request we provided you with revised policies, as follows:

- CDM 2-01/030.00 Captains;
- CDM 7-07/000.00 Use Of Force Review Procedures;
- CDM 7-01/010.00 Force Prevention Principles;
- CDM 7-03/000.00 General Principles Of Security Restraints And Handcuffing Inmates;
- CDM 4-10/005.00 Disposition Of Use Of Force Review And Staff Discipline;
- CDM 7-08/030.00 Electronic Immobilization Device (TASER) Procedures;
- and CDM 7-03/030.00 Medically Ordered Restraint Devices.

Further, on March 29, 2017, we provided you with proposed grievance policies for your review and comment.  Specifically, we provided you with:

- CDM 5-12/005.05 Anti-Retaliation Policy;
- CDM 8-02/005.00 Informal Requests;
- CDM 8-03/005.00 Inmate Grievances;

Stephen Turanchik
Peter Eliasberg
Eric Balaban
**June 5, 2017**
Page 6

- CDM 8-03/020.00 Healthcare Grievances;
- CDM 8-03/040.00 Grievances Against Staff;
- CDM 8-03/050.00 Grievances Of Retaliation;
- CDM 8-04/010.00 Dispositions, Interim Status Responses, And Inmate Notifications; CDM 8-04/030.05 Appeals Of Grievances – Not Against Staff;
- CDM 8-04/050.00 Duplicative Or Excessive Filings Of Grievances And Appeals, And Restriction Of Filing Privileges;
- Correctional Health Services Policy and Procedure ("CHSPP") M12.03 Grievances – Health Care And Against Staff.

**Request No. 2**:   Any documentation indicating the Assistant Sheriff's involvement in any investigations or hearings of staff or prisoners. *See id*. § 1.1.

**Response to Request No. 2**:  Objection.  This request is premature as the Monitors have yet to find the Department substantially compliant with Paragraph 1.1 of the Agreement.
In addition, this request is overbroad in time and scope and irrelevant to the Agreement as this request is outside the scope of Paragraph 1.1.  This request is also vague and ambiguous as to the phrase "Assistant Sheriff's involvement in any investigations or hearings of staff or prisoners."

Specifically, Paragraph 1.1 states "Custody Operations should continue to be headed by an Assistant Sheriff with no areas of responsibility other than Custody Operations."  Plainly Paragraph 1.1 does not require the Assistant Sheriff's involvement in any investigations or hearings of staff or prisoners, nor does it obligate the Department to produce any documents regarding investigations or hearings.  As such, Plaintiffs' request is improper as it is unequivocally outside the scope of this Paragraph and the corresponding Compliance Measures.

**Request No. 3**:  Any documentation indicating that the Assistant Sheriff has been trained on all effective policies and procedures. *See id*. § 1.1.

**Response to Request No. 3**:  Objection.  This request is premature as the Monitors have yet to find the Department substantially compliant with Paragraph 1.1 of the Agreement.

In addition, this request is overbroad and irrelevant as this request is outside the scope of Paragraph 1.1.  Specifically, Paragraph 1.1 states "Custody Operations should continue to be headed by an Assistant Sheriff with no areas of responsibility other than Custody Operations." The Compliance Measure does not obligate the Assistant Sheriff to participate in any particular training.  As such, Plaintiffs' request is improper as it is unequivocally outside the scope of this Paragraph and the corresponding Compliance Measures.

Stephen Turanchik
Peter Eliasberg
Eric Balaban
**June 5, 2017**
Page 7

This request is also vague and ambiguous as to the phrase "effective policies and procedures," and does not identify the requested items with reasonable particularity pursuant to *Code of Civil Procedure* § 2031.030(c)(1). This request is unduly burdensome and oppressive in that it seeks information that is not sufficiently identified and makes a response impossible without speculation as to the scope and nature of the information sought. *See West Pico Furniture Company v. Sup. Ct.*, 56 Cal.2d 407, 418 (1961); *Calcor Space Facility, Inc. v. Sup. Ct.,* 53 Cal.App.4th 216, 224-225 (1997).

Without waiving the foregoing objections, to the extent your definition of "policies and procedures" means those modified to support the Agreement, it is the Department's practice to have the Assistant Sheriff review and sign all policies when they are enacted or modified.

**Request No. 4**:  Any reports submitted to the Sheriff on use of force incidents, investigations, and training at the facilities, and any responses by the Sheriff regarding these reports. *See id.* § 1.2.

**Response to Request No. 4**:  Objection. This request is premature as the Monitors have yet to find the Department substantially compliant with Paragraph 1.2 of the Agreement.

In addition, this request is overbroad and irrelevant as this request is vague and ambiguous and outside the scope of Paragraph 1.2. Plaintiffs request is vague and ambiguous as to the phrase "any responses" and as such, the Department cannot properly respond without further clarification from Plaintiffs' counsel. This request is also overbroad it seeks documents violative of the attorney-client and attorney work-product privileges. *Nacht & Lewis Architects Inc. v. Superior Court of Sacramento* (1996) 47 Cal. App. 4th 214, 217.

Paragraph 1.2 requires the Sheriff to personally engage in the monitoring of the Department's jail facilities. The Compliance Measures for this Paragraph requires the Sheriff to meet with the Monitors to discuss the Implementation Plan and his personal involvement, and further requires the Department to provide a semi-annual report setting forth the Sheriff's personal involvement. The Compliance Measures do not obligate the Department to disclose any reports submitted to the Sheriff or the Sheriff's response to any reports. As such, Plaintiffs' request goes beyond the scope of the Paragraph and Compliance Measures.

This request also seeks training documents which are protected from disclosure under the official information privilege, as the disclosure of the requested material could pose a serious risk to the personal safety of Department members and/or inmates.

Stephen Turanchik
Peter Eliasberg
Eric Balaban
**June 5, 2017**
Page 8

**Request No. 5**:  Any other documentation indicating the Sheriff's personal involvement in the management of the facilities (logs or reports reviewed by the Sheriff, reports produced by the Sheriff, etc.).  *See id.* § 1.2.

**Response to Request No. 5**:  Objection.  This request is premature as the Monitors have yet to find the Department substantially compliant with Paragraph 1.2 of the Agreement.

In addition, this request is overbroad and irrelevant as this request is outside the scope of Paragraph 1.2.  Specifically, Paragraph 1.2 requires the Sheriff to personally engage in the monitoring of the Department's jail facilities.  The Compliance Measures for this Paragraph requires the Sheriff to meet with the Monitors to discuss the Implementation Plan and his personal involvement, and further requires the Department to provide a semi-annual report setting forth the Sheriff's personal involvement.  The Compliance Measures do not obligate the Department to disclose any "documentation indicating the Sheriff's personal involvement in the management of the facilities, and does not require the disclosure of logs or reports reviewed or produced by the Sheriff.  As such, Plaintiffs' request goes beyond the scope of the Paragraph and Compliance Measures and is burdensome.

This request is also overbroad as it seeks documents violative of the attorney-client and attorney work-product privileges.  *Nacht & Lewis Architects Inc. v. Superior Court of Sacramento* (1996) 47 Cal. App. 4th 214, 217

**Request No. 6**:  Any logs and/or other documentation (including electronic records) indicating the date and time period during which senior managers toured the jail facilities from January 1-8 and March 1-8.  *See id.* §§ 10.1 and 10.2.

**Response to Request No. 6**:  Objection.  This request is premature as the Monitors have yet to find the Department substantially compliant with Paragraphs 10.1 and 10.2 of the Agreement.

While your request for "logs and/or other documentation" is vague and overbroad, we believe the documents you seek are equivalent to the documents required by the Compliance Measures, as the Compliance Measures require the Department to provide records of the visits made by Department managers.  As mentioned above, the Department is agreeable to making the documents produced to the Monitors available to Plaintiffs' counsel for inspection to evaluate compliance, pursuant to a protective order, following the Monitors finding that the Department is substantially compliant with Paragraphs 10.1 and 10.2.

We appreciate your effort to refine your request to a reasonably quantity by selecting two weeks of data.  However, the Compliance Measures for Paragraph 10.2 require the Department to

Stephen Turanchik
Peter Eliasberg
Eric Balaban
**June 5, 2017**
Page 9


provide the Monitors with daily in-service documents for two random weeks[1], selected by them. Thus, Plaintiffs' selection of specific weeks are burdensome as it is duplicative of the Compliance Measures the Monitors have set.

If after your inspection of the records required by the Monitors, you wish to inspect data from additional time periods, we are agreeable to further meeting and conferring.

**Request No. 7**:  All logs recording checks conducted by officers and supervisors from January 1-8 and March 1-8, 2017.  *See id.* § 9.1.

**Response to Request No. 7**:  Pursuant to the Monitors' Second Report, Paragraph 9.1 is moot because it is covered by the settlement agreement in the DOJ case and is being monitored under that agreement.

**Request No. 8**:  Copies of centralized log that tracks all force incidents, inmate grievances, allegations of misconduct, performance reviews, and policy violations by Department members.

**Response to Request No. 8**:  Objection.  This request is premature as the Monitors have yet to determine whether the Department is compliant with any Paragraphs of the Agreement.

As phrased, this request is vague and ambiguous, and requests documents beyond the scope of the Agreement and is irrelevant.  This request is vague and ambiguous as to the phrase "centralized log" and Plaintiffs' request does not identify any Paragraphs of the Agreement that require a "centralized log."

Without waiving the foregoing objections, we interpret this request to be related to Paragraph 19.1, which states the "Department should develop a formal Early Warning System to identify potentially problematic Department members based upon objective criteria such as number of force incidents, inmate grievances, allegations of misconduct, performance reviews, and policy violations."

As reported to Plaintiffs in previous meetings, the Department is modifying its systems related to Paragraph 19.1.  At this time, the tool for Paragraph 19.1 is being improved.

---

[1] Randomly selected time periods are selected by the Monitors and given to the Department after the relevant quarter is completed.  The Department, where appropriate, also uses standard randomization tools, which are provided to the Monitors.

Stephen Turanchik
Peter Eliasberg
Eric Balaban
**June 5, 2017**
Page 10


## II. <u>DOCUMENT REQUESTS RELATED TO PRISONER-ON-PRISONER VIOLENCE.</u>

**Request No. 9**:  All incident reports documenting prisoner-on-prisoner violence from January 1, 2017 – March 31, 2017, and Department members' efforts to intervene as soon as possible.  *See id.* § 9.3.

**Response to Request No. 9**:  Objection.  This request is premature as the Monitors have yet to find the Department substantially compliant with Paragraph 9.3 of the Agreement.

This request is overbroad and burdensome as it seeks ALL incident reports documenting prisoner-on-prisoner violence from January 1, 2017 through March 31, 2017.  As an example, there were 583 reported incidents of inmate-on-inmate violence at Men's Central Jail, Twin Towers Correctional Facility, and the Inmate Reception Center in the Fourth Quarter, 2016.  More appropriately, the Compliance Measure for Paragraph 9.3 requires the Department to randomly select 25 force packages or incident reports involving inmate-on-inmate violence and assess whether Department members took appropriate steps to intervene.

The Compliance Measures set forth by the Monitors are a statistically valid sample of all incidents of prisoner-on-prisoner violence, without creating the burden of collecting ALL the incident reports.  As such, the Department is agreeable to making the documents produced to the Monitors available to Plaintiffs' counsel for inspection to evaluate compliance, pursuant to a protective order, following the Monitors finding that the Department is substantially compliant with Paragraph 9.3.

**Request No. 10**:  All relevant unit logs documenting prisoner-on-prisoner violence from January 1, 2017 – March 31, 2017.  *See id.* § 9.3.

**Response to Request No. 10**:  Objection.  This request is premature as the Monitors have yet to find the Department substantially compliant with Paragraph 9.3 of the Agreement.

The phrase "unit logs" is vague, ambiguous, and uncertain and the Department cannot fully respond without further clarification from Plaintiffs' counsel as to the definition of "unit logs." In addition, there is no requirement for the Department to create or maintain "unit logs."

Moreover, this request seeks ALL "relevant unit logs" documenting prisoner-on-prisoner violence from January 1, 2017 through March 31, 2017.  As an example, there were 583 reported incidents of inmate-on-inmate violence at Men's Central Jail, Twin Towers Correctional Facility, and the Inmate Reception Center in the Fourth Quarter, 2016.  More appropriately, the Compliance Measure for Paragraph 9.3 requires the Department to randomly select 25 force

Stephen Turanchik
Peter Eliasberg
Eric Balaban
**June 5, 2017**
Page 11

packages or incident reports involving inmate-on-inmate violence and assess whether Department members took appropriate steps to intervene.

**Request No. 11**:  All relevant internal investigations regarding prisoner-on-prisoner violence from January 1, 2017 – March 31, 2017.  *See id.* § 9.3.

**Response to Request No. 11**:  Objection.  This request is premature as the Monitors have yet to find the Department substantially compliant with Paragraph 9.3 of the Agreement.

In addition, this request is overbroad, irrelevant, and burdensome as this request is outside the scope of Paragraph 9.3.  The phrase "internal investigations" is vague, ambiguous, and uncertain and the Department cannot fully respond without further clarification from Plaintiffs' counsel as to the definition of "internal investigations."

Moreover, this request seeks ALL "relevant internal investigations" documenting prisoner-on-prisoner violence from January 1, 2017 through March 31, 2017.  As an example, there were 583 reported incidents of inmate-on-inmate violence at Men's Central Jail, Twin Towers Correctional Facility, and the Inmate Reception Center in the Fourth Quarter, 2016.  More appropriately, the Compliance Measure for Paragraph 9.3 requires the Department to randomly select 25 force packages or incident reports involving inmate-on-inmate violence and assess whether Department members took appropriate steps to intervene.

**Request No. 12**:  All relevant grievances alleging prisoner-on-prisoner violence from January 1, 2017 – March 31, 2017.  *See id.* § 9.3.

**Response to Request No. 12**:  Objection.  This request is premature as the Monitors have yet to find the Department substantially compliant with Paragraph 9.3 of the Agreement.

In addition, this request is overbroad, irrelevant, and burdensome as this request is outside the scope of Paragraph 9.3.  Specifically, this request seeks ALL relevant grievances alleging prisoner-on-prisoner violence from January 1, 2017 through March 31, 2017.  As an example, there were 583 reported incidents of inmate-on-inmate violence at Men's Central Jail, Twin Towers Correctional Facility, and the Inmate Reception Center in the Fourth Quarter, 2016.  More appropriately, the Compliance Measure for Paragraph 9.3 requires the Department to randomly select 25 force packages or incident reports involving inmate-on-inmate violence and assess whether Department members took appropriate steps to intervene.

Without waiving the foregoing objections, the Department would be willing to meet further about the addition of one compliance measure seeking the inclusion of a sample of grievances related to inmate-on-inmate violence.

Stephen Turanchik
Peter Eliasberg
Eric Balaban
**June 5, 2017**
Page 12


### III. DOCUMENT REQUESTS RELATED TO USE OF FORCE PACKAGES.

**Request No. 13**:  A log of all force packages for each force incident occurring January 1, 2017 to March 31, 2017 (defined to include all uses of physical force, chemical agents, weapons, restraints, tasers, and other electronic stun gun devices; cell extractions; incidents involving prisoners on the mental health caseload; incidents prompted by a medical or mental health provider's order; and incidents which a Department member asserts that s/he was assaulted by an inmate).  From this log, Plaintiffs will choose a sufficient number of force packages to review. The chosen force packages must then be produced to Plaintiffs.

**Response to Request No. 13**:  Objection.  This request is premature as the Monitors have yet to find the Department substantially compliant with any Paragraphs of the Agreement related to force packages.

As phrased, this request is vague, ambiguous, compound, and requests documents beyond the scope of the Agreement and is therefore irrelevant and burdensome.  Plaintiffs' request does not identify any Paragraphs of the Agreement that requires the Department to create a log with the specificity requested by Plaintiffs.   Moreover, the Department is unaware of any Paragraph that requires the Department to create the requested log, and such request is burdensome as it goes beyond the Compliance Measures set forth by the Monitors.  The Department also objects to Plaintiffs' definitions of force packages as Plaintiffs' definitions are vague and ambiguous and beyond the scope of the Agreement.  In addition, this request seeks documents outside the scope of the Agreement, and is therefore burdensome and irrelevant.

Plaintiffs' request states that "Plaintiffs will choose a sufficient number of force packages to review."   While the Agreement allows for the Monitors to select and review specific force packages, the Agreement does not grant Plaintiffs the same authority.  As such, Plaintiffs' request is improper and burdensome as it is unequivocally outside the scope of this Paragraph and the corresponding Compliance Measures.

### IV.  DOCUMENT REQUESTS RELATED TO USE OF FORCE INVESTIGATION PACKAGES.

**Request No. 14**:  Of the use of force packages chosen for review in Section B, their corresponding use of force investigation packages.  These packages shall include investigation or hearing reports following force incidents, any disciplinary/corrective action taken, and related disciplinary and personnel records.  This shall also include reports from any investigation, disciplinary hearing, and/or other measure conducted against managers for failing to address use of force problems. *See id.*  §1.3.

Stephen Turanchik
Peter Eliasberg
Eric Balaban
**June 5, 2017**
Page 13

**Response to Request No. 14**: Objection. This request is premature as the Monitors have yet to find the Department substantially compliant with Paragraph 1.3 of the Agreement.

As phrased, this request is vague, ambiguous as to "Section B" and the Department cannot fully respond without further clarification from Plaintiffs' counsel. This request is also compound as it seeks not only use of force packages, but also disciplinary/correction actions taken, as well as disciplinary and personnel records, and "other measure [sic] conducted against managers for failing to address use of force problems." In addition, this request seeks documents outside the scope of the Agreement, including Paragraph 1.3, and is therefore burdensome and irrelevant.

Moreover, this request improperly goes beyond Plaintiffs' counsels' role approved by the Agreement as Plaintiffs' counsel attempts to mandate the contents of a use of force packet. As such, Plaintiffs' request is improper and burdensome as it is unequivocally outside the scope of this Paragraph and the corresponding Compliance Measures.

**Request No. 15**: Any documentation of the Custody Force Rollout Team's reviews of the Unit Commanders' evaluations of force incidents. *See id*. §11.1.

**Response to Request No. 15**: Objection. This request is premature as the Monitors have yet to find the Department substantially compliant with Paragraph 11.1 of the Agreement.

In addition, this request is overbroad and irrelevant to the Agreement as this request is outside the scope of Paragraph 11.1. Specifically, Paragraph 11.1 provides that the Custody Force Rollout Team's ("CFRT") involvement does not delay the Department's investigation of force incidents. The purpose of the Paragraph is to ensure the timeliness of force investigations and the Compliance Measures set forth by the Monitors serve this purpose. Therefore, this request is burdensome and irrelevant as it fails to meet the purpose of the Paragraph and the documents requested go beyond the scope of the Agreement.

**Request No. 16**: All referrals to internal or external agencies and related documentation of those investigations and any discipline/corrective action taken.

>   i. All cases of alleged officer misconduct that were investigated by the Internal Criminal Investigations Bureau. *See id*. § 14.2.
>
>   ii. Any referrals to the District Attorney's office of incidents of officer misconduct. *See id*. § 14.2.
>
>   iii. All referrals of an inmate for criminal prosecution for assaulting a staff member arising from an incident involving the use of force. *See id*. § 14.1.

Stephen Turanchik
Peter Eliasberg
Eric Balaban
**June 5, 2017**
Page 14

**Response to Request No. 16**: Objection.  This request is premature as the Monitors have yet to find the Department substantially compliant with Paragraphs 14.1 and 14.2 of the Agreement.

In addition, this request is vague and ambiguous as to the phrase "[a]ll referrals to internal or external agencies," as well as "investigations."

With respect to section (i) above, Paragraph 14.2 requires the Department to forward to the District Attorney's Office, incidents of officer misconduct that may amount to criminal violations. The purpose of Paragraph 14.2 is to ensure that officer conduct which rises to the level of criminal misconduct is timely referred to the District Attorney's Office and the Compliance Measures set forth by the Monitors serve this purpose.

The requests for documents related to any discipline/corrective action taken is beyond the scope of the Paragraphs and are therefore overbroad, irrelevant, and burdensome as this request is outside the scope of Paragraphs 14.1 and 14.2.  As such, Plaintiffs' request is improper as it is unequivocally outside the scope of this Paragraph and the corresponding Compliance Measures.

Your request in section (ii) is equivalent to the documents required in the Compliance Measures for Paragraph 14.2.  Similarly, your request in section (iii) is equivalent to the Compliance Measures for Paragraph 14.1.  As such, the Department is agreeable to making the documents produced to the Monitors available to Plaintiffs' counsel for inspection to evaluate compliance, pursuant to a protective order, following the Monitors finding that the Department is substantially compliant with Paragraphs 14.1 and 14.2.

**Request No. 17**:  Copy of the directive that implements 14.1 relating to criminal referrals.  *See id.* § 14.1.

**Response to Request No. 17**:  This request is completed.  The documents are attached.

**Request No. 18**:  All documented findings of dishonesty, excessive force, and PREA violations by Department members in Custody Operations.  *See id.* § 13.2.

**Response to Request No. 18**:  Objection.  This request is premature as the Monitors have yet to find the Department substantially compliant with Paragraph 13.2 of the Agreement.

This request is equivalent to the documents required by the Compliance Measures set forth by the Monitors.  As such, the Department is agreeable to making the documents produced to the Monitors available to Plaintiffs' counsel for inspection to evaluate compliance, with limited redactions, pursuant to a protective order, following the Monitors finding that the Department is substantially compliant with Paragraph 13.2.

Stephen Turanchik
Peter Eliasberg
Eric Balaban
**June 5, 2017**
Page 15

**Request No. 19**:  Any documentation indicating that a Department member was terminated or sanctioned for dishonesty, use of excessive force, or violating PREA.  *See id.* § 13.2.

**Response to Request No. 19**:  Objection.  This request is premature as the Monitors have yet to find the Department substantially compliant with Paragraph 13.2 of the Agreement.

This request is burdensome as it is duplicative of Plaintiffs' Request Nos. 18 and 20.  To the extent Plaintiffs' request is not duplicative of Paragraph 13.2, this request is overbroad and outside the scope of Paragraph 13.2 which mandates that the Department report to the Office of the Inspector General ("OIG") all findings of dishonesty, excessive force, or PREA violations, and punishments, and if necessary, reasons why a member was not terminated.

**Request No. 20**:  Any documentation which shows that a Department member was found to have been dishonest, use of excessive force, or violated PREA, yet was not terminated.  *See id.* § 13.1.

   i.   Any documentation explaining why this Department member was not terminated.

   ii.   Any discipline imposed short of termination.

   iii.   Any reports to the Office of Inspector General regarding Department members receiving an adverse finding yet not terminated.  *See id.* § 13.2.

**Response to Request No. 20**:  Objection This request is premature as the Monitors have yet to find the Department substantially compliant with Paragraph 13.1 of the Agreement.

This request is overbroad, and vague and ambiguous as to the terms "any documentation" and "any discipline."  With respect to sections (i) and (ii), it seems Plaintiffs' request is equivalent to the documents required by the Compliance Measures, as the Compliance Measures require the Monitors to review all relevant completed internal investigation, and requires the Department, in their report to the OIG, to provide documentation of reasons why a Department member was not terminated.  As such, the Department is agreeable to making the documents produced to the Monitors available to Plaintiffs' counsel for inspection to evaluate compliance, with limited redactions, pursuant to a protective order, following the Monitors finding that the Department is substantially compliant with Paragraph 13.2.

With respect to section (iii), this request is nearly identical to the purpose of Plaintiffs' Request Nos. 18 and 19.  As such this request is duplicative and burdensome.  Please see the Department's responses to these requests above.

Stephen Turanchik
Peter Eliasberg
Eric Balaban
**June 5, 2017**
Page 16


## V.  DOCUMENT REQUESTS RELATED TO TRAINING.

**Request No. 21**:  Current use of force curriculum and training materials (all lesson plans, presentations, and other materials) and use of force refresher curriculum and training materials. *See id.* § 3.1.

**Response to Request No. 21**:  Objection.  This request is premature as the Monitors have yet to find the Department substantially compliant with Paragraph 3.1 of the Agreement.

This request seeks training documents which are protected from disclosure under the official information privilege, as the disclosure of the requested material could pose a serious risk to the personal safety of Department members and/or inmates.

Without waiving the foregoing objections, the Department has offered to make the current curriculum and materials, already approved by the Monitors, available to you pursuant to a protective order.

**Request No. 22**:  Current ethics, professionalism, and treating inmates with respect curricula and training materials (all lesson plans, presentations, and other materials) and current draft of ethics refresher curriculum and training materials.  *See id.* § 3.2.

**Response to Request No. 22**:  Objection.  This request is premature as the Monitors have yet to find the Department substantially compliant with Paragraph 3.2 of the Agreement.

This request seeks training documents which are protected from disclosure under the official information privilege, as the disclosure of the requested material could pose a serious risk to the personal safety of Department members and/or inmates.

Without waiving the foregoing objections, the Department has offered to make the current curriculum and materials, already approved by the Monitors, available to you pursuant to a protective order.

**Request No. 23**:  Current curricula and training materials for pre-service Custody training (six-week Jail Operations and Jail Operations Continuum course).  *See id.* § 3.3.

**Response to Request No. 23**:  Objection.  This request is premature as the Monitors have yet to find the Department substantially compliant with Paragraph 3.3 of the Agreement.

Stephen Turanchik
Peter Eliasberg
Eric Balaban
**June 5, 2017**
Page 17

This request seeks training documents which are protected from disclosure under the official information privilege, as the disclosure of the requested material could pose a serious risk to the personal safety of Department members and/or inmates.

Plaintiffs' request is also overbroad and outside the scope of this Paragraph, as the purpose of the Compliance Measures is to ensure Department members get training before they begin to work in custody.

**Request No. 24**:  Custody-based, use of force scenarios that are used as part of the training.  *See id*. § 3.4.

**Response to Request No. 24**:  Objection.  This request is premature as the Monitors have yet to find the Department substantially compliant with Paragraph 3.4 of the Agreement.

This request seeks training documents which are protected from disclosure under the official information privilege, as the disclosure of the requested material could pose a serious risk to the personal safety of Department members and/or inmates.

Plaintiffs' request is also burdensome as it is duplicative, in part to Plaintiffs' Request No. 21 (Paragraph 3.1).  Without waiving the foregoing objections, the Department has offered to make the current curriculum and materials, already approved by the Monitors, available to you pursuant to a protective order.

**Request No. 25**:  All personnel complaints against Department members that has resulted in a finding that it "Appears Employee Conduct Could Have Been Better."  *See id*. § 3.5.

**Response to Request No. 25**:  Objection.  This request is premature as the Monitors have yet to find the Department substantially compliant with Paragraph 3.5 of the Agreement.

This request is vague and ambiguous as to the term "complaints."  Without waiving the foregoing objections, we interpret "complaints" as consistent with the documents required by the Compliance Measures of Paragraph 3.5.  As such, this request is equivalent to the Compliance Measures, and the Department is agreeable to making the documents produced to the Monitors available to Plaintiffs' counsel for inspection to evaluate compliance, pursuant to a protective order, following the Monitors finding that the Department is substantially compliant with Paragraph 3.5.

**Request No. 26**:  Any evidence that disciplinary actions were undertaken after a finding that it "Appears Employee Conduct Could Have Been Better."  *See id*. § 3.5.

Stephen Turanchik
Peter Eliasberg
Eric Balaban
**June 5, 2017**
Page 18

**Response to Request No. 26**: Objection.  This request is premature as the Monitors have yet to find the Department substantially compliant with Paragraph 3.5 of the Agreement.

The purpose of the Paragraph is to ensure that Department members are receiving additional training, counseling or mentoring, when a complaint against a Department member resulted in a finding that it "Appears Employee Conduct Could Have Been Better."  The Compliance Measures set forth by the Monitors serve this purpose.  Plaintiff's request for "evidence of disciplinary action," is burdensome and irrelevant as it fails to meet the purpose of the Paragraph and the documents requested unequivocally go beyond the scope of the Agreement.

**Request No. 27**:  Any documentation of reviews conducted of Department members during the probationary period and post-probationary period.  *See id.* § 3.6.

**Response to Request No. 27**:  Objection.  This request is premature as the Monitors have yet to find the Department substantially compliant with Paragraph 3.6 of the Agreement.

In addition, this request is overbroad, irrelevant, and burdensome as this request is outside the scope of Paragraph 6.3.  Specifically, this request seeks any documentation of reviews conducted by members without any limitations as to time or quantity.  However, the Compliance Measures for Paragraph 3.6 requires the Department to randomly select and review personnel records of 50 Deputy Sheriffs and 25 Custody Assistants who were in a probationary assignment in custody during the prior quarter to determine if the individual was reviewed within six months from the start of the assignment.

The Compliance Measures set forth by the Monitors are a statistically valid sample of the Department members who have received probationary review, without creating the burden of collecting all personnel records.  As such, the Department is agreeable to making the documents produced to the Monitors available to Plaintiffs' counsel for inspection to evaluate compliance, with limited redactions, pursuant to a protective order, following the Monitors finding that the Department is substantially compliant with Paragraph 3.6.

**Request No. 28**:  Current curriculum, training materials, and testing materials for Crisis Intervention and Conflict Resolution course and refresher course.  *See id.* § 4.6.

**Response to Request No. 28**:  Objection.  This request is premature as the Monitors have yet to find the Department substantially compliant with Paragraph 4.6 of the Agreement.

This request seeks training documents which are protected from disclosure under the official information privilege, as the disclosure of the requested material could pose a serious risk to the personal safety of Department members and/or inmates.

Stephen Turanchik
Peter Eliasberg
Eric Balaban
**June 5, 2017**
Page 19

Without waiving the foregoing objections, the Department has offered to make the current curriculum and materials, already approved by the Monitors, available to you pursuant to a protective order.

**Request No. 29**:  Current curriculum, training materials, and testing materials on identifying and working with mentally ill inmates course and refresher course.  *See id.* §§ 4.7-4.8.

**Response to Request No. 29**:  Objection.  This request is premature as the Monitors have yet to find the Department substantially compliant with Paragraphs 4.7 and 4.8 of the Agreement.  This request is burdensome as it is duplicative of Plaintiffs' Request No. 28.

This request seeks training documents which are protected from disclosure under the official information privilege, as the disclosure of the requested material could pose a serious risk to the personal safety of Department members and/or inmates.

Without waiving the foregoing objections, the Department has offered to make the current curriculum and materials, already approved by the Monitors, available to you pursuant to a protective order.

**Request No. 30**:  Current curriculum, training materials, and testing materials on De-escalation & Verbal Resolution.

**Response to Request No. 30**:  Objection.  This request is premature as the Monitors have yet to find the Department substantially compliant with any Paragraphs of the Agreement related to De-escalation and Verbal Resolution Training.  In addition, this request is vague and ambiguous as Plaintiffs' counsel has not identified any Paragraphs of the Agreement that correspond to this request.  This request is burdensome as it is duplicative of Plaintiffs' Request No. 28.

This request also seeks training documents which are protected from disclosure under the official information privilege, as the disclosure of the requested material could pose a serious risk to the personal safety of Department members and/or inmates.

**Request No. 31**:  Any documentation that indicates that the aforementioned trainings were conducted (including, but not limited, dated sign-in sheets, pre and post-tests of officers and deputies).  *See id.* §§ 4.6-4.10.

**Response to Request No. 31**:  Objection.  This request is premature as the Monitors have yet to find the Department substantially compliant with Paragraphs 4.6-4.9 of the Agreement. In addition, pursuant to the Monitors' Second Report, Paragraph 4.10 is moot because it is covered by the settlement agreement in the DOJ case and is being monitored under that agreement.

Stephen Turanchik
Peter Eliasberg
Eric Balaban
**June 5, 2017**
Page 20

It seems the objective of Plaintiffs' request is to ensure that Department members are receiving training as required by Paragraphs 4.6 through 4.9. Your request is equivalent to the documents required in the Compliance Measures, as the Compliance Measures require the Monitors to assess whether a certain percentage of Department members completed the training, which serve the purpose of these Paragraphs. As such, the Department is agreeable to making the documents produced to the Monitors available to Plaintiffs' counsel for inspection to evaluate compliance, pursuant to a protective order, following the Monitors finding that the Department is substantially compliant with Paragraphs 4.6-4.9.

**Request No. 32**:  Curricula and training materials for Sergeants on conducting use of force investigations, including the course outline entitled "Supervisor Orientation on use of Force Investigations and Documentation," the related PowerPoint training materials, and any other materials that were provided to the Panel in relation to these provisions. *See id.* § 12.1.

**Response to Request No. 32**: Objection. This request is premature as the Monitors have yet to find the Department substantially compliant with Paragraph 12.1 of the Agreement.

This request also seeks training documents which are protected from disclosure under the official information privilege, as the disclosure of the requested material could pose a serious risk to the personal safety of Department members and/or inmates.

Without waiving the foregoing objections, the Department has offered to make the current curriculum and materials, already approved by the Monitors, available to you pursuant to a protective order.

## VI.   DOCUMENT REQUESTS RELATED TO INMATE GRIEVANCE SYSTEM.

**Request No. 33**:  Any documentation supporting the decision to eliminate the need for a centralized unit with sworn personnel, custody assistants, and civilian personnel that is in charge of collecting and reviewing inmate grievances. *See id.* § 6.16: DE 141 at 9-10.

**Response to Request No. 33**: Objection. This request is premature as the Monitors have yet to find the Department substantially compliant with Paragraph 6.16 of the Agreement.

In addition, this request is outside the scope of Paragraph 6.16. The Compliance Measure does not obligate the Department to provide Plaintiffs with the requested documents. As such, Plaintiffs' request is irrelevant to the Paragraph and Compliance Measure.

Stephen Turanchik
Peter Eliasberg
Eric Balaban
**June 5, 2017**
Page 21

Moreover, the decision to eliminate the need for a centralized command to oversee the handling of inmate grievances, and to co-locate grievance personnel in TTCF, CRDF and Pitchess Detention Center, was reviewed and tentatively approved by the Monitors.

**Request No. 34**:   A log of all inmate grievances filed January 1, 2017 to March 31, 2017, including grievances filed against staff.

i.  After reviewing the log of inmate grievances, the plaintiffs may request additional information and documentation relating to the inmate grievance system including, but not limited to, the following:

1.  All receipts of inmate grievances provided to the filer from January 1, 2017 to March 31, 2017.

2.  All documentation pertaining to the Department's adjudication of inmate grievances, and notification of the filer of the grievance status/disposition. This shall include responses to inmate grievances (including any denials or actions undertaken in response to grievances), investigations and hearing conducted in response to inmate grievances, and any evaluations/reviews of investigations conducted.

3.  Any documented reasons why an inmate did not receive a response to his/her grievance within 15 days.  *See id.* § 6.19.

4.  All appeals filed January 1, 2017 to March 31, 2017, any documentation indicating whether the appeal was accepted or rejected, and (for any rejected appeals) documented proof that the inmate was not housed in punitive segregation when s/he received the denial.  *See id.* § 6.20.

5.  Copy of relevant pages of living unit log indicating when grievances are collected, and copy of grievance collection log maintained by the Inmate Grievance Coordinator, which documents the reason for each grievance and whether the grievance was submitted as an emergency grievance.  *See id.* § 6.10.

6.  Any documented reviews by the Inmate Grievance Coordinator of emergency grievances.  *See id.* § 6.9.

7.  Any corrective action taken against any Department member who is found to have engaged in the conduct prohibited in *See id.* § 6.11

Stephen Turanchik
Peter Eliasberg
Eric Balaban
**June 5, 2017**
Page 22

8. All documentation pertaining to Conflict Resolution Meetings (requests and documentation from the meeting). *See id.* § 7.1.

**<u>Response to Request No. 34</u>**: Objection. This request is premature as the Monitors have yet to find the Department substantially compliant with any Paragraphs of the Agreement related to inmate grievances.

As phrased, this request is vague, ambiguous, compound, and requests documents beyond the scope of the Agreement and is therefore irrelevant and burdensome. Plaintiffs' request does not identify any Paragraphs of the Agreement that require the Department to create a log as requested by Plaintiffs. Moreover, the Department is unaware of any Paragraph that requires the Department to create the requested log, and such request is burdensome as it goes beyond the Compliance Measures set forth by the Monitors.

Plaintiffs' request states that "the plaintiffs may request additional information and documentation relating to the inmate grievance system…" While the Agreement allows for the Monitors to select and review specific grievances, the Agreement does not grant Plaintiffs the same authority. As such, Plaintiffs' request is burdensome and improper as it is unequivocally outside the scope of this Paragraph and the corresponding Compliance Measures.

This request is also burdensome as Plaintiff requests ALL grievances and ALL documents in response to the grievances. As stated in our March 15, 2017 correspondence, complying with this request is extremely burdensome as the number of grievances received by the facilities is voluminous. For example, there were 1,181 inmate grievances filed in the Fourth Quarter, 2016 at Men's Central Jail, Twin Towers Correctional Facility, and the Inmate Reception Center.

The purpose of the Paragraphs related to grievances is to ensure that inmate grievances are properly addressed, and the Compliance Measures set forth by the Monitors serve this purpose. Therefore, any requests by Plaintiffs for all grievances and/or documents related thereto are burdensome and irrelevant as it fails to meet the purpose of the Paragraphs and the documents requested go beyond the scope of the Agreement. The Compliance Measures set forth by the Monitors are a statistically valid sample of all grievances, without creating the burden of collecting ALL the incident reports. As such, the Department is agreeable to making the documents produced to the Monitors available to Plaintiffs' counsel for inspection to evaluate compliance, with limited redactions, pursuant to a protective order, following the Monitors finding that the Department is substantially compliant with Paragraphs related to grievances.

Stephen Turanchik
Peter Eliasberg
Eric Balaban
**June 5, 2017**
Page 23

## VII.    <u>DOCUMENTS PROVIDED TO MONITORING TEAM.</u>

**Request No. 35**:  To the extent not covered by the above-listed requests, any other documents provided to the monitoring team.

**Response to Request No. 35**:  Objection. This request is premature as the Monitors have yet to find the Department substantially compliant with the Agreement.

Again, the Department is agreeable to making available to Plaintiffs' counsel any documents produced to the Monitors, with limited redactions, pursuant to a protective order, following the Monitors finding that the Department is compliant with the Agreement.

Should you believe documents beyond what the Monitors require is necessary, we are open to meet and confer with you to obviate the need for law and motion.  However, as previously stated, we believe a discussion following the Monitors next report will allow for a more productive discussion.

As always, please do not hesitate to contact me should you have any questions or comments.

Very truly yours,

MARY C. WICKHAM
County Counsel

By

KAREN JOYNT
Senior Deputy County Counsel
Law Enforcement Services Division

AMIE S. PARK
Senior Associate County Counsel
Law Enforcement Services Division

KJ/ASP
Enclosures
cc:  Richard Drooyan
       Jeffrey Schwartz
       Robert Houston