Jeremy D. Matz - State Bar No. 199401
    jmatz@birdmarella.com
Kimberley M. Miller - State Bar No. 260280
    kmiller@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Mary C. Wickham – State Bar No. 145664
    mwickham@counsel.lacounty.gov
Rodrigo A. Castro-Silva – State Bar No. 185251
    rcastro-silva@counsel.lacounty.gov
Amie S. Park – State Bar No. 273346
    apark@counsel.lacounty.gov
OFFICE OF THE COUNTY COUNSEL
Kenneth Hahn Hall of Administration
500 West Temple Street, #648
Los Angeles, California 90012-2713
Telephone: (213) 974-1804 ·
Facsimile: (213) 626-7446

Attorneys for Defendant
Los Angeles County
Sheriff Jim McDonnell

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ALEX ROSAS and JONATHAN GOODWIN on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>    vs.<br><br>JIM MCDONNELL, Sheriff of Los Angeles County, in his official capacity,<br><br>    Defendant. | CASE NO. CV 12-00428 DDP (MRW)<br><br>**DEFENDANT JIM McDONNELL'S OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT AGREEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**[DECLARATIONS FILED CONCURRENTLY]**<br><br>Hearing: March 12, 2018, at 10:00 a.m.<br>Crtrm.: 9c<br><br>Assigned to Hon. Dean D. Pregerson |

3469598.1

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT AGREEMENT

Defendant Los Angeles County Sheriff Jim McDonnell, in his official capacity, and by and through his attorneys of record, the Los Angeles County Counsel and the law firm of Bird Marella Boxer Wolpert Nessim Drooks Lincenberg & Rhow, P.C., hereby respectfully submits his Opposition to Plaintiffs' Motion to Enforce Settlement Agreement (the "Motion").

This Opposition is based on the accompanying Memorandum of Points and Authorities, the accompanying Declarations, all files and records of this case, and any further evidence and argument that may be presented to the Court at the hearing on the Motion.

DATED:  February 16, 2018        Respectfully submitted,

Jeremy D. Matz
Kimberley M. Miller
Bird, Marella, Boxer, Wolpert, Nessim, Drooks, Lincenberg & Rhow, P.C.

By:      */s/ Jeremy D. Matz*
                Jeremy D. Matz
        Attorneys for Los Angeles County Sheriff Jim McDonnell

**TABLE OF CONTENTS**

Page

MEMORANDUM OF POINTS AND AUTHORITIES.............................................1

I.      INTRODUCTION .....................................................................................1

II.     FACTS.......................................................................................................2

        A.      The 2014 Settlement Agreement And The Panel's Central Role In Monitoring The Sheriff's Department's Compliance With The Action Plan..................................................................................................2

        B.      Class Counsel's First Demand For Documents .....................................3

        C.      The Discovery Negotiations, Class Counsel's Second Demand For Documents, And Class Counsel's Discovery Motion......................3

        D.      The Protective Order Proposed By The Sheriff's Department As A Resolution Of The Discovery Negotiations ........................................4

        E.      The Protective Order Counter-Proposed By Class Counsel ...................6

III.    ARGUMENT .............................................................................................7

        A.      Class Counsel's Discovery Demands Should Be Denied......................7

                1.      Class Counsel's Discovery Demands Are Unreasonable In Scope And Nature..........................................................................7

                        a.      The Framework And Operation Of The Action Plan And The Compliance Measures .........................................8

                        b.      Class Counsel's Discovery Demands Are Unreasonable Because They Stray Far Outside The Scope Of The Action Plan, They Require Far More Information Than The Panel Has Ever Sought Or Deemed Necessary In Order To Fully Evaluate The Department's Compliance, And They Would Not Assist Class Counsel In Evaluating the Department's Compliance...............................................11

                2.      Class Counsel's Discovery Demands Would Impose Undue Burdens On The Sheriff's Department ..........................14

                3.      Class Counsel's Discovery Demands Are Overbroad...............18

                4.      Some Documents Demanded By Class Counsel Are Privileged ..................................................................................21

        B.      Alternatively, The Court Should Enter The Protective Order Proposed By The Sheriff's Department As A Fair And Reasonable Resolution Of The Discovery Dispute ...........................24

IV.     CONCLUSION ........................................................................................25

3469598.1

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Ex Parte Application of Mentor Graphics Corp.*,
2017 WL 55875 (N.D. Cal. Jan. 4, 2017) ..............................................................15

*Gilead Scis., Inc. v. Merck & Co, Inc.*,
2016 WL 146574 (N.D. Cal. Jan. 13, 2016) .........................................................15

*Kelly v. City of San Jose*,
114 F.R.D. 653 (N.D. Cal. 1987) .............................................................15, 16, 24

*Kerr v. United States Dist. Ct. for N.D. Cal.*,
48 L.Ed.2d 725 (1976)..............................................................................................21

*Pellerin v. Wagner*,
2016 WL 950792 (D. Ariz. Mar. 4, 2016) ............................................................15

*Sanchez v. City of Santa Ana*,
936 F.2d 1027 (9th Cir. 1990)................................................................................22

*Soto v. City of Concord*,
162 F.R.D. 603 (N.D. Cal. 1995) .............................................................15, 16, 22

*U.S. v. I.B.M. Corp.*,
83 F.R.D. 97 (S.D.N.Y. 1979)................................................................................15

*Zaustinsky v. University of Cal.*,
782 F.2d 1055 (9th Cir.1985)................................................................................22

**Other Authorities**

Federal Rule of Civil Procedure 26 .........................................................................15

Federal Rule of Civil Procedure 45 .........................................................................15

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT AGREEMENT

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Since the fall of 2014, when the parties reached a Settlement Agreement to resolve this case, the Los Angeles County Sheriff's Department ("the Department") has made meaningful and significant progress toward the ultimate goal that both parties share: to achieve substantial compliance with the provisions of the Settlement Agreement and the Action Plan instituted as part of it. The Department has committed major resources toward achieving this goal, and wants and intends to continue doing so.

But if it is granted, Plaintiffs' Motion to Enforce Settlement Agreement threatens to derail that progress, because it would obligate the Department to search for, review, and produce massive quantities of documents that (1) are outside the scope of the Settlement Agreement, (2) are outside the scope of the Action Plan implemented to enforce the Department's compliance with the Settlement Agreement, and (3) have never been requested or deemed necessary for review by the independent Panel of experts designated to monitor the Department's compliance with that Action Plan. For this reason and others, the discovery demands made by Class Counsel (the attorneys for Plaintiffs) are fundamentally unreasonable, and it would be inordinately burdensome for the Department to comply with them. Mandating the Department's compliance with such far-reaching discovery demands would divert critical resources – personnel hours and money – away from the most important objective, which is to comply fully and faithfully with the Action Plan.

The Department fully recognizes that it has an obligation under the Settlement Agreement to give Class Counsel reasonable access to documents for inspection to evaluate compliance with the Action Plan. In no way does the Department attempt to shirk that obligation. To the contrary: just last month, in a good-faith effort to

3469598.1

1

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT AGREEMENT

resolve the parties' discovery dispute, the Department offered a protective order that would have given Class Counsel more than what is required under the Settlement Agreement, including near-total off-site access to essentially the same documents and video that the Panel has received and will continue to receive.  As part of that protective order, the Department sought reasonable protections for the rights and privacy interests of its employees, including its Deputy Sheriffs.

But Class Counsel's counter-proposal eliminated those protections to such an extreme degree that it is unreasonable, inconsistent with the Settlement Agreement, and unacceptable to the Department.  For that reason, the Department is compelled to file this Opposition.  The Department respectfully requests that the Court deny the Motion in its entirety.

Alternatively, the Department would not oppose the Court's entry of the Department's proposed Protective Order, attached as Exhibit A to the Declaration of Jeremy D. Matz, as an eminently reasonable, practical, and generous solution to the parties' discovery dispute.

## II.

## FACTS

**A.    The 2014 Settlement Agreement And The Panel's Central Role In Monitoring The Sheriff's Department's Compliance With The Action Plan**

In September 2014, Plaintiffs entered into a Settlement Agreement with the Department to resolve the instant lawsuit alleging excessive force in the downtown Los Angeles County jails (the "Jail Complex").  (Joint Motion for Settlement [Dkt. No. 110], Ex. A.)  The centerpiece of the Settlement Agreement was the appointment of a Panel of three Monitors who would develop, implement, and monitor the Department's compliance with an Action Plan (also known as an Implementation Plan) designed to ensure that no inmates in the Jail Complex would be subjected to excessive force.  (*Id*. at § 2.)  By entering into the Settlement Agreement, Plaintiffs and Class Counsel approved the appointment of the Panel, the

specific identities of the three Monitors (including one selected by Class Counsel), and the scope of the Panel's duties, including the Panel's lead role in assessing and reporting on the Department's compliance with the Action Plan.  (*Id.*)

The Settlement Agreement also grants Class Counsel access to the Jail Complex, including to inspect documents, but it imposes at least two important limitations on that access.  (*Id*. at § VI.)  First, the access must be "reasonable," and second, its purpose may only be "for inspection to evaluate compliance with the Action Plan."  (*Id*.)  The Department has the right to object, whether on privilege grounds or any other ground, to any document request made by Class Counsel.  (*Id*.)

**B.     Class Counsel's First Demand For Documents**

Apparently ignoring the requirement that their access to documents be "reasonable" and at the Jail Complex, Class Counsel in July 2016 made over 100 separate document demands on the Department, grouped into six broad categories encompassing wide-ranging aspects of the Department's operations.  *See* Decl. Sam Puathasnanon ("SP Decl.") filed in support of Plaintiffs' Motion, Ex. D.)  Class Counsel purported to base these document demands on specified provisions of the Action Plan, but the number and scope of the demands far exceeded anything that the Panel had requested (and received) to monitor the Department's compliance with those same Action Plan provisions.  (*Id*.)

A few weeks later, on multiple grounds – including overbreadth, burdensomeness, privilege, and a fundamental objection to Class Counsel's apparent effort to assume for themselves a *de facto* role as a fourth Panel Monitor, which was never contemplated by or agreed to in the Settlement Agreement – the Department declined to produce most of the documents demanded by Class Counsel.  (SP Decl., Ex. E.)

**C.     The Discovery Negotiations, Class Counsel's Second Demand For Documents, And Class Counsel's Discovery Motion**

Over the course of the following year, in an effort to resolve the dispute, the

3469598.1

3

parties discussed Class Counsel's demands and the Department's objections. Even after reductions made by Class Counsel in December 2016, their document demands still numbered more than 50, and still covered the same six broad categories. (SP Decl., Ex. F.) The parties met and conferred and the Department sent further meet-and-confer correspondence to Class Counsel on March 15, 2017. (Matz Decl., Ex. C.) In June 2017, the Department again declined to produce most of the demanded documents, while noting that it had produced official Department policies and invited Class Counsel to attend relevant training courses. (SP Decl., Ex. H.) The Department sent a 22-page letter to Class Counsel, responding separately to every one of Class Counsel's still-extant discovery demands, explaining why they were overbroad, burdensome, unreasonable, and/or privileged, and setting forth specific examples of those objections. (*Id.*)

Instead of responding to the Department's June 2017 letter, or offering to modify, reduce, or limit any of their document demands in any way (even to address the legitimate concerns specifically noted by the Department), Class Counsel then filed the Motion in September 2017. Although styled as a purported motion "to enforce the settlement agreement," in reality the motion is a basic discovery motion. Class Counsel do not claim or seek any Court finding that the Department has breached, or is in contempt of, the Settlement Agreement.

**D.  The Protective Order Proposed By The Sheriff's Department As A Resolution Of The Discovery Negotiations**

After Class Counsel filed the Motion, the Department took the lead in spearheading further negotiations in an effort to resolve the dispute without litigation or the need for the Court's intervention. Specifically, the Department proposed a framework that would generally give Class Counsel access to all documents produced (both retrospectively and prospectively) to the Panel as defined by the Monitoring Plan and Compliance Measures instituted by the Panel to assess the Department's compliance. (Matz Decl., Ex. A.) The great majority of those

3469598.1

4

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT AGREEMENT

documents would be made available to Class Counsel on-line in the comfort and convenience of their own offices, notwithstanding the Settlement Agreement's provision that Class Counsel's "reasonable access" is to "the Jail Complex in downtown Los Angeles, including without limitation staff, inmates, and documents, for inspection[.]"  (Joint Motion for Settlement [Dkt. No. 110], Ex. A, § VI.)  This provision makes clear that Class Counsel's review of documents must be in-person at the Department's facilities, but the Department agreed nonetheless to make the documents available to Class Counsel on-line for off-site review.  (*See*, *e.g.*, Matz Decl., Ex. A at § V(A)(2).)  Under the Department's proposal, Class Counsel would have to review only one type of document (known as a Force Synopsis) in a location other than their own offices, and even then, they would not have to actually visit the Jail Complex, but rather could review that document at the offices of one of the Panel Monitors.  (*Id*. at § V(A)(1).)  Class Counsel's only necessary visits to the Jail Complex would be to watch unredacted video of use-of-force incidents; Class Counsel could watch redacted footage of the same incidents in their offices upon paying for reasonable redactions of the footage intended to protect the privacy rights of Department personnel.  (*Id*. at § V(A)(4).)

In return for granting Class Counsel near-total off-site access to essentially the same documents and video that the Panel receives, the Department merely sought reasonable measures designed to protect the legitimate rights and privacy interests of its deputies: the right to redact documents of Department employees' personal identifying information; limitations on how many and which Class Counsel attorneys and employees could review the discovery at any given time; and limitations on how the discovery could be used by Class Counsel.  (*Id*. at § V(B)-(E).)  The Department incorporated this complete proposal into a Stipulated Protective Order that was sent to Class Counsel on January 22, 2018 for review. (Matz Decl., Ex. A.)

**E.      The Protective Order Counter-Proposed By Class Counsel**

On February 9, 2018, Class Counsel counter-proposed a version of the Stipulated Protective Order that eviscerated virtually all of the protections for the Department.  (Matz Decl., Ex. B.)  Gone was the Department's right to make any redactions to documents, even to redact Department employees' personal identifying information.  Gone was the Department's right to limit access to the discovery to a certain number of individuals at any given time.  In response to the Department's condition that Class Counsel not download, copy, or email the discovery produced to them on-line, Class Counsel insisted on the right to do so to communicate with each other, to communicate with the Panel, and "to file relevant documents with the Court in this litigation pursuant to the procedures described elsewhere in [Class Counsel's version of the] Protective Order," which procedures Class Counsel never actually described anywhere in their version.  (*Id*. at § (V)(A)(1).)  Class Counsel even refused to expressly agree not to disseminate the discovery in newspapers, press releases, and other publications, instead merely reverting to the Settlement Agreement's stipulation that any discovery obtained by Class Counsel be used solely for purposes of the instant case and not in any other action for any purpose. (*Id*. at § (V)(D).)  Furthermore, according to Class Counsel's counter-proposal, the significant quantity of documents and video they would receive (which would be essentially identical to what the Panel has received and will receive) would be only the beginning; they would have an unlimited ability to request additional documents and, presumably, to move to compel the Department to produce those additional documents as well.  (*Id*. at § (V)(A)(3).)

With regard to video footage, Class Counsel demanded access in their own offices to all unredacted video footage produced to the Panel, and further demanded that the Department permit them to watch at a Department facility any other video footage they might request – unredacted – even if the Panel never requested or received such other video footage.  (*Id*. at § (V)(A)(2).)  Moreover, whereas the

Department's proposal would presumptively treat all discovery produced to Class Counsel as confidential (thereby entitling it to the protections of the Stipulated Protective Order), Class Counsel's version would require the Department to mark every single document as "CONFIDENTIAL," and only documents so marked would receive any protections.  (*Id*. at § (V)(D).)  Other than the Settlement Agreement's basic (and limited) stipulation that discovery produced to Class Counsel not be used in any other action for any purpose, there would be no restrictions or limitations whatsoever on Class Counsel's ability to use documents not marked as "CONFIDENTIAL" in filings in this case or otherwise.  (*Id*.)

## III.

## ARGUMENT

**A.    Class Counsel's Discovery Demands Should Be Denied**

**1.    Class Counsel's Discovery Demands Are Unreasonable In Scope And Nature**

Section VI of the Settlement Agreement, entitled "INSPECTION BY CLASS COUNSEL", states in relevant part:

> "On reasonable notice, Class Counsel will have reasonable access to the Jail Complex in downtown Los Angeles, including without limitation staff, inmates, and documents, for inspection to evaluate compliance with the Action Plan."

(Joint Motion for Settlement [Dkt. No. 110], Ex. A, § VI.)

The Settlement Agreement is clear that the Department's only obligation is to provide Class Counsel with "reasonable access **to the Jail Complex in downtown Los Angeles**" for "**inspection to evaluate compliance**" (emphasis added).  (*Id*.) Class Counsel's demands far exceed the documents required by the Action Plan and the Compliance Measures that were carefully drafted by the Panel, who are undeniably established experts in issues relating to correctional systems.  As such, Class Counsel's demands are outside the scope of the Settlement Agreement, unreasonable, burdensome, and in violation of privileges and the privacy rights of Department personnel.

Notwithstanding all of this, the Department on June 5, 2017 offered to make available to Class Counsel all documents provided to the Panel pursuant to the Action Plan and the Compliance Measures.  (PS Decl., Ex. H at 2.)  The Department further agreed to meet and confer should Class Counsel have a reasonable interest in reviewing documents beyond those required by the Compliance Measures, after Class Counsel's inspection of the documents made available.  (*Id*.)  The Department essentially reiterated this offer in its January 22, 2018 proposed protective order.  (Matz Decl., Ex. A.)  But Class Counsel rejected this offer on both occasions, and continue to demand massive amounts of documents and videos far beyond what the Panel has ever sought or received.  (*Id*., Ex. B.)

### a.    The Framework And Operation Of The Action Plan And The Compliance Measures

The Action Plan adopted by the Panel is divided into twenty-one sections that cover discrete categories of Department operations that implicate potential force used against inmates in the Jail Complex.  (Action Plan [Dkt. No. 133-2].)  For example, Section 1 covers Leadership, Administration and Management; Section 2 covers Use of Force Policies and Practices; and Section 6 covers Inmate Grievances and Other Complaints of Excessive Force.  (*Id*.)  Each section contains several substantive provisions, which collectively comprise the requirements imposed by the Action Plan on the Department relating to the area covered by the corresponding section.  Hence, Section 1 contains four substantive provisions (1.1 through 1.4) relating to Leadership, Administration and Management; Section 2 contains thirteen substantive provisions (2.1 through 2.13) relating to Use of Force Policies and Practices; and Section 6 contains twenty substantive provisions (6.1 through 6.20) relating to Inmate Grievances and Other Complaints of Excessive Force.  (*Id*.) There are a total of 106 substantive provisions across the twenty-one sections in the Action Plan.  (*Id*.)

In turn, the Panel has adopted a detailed, comprehensive, 108-page

3469598.1

8

Monitoring Plan and Compliance Measures, which defines how the Department must demonstrate – and how the Panel will assess and determine – the Department's compliance with each and every one of the 106 substantive provisions of the Action Plan. (SP Decl., Ex. A; Declaration of Daniel J. Dyer ("Dyer Decl."), ¶ 4.) Three examples demonstrate how these Compliance Measures work.

First, Substantive Provision 1.1 within Section 1 of the Action Plan states that:

> Custody Operations should continue to be headed by an Assistant Sheriff with no areas of responsibility other than Custody Operations.

(SP Decl., Ex. A at 3.)

In order to assess the Department's compliance with Substantive Provision 1.1, the Panel has instituted a simple and straightforward Compliance Measure. Specifically, as defined by the Panel, compliance with Substantive Provision 1.1 "requires Custody Operations to be headed by an Assistant Sheriff with no areas of responsibility other than Custody Operations beginning on July 1, 2015, for the duration of the Compliance Periods in the Settlement Agreement." (*Id*.)

Second, Substantive Provision 2.2 within Section 2 of the Action Plan states that:

> The Department's Custody use of force policies should provide that force used by Department members: (a) must be used as a last resort; (b) must be the minimal amount of force that is necessary and objectively reasonable to overcome the resistance; (c) must be terminated as soon as possible consistent with maintaining control of the situation; and (d) must be de-escalated if resistance decreases.

(SP Decl., Ex. A at 8.)

In order to assess the Department's compliance with Substantive Provision 2.2, the Panel has instituted a six-part Compliance Measure. (*Id*.) Part Five states that on a quarterly basis, the Panel will select and review 25 completed force packages from 25 incidents involving the use of force (while reserving the right to select and review more than that). (*Id*.) Part Six defines compliance with

3469598.1

9

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT AGREEMENT

Substantive Provision 2.2 to be achieved when "90% of the force packages [reviewed by the Panel] reflect consideration of the Force Prevention Principles of [Substantive Provision 2.2] in the Unit Commander's review." (*Id.*)

Third, the Compliance Measures instituted under Substantive Provisions 6.4 and 6.5 within Section 6 of the Action Plan collectively require the Department to provide the Panel on a quarterly basis with inmate grievances against staff at the Jail Complex that involve claims of use of force, retaliation, or harassment – but not *all* inmate grievances involving any or all subjects whatsoever. (*Id.* at 42-43.) Compliance is achieved when specified criteria are met, including that 90% of grievances involving use of force, retaliation, or harassment are brought to the attention of a Unit Commander within 10 days of receipt and are properly handled consistent with Department policy. (*Id.*)

In summary, the Panel Monitors, who are all nationally recognized experts in prison excessive force issues – including the Monitor selected by Class Counsel – devoted significant time, effort, and analysis to crafting the Action Plan and the Compliance Measures to evaluate the Department's compliance therewith. The Compliance Measures reflect the Panel's considered and well-informed judgment about what kinds and quantities of documents are necessary to best assess the Department's compliance.[1]

---

[1]   The Department understands that the Panel has nearly completed a set of Revised Compliance Measures in order to improve and streamline the Panel's evaluation of the Department's compliance with the Action Plan. It is possible that some of the Revised Compliance Measures may differ from one or more of the corresponding existing Compliance Measures discussed in this Opposition. If that occurs, the Department believes that any changes will be immaterial to the points made in this Opposition. Subject to the Department's review of the Panel's final version of the Revised Compliance Measures, the Department supports the Revised Compliance Measures and fully intends to abide by them when they are implemented.

3469598.1

10

**b.** **Class Counsel's Discovery Demands Are Unreasonable Because They Stray Far Outside The Scope Of The Action Plan, They Require Far More Information Than The Panel Has Ever Sought Or Deemed Necessary In Order To Fully Evaluate The Department's Compliance, And They Would Not Assist Class Counsel In Evaluating the Department's Compliance**

Class Counsel claim that their discovery demands are reasonable because, supposedly, they are "tailored to their authorized purpose under [the Settlement Agreement]: evaluating Defendant's compliance with the Action Plan." (Mot. at 9-10.) That is emphatically not the case, as the three examples above demonstrate.

First, with regard to Substantive Provision 1.1, Class Counsel demand "[a]ny documentation indicating the Assistant Sheriff's involvement in any investigations or hearings of staff or prisoners." (SP Decl., Ex. H at 6.) This documentation, say Class Counsel, is necessary in order to assess whether "Custody Operations [are] headed by an Assistant Sheriff with no [other] areas of responsibility" as required by Substantive Provision 1.1. Class Counsel are wrong. Whether or not the Assistant Sheriff is involved in any particular "investigations or hearings of [sic] staff or prisoners" says very little if anything about whether he is in charge of Custody Operations and has no other areas of responsibility, as required by Substantive Provision 1.1. (Mot. at 14.) That Substantive Provision plainly does not require the Assistant Sheriff to be involved in any particular investigations or hearings, and nothing about the Department's policies cited by Class Counsel says otherwise. (*Id*.) Quite obviously, the Assistant Sheriff could be – and in fact is – fully in charge of Custody Operations, without any other responsibilities, regardless of whether he gets involved with any "investigations or hearings." Thus, because the documents demanded by Class Counsel have basically nothing to do with the Substantive Provision they cite, their demand is unreasonable.

Second, with regard to Substantive Provision 2.2, Class Counsel demand "a log of all force packages for each force incident occurring [during a three-month period]," and they purport to decree exactly what kind of detail and contents each

3469598.1
11
DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT AGREEMENT

force package must include.  (PS Decl., Ex. F at 5-6.)  Class Counsel further declare that "[f]rom this log, Plaintiffs will choose a sufficient number of force packages to review."  (*Id.*)  Class Counsel purport to mandate that "[t]he chosen force packages must then be produced [by the Department] to Plaintiffs."  (*Id.*)  In other words, if the Court were to grant the Motion insofar as Substantive Provision 2.2 is concerned, the Department would have to produce any and all force packages demanded by Class Counsel within the specified time period and without any limitation whatsoever, because Class Counsel would have sole discretion to decide how many and which force packages are "sufficient."

This is a massive and unreasonable divergence from the type of documentation deemed necessary and sufficient by the Panel to assess the Department's compliance with Substantive Provision 2.2.  In the applicable Compliance Measure, the Panel decided to select and review 25 completed force packages per quarter (although the Panel can demand to review more if it deems it necessary).  (PS Decl., Ex. A at 8.)  The Panel carefully considers which 25 force packages to select for its review, focusing on those it believes are most relevant to the spirit and purpose of the Settlement Agreement, including packages that involve significant uses of force.  (*Id.*)  In order to demonstrate overall compliance with Substantive Provision 2.2, the Department must prove that at least 90% of those force packages reflect consideration of the principles embodied in that Substantive Provision.  (*Id.*)  This exceedingly high minimum pass rate, combined with the Panel's unfettered prerogative to receive more than the 25 force packages initially selected, should give the Court complete confidence that the Department is unquestionably in compliance if the Panel so determines.  But this is apparently insufficient for Class Counsel; they want the Court to give them the power to demand and receive an unlimited number of additional force packages for the specified calendar quarter, which would not even necessarily have to include a single force package from among the 25 force packages received and analyzed by

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT AGREEMENT

the Panel for the very same quarter.  Class Counsel's demand is inherently unreasonable, and the Court should not grant it.

Third, with regard to Substantive Provisions 6.4 and 6.5, Class Counsel demand "a log of *all* inmate grievances filed [for a specified three-month period], including grievances filed against staff" (emphasis added), and Class Counsel further reserve for themselves the right to request an enormous amount of additional information and documentation relating to the inmate grievance system, after they review the log that they demand.  (PS Decl., Ex. F at 11.)  This additional information encompasses "all documentation pertaining to the Department's adjudication of inmate grievances," "any documented reasons why an inmate did not receive a response to his/her grievance within 15 days," "any documented reviews by the Inmate Grievance Coordinator of emergency grievances," and much, much more.  (*Id*.)  Even more onerous is the fact that the log demanded by Class Counsel must include every single inmate grievance made during the specified quarter, regardless of the subject matter of the grievance.  (*Id*.)  If an inmate complained about something totally unrelated to use of force, retaliation, or harassment – including something completely outside the very scope of the instant case – that complaint would still have to be included on the log demanded by Class Counsel, and Class Counsel would still have the right to request follow-up information about that irrelevant grievance.

No provision anywhere in the Settlement Agreement or in the Action Plan requires the Department to create the type of log demanded by Class Counsel. Moreover, and in contrast, the Panel's definition of what kinds and quantity of documents are relevant and sufficient to measure the Department's compliance is completely different from Class Counsel's untethered demands.  According to the Panel's existing Compliance Measures for Substantive Provisions 6.4 and 6.5, the Department must provide the Panel with all inmate grievances involving use of force, retaliation, or harassment – *i.e*., only the kinds of conduct relevant to this case

– and if 90% of *those* grievances are brought to the attention of a Unit Commander within 10 days of receipt and are properly handled consistent with Department policy (and if other criteria are also met), then the Department is in compliance.[2] (PS Decl., Ex. A at 42-43.)  In sum: where the Panel carefully drafted a reasonable set of document requests and compliance assessment methodology with regard to Substantive Provisions 6.4 and 6.5, Class Counsel's document demands with regard to the same Substantive Provisions are fundamentally **un**reasonable, and Class Counsel does not even attempt to define or explain any methodology for how they would supposedly assess the Department's compliance.

The three examples discussed above are representative of the virtually unlimited and untethered scope of Class Counsel's demands, but by no means are they the only such instances.  There are many more such examples throughout Class Counsel's discovery correspondence.  The overriding conclusion is that Class Counsel's discovery demands are fundamentally unreasonable.  Therefore, the Department respectfully requests that the Court deny the Motion in its entirety.

### 2.    Class Counsel's Discovery Demands Would Impose Undue Burdens On The Sheriff's Department

By their Motion, Class Counsel seek a Court order compelling the Department to search for, create, collect, review, and produce voluminous records that far exceed anything the Panel has asked for or has determined is necessary to evaluate the Department's compliance with the Action Plan.  A Court order

---

[2]    The Department understands that with regard to Substantive Provisions 6.4 and 6.5, the Revised Compliance Measures that the Panel will likely soon implement will be even more precisely and narrowly tailored than the existing Compliance Measures for those same Substantive Provisions.  Whereas the existing Compliance Measures require the Department to provide the Panel with *all* inmate grievances involving use of force, retaliation, or harassment, under the Revised Compliance Measures the Panel will randomly select and review up to 25 such grievances.  The same minimum 90% pass rate will continue to apply.

3469598.1

14

mandating that the Department produce the documents demanded by Class Counsel would drastically interfere with the Department's ability to comply with the Settlement Agreement, by, among other things, (a) diverting significant resources away from compliance with *Rosas*, and reallocating those resources to gathering and producing documents to Class Counsel; and (b) delaying the submission of compliance reports to the Panel.  This would seriously hinder the parties' mutual goal of achieving compliance with the terms of the Settlement Agreement.  (Dyer Decl., ¶ 16.)

Federal Rule of Civil Procedure 26 clearly defines the scope of permissible discovery in this action: the records sought by Class Counsel must be relevant and proportional to the needs of the case, considering, among other things, "whether the burden or expense of the proposed discovery outweighs its likely benefit." *Pellerin v. Wagner*, No. 2:14-cv-02318 JWS, 2016 WL 950792, at *5 (D. Ariz. Mar. 4, 2016) (internal quotation marks omitted); *see* also Fed. R. Civ. P. 26(b)(1); *Gilead Scis., Inc. v. Merck & Co, Inc.*, 5:13-CV-04057-BLF, 2016 WL 146574, at *1 (N.D. Cal. Jan. 13, 2016) (denying motion to compel where discovery sought was disproportionate to the needs of the case given low probative value, cost to producing party and potential delay).[3]

A party seeking to compel discovery (like Class Counsel) bears the initial burden of persuading the Court that their request satisfies the relevance requirement of Rule 26.  Class Counsel ask the Court to apply a less-demanding relevancy standard to their requests under *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995), *Kelly v. City of San Jose*, 114 F.R.D. 653, 667-68 (N.D. Cal. 1987) and

---

[3]   Class Counsel's reliance on the factors enumerated in *In re Ex Parte Application of Mentor Graphics Corp.*, No. 16-mc-80037-HRL, 2017 WL 55875, at *3 (N.D. Cal. Jan. 4, 2017) is misplaced.  Those factors are abstracted from case law analyzing the reasonableness of a subpoena for documents under Federal Rule of Civil Procedure rule 45(b).  *See*, *e.g.*, *U.S. v. I.B.M. Corp.*, 83 F.R.D. 97, 104 (S.D.N.Y. 1979).

their progeny.  (Mot. at 11.)  Those cases stand for the proposition that, in the context of typical civil rights excessive force cases against police departments, plaintiffs may experience difficulties if courts impose demanding relevancy standards on them because "it is unlikely that such a plaintiff would know the contents of confidential police files."  *Soto*, 162 F.R.D. at 610.  Here, there is no such basis for a relaxed relevancy standard both in light of the procedural posture of this case and because Class Counsel have access to vast amounts of information.

*Soto* and *Kelly* involve discovery sought at the *beginning* of a case, to "define and clarify issues."  *Id*. at 610.  By contrast, here there is no case to prove, and this is not a merits issue.  The case has already been resolved with the Settlement Agreement.  Class Counsel seek documents to evaluate compliance with that Agreement, not to evaluate whether any excessive force occurred in the past.  Moreover, unlike the plaintiffs in *Soto* and *Kelly*, Class Counsel have access to vast amounts of information via the Panel, the Panel's periodic reports, and the Department's proposed Protective Order offering Class Counsel access to virtually all the same records the Panel has received, and will receive, to evaluate compliance.  (Matz Decl., Ex. A at Section V.)

Class Counsel's Motion should be denied because the enormous burden and expense that the Department would incur if required to respond to Class Counsel's demands far outweigh the minimal benefit to Class Counsel (if any) of obtaining documents and records beyond what the Court-appointed Panel has deemed necessary.

Pursuant to the Settlement Agreement, Plaintiffs and Class Counsel approved the appointment of the Panel, the specific identities of the three Monitors (including one selected by Class Counsel), and the scope of the Panel's duties, including the Panel's lead role in assessing and reporting on the Department's compliance with the Action Plan.  Joint Motion for Settlement [Dkt. No. 110], Ex. A at 2.)  The Panel has adopted a 108-page Monitoring Plan and 442 Compliance Measures which

define how the Department must demonstrate – and how the Panel will assess and determine – the Department's compliance with the 104 Substantive Provisions of the Action Plan.  (Dyer Decl. ¶ 4.)  The administrative burden on the Department of creating, maintaining and producing the records required to demonstrate the Department's compliance with the 442 Compliance Measures (and, in turn, the Action Plan) is immense.  (*See* Dyer Decl.)

In order to comply with the *Rosas* Action Plan, the Department tasked approximately twelve Custody Compliance and Sustainability Bureau ("CCSB") members full-time to (a) ensure that *Rosas* compliance reports are timely provided to the Panel for monitoring, and (b) identify and assist in implementing improvements.  In order to demonstrate compliance, CCSB provides self-assessment reports for each Substantive Provision to the Panel.  Each self-assessment requires CCSB to review all documents and determine whether the Department is in non-compliance or in substantial compliance with each Substantive Provision.  Compliance also requires a review of each force package selected by the Panel, which can take an average of three and one-half hours per force package.  From these self-assessments, the Department is able to learn where improvements need to be made in the system to achieve substantial compliance.  (Dyer Decl., ¶¶ 5-6, 8.)

Responding to Class Counsel's discovery demands would require an enormous amount of time and labor.  (Dyer Decl., ¶ 9.)  Indeed, it would be effectively impossible.  For example, Class Counsel's Request No. 27 demands "[a]ny documentation of reviews conducted of Department members during the probationary period and post-probationary period."  (SP Decl., Ex. H at 18.)  In the Jail Complex, there are 1,863 Deputies and Custody Assistants, not including sergeants and above.  Two performance reviews are provided during the probationary period, and non-probationary members receive one performance review annually.  Class Counsel's request includes post-probationary reviews, even though Substantive Provision 3.6 is designed "[t]o ensure a meaningful probationary

17

period[.]" This essentially means that Class Counsel is requesting all reviews for each employee's entire career with the Department. On average, one review would require approximately 30 minutes to locate, gather, review, and prepare for production. Even if each of the 1,863 Deputies and Custody Assistants had only one review each in their entire careers (which is not the case), producing all such reviews to Class Counsel would require over 116 work days for one person to complete. (Dyer Decl., ¶¶ 12, 13.)

Commander Dyer's Declaration highlights additional examples of the massive burden that Class Counsel's demands would impose on the Department. (Dyer Decl., ¶¶ 10-11, 14-15.) If the Department had to find the resources to somehow try to respond to those demands, the Department would be forced to withdraw resources from actually achieving compliance and timely providing compliance reports to the Panel. That would not be in anyone's interests, least of all the inmates in the Jail Complex. Class Counsel's motion should be denied in its entirety.

### 3. Class Counsel's Discovery Demands Are Overbroad

Class Counsel's discovery demands are overbroad for many of the same reasons that they are unreasonable. Class Counsel's discovery demands relating to the three Substantive Provisions discussed above constitute clear examples of this, though by no means the only ones. Under Substantive Provision 1.1, Class Counsel demand any records indicating the Assistant Sheriff's involvement in any investigations or hearings of staff or prisoners, even though – as discussed above – such records are essentially beside the point when it comes to the Assistant Sheriff's role as head of Custody Operations with no other areas of responsibility. (SP Decl., Ex. H at 6.)

Supposedly under Substantive Provision 2.2, Class Counsel purport to (1) demand a log of every force package for every force incident occurring during a specified three-month period, (2) decree that they can demand to see any or all of

3469598.1

18

those, and that the Department must accede to their demand, and (3) dictate exactly what kind of detail and contents each force package must include.  If this is not an overbroad demand, it is difficult to conceive what would be.  (*Id*., Ex. F at 5-6.)

Similarly, as to Substantive Provisions 6.4 and 6.5, Class Counsel demand a log of all inmate grievances for a the first quarter of 2017 – no matter what the grievances concerned – and they also reserve the right to demand follow-up information relating to every one of those grievances.  (*Id*. at 11-12.)  During that quarter *alone*, the Department received nearly 5000 inmate grievances, including 440 grievances against staff.  (Dyer Decl. ¶ 15.)  This was not an aberration or an unusual spike in the number of grievances; the many thousands of inmates who pass through the Jail Complex every three months often complain about many things.  Importantly, many of the subjects of these grievances have literally nothing to do with the issues of use of force, retaliation, harassment, or anything else even remotely relevant to this case.  They often relate to things such as loss of personal property, laundry and clothing/ linen exchanges, mail not delivered, commissary complaints, dietary needs, and visiting hours.  (*Id*.)  But if the Court grants the Motion, the Department will have to compile a log of every grievance made by every inmate in the Jail Complex during the specified calendar quarter, regardless of the subject of the grievance, and Class Counsel would surely then demand a substantial amount of follow-up information and move to compel the Department to produce it if the Department declined.  This kind of demand constitutes virtually a textbook definition of overbreadth.

Another example of the overbreadth of Class Counsel's discovery demands relates to Substantive Provision 3.6, which falls within Section 3 (Training and Professional Development Related to Use of Force) of the Action Plan.  Substantive Provision 3.6 states that:

> To ensure a meaningful probationary period, new Department members assigned to Custody Operations should be reviewed within six months after being assigned to Custody and then again before their first post-

probationary assignment.

(SP Decl., Ex. A at 25.)

In order to monitor the Department's compliance with Substantive Provision 3.6, the Panel's existing Compliance Measures require the Department to randomly select and review, on a quarterly basis, the personnel records of fifty Deputy Sheriffs and twenty-five Custody Assistants to determine if each individual was reviewed twice according to the timeline set forth in Substantive Provision 3.6. (*Id*.) The Department must then report the results of those reviews to the Panel. (*Id*.) The existing Compliance Measures require that 95% of the randomly-selected officers must have received both reviews according to the specified timeline, as required by the Provision.[4] (*Id*.)

Class Counsel, however, demand "any documentation of reviews conducted of Department members during the probationary period **and post**-probationary period" (emphasis added), claiming that they must have access to every such review in order to evaluate the Department's compliance. (SP Decl., Ex. H at 18.) As phrased, their demand encompasses reviews of every Department member (not just Deputy Sheriffs and Custody Assistants); it encompasses every review during these employees' entire careers, not just during their probationary periods; and it encompasses every such review (not only those focusing on training and professional development related to the use of force, which after all is what Section 3 of the Action Plan is designed to monitor and improve). (Dyer Decl. ¶ 13.) Even if each such employee had only one review during their entire career (when in fact they all have many more than that), a Department employee would have to spend the equivalent of 116 work days to comply with Class Counsel's demand. (*Id*.)

---

[4]  The Department understands that under the Revised Compliance Measures, it would review the personnel records of the fifty Deputy Sheriffs and the twenty-five Custody Assistants semi-annually, instead of quarterly. The minimum 95% pass rate would remain in force.

3469598.1

20

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT AGREEMENT

Even if Class Counsel's demand were limited only to Deputy Sheriffs and Custody Assistants, and only to the substantive type of review contemplated by Substantive Provision 3.6, it would still be overbroad, because there is no reason why the personnel files of every single Deputy Sheriff and Custody Assistant in a probationary assignment in custody during the prior quarter should need to be reviewed in order to determine the Department's compliance with Substantive Provision 3.6.  Instead, the Panel – with its considerable expertise – has determined that the 75 employees constitute a statistically valid sample, and that reviewing only those employees' personnel records is a meaningful way to assess the Department's compliance.  Class Counsel have made no showing to the contrary, and their demand for all documentation of all reviews of all Department members during the relevant time periods is inherently overbroad.

### 4.    Some Documents Demanded By Class Counsel Are Privileged

Class Counsel's document requests are replete with demands for personnel records of the Department's employees, including thousands of Deputy Sheriffs, Custody Assistants, and other employees who qualify as peace officers and/or custodial officers.  For example, Class Counsel's Request No. 8 demands "[c]opies of centralized log [sic] that tracks all … performance reviews … by Department members"; Request No. 16 demands "[a]ll cases of alleged officer misconduct that were investigated by the Internal Criminal Investigations Bureau" and "[a]ny referrals to the District Attorney's office of incidents of officer misconduct"; Request No. 18 demands "[a]ll documented findings of dishonesty, excessive force, and PREA violations by Department members in Custody Operations"; and Request No. 25 demands "[a]ll personnel complaints against Department members that has [sic] resulted in a finding that it 'Appears Employee Conduct Could Have Been Better.'"  (SP Decl., Ex. H at 9, 13, 14, 17.)

Federal common law recognizes a qualified privilege for official information. *Kerr v. United States Dist. Ct. for N.D. Cal.*, 511 F.2d 192, 198 (9th Cir.1975), *aff'd*,

426 U.S. 394, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976).  Government personnel files are considered official information.  *See, e.g., Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033 (9th Cir. 1990); *Zaustinsky v. University of Cal.*, 96 F.R.D. 622, 625 (N.D.Cal.1983), *aff'd*, 782 F.2d 1055 (9th Cir.1985).  "To determine whether the information sought is privileged, courts must weigh the potential benefits of disclosure against the potential disadvantages.  If the latter is greater, the privilege bars discovery."  *Sanchez*, 936 F.2d at 1033-1034 (citing *Jepsen v. Florida Bd. of Regents*, 610 F.2d 1379, 1384–85 (5th Cir.1980); *Zaustinsky*, 96 F.R.D. at 625).  Before the court will engage in the balancing of interests between the police department and a plaintiff, the department must make a substantial threshold showing that the official information privilege applies.  *Soto v. City of Concord*, 162 F.R.D. 603, 613 (N.D. Cal. 1995).  "In order to fulfill the threshold requirement, the party asserting the privilege must submit a declaration … from a responsible official with personal knowledge of the matters to be attested to."  *Soto*, 162 F.R.D. at 613.

The Department has made such a showing here in Commander Dyer's Declaration.  Commander Dyer identifies a number of document demands by Class Counsel that seek peace officer personnel records, including the performance reviews of 1,863 deputies and custody assistants assigned to the Jail Complex.  (Dyer Decl., ¶ 17.)  Commander Dyer has reviewed these records, which the department possesses and maintains as confidential.  (*Id.*, ¶¶ 17, 11.)  He explains that disclosure of the personal data, employment history, and other private information about law enforcement deputies contained in the personnel files requested by Class Counsel would jeopardize the safety, security and privacy of deputies and their families.  (*Id.*, ¶ 19.)

With respect to records of internal investigations, Commander Dyer explains that deputies who are interviewed in connection with an administrative investigation are admonished that their failure to answer questions fully and directly may result in disciplinary action against them up to and including termination of their

3469598.1

22

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT AGREEMENT

employment.  (*Id*., ¶ 20.)  In exchange for their candor, Deputies who are the subject(s) of an administrative investigation are reassured that their statements and any information gained therefrom can only be used against them in subsequent administrative proceedings, not in any subsequent criminal proceeding or any other proceeding.  (*Id*.)  Ordering production of these records to Class Counsel would vitiate the procedural safeguards currently in place, with a resultant chilling effect that will impede the ability of investigators to conduct fair and thorough administrative investigations.  (*Id*., ¶ 21.)

A similar chilling effect would result if the Department were compelled to produce to Class Counsel copies of the confidential performance evaluations of Department personnel by their superior deputies.  (*Id*., ¶ 23.)  As Commander Dyer explains, in addition to discouraging personnel from providing information in Department investigations, and violating the rights of others who have already provided information to the Department, disclosure of these confidential records to, and dissemination of them by, Class Counsel would disrupt the vital, day-to-day operations of the Department; divert Department personnel from their regular duties (including the twelve Department personnel who currently work full-time on compliance with *Rosas*); erode the integrity and security of such records; adversely affect the morale of many Department employees; consume inordinate time, expense and resources of the Department; and frustrate the legitimate specific purposes of compiling and maintaining such records.  (*Id*., ¶ 24.)

Disclosure of these records to Class Counsel would create a substantial risk of harm to these significant interests of the Department and the privacy interests of its employees.  (*Id*., ¶ 27.)  Much of the information in these personnel records is irrelevant to the issues in *Rosas*.  Other information may be relevant but it is highly sensitive, such documentary and video records of use of force incidents that reveal inmate and Department personnel's identities.  Class Counsel would deny the Department the ability to redact personal identifying information of Department

3469598.1

23

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT AGREEMENT

personal.  (Matz Decl., Ex. B.)  By contrast, the stipulated protective order drafted by the County is carefully drafted to provide a significant and meaningful amount of information to Class Counsel, while still appropriately protecting the privacy and law enforcement interests of the Department and its employees.  (Dyer Decl., ¶ 27.)

In light of the foregoing evidence, the Department has made a threshold showing that the official information privilege applies to the records sought by Class Counsel.  Class Counsel's purported need for these records does not outweigh the Department's legitimate interest in maintaining the privilege.  Class Counsel wants more than fifty broad categories of documents far in excess of what the Panel has requested and receives.  But the information Class Counsel seeks is already available through discovery from another source.  *See Kelly*, 114 F.R.D. at 663.  The Department has offered Class Counsel a reasonable and comprehensive alternative that is not unduly burdensome for the Department: access to the documents submitted to the Panel as defined by the Monitoring Plan and Compliance Measures. In addition, Class Counsel can obtain further information from the Monitor whom they appointed to the Panel, as well as from the Panel's periodic reports to the Court on the Department's compliance.  As such, Class Counsel cannot establish that any additional records they seek are important to their ability to evaluate the Department's compliance with the Action Plan.  *See Kelly*, 114 F.R.D. at 663.  The Court should refuse to order production of records covered by the official information privilege, and should deny Plaintiffs' Motion.

**B.**     **Alternatively, The Court Should Enter The Protective Order Proposed By The Sheriff's Department As A Fair And Reasonable Resolution Of The Discovery Dispute**

If the Court wishes to resolve this discovery dispute beyond merely denying Plaintiffs' Motion, the Department would not oppose the Court's entry of the Department's proposed Protective Order, which would generally give Class Counsel access to all documents produced to the Panel as defined by the Monitoring Plan and Compliance Measures.  (Matz Decl., Ex. A.)  Class Counsel would be able to review

almost all of those documents on-line in their own offices.  (*Id*. at § V(A)(2).)  Only as to one type of document (the Force Synopsis) would Class Counsel need to visit another location (the office of one of the Panel Monitors) to conduct their review.  (*Id*. at § V(A)(1).)  Class Counsel would be able to watch every use-of-force incident video (in unredacted form) produced to the Panel as part of the 25 Force Packages per quarter by visiting the Jail Complex.  (*Id*. at § V(A)(4).)  If Class Counsel wished to watch the same video footage on-line, they would be able to do so after paying for appropriate and limited redactions to the footage in order to protect the identities of Department personnel.  (*Id*.)  The Department's proposed Protective Order strikes the right balance between ensuring a meaningful and informative review of the discovery by Class Counsel, and respecting the valid rights and interests of the Department's staff.

Section II.E above explains the multiple reasons why the version of the Protective Order counter-proposed by Class Counsel is unacceptable and would constitute an unjust resolution of this discovery dispute.

## IV.

## CONCLUSION

The Department genuinely wishes to achieve full compliance with all parts of the Action Plan and to prove to the Panel, the Court, and the citizens of Los Angeles County that it has done so.  But granting Class Counsel's onerous discovery demands will force the Department ever further away from that objective.  For all the foregoing reasons, the Department respectfully asks the Court to deny Plaintiffs' Motion in its entirety, and – if the Court wishes to find an appropriate alternative – enter the Department's proposed Protective Order.

3469598.1

25

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT AGREEMENT

DATED:  February 16, 2018

Jeremy D. Matz
Kimberley M. Miller
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenberg & Rhow, P.C.


By:  _____/s/ Jeremy D. Matz_____
              Jeremy D. Matz
    Attorneys for Defendant Los Angeles
    County Sheriff Jim McDonnell

3469598.1

26

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT AGREEMENT