# EXHIBIT C



# COUNTY OF LOS ANGELES

## OFFICE OF THE COUNTY COUNSEL

648 KENNETH HAHN HALL OF ADMINISTRATION
500 WEST TEMPLE STREET
LOS ANGELES, CALIFORNIA 90012-2713

MARY C. WICKHAM
County Counsel

March 15, 2017

TELEPHONE
(213) 893-6755
FACSIMILE
(213) 626-2105
TDD
(213) 633-0901
E-MAIL
kjoynt@counsel.lacounty.gov

VIA US MAIL & ELECTRONIC MAIL
Stephen Turanchik
Paul Hastings LLP
515 South Flower St., 25th Floor
Los Angeles, CA 90071

VIA US MAIL & ELECTRONIC MAIL
Peter Eliasberg
American Civil Liberties Union
1313 W. Eighth Street
Los Angeles, CA 90017

      **Re:** *Rosas et. al. v. Jim McDonnell, et al.,*
          **U.S. District Court Case No. 12-00428 DDP**

Counsel:

This responds to your December 20, 2016 letter in which you request seventy-four categories of documents, often with multiple components, for the period January 1, 2017 through March 31, 2017, to be provided no later than May 30, 2017.

First, we want to be clear that we recognize the important role Plaintiffs' counsel plays in the implementation of the *Rosas* Agreement ("Agreement"). We appreciate the value of different viewpoints, and understand that you have access to different information by virtue of your relationships with your clients. Like you, we are pleased to foster the cooperation that has developed between our respective sides. For this reason, we are also willing to meet and confer in an effort to address your issues in a mutually acceptable manner. However, it is our hope that this letter will adequately explain our position and resolve your concerns at this early juncture in the compliance process.

Preliminarily, as requested, we have enclosed relevant policies that have been revised since our last distribution on July 28, 2016. In addition, you seek extensive

HOA.101561812.1

Stephen Turanchik
Peter Eliasberg
March 15, 2017
Page 2

records pertaining to the training mandated by the Agreement.  These courses have all been attended, some on multiple occasions, by the Panel.  Plaintiffs' Monitor, Jeffrey Schwartz, has actively and extensively reviewed, revised, and participated in the creation of the curriculum, materials and presentation of these courses.  Nevertheless, in the spirit of continued goodwill and on-going cooperation, the Department agrees to make current curriculum and materials available to your representative, if they agree to sign a non-disclosure agreement consistent with the terms of the Agreement.  Alternatively, should it be valuable to you, we are willing to discuss allowing your representative to attend De-escalation and Verbal Resolution Training ("DeVERT") under the same conditions described above.

For the reasons explained below, at this time we respectfully decline to provide the myriad of other documents sought by Plaintiffs.

*Compliance Measures are the Best Tool to Assess Compliance*

As you are aware, the Panel has worked diligently to develop the methodology by which the Department will prove its compliance with the Agreement.  The Panel, established experts in correctional systems, further educated themselves on Department's practices, procedures and methods of recording and maintaining relevant data.  Ultimately, after more than a year of research, discussion and consideration, the Panel adopted and issued compliance measures on November 17, 2016.  Both parties were given an opportunity to respond to the compliance measures.

As you also know, we  objected to many of the compliance measures, and certainly objected to the very high compliance standards imposed by the Panel.  Each provision has multiple -- often four or five, sometimes more -- obligations for the Department to perform.  In total, the Department is obligated to comply with 442 separate compliance measures.  The compliance measures often require locating, collecting, reviewing, packaging, and producing scores of relevant documents.  Most compliance measures require the Department to repeat this work quarterly.

To do this, the Department has assigned a team of dedicated personnel, most at the rank of Sergeant or above, to perform these tasks on a continual basis, as required by each provision.  This team is supported by counsel, senior leadership, information technology staff, training officers, administrative staff, and, of course, most importantly, the line staff executing the many the obligations in the Agreement.  The Department has committed to this extensive effort, and has dedicated these valuable resources, because it

HOA.101561812.1

Stephen Turanchik
Peter Eliasberg
March 15, 2017
Page 3

understands the importance of achieving and proving compliance. And even though some of the compliance measures are imperfect, and even possibly unachievable, the Department continues its efforts because we recognize that having known, measurable criteria to evaluate compliance ultimately benefits everyone.

Your request is essentially a second set of compliance measures and will undermine this effort. To comply with your requests, the Department would be forced to siphon resources from the efforts described above. We believe it is our shared goal to ensure that our inmate population receives appropriate care that meets or exceeds all constitutional benchmarks. This goal is best accomplished by allowing the Department to focus its resources on the compliance measures issued by the Panel.

*Compliance Monitoring is the Panel's Role, Not the Plaintiff's*

The Department maintains that monitoring LASD's compliance with the Plan is the role of the Panel, not the Plaintiffs. The Plan calls for the Department to be monitored by a Panel of three monitors -- one of which was selected by the ACLU and one of which was agreed to by the ACLU and LASD -- not the Panel **and** Plaintiffs' counsel. (See Agreement, ¶ II ["The court will appoint Richard Drooyan, Jeffrey Schwartz, and Robert Houston ('the Panel')... to develop a corrective action plan ('Action Plan') designed to ensure that the Plaintiff Class are not subjected to excessive force... and to monitor and advise the Court on [LASD's] compliance with the action plan"]; Agreement ¶ VIII [the Panel, not Plaintiffs' Counsel, "certifies that any recommendation of the Action Plan has been implemented" and "shall commence... monitoring the Defendant's compliance..."]; see also Court-approved Implementation Plan, p.1 ["the Court Monitors will monitor (1) [LASD's] implementation of the policy change; (2) [LASD's] adherence in practice to the policy change through the monitoring period; and (3) [LASD's] investigation of any alleged or potential violations of the revised policies"].) Plainly, the parties did not contemplate or agree to include the ACLU as a fourth or alternative monitor. Further, had you believed that the documents you seek in your letter are necessary or more responsive than the methods selected by the Panel, we contend that you should have asserted these suggestions when the parties were given the opportunity to participate in the drafting of the compliance measures.

Stephen Turanchik
Peter Eliasberg
March 15, 2017
Page 4


*Plaintiff's Document Request are Overbroad, Burdensome and Not Tailored to the Agreement.*

We contend that many of your requests are overbroad[1], burdensome and not crafted to obtain information for the purpose of evaluating the Department's compliance. Many of your requests seek <u>all</u> evidence related to incidents related to the provision. For example, you demand "[a]ll receipts of inmate grievances provided to the filer from January 1, 2017 to March 31, 2017." To give you some perspective of the enormity of this request, Mens' Central Jail received over five thousand grievances in 2016. Complying with this request would be extremely burdensome, and would provide more information that necessary to evaluate the Department's performance. Instead, as discussed further above, the compliance measures obligate the Department to provide statistically relevant quantities of records as a comparable, but less burdensome, method to assess compliance.

Other requests are not sufficiently related to the provision cited to be useful to evaluate compliance. For example, citing Paragraph 1.1, you request "any documentation indicating that the Assistant Sheriff has been trained on all effective policies and procedures." Plainly, paragraph 1.1 which states "Custody Operations should continue to be headed by an Assistant Sheriff with no areas of responsibility other than Custody Operations" does not obligate the Department to provide any special training to the Assistant Sheriff, or provide any information about his background. This request is one example of several that we contend are not related to the Plan.

Furthermore, we believe that your demand for the documents in your December 20, 2016 letter is premature. Should you have concerns, your first and primary mechanism to assess the Department's compliance is to meet with the Panel. To our knowledge, you have not done this yet. A substantive discussion with the Panel should aid you in assessing the state of the Department's compliance.

As you know, since the compliance measures were issued on November 17, 2016, this quarter is the first opportunity for the Department to produce responsive documents to the Panel. While we are willing to meet and confer regarding your current request, we suggest that this discussion would be more fruitful after at least one batch of documents

---

[1] We also contend

Stephen Turanchik
Peter Eliasberg
March 15, 2017
Page 5


have been reviewed by the Panel and the Panel has submitted their next report to the court.

We appreciate your consideration. Please feel free to contact me to discuss this further or schedule a meeting on any *Rosas* subject including the issues described in your December 20, 2016 letter.


Very truly yours,

MARY C. WICKHAM
County Counsel

By KAREN JOYNT
Senior Deputy County Counsel
Law Enforcement Services
Division


KJ

encl:  policies (by US MAIL only)

c:      by ELECTRONIC MAIL
        Richard Drooyan
        Robert Houston
        Jeffrey Schwartz
        Kelly L. Harrington, Assistant Sheriff
        Eric Balaban
        Rodgrigo Castro-Silva
        Lauren Black


HOA.101561812.1