PETER J. ELIASBERG
(SB# 189110)
peliasberg@aclu-sc.org
ACLU FOUNDATION OF
SOUTHERN CALIFORNIA
1313 W. 8th Street
Los Angeles, CA 90017
Phone:  (213) 977-9500
Fax:  (213) 977-5299

NICOLAS MORGAN
(SB# 166441)
nicolasmorgan@paulhastings.com
KYLE M. JONES (SB# 307814)
kylejones@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071-2228
Phone:  (213) 683-6000
Fax:  (213) 627-0705

ERIC BALABAN (*pro hac vice*)
ebalaban@npp-aclu.org
NATIONAL PRISON PROJECT OF
THE AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
915 15th St., NW
Washington, D.C. 20005
Phone:  (202) 393-4930
Fax:  (202) 393-4931

Attorneys for Plaintiffs
ALEX ROSAS and JONATHAN
GOODWIN, on behalf of themselves
and of those similarly situated

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX ROSAS and JONATHAN GOODWIN on behalf of themselves and of those similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>JIM MCDONNELL, Sheriff of Los Angeles County, in his official capacity,<br><br>Defendant. | CASE NO. CV 12-00428 DDP (MRW)<br><br>**REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT AGREEMENT**<br><br>Date:  March 12, 2018<br>Time:  10:00 A.M.<br><br>Honorable Dean D. Pregerson<br>Ctrm:  9c |

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................... 1

II.     FACTS .......................................................................................................... 2

    a.   Plaintiffs Met and Conferred with Defendant for a Year Before Filing the Motion ........................................................................... 2

    b.   Plaintiffs Continued to Meet and Confer with Defendant for Five Months After Filing the Motion ................................................ 4

    c.   Plaintiffs' Protective Order Was a Good-faith Attempt to Continue Negotiations and Come to a Mutually Agreeable Solution ......................................................................................... 5

III.    ARGUMENT ................................................................................................ 7

    a.   The Agreement Grants Plaintiffs the Independent Right to Evaluate Defendant's Compliance, Which Includes the Right to Request and Review Documents Off-Site .......................................... 7

    b.   Plaintiffs' Requests are Reasonable and Will Allow Them to Evaluate Defendant's Compliance with the Action Plan ................... 10

    c.   Defendant's Objections do Not Justify Denying Plaintiffs' Requests for Documents ............................................................... 14

    d.   The Qualified Official Information Privilege Does Not Apply to Requested Documents, or, In the Alternative, Would be Protected by Plaintiffs' Draft Protective Order ................................ 16

IV.     CONCLUSION ........................................................................................... 21

REPLY ISO MOTION TO
ENFORCE SETTLEMENT AGREEMENT

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Ex Parte Application of Mentor Graphics Corp.*,
No. 16-MC-80037-HRL, 2017 WL 55875 (N.D. Cal. Jan 4, 2017) .................. 15

*Bella v. Idaho*,
677 F.3d 910 (9th Cir. 2012) ....................................................................................8

*Burlington Northern and Santa Fe Ry. Co. v. U.S. District Court for
Dist. of Montana*,
408 F.3d 1142 (9th Cir. 2005) .............................................................................. 19

*Centeno v. City of Fresno*,
2016 WL 7491634 (E.D. Cal. Dec. 29, 2016)....................................................... 19

*Consumer Financial Protection Bureau v. CashCall Inc.*,
No. CV 15-07522-JFW (RAOx), 2016 WL 7444910 (C.D. Cal.
July 8, 2016) ........................................................................................................20

*Curtin v. County of Orange*,
No. SA CV 16-591-SVW (PLAx), 2017 WL 5593025 (C.D. Cal.
March 1, 2017) ............................................................................................... 13, 19

*Duran v. Carruthers*,
885 F.2d 1492 (10th Cir. 1989) ............................................................................. 7

*Estrada v. City and County of San Francisco*,
No. 16-cv-00722-MEJ, 2016 WL 7230511 (N.D. Cal.
Dec. 14, 2016) ......................................................................................................17

*Jackson v. Montgomery Ward & Co., Inc.*,
173 F.R.D. 524 (D. Nev. 1997) ........................................................................... 15

*Keith v. Volpe*,
833 F.2d 850 (9th Cir. 1987) ..................................................................................8

*Kelly v. City of San Jose*,
114 F.R.D. 653 (N.D. Cal. 1987) ..........................................................................12

REPLY ISO MOTION TO
ENFORCE SETTLEMENT AGREEMENT

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Manufacturing Automation and Software Systems, Inc. v. Hughes*,
    CN 16-8962-CAS (KSx), 2017 WL 5641120 (C.D. Cal.
    Sept. 21, 2017) .................................................................................................. 13

*Miller v. Pancucci*,
    141 F.R.D. 292 (C.D. Cal. 1992) ....................................................................... 18

*Nehad v. Browder*,
    Case No. 15-CV-1386 WQH NLS, 2016 WL 2745411 (S.D. Cal.
    May 10, 2016) ..................................................................................................... 17

*Pellerin v. Wagner*,
    2:14-cv-02318 JWS, 2016 WL 950792 (D. Ariz. Mar. 14, 2016) ............... 13, 15

*Sanchez v. City of Santa Ana*,
    936 F.2d 107 (9th Cir. 1990) ......................................................................... 17, 18

*Soto v. City of Concord*,
    162 F.R.D. 603 (N.D. Cal. 1995) ....................................................................... 12

*Zautinsky v. University of Cal.*,
    96 F.R.D. 622 (N.D. Cal. 1983), *aff'd*, 782 F.2d 1055 (9th Cir.
    1985) ................................................................................................................... 18

**Other Authorities**

Fed. R. Civ. P. R 26(b) ............................................................................................ 15

Fed. R. Civ. P. R 45(b) ............................................................................................ 15

REPLY ISO MOTION TO
ENFORCE SETTLEMENT AGREEMENT

## I.    <u>INTRODUCTION</u>

At the heart of this dispute is the appropriate interpretation of Section VI of the Settlement Agreement and Release of Claims ("Agreement").  It is not a discovery dispute, despite Defendant's attempts to cast it as such, because Plaintiffs' right to request documents is governed by Section VI.  That being said, the Court may borrow concepts from the Rules of Federal Civil Procedure relevant to discovery and cases interpreting these rules, to determine the appropriate scope, timeliness, and form of Plaintiffs' requests for documents and Defendant's objections thereto made pursuant to Section VI.

As discussed at length in Plaintiffs' Motion to Enforce Settlement Agreement ("Motion"), Section VI's language is not ambiguous.  The plain language of Section VI grants Plaintiffs the right to request documents from Defendant.  Defendant's Opposition does not rebut either of these conclusions.  In fact, despite his attempts to retreat from his obligations under the Agreement, Defendant explicitly confirms that "it has an obligation under the Agreement to give Class Counsel reasonable access to documents for inspection to evaluate compliance with the Action Plan."  (Opposition (Dkt. No. 179) at 1:25-27.)

Defendant does not articulate a coherent alternative interpretation of Section VI.  Instead, Defendant offers untimely objections to Plaintiffs' requests and claims that the official information privilege applies to a small number of Plaintiffs' requests.  Even if these objections had merit, which they do not, the objections and claims of privilege do not render Plaintiffs' requests unreasonable.  Plaintiffs' requests will elicit documents and information that will assist their evaluation of Defendant's compliance with the Action Plan and ability to provide intelligent, meaningful comments to the Monitors' reports.  Notwithstanding Plaintiffs' continued right to the requested documents, they remain willing to work with Defendant to ensure that any production of documents would not be unreasonably burdensome.

REPLY ISO MOTION TO
ENFORCE SETTLEMENT AGREEMENT

## II.   FACTS

Stripped of bombast and hyperbole, Defendant's recitation of the facts narrates a time-consuming meet-and-confer process that extended beyond Plaintiffs' filing their Motion and ended only when Defendant decided to unilaterally break off negotiations after he received a counter-proposal to his draft protective order.  This process began in July of 2016 but almost no progress has been made.  (Declaration of Sam Puathasnanon ISO Pltf's Mot. to Enforce Settlement Agreement ("SSP Decl.") (Dkt. No. 152-3) ¶¶ 8-13, Exs. D-H.)  Almost 20 months after Plaintiffs first requested documents, Defendant has only provided a small number of revised use-of-force or custody division policies.  (SSP Decl. (Dkt. No. 152-3) ¶ 13, Ex. H (see response to Request No. 1).)

### a.   Plaintiffs Met and Conferred with Defendant for a Year Before Filing the Motion

Plaintiffs exceeded any obligation to work with opposing counsel throughout the negotiations over the document requests.  For example, Plaintiffs reduced their requests by more than half after receiving Defendant's first objections to their requests.  (SSP Decl. (Dkt. No. 152-3) ¶ 10, Ex. F.)  Plaintiffs also reduced the relevant period for the documents requested to three months.  (*Id.*)  Defendant, however, has not offered any similar compromise.

Plaintiffs struggled to gain information from Defendant from the inception of this process, when Plaintiffs drafted their requests.  For obvious reasons, Plaintiffs drafted their requests for documents without specific knowledge of Defendant's record keeping practices.  Accordingly, Plaintiffs asked for documents that they expected to exist, not documents that they knew existed.  In all the correspondence exchanged between the parties, Defendant never provided detailed, informative examples of how Plaintiffs' requests were overbroad, burdensome, or unreasonable, until the Opposition.  (*See, e.g.,* SSP Decl. (Dkt. No. 152-3) ¶¶ 9, Ex. E, p.2 ("Plaintiffs' document requests are overbroad and burdensome, and not tailored to

REPLY ISO MOTION TO
ENFORCE SETTLEMENT AGREEMENT

evaluate the paragraphs referenced in the letter."); 13, Ex. H, p. 6 ("[T]his request is overbroad in time and scope and irrelevant to the Agreement as this request is outside the scope of Paragraph 1.1.").)  Defendant's conclusory and boilerplate objections did not inform Plaintiffs how much time and effort would be expended by responding to the requests, how Plaintiffs' requests purportedly did not conform with Defendant's actual recordkeeping practices, or how Plaintiffs' requests could be better-tailored to the documents that Defendant actually maintained as part of his compliance efforts.  (*See, e.g., Id.*)  Nor did Defendant ever assert, as he does for the first time in his Opposition, that Plaintiffs were requesting documents that Defendant did not have or maintain.  (*See* SSP Decl. (Dkt. No. 152-3) ¶¶ 9, 13, Exs. E, H.)[1]  Had Plaintiffs received this information, they would have had the opportunity to revise their requests accordingly.

In a similar vein, Defendant claims that he offered to provide Plaintiffs with all documents produced to the Monitors in his June 5, 2017 correspondence, but this claim does not accurately reflect the substance of Defendant's offer. (Opposition (Dkt. No. 179) at 8:1-3.)  Defendant offered the documents only "*following a finding of substantial compliance by the Monitors.*"[2]  (SSP Decl., ¶ 13, Ex. H at 2 (emphasis added).)  As Plaintiffs discussed at length in the Motion, no language in the Agreement requires the Monitors to find substantial compliance before Plaintiffs may request documents.  (*See* Motion (Dkt. No. 152-2) 6:3 – 7:11.)  Accordingly, Plaintiffs could not agree to these terms.

---

[1] Even when Defendant provided some frame of reference for the scope of Plaintiffs' request, they do not describe the burden of providing the requested documents.  For example, in Defendant's response to Plaintiffs' request for "[a] log of all inmate grievances" within a three-month period, Defendant notes that there were 1,181 inmate grievances during the fourth quarter of 2016, but does not explain how producing a log of these grievances—not every single grievance— would be burdensome.  (SSP Decl. (Dkt. No. 152-3), ¶ 13, Ex. H, p. 22.)

[2] Tellingly, Defendant abandoned this argument in his Opposition.

REPLY ISO MOTION TO
ENFORCE SETTLEMENT AGREEMENT

**b.     Plaintiffs Continued to Meet and Confer with Defendant for Five Months After Filing the Motion**

Even after filing the Motion, Plaintiffs continued their attempts to negotiate a solution to these issues.  Plaintiffs ultimately agreed to delay adjudication of the Motion for approximately five months in the hopes of reaching a mutually agreeable settlement.  After approximately four months of discussions, Defendant circulated the first draft of a protective order that would govern the production of certain documents to Plaintiffs in exchange for their withdrawal of the Motion.

As with his description of the June 5, 2017 correspondence, Defendant mischaracterizes his proposed protective order, minimizing the aspects that are objectionable to Plaintiffs.  *(See* Opposition (Dkt. No. 179) at 1:27-2:4 (noting only that the offer for "near-total off-site access to essentially the same documents and video that the [Monitors have] received and will continue to receive . . . .").)  Specifically, Defendant's description omits the numerous provisions of the draft protective order that impaired Plaintiffs' ability to evaluate Defendant's compliance with the implementation plan.  As just one example, under Defendant's proposal, Plaintiffs would not have been allowed to reproduce in any manner documents they received.  (*See* Declaration of Jeremy Matz ISO Opposition ("Matz Decl.") (Dkt. No. 179-2) ¶ 2, Ex. A, §V.A.3. ("Class Counsel shall not copy, download . . . or otherwise reproduce any contents of any Panel Documents in any manner whatsoever."); § V.E. ("Class Counsel shall not cause or permit disclosure of the contents of any Confidential Information, in any manner or to any extent (including orally) not expressly permitted by this Protective Order.  Class Counsel shall not . . . file Confidential Information with the Court.").)  This prohibition would prohibit communications among Class Counsel, with the Monitors, and with the Court.  Such restrictions would reduce Class Counsel's ability to collaborate in analyzing the produced documents.  These restrictions would also prevent class counsel from informing the Court or the Monitors of conduct that is noncompliant

REPLY ISO MOTION TO
ENFORCE SETTLEMENT AGREEMENT

with the Action Plan. Taken together, these restrictions impair not only Plaintiffs' ability to assess compliance, but also to communicate their conclusions about Defendant's compliance or lack thereof to the Monitors or the Court, which is also enshrined in the Settlement Agreement. (*See* Joint Motion for Preliminary Approval and Notice of Proposed Settlement ("Joint Motion for Settlement") (Dkt. No. 110), Ex. A., §§ V (granting the parties the right to comment on the Monitors' draft reports); VI (implying that "information or documents obtained by Class Counsel" may be filed with the Court).) Unsurprisingly, Plaintiffs sought to protect their ability to monitor Defendant's compliance in the next draft of the protective order.

> **c.** **Plaintiffs' Protective Order Was a Good-faith Attempt to Continue Negotiations and Come to a Mutually Agreeable Solution**

Although it is now exceedingly clear, Plaintiffs were not aware at the time they received Defendant's proposed protective order that it was a take-it-or-leave-it proposal. Plaintiffs believed that the parties would exchange additional drafts of the protective order before coming to a final agreement on its language. However, without any further discussion, Defendant unilaterally ended the meet-and-confer process and informed Plaintiffs that he would file the Opposition. (Declaration of Peter Eliasberg ISO Reply ("PE Decl."), ¶ 2, Ex. A.)

Defendant's decision to end negotiations appears to be based on a misunderstanding of Plaintiffs' draft protective order. For example, Defendant incorrectly states that class counsel "never actually described" procedures for filing relevant documents with the court in this litigation in their draft protective order, but this language is clearly stated in Section V.D. of Plaintiffs' draft protective order. (*Compare* Opposition (Dkt. No. 179) at 6:7-13; *with* Matz Decl. (Dkt. No. 179-2) ¶ 3, Ex. B, § V.D. ("For Confidential Information, the Parties shall meet and confer to negotiate a solution on how to use such information in filings that Class

REPLY ISO MOTION TO
ENFORCE SETTLEMENT AGREEMENT

Counsel may make in this litigation, or to share Confidential Information with class members.  If Class Counsel and Defendant are unable to resolve this issue through meet-and-confer discussions, *the Parties shall submit simultaneous briefing focused on the sole issue of whether the designated information should be barred from public filing via applicable law and statute . . . .*" (emphasis added)).)

Defendant also notes that Plaintiffs' draft protective order "merely revert[s] to the Agreement's stipulation that any [documents or information obtained under Section VI] be used solely for purposes of the instant case and not in any other action for any purpose." (Opposition (Dkt. No. 179) at 6:13-17.)  Defendant fails to explain why the Agreement's stipulation does not provide him with sufficient protection.  This assertion is particularly puzzling as Defendant already agreed to this language and Defendant has conceded that he "has an obligation under the Agreement to give Class Counsel reasonable access to documents for inspection to evaluate compliance with the Action Plan." (Opposition (Dkt. No. 179) at 1:25-27.)  Accordingly, Defendant, at the time he entered into the Agreement, believed that this was sufficient protection for the documents and information that Plaintiffs would receive pursuant to Section VI, but has not explained what has changed since the time he agreed to this language.[3]

---

[3] Defendant also notes that Plaintiffs' draft protective order would allow Defendant to request additional documents, but fails to identify how this would contravene the Settlement Agreement.  (Opposition (Dkt. No. 179) at 6:18-23.) Furthermore, Defendant fails to acknowledge the provisions of Plaintiffs' draft protective order that would allow him to redact certain information.  (Opposition (Dkt. No. 179) 6:24-28; Matz Decl. (Dkt. No. 179-2), ¶ 2, Ex. A, § V.A.2.)  Finally, Defendant describes trepidation about Plaintiffs' use of non-confidential material in this litigation, but does not explain why such documents would deserve any protection if they are not confidential.  (Opposition (Dkt. No. 179) 6:28-7:9.)

REPLY ISO MOTION TO
ENFORCE SETTLEMENT AGREEMENT

## III.   ARGUMENT

### a.   The Agreement Grants Plaintiffs the Independent Right to Evaluate Defendant's Compliance, Which Includes the Right to Request and Review Documents Off-Site

In their Opposition, Defendant intimates that Plaintiffs' right to evaluate Defendant's compliance with the Action Plan is subordinate to the Monitors'. (*See, e.g.,* Opposition (Dkt. No. 179) at 2:27-3:3; 3:20-25; 10:13-19.)[4] Plaintiffs do not dispute the importance of the Monitors' role in evaluating compliance with the Action Plan and Agreement, but disagree that their role is inferior or that Plaintiffs' evaluation of compliance cannot diverge in any respect from the Monitors'. (*See, e.g.,* Opposition (Dkt. No. 179) at 3:15-19; 6:24-28; 7:23-28; 8:8-10; 12:10-12; 13:21-14:9.) As discussed in Plaintiffs' Motion, it is clear that Plaintiffs' right to evaluate Defendant's compliance with the Action Plan is entirely independent from the Monitors' right to evaluate compliance. (*See* Motion (Dkt. No. 152-2) at 6:4-7:11.) Indeed, Plaintiffs' review of documents other than those already reviewed by the Monitors will create greater insight into Defendant's true compliance with the Action Plan instead of merely providing a second opinion on documents the Monitors already reviewed when they created their reports.[5]

---

[4] Defendant's discussion on this topic appears contradictory. For example, Defendant appears to take umbrage with Plaintiffs' requests for documents because they represent Plaintiffs' attempt to usurp "a *de facto* role as a fourth Panel Monitor," but also "recognizes [its] obligation under the Settlement Agreement to give Class Counsel reasonable access to documents for inspection to evaluate compliance with the Action Plan." (*See* Opposition (Dkt. No. 179) at 1:25-28; 3:20-25.)

[5] In addition, Defendant's implied position is at odds with the conclusions of courts that have analyzed the issue of Plaintiffs' counsel providing post-litigation monitoring of a settlement agreement. *See Duran v. Carruthers*, 885 F.2d 1492, 1495 (10th Cir. 1989) ("[C]ounsel argues that because of the Special Master, and the Defendant's own monitoring of its degree of compliance, plaintiffs' monitoring is unnecessary and duplicative. With this argument we do not agree. To so hold

REPLY ISO MOTION TO
ENFORCE SETTLEMENT AGREEMENT

Defendant also suggests that Section VI "makes clear that Class Counsel's review of documents must be in-person at the Department's facilities" but provides no support for this conclusion.[6] (Opposition (Dkt. No. 179) at 5:5-9.)  The plain language of Section VI, relevant portions of which are reproduced below, does not support this interpretation, which has been noticeably absent from the parties' pre-motion correspondence on the document requests:

> On reasonable notice, Class Counsel will have reasonable access to the Jail Complex in downtown Los Angeles, including without limitation staff, inmates, and documents, for inspection to evaluate compliance with the Action Plan. Class Counsel shall provide Defendant's counsel with 10 days' notice before any document request and 4 days' notice before any on-site inspection. Defendant's counsel shall have the right to be present for any jail inspection and/or discussion with Sheriff's Department personnel. Defendant reserves the right to object, whether on privilege grounds or otherwise, to any document request made by Class Counsel. Any information or

would mean that the plaintiffs must accept reports of the Special Master and the Defendant's own compliance officer at face value and they would be unable to make any real challenge, backed with facts established by monitoring, to such reports."); *Keith v. Volpe*, 833 F.2d 850 (9th Cir. 1987) (holding the plaintiffs may monitor compliance despite lack of explicit authority in settlement agreement and existence of independent monitor); *Bella v. Idaho*, 677 F.3d 910 (9th Cir. 2012) (affirming continued validity of *Keith v. Volpe*).  Plaintiffs' existing right to monitor compliance is even more compelling than the other plaintiffs in the cases listed above because the plain language of Section VI grants this right to Plaintiffs.

[6] Off-site access did not become an issue until after Plaintiffs filed the Motion and Defendant retained new counsel.  Defendant's in-house counsel, who were involved in drafting the Settlement Agreement and with whom Plaintiffs corresponded at length about the document requests, did not raise this issue once in any of their correspondence with Plaintiffs about the document requests.

REPLY ISO MOTION TO
ENFORCE SETTLEMENT AGREEMENT

documents obtained by Class Counsel under this section may be used solely for purposes of this action and may not be used in any other action for any purpose.

Section VI's explicit reference to "documents obtained by Class Counsel" supports the interpretation that Class Counsel's "reasonable access" will allow off-site review of the documents.  If, as Defendant contends, Class Counsel's reasonable access were limited to an on-site review that prohibited duplicating or extracting documents from the Jail Complex in downtown Los Angeles, Class Counsel would never be able to obtain documents, rendering this term superfluous.  Similarly, Section VI recognizes that Plaintiffs' use of documents must be restricted "solely for purposes of this action."  It would be impossible for Plaintiffs to use documents that they did not obtain or receive in some manner.  Nor can Defendant argue that restricting Plaintiffs' use of "documents obtained" was intended to be shorthand for restricting their use of information in those documents because the Agreement restricts Plaintiffs' use of "[a]ny information or documents obtained by Class Counsel."

Moreover, Section VI's selective use of the phrase "on-site" strongly implies that portions of Class Counsel's reasonable access were intended to occur off-site.  "On-site" is only used once in Section VI.  This phrase is used in the second sentence to specify that Class Counsel must give four days' notice before an "on-site inspection."  The omission of "on-site" from the first sentence is particularly glaring because this sentence describes Class Counsel's reasonable access as "for inspection to evaluate compliance with the Action Plan."  Class Counsel's reasonable access is not defined as "for *on-site* inspection to evaluate compliance."  The omission of the term "on-site" from Section VI's first sentence must be purposeful, given that this term was later used to describe the same noun ("inspection") in a later context.  The only reasonable interpretation of the selective

REPLY ISO MOTION TO
ENFORCE SETTLEMENT AGREEMENT

use of the modifier "on-site" is that the drafters of this section intended for some part of Class Counsel's access to be outside of the Jail Complex in downtown Los Angeles.

In a similar vein, Section VI distinguishes between Class Counsel's access to documents and the monitoring activities that occur on the premises of the Jail Complex in downtown Los Angeles.  For example, Class Counsel must give ten days' notice before a document request but only four days' notice before an "on-site inspection."  If documents could only be viewed on-site, there would be no reason to distinguish between the document request and the inspection on site.  Similarly, in sentences three and four of Section VI, the drafters of this language distinguished between Defendant's rights during a "jail inspection" and a document request.  As with the prior language, if documents could only be reviewed at the jail, there would be little need to distinguish between these two activities.

Defendant's new argument that Plaintiffs may review documents only at the Jail Complex in Downtown Los Angeles—raised for the first time after more than 18 cumulative months of meet-and-confer negotiations—is just one example of Defendant's revolving objections and arguments.  For example, whether Plaintiffs' right to request documents under Section VI depended upon the Monitors finding substantial compliance, which consumed an inordinate amount of the pre-motion meet-and-confer process, is conspicuously absent from the Opposition.  These shifting targets have hampered the meet and confer process, making it extremely difficult to resolve the parties' real issues and misunderstandings.

b.      **Plaintiffs' Requests are Reasonable and Will Allow Them to Evaluate Defendant's Compliance with the Action Plan**

Plaintiffs drafted their document requests for the express purpose of monitoring Defendant's compliance with the Action Plan.  As demonstrated in Appendix A to the Motion to Enforce Settlement Agreement ("Appendix A to Motion"), Plaintiffs frequently described the specific Action Plan provisions

REPLY ISO MOTION TO ENFORCE SETTLEMENT AGREEMENT

relevant to each document request.[7] (*See, e.g.,* Appendix A to Motion (Dkt. No. 152-13), Request No. 2 (referencing Action Plan provision 1.1).)  In their requests, Plaintiffs sought to reduce the burden to Defendant in part by requesting logs or other centralized sources of information, which Plaintiffs assumed that Defendant maintained as part of his compliance obligations.  To the extent that these requests create any undue burden on Defendant, Plaintiffs remain willing to work with Defendant to ensure that responding to Plaintiffs' requests is not unreasonably difficult.  That being said, Plaintiffs must note that the Opposition is the first time that they received any detailed information about Defendant's recordkeeping and compliance practices.  Had Plaintiffs known this information earlier, they would have had the opportunity to revise their requests, which could have obviated any need for the Motion.

In analyzing whether Plaintiffs' requests are reasonable, which is the only requirement under Section VI of the Agreement, the Court should consider the nature of this litigation, which, at its core, is a civil rights case combatting the excessive use of force against prisoners.  This type of case engenders serious constitutional concerns and often confronts matters of physical safety and even life and death for the plaintiffs.  The current litigation, which addressed what the Citizens' Commission on Jail Violence concluded was a "persistent pattern of unreasonable force in the Los Angeles County jails that dates back many years"[8] is no different.  These high stakes must be considered when evaluating Plaintiffs' need for the documents.  Moreover, Plaintiffs cannot access these documents from any other source, as the Monitors cannot share the documents that Defendant

[7] The requests that do not reference a specific provision typically implicate conduct or documents that would be relevant to numerous provisions of the Action Plan. (*See* Appendix A to Motion (Dkt. No. 152-13) Request Nos. 1, 8, 13, and 35.)

[8] Report of the Citizens' Commission on Jail Violence, at 1 (Sept. 2012) available at http://ccjv.lacounty.gov/wp-content/uploads/2012/09/CCJV-Report.pdf.

REPLY ISO MOTION TO ENFORCE SETTLEMENT AGREEMENT

provides to them and Defendant has not provided any documents to Plaintiffs, outside of some written policies that were revised pursuant to the Action Plan.  (PE Decl. ¶¶ 3-4.)  If Plaintiffs could find the documents they needed to evaluate Defendant's compliance from another source, there would have been no need for the Motion.

Defendant's attempts to distinguish the cases applying the liberal discovery standard under the Federal Rules to civil rights excessive force cases are unpersuasive.  *(See* Opposition (Dkt. No. 179) at 15:19-16:17.)  To begin, Defendant concedes that *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995) and *Kelly v. City of San Jose*, 114 F.R.D. 653, 667-68 (N.D. Cal. 1987) "stand for the proposition that, in the context of typical civil rights excessive force cases" plaintiffs' requests for allegedly confidential police files are entitled to a "relaxed relevancy standard."  (Opposition (Dkt. No. 179) at 16:1-7.)  Defendant then argues that this "relaxed relevancy standard" is inapplicable here because the current litigation is currently in the post-settlement phase and Plaintiffs have access to a "vast amount of information."  Any difference between the procedural postures found in the current litigation and the cited cases is immaterial.  Plaintiffs' monitoring efforts are still directly focused on whether excessive force and other conduct covered by the Agreement is currently occurring.  Either in this phase or at the beginning of litigation, Plaintiffs face the same issues and the same stakes.  In addition, Plaintiffs do not have *any access* to the information they seek.  The Monitors have not, and will not, provide this information to Plaintiffs.  (PE Decl. ¶ 4.)  Defendant has not provided this information either, other than some written policies that were revised pursuant to the Action Plan, and has only offered to provide additional information with onerous restrictions that would impede Plaintiffs' ability to review, discuss, and, if necessary, provide the information to the Monitors and the Court.  (*See* PE Decl. ¶ 3; SSP Decl., ¶ 13, Ex. H at 2.)

12

Even if the Court were to apply the purportedly more stringent proportional need standard for discovery—as Defendant suggests is applicable but Plaintiffs do not concede—Plaintiffs would still be entitled to the requested documents.  Under this standard, the Court must consider, among other things, "whether the burden or expense of the proposed discovery outweighs its likely benefit." *Pellerin v. Wagner*, 2:14-cv-02318 JWS, 2016 WL 950792 (D. Ariz. Mar. 14, 2016). Defendant leaves unsaid, however, the other factors that must be considered to determine if the proportionality requirement has been met, namely: "[1] the importance of the issues at stake in the action, [2] the amount in controversy, [3] the parties' relative access to the relevant information, [4] the parties' resources, [5] the importance of the discovery in resolving the issues and [6] whether the burden or expense of the proposed discovery outweighs its likely benefit." *Manufacturing Automation and Software Systems, Inc. v. Hughes*, CN 16-8962-CAS (KSx), 2017 WL 5641120 at *3 (C.D. Cal. Sept. 21, 2017); *Curtin v. County of Orange*, No. SA CV 16-591-SVW (PLAx), 2017 WL 5593025 at *2 (C.D. Cal. March 1, 2017).

These factors militate in favor of requiring Defendant to respond to Plaintiffs' requests or, as is the case for the amount in controversy factor, are irrelevant.  The requested documents will allow Plaintiffs to monitor Defendant's compliance with the Action Plan, which is not only their right under the Agreement but also vital to protect Plaintiffs' constitutional rights and security from physical violence, which are the most important issues at stake in this action.  Further, Defendant is the only source from which Plaintiffs may obtain these documents. The requested documents are also essential to resolving the current issue here because Plaintiffs are unable to evaluate Defendant's compliance without them.  In contrast, Defendant has identified only a few requests that would require a substantial amount of effort to produce or that would elicit documents not currently in Defendant's possession.  These few examples are not sufficient to remove Plaintiffs' remaining requests, particularly given the important interests that will be

REPLY ISO MOTION TO
ENFORCE SETTLEMENT AGREEMENT

protected by reviewing the requested documents.  Additionally, to the extent that these objections accurately describe an unreasonable strain on Defendant's resources, Plaintiffs remain willing to work with Defendant to ensure that any actual production of documents would not unduly burden Defendant.  Accordingly, even under Defendant's preferred standard, he should provide Plaintiffs with the documents they requested.

**c.      Defendant's Objections do Not Justify Denying Plaintiffs' Requests for Documents**

For the first time in his Opposition, Defendant articulates detailed, informative descriptions of how a few of Plaintiffs' requests for documents may cause Defendant undue burden in producing the requested documents or may not elicit documents in Defendant's current possession.  (*See* Opposition (Dkt. No. 179) at 17:19-21:12.)  However, these objections are too little, too late.  If Defendant had provided these objections at any time during the year-long meet-and-confer process prior to the Motion, Plaintiffs would have been able to revise their requests to address these concerns.  Plaintiffs have no intention of requiring Defendant to utilize "over 116 work days" to respond to a single request and would work with Defendant to ensure that he does not endure undue burden in providing documents to Plaintiffs in response to the requests.  (*See* Opposition (Dkt. No. 179) at 18:4-7.)[9]

Even under the proportional discovery standard that Defendant contends governs Plaintiffs' requests for documents, the objections Defendant offered prior to the Motion are unavailing.  "The party who resists discovery has the burden to

[9] Plaintiffs understand that a large portion of the documents that they requested have already been provided to the Monitors.  Producing these documents to Plaintiffs would entail virtually no additional effort from Defendant to produce, as he has already gathered, reviewed, and produced them to the Monitors.  The only issue holding up production of these documents is Defendant's refusal to grant Plaintiffs the same off-site access to these documents that the Monitors currently have.

14

show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Pellerin*, 2016 WL 950792, *1. When objecting to document requests, the objecting party "cannot rely on conclusory allegations of burden or expense, but must provide some evidence regarding the time or expense required." *Id.* at *5; *see also Jackson v. Montgomery Ward & Co., Inc.*, 173 F.R.D. 524, 528-29 (D. Nev. 1997) ("The party claiming that a discovery request is unduly burdensome must allege specific facts which indicate the nature and extent of the burden, usually by affidavit or other reliable evidence."). The objections that Defendant provided to Plaintiffs' document requests prior to the Motion were nothing more than boilerplate. (*See, e.g.*, SSP Decl. (Dkt. No. 152-3) ¶¶ 9, Ex. E, p.2 ("Plaintiffs' document requests are overbroad and burdensome, and not tailored to evaluate the paragraphs referenced in the letter."); 13, Ex. H, p. 6 ("[T]his request is overbroad in time and scope and irrelevant to the Agreement as this request is outside the scope of Paragraph 1.1.").) Accordingly, even under Defendant's desired standard, his objections do not meet the necessary burden and are insufficient to deny Plaintiffs' reasonable document requests.

Except for the small number of specific examples Defendant provided for document requests that would require substantial effort or could not be satisfied by any documents in Plaintiffs' possession, Defendant's objections contained in the Opposition are also unreasonable and do not meet the necessary burden.[10] For example, Defendant objects to Plaintiffs' request for documents showing that the Assistant Sheriff in charge of Custody Operations participated in "investigations or

---

[10]Further, Defendant's attempt to distinguish the court's analysis in *In re Ex Parte Application of Mentor Graphics Corp.*, No. 16-MC-80037-HRL, 2017 WL 55875 (N.D. Cal. Jan 4, 2017) of undue burden on the basis that its reasoning is "abstracted from case law analyzing . . . Federal Rule of Civil Procedure [] 45(b)" falls flat. (Opposition (Dkt. No. 179) at 15, n.3.) This opinion clearly states that it analyzes whether a request is unduly burdensome "under Federal Rule of Civil Procedure 26(b)." *Mentor Graphics*, 2017 WL 55875, at *3.

REPLY ISO MOTION TO
ENFORCE SETTLEMENT AGREEMENT

hearings of staff or prisoners" because this conduct "says very little if anything about whether he is in charge of Custody Operations and has no other areas of responsibility . . . ." (Opposition (Dkt. No. 179) 11:9-25.)  However, this leaves unanswered exactly what duties are included within managing Custody Operations. This argument is particularly weak because Defendant's own policies require the Assistant Sheriff to "enforc[e] Department policy and procedures . . . [and] recommend[] disciplinary action affecting personnel . . . ." (Motion (Dkt. No. 152-2) at 14:15-25.)  It is not clear how the Assistant Sheriff could fulfill these duties without being involved in some way with "investigations or hearings of staff or prisoners."

Beyond Defendant's nonspecific or unreasonable objections, it must be noted that a substantial portion of the burdens Defendant identifies are caused less by overbroad or burdensome requests, and more by Defendant's own inefficient record keeping practices.  For example, Defendant notes that it takes, on average, three and a half hours to review and compile each force package.  While Plaintiffs cannot comment on the length of these force packages or complaints—having seen neither—it is disconcerting that Defendant has not established an efficient information-gathering process that would front-load the information relevant to complying with the Action Plan into the creation of the document over the past almost three years.  Again, without prejudicing Plaintiffs' position that they are entitled to all of the documents they have requested, Plaintiffs remain willing to work with Defendant to ensure that he may produce documents consistent with his existing recordkeeping practices and without enduring an undue burden.

**d.      The Qualified Official Information Privilege Does Not Apply to Requested Documents, or, In the Alternative, Would be Protected by Plaintiffs' Draft Protective Order**

Defendant must provide the documents that he claims are protected by the official information privilege to Plaintiffs because these documents are necessary

REPLY ISO MOTION TO
ENFORCE SETTLEMENT AGREEMENT

for Plaintiffs to evaluate Defendant's compliance with certain Action Plan provisions.[11]  Given the significance of the matters that are at stake here for members of the plaintiff class who were subject to horrific physical violence and other mistreatment prior to the settlement of this litigation, the scales must tip in favor of disclosing the information that Defendant contends is protected by this privilege.

Plaintiffs agree that any official information privilege that applies to the requested documents is a qualified privilege.  *See Sanchez v. City of Santa Ana*, 936 F.2d 107, 1033-34 (9th Cir. 1990).  As a qualified privilege, courts must "weigh the potential benefits of disclosure against the potential disadvantages" to determine whether the requested information is, in fact, protected from disclosure by this privilege.  *Id.*  When weighing these interests in "case[s] involv[ing] a civil rights claim against a police department, the balancing approach should be moderately pre-weighted in favor of disclosure."  *Estrada v. City and County of San Francisco*, No. 16-cv-00722-MEJ, 2016 WL 7230511 at *3 (N.D. Cal. Dec. 14, 2016).

Plaintiffs concede that certain documents requested could include information from correctional officers' personnel files or records of discipline.  (*See* Opposition (Dkt. No. 179) at 21:14-26.)  However, Plaintiffs have tailored these requests to the information that is directly relevant to specific action plan provisions and need this information to protect the grave concerns at stake for the plaintiff class, which tips the scales decidedly in favor of granting Plaintiffs' requests for these documents.  Plaintiffs' document requests fit well within the types of documents that courts have held should be produced despite similar claims of privilege.  *See, e.g.*, *Nehad v. Browder*, Case No. 15-CV-1386 WQH NLS, 2016 WL 2745411, at *4 (S.D. Cal. May 10, 2016) (requiring production of reports detailing use of force and internal affairs, in addition to training records of police

---

[11] *See, e.g.,* Action Plan provisions 10.1, 10.2, 12.3, 12.4, 13.1, 13.2, 14.1, and 16.1.

REPLY ISO MOTION TO
ENFORCE SETTLEMENT AGREEMENT

officer following his involvement in fatal shooting); *Miller v. Pancucci*, 141 F.R.D. 292, 301-02 (C.D. Cal. 1992) (ordering disclosure of training records and internal investigatory files).

The reasoning found in *Sanchez*, cited in Defendant's Opposition, proves surprisingly instructive on applying the official information privilege to Plaintiffs' document requests.[12]  In *Sanchez,* the Ninth Circuit held that the district court did not improperly deny the plaintiffs' request for police personnel files, even though "[t]he relevance of [the] plaintiffs' discovery request . . . is undisputed." *Sanchez*, 936 F.2d at 1034.  However, this holding was based on two considerations that are absent in this case.  First, the Ninth Circuit determined that the relevant information "could have been developed by interrogatories," which are not currently available to Plaintiffs pursuant to the Agreement.  Indeed, Plaintiffs have no other avenue to receive the documents they requested.[13]  Second, the Ninth Circuit noted that what the plaintiffs needed were statistics about employment, not the actual contents of personnel files.  In contrast, Plaintiffs here actually need the specific information they requested to ensure that Defendant complies with Action Plan provisions relating to, among other things, discipline of individuals who violate certain

---

[12] Defendant's other cited case on this topic, *Zautinsky v. University of Cal.*, 96 F.R.D. 622, 625 (N.D. Cal. 1983), *aff'd*, 782 F.2d 1055 (9th Cir. 1985), has no bearing on the current dispute.  *Zautinsky*'s holding is limited to academic records in Title VII discrimination cases.  *See, e.g., Zautinsky*, 96 F.R.D. at 624 ("When universities have asserted in academic Title VII cases that confidential files or votes are privileged, the courts have balanced the university's interest in confidentiality . . . and the need which Title VII plaintiffs have for obtaining peer evaluations in their efforts to prove discriminatory conduct.").

[13] As stated throughout the Reply, the Monitors have not and will not provide Plaintiffs with documents, and Defendant's offers to provide documents have onerous restrictions that make it impossible for Plaintiffs to agree to these terms. (*See* PE Decl. ¶¶ 3-4.)

REPLY ISO MOTION TO
ENFORCE SETTLEMENT AGREEMENT

policies and procedures.[14] Plaintiffs cannot measure compliance with these provisions using merely abstracted information, as they require information about specific individuals. Moreover, Plaintiffs have narrowed their requests to the specific information they need, thereby reducing the risk that Defendant would provide any irrelevant information that is protected by a qualified official information privilege.

In addition, the declaration from Commander Dyer, which is necessary for Plaintiffs to establish the claimed privilege and appears for the first time in Defendant's Opposition, is neither timely nor sufficiently detailed to preserve Defendant's claim of privilege. *See Centeno v. City of Fresno*, 2016 WL 7491634 at *13 (E.D. Cal. Dec. 29, 2016) ("To make a substantial threshold showing of the official information privilege, a 'party also must submit, *at the time it files and serves its response to the discovery request*, a declaration or affidavit, under oath and penalty of perjury, from a responsible official within the agency who has personal knowledge of the principal matters to be attested to in the affidavit or declaration") (emphasis added) (quoting *Kelly*, 114 F.R.D. 653, 669 (N.D. Cal. 1987)); *see also Curtin*, 2017 WL 5593025 ("It is also well-established that an entity that withholds discovery materials based on a privilege must provide sufficient information (i.e., a privilege log) to enable the requesting party to evaluate the applicability of the privilege or other protection. Failure to provide sufficient information may constitute a waiver of the privilege.") (emphasis in original) (internal citations omitted); *Burlington Northern and Santa Fe Ry. Co. v. U.S. District Court for Dist. of Montana*, 408 F.3d 1142, 1149 (9th Cir. 2005) (affirming district court decision that privilege was waived when privilege log was not provided to party requesting discovery until five months after time to respond to request for production had lapsed). Defendant should have provided this

---

[14] *See, e.g.,* Action Plan provisions 13.1 and 13.2.

REPLY ISO MOTION TO
ENFORCE SETTLEMENT AGREEMENT

information, including a privilege log identifying the documents to be withheld, during the pre-Motion meet and confer process, which lasted more than a year. *See Consumer Financial Protection Bureau v. CashCall Inc.*, No. CV 15-07522-JFW (RAOx), 2016 WL 7444910 at *5 (C.D. Cal. July 8, 2016) (requiring party asserting government privilege to provide protective order listing documents being withheld).

Moreover, any concerns over misusing the requested information or jeopardizing the "safety, security and privacy of deputies and their families" should be stanched by the Agreement's existing restraints on how Plaintiffs may use information acquired in this litigation. (*See* Opposition (Dkt. No. 179) at 22:20-24.) Defendant's other contention that providing this information would chill internal investigations is mooted by the fact that the requested information has presumably already been provided to the Monitors. Thus, any chilling effect that Defendant contends would have happened has already occurred. (*See* Opposition (Dkt. No. 179) at 22:25-23:21.)

To the extent that the Court determines that the information allegedly covered by the official information privilege warrants additional protection, the Court should not approve Defendant's blanket effort to withhold the documents but instead enter Plaintiffs' draft protective order. Doing so would allow Defendant to mark any information he feels is protected by such privilege as confidential. After being designated as confidential, the parties would need to submit briefing to the Court concerning whether the information was correctly designated before it could be disseminated publicly. This procedure provides an appropriate level of protection for this information without subjecting Plaintiffs to the unnecessary restrictions in Defendant's draft protective order, which are described elsewhere in this brief.

REPLY ISO MOTION TO ENFORCE SETTLEMENT AGREEMENT

## IV.  CONCLUSION

For the reasons described above, Plaintiffs' Motion should be granted and Defendant should be required to produce documents in response to Plaintiffs' requests.

DATED:  February 23, 2018      Respectfully Submitted,

ACLU FOUNDATION OF
SOUTHERN CALIFORNIA


By:     /s/ PETER ELIASBERG
           PETER ELIASBERG


NATIONAL PRISON PROJECT OF THE
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION


By:     /s/ ERIC BALABAN
           ERIC BALABAN


PAUL HASTINGS LLP


By:     /s/ KYLE M. JONES
           KYLE M. JONES


Attorneys for Plaintiffs
ALEX ROSAS and JONATHAN GOODWIN on behalf of themselves and of those similarly situated

21

REPLY ISO MOTION TO
ENFORCE SETTLEMENT AGREEMENT