OFFICE OF COUNTY COUNSEL
Dawyn Harrison (173855)
Interim County Counsel
  *dharrison@counsel.lacounty.gov*
Dylan Ford (228699)
Deputy County Counsel
  *dford@counsel.lacounty.gov*
500 West Temple St., Floor 6
Los Angeles, California 90012
Telephone:  (213) 974-1807/(213) 974-1811
Facsimile:  (213) 687-8822

KENDALL BRILL & KELLY LLP
ROBERT E. DUGDALE (167258)
  *rdugdale@kbkfirm.com*
DANIEL BARLAVA (334910)
  *dbarlava@kbkfirm.com*
10100 Santa Monica Boulevard, Suite 1725
Los Angeles, CA 90067
Telephone:  (310) 272-7904/7919
Facsimile:  (310) 556-2705

Counsel for Defendant
Robert Luna, Sheriff of Los Angeles County, in His Official Capacity

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ALEX ROSAS, et al., | Case No. CV 12-00428-DDP (MRW) |
|     Plaintiffs, | **JOINT STATUS REPORT** |
| v. | Hon. Dean D. Pregerson |
| ROBERT LUNA, Sheriff of Los Angeles County, in his official capacity, | United States District Judge |
|     Defendant. | |

# JOINT STATUS REPORT

Pursuant to a stipulation entered into between the Parties, on May 30, 2022, this Court ordered the Parties to work in conjunction with the Court-appointed Monitoring Panel (the "Panel") to develop a written plan for the Los Angeles County Sheriff's Department (the "LASD") to achieve compliance with key facets of this case addressed in the Panel's Tenth Report (Dkt. No. 205).  The Parties agreed this written plan would focus primarily on four subjects:  (1) eliminating head strikes; (2) proper use of the WRAP; (3) appropriate utilization of force avoidance and de-escalation techniques; and (4) accountability.  Each Party agreed to draft a separate proposed compliance plan addressing each of these subjects that would be submitted for the Panel's review and comment, and then to meet and confer in an attempt to see if elements from each Party's proposed compliance plan could be used to formulate a joint compliance plan.

To this end, on June 10, 2022, each Party submitted a framework for each Party's proposed compliance plan; and, on June 13, 2022, the Parties and the Panel met to discuss, among other things, each Party's proposed framework for a compliance plan.

On June 17, 2022, Jeff Schwartz, one of the Panel's members, resigned as a member of the Panel for health reasons.  He was subsequently replaced with a new court-appointed monitor, Nicholas Mitchell.  In order to provide Mr. Mitchell with an opportunity to get up to speed on the matter and meaningfully participate in the process of creating the compliance plan contemplated by the Parties, the Parties agreed to a new schedule to craft a potential joint compliance plan, which was memorialized in an order from this Court entered on October 13, 2022.  (Dkt. No. 227).

Pursuant to this schedule, on October 7, 2022, the Panel provided written comments on the Parties' frameworks for their compliance plans.  Then, on October 31, 2022, Plaintiffs' counsel submitted to the Panel and Defendant's counsel a more

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

comprehensive version of Plaintiffs' compliance plan that included consideration of the prior feedback concerning the plan provided by the Panel and Defendant's counsel. On November 4, 2022, Defendant's counsel followed suit by submitting a more comprehensive version of Defendant's compliance plan that included consideration of the feedback previously provided by the Panel and Plaintiff's counsel.

On November 9, 2022, after these versions of each Party's compliance plan were exchanged, the Parties and the Panel met in person and conferred about each Party's respective plan and the Panel's comments as to each Party's plan. Following this meeting, on November 19, 2022, Defendant's counsel provided a list of several elements from the Parties' respective compliance plans Defendant believes could be agreed upon as part of a potential joint compliance plan reached by both Parties. Plaintiffs' counsel agreed with Defendant's counsel that the corrective actions these elements represent would be helpful steps for the LASD to take to move further toward compliance with some of the remaining key provisions in this case. However, Plaintiffs' counsel stated that they believed that these corrective actions, standing alone, do not set forth a sufficient enough plan to ensure the LASD will come into compliance with these provisions.

Beyond this tentative agreement to include the elements identified by Defendant's counsel on November 19, 2022 in a joint compliance plan, the Parties agreed to continue to work with each other and the Panel to see if they can find additional common ground in formulating a joint compliance plan.

As the Parties explained in their last status report, their ability to reach agreement on specific proposals was delayed by the election of Sheriff Luna and Sheriff Luna's appointment of a new Assistant Sheriff in charge of the LASD's Custody Division. Nonetheless, counsel for the Parties have continued to hold teleconference meetings and exchange written proposals. In addition, they have agreed to another teleconference meeting to be held the afternoon of February 13,

2023, and a meeting with counsel for the Parties and the Panel the week on February 28, 2023 with the goal of reaching all possible points of agreement for a new compliance plan as soon as possible thereafter.

In the interim, the Parties are providing the Court with an outline of the proposals Defendant has made and Plaintiffs' response to those proposals, including where Plaintiffs have agreed with Defendant's proposals.

**DATA**

1. **Defendant** has agreed to expand the LASD's use of data to help ensure compliance and better identify areas of non-compliance with the Settlement Agreement's provisions.  In this regard, the LASD is collecting, and will share with Plaintiffs, data showing uses of force by category and by facility; uses of force involving head strikes; and data showing the use of the WRAP.  In addition, Defendants are exploring how they can track uses of force by the type of housing where the use of force occurred, as well as how they can track the number of force incidents for which violations were found, the Rosas or UOF manual provision violated, and the discipline imposed.  Defendant will report this data, to the extent it can be tracked in an aggregate fashion, on a quarterly basis to the Plaintiffs and the Panel.

   **Plaintiffs** support the expanded collections of data and Defendant providing it to Plaintiffs' counsel on a quarterly basis.  They are waiting for Defendant to report on exactly what data they believe they can provide but are hopeful they can reach agreement on a specific provision concerning expanded data collection and reporting.

**HEAD STRIKES**

2. **Defendant** has issued the "Limitations on Force" directive to significantly restrict instances when head strikes are permissible.  The Parties and the Panel have scheduled times to discuss whether the permissible use of head strikes in the jail should be even more stringently restricted.

   **Plaintiffs** believe the new Limitations on Force directive is an improvement over the prior policy but want to continue to discuss with Defendant and the Panel a policy that is even more restrictive on the permissible use of head strikes.

3. **Defendant** has agreed that Plaintiffs will be allowed to review and provide comment regarding the training Defendant provides on the new head strike policy contained within the LASD's "Limitations on Force" directive. The Parties and Panel will be discussing the timeline for rolling out this training and the mechanism for ensuring all LASD personnel in the jails receive it.

   **Plaintiffs** support these provisions and their inclusion in the compliance plan.

4. **Defendant** has agreed that the LASD will rigorously track whenever head strikes occur through a "head strike tracker" which is prepared quarterly, will be reviewed frequently by LASD leadership in the jails to uncover trends, and will track the use of head strikes by location and provide an indication whether specific deputies or custody assistants in the jails are using head strikes multiple times.

   **Plaintiffs** support this proposal so long as the tracking includes whether head strikes are found to be in violation of policy and, if so, the discipline imposed.

5. **Defendant** will create a template for personnel who have used force implicated by the LASD's "Limitations on Force" directive, which will require deputies who use a head strike to address (1) whether the inmate was assaultive; (2) whether the inmate presented an imminent danger of serious injury to personnel or others; (3) whether there were other reasonable means to avoid serious injury. As noted above, the Parties plan to discuss whether the use of head strikes should be even more limited than under these three circumstances.

   **Plaintiffs** support this proposal and agree that there should be a template that addresses all the elements to determine whether a head strike was permissible that is tailored to the ultimate Limitations of Force directive the parties agree on.

6. **Defendant** and the LASD will "fast track" the review of all uses of force involving head strikes, and part of this process will have the Assistant Sheriff of the Custody Division review all force packets involving the use of head strikes. That review will take place after the jails' Commander reviews the use of force, but this review process will be done on a timeline that it will not preclude the imposition of discipline under the Peace Officer Bill of Rights or unnecessarily delay relevant use of force packages getting to the Plaintiffs or the Panel for review. The LASD is also exploring how to phase in the "fast-

tracking" of other use-of-force reviews, starting next with uses of the WRAP, then category 3 uses of force, and then category 2 uses of force.

**Plaintiffs** support fast-tracking head force reviews as well as having the Assistant Sheriff review all use of force packages involving head strikes. They will continue to negotiate with Defendant about speeding up review of other use of force packages to a) make input from the Panel and Plaintiffs' counsel more useful, and b) to ensure that discipline can be imposed for violations consistent with the Peace Officer Bill of Rights.

## WRAP

7. **Defendant** has produced a new policy governing the use of the WRAP. Plaintiffs believe it is an improvement over the old WRAP policy, but they believe it should prohibit the use of WRAP even more stringently and discussions on this topic are continuing.

   **Plaintiffs** agree with the above description but remain concerned that WRAP is dangerous and not proven to be a safe mode of restraint or transportation.

8. **Defendant** will require supervisors (sergeants and watch commanders) to report in a written log their rationale for allowing a person to be left in the WRAP, any attempts that were made to de-escalate prior to using the WRAP, and the location where the WRAP was used.

   **Plaintiffs** agree with this proposal but believe other log elements will be needed under the forthcoming changes to the WRAP policy.

9. **Defendant** has agreed to "fast track" reviews where the WRAP restraint (not just the WRAP cart) has been deployed. These "fast track" reviews will take place by having three Captains at the LACJ review a random sample of instances when the WRAP restraint was deployed every 90 days to ensure the use of the WRAP was consistent with all aspects of the Department's WRAP policy (which, as noted above, Plaintiffs contend is too lax). These reviews will take place within 180 days of the use of the WRAP reviewed.

   **Plaintiffs** support this proposal so long as they conclude that the random sample is sufficiently large to be meaningful.

## FORCE AVOIDANCE/FORCE DE-ESCALATION

10. **Defendant** has agreed to meet with Plaintiffs and the Panel to discuss the Panel' and Plaintiffs' objections to the current 32-hour DeVRT training and proposed revisions to that training, which Plaintiffs and the Panel will share prior to that meeting.

    **Plaintiffs** support this proposal because they continue to believe that the current DeVRT training is not effective in ensuring appropriate force avoidance and de-escalation by LASD personnel

## ACCOUNTABILITY

11. **Defendant** has shared the LASD's disciplinary policies with the Panel and Plaintiffs and will continue to discuss methods to better address the accountability issues previously raised by the Panel.  These efforts will include the following steps the Defendant has committed to taking:  the eventual roll-out of body worn cameras in the jails, methods to improve the thoroughness and timeliness or use of force reviews, enhanced training or sergeants who review uses of force in the first instance, and the use of an outside expert to independently review uses of force for violations of LASD policy.

    **Plaintiffs** believe that Defendant's proposals are helpful but insufficient to address the lack of accountability Plaintiffs observe in their reviews of incidents, i.e., too many cases of out of policy force and dishonest reporting occur and are approved by supervisors. And, when violations are found, discipline is not imposed or is not within the recommended guidelines in the Department's own disciplinary policies.

DATED:  February 10, 2023                          KENDALL BRILL & KELLY LLP

                                                   /s/ Robert E. Dugdale
                                                   ROBERT E. DUGDALE

                                                   *Attorneys for Defendant Robert Luna in His Official Capacity as Los Angeles County Sheriff*

| | |
|---|---|
| DATED: February 10, 2022 | ACLU FOUNDATION OF SOUTHERN CALIFORNIA |
| | |
| | /s/ Peter J. Eliasberg <br> PETER J. ELIASBERG |
| | *Attorneys for Plaintiffs Alex Rosas and Jonathan Goodwin, on behalf of themselves and of those similarly situated* |

**ATTESTATIONS REGARDING SIGNATORIES**

I, Robert E. Dugdale, hereby attest that Counsel for Plaintiffs concur in this filing's content and have authorized this filing.

Executed on February 10, 2023, in Los Angeles, California.

By: /s/ Robert E. Dugdale
Robert E. Dugdale
KENDALL BRILL & KELLY

# PROOF OF SERVICE

**STATE OF , COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of . My business address is 10100 Santa Monica Blvd., Suite 1725, Los Angeles, CA 90067.

On February 10, 2023, I served true copies of the following document(s) described as **JOINT STATUS REPORT** on the interested parties in this action as follows:

Kimberley M. Miller
Bird Marella Boxer Wolpert Nessim
Drooks Lincenberg and Rhow
1875 Century Park East, 23rd Floor
Los Angeles, CA 90067

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

**BY MAIL:** I enclosed the document(s) in a sealed envelope addressed to each interested party at the address indicated above or on the attached service list. I placed each such envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Kendall Brill & Kelly LLP's practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on February 10, 2023, at Los Angeles, California.

*Carla K. Rossi*
Carla K. Rossi