# EXHIBIT A

April 17, 2023

**Proposed Compliance Plan Framework**

**Head strikes (Dkt. 133-2, § 2.6).**

- Plaintiffs' position: As recommended by the Panel, Defendants shall update LASD's limitations on force policy to prohibit head strikes of any kind except where deadly force would be permitted, as defined in AB 392 and PC 835a, subsection (c)(1).

- Department's position: As recommended by the Panel, the Department produced a new prohibitive force directive, which it provided to the Monitoring Panel and ACLU on May 11, 2022.  Consistent with the limited circumstances in which head strikes are permitted under the Settlement Agreement, this directive explicitly advises Department personnel that head strikes may only be employed during a use of force if (1) the inmate is assaultive; (2) the inmate presents an imminent danger of serious injury; and (3) there are no other more reasonable means to avoid serious injury.

- Both: This policy should require that if a head strike is used, personnel must immediately notify medical staff – verbally and in writing - that LASD personnel struck the incarcerated person in the head, even if the incarcerated person does not have any visible injuries.  The incarcerated person shall be treated and evaluated confidentially by medical staff as expediently as practical once the medical staff receives notification if the person has visible injuries, and with reasonable urgency once receiving notification if the person has no visible injuries. All notes taken by the medical staff during the treatment and evaluation of the incarcerated person will be saved to the incarcerated person's medical records. An incarcerated person must not be in a spit mask during a post-head strike medical evaluation unless the use of the spit mask is ordered by medical personnel to protect the safety of medical personnel during the evaluation.

- Both: If a person undergoes a medical exam with a spit mask, then a second medical exam without a spit mask must be offered within a reasonably short period of time (Defendants) or within 15 minutes (Plaintiffs) after the exam with the spit mask and the mask must be removed as long as there is no longer any reasonable threat requiring the use of the spit mask.

- Both: Defendants shall require all personnel who are required to prepare a witness report pursuant to a use of force incident to explicitly state whether they used any head strikes or saw any other LASD personnel use a head strike.
    - If the person preparing the report did use, or see another person use, a head strike, that person must (i) describe the head strikes, including the number of head strikes; (ii) describe the incarcerated person's behavior and conduct prior to the head strike.

1

**Commented [RD1]:** The Department disagrees with this position and maintains its position immediately below regarding the use of head strikes because (1) the Department's position is consistent with Sections 2.5 and 2.6 of the Settlement Agreement; (2) severely restricts when head strikes may be used; and (3) since implemented in practice has already resulted in a precipitous drop in the number of head strikes by deputies, confirming that it is a policy that has proven to be effective.

**Commented [MC2R1]:** The recommendation to limit head strikes to situations in which deadly force is permitted comes directly from the Panel

**Commented [MC3]:** The parties disagree on the underlined timeframes only. Defendants propose "within a reasonably short period of time" instead of "within 15 minutes."  Plaintiffs counsel maintain that there is not enough specificity in "within a reasonably short period of time" to protect a person's health after a strike to the head. Plaintiffs maintain that offering a second exam within 15 minutes is an appropriate balance between safety of the incarcerated person and medical personnel.

April 17, 2023

- <mark>Both</mark>: Defendants shall require all instances of head strikes to be reviewed in supervisors' use of force reviews.
  - Specifically, supervisor reviews should explicitly evaluate whether the use of the head strike was consistent with the policy, whether the circumstances justified the use of deadly force and whether the LASD personnel's explanation was materially consistent with other available evidence.
  - Supervisor reports should also analyze (i) whether the LASD personnel's descriptions of the head strikes, including the basis for using a head strike, are materially consistent with the video footage; (ii) whether all percipient witnesses reported the head strikes, and (iii) whether LASD personnel's descriptions of the head strikes are materially consistent with both staff and incarcerated person witness statements.
  - <mark>Both</mark>: Defendant has agreed that the LASD will rigorously track whenever head strikes occur through a "head strike tracker" which is prepared quarterly, will be reviewed frequently by LASD leadership in the jails to uncover trends, and will track the use of head strikes by location and provide an indication whether specific deputies or custody assistants in the jails are using head strikes multiple times.
    - <mark>Both</mark>: The "head strike tracker" will include whether head strikes were found to be in violation of policy and, if so, the discipline imposed. LASD will provide a date by which the head strike tracker will be updated to include this information.
    - <mark>Both</mark>: The "head strike tracker" shall be made available to the Monitors and Class Counsel pursuant to the protective order for review and analysis
- <mark>Both</mark>: Defendant has agreed that Plaintiffs will be allowed to review and provide comment regarding the training Defendant provides on the new head strike policy contained within the LASD's "Limitations on Force" directive. The Parties and Panel will be discussing the timeline for rolling out this training and the mechanism for ensuring all LASD personnel in the jails receive it.

2

**Exhibit A**
**Page 12**

April 17, 2023

## Force Prevention (Dkt. 133-2, § 2.2).

- Both: Defendant has agreed to meet with Plaintiffs and the Panel to discuss the Panel' and Plaintiffs' objections to the current 32-hour DeVRT training and proposed revisions to that training, which Plaintiffs and the Panel will share prior to that meeting.
  - Both: The Monitors and plaintiffs' counsel will be permitted to observe the DeVRT training, or portions of the DeVRT training, and receive copies of materials provided during DeVRT training prior to this meeting. The parties will work out dates for observation and receipt of materials.
- Both: Defendants shall update the Limitations on Force directive to limit force against restrained incarcerated people. Force against restrained people may only be used when the following three elements are present at the same time: (1) a person is presently assaultive, and (2) presents an immediate threat of serious injury to personnel or others, and (3) there are no other more reasonable means (including force de-escalation and moving away from the restrained person) to avoid serious injury.
  - The policy must clearly state that force de-escalation requires personnel to step away from a restrained person or moving any body part that is in immediate danger out of the way of the restrained person.
- Plaintiffs: Defendants must respond to Plaintiffs' redline on the most recent "Limitations on Force" Directive for negotiations on this point to continue.
- Both: Defendants will create a template for personnel who have used force implicated by the LASD's "Limitations on Force" directive, which will require deputies to address (1) whether the inmate was assaultive; (2) whether the inmate presented an imminent danger of serious injury to personnel or others; (3) whether there were other reasonable means to avoid serious injury.
- Both: Defendants shall create a template that addresses whether a head strike was permissible.
- Plaintiffs: Defendants shall remove references to and exceptions from certain policies where the incarcerated person involved is considered "high-risk" or "assaultive"
- Plaintiffs: Defendants shall develop training materials that do not provide rationales for deputies to rely on when they violate policies (*i.e.*, descriptions of resistant inmates as "high-risk" or "assaultive")
- Both: Defendants shall require all personnel who prepare a witness report pursuant to a use of force incident to explain what they did to de-escalate and/or avoid the confrontation leading up to the use of force (or, if they were not directly involved in the use of force itself, to explain what the LASD personnel they witnessed did to de-escalate and/or avoid the confrontation leading up to the use of force).
  - If the person preparing the report did not use, or did not see any other personnel use, any efforts to de-escalate or avoid the

3

**Commented [RD4]:** This is a work in progress. We received comments on this policy from the DOJ after we received comments from Plaintiffs' counsel and need to account for both.

**Commented [RD5]:** This will require more discussion. The LASD will not train its deputies that it should not consider an inmate's background when engaging in a potential use of force with that inmate.

**Commented [KK6]:** The Panel supports the recommendation to update/enhance training materials to specifically describe behaviors that may warrant uses of force versus the labels of "high-risk" or "assaultive".

**Commented [PE7R6]:** Plaintiffs are not sure they understand the thrust of this comment. But to the extent training is based on specific scenarios designed to properly train on what is assaultive behavior that may justify use of force, we agree. We are also concerned that the training not include scenarios that describe someone who resists a deputy who, for example yanks on his arm or tries to force it behind his back, as assaultive. We are also concerned that training not justify use of force based on someone's being assessed as "high risk." As Kathy previously stated, force must be triggered by behavior not assessment of an incarcerated person's risk.

**Commented [RD8R6]:** See above. Consistent with the Panel's comments, the LASD may be open to better defining these terms through examples in its training materials.

**Exhibit A**
**Page 13**

April 17, 2023

- confrontation leading up to the use of force, that person must explain in detail whether de-escalation or avoidance was possible in that instance
- <mark>Both</mark>: Defendants shall require supervisors to analyze LASD personnel's efforts to avoid and/or de-escalate uses of force in supervisors' use of force reviews
    - Specifically, supervisor reports should explicitly include explanations about whether the LASD personnel could have taken alternate methods or tactics to avoid or de-escalate the use of force.
    - Supervisor reports should also carefully evaluate the LASD personnel's explanation of their efforts to avoid or de-escalate the use of force (or why such avoidance or de-escalation was not feasible) to determine whether the explanation is plausible given the video of the use of force, witness statements, and other materials in the use of force packet



4

**Exhibit A**
**Page 14**

April 17, 2023

**WRAP**

- <mark style="background-color: #00FF00">Both</mark>: Defendant has produced a new policy governing the use of the WRAP.  Plaintiffs believe it is an improvement over the old WRAP policy, but they believe it should prohibit the use of WRAP even more stringently and discussions on this topic are continuing.
    - <mark style="background-color: #FFFF00">Plaintiffs</mark>: Plaintiffs agree with the above description but remain concerned that WRAP is dangerous and not proven to be a safe mode of restraint or transportation.
- <mark style="background-color: #00FF00">Both</mark>: Parties agree to the following elements of the WRAP Policy:
    - The WRAP may only be used on people who pose an immediate threat to themselves or others;
    - Absent exigent circumstances, use of the WRAP restraint shall be authorized by the on-duty watch commander, and a supervisor at the permanent rank of sergeant or above shall be present during the person's placement in the WRAP restraint;
    - When a person is placed in the WRAP restraint, they shall remain under direct visual observation at all times.
    - The WRAP restraint shall not be used on people who are known to be pregnant.
    - Personnel shall immediately request medical aid if a person in a WRAP restraint complains of, or exhibits medical distress (e.g., respiratory distress, including gasping, snorting, or gurgling sounds, complaint of chest pain, change in facial color, restricted blood circulation, complaints of extreme heat, sudden quiet or inactivity, loss of consciousness, vomiting, etc.).
    - If personnel identify that the inmate placed in the WRAP restraint has a need for mental health care, mental health staff shall be requested and personnel shall adhere to procedures delineated in Custody Division Manual (CEM) section 4-05/000.00, "Behavioral Observation and Mental Health Referral Reports."
    - Following a use of force, the person shall be taken for a documented medical assessment as indicated in CDM section 7-07/000.00, "Use of Force Review Procedures." The medical opinion as to whether the person shall remain in the WRAP restraint shall take precedence over custody personnel's evaluation.
    - Safety checks shall be conducted and documented twice every 30 minutes until the WRAP restraint is removed. The checks shall be documented on the WRAP Restraint Security Check Log.
    - A sergeant shall conduct a safety check which evaluated the application of the WRAP and shall assess its continued use at a minimum of once every 30 minutes.
    - Reasons for continued use shall be documented in the WRAP Restraint Security Check Log. The watch commander shall ensure that each person has been offered or provided access to toilet facilities, drinking water, and be allowed to exercise their

5

**Exhibit A**
**Page 15**

April 17, 2023

extremities (when safe), which shall be documented in the WRAP Security Check Log.

- o If a person misses a regularly scheduled meal due to being placed in the WRAP restraint, a meal shall be provided upon removal of the WRAP restraint.
- o A supervisor at the rank of sergeant or above shall be present when the WRAP restraint is removed, absent exigent circumstances.
- **Both**: Parties agree to certain timelines for WRAP use, and the remaining difference is in the time limits proposed.
  - o A sergeant shall attempt to have a person removed from the WRAP Restraint before two hours (Defendants) or one hour (Plaintiffs)
  - o If a person remains in the WRAP restraint in excess of three hours (Defendants) or one and a half hours (Plaintiffs), notification and consultation shall be made with the facility's unit commander. The reason for continued retention shall be documented in the WRAP Restraint Security Check Log.
  - o Persons shall not remain in the WRAP restraint or WRAP CART beyond four (Defendants) or two (Plaintiffs) hours
- **Plaintiffs**: Defendants must respond to Plaintiffs' redline comments to the monitors suggested revisions to the current WRAP policy, sent to Defendants on 03.03.2023, for further negotiations concerning the WRAP policy, including our baseline position that placing a person in a WRAP restraint constitutes a use of reportable force.
- **Both**: Defendant will require supervisors (sergeants and watch commanders) to report in a written log their rationale for allowing a person to be left in the WRAP, any attempts that were made to de-escalate prior to using the WRAP, and the location where the WRAP was used.
  - o **Plaintiffs**: Other log elements will be needed under forthcoming changing to the WRAP policy, including, but not limited to: the name and rank of the supervisor who approved the use of the WRAP, the circumstances justifying that approval, whether an individual had medical or mental health diagnoses that contraindicated use of the WRAP, the name of the medical personnel who confirmed that the WRAP was not contraindicated, whether a spit mask was employed in conjunction with the WRAP, and whether an individual was placed into a recovery position and allowed to cease resisting prior to a supervisor approving use of the WRAP.
- **Both** (tentative): Defendant has agreed to "fast track" reviews where the WRAP restraint (not just the WRAP cart) has been deployed. These "fast track" reviews will take place by having three Captains at the LACJ review a random sample of twenty (20) instances when the WRAP restraint was deployed every 90 days to ensure the use of the WRAP was consistent with all aspects of the Department's WRAP policy (which, as noted above, Plaintiffs contend is too lax). These reviews will take place within 180 days of the use of the WRAP reviewed.
  - o

6

**Commented [RD9]:** The difference in these proposed time limit will be addressed when the LASD responds to the DOJ's and Plaintiffs' Counsels' comments to the LASD's proposed WRAP policy.

**Commented [RD10]:** This is a work in progress. The LASD received comments from the DOJ concerning the WRAP policy after it received comments on this policy from Plaintiffs' counsel. It must account for both when formulating a final policy.

I will add that uses of force, by definition, require some resistance, so placement of a non-resistant individual in a WRAP would not be considered a use of force. (However, it would be required in the WRAP log.) Practically speaking, however, almost all placements of inmates in the WRAP are contemporaneous to a use of force, so use of the WRAP would be captured in a use of force packet in almost every instance.

**Commented [MC11R10]:** Plaintiffs disagree that un-resisted placement in WRAP cannot be considered a use of force. The panel recommends, and plaintiffs agree, that every use of the WRAP (not only the WRAP cart) should be a reportable use of force.

**Commented [RD12]:** Agreed

**Commented [RD13]:** Agreed

**Commented [RD14]:** The LASD does not agree with this, as there is no assurance a deputy would have such information prior to use of the WRAP.

**Commented [RD15]:** The LASD does not concur with this. This device is used, at times, to prevent self-directed harm, and restraining its use on inmates with severe mental illnesses who pose a threat of harm to themselves could always be deemed contra-indicated based on a patient's diagnosis with a mental illness.

**Commented [RD16]:** The use of spit masks is not covered in the Rosas agreement, and this is something the LASD does not see a need to document.

**Commented [RD17]:** These issues will be addressed in the WRAP policy when it is finalized.

**Commented [RD18]:** Concur

**Commented [MC19]:** This provision is tentative due to the introduction of the independent force review team. Counsel to discuss with LASD whether the team changes the fast track proposal.



April 17, 2023

April 17, 2023

**Accountability/Dishonesty**

- **Both**: Defendant will establish an independent force review team to review uses of force. The purpose of the team is to improve the quality of force reviews and expedite force reviews. The force review team will focus on reviewing uses of force involving head strikes, the use of the WRAP, and category 2 uses of force.
- **Both**: Defendant and the LASD will "fast track" the review of all uses of force involving head strikes, and part of this process will have the Assistant Sheriff of the Custody Division review all force packets involving the use of head strikes. That review will take place after the jails' Commander reviews the use of force, but this review process will be done on a timeline that it will not preclude the imposition of discipline under the Police Officer Bill of Rights or unnecessarily delay relevant use of force packages getting to the Plaintiffs or the Panel for review.  The LASD is also exploring how to phase in the "fast-tracking" of other use-of-force reviews, starting next with uses of the WRAP, then category 3 uses of force, and then category 2 uses of force.
  - **Plaintiffs:** We are open to negotiating a phase-in to get the review of all use of force incidents completed in 6 months, which can include starting with the "fast track" process described above.
- **Both**: Defendant has agreed to expand the LASD's use of data to help ensure compliance and better identify areas of non-compliance with the Settlement Agreement's provisions.  In this regard, the LASD is collecting, and will share with Plaintiffs, data showing uses of force by category and by facility; uses of force involving head strikes; and data showing the use of the WRAP.  In addition, Defendants are exploring how they can track uses of force by the type of housing where the use of force occurred, as well as how they can track the number of force incidents for which violations were found, the Rosas or UOF manual provision violated, and the discipline imposed.  Defendant will report this data, to the extent it can be tracked in an aggregate fashion, on a quarterly basis to the Plaintiffs and the Panel.
- **Both**: Defendant has shared the LASD's disciplinary policies with the Panel and Plaintiffs and will continue to discuss methods to better address the accountability issues previously raised by the Panel.  These efforts will include the following steps the Defendant has committed to taking: the eventual roll-out of body worn cameras in the jails, methods to improve the thoroughness and timeliness of use of force reviews, enhanced training or sergeants or review uses of force in the first instance, and the use of an outside expert to independently review uses of force for violations of LASD policy.
- **Department**: The parties will seek to streamline the Rosas reporting process such that static provisions and provisions where compliance has been met for an extended period can be shifted to non-reporting status, with the provisos that:

8

**Commented [MC20]:** The Department may change its position on "fast track" with the proposal of the independent force review team.

**Commented [MC21]:** Taken directly from the joint status report dated 02.10.2023

**Commented [MC22R21]:** Plaintiffs' comment from the joint status report: "Plaintiffs support the expanded collections of data and Defendant providing it to Plaintiffs' counsel on a quarterly basis.  They are waiting for Defendant to report on exactly what data they believe they can provide but are hopeful they can reach agreement on a specific provision concerning expanded data collection and reporting."

April 17, 2023

- o If there is any Departmental change that violates the static provisions (i.e., Custody Operations are no longer headed by an Assistant Sheriff whose only responsibility is Custody Operations [Rosas 1.1]), then the non-reportable provision returns to required reporting status; and
  - o All Departmental person-hours that are freed by such streamlining are dedicated exclusively to helping attain Rosas compliance and to Rosas self-assessment for the provisions that continue to be reported.
  - o **Plaintiffs**: Defendants must first identify which provisions they believe can be shifted to non-reporting status.
- **Plaintiffs**: Defendants shall develop an additional data collecting and tracking mechanism that will allow LASD leadership, the monitors, and class counsel to analyze and identify key metrics for use of force. This mechanism must, at a minimum, identify:
  - o The quantity of head strikes and material trends in head strikes (*i.e.*, excessive number of incidents in certain locations in the jail, whether LASD personnel involved are first time or repeat head strike users, times of day/shifts during which the uses of force occur, whether the incarcerated person was under the influence of drugs, the P Level classification of the incarcerated person, the number of times the incarcerated person has had force used against them, any other relevant characteristic of the incarcerated person (*i.e.*, race / ethnicity, gender identity, sexual orientation, types of pending charges, gang affiliation if applicable).
  - o The frequency with which personnel avoid and/or de-escalate uses of force
  - o The frequency with which supervisors find violations of LASD policy and Rosas provisions in their review of uses of force, using the Monitors' conclusions as to when uses of force are appropriate as the rubric against which the supervisors are measured
  - o The frequency with which personnel and supervisors are disciplined for violating LASD policy and/or Rosas provisions and the form of discipline imposed
- **Plaintiffs**: Defendants shall provide the "early warning list" to the Monitors and Class Counsel every quarter.
- **Plaintiffs**: Defendants shall provide the Monitors and Class Counsel information upon request about:
  - o What corrective measures and discipline are being undertaken with regards to those individuals listed on the early warning list
  - o What the criteria is for being added to and/or removed from the early warning list and any substantive changes to that criteria
  - o The total number of individuals on the list at any set point in time
  - o

> **Commented [RD23]:** The LASD wants to try to capture as much of this data as it can, but its data collection capabilities have limitations. Moreover, much of this well outside the scope of reporting requirements in this case. It will likely be difficult to capture, on a macro level, whether an inmate was on drugs at the time the inmate was assaulted or to track this information by P level.

> **Commented [RD24]:** This information is already reported quarterly via provisions 19.1 and 19.3 of the Settlement Agreement and is placed in Sharepoint, In this regard, the LASD does not intend to assume reporting obligations in addition to those required under the Settlement Agreement.

> **Commented [RD25]:** The Department does not intend to report data in this regard beyond required under the Settlement Agreement.

9

**Exhibit A**
**Page 19**

April 17, 2023

- Both: Defendants shall provide Monitors and Class Counsel a substantive response to written requests within 15 business days unless there are compelling reasons Defendants cannot do so, in which case those reasons should be explained in writing within the 15 days, with an estimate of time for a response and updates every 15 days thereafter.
- Plaintiffs: Defendants shall provide substantive responses to all outstanding backlogged information requests from the Monitors within 10 days of acceptance of the new compliance plan. This includes but is not limited to the Monitors' Jan. 2, 2022 letter, requests for information on WRAP practices, an inquiry about grievances qualifying under Section 6.11, and the Monitors' request for information about Defendants' remedial training on use of force.

  > **Commented [MC26]:** Counsel will ask the Monitors whether any outstanding requests remain.

- Plaintiffs: Within 30 days of the execution of this compliance plan, Defendants shall prepare a policy clarifying that instances of dishonesty in use of force reports shall be subject to discipline and provide a copy of the proposed policy to the monitors and class counsel for review.
  - Descriptions of the conduct and behavior of incarcerated persons in an incident report that are inconsistent with video footage will be considered instances of dishonesty.
  - The burden will be on LASD personnel to avoid discipline by proving that their incident report was accurate and consistent with video evidence

    > **Commented [RD27]:** The LASD will not agree to alter its disciplinary system in this manner, as such burden shifting is unfair and inconsistent with the manner discipline should be imposed, and the LASD cannot do so without the agreement of the LASD deputies union..

- Plaintiffs: Defendants shall require each supervisor's use of force review to analyze whether the LASD personnel's report contained any instances of dishonesty in force reporting.
  - The supervisor shall note all instances in which LASD personnel's report is inconsistent with the available video and witness statements

    > **Commented [KK28]:** Why is this limited to inconsistency with the video alone? It should also include witness statements.

    > **Commented [PE29R28]:** Plaintiffs agree with this proposed change. However, sometimes there is inconsistency among the witness statements. Thus we think the most probative evidence of dishonesty is inconsistency between the deputy's account and the video.

  - The supervisor shall note any instances in which the inconsistency appears to assist the LASD personnel in avoiding being found in violation of LASD policy or a Rosas provision.

    > **Commented [KK30]:** The Panel recommends "in avoiding being found in violation of…"

    > **Commented [PE31R30]:** Plaintiffs are fine with the Monitors' suggested change

  - Supervisors who fail to identify LASD personnel statements that contradict video footage or witness statements in their review and subject to discipline
- Department: The Department has established an advanced training program for sergeants conducting reviews of deputy use of force reports. This advanced training program allows for greater accountability by ensuring that sergeants who fail to identify training violations in deputy reports receive remedial training to rectify their mistakes, and also by ensuring that initial deputy use of force reports receive proper, thorough reviews.

  > **Commented [RD32]:** The LASD will consider imposing these reporting requirements. However, it will not "mandate" discipline in any case, as each disciplinary decision it makes is based on the individual circumstances of the case and individual involved.

  > **Commented [MC33]:** Panel's comment June 21, 2022: The Panel recommends this training program include a broader array of violations - not just "training" violations. Training can either be replaced with "any" or in the alternative, add policy and Rosas violations to the list. Moreover, the Department needs to more broadly address accountability for sergeants who fail to identify violations in use of force reviews. This accountability should not be limited to remedial training."

- Department: In order to add a further check designed to ensure that force reviews reach the correct result, the Department has initiated a new program providing that certain kinds of uses of force, including all uses of force involving head strikes or the use of a taser , must be reviewed by an independent use of force expert from outside the

10

**Exhibit A**
**Page 20**

April 17, 2023

Department to determine whether the use of force at issue was consistent with Department policy and nationwide standards governing uses of force.  To ensure such force reviews are not tainted in any way by the determinations of Department personnel, the Department will not provide the independent expert conducting the force review with any reports expressing any conclusions regarding the use of force under review, and will instead only provide "raw" investigative materials surrounding that use of force, such as witness statements, surveillance footage (including any available BWC footage), and other evidence that would be reviewed initially at the sergeant's level when a use of force investigation is initiated.  Any conclusions reached by the independent experts as a result of their review will be provided to LASD command staff and considered when such command staff make their determinations in use-of-force investigations.

- o   The Department has retained Dr. Darrell L. Ross, a nationally-recognized use-of-force expert, to conduct these independent reviews as part of this program, and it anticipates adding additional independent reviewers to this program in the near future
- o   ==Plaintiffs==: The panel and plaintiffs recommend adding use of WRAP to those reviewed by Dr. Ross

- ==Department==: The Department plans to reinvigorate a performance mentoring program for LASD personnel in the Downtown LA Jails who have committed minor violations.  The program would pair personnel with more senior mentors and involve (1) individual sessions where the mentees and mentors review problematic incidents and discuss how they should have been handled, (2) individually tailored training based on the specific violation, and (3) a subsequent review and evaluation certifying that the violator has not committed similar violations over a probationary time period.  This proposed mentoring program   is a realistic, efficient way to reinforce the goals and spirit of the Rosas settlement by making sustained, durable changes in the Department's culture.  The Department sees this program as a way to build and reinforce good habits in the Department's younger deputies, and to vigilantly address minor violations before they grow into more serious violations.

- ==Plaintiffs==: For each use of force incident in which monitors find either (1) a violation of head strike policy, (2) a violation of force prevention policy, or (3) dishonesty, and LASD did not find any such violations during the review, the Office of the Inspector General must review the use of force package, determine the reason(s) for the error in the use of force review, and recommend appropriate corrective action, including discipline.

> **Commented [MC34]:** From panel's comment, June 21, 2022

> **Commented [MC35]:** Panel's comment June 21, 2022: "This performance mentoring appears to be a promising practice.  We would ask the Department to clarify how this program aligns with the disciplinary process."

11

**Exhibit A**
**Page 21**

April 17, 2023

- o The OIG review must be submitted to the monitors and the parties within 30 days of the date of filing of the monitors' report
- o If the OIG review concurs with the determination of the Monitors that there was a violation of the policies listed above, the County shall be subject to a contempt fine of $10,000 for each discrepant incident, payable to the Court for use as the Court deems necessary to effectuate compliance with the Court's orders, the implementation plan, and this remedial plan.

> **Commented [RD36]:** The OIG can determine whether it wishes to take on such a project. The LASD will not agree to this as part of this compliance plan.



12

**Exhibit A**
**Page 22**

April 17, 2023

**Plaintiffs: Evaluating current use of force review process and procedures**

> Commented [KK37]: The Panel believes an assessment of the effectiveness of the Custody Force Response Team, Custody Review Committee, Executive Force Review Committee and Internal Affairs Bureau is a good idea. The Panel invites the Department to identify an appropriate department or personnel to conduct such an assessment.

- Within 90 days of the adoption of the recommendation plan, the Office of the Inspector General, in consultation with Custody Division Executives, shall provide a written evaluation of the effectiveness of the following groups over the last 3 years:
  - o Custody Force Response Team
  - o Custody Force Review Committee
  - o Executive Force Review Committee
  - o Internal Affairs Bureau
- The review shall include an evaluation of at least two use of force packages from each of the past three years where the monitors found violations that were not uncovered during the force review process
- The evaluation shall include recommendations for improvements to procedure that will be necessary to accomplish the goals of the compliance plan, including establishing a centralized use of force review process that would put use of force review at the sergeant level in that centralized team and not involve the floor sergeant at the location of the use of force incident.

**Plaintiffs: Reporting On Discipline**

1) Plaintiffs propose that the Department provide to Plaintiffs' counsel and the Monitoring Panel (the Panel) on a quarterly basis the following information relating to discipline: data on number of force incidents for which violations were found (including dishonest reporting in use of force reports), the Rosas provision or UOF manual provision violated, the discipline imposed. If discipline falls outside the range provided for in the Disciplinary Guidelines, the explanation for departing from the guideline range shall also be provided[1]. Plaintiffs are not requesting that the name or other identifying information of persons found to have violated a UOF policy or Rosas provision. However, they are requesting that the Department provide the number of the use of force incident and the use of force package if it is not one of the packages already disclosed to the Panel and Plaintiffs' counsel.

**Imposition of Discipline for Violations of the Policy in the Areas the Panel Has Identified as Most Problematic.**

2) For all violations of the head strike provision of the prohibited force policy the department must impose the discipline provided for in the Disciplinary Guidelines for a use of unreasonable force, i.e., 15 days suspension to termination. Disciplinary Guidelines at page 27.

> Commented [RD38]: The LASD will not agree, and cannot agree without the concurrence of the deputy's union, to Plaintiffs' positions in this proposed plan which impose mandatory discipline. The LASD's disciplinary guidelines do not impose mandatory penalties in the manner suggested here. Instead, the LASD has a disciplinary system which emphasizes imposing progressive discipline based on the particular individualized circumstances in each case. That is an enforceable and equitable type of disciplinary system. The manner which Plaintiffs' counsel seek to impose discipline is not.

---

[1] The last provision of the sentence would not apply for areas where mandatory discipline is called for.

13

**Exhibit A**
**Page 23**

April 17, 2023

    a.    For a second and third violation of the head strike provision of the prohibited force policy, the discipline must be progressive[2], i.e., greater than the discipline imposed for the prior offense. A fourth violation must lead to termination.

> **Commented [RD39]:** See above

3)    For all violations of the force prevention policy the department must impose the discipline provided for in the Disciplinary Guidelines for "violating the force prevention principles, i.e., "written reprimand to 15 days". Disciplinary Guidelines at page 37.

> **Commented [RD40]:** See above

    a.    For a second or third violation of the head strike provision of the prohibited force policy, the discipline must be progressive. A fourth violation must lead to termination.

> **Commented [RD41]:** See above

4)    For all instances of dishonest reporting in a use of force report the department must impose the discipline provided for in the Disciplinary Guidelines for "Knowingly documenting false information in a Use of Force report," i.e., discharge. Disciplinary Guidelines at page 35.

> **Commented [RD42]:** See above

5)    For all violations of the WRAP policy, the department must impose the discipline provided for in the Disciplinary Guidelines for "violating the force prevention principles, i.e., "written reprimand to 15 days". Disciplinary Guidelines at page 37.

> **Commented [RD43]:** See above

    a.    For a second or third violation of the WRAP policy, the discipline must be progressive. A fourth violation must lead to termination.

> **Commented [RD44]:** See above

6)    If the department has not already done so, it must establish a policy and a range of appropriate discipline for supervisors who approve any of the following: head strikes that violate the head strike portion of the prohibited force policy; the force prevention policy, the WRAP policy; and failing to identify dishonest reporting on a use of force report. Discipline for violations of the policy may not be solely performance log entries or retraining. It must comprise one of the forms of discipline set forth on page 7-9 of the Disciplinary Guidelines.

> **Commented [RD45]:** See above

    a.    For a second or third violation of the provision described in paragraph 6), the discipline must be progressive. A fourth violation must lead to termination.

> **Commented [RD46]:** See above

**Additional Provisions Relating to Discipline**

7)    Within a month of the parties agreeing to a compliance plan, and at least as frequently as once a year thereafter, the Assistant Sheriff for Custody shall inform all supervisors in writing of the compliance plan, including

---

[2] The Disciplinary Guidelines already provide that discipline should "generally" be progressive. However, to address the areas of non-compliance that continue to plague the department, it makes sense to require that discipline must be progressive for certain violations.

14

**Exhibit A**
**Page 24**

April 17, 2023

the provisions relating to discipline.  In addition, the Assistant Sheriff shall inform all supervisors with the authority to impose discipline that for all violations of the Custody Use of Force Manual that are not subject to mandatory discipline under this portion of the compliance plan, the presumptions set forth in the Disciplinary Guidelines apply.  Specifically, 1) "Discipline is expected to remain within the standard range in most instances" Guidelines at page 26, and that if the person responsible for imposing discipline deviates from the standard range, they shall document in writing the aggravating or mitigating factors and state the reason(s) for the downward or upward adjustments. In addition, the Assistant Sheriff shall also inform persons with disciplinary authority that "[g]enerally discipline will follow a 'progressive-step method.'"

> **Commented [RD47]:** All LASD personnel who work in the LACJ are already advised of the provisions in the Disciplinary Guidelines.  As noted above, the LASD does not intent to stray from a disciplinary system which follows these guidelines.

15

**Exhibit A**
**Page 25**