OFFICE OF COUNTY COUNSEL
Dawyn Harrison (173855)
County Counsel
*dharrison@counsel.lacounty.gov*
Dylan Ford (228699)
Deputy County Counsel
*dford@counsel.lacounty.gov*
500 West Temple St., Floor 6
Los Angeles, California 90012
Telephone: 213.974.1811
Facsimile: 213,687.8822

KENDALL BRILL & KELLY LLP
Robert E. Dugdale (167258)
*rdugdale@kbkfirm.com*
Daniel Barlava (334910)
*dbarlava@kbkfirm.com*
10100 Santa Monica Boulevard, Suite 1725
Los Angeles, CA 90067
Telephone: 310.556.2700
Facsimile: 310.556.2705

Counsel for Defendant
Robert Luna, Sheriff of Los
Angeles County, in his Official Capacity

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ALEX ROSAS and JONATHAN GOODWIN on behalf of themselves and those similarly situated,<br><br>        Plaintiffs,<br><br>   v.<br><br>ROBERT LUNA, Sheriff of Los Angeles County, in his official capacity,<br>        Defendant. | Case No. 12-cv-00428 DDP (MRW)<br><br>**DEFENDANT'S OPENING BRIEF ADDRESSING DEFENDANT'S PROPOSED COMPLIANCE PLAN**<br><br>[*Filed concurrently with Defendant's Proposed Compliance Plan, Declaration of Robert E. Dugdale, Declaration of Larry Alva, and [Proposed] Order*]<br><br>Judge:    Dean D. Pregerson<br>Time:    June 26, 2023<br>Date:    10:00 a.m.<br>Courtroom:    9C |

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ..................................................................................... 1

II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY ................... 4

    A.      The Rosas Settlement Agreement ............................................... 4

    B.      The Panel's Tenth Report Recommends the Creation of a
         Supplemental Joint Compliance Plan .......................................... 5

    C.      Compliance Plan Negotiations ..................................................... 6

    D.      The Panel's Eleventh Report Notes the Department's Significant
         Progress in Key Areas .................................................................. 7

    E.      The Panel's March 2023 Tour of the Downtown Jails Confirms a
         Change of Culture in the Jails ...................................................... 9

    F.      Uses of Force and Head Strikes in the Jails Have Continued to
         Decrease Under Sheriff Luna ....................................................... 9

    G.      Areas of Agreement Between the Parties With Regard to a
         Compliance Plan and Other Corrective Actions the Department
         Is Committed To Taking to Improve Its Compliance .......................... 10

         1.      Head Strikes ................................................................... 10

         2.      Force Prevention ............................................................. 12

         3.      Accountability and Discipline ......................................... 12

    H.      Compliance Plan Areas of Disagreement .................................. 15

III.    PLAINTIFFS' EXTREME PROPOSALS BEYOND THOSE
      AGREED TO BY THE DEPARTMENT ARE UNWARRANTED ............. 17

    A.      Plaintiffs' Proposal to Effectively Ban Head Strikes Is
         Unjustified and Will Endanger the Safety of Department
         Personnel ...................................................................................... 17

    B.      Plaintiffs' Proposal To Implement Mandatory-Minimum
         Disciplinary Punishments Is Unwarranted, Unfair, and Cannot
         Be Unilaterally Imposed by the Sheriff Without Violating the
         Collective Bargaining Rights of the Department's Personnel .............. 20

    C.      Additional Potential Areas of Disagreement ............................. 23

IV.     CONCLUSION ....................................................................................... 24

**Kendall Brill
& Kelly LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

## **MEMORANDUM OF POINTS AND AUTHORITIES**

## **I.     INTRODUCTION**

In May 2022, the Los Angeles County Sheriff's Department (the "LASD" or "Department") and counsel for Plaintiffs Alex Rosas and Jonathan Goodwin ("Plaintiffs") (collectively, "the Parties") agreed to work together to craft a "compliance plan" setting forth corrective actions the Department would agree to take in order to reach compliance with its obligations in this case.  Working in conjunction with the court-appointed Monitoring Panel, which oversees and reports on the LASD's progress in this case, the Parties agreed to focus their efforts on formulating a Compliance Plan covering four key areas:  (1) the elimination of impermissible head strikes; (2) the LASD's force avoidance and de-escalation practices; (3) the proper use of the WRAP restraint device; and (4) holding LASD personnel accountable for violations of the LASD's use of force policies.

Since last May, two developments have simultaneously occurred.  First, the Parties engaged in numerous meetings, including meetings involving the Panel, in an effort to reach agreement on provisions to be included in a jointly-negotiated Compliance Plan.  Second, as a result of numerous corrective actions the Department has already taken to improve its compliance with the myriad requirements it faces in this case, the number of occasions when force has been used against inmates in the Los Angeles County Jail system (the "LACJ" or the "Jails") has plummeted over the past 18 months, as have the number of head strikes.  Meanwhile, the number of recorded cases in which Deputies have taken actions to avoid uses of force has increased dramatically.  Indeed, the Panel lauded the Department's improved performance in these areas in its most recent report and noted a dramatic change in the culture in the Jails, to one in which inmates no longer fear they will be targeted with excessive or unnecessary force.

With regard to the Parties' efforts to negotiate a Compliance Plan covering the four areas described above, the Department has agreed to undertake many of the

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1

DEFENDANT'S OPENING BRIEF ADDRESSING DEFENDANT'S PROPOSED COMPLIANCE PLAN

corrective actions proposed by Plaintiffs.  When combined with other corrective actions the LASD has offered to implement, the LASD has put together a robust plan that will ensure its future compliance with provisions in this case where compliance has previously been lacking.  However, as well as the Parties have collaborated to reach an agreement on a joint Compliance Plan, a handful of disputes remain.

First, the Parties have not reached an agreement on the limited circumstances when head strikes should be permitted.  In this regard, the Department has put into place an extremely restrictive policy that only permits a Deputy to employ a head strike while using force when (a) an inmate is assaultive; (b) the Deputy faces an imminent threat of serious bodily injury as a result of the inmate's actions; and (c) there are no other more reasonable means to avoid serious injury the Deputy can employ.  This head strike policy precisely tracks the requirements of a suitable head strike policy the Parties and the Panel agreed to years ago; it has proven to be an effective policy, as evidenced by the decreasing number of head strikes used in the Jails since its implementation; and it is a policy consistent with head strike policies utilized in other carceral settings.  Given the Department's encouraging success on this issue since last May, there is no need at this time to impose yet another new policy which goes beyond the requirements of the negotiated Settlement Agreement, and which runs a risk of endangering the safety of Department personnel in the Jails.

More fundamentally, the Parties are at loggerheads over the provisions to address accountability for Department personnel who violate a LASD use of force policy.  In this regard, the LASD has agreed to take a number of steps to professionalize, and increase the reliability and consistency of its use of force review processes, including (1) standing up an independent unit solely dedicated to reviewing uses of force to ensure uses of force are promptly and thoroughly reviewed; (2) requiring that uses of force be reported in certain ways to ensure clarity as to whether they were, or were not, committed in a manner consistent with

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

2
DEFENDANT'S OPENING BRIEF ADDRESSING DEFENDANT'S PROPOSED COMPLIANCE PLAN

LASD policy; (3) requiring that those reviewing uses of force explicitly examine whether specific policy violations occurred and whether statements made by deputies about uses of force are materially consistent with other evidence, including video evidence; and (4) equipping all deputies in the jails with body worn cameras ("BWCs").  The Department views each of these as significant reforms, properly targeted towards creating the institutional infrastructure necessary to ensuring that Deputies who violate the LASD's use of force policies are held accountable.

Plaintiffs believe that, on top of these substantial new protocols, the Department must also radically change its disciplinary policies to mandate that strict "mandatory-minimum" penalties be doled out whenever Deputies violate certain use of force policies.  This proposed re-working of the Department's disciplinary guidelines would result in a drastically unfair disciplinary system when compared to the disciplinary system the Department currently has in place, which encourages progressive punishment when Department policies are violated and which allows for those reviewing policy violations to take into account all of the relevant circumstances surrounding a policy violation when determining an appropriate disciplinary sanction.  Moreover, even if the Department could justify drastically altering its disciplinary processes in the manner advocated by Plaintiffs, it could not do so unilaterally in light of a court ruling requiring the Department to negotiate such changes with the Deputies' union.

In sum, over the past year, the Department's performance in this case has dramatically improved, and, under the nascent tenure of Sheriff Robert Luna, it has continued to improve.  In light of that improvement, and the Sheriff's commitment to implement each and every one of the provisions in the Compliance Plan described below, the Sheriff should be afforded the latitude to implement his plan and his vision to obtain compliance in this case, instead of having Plaintiffs impose provisions that are impractical and that far exceed the scope of anything contemplated during the exhaustively-negotiated settlement entered in this case.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

3
DEFENDANT'S OPENING BRIEF ADDRESSING DEFENDANT'S PROPOSED COMPLIANCE PLAN

II.     <u>**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**</u>

     A.     <u>**The Rosas Settlement Agreement**</u>

In January 2012, Plaintiffs filed the original Complaint in this action alleging that inmates at Men's Central Jail ("MCJ"), Twin Towers Correctional Facility ("TTCF"), and the Inmate Reception Center ("IRC") (collectively, "the Downtown Jails") were being subjected to a pattern of unnecessary and excessive force inflicted by LASD personnel and that the Sheriff had not taken reasonable steps to prevent the use of excessive force. Plaintiffs alleged that "[i]nmates in the Jails live in fear of deputy violence" as a result of "extreme and unjustified violence by deputies against inmates" and a "culture of deputy violence." Dkt. 32 at ¶¶ 1, 5. Plaintiffs further alleged Deputies would "subject unresisting inmates to grossly excessive force by slamming inmates' heads into walls, punching them in the face with their fists, kicking them with their boots, and shooting them multiple times with their tasers;" beatings which resulted in "serious injuries to the inmates, including broken legs, fractured eye sockets, shattered jaws, broken teeth, severe head injuries, nerve damage, dislocated joints, collapsed lungs, and wounds requiring dozens of stitches and staples;" and that many of these beatings were racially motivated while others were inflicted "for no apparent reason at all." *Id.* at ¶ 5.

Between April 2012 and September 2014, the Parties engaged in extensive negotiations to reach a settlement. In September 2014, the Parties reached an agreement whereby the Court would appoint three experts (the "Panel") to develop an Implementation Plan to remedy the Department's violations, to monitor the Department's implementation of and compliance with the terms of that Implementation Plan, and to make periodic reports to the Court of its findings. In October 2014, the Panel finalized that Implementation Plan.

In April 2015, the Court approved the court-enforceable Settlement Agreement and Release (the "Settlement Agreement") between Plaintiffs and the Department. The Panel's Implementation Plan was incorporated by reference into

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

4

DEFENDANT'S OPENING BRIEF ADDRESSING DEFENDANT'S PROPOSED COMPLIANCE PLAN

the Settlement Agreement, thereby obligating the Department to undertake numerous improvements to its policies, training, conduct, and force reporting.  The Settlement Agreement represented the culmination of several years of litigation initiated to stop the use of excessive force against incarcerated persons at the Downtown Jails and involved an extensive bargaining process that was informed at every step by experts, the Court, and other stakeholders.

**B.** **The Panel's Tenth Report Recommends the Creation of a Supplemental Joint Compliance Plan**

As noted above, one of the Panel's obligations under the Settlement Agreement is to provide periodic reports to the Court addressing the Department's progress in complying with the Implementation Plan's roughly 100 provisions.  On April 7, 2022, the Panel filed its Tenth Report with the Court, evaluating the Department's compliance with the Implementation Plan for the period spanning January 1, 2021 to June 30, 2021.  Dkt. 205 (the "Tenth Report").  In the Tenth Report, the Panel noted the Department's "great progress" since the initiation of this litigation, but also that the Department's "progress on some key issues has 'plateaued'" short of full compliance. *Id.* at 2.  Accordingly, the Panel requested that the Court hold a status conference, and it provided recommendations to bring the Department into compliance with the remaining Settlement Agreement provisions with which the Department had not yet reached full compliance.

On May 4, 2022, the Department filed its response to the Tenth Report. *See* Dkt. 210.  The Department's response challenged many of the Tenth Report's conclusions, including by pointing out that the Department had reached compliance with over 75 percent of the Implementation Plan's roughly 100 provisions, and by demonstrating that that overall uses of force in the Downtown Jails had decreased significantly from 2019 to 2021. *See id.* at 8-10.  Still, the Department recognized it had fallen short of full compliance with all of the Implementation Plan's requirements, and it agreed that it would institute additional corrective actions in

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

5
DEFENDANT'S OPENING BRIEF ADDRESSING DEFENDANT'S PROPOSED COMPLIANCE PLAN

order to reach full compliance.

### C.   Compliance Plan Negotiations

On May 12, 2022, the Parties attended a status conference and agreed to negotiate in good faith to reach agreement on a plan that would bring the Department into full compliance with the Implementation Plan provisions with which the LASD has not yet reached compliance.  On May 27, 2022, the Parties stipulated to work in conjunction with the Panel to develop a written plan for the Department to achieve compliance with key facets of this case addressed in the Panel's Tenth Report.  Dkt. 218.  To that end, the Parties agreed to work collaboratively on a Compliance Plan that focuses on four key areas: (1) eliminating impermissible head strikes; (2) ensuring appropriate utilization of force prevention and de-escalation techniques; (3) ensuring proper use of the WRAP restraint device; and (4) ensuring accountability for Department personnel who violate the Implementation Plan's provisions and/or Department use of force polices.  *Id.* at 2.

Since June 2022, the Parties have met and conferred regularly, including on several occasions with the Panel present, and have exchanged several draft compliance plans in an effort to formulate a joint compliance plan, as ordered by the Court.  On June 10, 2022, each Party submitted a preliminary framework for a compliance plan; and, on June 13, 2022, the Parties and the Panel met to discuss the Parties' respective proposals.  On October 7, 2022, the Panel provided written comments on the Parties' frameworks for their compliance plans.  Then, on October 31, 2022, Plaintiffs' counsel submitted to the Panel and Defendant's counsel a more comprehensive version of Plaintiffs' compliance plan that included consideration of the prior feedback concerning the plan provided by the Panel and Defendant's counsel.  On November 4, 2022, the Department followed suit by submitting a more comprehensive version of the Department's compliance plan that included consideration of feedback provided by the Panel and Plaintiffs' counsel.

On November 9, 2022, after the Parties exchanged these more comprehensive

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

6

DEFENDANT'S OPENING BRIEF ADDRESSING DEFENDANT'S PROPOSED COMPLIANCE PLAN

draft compliance plans, the Parties and the Panel met in person and conferred about each Party's respective plan and the Panel's comments.  On November 19, 2022, the Department provided a list of several elements from the Parties' respective compliance plans to which the Department believed it could agree as part of a joint compliance plan.  The parties made a tentative agreement to include in a joint compliance plan the elements identified by the Department on November 19, 2022 in a joint compliance plan, and to work together and with the Panel to find additional common ground for a joint compliance plan

As explained in a joint status report filed on November 30, 2022, the Parties' ability to reach agreement was delayed by the election of Sheriff Luna, and the appointment of a new Assistant Sheriff in charge of the LASD's Custody Division.  However, beginning in February 2023, counsel for the Parties resumed meetings to discuss the framework of a potential joint compliance plan, exchanged written proposals, and made considerable progress in identifying areas of common ground that could form the basis of a joint compliance plan, while also identifying areas of disagreement.

D. **The Panel's Eleventh Report Notes the Department's Significant Progress in Key Areas**

On March 8, 2023, the Panel filed its most recent assessment of the Department's compliance with the Implementation Plan for the period of July 1, 2021, to June 30, 2022.  *See* Dkt. 238 (the "Eleventh Report").  The Eleventh Report found the Department compliant with 77 out of the 100 applicable provisions in the Implementation Plan.  *See id.* at 7.  Notably, the Panel acknowledged significant improvement in the Department's performance related to the key issues subject to the Compliance Plan being negotiated by the Parties.  In this regard, the Eleventh Report made the following observations, among others:

- *Use of Force*—The Panel lauded the LASD for achieving consistent declines in the overall use of force numbers in the Downtown LA Jails

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

7
DEFENDANT'S OPENING BRIEF ADDRESSING DEFENDANT'S PROPOSED COMPLIANCE PLAN

over multiple reporting periods, from **593** incidents in the first two
quarters of 2021, to **558** in the second two quarters of 2021, to **526** in
the first two quarters of 2022 (*see id.* at 5) ("The overall force numbers
are trending downward…We believe that these successive decreases in
the number of uses of force incidents represent meaningful
progress…");

- *Head Strikes*—The Panel noted a nearly 50 percent decrease in the
  total number of head strikes from 2021 to 2022 at both MCJ (from 32
  to 17) and TTCF (from 30 to 16), including **multiple months in 2022 at
  both facilities when there was not a single use of force that involved a
  head strike** (*see id.* at 6-7);

- *Communication of Head Strikes Directive*—The Panel noted LASD
  leadership's "effective" communication of the Department's new head
  strike directive, issued in May 2022, which the Panel credited for the
  downward trend in head strikes (*see id.* at 7) ("The Department's
  concerted focus on head strikes in the past several months appears to be
  having a positive impact on the downward trend."); and

- *De-escalation and Force Avoidance*—The Panel acknowledged the
  proper and effective use of de-escalation and force avoidance tactics by
  Department personnel, even in situations involving "threats to [the]
  personal safety" of Department personnel. *See id.* at 24 (describing
  four use of force incidents and noting that in three of them, Department
  personnel used "de-escalation tactics, time and distance, planning, and
  brought resources to resolve situations with minimal force").

Accordingly, while not wholly universal in its praise of the Department's
performance during the time period examined, the Panel's assessment of the
Department's showing in the Eleventh Report acknowledged significant
improvement in the areas of concerns expressed in the Tenth Report.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

### E.   <u>The Panel's March 2023 Tour of the Downtown Jails Confirms a Change of Culture in the Jails</u>

During March 20-22, 2023, the Panel visited the Downtown LA Jails and conducted numerous interviews with inmates randomly selected by the Panel. Declaration of Robert Dugdale ("Dugdale Decl.") at ¶ 3.  In a marked departure from the time period that preceded the Settlement Agreement in this case, the Panel found that "across the board" inmates at the Downtown Jails were no longer concerned with their physical safety, either at the hands of guards or other inmates. *Id.* at ¶ 4.  Indeed, such complaints from the past by inmates have now been superseded with complaints about shower temperatures, alternating between extremes; trouble with toilets; and being served cold food; while, on the subject of the culture of physical abuse that gave rise to this litigation, inmates recognized a clear, positive change in the behavior and tone of Department personnel in the Jails.

### F.   <u>Uses of Force and Head Strikes in the Jails Have Continued to Decrease Under Sheriff Luna</u>

Since assuming office in December 2022, Sheriff Luna has taken a far more aggressive posture than his predecessor in implementing changes in the Jails to bring the Department into compliance with the Implementation Plan's requirements, and the data bears that out.

Preliminary data for 2023 indicates that the number of uses of force and head strikes in the Downtown LA Jails have continued to trend downwards under Sheriff Luna.  Through April 2023, there were just *239* uses of force in the Downtown Jails, down from *365* uses of force over the same period in 2022.  *See* Declaration of Commander Larry Alva ("Alva Decl.") at ¶ 4.   In addition, the number of instances when LASD Deputies have taken steps to <u>avoid</u> the use of force in the Jails has continued to rise this year, as there have been 2,739 documented prevented uses of force, up from 1,536 at this point last year.  *Id.* at ¶ 6.  Notably, this number far exceeds the number of times LASD Deputies actually resort to the use of force

Kendall Brill & Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1 against inmates.

2     **G.**     **Areas of Agreement Between the Parties With Regard to a**

3     **Compliance Plan and Other Corrective Actions the Department Is**

4     **Committed To Taking to Improve Its Compliance**

5     After nearly one year of extensive, productive, and good-faith negotiations on

6 both sides, the Parties have reached significant agreement on a joint compliance

7 plan which addresses the four key issues identified last May.  When these areas of

8 agreement are combined with additional corrective actions the Department is

9 committed to taking to improve its compliance, they form a robust set of measures

10 that are more than sufficient to bring the Department into compliance with the

11 remaining settlement provisions in this case.

12     As shown in the "LASD Proposed Compliance Plan" attached to this brief at

13 Exhibit A, the corrective actions jointly negotiated between the Parties, and those

14 additional corrective actions that the Department is willing to take, include the

15 following key provisions:[1]

16           **1.**     **Head Strikes**

17 • In May 2022, the Department issued a new prohibited force directive, which

18     implemented the specific limitations on the use of head strikes called for in the

19     Implementation Plan by providing that Department personnel may only employ

20     head strikes during a use of force if (1) the inmate is assaultive; (2) the inmate

21     presents an imminent danger of serious injury; and (3) there are no other more

22     reasonable means to avoid injury (the "Head Strike Directive").

23 • The Department has agreed that Plaintiffs' counsel and the Panel may review and

24     provide comment on the training provided by the Department to its personnel

25

26 ───────────

[1] Per the stipulation entered between the Parties on May 26, 2023, the Parties are

27 reserving any discussion and argument concerning any disputes that may exist with

28 regard to the Department's new "Prohibited Use of Force" policy and WRAP policy until the Parties file their responsive briefs on June 12, 2023.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

related to the Head Strike Directive.

- The Department will require its personnel to immediately notify medical staff any time a head strike is used.  Upon notification, any inmate subject to a head strike will be treated and evaluated confidentially by medical staff as expediently as practical if the person has visible injuries, and with reasonable urgency if the person has no visible injuries.  All notes taken by medical staff during this treatment and evaluation will be saved to the inmate's medical records.

- The Department will mandate that all personnel required to prepare a witness report relating to a use of force incident explicitly state whether they used any head strikes or saw any other LASD personnel use a head strike.  If the person preparing the report did use, or see another person use, a head strike, that person must:  (i) describe the head strike, including the number of head strikes; and (ii) describe the incarcerated person's behavior and conduct prior to the head strike.

- The Department will require all instances of head strikes to be expressly assessed in supervisors' use of force reviews.  Supervisors will be required to assess the head strike's compliance with each element of the Department policy, and to evaluate whether the explanation of the incident involving the head strike provided by Department personnel is materially consistent with other available evidence, including video footage and witness statements.

- The Department has agreed that it will rigorously track all head strikes through a "head strike tracker," prepared quarterly; which will track all head strikes by location and indicate whether specific deputies or custody assistants are using head strikes multiple times; and which will be regularly reviewed by LASD leadership in the Jails to uncover trends concerning the use of head strikes.

- The Department will provide the Panel and Plaintiffs' counsel with information about disciplinary outcomes with respect to uses of head strikes quarterly.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

### 2.   <u>Force Prevention</u>

- The Department will create a standardized reporting template which will require all personnel who use force implicated by the Department's limitations on force directive to expressly address: (1) whether the inmate was assaultive; (2) whether the inmate presented an imminent danger of serious injury to LASD personnel or others; and (3) whether there were other reasonable means to avoid serious injury.  Additionally, all LASD personnel who use force will be required to explain what they did to de-escalate and/or avoid the confrontation leading up to the use of force.

- The Department will require all personnel who prepare a witness report pursuant to a use of force incident to explain what the LASD personnel they witnessed did to de-escalate and/or avoid the confrontation leading up to the use of force.

- The Department will create a standardized review template for supervisors who review uses of force, which will require the supervisor to expressly evaluate Deputies' efforts to avoid and/or de-escalate uses of force, whether any head strike administered was consistent with LASD policy, and whether a Deputy's explanation for the use of force and/or head strike was materially consistent with other available evidence, including video evidence and witness statements.

- The Department has agreed to meet with Plaintiffs and the Panel to discuss their objections to the current 32-hour DeVRT training for force avoidance conflict resolution and proposed revisions to that training.

### 3.   <u>Accountability and Discipline</u>

- At the encouragement of the Panel, the Department is establishing a specialized, independent force review team consisting of no fewer than eight sergeants who will hold positions on this team dedicated solely to the review of all uses of force in the Jails (the "Independent Force Review Team").  The purpose of the Independent Force Review Team is to both expedite and improve the quality of

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

force reviews.  Initially, the Independent Force Review Team will focus on reviewing uses of force involving head strikes, the use of the WRAP, and category 2 uses of force in the Jails.[2]

- Until the Independent Force Review Team becomes operational, the LASD will "fast track" the review of all uses of force involving head strikes, and, as part of that process, the Assistant Sheriff of the Custody Division will personally review all use of force packets involving head strikes after the Jails' Commander reviews such uses of force, but on a timeline that will not preclude the imposition of discipline against Deputies under the Police Officer Bill of Rights who engage in head strikes that are in violation of Department policy.

- The Department will outfit all personnel in the Downtown Jails with BWCs.  As shown through a 2022 pilot program in which a group of Deputies at MCJ were equipped with BWCs, the use of BWCs not only provides an improved method for documenting uses of force, but has also proven to decrease the overall number of uses of force employed by Deputies.  The presence of BWCs appears to encourage both inmates and Deputies to conduct themselves better.

- The Department has agreed to work to expand its use of data to help ensure compliance and better identify areas of non-compliance with the Settlement Agreement's provisions.  In this regard, the Department is collecting data showing uses of force by category and by facility; uses of force involving head strikes; and data showing the use of the WRAP.  In addition, the Department is committed to exploring how it can track uses of force by the type of housing where a use of force occurred, as well as how it can track the number of force incidents for which violations have been found, the Implementation Plan or Use

---

[2]  Category 3 uses of force, the most serious uses of force in the Jails, are automatically referred to the Department's Internal Affairs Division for review.

DEFENDANT'S OPENING BRIEF ADDRESSING DEFENDANT'S PROPOSED COMPLIANCE PLAN

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

of Force manual provision violated, and the discipline imposed.

- Subject to this enhanced effort to track data relevant to uses of force in the Jails, the Department will provide to Plaintiffs' counsel and the Panel the following information relating to the discipline of Department personnel on a quarterly basis:  data on the number of force incidents for which violations were found, the Implementation Plan provision or Department Use of Force manual provision violated, and the discipline imposed as a result of the violation found.

Essentially, the Department is committed to professionalizing and standardizing its use of force reporting and supervisory review process at every step. This includes the creation of a central and independent unit of supervisors whose sole job will be to review use of force reports in the Jails,[3] a significant structural reform which the Department is committing to take in its effort to reach full compliance with the Implementation Plan's outstanding provisions.  The Department, taking its cue from the Panel, believes professionalizing the report and review process is a targeted and realistic goal that will yield positive results in all four areas that are the focus of the Department's Compliance Plan and will help the Department come into full compliance with all of the Implementation Plan's provisions.  Furthermore, by creating a standardized process for deputies and witnesses to report uses of force in the Jails which expressly requires the disclosure

---

[3]  Traditionally, supervisory review of use of force reports has been done on an ad hoc basis by whichever supervisors happen to be available, and without consistent, standardized guidelines as to the specific factors that supervisors need to assess in their reviews, leading to variations in the quality of force reviews.  Additionally, reviews are currently conducted by the same supervisors who oversee the Deputies involved in a particular use of force report.  The Panel has raised issues with this system, and it has repeatedly touted the idea that the creation of a central, independent force review unit within the Department would be a potential game changer in the area of improving the manner in which the Department holds Deputies accountable for uses of force which violate Department policy.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

and explanation of key information relevant to Department policy; by fully employing BWCs in the Jails that will better document uses of force; and by establishing a centralized and independent unit to assess whether uses of force are consistent with the Department's use of force policies, and to impose appropriate discipline on Deputies who use force in violation of LASD policy, the Department is confident that overall uses of force and the use of head strikes will continue to decline in the Jails and that uses of force which violate LASD policy will receive better quality scrutiny and be reviewed much faster, leading to improved accountability within the Department.  The Department believes that a Compliance Plan anchored by these principles is sufficient to move it to full compliance with the Settlement Agreement and Implementation Plan.

### H.  Compliance Plan Areas of Disagreement

Notwithstanding these significant areas of agreement and meaningful steps the Department is willing to take to improve its performance in the four areas subject to the Parties' discussions, the Parties have reached an impasse on certain terms of a potential joint Compliance Plan.  The main areas of disagreement appear to be: (1) what policy should apply to the use of head strikes; (2) whether there is a need for mandatory discipline for Deputies whenever they violate certain Department policies, specifically violations of whatever head strike policy is ultimately adopted by the Department, any failures to engage in force prevention, any dishonesty in force reporting, and any failures by supervisors to identify violations of these policies and hold personnel accountable for such violations; and (3) whether certain other miscellaneous provisions should be included in a Compliance Plan.[4]

---

[4]  Among other areas of disagreement, the Department has agreed to significantly increase the amount of information about uses of force, head strikes, and disciplinary outcomes that it gathers and reports to Plaintiffs and the Panel, but it has not agreed to all of Plaintiffs' requests in this vein, because it is not feasible for

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

DEFENDANT'S OPENING BRIEF ADDRESSING DEFENDANT'S PROPOSED COMPLIANCE PLAN

In some areas, the Parties agree that changes are appropriate, but disagree as to the scope of the change.  For example, the LASD has agreed to change its prior head strike policy so head strikes are only permissible if (i) an inmate is assaultive; (ii) an inmate presents an imminent danger of serious injury; and (iii) there are no other more reasonable means to avoid serious injury.  Plaintiffs believe that this policy represents an improvement as compared to the Department's prior head strike policy but nonetheless believe the Department's head strike policy should be even more restrictive so that head strikes are only permitted when a use of deadly force is justified—*i.e.,* where an inmates' actions place a Deputy's life at risk.

In other areas, the divide between the Parties' respective positions is more significant.  For instance, Plaintiffs believe for certain policy violations by Department personnel, such as violations of the Department's policy governing head strikes and its policy governing dishonest reporting on a use of force report, the Department needs to impose strict mandatory penalties.  In contrast, the Department's position is that it will "not 'mandate' discipline in any case, as each disciplinary decision is based on the individual circumstances of the case and the individual involved."  As explained in the Parties' recent Joint Status Report, the LASD believes it would be unjust to impose mandatory punishments on Department personnel for violations of LASD policy without consideration of factors such as (1) an employee's service record, including any prior disciplinary history; (2) the severity of a use of force and the seriousness of the violation; and (3) other relevant circumstances in aggravation or mitigation.  *See* Dkt. 240 at 7-8.  Furthermore, even if the Sheriff were inclined to transform the Department's disciplinary system so as to discount the individual circumstances in cases in favor of strict mandatory-minimum penalties that fail to look at violations of policy in a holistic and fair fashion—which he is not—the Sheriff cannot unilaterally impose such changes to the Department to track all of the information Plaintiffs would like tracked.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

DEFENDANT'S OPENING BRIEF ADDRESSING DEFENDANT'S PROPOSED COMPLIANCE PLAN

the Department's disciplinary processes without violating the Department's obligation to negotiate such matters with the labor representative of the Department's employees and without triggering civil service hearing outcomes in which discipline is ultimately overturned and erased.  *Id.*  The Department does not believe Plaintiffs have demonstrated that these mandatory-minimums sanctions are necessary, particularly since LASD personnel have been suspended and in some cases terminated for violations of its use of force policy.  *Id.*

Likewise, the Department cannot agree to a proposal by Plaintiffs that would have the Office of the Inspector General ("OIG") serve as a "tiebreaker" in situations where the Department finds a use of force is permissible but the Panel believes a violation occurred, and levy decisions that would result in a $10,000 "contempt fine" on each occasion when the OIG rules against the Department. While the Sheriff appreciates and respects the oversight that the OIG exercises over the Department, Plaintiffs' proposal represents an unprecedented expansion of the OIG's powers that Plaintiffs have never attempted to justify in any discussion the Parties have held concerning a potential joint Compliance Plan.  There is also nothing in the Settlement Agreement that would authorize the OIG to find that Department personnel have violated LASD policy and to impose "contempt fines" in a case where the Department has never been held in contempt.

## III.   PLAINTIFFS' EXTREME PROPOSALS BEYOND THOSE AGREED TO BY THE DEPARTMENT ARE UNWARRANTED

### A.   Plaintiffs' Proposal to Effectively Ban Head Strikes Is Unjustified and Will Endanger the Safety of Department Personnel

Even though the Department adopted an extremely restrictive head strike policy one year ago, and even though the available evidence suggests this new policy is working to reduce the occurrence of head strikes in the Jails dramatically, Plaintiffs have advocated that the Department adopt an even stricter policy.  The Department will reserve comment on this proposal until after Plaintiffs file their

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

opening brief.  Suffice to say, however, that the Department's newly implemented head strike policy directly tracks the requirements that the Parties and the Panel agreed long ago should comprise an appropriate head strike policy; it has succeeded in drastically reducing the use of head strikes in the Jails; it severely curtails the use of head strikes at the same time it protects Deputies from unavoidable serious bodily harm that could be inflicted on them by assaultive inmates; and it is consistent with head strike policies used at other jails.

On May 11, 2022, the Department implemented a new head strike directive advising LASD personnel that head strikes may only be employed during a use of force if (1) an inmate is assaultive; <u>and</u> (2) an inmate presents an imminent danger of serious injury; <u>and</u> (3) there are no other more reasonable means to avoid serious injury.  This policy is appropriate for a number of reasons.

First, this policy directly tracks the head strike policy the Department is required to implement pursuant to the terms of the Settlement Agreement, and thus reflects what the Parties bargained for in this case to appropriately eliminate impermissible head strikes.  Specifically, the Implementation Plan requires the Department to implement a head strike policy which would only allow for head strikes to be used if an "inmate is assaultive and presents an imminent danger of serious injury to a Department member or another person and there are no other more reasonable means to avoid serious physical injury."  *See* Implementation Plan § 2.6 (Dugdale Decl. at ¶ 1; Exh. A).  There can be no disputing that the Department's policy does exactly what is required under the Implementation Plan.

Second, by all indications, the Department's new head strike policy has succeeded in dramatically decreasing the number of head strikes in the Jails, and there is no data signaling the need for an even more restrictive policy.  In 2021, before the Department's new, restrictive head strike policy was enacted, there were *81* head strikes employed in IRC, MCJ, and TTCF combined; in 2022, that number decreased to *51*; and through the first four months of 2023, under Sheriff Luna,

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

18
DEFENDANT'S OPENING BRIEF ADDRESSING DEFENDANT'S PROPOSED COMPLIANCE PLAN

those three facilities have seen just *16* combined head strikes in total.  *See* Dkt. 238 at 7; Alva Decl. at ¶ 5.  These figures, which essentially show about **one** head strike per month in each of the Downtown Jail facilities, represent a miniscule percentage of the overall uses of force in the Downtown Jails.  The Department sees no reason, and does not believe that the Plaintiffs have put forward any reason, compelling yet another change in policy, given that the Department changed this policy just last year, and given that the newly implemented policy appears to be successfully limiting the use of head strikes during uses of force.  Furthermore, the Department has already invested a significant amount of time and resources in communicating the new head strike policy throughout the Department's Custody Division over the past year, an effort which has been recognized and commended by the Panel.  Requiring the Department to start over with yet another policy will simply cause confusion among Deputies, and will waste limited Department resources better utilized elsewhere than attacking an area where the Department is clearly improving.

Third, the Department is concerned that amending its head strike policy to be even more restrictive will endanger the safety of Department personnel working in the Jails.  The Department reserves the right to elaborate on this point upon reviewing Plaintiffs' proposed revisions to the Department's head strike policy.

Finally, the Department's current head strike policy is consistent with the head strike policies used by other carceral facilities across in United States.  Indeed, when the Department asked the Panel to provide it with an example of another jail with a comparable policy prohibiting the use of head strikes, the Panel's members cited the use of force policy in place at Riker's Island in New York, another large jail facility currently subject to monitoring as a result of prior allegations of excessive uses of force.  Dugdale Decl. at ¶ 5.  That policy is the same, for all practical purposes, as the restrictive head strike policy that has been implemented by

**Kendall Brill & Kelly LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

19
DEFENDANT'S OPENING BRIEF ADDRESSING DEFENDANT'S PROPOSED COMPLIANCE PLAN

the Department.[5]

Notwithstanding each of these issues, the Department fully recognizes that head strikes are potentially dangerous (which is why its new policy severely restricts when they can be employed).  The Department shares a common goal with Plaintiffs to eliminate all unjustified head strikes; and it has agreed to take those steps necessary to mitigate the health effects of head strikes when they do occur. Accordingly, the Department has included, as elements of its proposed Compliance Plan, provisions intended to ensure that all head strikes are accurately reported and tracked; that inmates subject to head strikes receive immediate medical attention; that all head strikes are thoroughly reviewed and scrutinized to determine whether they comply with Department policy; and that there is full transparency around the disciplinary process related to head strikes which violate Department policy.  At this time, the Department does not believe additional restrictions on head strikes are necessary to move it to full compliance with the Settlement Agreement, particularly given the Department's encouraging progress on this issue over the past 18 months.

### B. Plaintiffs' Proposal To Implement Mandatory-Minimum Disciplinary Punishments Is Unwarranted, Unfair, and Cannot Be Unilaterally Imposed by the Sheriff Without Violating the Collective Bargaining Rights of the Department's Personnel

Plaintiffs' proposal to implement-mandatory minimum punishments for use

---

[5]  The Riker's Island policy cited to the Parties by Monitor Nicholas Mitchell "strictly prohibits the use of high impact force" against inmates, which the New York City Department of Corrections defines as "strikes or blows to the head, face, groin, neck, kidneys, or spinal column."  Dugdale Decl. ¶ 5, Exh. B.  However, it carves out an exception to that "strict prohibition" for cases where correctional officers face "imminent danger of serious bodily injury or death, and where lesser means are impractical or ineffective."  *Id.*  Accordingly, like LASD's head strike policy, the Riker's Island policy permits head strikes where an inmate is assaultive, where the inmate's actions pose an "imminent danger of serious bodily injury [or superfluously "death"], and "where lesser means are impractical or effective."  *Id.*

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

DEFENDANT'S OPENING BRIEF ADDRESSING DEFENDANT'S PROPOSED COMPLIANCE PLAN

of force violations committed by Department personnel—without regard as to any

mitigating, extenuating, or discretionary analysis—is unwarranted, fundamentally

unfair, and would violate the Department's Collective Bargaining Agreement with

the Association for Los Angeles Deputy Sheriffs ("ALADS").  As with Plaintiffs'

proposal on head strikes, Plaintiffs have not satisfied their burden of putting forward

facts which come anywhere close to justifying their proposal.  While the

Department is committed to improving accountability for violators of Department

policy and to provide greater transparency to Plaintiffs and the Panel with respect to

disciplinary outcomes for use of force policy violations, imposing mandatory-

minimum punishments for Department personnel who violate use of force policies is

simply not practical, nor called for at this time.

First, an effective but more flexible approach is being taken by Sheriff Luna,

to ensure that Deputies who engaging in wrongdoing at the Jails are held

accountable for their actions.  As noted above, since taking office in December

2022, Sheriff Luna has already agreed to undertake a number of significant

corrective actions to increase Deputy accountability and to increase the reliability

and consistency of the use of force review process.  These actions include:  (1)

standing up the Independent Force Review Unit; (2) requiring that uses of force be

reported in certain ways to ensure clarity as to whether they were, or were not,

committed in a manner consistent with Department policy; (3) requiring that those

reviewing uses of force explicitly examine whether policy violations occurred and

whether statements made by Deputies about uses of force are materially consistent

with other evidence, including video evidence; and (4) committing to equipping all

Deputies in the jails with BWCs.  Sheriff Luna should be given an opportunity to

implement this disciplinary system within the Department and demonstrate its

efficacy.

Second, Plaintiffs' proposed policy would eliminate the Department's

discretion in disciplining its own personnel.  The new disciplinary system Plaintiffs

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

propose would impose mandatory punishments on Department personnel who violate a use of force policy—in many cases a suspension in the case of a first violation—and would prohibit the Department from taking any mitigating or extenuating factors into account when determining the appropriate discipline imposed in a case.  By contrast, the disciplinary process the Department has in place takes into account all of the individual circumstances surrounding a policy violation and the individual who engaged in actions outside of policy, and progressively punishes offenders who engage in repeated policy violations.  It is thus fairer than the system proposed by Plaintiffs.  The Department imposes discipline on a case-by-case basis in accordance with the Department's Disciplinary Guidelines, which take into account discretionary factors such as a violators' previous history of violations, the nature of the force used, and other extenuating circumstances, and has resulted in suspensions and in some cases the termination of Department personnel in the Jails for violations of the LASD's use of force policy.  There is no reason, and Plaintiffs have not put forward any reason, to deviate from the Department's Disciplinary Guidelines at this time, particularly without first providing Sheriff Luna a fair opportunity to show how he intends to hold Deputies accountable for policy violations under the Department's current disciplinary system.

Finally, the Sheriff lacks the authority to unilaterally make the kind of changes to the Department's disciplinary policies advocated by Plaintiffs without negotiating these changes with ALADS, the union which represents the labor concerns of LASD Deputies.  Indeed, there is currently a court order in place which makes it clear the Sheriff has an obligation to collectively bargain with ALADS over any changes to the disciplinary system in place at the Jails.  *See County of Los Angeles v. Los Angeles County Employee Relations Commission*, Notice of Ruling, Case No. 20STCP3034 (L.A. Super. Ct. Sept. 16, 2021) (the "ERCOM Decision").[6]

_____

[6]  This decision is attached as Exhibit C to the Declaration of Robert E. Dugdale.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

DEFENDANT'S OPENING BRIEF ADDRESSING DEFENDANT'S PROPOSED COMPLIANCE PLAN

In the ERCOM Decision, the Honorable James C. Chalfant ruled the County and the Sheriff have an obligation under Los Angeles County Code Chapter 5.04 (commonly known as the "Employee Relations Ordinance" or "ERO") to bargain with ALADS regarding any changes to the disciplinary guidelines imposed as a result of the Settlement Agreement in this very case, and Judge Chalfant sustained a finding by the Los Angeles County Employee Relations Commission striking an attempt by the County and the Sheriff to unilaterally change such disciplinary guidelines without first negotiating those changes with ALADS.  Accordingly, as this decision makes clear, the Department lacks the authority to unilaterally implement Plaintiffs' proposal to alter the Department's disciplinary regime by replacing its current range of potential disciplinary sanctions with a policy that imposes mandatory-minimum punishments, and attempting to do so would certainly result in a protracted legal dispute with ALADS.  The Court should therefore allow Sheriff Luna to begin implementing his new agenda with respect to accountability and discipline before ordering the Department to take action that will likely result in litigation that consumes the Parties' and the Court's limited time, energy, and resources.

## C.      Additional Potential Areas of Disagreement

Plaintiffs may seek to put other issue before this Court and advocate that they should be included as part of a court-ordered Compliance Plan.  If so, Defendants will respond to them in further briefing this Court has asked the Parties to provide on June 12, 2023.[7]

---

[7]  Another key aspect of this case, pushed for years by the Panel, is that the Parties come to an agreement regarding provisions in the Implementation Plan which no longer merit monitoring because the Department has achieved substantial compliance with such provisions for a substantial period of time.  To that end, the Department has provided Plaintiffs' counsel with a list 54 provisions for which the Department has achieved compliance for between 27 and 66 months and counting. Dugdale Decl. ¶ 7, Exh. D.  Today, Plaintiffs' counsel agreed that monitoring can

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

23

DEFENDANT'S OPENING BRIEF ADDRESSING DEFENDANT'S PROPOSED COMPLIANCE PLAN

## IV. <u>CONCLUSION</u>

For each of the foregoing reasons, this Court should adopt the Compliance Plan proposed by the Department, which is attached to this brief as Exhibit A.

DATED:  May 31, 2023                 KENDALL BRILL & KELLY LLP

                                     By:    /s/ Robert E. Dugdale
                                     _____
                                     Robert E. Dugdale
                                     Attorneys for Robert Luna, Sheriff of Los
                                     Angeles County, in his Official Capacity

---

cease as to 5 of those provisions and identified others on the Department's list which do not have self-assessment requirements, and therefore, at least in Plaintiffs' view, should still be subject to continued Monitoring.  *Id.*  The Parties will continue to negotiate this aspect of this case and will seek the Court's intervention if needed.

DEFENDANT'S OPENING BRIEF ADDRESSING DEFENDANT'S PROPOSED COMPLIANCE PLAN

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067