OFFICE OF COUNTY COUNSEL
Dawyn Harrison (173855)
County Counsel
  *dharrison@counsel.lacounty.gov*
Dylan Ford (228699)
Deputy County Counsel
  *dford@counsel.lacounty.gov*
Robert C. Bailey (249813)
Deputy County Counsel
  *rbailey@counsel.lacounty.gov*
500 West Temple St., Floor 6
Los Angeles, California 90012
Telephone: 213.974.1811
Facsimile: 213,687.8822

KENDALL BRILL & KELLY LLP
Robert E. Dugdale (167258)
  *rdugdale@kbkfirm.com*
Daniel Barlava (334910)
  *dbarlava@kbkfirm.com*
10100 Santa Monica Boulevard, Suite 1725
Los Angeles, CA 90067
Telephone: 310.556.2700
Facsimile: 310.556.2705

Counsel for Defendant
Robert Luna, Sheriff of Los
Angeles County, in his Official Capacity

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ALEX ROSAS and JONATHAN GOODWIN on behalf of themselves and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ROBERT LUNA, Sheriff of Los Angeles County, in his official capacity,<br>Defendant. | Case No. 12-cv-00428 DDP (MRW)<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY IMPLEMENTATION PLAN**<br><br>Judge:      Dean D. Pregerson<br>Time:       10:00 a.m.<br>Date:       June 26, 2023<br>Courtroom:  9C |

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603379362

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY IMPLEMENTATION PLAN

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ..................................................................................... 1

II.  ARGUMENT ........................................................................................... 4

A.  PLAINTIFFS HAVE NOT MET THE HIGH STANDARD THEY MUST MEET UNDER FRCP 60(b) TO JUSTIFY ADDING ENTIRELY NEW AND DIFFERENT REQUIREMENTS TO THE PARTIES' THOROUGHLY-NEGOTIATED IMPLEMENTATION PLAN ...................................... 4

1.  The Department Has Substantially Complied with Its Obligations in this Case, and the Degree of Its Non-Compliance Does Not Justify a Modification of the Implementation Plan Under FRCP 60(b) ...................................................................................... 5

   a.  Modification of the Implementation Plan Under FRCP 60(b) Justified Is Not Given the Department's Substantial Compliance with the Implementation Plan's Overall Terms ...................................... 5

   b.  The Department Has Made Significant Progress Toward Reaching Full Compliance with the Implementation Plan, and Has Committed to Additional Remedial Measures, Further Precluding Modification of the Implementation Plan Under FRCP 60(b) ...................................................................................... 9

      (1) Head Strike ............................................................................... 9

      (2) Use of the WRAP ................................................................... 14

      (3) Accountability ........................................................................ 18

2.  Plaintiffs' Proposed Modifications to the Implementation Plan Are Not Justified Because They Are Not Suitably Tailored to Address Any Current Non-Compliance With The Implementation Plan .............................................................................. 19

   a.  Plaintiffs' Proposal to Revise the Department's Head Strike Policy is Vague, Unjustified, and Unnecessary; and, Depending on What It Even Means, Could Endanger Department Personnel ............................................................... 19

   b.  A Ban on the Use of the WRAP, to the Extent That Is Even What Plaintiffs Are Requesting, Is Not Justified .............. 21

   c.  Plaintiffs' Proposal That the Court Modify the Implementation Plan to Include Mandatory-Minimum Disciplinary Punishments Seeks a Legally Unsupported Intrusion into the Department's Disciplinary Process That Is Unfair and Unnecessary ............................................................ 23

III.  CONCLUSION ..................................................................................... 25

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603379362

ii

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY IMPLEMENTATION PLAN

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*David C. v. Leavitt*,
242 F.3d 1206 (10th Cir. 2001) ........................................................................ 14

*Holland v. New Jersey Dept. of Corrs.*,
246 F.3d 267 (3d Cir. 2001) ............................................................................... 7

*Kelly v. Wengler*,
822 F.3d 1085 (9th Cir 2016) ............................................................................. 6

*Labor/Cmty. Strategy Ctr. v. L.A. Cnty. Metro. Transp. Auth.*,
564 F.3d 1115 (9th Cir. 2009) ..................................................................... 4, 6, 7

*Michenfelder v. Sumner*,
860 F.2d 328 (9th Cir. 1988) ............................................................................ 23

*Rufo v. Inmates of Suffolk Cnty. Jail*,
502 U.S. 367 (1992) ........................................................................................... 4

*South v. Rowe*,
759 F.2d 610 (7th Cir. 1985) .......................................................................... 6, 7

*Thompson v. U.S. Dep't of Hous. & Urban Dev.*,
404 F.3d 821 (4th Cir. 2005) ...................................................................... 14, 17

**Statutes**

18 U.S.C. § 3626 ................................................................................................ 24

Cal. Penal Code § 835 ....................................................................................... 20

**Rules**

Federal Rule of Civil Procedure 60(b) ......................................................... *passim*

**Kendall Brill & Kelly LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603379362

iii

## I.    INTRODUCTION

Granting a motion to modify a settlement agreement - or in this case aspects of an implementation plan incorporated into a settlement agreement - is an extraordinary remedy, and, in their reams of briefing, Plaintiffs cite no case (because none exists) where a court has accepted an invitation to modify aspects of a thoroughly-negotiated agreement pursuant to Federal Rule of Civil Procedure 60(b) ("FRCP 60(b)") and micromanage the policies and disciplinary practices crafted by trained law enforcement professionals in a carceral environment in the manner that Plaintiffs advocate.  This Court should decline Plaintiffs' invitation to do so here.

In their Motion, Plaintiffs ask this Court to modify the Implementation Plan in this case by (1) forcing the Department to replace its current, restrictive head strike policy with a vague policy that bans head strikes unless the use of deadly force is justified, without explaining what that means or how such a policy would differ from the Department's current policy; (2) requiring the Department to upend its disciplinary policy, which allows for discipline to be imposed based on the particular circumstances unique to every disciplinary matter and the history and characteristics of every purported offender, in favor of one that imposes mandatory-minimum penalties, regardless of the circumstances in a case; and (3) mandating other unspecified modifications to the Department's force prevention policies and a policy concerning the Department's use of the WRAP restraint device.   None of these modifications are justified under FRCP 60(b), which requires that a party be much more severely deficient in complying with a settlement agreement's requirements before new requirements may be piled on a party without its consent, and that any modifications imposed must be suitably and narrowly tailored to a party's level of compliance, which is certainly not true of the intrusive, and ultimately unnecessary, modifications to the Implementation Plan Plaintiffs seek.

First, the Department has substantially complied with the Implementation Plan as a whole, certainly in a manner well beyond the degree of compliance courts

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603379362

1

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY IMPLEMENTATION PLAN

have determined would justify adding terms to an agreement pursuant to FRCP 60(b).  The Department has fully complied with nearly 80 percent of the agreement's 100 provisions (and has been in compliance with many of them for at least three years and counting); it has put forward specific, effective, and actionable proposals to show the required improvement in the four areas that are Plaintiffs' focus—curbing the use of head strikes; appropriately avoiding uses of force; using the WRAP in a safe manner; and accountability.  Faced with these facts, Plaintiffs have not offered this Court a single legal authority suggesting this level of compliance qualifies as a sufficiently "substantial violation" of a settlement agreement to justify adding new provisions, years after the fact, into a settlement agreement under FRCP 60(b).  Instead, the case law—including the cases cited by Plaintiffs—overwhelmingly makes clear that the Department has substantially complied with its obligations in this case, thereby precluding the extraordinary remedy Plaintiffs seek.

Second, the "changed circumstances" in this case which should matter most when determining whether modifications to the Implementation Plan are justified now are those which reflect the current conditions as to the matters Plaintiffs address.  These current conditions include the fact that:  (1) the use of head strikes has dramatically fallen since the Department imposed a stringent new head strike directive in May 2022 and are nearly certain to plummet even further as the Department implements even more corrective actions on top of those it has already taken to curb head strikes; (2) the use of the WRAP in the jails has fallen precipitously in the past year as well, as the Department has restricted its use, and the Department is prepared to adopt a stringent policy which incorporates numerous recommendations made by Plaintiffs' counsel and the Monitoring Panel (the "Panel") aimed at making the use of the WRAP safer and setting the gold standard for the safe use of this device used by over 2,000 organizations around the United States, including federal, state, and local law enforcement agencies; (3) Department

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603379362

2

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY IMPLEMENTATION PLAN

personnel are presently employing force avoidance and de-escalation at unprecedented levels; and (4) the new Sheriff and his administration have made significant changes to enhance accountability within the Department when it comes to uses of force through proven methods for improving accountability—including methods recognized by Plaintiffs' experts. For the most part, Plaintiffs ignore this current state of affairs in the hundreds of pages of materials they have filed with this Court, and instead focus almost exclusively on uses of force committed years ago, under old policies, and under a former Sheriff's administration, as well as practices that will change due to new policies and practices instituted by the new Sheriff.

Third, Plaintiffs' Motion ignores the outcome of more than a year of negotiations between the parties over a plan to achieve ultimate compliance in this case. That outcome is that the Sheriff has committed to following dozens of recommendations by the Panel and Plaintiffs, and must devote mammoth resources to ensure those commitments are honored. Meanwhile, Plaintiffs have refused to lessen the Department's burden to any significant degree when it comes to reporting on provisions in the current agreement for which the Department has been in sustained compliance *for years*. The Department provided to Plaintiffs a list of 33 provisions or sub-provisions that have been in compliant status for close to three years or more and asked that they be moved to non-reporting status. Such movement would allow the Department to focus its resources on the outstanding issues considered by Plaintiffs to be foremost in importance. Plaintiffs, however, refused this request for all but five provisions. Despite this inflexibility on the part of Plaintiffs, the Department has demonstrated its commitment to compliance through the process ordered by this Court. The negotiations' outcome demonstrates that a court-ordered modification of the Implementation Plan is not only legally unjustified, but also factually unnecessary.

Finally, even assuming, counter-factually, the Department's non-compliance with the Implementation Plan in any way mirrors noncompliance that would justify

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603379362

3

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY IMPLEMENTATION PLAN

relief under FRCP 60(b), Plaintiffs' proposed modifications to the Implementation Plan are not "suitably tailored" towards bringing the Department into full compliance with the Implementation Plan.  Rather, Plaintiffs' far-reaching, vague, and inflexible proposed remedial measures far exceed what is required of the Department under the extensively-negotiated Implementation Plan and what is necessary for the Department to reach compliance with the remaining provisions at issue, all while imposing a significant burden on the Department and involving a degree of meddling in Department procedures and practices that finds no support in the law.  Accordingly, the Court should deny Plaintiffs' Motion in its entirety and instead should adopt the compliance plan the Department submitted to the Court on May 31, 2023, which charts a much clearer path to bring the Department in compliance with its obligations in this case.

## II.    ARGUMENT

### A.    PLAINTIFFS HAVE NOT MET THE HIGH STANDARD THEY MUST MEET UNDER FRCP 60(b) TO JUSTIFY ADDING ENTIRELY NEW AND DIFFERENT REQUIREMENTS TO THE PARTIES' THOROUGHLY-NEGOTIATED IMPLEMENTATION PLAN

A federal court may modify a court-ordered settlement agreement only where "changed factual conditions" make compliance with the agreement "substantially more onerous," where the agreement "proves to be unworkable because of unforeseen obstacles," or "when enforcement of a decree without modification would be detrimental to the public interest."  FRCP 60(b); *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 384 (1992).  A party seeking to modify a settlement agreement based on the other party's non-compliance must show (1) a "failure of substantial compliance" by one of the parties; and (2) that modification of the agreement is "suitably tailored to resolve the problems" created by the non-compliant party's substantial violations.  *Labor/Cmty. Strategy Ctr. v. L.A. Cnty. Metro. Transp. Auth.*, 564 F.3d 1115, 1120 (9th Cir. 2009) (affirming denial of

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603379362

4

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY IMPLEMENTATION PLAN

plaintiff's motion to extend a consent decree where a defendant had "substantially complied," but not fully complied, with its provisions).  Both conditions must be met for the Court to modify the Implementation Plan over the Department's objections.  Neither one is met, and Plaintiffs' Motion should therefore be denied.

**1.  The Department Has Substantially Complied with Its Obligations in this Case, and the Degree of Its Non-Compliance Does Not Justify a Modification of the Implementation Plan Under FRCP 60(b)**

Plaintiffs have not come close to meeting their burden of demonstrating "extraordinary" and "substantial" violations of the Implementation Plan necessary to justify a modification of that agreement under FRCP 60(b).  The Department is in compliance with the majority of the Implementation Plan's provisions, and it has worked, and continues to work, in good faith to address the core objectives of the Implementation Plan and to eliminate the culture of excessive violence which gave rise to this litigation, efforts the Panel has affirmed as successful.  To the extent the Department has not yet reached full compliance with certain Implementation Plan provisions, the Department has taken substantial and effective measures that have led to significant progress in the past year, after the Panel issued its 10th Report.  Notwithstanding this progress, the Department has agreed to implement a detailed compliance plan with additional remedial measures that directly address the small number of Implementation Plan provisions with which the Department has not yet reached full compliance.  *See* Dkt. 251, Exh. A.  Because the Department has substantially complied with the Settlement Agreement to date, and has committed to adopt additional remedial measures in order to reach full compliance in this case, there is no legal authority that justifies imposing the modifications Plaintiffs request.

**(a)  Modification of the Implementation Plan Under FRCP 60(b) Is Not Justified Given the Department's Substantial Compliance with the Implementation Plan's Overall Terms**

The Department's substantial compliance with the Implementation Plan as a

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

whole precludes the imposition of new, material obligations under FRCP 60(b), an extraordinary remedy reserved for flagrant and willful violations of a court order. Indeed, as cases cited in Plaintiffs' opening brief make clear, a failure to achieve "full compliance" with a court-ordered settlement agreement is ***not*** a valid legal basis to modify the agreement pursuant to FRCP 60(b). *See, e.g., Labor/Cmty. Strategy Ctr.*, 564 F.3d at 1122. Rather, a federal court retains discretion to modify a court-ordered agreement only where one of the parties has failed to "substantially comply" with the agreement. *See id.* at 1121; *Kelly v. Wengler*, 822 F.3d 1085, 1098 (9th Cir 2016) (recognizing that a "substantial violation of a court order" is necessary to justify modification under FRCP 60(b)); *see also South v. Rowe*, 759 F.2d 610, 614 (7th Cir. 1985) (holding a party's violation of a consent decree does not justify a modification unless the violation is "extraordinary").

Here, Plaintiffs have not demonstrated the Department has committed "substantial violations" of the Implementation Plan, particularly when looking at the current state of affairs, as this Court should. As discussed in the Department's Brief Addressing the Department's Proposed Compliance Plan, the Department has made significant progress in remedying the conduct in the jails that initially gave rise to this litigation. *See* Dkt. 251 at 7-15. The Department is currently in compliance with nearly 80 percent of the Implementation Plan's 100 provisions, and it has achieved sustained compliance with 54 of its provisions for at least 30 months and counting. The Department's attentiveness to the Settlement Agreement's core principles has further resulted in a substantial decrease in the number of instances where deputies in the LACJ have used force on inmates, along with a material increase in the number of instances where deputies have effectively de-escalated and avoided uses of force. Furthermore, as affirmed by the Panel, the Department has remedied many of the core, fundamental issues which gave rise to this litigation in the first place, including by eliminating egregious "inmate beatings," and by achieving a "change in culture of the downtown facilities from enforcement-oriented

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603379362                                    6

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY IMPLEMENTATION PLAN

to service-oriented." *See* Dkt. 205 (Panel's 10th Report) at 1.  As a result, the majority of inmates in the Jails are no longer "feeling concerned about being subjected to excessive force by staff," or concerned with their physical safety.  Dkt. 238 (Panel's 11th Report) at 6.  The Department has complied, in good faith, with the spirit of the Settlement Agreement and achieved many of its key objectives.  This precludes modification of the Implementation Plan under FRCP 60(b).  *See, e.g., Labor/Cmty. Strategy Ctr.*, 564 F.3d at 1122-23 (rejecting motion to extend consent decree where defendant had "substantially complied with…the overall scheme of things"); *Holland v. New Jersey Dept. of Corrs.*, 246 F.3d 267, 283-84 (3d Cir. 2001) (reversing district court's order extending consent decree, despite the defendant's failure to comply with a key provision of the agreement).

Plaintiffs have failed to provide a single authority justifying the modification of the Implementation Plan under FRCP 60(b) by adding new requirements, which case law makes clear is an "extraordinary" remedy reserved for substantial violations of court orders.  *See Rowe*, 759 F.2d at 614.  To start, the cases Plaintiffs cite almost all concern requests for "extensions" of court-ordered agreements as a result of a party's alleged non-compliance—i.e., the continuation of terms already agreed upon—not requests to impose new obligations on the allegedly non-compliant party.  Furthermore, in nearly all of the cases Plaintiffs cite, the courts *rejected* motions to extend the agreements at issue, notwithstanding the defendants' failures to reach full compliance with them.  *See Labor/Cmty. Strategy Ctr.*, 564 F.3d at 1122-23; *New Jersey Dept. of Corrs.*, 246 F.3d at 283-84 (3d Cir. 2001) (reversing district court's order extending consent decree based on non-compliance because "plaintiffs' approach would in effect lead to the modification power swallowing the compliance enforcement power—every act of non-compliance would also be a changed circumstance, potentially justifying modification").

In fact, in the only case cited by Plaintiffs in which a court actually granted a modification to a consent decree under FRCP 60(b), the facts are so distinguishable

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603379362

7

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY IMPLEMENTATION PLAN

as to render that case wholly inapposite. *Kelly* involved a consent decree entered into by the Idaho Corrections Center ("ICC") regarding its failure to hire an adequate number of security guards necessary to protect inmates from assault by other inmates. *Id.* at 1091. The parties entered into a settlement agreement whereby the ICC stipulated to increase its staffing. *Id.* About two years later, it came to light that the ICC had "falsified staffing records" to represent compliance with the agreement, when, in fact, the ICC had not complied at all, and mandatory positions were regularly left vacant. *Id.* at 1091-92. As a result, the district court held the ICC in contempt of court, extended the settlement agreement, and required the hiring of an independent monitor to verify the ICC's compliance from that point forward. *Id.* at 1093. The Ninth Circuit affirmed the district court's order, as there was "clear and convincing evidence" that the defendant was in "substantial violation" of the agreement and had "failed to take several reasonable steps to ensure compliance." *Id.* at 1096, 1098. Here, in contrast, there has been no demonstration of fraud or bad faith on the part of the Department, nor a finding it is in contempt of court. And notably, even in *Kelly*, where the defendant had engaged in outright fraud to evade its obligations, while the court ordered the extension of the agreement and implementation of a single, new remedial measure (*i.e.*, the appointment of an independent monitor), the court nonetheless "*declined to impose several remedies requested by Plaintiffs*," which had not been agreed to in the parties' underlying settlement agreement. *Id.* at 1093 (emphasis added). Accordingly, the cases cited by Plaintiffs make it clear that the Department's failure to reach full compliance with a subset of the Implementation Plan's provisions is not the type of egregious, willful violation of a court order that supports modification of the Implementation Plan under FRCP 60(b).

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603379362                                      8
DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY IMPLEMENTATION PLAN

**(b)** **The Department Has Made Significant Progress Toward Reaching Full Compliance with the Implementation Plan, and Has Committed to Additional Remedial Measures, Further Precluding Modification of the Implementation Plan Under FRCP 60(b)**

In addition to the fact that the Department's overall compliance with the Implementation Plan's provisions is not nearly so deficient as to permit modification of the Department's obligations under FRCP 60(b), the Department's <u>current</u> state of compliance with respect to the remaining provisions at issue (e.g., head strikes, force avoidance, use of the WRAP, and accountability), coupled with the corrective actions being taken to address these areas, further confirms Plaintiffs' Motion should be denied.  Plaintiffs' arguments to the contrary rest on stubborn failures to recognize the Department's recent improvements in these areas, along with the systemic changes the Department has made and is continuing to make to ensure continued improvement in these areas.  Plaintiffs also rely on old data and dated use of force incidents, and assessments of a tiny number of cherry-picked incidents which all took place under the prior Sheriff's administration, and which, in almost every case, occurred <u>prior</u> to key policy revisions designed to curb the conduct assessed.  Thus, putting aside the Department's substantial compliance with the Implementation Plan as a whole, the Department has made demonstrable strides with respect to the remaining provisions it must still satisfy.  Therefore, the additional obligations which Plaintiffs seek to impose on the Department over its objection are not warranted under FRCP 60(b).

### (1)   Head Strikes

While the Department has not yet reached compliance with the provision of the Implementation Plan concerning head strikes, the Department's efforts to eliminate unjustified head strikes have not been so substantially deficient that FRCP 60(b) provides a basis for Plaintiffs to re-write the Department's head strike policy, particularly where (a) the Department has introduced a new head strike directive that

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY IMPLEMENTATION PLAN

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

appropriately restricts the use of head strikes; (b) the number of instances when deputies have used head strikes in the jails has plummeted since this new directive was introduced (which shows it is working); and (c) the Department has committed to implementing additional corrective actions to further reduce and impose accountability for all unjustified head strikes.

First, and most significantly, the Department has already implemented a new policy that significantly restricts the use of head strikes. Specifically, on May 11, 2022, the Department implemented a new, more-restrictive head strike directive that prohibits all head strikes on inmates unless (1) the inmate is assaultive; (2) there is an imminent danger of serious bodily injury to Department personnel or others; and (3) there are no other reasonable means to avoid serious physical injury. *See* Dkt. 251 at 18. This new policy restricts head strikes in the precise manner called for under the Parties' thoroughly-negotiated Implementation Plan. It also is consistent with the head strike policies followed by other carceral facilities, which provide that a correctional officer may not use a head strike during a use of force unless, at a minimum, an inmate presents an imminent danger of serious injury to the correctional officer.[1] (Supplemental Declaration of Larry Alva ("Alva Supp. Decl.") at ¶ 4). Indeed, the Department's current head strike policy, which draws the criticism of Plaintiffs and Plaintiffs' SME, is arguably more restrictive, or the

_____

[1] Plaintiffs' use-of-force subject matter expert (the "SME") attempts to claim the Department's new head strike policy is out of step with purportedly more strict head strike policies implemented elsewhere, including a head strike policy implemented by the New York City Department of Corrections at Rikers Island. (Declaration of Stephen Sinclair ("Sinclair Decl.") at 16 n.10). That is not so. The head strike policy at Rikers Island, which Plaintiffs have put forward as a model policy, allows correctional officers to administer a "strike or blow to the head" when a correctional officer is "in imminent danger of serious bodily injury or death." *Id.* Thus, just like the Department's head strike directive, correctional officers at Rikers Island may employ a head strike if they are confronted with "an imminent danger of serious bodily injury." *Id.*

Kendall Brill & Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603379362

10

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY IMPLEMENTATION PLAN

very least is <u>as restrictive</u>, as the head strike policy that was in place at the prison system in Washington State that Plaintiffs' SME formerly ran.[2]

Second, the Department's change in its head strike policy has proven to be effective in materially reducing the number of head strikes in the jails.  In the wake of the Department's change in its head strike policy, the number of uses of force involving a head strike at Men's Central Jail ("MCJ"), Twin Towers Correctional Facility ("TTCF"), and the Inmate Reception Center ("IRC") decreased from **81** in 2021, to **51** in 2022; and there were multiple months in 2022 when MCJ, TTCF, and the IRC simultaneously went without a single use of force involving a head strike.  Notably, this downward trend has continued, as there have been just **16** head strikes at all three of these facilities combined through the first four months of 2023, a figure that puts the Department on pace to have fewer head strikes in 2023 than in any year since this case was initiated, including years when contacts between inmates and the Department's staff were severely limited due to the pandemic.  Dkt. 238 at 6-7; Dkt. 251 at 19.  In direct contrast to Plaintiffs' contention that the Department has failed to address the overuse of dangerous and unnecessary head

---

[2]  In his declaration, the Plaintiffs' SME offers a link to a website he purports has some relevancy to the Department's head strike policy. *Id.*  What this link ultimately leads to is the Washington Department of Corrections ("WDCC") policy that applies to the "Use of Force Outside of Prisons."  And while this policy defines strikes to the head as "deadly force," it further makes clear that officers who worked at the correctional facility Plaintiffs' SME oversaw were allowed to use deadly force "<u>to protect against an immediate threat of serious physical injury</u> or death to the officer of another person."  Accordingly, the level of threat posed by an inmate that justified officers to employ head strikes in the prison system the SME oversaw (an immediate threat of serious physical injury) is the same level of threat that justifies a deputy's use of a head strike under the Department's policy (an imminent threat of serious bodily injury); and additional guardrails to prevent improper head strikes under the Department's policy—namely, that head strikes cannot be utilized unless an inmate is "assaultive" and there are "no reasonable means to avoid injury"—are not clearly spelled out in the head strike policy used by the WDOC.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603379362

11

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY IMPLEMENTATION PLAN

strikes (Motion at 1), the Panel has attributed this decrease in the number of head strikes in the jails to "[t]he Department's concerted focus on head strikes in the past several months," including the change in the Department's head strike directive referenced above, as well as the Department's effective communication of the new policy to its rank and file.  Dkt. 238 at 7 (emphasis added).  In sum, the evidence is clear that the Department has undertaken extensive efforts to reduce the number of head strikes in the jails, and these efforts are yielding very favorable results.

Finally, notwithstanding these positive developments, the Department has committed to instituting new measures that will further improve its performance in curbing the use of head strikes, including (a) permitting Plaintiffs' counsel and the Panel to provide input on the training given to deputies related to the Department's new head strike directive; (b) expanding the Department's "head strike tracker" to track important data, including where they have occurred, which inmate classifications are involved in these incidents, and which deputies and custody assistants use head strikes with any frequency; (c) changes in force reporting, which will require deputies to explain how any head strike administered did or did not meet the requirements of the Department's head strike policy; (d) changes in force reviews, which will require those reviewing head strikes to assess how any head strike administered complied or failed to comply with the three elements of the Department's head strike policy and evaluate whether the justification offered for any head strike was materially inconsistent with other available evidence, including video footage and witness statements; (e) enhanced oversight of head strikes by the Assistant Sheriff who oversees the Custody Division, and ultimately a specialized Independent Force Review Team; and (f) safeguards that will ensure prompt medical attention every time a head strike is administered.  (Dkt. 251, Ex. A).

Refusing to address the Department's recent successes in curbing the overuse of head strikes, Plaintiffs contend this Court should compel the Department to again alter its new, restrictive head strike policy based on the SME's assessment of nine

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603379362

12

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY IMPLEMENTATION PLAN

cherry-picked cases from past years involving head strikes; assessments of cases made in Monitoring Reports that, in some instances, are years old; and the obvious observation that head strikes can be dangerous.  None of this explains why the current manner in which head strikes are being effectively curtailed merits additional, significant obligations beyond those the Department is undertaking.

The SME's assessment of a mere <u>nine</u> cases, handpicked by Plaintiffs, involving head strikes that took place, in every instance, under a prior Sheriff's administration, and under every instance but one, <u>before</u> the Department issued its new, restrictive head strike directive and trained deputies on that policy, says little about the current state of affairs in the jails concerning the use of head strikes.  The same is true of every Monitoring Report issued prior to the Panel's 11th Report, the first report issued after the Department's new head strike policy and the first to examine, albeit in a very limited way,[3] the use of head strikes following the imposition of that new policy.[4]  Finally, Plaintiffs consume reams of paper, and

---

[3]  The 11th Report covers uses of force that took place in the jails between July 1, 2021 and June 20, 2022, and thus mostly excludes the period after the Department's new head strike directive went into effect in May 2022, and the period of time when the overall number of head strikes in the jails decreased most dramatically.  The Panel's 12th Report will be the first to assess the Department's performance with the new head strike directive in place for the entire monitoring period.

[4]  Plaintiffs make much of the fact the 11th Report found 61 out of 91 (or 67%) use of force packages reviewed by the Panel compliant with Implementation Plan Provision 2.2 (requiring that force is used as a last resort, with minimal amount of force necessary, terminated as soon as reasonably safe to do so, and de-escalated as resistance decreases); 56 out of 86 (or 65.1%) uses of force involving head strikes compliant with the Department's head strike policy as measured under Implementation Plan Provision 2.6; and 46 out of 55 cases reviewed (or 83.6%) compliant with Provision 2.5, which assesses uses of force against restrained inmates under the same standard the appropriateness of head strikes is measured. (Motion at 18-19).  However, while the Department has fallen short of the 90% compliance mark to bring it within full compliance with Provisions 2.2, 2.5, and 2.6, there are a relatively small number of cases separating the Department from

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603379362                                    13
DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY IMPLEMENTATION PLAN

summon the opinion of multiple medical experts, to explain that head strikes have the potential to be dangerous.  This is a point the Department well recognizes, which is exactly why it has made a concerted effort to minimize the use of head strikes in the jails and to mitigate the potential health effects when head strikes occur.  These efforts are beginning to achieve success and provide a realistic path to achieving compliance with Provision 2.6.

**(2)    Use of the WRAP**

Similarly, Plaintiffs' complaints about the WRAP, which is a restraint device not even covered by the Implementation Plan, are not based on the Department's current practices concerning the use of the WRAP and do not take into account, at all, the Department's efforts to ensure that device is used safely by deputies.

The WRAP is a security restraint device, which consists of three components: a three-inch-wide ankle strap, a leg restraint, and a locking shoulder harness. (Declaration of Anel Manriquez ("Manriquez Decl") at ¶ 6).  It is used by deputies to <u>prevent</u> escalations of force by incapacitating inmates who pose an immediate threat to themselves or others, and its use was instituted in the LACJ as a safer and more effective substitute to restrain and subdue inmates who pose an immediate threat to themselves or others than other more risky and dangerous tactics and

---

compliance with each of these provisions.  Indeed, the gap between compliance and non-compliance with Provision 2.5 was only <u>four cases</u> during the time period covered by the 11th Report.  This situation represents a stark contrast with other cases where courts have justified modifying settlement agreements because of substantial non-compliance with the majority of a party's court-ordered obligations. *Compare with David C. v. Leavitt*, 242 F.3d 1206, 1212 (10th Cir. 2001) (affirming district court's finding that defendant was in "substantial non-compliance" with Settlement Agreement where agency was "'20 percent in compliance and 80 percent in noncompliance' with the provisions of the Agreement"); *Thompson v. U.S. Dep't of Hous. & Urban Dev.*, 404 F.3d 821, 827, 834 (4th Cir. 2005) (affirming district court's order modifying consent decree based on defendants' "near total failure to comply with the terms of the Consent Decree," and where defendants "accomplished almost nothing that they were required to do under decree").

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603379362

14

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY IMPLEMENTATION PLAN

devices.  (*Id.* at ¶¶ 11-13, 17-18; Declaration of Tim Fasnacht ("Fasnacht Decl.") at ¶¶ 11-17).  The WRAP is widely accepted as a safe and effective way to restrain individuals who pose harm to others or themselves, as evidenced by the fact more than 2,000 federal, state, and local law enforcement agencies, as well as other organizations around the world, utilize this device.  (Fasnacht Decl. ¶ 9).  Furthermore, contrary to what Plaintiffs imply, the Department's use of the WRAP is not "new."  Rather, the Department approved the use of the WRAP as a security restraint and began using it in the LACJ in 2017.  (Manriquez Decl. at ¶ 5).

In the six years the WRAP has been used in the LACJ, not one inmate has been injured or died due to its use.  (*Id.* at ¶ 17).  Nevertheless, recognizing the potential danger the WRAP can pose if it is misused, the Department has crafted a new policy governing the use of the WRAP which strictly limits its use, and in formulating that policy <u>has accepted significant modifications to the policy recommended by Plaintiffs and the Panel in the interests of crafting the safest possible policy controlling the use of the WRAP</u>.  Perhaps most significantly, the maximum time a person can be placed in the WRAP restraint has been cut in half, to two hours from four.  (*Id.* at ¶ 16; Declaration of Dylan Ford ("Ford Decl.") at ¶¶ 2-7).  Under this new, exacting WRAP policy:

    \*    The WRAP restraint may only be used on inmates who pose an immediate threat to themselves or others.

    \*    Absent exigent circumstances, use of the WRAP can only be authorized by the on-duty watch commander, and a supervisor at the permanent rank of sergeant or above shall be present during the person's placement in the WRAP.

    \*    When an inmate is placed in the WRAP restraint, that inmate must remain under direct visual observation at all times.

    \*    The WRAP cannot be used on inmates who are known to be pregnant.

    \*    Personnel must immediately request medical aid if an inmate in a WRAP restraint complains of, or exhibits, medical distress (e.g., respiratory distress,

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603379362

15

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY IMPLEMENTATION PLAN

including gasping, snorting, or gurgling sounds, complaint of chest pain, change in facial color, restricted blood circulation, complaints of extreme heat, sudden quiet or inactivity, loss of consciousness, vomiting, etc.).

* If personnel identify that the inmate placed in the WRAP restraint has a need for mental health care, mental health staff shall be requested and personnel shall adhere to procedures delineated in Custody Division Manual section 4-05/000.00, "Behavioral Observation and Mental Health Referral Reports."

* Following a use of force and placement of an inmate in the WRAP restraint, an inmate must be taken for a documented medical assessment, where a medical professional must determine if it is safe for the inmate to remain in the WRAP restraint, a determination that takes precedence over any custody personnel's evaluation of the priority of keeping the inmate in the WRAP restraint.

* Safety checks must be conducted and documented twice every 30 minutes until the WRAP restraint is removed, and these checks shall be documented on in "WRAP Restraint Security Check Log."

* A sergeant must conduct a safety check that evaluates the application of the WRAP and must assess the propriety of the WRAP's continued use on an inmate at a minimum of once every 30 minutes.

* Reasons for the continued use of the WRAP must be documented in a "WRAP Restraint Security Check Log." Additionally, a sergeant must ensure that each inmate placed in the WRAP restraint has been offered or provided access to toilet facilities, drinking water, prescribed medication, and be allowed to exercise their extremities (when safe), which shall be documented in the "WRAP Restraint Security Check Log."

* If an inmate misses a regularly scheduled meal due to being placed in the WRAP, a meal must be provided to the inmate upon removal of the WRAP.

* A supervisor at the rank of sergeant or above must be present when the WRAP restraint is removed, absent exigent circumstances.

**Kendall Brill & Kelly LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603379362

16

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY IMPLEMENTATION PLAN

\*      A sergeant must attempt to have an inmate removed from the WRAP restraint before one hour; and, as stated above, inmates must not remain in the WRAP restraint or WRAP CART beyond two hours.

(*See* Dkt. 251, Ex. A).[5]

Notably, even before the Department committed to adopting all of these measures to ensure the safe use of the WRAP, the use of the WRAP in the jails—as with head strikes and uses of force in general—has been substantially decreasing since the Department issued a directive containing many of these restrictions governing the use of the WRAP in April 2022.  (Alva Supp. Decl. at ¶¶ 6-7).

In light of the foregoing, it is difficult to see what "changed circumstance" involving use of the WRAP merits altering the Implementation Plan, or, as explained below, how Plaintiffs even want the Implementation Plan altered with regard to the WRAP.  As Plaintiffs acknowledge, the Implementation Plan is completely silent as to the use of WRAP restraint device or any comparable device. Motion at 19.  And while Plaintiffs attempt to use this fact to cast the Department's use of the WRAP since 2017 as a "changed circumstance" which justifies modification of the Implementation Plan, there is no authority cited by Plaintiffs, or

---

[5] In addition, the Department has committed to instituting new procedures to track the use of the WRAP to ensure it is not being overused and to make sure it is being used appropriately in accordance with the strict policy set forth above.  These new tracking and accountability measures require, among other things, that sergeants and watch commanders report in a written log:  (i) their rationale for allowing an inmate to be left in the WRAP; (ii) any attempts that were made to de-escalate prior to using the WRAP; (iii) the location where the WRAP was used; (iv) the name and rank of the supervisor who approved the use of the WRAP; (v) the circumstances justifying the approval to use the WRAP; and (vi) whether an inmate was placed into a recovery position and allowed to cease resisting prior to a supervisor approving use of the WRAP.  *Id.*  Additionally, every 90 days, three Captains at the LACJ must review a random sample of 20 instances when the WRAP was deployed to help ensure, on a regular and rolling basis, that uses of the WRAP in the LACJ are consistent with the Department's WRAP policy.  *Id.*

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603379362

17

which otherwise exists, suggesting that every granular level policy change made by the Department over time with respect to tactics used in the jails constitutes a "changed circumstance" that justifies modifying the Parties' negotiated agreements and imposing new obligations on the Department. Instead, the Implementation Plan's silence regarding the WRAP makes it clear Plaintiffs' attempts to regulate the use of the WRAP under FRCP 60(b) exceed the scope of what the law permits.

### (3)    Accountability

It is not the case, as Plaintiffs falsely claim, that the Department is hesitant to call out instances when its personnel violate use of force policies and that it does not mete out appropriate punishment when such violations occur, particularly under the current Sheriff's administration. Alva Supp. Decl. at ¶ 16. Moreover, hyperbolic statements, such as the claim the Department <u>never</u> finds head strikes administered during force incidents to be out of policy and <u>never</u> imposes serious discipline on deputies who strike inmates in the head in violation of the Department's policy are untrue. *Id.* at ¶ 17. Indeed, within the past two weeks alone, Commander Larry Alva, who reviews all uses of force which take place at TTCF, referred two cases for administrative review based on his conclusion that the deputies in those matters administered head strikes that violated the Department's head strike policy and Provision 2.6 of the Implementation Agreement. *Id.*

Furthermore, the most significant "change in circumstances" relevant to whether the Implementation Plan should be modified and expanded to mandate that particular punishments be levied against any deputy who violates certain policies, regardless of the circumstances, is that the new Sheriff is significantly revamping the Department's force review system to ensure increased accountability in cases where Department personnel violate use of force policies. Specifically, as previously disclosed to this Court, the Department has committed to professionalizing its force review practices by having all uses of force reviewed by an Independent Force Review Unit to eliminate the possibility of "cronyism"—

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603379362

18

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY IMPLEMENTATION PLAN

which could undermine the legitimacy of force reviews—and to accelerate the process of reviewing uses of force; standardizing how force incidents are reported and reviewed so that questions concerning whether a use of force was committed in violation of a Department policy, or whether a deputy's account of a use of force incident materially differs from other evidence, must be directly confronted by both the deputy who used force on an inmate and the reviewer assessing the priority of that deputy's actions; and improving the ability to document what occurs during a use of force by equipping deputies in the jails with body-worn cameras.

In light of these facts, which represent the current state of affairs concerning how Department personnel are being held accountable for violating the use of force provisions at issue in this case, there is no basis to revise the Implementation Plan, particularly in the unjustified manner Plaintiffs suggest.

> **2.    Plaintiffs' Proposed Modifications to the Implementation Plan Are Not Justified Because They Are Not Suitably Tailored to Address Any Current Non-Compliance With The Implementation Plan**

Even assuming the Department is currently "substantially non-compliant" with the Settlement Agreement—which is not the case—the Court should still reject Plaintiffs' Motion.  The modifications to the Implementation Plan Plaintiffs request are impractical and unnecessary, and are therefore not "suitably tailored" to bringing the Department into full compliance with the Implementation Plan.  Thus, Plaintiffs' Motion should be denied for this separate reason.

> **(a)    Plaintiffs' Proposal to Revise the Department's Head Strike Policy is Vague, Unjustified, and Unnecessary; and, Depending on What It Even Means, Could Endanger Department Personnel**

Plaintiffs have asked this Court to mandate that the Department forbid any head strike "unless deadly force is justified." (Motion at 20).  Yet, apart from this vague pronouncement, Plaintiffs do not provide this Court with any guidance as to

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603379362

19

what they specifically would like this new head strike policy to say; how it would operate (including how it would be different in practice from the strict head strike policy the Department currently has in place); and why this vague policy they claim is necessary will bring the Department into compliance with Implementation Plan Provision 2.6, given that the current policy enacted by the Department just one year ago has already led to a drastic reduction in head strikes.

Indeed, it is difficult, if not impossible, to understand how Plaintiffs' proposed head strike policy would be any more stringent than the Department's current head strike policy, if it adheres to California law. As noted, the only hint Plaintiffs offer about how this head strike policy will work is that it would restrict head strikes in all cases "unless deadly force is justified." California law explicitly provides, however, that "a peace officer is justified in using deadly force upon another person . . . when he believes, based on the totality of the circumstances, that such force is necessary . . . to defend against **an imminent threat of death <u>or serious bodily injury</u> to the officer or to another person.**" Cal. Penal Code § 835a(c)(1) (emphasis added). Accordingly, the threshold level of threat a peace officer in California must face before the officer may justifiably use deadly force ("an imminent threat . . . of serious bodily injury to the officer or to another person") is indistinguishable from the level of threat a deputy must face before that deputy may administer a head strike under the Department's current head strike directive ("an imminent danger of serious injury to personnel or others"). Thus, it is hard to see what practical difference Plaintiffs' proposed policy change would have on curbing head strikes, when compared with the Department's current head strike policy, at least if Plaintiffs' proposed policy adheres to California law.

Moreover, to the extent what Plaintiffs are vaguely proposing disregards California law,[6] and is really just a way of asking this Court to impose a total ban on

---

[6] Notably, when Plaintiffs previously presented their alternative head strike policy

Kendall Brill & Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

20

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY IMPLEMENTATION PLAN

head strikes unless a deputy faces the prospect of imminent death, that position should be flatly rejected, not only because that would be a proposal unrooted in the law but also because it would endanger the safety of Department personnel.  Even if one defines a head strike as a use of potential deadly force, Department personnel are allowed to protect themselves when they face an assaultive inmate who poses an unavoidable and imminent danger of inflicting serious bodily injury, and to do so by using a head strike if necessary.  California law recognizes that is the case, and Plaintiffs have pointed to no other jurisdiction where this principle is questioned.[7] And a policy that functionally tells deputies that they must either refrain from protecting themselves from an imminent risk of sustaining serious bodily injury at the hands of an assaultive inmate during a confrontation they cannot avoid, or violate a policy instructing them to do so and face the type of mandatory discipline Plaintiffs would then automatically have the Department impose, would be a reckless policy that no one in the Department will or should accept.

**(b)    A Ban on the Use of the WRAP, to the Extent That Is Even What Plaintiffs Are Requesting, Is Not Justified**

Plaintiffs are not specific about what modifications they are asking this Court to impose to the Implementation Plan concerning the Department's use of the

---

to the Department, the Panel, and even this Court, they demanded the Department "update LASD's limitations on force policy to prohibit head strikes of any kind except where deadly force would be permitted, as defined in AB 392 and PC 835a, subsection (c)(1)."  Dkt. 240-1 (Joint Status Report, dated 4/18/23, Exh. A at p. 1). For reasons that are not explained, these references to California law, which were an important feature defining Plaintiffs' preferred head strike policy less than two months ago, are referenced nowhere in their Motion.

[7]  Consistent with California law—and the Department's head strike policy—the United States Department of Justice, for instance, permits federal law enforcement officers and correctional officers to use deadly force when an officer has a reasonable belief that the subject of such force poses an imminent danger of serious bodily injury (and superfluously, death) to the officer or another person.  *See* https://www.justice.gov/jm/1-16000-department-justice-policy-use-force.

Kendall Brill & Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY IMPLEMENTATION PLAN

WRAP, but it is hard to see how any modification is warranted.[8]  Further modifications to the comprehensive and restrictive WRAP policy set forth above are not justified, as the Department has already incorporated several major modifications to this policy offered by Plaintiffs' counsel and the Panel in an effort to ensure that the WRAP is used sparingly and in a manner that mitigates any safety risks its use poses.  (Ford Decl. at ¶ 2-7).  And given that the Department incorporated all aspects of this policy into the compliance plan it has offered, any modifications to the Implementation Plan concerning the WRAP are superfluous.

To the extent Plaintiffs are advocating that this Court should enjoin the Department from using the WRAP altogether, that request would lack merit.  The WRAP is not so inherently dangerous it cannot be used at all.  (Fasnacht Decl. at ¶ 17).  It is dangerous only to the extent it is used improperly,[9] and the Department's new policy concerning the use of the WRAP is the gold standard when it comes to using the WRAP safely.  (*Id.* at ¶¶ 17-18).  Moreover, any call to ban the use of the WRAP altogether ignores the benefits it offers in terms of how its use curtails any need to employ secondary uses of force against inmates who would pose a danger to themselves or others if not restrained, as well as how its use presents a much safer

---

[8]   In fairness to Plaintiffs, this uncertainty may stem from the fact the Department produced its revised and final version of the WRAP policy to Plaintiffs on June 1, 2023, the day after Plaintiffs filed the Motion.

[9]   A close read of the declarations offered by Plaintiffs' experts confirms this is the case, as their complaint regarding the Department's use of the WRAP is not that it cannot be used safely.  Indeed, Plaintiffs' SME explicitly recognizes it is appropriate to use the WRAP in certain limited circumstances.  Sinclair Decl. at ¶ 27.  Rather, based on their review of no more than ten cherry-picked videos showing Department personnel using the WRAP, in some cases years ago, they have drawn the broad conclusion the Department has been overusing the WRAP and not using it safely.  But nowhere at all do any of Plaintiffs' experts comment on the steps in the Department's compliance plan concerning the WRAP and how it will make the use of that device as safe as possible, even though those plans were shared with Plaintiffs' counsel and this Court months ago.  *See* Dkt 240-1, Exhibit A.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

alternative than other methods and devices law enforcement uses to subdue and restrain inmates whose volatility makes them a threat.  Finally, an order banning use of the WRAP at the LACJ, despite the fact its use is now ubiquitous in law enforcement agencies across the country and that its use in the jails over the past six years has not led to a single injury, let alone death, is not justified under the law.  Because the Department uses the WRAP solely for a legitimate penological purpose—namely, to gain control over inmates who pose a danger to themselves and others and who cannot be controlled in any other reasonably safe manner—there is no Constitutional basis to ban its use. *Michenfelder v. Sumner*, 860 F.2d 328, 334-35 (9th Cir. 1988) (rejecting a Constitutional challenge to a prison policy which allowed guards to carry and use tasers to enforce compliance with orders, given the penological goals served by the policy).  Nor have Plaintiffs cited any legal authority that would support such a ban.

Accordingly, there is no proper basis to ban the use of the WRAP in the LACJ, and the modifications to the Implementation Plan addressing the Department's use of the WRAP, whatever they may be, are not warranted.

**(c)    Plaintiffs' Proposal That the Court Modify the Implementation Plan to Include Mandatory-Minimum Disciplinary Punishments Seeks a Legally Unsupported Intrusion into the Department's Disciplinary Process That Is Unfair and Unnecessary**

Plaintiffs also seek to modify the Implementation Plan so as to require the Department "to impose mandatory discipline consistent with the penalties set forth in its current disciplinary guidelines for violating the head strike, force prevention, and honest reporting requirements, as well as for supervisors who fail to identify or impose discipline for those violations."  (Motion at 21-22).  This request that the Court re-write the Department's disciplinary guidelines in a manner that would upend its well-reasoned system of imposing progressive discipline merited by the circumstances present in each individual case fails for several reasons.

First, Plaintiffs offer no legal authority—not one case, statute, or rule—which

Kendall Brill
& Kelly LLP

10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603379362

23

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY IMPLEMENTATION PLAN

justifies such an intrusion into the Department's autonomy to discipline its personnel in the manner it deems appropriate. And, in light of the Prison Litigation Reform Act's mandate that federal courts are limited to granting prospective relief of any kind to inmates, like Plaintiffs here, unless doing so is necessary to correct a violation of a federal right, and such relief is narrowly drawn, extends no further than necessary to correct the violation of a federal right, and is the least intrusive means necessary to correct the violation of a federal right, it is fair to say no such legal authority exists. *See* 18 U.S.C. § 3626(a)(1)(A). While Plaintiffs surely have a right not to be subject to unwarranted physical abuse, they have no federal right to ensure those who violate that right are punished in a particular manner and cannot enforce that non-existent right in the manner sought here.

Second, the system Plaintiffs advocate for in which mandatory-minimum disciplinary penalties would be imposed on Department personnel whenever certain policies are violated, regardless of the circumstances surrounding the violation or the history and characteristics of the offender, is unfair. More specifically, the mandatory-minimum system of punishments concocted by Plaintiffs is a far less fair system for imposing discipline than the Department's model, which progressively punishes offenders based on the individual circumstances surrounding any proven violation of a Department policy and that provides thoughtful, but non-binding, guidelines which may or may not be followed depending upon what the individual circumstances of a case dictate. Even Plaintiffs' SME appears to recognize the superiority of a system that allows for the flexibility in doling out punishment that the Department's system provides; for in the only case in which he describes how he meted out discipline to a subordinate in his 35-page declaration, Plaintiffs' SME discusses how one of his subordinates lied in a report about the circumstances surrounding a use of force to "conform to the culture" of the facility where the SME was a Captain, was caught in that lie because the SME personally witnessed the use of force in question, and then was punished for knowingly submitting a false report

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603379362

24

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY IMPLEMENTATION PLAN

concerning a use of force, not with a mandatory-minimum penalty that consisted of an automatic suspension without pay or termination, but rather through a verbal "admonishment" and an order to re-write his false report. Sinclair Decl. ¶¶ 68-69.

Finally, forcing the Department to adopt this unfair mandatory-minimum disciplinary system is unnecessary, and it is clearly not the least restrictive means of addressing the Department's obligation to demonstrate accountability in this case, given the substantial steps the new Sheriff is voluntarily taking to improve the Department's performance in this area. These steps include setting up an Independent Force Review Unit—a remedial action the Plaintiffs' SME views as a consequential move that can effectively eliminate the kind of "cronyism" that can undermine a disciplinary system (*id.* ¶¶ 66, 73); standardizing force reporting and reviews of force in a manner that requires focus to be given to whether policies were violated or force reporting was dishonest; and providing enhanced transparency when it comes to use of force incidents by equipping all deputies working in the jails with body-worn cameras. At the very least, the new Sheriff, who is barely into his first term, merits the opportunity to prove that he will continue to hold Department personnel accountable, as the actions he is taking shows he is willing to do; and, as explained above, there is no legal basis to deny him that opportunity.

## III.    CONCLUSION

For each of the foregoing reasons, the Court should deny Plaintiffs' Motion to Modify the Implementation Plan.

DATED:  June 12, 2023                    KENDALL BRILL & KELLY LLP


By: _____
        Robert E. Dugdale
        Attorneys for Robert Luna, Sheriff of Los
        Angeles County, in his Official Capacity

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603379362                    25
DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY IMPLEMENTATION PLAN