OFFICE OF COUNTY COUNSEL
Dawyn Harrison (173855)
County Counsel
dharrison@counsel.lacounty.gov
Dylan Ford (228699)
Deputy County Counsel
dford@counsel.lacounty.gov
500 West Temple St., Floor 6
Los Angeles, California 90012
Telephone: 213.974.1811
Facsimile: 213,687.8822

KENDALL BRILL & KELLY LLP
Robert E. Dugdale (167258)
rdugdale@kbkfirm.com
Daniel Barlava (334910)
dbarlava@kbkfirm.com
10100 Santa Monica Boulevard, Suite 1725
Los Angeles, CA 90067
Telephone: 310.556.2700
Facsimile: 310.556.2705

Counsel for Defendant
Robert Luna, Sheriff of Los
Angeles County, in his Official Capacity

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ALEX ROSAS and JONATHAN GOODWIN on behalf of themselves and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ROBERT LUNA, Sheriff of Los Angeles County, in his official capacity,<br><br>Defendant. | Case No. 12-cv-00428 DDP (MRW)<br><br>**SUPPLEMENTAL DECLARATION OF LARRY ALVA IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO MODIFY IMPLEMENTATION PLAN**<br><br>Judge: Dean D. Pregerson<br>Time: June 26, 2023<br>Date: 10:00 a.m.<br>Courtroom: 9C |

SUPPLEMENTAL DECLARATION OF LARRY ALVA

# DECLARATION OF LARRY ALVA

I, Larry Alva, declare as follows:

1. I am a Commander with the Los Angeles County Sheriff's Department (the "Department"), in the Department's Custody Services Division. Except where otherwise stated, I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would testify competently to such facts under oath.

2. As part of my role as a Commander in the Department's Custody Services Division, I am one of the Department's primary employees with oversight and responsibility for tracking the Department's compliance with the Settlement Agreement and Release ("Settlement Agreement") and concurrently filed Implementation Plan in this case. My regular responsibilities involve, among other things, tracking and compiling statistics to evaluate the Department's compliance with the Implementation Plan's approximately 100 provisions, including statistics related to provisions regarding uses of force and force avoidance, head strikes, the WRAP restraint device, and accountability and discipline imposed on Department personnel who violate the Department's use of force policy. I am involved in both designing the process by which statistics related to these issues are gathered, and I also compile statistics into reports, some of which I understand are regularly shared with the Monitoring Panel in this case (the "Panel"). In addition, as a Commander in the jails, I review most uses of force that occur in the downtown jail facilities, and, particularly, those which involve head strikes. In this Supplemental Declaration, I will address three topics: (1) how the Department's current head strike directive, issued in May 2022, is consistent with head strike policies utilized at other carceral facilities; (2) the decline in the use of the WRAP restraint device by the Department since a new WRAP directive limiting its use was issued by the Department in May 2022; and (3) the fact that the Department is not hesitant to make determinations when its personnel act out of policy and impose appropriate

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd
Suite 1725
Los Angeles, CA 90067

1

SUPPLEMENTAL DECLARATION OF LARRY ALVA

discipline when such policy violations occur.

**The Department's Head Strike Policy**

3.     On May 11, 2022, the Department issued a new, restrictive head strike directive, which is fully consistent with the policy governing head strikes required under Provisions 2.5 and 2.6 of the Implementation Plan.  That directive provides that Department personnel are prohibited from administering a head strike on any inmate during a use of force unless:  (1) the inmate is assaultive; (2) there is an imminent danger of serious bodily injury to Department personnel or others; and (3) there are no other reasonable means to avoid serious physical injury.  As I have previously declared, since this new head strike directive was issued by the Department, the incidents of head strikes at the three downtown jail facilities -- the Men's Central Jail ("MCJ"), Twin Towers Correctional Facility ("TTCF"), and the Inmate Reception Center ("IRC") -- have significantly declined.  Indeed, they have not only declined in terms of the number of cases in which head strikes are being used to levels not previously seen in this case, but in terms of seriousness as well, as most incidents involving head strikes in the Department tend not to involve more than one punch, or at a maximum three punches, to the head, as opposed to a flurry of head strikes.

4.     In an effort to determine whether the Department's head strike directive is consistent, or inconsistent, with similar policies governing head strikes at other carceral facilities, I have surveyed a number of head strike policies used at other carceral facilities.  Overwhelmingly, I have found that other carceral facilities have head strike policies which, like the Department's current head strike directive, set the minimum level of threat a law enforcement officer must face before he or she can administer a head strike during a use of force as an imminent or immediate threat of "serious bodily injury" or "serious bodily harm."  Similar policies I have seen, in California alone, include policies issued by the San Bernardino County Sheriff's Department, the Contra Costa County Sheriff's Department, the Orange

Kendall Brill
& Kelly LLP
10700 Santa Monica Blvd.
Suite 1725
Los Angeles CA 90067

2

SUPPLEMENTAL DECLARATION OF LARRY ALVA

County Sheriff's Department, and the Alameda County Sheriff's Department, which address the use of head strikes in a custodial setting. In addition, the head strike policy issued by the New York City Department of Corrections and used at Rikers Island, which was brought to my attention by the Panel, is consistent with the Department's head strike policy in this manner, as is the policy issued by the United States Department of Justice governing when federal law enforcement officers and correctional officers may use head strikes. Indeed, the Department's head strike directive is arguably stricter than many of these policies, because in addition to prohibiting head strikes unless a deputy is faced with an imminent danger of serious bodily injury to the deputy or someone else, the Department's head strike directive also prohibits the use of a head strike unless an inmate is assaultive and there is no other reasonable means to avoid serious physical injury.

5. In addition to the new, strict head strike directive issued in May 2022, the Department is taking, and is committed to taking, other significant steps to curb the use of improper head strikes in the jails. These steps include all of those steps listed in the LASD's Proposed Compliance Plan filed with this Court on May 31, 2023.

**The Use of the WRAP**

6. In April 2022, the Department also issued a new directive which greatly restricted the use of the WRAP restraint. The Department is currently working on implementing a computerized tracking system which will track uses of the WRAP throughout the Los Angeles County Jail system. While that system is not yet in place, I can confirm, as a result of the many use of force reviews I have conducted since April 2022 that there has been a substantial decrease in the past year in the number of occasions when deputies use the WRAP restraint device. It is currently not used as a matter of course, and, in the cases I have reviewed since the new WRAP directive was issued in April, the WRAP is overwhelmingly being used in extreme cases where an inmate poses a serious threat to himself or others which

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

3

SUPPLEMENTAL DECLARATION OF LARRY ALVA

calls for the inmate to be restrained to avoid that threat.

7.    As is the case with the use of head strikes, the Department is taking, and is committed to taking, other significant steps to ensure the WRAP is being used safely and appropriately. These steps include all of those steps listed in the LASD's Proposed Compliance Plan filed with this Court on May 31, 2023.

**Accountability**

8.    As a Commander at the jails, I am involved, on a very frequent basis, in the process of assessing whether uses of force did or did not violate Department policy and what discipline should be imposed if a member of the Department acted in violation of Department policy.

9.    Disciplining a Department employee is governed, in part, by the Department's current "Guidelines for Discipline and Education-Based Alternatives."

10.    When the Department imposes discipline, it strives to consider the totality of the circumstances surrounding the violation of the Department policy at issue, including the nature and circumstance of the violation and the seriousness of the violation, as well as the history and characteristics of the Department employee who violated the Department policy.

11.    Generally, the discipline imposed by the Department when a policy is violated follows a "progressive-step method." This method attempts to correct, resolve, or remove the employee's performance problem or misconduct at the lowest most effective level through discipline that a manager can reasonably anticipate will be effective.

12.    The formal disciplinary steps the Department can impose on a member of the Department range from a written reprimand to the discharge of that employee. Even the lowest level of discipline the Department can impose under this scale is consequential. A written reprimand, for instance, creates a permanent record in an employee's performance record and, if imposed for a violation of a use of force policy instituted by the Department, would reflect that fact. An employee's

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd
Suite 1725
Los Angeles, CA 90067

4

SUPPLEMENTAL DECLARATION OF LARRY ALVA

performance record is reviewed before that employee would be eligible for any promotion in the Department, and prior discipline is considered when evaluating a candidate's suitability for promotion.

13. Even though the Department follows a "progressive-step method" in imposing discipline, it is not necessary for a supervisor to have imposed each lower step of discipline prior to imposing a given level of discipline. Circumstances may call either for by-passing or imposing repetitive discipline. Some factors, which may alter the progression of discipline including the seriousness of the offense, the frequency or length of time between occurrences in an employee's career calling for discipline, and the attitude of the employee.

14. Moreover, there are some acts of misconduct, which by their nature, are not appropriate for progressive discipline and demand harsher punishment at the onset, depending upon the circumstances of the act at issue.

15. While the Department has disciplinary guidelines for certain policy violations, they are just that, guidelines. The Department does not impose its discipline "automatically," and believes it would not be appropriate to establish a system of disciplinary punishments which would be applied automatically to every offense, for every employee, regardless of the circumstances.

16. It is not true, as Plaintiffs have alleged, that the Department is hesitant to find that a Department employee has violated one of its policies if the facts support such a finding; nor is it the case the Department is unwilling to impose appropriate discipline on employees who violate Department policy.

17. It is particularly not the case that the Department has never found a head strike administered by an employee to be out of policy, and that it has failed to impose appropriate discipline in cases involving employees who administer head strikes in violation of the Department's policies. In my time as a Commander, the Department has found head strikes to be out of policy, and the penalties imposed on

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd
Suite 1725
Los Angeles, CA 90067

SUPPLEMENTAL DECLARATION OF LARRY ALVA

deputies for administering head strikes in violation of the Department's policies have ranged from the issuance of written reprimands to discharge. Indeed, in the past two weeks alone, I made a determination that two cases involving head strikes occurred outside of the Department's current head strike directive. Moreover, since the Department's new head strike directive introduced more limited circumstances when head strikes can be administered, I have seen a bump in the number of cases involving head strikes where findings have been made that deputies acted in violation of the Department's policy, because the use of head strikes is now so severely curtailed by Department policy.

18.     As is the case with the use of head strikes and the use of the WRAP, the Department is taking, and is committed to taking, other significant steps to ensure it is properly holding Department personnel accountable for what is required of the Department's employees pursuant to the Implementation Plan. These steps include all of those steps listed in the LASD's Proposed Compliance Plan filed with this Court on May 31, 2023.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on this 12th of June, at Los Angeles, California.

6/12/23

Larry Alva

Kendall Brill
& Kelly LLP

SUPPLEMENTAL DECLARATION OF LARRY ALVA