PETER J. ELIASBERG (SB# 189110)
peliasberg@aclusocal.org
MELISSA CAMACHO (SB# 264024)
mcamacho@acluscal.org
**ACLU FOUNDATION OF
SOUTHERN CALIFORNIA**
1313 W. 8th Street
Los Angeles, CA 90017
Phone:  (213) 977-9500
Fax:  (213) 977-5299

CORENE KENDRICK (SB# 226642)
ckendrick@aclu.org
MARISOL DOMINGUEZ-RUIZ
(SB# 345416)
mdominguez-ruiz@aclu.org
**ACLU NATIONAL PRISON
PROJECT**
39 Drumm St.
San Francisco, CA 94111
Phone: (202) 393-4930
Fax: (202) 393-4931

NICOLAS MORGAN (SB# 166441)
nicolasmorgan@paulhastings.com
STEPHEN TURANCHIK
(SB# 248548)
sturanchik@paulhastings.com
**PAUL HASTINGS LLP**
515 South Flower Street, 25th Floor
Los Angeles, CA 90071-2228
Phone:  (213) 683-6000
Fax:  (213) 627-0705

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ALEX ROSAS and JONATHAN GOODWIN on behalf of themselves and of those similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>Robert Luna, Sheriff of Los Angeles County, in his official capacity,<br><br>Defendant. | Case No. CV 12-00428 DDP (MRW)<br><br>**SUPPLMENTAL DECLARATION OF MATTHEW THOMAS, MD**<br><br>**UNDER SEAL** |

Case No. CV 12-00428 DDP (MRW)

DECLARATION OF MATTHEW THOMAS

I, Matthew Thomas, declare as follows:

1.     I make this declaration of my own personal knowledge and if called to testify I could and would do so competently as follows.

**ASSIGNMENT AND QUALIFICATIONS**

2.     I am an Emergency Medicine physician with over 20 years of experience and was formerly a paramedic in the City of San Diego. I am licensed in the State of California and board certified by the American Board of Emergency Medicine.

3.     I incorporate by reference my May 30, 2023 Declaration in this matter. Doc. 255-6. My biographical information and qualifications are outlined in my May 30, 2023 Declaration and in my curriculum vitae, which is attached thereto. Doc. 255-6, Ex. A.

4.     I have been asked by the ACLU to provide additional medical feedback on Los Angeles Sheriff's Department's ("LASD") Custody Division Manual ("CDM") on section 7-03/050.00 WRAP Restraint v. 33.

**COMPENSATION**

5.     I am being compensated at the rate of $425 per hour.

**MATERIALS PROVIDED**

6.     In addition to a short summary and the use of force reports and videos listed in my May 30, 2023 Declaration, Plaintiffs' counsel provided me with LASD's CDM 7-0.03/050.00 v. 33. It is attached to this supplemental declaration as Exhibit 1.

7.     Plaintiffs' counsel also sent me an email from Melissa Camacho to Bob Dugdale and others, dated March 7, 2023 and with the subject line "Rosas: WRAP restraint – Monitors and Plaintiffs proposed changes." Attached to the email was a document named "WRAP RESTRAINT Monitors and Plaintiffs Proposed Changes 03.07.2023," which, according to the cover email, contained the Rosas monitors'

2

proposed changes to the WRAP policy (dated 9/20/22) in red and plaintiffs' proposed changes in blue. The email and attachment are attached to this supplemental declaration as Exhibit 2.

8.    The use of force packages and summary I was provided are listed in my May 30, 2023 Declaration. Doc. 255-6 ¶ 5.

**OPINIONS**

9.    CDM 7-03/050.00 defines an immediate threat is present when "an inmate is violent or is physically resisting" which I believe will continue the dangerous overuse of WRAP. Nowadays with recording devices, physical resistance can be justified when an inmate simply flexing one's muscles against the deputy which cannot be seen or proven. I recommend a 10-minute cooling off period, where the person is restrained with handcuffs or hobble strap, before the initiation of WRAP unless there is imminent danger to LASD or the inmate. This 10-minute cooling off period could be used by deputies to contact the on-duty watch commander for authorization, as required by CDM 7-03/050.00, which would also allow for medical and mental chart review. This provides time for de-escalation and a resetting of physiological norms of both the inmate and the deputies. This may be useful in that a lower adrenaline spike, in all parties, could result in less force required or applied if the WRAP is determined to be needed. This time could also be used to review placement techniques that would smooth out the placement of the WRAP and eliminate contraindicated pressure to the back, neck, or head.

10.    In my medical review of LASD's new WRAP policy, it concerns me that there is no policy on a check-in with medical or mental health staff prior to the use of WRAP when it is not a pre-planned use of force, especially when it often involves high levels of agitation combined with acute psychological distress that could result in an in-custody death.

11. I recommend a provision that requires a check-in with medical or mental health staff for any WRAP use, whether it is pre-planned or not, to reduce the risk of the dangers I identified in my previous declaration. Doc. 255-6, ¶¶ 36, 40, 43. The monitors' suggested provision -- "Prior to authorizing the use of the WRAP Restraint, the on-duty watch commander will check with medical and mental health staff to determine whether the inmate has any medical or mental health conditions that would contraindicate the use of WRAP" -- would increase safety for all parties. Ex. 2 at 3.

12. Requiring a check-in with medical or mental health staff would provide additional information that could help de-escalate some of these situations and prevent the need for the WRAP. De-escalation is better for all involved, for staff and the inmate. and is always the best option.

13. I do not recommend using the recovery position while waiting for the WRAP restraint device to arrive on scene. I recommend the following: "When applying the WRAP restraint after a use of force, if circumstances permit, the inmate shall be placed in a seated position against a wall or other hard surface or with a deputy's lower leg supporting the back of the inmate. If the inmate represents an immediate danger to the deputy or themselves, then recovery position may be used. If a spinal injury is suspected, the inmate should be maintained on their back with cervical spinal precautions maintained, and WRAP should not be placed."

14. The new WRAP policy lacks any provision related to the use of spit masks when used in conjunction with the WRAP device.

15. I recommend a spit mask provision to address issues of respiratory distress that I observed in my previous review of use of force videos and reports. For example, in IRC-01256, the video shows an inmate diagnosed with anxiety, PTSD and schizophrenia with signs of paranoia who is unable to comply with orders. In my previous declaration, I noted that although "[the] report also presumes that there was

4

nothing limiting the individual from breathing and that a spit mask was sufficiently porous to allow for unobstructed respiration. Individual deputies' statements note that the five deputies involved in the UOF were also perspiring and themselves out of breath. This was without anything to limit them from breathing and COVID-19 masks likely porous enough to allow for unobstructed respiration. It is medically reasonable to expect that if the five deputies were having difficulty breathing then the one restrained inmate also had difficulty breathing." Doc. 255-6 ¶ 23.

16.     Specifically, I generally agree with the monitors' recommended provision, and recommend the following: "[S]pit masks should not ordinarily be used in conjunction with the WRAP restraint. Spit masks can only be authorized by the on-duty watch commander and staff must specifically articulate the inmate's actions that warrant use of the spit mask. If a spit mask is utilized medical staff must recommend that whenever a spit mask is utilized, there must be a medical assessment every 15 minutes which should include assessment of the inmate's oxygenation status with portable pulse oximetry."

17.     I would, however, further recommend a spit mask policy that only permits spit masks used in conjunction with the WRAP when an inmate is actively attempting to spit on LASD personnel. If it is placed during WRAP application because an inmate is actively spitting, the on-duty watch commander should be immediately notified and they shall determine the need for continued use within 5 minutes.

18.     I also recommend direct visual observation at all times a person is in the WRAP from the time of placement to removal. I also recommend that the inmate be maintained in a seated position at all times when not being actively transported. An individual in a seated position will fall over if they go unconscious and will alert those around them that they are in immediate need of medical assistance. When an inmate is placed in the WRAP Cart, they are supported and an unmonitored inmate could lapse into unconsciousness without it being noticed.

Case No. CV 12-00428 DDP (MRW)
DECLARATION OF MATTHEW THOMAS

19.     I am concerned about the policy regarding application of the WRAP: "[P]ersonnel shall not use *unreasonable* pressure on the inmate's back and shoulders to fasten the cinching straps" (emphasis added). Ex. 1 at 2.  The policy does not sufficiently address risks of asphyxiation from pressure on an inmate's back and shoulders. I recommend the following: "At all times during WRAP application, personnel shall not use force on an inmate's back and shoulders that would cause respiratory discomfort or risk respiratory function. No pressure should be placed on the inmate's neck or head to fasten the cinching straps."

20.     This recommendation is further supported by the [WRAP] company's own training slides which do not feature any technique that puts pressure on the suspect's torso, head or neck. Doc. 255-6 ¶ 42.

21.     In my review of the use of force videos provided by plaintiffs' counsel, I did not identify any application of WRAP with the use of "reasonable" pressure for the cinching strap. This may also be an area where custody staff need further training.

22.     All the videos I reviewed were really uncomfortable to watch, but IRC-01692 stands out for the amount of pressure placed on the inmate's head and neck. The head and neck are aggressively flexed forward which is 100% the wrong way to do it.  This video is attached to the concurrently filed Notice of Lodging as Exhibit 3.

23.     CMD 7-03/050.00 provides:

> "Personnel shall immediately request medical aid if an inmate in a WRAP restraint complains of, or exhibits medical distress (e.g. respiratory distress, including gasping, snorting or gurgling sounds, complaint of chest pain, change in facial color, restricted blood circulation, complaints of extreme heat, sudden quiet or inactivity, loss of consciousness, vomiting, etc.) and remove the inmate from the WRAP restraint if a medical emergency appears to exist."

Ex. 1 at 2. This provision does not state who determines whether a medical emergency appears to exist. I recommend LASD staff veer towards the side of inmate safety versus security risks when making these determinations. Inmate well-

6                          Case No. CV 12-00428 DDP (MRW)
DECLARATION OF MATTHEW THOMAS

being beats security concerns because you can escalate or de-escalate the security measures fairly quickly, but if an inmate goes into extreme distress, you have already lost that fight, and the inmate may suffer significant morbidity or mortality. I think it is reasonable to let the deputies err on the side of caution and release if they are worried about something and be required to comply when told to release by medical personnel.

24.      I recommend the provision be amended to clarify that personnel will "remove the inmate from the WRAP restraint if a medical emergency appears to exist or medical staff so direct."

25.      When personnel request medical aid due to complaints or signs of medical distress, they must also maintain the inmate in a seated position while waiting for medical staff to arrive. If, however, the person is unconscious, then the inmate should be placed in a recovery position until medical aid arrives.

26.      I recommend changes to the medical assessment once an inmate is in the WRAP restraint. The medical assessment, at minimum, must include documentation of temperature, pulse, and pulse oximetry. With existing, inexpensive, non-invasive, and reliable technology, this can be obtained without putting medical personnel in danger.

27.      Finally, I am concerned by the provision in the WRAP policy concluding that "[a]bsent any other factors, the un-resisted placement of an inmate in the WRAP restraint device does not constitute reportable force." Ex. 1 at 4. Who is being placed in a WRAP restraint when they are not resisting? If there is no resistance, due to the risks of respiratory distress and even death inherent in WRAP application, the WRAP must not be used for convenience sake, but rather other methods of restraint such as handcuffs and hobble strap must be used.

28.      As I stated in my previous declaration, LASD is "simply lucky" that they have not already had an in-custody death from WRAP use. Doc. 255-6 ¶ 9. I do

7

Case No. CV 12-00428 DDP (MRW)

DECLARATION OF MATTHEW THOMAS

not see sufficient protections in the current WRAP policy and remain concerned that someone could die in connection with use of the WRAP.

I declare under penalty of perjury that the foregoing is true and correct. Executed on June 11, 2023, in San Diego, CA.

Matthew Thomas, MD

Case No. CV 12-00428 DDP (MRW)

DECLARATION OF MATTHEW THOMAS

# Exhibit 1

Summary of Use of Force Reports

EXHIBIT 1
PAGE 9

**LOS ANGELES COUNTY SHERIFF'S DEPARTMENT**  **CSS# 19-1406**
**CUSTODY DIVISION MANUAL REVISION**  **VER. 33**

## EXECUTIVE SUMMARY

**This revision of the Los Angeles County Sheriff's Department's Custody Division Manual (CDM) adds section 7-03/050.00, "WRAP Restraint" to the CDM.**

**This proposal was requested by Lieutenant Daniel W. Martin, Custody Training and Standards Bureau, to update procedures for the use of the WRAP restraint device in custody facilities.**

**Staff Assignment:  Captain Erick S. Kim, Custody Support Services Bureau, at (213) 893-5977 or Sergeant Jacquelynn Marentes, Custody Support Services Bureau, at (213) 893-5966.**

**This proposal is presented in legislative format.   Proposed additions, amendments, and/or revisions are highlighted, and deletions are indicated by strikeout.**

### 7-03/050.00 WRAP RESTRAINT

The WRAP restraint device manufactured by Safe Restraints, Inc., is a Department-approved security restraint device authorized for use within Custody Services Division. The WRAP restraint device consists of a locking shoulder harness, leg restraint, and a three (3) inch wide ankle strap. The WRAP restraint is not a medically ordered restraint device, but rather a security restraint device as noted in Title 15, section 1058, "Use of Restraint Devices." The WRAP restraint allows for the ability to both walk an inmate, as well as provide extremity exercise while maintaining the safety, security, and control of the inmate."

Only trained personnel shall be authorized to perform, assist, or directly supervise the placement or removal of the WRAP restraint. The respective facility's training unit shall maintain a record of custody personnel trained in the use of the WRAP restraint. The WRAP restraint shall never be used as punishment, harassment, or for the purpose of knowingly causing harm to an inmate.

In the instance it is determined the WRAP restraint will be used in a planned use of force as delineated in Custody Division Manual (CDM) section 7-01/040.00, "Planned Use of Force," healthcare staff shall be requested to determine if placement in the WRAP restraint is contraindicated.

The WRAP restraint shall only be used when other less restrictive alternatives have failed, or it is apparent less restrictive alternatives will be ineffective at controlling the inmate.

EXHIBIT 1
PAGE 10

**LOS ANGELES COUNTY SHERIFF'S DEPARTMENT**                    **CSS# 19-1406**
**CUSTODY DIVISION MANUAL REVISION**                               **VER. 33**

## USE OF THE WRAP RESTRAINT

The WRAP restraint may only be used on inmates who pose an immediate threat to themselves or others when the circumstances reasonably perceived by personnel at the time indicate the WRAP restraint application is necessary to control the inmate. An immediate threat is present when:

- an inmate is violent or is physically resisting; or
- an inmate has demonstrated, by words or actions, an intent to be violent or to physically resist, and reasonably appears presently capable of causing physical harm to themselves, custody staff, or others if the WRAP restraint is not applied.

Absent exigent circumstances, placement in the WRAP restraint shall be video recorded, use of the WRAP restraint shall be authorized by the on-duty watch commander, and a supervisor at the permanent rank of sergeant or above shall be present during the inmate's placement in the WRAP restraint.

When applying the WRAP restraint after a use and force, if circumstances permit, the inmate shall be placed in the recovery position while waiting for the WRAP restraint to arrive to the scene.

When an inmate is placed in the WRAP restraint, the inmate shall remain under direct visual observation at all times. The cinching straps of the shoulder harness shall never be tightened to the point it restricts the inmate's ability to breathe. All components of the WRAP restraint shall be physically checked to ensure they are properly secured and present no obvious signs of circulatory restrictions to the inmate's extremities. Additionally, personnel shall not use unreasonable pressure on the inmate's back and shoulders to fasten the cinching straps. Every effort will be made to minimize the amount of time that the inmate is restrained.

The WRAP restraint shall not be used on inmates who are known to be pregnant.

**Personnel shall immediately request medical aid if an inmate in a WRAP restraint complains of, or exhibits medical distress (e.g. respiratory distress, including gasping, snorting or gurgling sounds, complaint of chest pain, change in facial color, restricted blood circulation, complaints of extreme heat, sudden quiet or inactivity, loss of consciousness, vomiting, etc.) and remove the inmate from the WRAP restraint if a medical emergency appears to exist.** If personnel identify that the inmate placed in the WRAP restraint has a need for mental health care, mental health staff shall be requested and personnel shall adhere to procedures delineated in Custody Division Manual (CDM) section 4-05/000.00, "Behavioral Observation and Mental Health Referral Reports."

EXHIBIT 1
PAGE 11

**LOS ANGELES COUNTY SHERIFF'S DEPARTMENT**  CSS# 19-1406
**CUSTODY DIVISION MANUAL REVISION**  VER. 33

## MONITORING INMATES SECURED IN THE WRAP RESTRAINT

A medical assessment shall be conducted within one (1) hour from the time of placement in the WRAP restraint to determine if placement is contraindicated. Following a use of force, the inmate shall be taken for a documented medical assessment as indicated in CDM section 7-07/000.00, "Use of Force Review Procedures." The medical opinion as to whether the inmate shall remain in the WRAP restraint shall take precedence over custody personnel's evaluation. Any refusals for medical treatment shall be made by the inmate directly to medical personnel. Inmates cannot refuse a medical assessment of the WRAP restraint.

Upon the inmate's placement in the WRAP restraint, Department personnel shall initiate the WRAP Restraint Security Check Log (SH-J-480). If it is determined an inmate shall remain in the WRAP restraint longer than fifteen (15) minutes, safety checks shall be documented twice (2) every thirty (30) minutes, approximately fifteen (15) minutes apart, until the WRAP restraint is removed. Safety checks shall verify that the WRAP restraint is not causing injury or an obvious medical problem (e.g. respiratory distress, chest pain, restricted blood circulation, loss of consciousness, vomiting, etc.).

A sergeant shall also conduct a safety check which evaluates the application of the WRAP restraint and shall assess its continued use at a minimum of once (1) every thirty (30) minutes. During this check, the sergeant shall reassess whether or not each inmate needs to remain in the WRAP restraint.

The sergeant shall ensure each inmate has been offered or provided access to toilet facilities, drinking water, prescribed medication, and be allowed to exercise their extremities (when safe), which shall be documented in the WRAP Restraint Security Check Log (SH-J-480). If the inmate misses a regularly scheduled meal due to being placed in the WRAP restraint, a meal shall be provided to the inmate upon removal of the WRAP restraint.

The sergeant shall attempt to have the inmate removed from the WRAP restraint before one (1) hour. If it is determined the inmate cannot be safely removed from the WRAP restraint before one (1) hour, the reason for continued retention shall be documented in the WRAP Restraint Security Check Log (SH-J-480). The sergeant shall have the inmate removed from the WRAP restraint within two (2) hours.

A supervisor at the rank of sergeant or above shall be present when the WRAP restraint is removed, absent exigent circumstances. The removal of the WRAP restraint should occur when the inmate can be safely confined within a housing location or an alternative location, or if the inmate is no longer deemed a threat. If necessary, the sergeant shall adhere to CDM section 7-01/040.00, "Planned Use of Force," upon determining the WRAP restraint can be removed, absent exigent circumstances

EXHIBIT 1
PAGE 12

**LOS ANGELES COUNTY SHERIFF'S DEPARTMENT**　　　　　　**CSS# 19-1406**
**CUSTODY DIVISION MANUAL REVISION**　　　　　　　　　　　　**VER. 33**

**WRAP CART**

**Use of the WRAP CART for Short-Term Movement**

If personnel utilize the WRAP CART only for security reasons during short-term movement/escort when the inmate is affixed to the WRAP CART, the provisions in Title 15, section 1058 do not apply. Use of the WRAP CART for short-term movement shall not exceed one (1) hour. The following procedures will apply and conform to the policies of the CDM.

- The inmate shall remain in direct and unobstructed visual observation by the supervising sergeant and designated custody personnel.
- The inmate's safety and physical condition shall be monitored continuously by designated custody personnel throughout the movement/escort. Personnel shall remove the inmate from the WRAP CART if a medical emergency appears to exist.
- If during the placement of the inmate in the WRAP CART, the inmate struggles against the restraints, has any visible signs of injury, or complains of pain, they shall be medically evaluated immediately after being secured.
- The use of the WRAP CART for security reasons during short-term movement shall be documented in the WRAP Restraint Security Check Log (SH-J-480) and the Custody Automated Reporting and Tracking System (CARTS) along with the reason for placement, time of placement, and time of removal from the WRAP CART.

Procedures in this policy will not apply when the WRAP CART is used solely as a transportation device and the inmate is not affixed to any portion of the WRAP CART. Notification of the use of the WRAP CART shall be made to the sergeant upon placement. Inmates placed in the WRAP CART may be restrained by methods consistent with Department policy.

If the inmate remains affixed to the WRAP CART for more than one (1) hour, all procedures for the WRAP restraint shall be followed.

Pregnant inmates shall not be handcuffed to the rear during transportation in the WRAP CART.

**REPORTING USE OF THE WRAP RESTRAINT**

Absent any other factors, the un-resisted placement of an inmate in the WRAP restraint device does not constitute reportable force. However, if in the course of applying the WRAP restraint, the inmate resists personnel, it constitutes a use of reportable force and must be reported pursuant to CDM section 7-06/000.00, "Use of Force Reporting Procedures."

EXHIBIT 1
PAGE 13

**LOS ANGELES COUNTY SHERIFF'S DEPARTMENT**                          **CSS# 19-1406**
**CUSTODY DIVISION MANUAL REVISION**                                 **VER. 33**

The WRAP Restraint Security Check Log (SH-J-480) shall be entered into CARTS by the supervising sergeant prior to the end of their shift.

EXHIBIT 1

PAGE 14

# Exhibit 2

Email re: WRAP RESTRAINT Monitors and Plaintiffs Proposed Changes

03.07.2023

EXHIBIT 2
PAGE 15

| | |
|---|---|
| **From:** | Melissa Camacho |
| **To:** | Robert Dugdale; dford kkenney bdhouston@c Nicholas Mitchell |
| **Cc:** | Corene Kendrick; Peter Eliasberg; Jacob Reisberg; Marisol Dominguez-Ruiz; Ganapathi, Anuva; Stephen Turanchik |
| **Subject:** | Rosas: WRAP restraint - Monitors and Plaintiffs proposed changes |
| **Date:** | Tuesday, March 7, 2023 9:15:00 AM |
| **Attachments:** | WRAP RESTRAINT Monitors and Plaintiffs Proposed Changes 03.07.2023.docx |

Hello Bob D., Dylan, Kathy, Bob H., and Nick,

We have reviewed the monitors' proposed changes to the WRAP policy. They are a welcome move toward properly categorizing WRAP use as a Use of Force and provide necessary safeguards to protect the health and lives of class members.

While we continue to assert that medical expert evaluation of the WRAP is necessary to determine whether it can be safely used in a custody environment, we propose the following changes in addition to those recommended by the monitors. We also invite the monitors to respond to this email because most of the proposed changes are meant to clarify and amplify the monitors' position.

1. Because placement in the WRAP restraint constitutes a use of reportable force, we recommend adding the following to paragraph 3: "The WRAP restraint *constitutes a reportable use of force and as such* may only be used *as a last resort* on inmates who pose an immediate threat to themselves or others . . ." For the same reason, we recommend adding a third bullet: *"and no other means of restriction, including handcuffs and/or leg restraints, will be effective."*

2. We recommend first creating and then including a list of medical or mental health conditions that contraindicate WRAP use. This reinforces our request for a medical expert to evaluate WRAP.  The list would likely include conditions like include asthma or other respiratory illness, musculo-skeletal injuries (e.g., cracked rib), obesity, agoraphobia, and certain heart conditions.

3. For WRAP application to be within policy, personnel must attempt force prevention. We recommend the following addition to the monitors' proposed changes to paragraph 4. "The use of the WRAP restraints shall only be used *when an inmate poses an immediate threat to themselves or others,* and when other less restrictive alternatives have failed, or it is apparent they will be ineffective at controlling the inmate. *Before the decision to approve WRAP application is made, the inmate must be placed into the recovery position as a force-prevention measure.*"

4. We see a contradiction in a change proposed in paragraph 5. Because WRAP application constitutes a use of force, it is impossible to be placed in a recovery position during WRAP application. But if WRAP application takes longer than a few minutes, WRAP application should pause, and the person placed in a recovery position.

5. We are not sure about the recommendation to place an individual in a recovery position after WRAP application but before placement in the cart. It seems like it would cause greater positional stress to be fully enclosed in the WRAP harness, with the chest clip to the legs, and laid on the side, than to be sitting in the CART. We welcome further conversation with the monitors on this point.

EXHIBIT 2
PAGE 16

6.  Paragraph 7 as written allows custody staff to make a medical determination. Plaintiffs suggest instead "Personnel shall immediately request medical aid . . ., *place the inmate in a recovery position until medical aid arrives,* and remove the inmate from the WRAP restraint, *if medical staff so direct.* If *medical* personnel identify that the inmate placed in the WRAP restraint has a need for mental health care . . . ." We also recommend adding "complaint of inability to breathe."

7.  In paragraph 8, because medical staff have to determine whether WRAP use is contraindicated before initial application, this paragraph should instead detail how medical staff determine whether continued restraint is contraindicated. "A medical assessment shall be conducted . . . to determine if *continued restraint* is contraindicated."

8.  We recommend that the presumptive time of release absent exceptional circumstances should be one hour, and the maximum time in the WRAP, two hours. Two hours is a very long time. Plaintiffs would need some assurance from a medical expert that WRAP use over two hours would not cause permanent psychological or physical damage to class members.

9.  We do not see anything in the policy that allows personnel to cut off people's clothing as part of the WRAP application. Does that mean that cutting off clothing during WRAP application is no longer permitted?

We have added our changes to those proposed by the monitors. In the attached document, the monitors' proposed changes are in red, and plaintiffs' counsel's proposed changes are in blue. Bob, Kathy, and Nick, we would appreciate if you look over our recommendations to see if there any that you would like to adopt in addition to your own.

Best regards,
Melissa

**Melissa Camacho**
she/her/ella
Senior Staff Attorney
ACLU of Southern California
1313 W 8th Street, Suite 200
Los Angeles, CA 90017

MCamacho@aclusocal.org

EXHIBIT 2
PAGE 17

**WRAP RESTRAINT**

**PURPOSE**

The purpose of this Custody Operations Directive is to update procedures for the use of the WRAP Restraint and WRAP CART in Custody Division facilities in accordance with Title 15 Regulations.

**ORDER**

The WRAP restraint device manufactured by Safe Restraints, Inc., is a Department approved security restraint device authorized for use within Custody Services Division. The WRAP restraint device consists of a locking shoulder harness, leg restraint, and a three (3) inch wide ankle strap. The WRAP allows for the ability to both walk an inmate as well as provide extremity exercises while maintaining the safety, security, and control of the inmate. The WRAP restraint is not a medically ordered restraint device, but rather a security restraint device as noted in Title 15, section 1058, "Use of Restraint Devices."

Only trained personnel shall be authorized to perform, assist, or directly supervise the placement or removal of the WRAP restraint. The respective facility's training unit shall maintain a record of custody personnel trained in the use of the WRAP restraint. The WRAP restraint shall never be used as punishment, harassment, or for the purpose of knowingly causing harm to an inmate.

The WRAP restraint constitutes a reportable use of force and as such may only be used as a last resort on inmates who pose an immediate threat to themselves or others when the circumstances reasonably perceived by personnel at the time indicate the WRAP restraint application is ~~reasonably~~ necessary to control the inmate.  An immediate threat is present when:

- an inmate is violent or is physically resisting; or
- an inmate has demonstrated, by words or actions, an intent to be violent or to physically resist, and reasonably appears presently capable of causing physical harm to themselves, custody staff, or others if the WRAP restraint is not applied; and
- no other means of restriction, including handcuffs and/or leg restraints, will be effective.

Absent exigent circumstances, use of the WRAP restraint shall be authorized by the on-duty watch commander, and a supervisor at the permanent rank of sergeant or above shall be present during the inmate's placement in the WRAP restraint. Prior to authorizing the use of the WRAP Restraint, the on-duty watch commander will check with medical and mental health staff to determine whether the inmate has any medical or mental health conditions that would contraindicate the use of the WRAP.  The use of the WRAP restraint shall only be used when an inmate poses an immediate threat to themselves or others, and other less restrictive alternatives have failed, or it is apparent they will be ineffective at controlling the inmate. Before the decision to approve WRAP application is made, the inmate must be placed into the recovery position as a force-prevention measure. The on-site supervisor will provide a written report with an explanation for using the WRAP and Cart.  Every application of the WRAP shall be captured on videotape.  Finally, spit masks should not ordinarily be used in conjunction with the WRAP restraint.  Spit masks can only be authorized by the on-duty watch commander and staff must specifically articulate the inmate's actions that warrant use of the spit mask.  If a spit mask is utilized, medical staff must conduct a medical assessment within fifteen minutes from the time of placement of the spit mask and every fifteen minutes thereafter.

EXHIBIT 2
PAGE 18

When an inmate is placed in the WRAP restraint, the inmate shall remain under direct visual observation at all times. ~~The inmate must be placed in the recovery position before or during placement in the WRAP.~~ If WRAP application takes longer than three minutes, application must be stopped for the inmate to be placed in a recovery position. If any amount of weight is placed on an inmate back to apply the WRAP, the inmate must again be placed in the recovery position before placement in the Cart. The cinching straps of the shoulder harness shall never be tightened to the point it restricts the inmate's ability to breathe. Additionally, personnel shall not use unreasonable ~~body weight or~~ pressure on the inmate's back and shoulders to fasten the cinching straps. Every effort will be made to minimize the amount of time that the inmate is restrained.

The WRAP restraint shall not be used on inmates who are known to be pregnant.

**Personnel shall immediately request medical aid if an inmate in a WRAP restraint complains of, or exhibits medical distress (e.g., respiratory distress, including gasping, snorting, or gurgling sounds, complaint of chest pain, change in facial color, restricted blood circulation, complaints of extreme heat or inability to breathe, sudden quiet or inactivity, loss of consciousness, vomiting, etc.), place the inmate in a recovery position until medical aid arrives, and remove the inmate from the WRAP restraint if ~~a~~ medical ~~emergency appears to exist~~ staff so direct.** If medical personnel identify that the inmate placed in the WRAP restraint has a need for mental health care, mental health staff shall be requested and personnel shall adhere to procedures delineated in Custody Division Manual (CDM) section 4-05/000.00, "Behavioral Observation and Mental Health Referral Reports."

**MONITORING INMATES SECURED IN THE WRAP RESTRAINT**

A medical assessment shall be conducted within one (1) hour from the time of placement in the WRAP restraint to determine if ~~placement~~ continued restraint is contraindicated. Any refusals for medical treatment shall be made by the inmate directly to medical personnel. Inmates cannot refuse the medical assessment of the WRAP restraint. All components shall be physically checked to ensure they are properly secured and present no obvious signs of circulatory restrictions to the inmate's extremities. Following a use of force, the inmate shall be taken for a documented medical assessment as indicated in CDM section 7-07/000.00, "Use of Force Review Procedures." The medical opinion as to whether the inmate shall remain in the WRAP restraint shall take precedence over custody personnel's evaluation.

Upon the inmate's placement in the WRAP restraint, Department personnel shall initiate the WRAP Restraint Security Check Log (SH-J-480). If it is determined an inmate shall remain in the WRAP restraint longer than fifteen (15) minutes, safety checks shall be documented twice (2) every thirty (30) minutes, approximately fifteen (15) minutes apart, until the WRAP restraint is removed. Safety checks shall verify that the WRAP restraint is not causing injury or an obvious medical problem (e.g., respiratory distress, chest pain, restricted blood circulation, loss of consciousness, vomiting, etc.).

A sergeant shall also conduct a safety check which evaluates the application of the WRAP restraint and shall assess its continued use at a minimum of once (1) every thirty (30) minutes. During this check, the sergeant shall reassess whether or not each inmate needs to remain in the WRAP restraint.

EXHIBIT 2
PAGE 19

2

The sergeant shall ~~attempt to~~ have the inmate removed from the WRAP Restraint before ~~two (2)~~ one (1) hour~~s~~ absent exceptional circumstances. If it is determined the inmate cannot be safely removed from the WRAP restraints before ~~two (2)~~ one (1) hour~~s~~, the watch commander shall be notified and respond to the location of the inmate(s) to evaluate the application of the WRAP restraint assess its continued use. If the watch commander determines that exceptional circumstances exist that require continued retention in the WRAP restraint, ~~the inmate will remain in the WRAP restraint,~~ the reason~~s~~ ~~for continued retention~~ shall be documented with specificity in the WRAP Restraint Security Check Log (SH-J-480). The watch commander shall ensure each inmate has been offered or provided access to toilet facilities, drinking water, prescribed medications, and be allowed to exercise their extremities (when safe), which shall be documented in the WRAP Security Check Log (SH-J-480). If an inmate is released from a portion of the WRAP restraint for any reason, e.g., to use the toilet, consumption of food or beverage, etc. without continuing disruptive aggressive behavior, the watch commander should release the inmate from the WRAP restraint. If an inmate is returned to the WRAP restraint after a non-disruptive break, the watch commander must document the reasons for this action. If an inmate misses a regularly scheduled meal due to being placed in the WRAP restraint, a meal shall be provided to the inmate upon removal of the WRAP restraint.

~~The sergeant shall attempt to have the inmate removed from the WRAP restraint before two (2) hours. If it is determined the inmate cannot be safely removed from the WRAP restraint before two (2) hours, the watch commander shall be notified and respond to the location of the inmate(s) to evaluate the application of the WRAP restraint and assess its continued use. If the watch commander determines the inmate will remain in the WRAP restraint, the reason for continued retention shall be documented in the WRAP Restraint Security Check Log (SH-J-480). The watch commander shall ensure each inmate has been offered or provided access to toilet facilities, drinking water, and be allowed to exercise their extremities (when safe), which shall be documented in the WRAP Restraint Security Check Log (SH-J-480). If the inmate misses a regularly scheduled meal due to being placed in the WRAP restraint, a meal shall be provided to the inmate upon removal of the WRAP restraint.~~

If an inmate remains in the WRAP restraint in excess of ~~three (3)~~ one and a half (1.5) hours, notification and consultation shall be made with the facility's unit commander. The reason for continued retention shall be documented in the WRAP Restraint Security Check Log (SH-J-480).

Inmates shall not remain in the WRAP restraint or WRAP CART beyond ~~four (4)~~ two (2) hours.

A supervisor at the rank of sergeant or above shall be present when the WRAP restraint is removed, absent exigent circumstances. The removal of the WRAP restraint should occur when the inmate can be safely confined within a housing location or an alternative location, or if the inmate is no longer deemed a threat. If necessary, the sergeant shall adhere to CDM section 7-01/040.00, "Planned Use of Force," upon determining the WRAP restraint can be removed, absent exigent circumstances.

**WRAP CART**

**Use of the WRAP CART for Short-Term Movement**

If personnel utilize the WRAP CART only for security reasons during short-term movement/escort when the inmate is affixed to the WRAP CART, the provisions in Title

EXHIBIT 2
PAGE 20

3

15, section 1058 do not apply. Use of the WRAP CART for short-term movement shall not exceed one (1) hour. The following procedures will apply and conform to the policies of the CDM.

- The inmate shall remain in direct and unobstructed visual observation by the supervising sergeant and designated custody personnel.
- The inmate's safety and physical condition shall be monitored continuously by designated custody personnel throughout the movement/escort. Personnel shall remove the inmate from the WRAP CART if a medical emergency appears to exist.
- If during the placement of the inmate in the WRAP CART, the inmate struggles against the restraints, has any visible signs of injury, or complains of pain, they shall be medically evaluated immediately after being secured.
- The use of the WRAP CART for security reasons during short-term movement shall be documented in the WRAP Restraint Security Check Log (SH-J-480) along with the reason for placement, time of placement, and time of removal from the WRAP CART.

Procedures in this policy will not apply when the WRAP CART is used solely as a transportation device and the inmate is not affixed to any portion of the WRAP CART. Notification of the use of the WRAP CART shall be made to the sergeant upon placement. Inmates placed in the WRAP CART may be restrained by methods consistent with Department policy.

If the inmate remains affixed to the WRAP CART for more than one (1) hour, all procedures for the WRAP restraint shall continue to be followed.

Pregnant inmates shall not be handcuffed ~~to the rear~~ during transportation in the WRAP CART.

**REPORTING USE OF THE WRAP RESTRAINT**

~~Absent any other factors, the unresisted~~ The placement of an inmate in the WRAP restraint device ~~does not constitute reportable force. However, if in the course of applying theWRAP restraint, the inmate resists personnel,~~ it constitutes a use of reportable force and must be reported pursuant to CDM section 7-06/000.00, "Use of Force Reporting Procedures." When only the inmate's legs/lower body is placed in the bottom portion of the WRAP, and walked from the location of the application, this is not reportable force as this level of restraint is similar to handcuffing.

As with all uses of force, the WRAP Restraint Security Check Log (SH-J-480) shall be entered into the Custody Automated Reporting and Tracking System (CARTS) by the supervising sergeant prior to the end of their shift.

Questions regarding this directive should be directed to Custody Support Services Bureau, Captain Erick S. Kim, at (213) 893-5102.

**Revised 09/22/22.**
**COD 04/25/22**

EXHIBIT 2                    4
PAGE 21

# Exhibit 3

Video Clip

Filed with Notice of Lodging

EXHIBIT 3
PAGE 22