KATIE TOWNSEND (SBN 254321)
ktownsend@rcfp.org
REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th Street NW, Suite 1020
Washington, D.C. 20005
Telephone:  202.795.9300
Facsimile:  202.795.9310

JEFF GLASSER (SBN 252596)
jeff.glasser@latimes.com
LOS ANGELES TIMES COMMUNICATIONS LLC
2300 E. Imperial Highway
El Segundo, CA 90245
Telephone: 213-237-7077

*Counsel for Non-Party Intervenor*
LOS ANGELES TIMES COMMUNICATIONS LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ALEX ROSAS *and* JONATHAN GOODWIN, *on behalf of themselves and those similarly situated*,<br><br>        Plaintiffs,<br><br>    v.<br><br>ROBERT LUNA, *in his official capacity as Sheriff of Los Angeles County*,<br><br>        Defendant. | Case No. 12-cv-00428 DDP (MRW)<br><br>**REPLY IN SUPPORT OF MOTION OF NON-PARTY LOS ANGELES TIMES COMMUNICATIONS LLC TO INTERVENE AND UNSEAL**<br><br>Date:  September 11, 2023<br><br>Time:  10:00AM<br><br>Judge:  Hon. Dean D. Pregerson |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................ii

INTRODUCTION........................................................................................... 1

ARGUMENT ................................................................................................. 2

I.   The *Times*' motion to intervene is timely, and Defendant's arguments to the contrary are foreclosed by Circuit precedent. ...................................... 2

II.  The Use-of-Force Materials should be unsealed. ................................... 5

    A.   The common law presumption of public access attached to the Use-of-Force Materials when they were filed with the Court. ............................. 5

    B.   The strong common law presumption of access is not overcome. ........... 7

    C.   Even under a good-cause standard, Defendant cannot show that sealing is justified given the powerful public interest in access. ........................ 12

CONCLUSION ........................................................................................... 15

**REPLY IN SUPPORT OF MOTION OF NON-PARTY**
**LOS ANGELES TIMES COMMUNICATIONS LLC TO INTERVENE AND UNSEAL**

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Am. C.L. Union of Illinois v. Alvarez*, 679 F.3d 583 (7th Cir. 2012) ......................... 14

5

*Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470 (9th Cir. 1992) ................. 3, 8, 12

6

*Brunson v. Lambert Firm PLC*, 757 F. App'x 563 (9th Cir. 2018) ............................. 4

7

*Callahan v. Network for Organ Sharing*, 17 F.4th 1356 (11th Cir. 2021) ................... 5

8

*Chi v. University of Southern California*, No. 2:18-cv-04258, 2019 WL 3315282
(C.D. Cal. May 21, 2019) .................................................................................. 11

9

*Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092 (9th Cir. 2016) ......... 1, 6, 8

10

*Dominguez v. City of Los Angeles*, No. 17-4557, 2018 WL 6333661 (C.D. Cal. Apr. 23, 2018) ................................................................................. 10, 12, 13

11

12

*Estate of Neil v. County of Colusa*, No. 2:19-cv-02441, 2020 WL 5535448 (E.D. Cal. Sept. 15, 2020) ............................................................................................... 13

13

*Evans v. Federal Bureau of Prisons*, 951 F.3d 578 (D.C. Cir. 2020) ......................... 10

14

*Facebook, Inc. v. ConnectU, Inc.*, No. C 07-01389, 2008 WL 11357787 (N.D. Cal. July 2, 2008) ......................................................................................................... 7

15

16

*Fields v. City of Philadelphia*, 862 F.3d 353 (3d Cir. 2017)...................................... 14

17

*Foltz v. State Farm Mutual Auto. Ins. Co.*, 331 F.3d 1122 (9th Cir. 2003) ................. 6

18

*Forbes Media LLC v. United States*, 61 F.4th 1072 (9th Cir. 2023)............................. 7

19

*Greer v. County of San Diego*, No. 19-cv-378, 2023 WL 4479234 (S.D. Cal. July 10, 2023) ..................................................................................................... 5, 14

20

*Hardy v. Kaszycki & Sons*, No. 83-cv-6346, 2017 WL 6805707 (S.D.N.Y. Nov. 21, 2017) .............................................................................................................. 5

21

22

*Harper v. Nevada Property 1, LLC*, 552 F. Supp. 3d 1033 (D. Nev. 2021) ................ 6

23

*In re Nat'l Prescription Opiate Litig.*, 927 F.3d 919 (6th Cir. 2019) ......................... 14

24

*In re Public Defender Service of D.C. to Unseal Certain Records*, 607 F. Supp. 3d 11 (D.D.C. 2022) ................................................................................................... 1

25

*In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417 (9th Cir. 2011) ................................................................................................... 12, 13

26

27

*Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172 (9th Cir. 2006) ............. *passim*

28

*LaRocca v. City of Los Angeles*, No. 2:22-cv-06948, 2023 WL 4291066 (C.D. Cal. May 31, 2023) .................................................................................. 9, 10, 12

*Lopez v. Nevada Dep't of Corrections*, No. 3:17-cv-00732, 2021 WL 11430905 (D. Nev. Oct. 22, 2021) .............................................................................. 11

*Mendez v. City of Gardena*, 222 F. Supp. 3d 782 (C.D. Cal. 2015) .................... 10, 11

*Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589 (1978) ............................................................................................. 1

*NML Capital Ltd. v. Republic of Argentina*, No. 2:14-cv-492, 2015 WL 727924 (D. Nev. Feb. 19, 2015) .............................................................................. 13

*Oregonian Pub. Co. v. U.S. Dist. Court*, 920 F.2d 1462 (9th Cir. 1990)..................... 6

*Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206 (9th Cir. 2002) ................................................................................ 12

*Pub. Citizen Grp. v. Liggett Grp., Inc.*, 858 F.2d 775 (1st Cir. 1988) ........................ 3

*Sampson*, No. 14-cv-1807, 2015 WL 11658713 (S.D. Cal. Aug. 31, 2015)......... 10, 12

*San Jose Mercury News, Inc. v. U.S. District Court*, 187 F.3d 1096 (9th Cir. 1999) ..........................................................................................................*passim*

*Santa Ana Police Officers Ass'n v. City of Santa Ana*, 723 F. App'x 399 (9th Cir. 2018) ................................................................................................................... 10

*United States v. Business of Custer Battlefield Museum & Store*, 658 F.3d 1188 (9th Cir. 2011) ................................................................................................. 5, 9

*WatchGuard Technologies, Inc. v. iValue Infosolutions Pvt. Ltd.*, No. 15-1697, 2017 WL 3581624 (W.D. Wash. Aug. 18, 2017) ............................................... 6

**Other Authorities**

Keri Blakinger, *Fights, Beatings and a Birth: Videos Smuggled out of L.A. Jails Reveal Violence, Neglect*, L.A. Times (June 24, 2023), https://perma.cc/5ULL-73ZD ................................................................................................................ 11

# INTRODUCTION

The performance of the officials and institutions responsible for allegedly unconstitutional conditions in Los Angeles County jails is not only a subject of vital public interest but also the heart of a weighty controversy now pending before this Court—one in which Plaintiffs ask that the Court exercise "important Article III powers" to conform the conduct of the Los Angeles County Sheriff's Department to the law. *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1100 (9th Cir. 2016) (citation omitted). The filing under seal of the Use-of-Force Materials on which that controversy turns[1] undermines the core promise of the right of access: that the public is entitled to judge the evidence in support of Plaintiffs' requested relief "for itself rather than taking the Court and parties at their word." *In re Public Defender Service of D.C. to Unseal Certain Records*, 607 F. Supp. 3d 11, 26 n.8 (D.D.C. 2022). Simply put, the public's right to "keep a watchful eye on the workings of public agencies," *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978), is not, as Defendant's principal line of argument here suggests, overcome by government assurance that official misconduct has "vastly improved," Defendant's Omnibus Opposition at 3 (ECF No. 272).

The motion of Los Angeles Times Communications LLC (the "*Los Angeles Times*" or the "*Times*") to intervene and unseal those judicial records should be granted. Defendant's objections to transparency confuse a hotly litigated controversy

---

[1]    As it did in its Motion to Intervene and Unseal (ECF No. 268) ("Motion"), the *Times* refers to the use-of-force packets and videos filed with the Court as exhibits in support of Plaintiffs' Motion to Modify Implementation Plan, as well as the redacted portions of Plaintiffs' Memorandum of Points and Authorities and supporting declarations that reference those exhibits, collectively as "the Use-of-Force Materials" in this Reply. The *Times* also agrees with Witness LA that the additional sealed judicial records identified in Witness LA's motion to intervene should be made public for the same reasons. *See* ECF No. 269.

**REPLY IN SUPPORT OF MOTION OF NON-PARTY**
**LOS ANGELES TIMES COMMUNICATIONS LLC TO INTERVENE AND UNSEAL**

over a public agency's official conduct—one whose resolution will affect the rights and safety of more than 10,000 incarcerated individuals—with a run-of-the-mill discovery dispute between private litigants.  Defendant cannot overcome the strong presumption of public access to judicial records that, contrary to its arguments, is fully applicable to the Use-of-Force Materials filed in support of Plaintiffs' Motion to Modify Implementation Plan, and Defendant's arguments against granting the *Times* intervenor status, for their part, were squarely rejected by the Ninth Circuit in *San Jose Mercury News, Inc. v. U.S. District Court*, 187 F.3d 1096 (9th Cir. 1999).

For the reasons given herein and in its Motion, the *Los Angeles Times* respectfully requests that the Court enter an order granting its motion to intervene and unsealing the Use-of-Force Materials.

## ARGUMENT

**I.    The *Times*' motion to intervene is timely, and Defendant's arguments to the contrary are foreclosed by Circuit precedent.**

As a threshold matter, in claiming undue delay, Defendant starts the clock on the wrong date.  For permissive intervention,[2] the inquiry "looks to when the intervenor first became aware that its interests would no longer be adequately protected by the parties"—in this case, when the Use-of-Force Records were filed under seal notwithstanding their importance to the public's ability to evaluate Plaintiffs' pending motion to modify the implementation plan and this Court's anticipated resolution of that motion.  *San Jose Mercury News*, 187 F.3d at 1101.  The bare fact that a protective order was entered in 2018 could not have given the

---

[2]    Defendant's opposition also fails entirely to address the *Times*' argument, *see* Memorandum of Points and Authorities in Support of Non-Party Los Angeles Times Communications LLC to Intervene and Unseal at 6 (ECF No. 268-1), that the *Times* is entitled to intervene as of right to assert the public's right of access, *see Ford v. City of Huntsville*, 242 F.3d 235, 240 (5th Cir. 2001).

*Times* notice of the controversy that is now before the Court, nor the fact that the public's interest in understanding it would not be adequately protected. That is especially so here because, under the protective order at issue, Plaintiffs had expressly "reserve[d] the right to move the Court to determine whether any Confidential Information may be publicly filed in this litigation pursuant to applicable federal law." Stipulated Protective Order Regarding Class Counsel's Access to Documents at 16 (ECF No. 193). Only when the Motion to Modify Implementation Plan was filed without an accompanying motion to make public the information on which it relied—information without which the press and public cannot fairly evaluate Plaintiffs' allegations—did it become clear that the *Times*' intervention was necessary to vindicate the public's interest in transparency.

But even if it were proper to measure timeliness from the moment the protective order was entered—it isn't—the Ninth Circuit has made clear that "delays measured in years have been tolerated where an intervenor is pressing the public's right of access to judicial records." *San Jose Mercury News*, 187 F.3d at 1101; *see also Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 471, 476 (9th Cir. 1992) (permitting intervention two years after settlement and four years after entry of "overinclusive" stipulated protective order). That is because the common law right of access "exists today for the records of cases decided a hundred years ago as surely as it does for lawsuits now in the early stages of motions litigation." *Pub. Citizen Grp. v. Liggett Grp., Inc.*, 858 F.2d 775, 786 (1st Cir. 1988) (internal citation omitted). The passage of years (or even decades)—to the extent it is relevant at all—should be considered only to the extent it may unduly prejudice a party, but Defendant's only argument for prejudice—that Defendant bargained for a protective order in agreeing to produce materials, including the Use-of-Force Records, to Plaintiffs—was squarely rejected in *San Jose Mercury News*.

**REPLY IN SUPPORT OF MOTION OF NON-PARTY
LOS ANGELES TIMES COMMUNICATIONS LLC TO INTERVENE AND UNSEAL**

As the Ninth Circuit explained, "[t]he right of access to court documents belongs to the public, and the Plaintiffs were in no position to bargain that right away." *San Jose Mercury News*, 187 F.3d at 1101. Instead, whether or not it was reasonable for Defendant to expect the stipulated protective order to shield judicial records subsequently filed with the Court in the face of a motion to unseal—it wasn't, as discussed below—"should affect not the right to intervene, but the court's evaluation of the merits of the applicant's motion." *Id.* (internal citation omitted).

Defendant's only contrary authority, *Brunson v. Lambert Firm PLC*, 757 F. App'x 563 (9th Cir. 2018), is inapposite. In that case, a proposed intervenor—who was by his own account "not after the confidential information or sealed files at all," and whose interests were "identical to the interest advanced by" one of the parties—unsuccessfully attempted a duplicative challenge to the confidentiality term of a settlement "reached without court assistance," *id.* (internal citation omitted). But to narrate those facts is to make clear that *Brunson* has nothing to say about the question presented here. For one, the sealing of the Use-of-Force Materials only recently filed with the Court was not a bargained-for aspect of the parties' settlement agreement. On the contrary, the protective order on which Defendant relies was entered long after this Court approved that settlement, and, even by its own terms, the protective order does not promise Defendant any lasting secrecy; as noted above, it expressly contemplates that Plaintiffs may subsequently move to unseal information to which applies. *See* Stipulated Protective Order Regarding Class Counsel's Access to Documents at 16 (ECF No. 193). But even if Defendant had bargained for secrecy, *Brunson* would not guarantee it because this case, far from involving "a private agreement reached without court assistance," *Brunson*, 757 F. App'x at 566, concerns a court-approved settlement—closer in substance to a consent decree—that imposes specified obligations on a public agency and contemplates layer upon layer of ongoing public scrutiny, *see, e.g.*, *Hardy v. Kaszycki & Sons*, No. 83-cv-6346, 2017

4

WL 6805707, at *5–6 (S.D.N.Y. Nov. 21, 2017) (rejecting purported reliance interest in confidentiality given required role of court in approving class settlement). To the extent Defendant nevertheless assumed that all of the records produced to Plaintiffs would remain forever secret, *San Jose Mercury News* holds that "such reliance was unreasonable." 187 F.3d at 1101. The *Times*' motion to intervene should be granted.

## II. The Use-of-Force Materials should be unsealed.

"Information about the County's possible mistreatment of its inmates is inherently a matter of significant public interest," *Greer v. County of San Diego*, No. 19-cv-378, 2023 WL 4479234, at *5 (S.D. Cal. July 10, 2023). Defendant cannot overcome that interest under any standard plausibly applicable here. In resisting disclosure, Defendant relies overwhelmingly on the insistence that the Sheriff produced the Use-of-Force Materials to Plaintiffs on the assumption they would remain privately held by the parties indefinitely. But when "a matter is brought before a court for resolution, it is no longer solely the parties' case, but also the public's case." *Callahan v. Network for Organ Sharing*, 17 F.4th 1356, 1365 (11th Cir. 2021) (citation omitted). That is all the more true where, as here, the subject of the litigation is an issue of fundamental public concern, implicating the rights of thousands. As detailed below, whether under the governing compelling-interests test or Defendant's preferred good-cause standard, the public is entitled to access here.[3]

### A. The common law presumption of public access attached to the Use-of-Force Materials when they were filed with the Court.

A strong common law presumption of access attaches to any motion that is "dispositive" in the sense that it seeks relief "more than tangentially related to the

---

[3] Because either analysis requires all of the relief sought by the *Times*' Motion, the Court need not reach the question whether the First Amendment also requires access. *See United States v. Business of Custer Battlefield Museum & Store*, 658 F.3d 1188, 1196 (9th Cir. 2011) (approaching the common law first). The *Times* agrees with Witness LA, however, that the First Amendment presumption also attaches here.

merits of a case," *Ctr. for Auto Safety*, 809 F.3d at 1101, as well as any material attached to that motion—regardless whether those attachments "were previously filed under seal or protective order," *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006).  Defendant's efforts to evade the common law presumption here are meritless.

For one, not one of Defendant's (unreported) authorities for the claim that a motion to enforce a settlement agreement is not "dispositive" contains any reasoning for that conclusion.  *See* Defendant's Omnibus Opposition at 14 (ECF No. 272).  And "[a]lthough case law within the Ninth Circuit is not uniform, there is ample authority as to the dispositive nature of a motion to enforce [a] settlement."  *Harper v. Nevada Property 1, LLC*, 552 F. Supp. 3d 1033, 1040 n.6 (D. Nev. 2021) (collecting cases).  For good reason:  Much as a plea agreement often "takes the place of the criminal trial," *Oregonian Pub. Co. v. U.S. Dist. Court*, 920 F.2d 1462, 1465 (9th Cir. 1990), a court-approved settlement agreement—and any motion to enforce it—"serve[s] as a substitute for trial" in the civil context, *WatchGuard Technologies, Inc. v. iValue Infosolutions Pvt. Ltd.*, No. 15-1697, 2017 WL 3581624, at *1 (W.D. Wash. Aug. 18, 2017) (quoting *Foltz v. State Farm Mutual Auto. Ins. Co.*, 331 F.3d 1122, 1135–36 (9th Cir. 2003)) (collecting yet more cases).  That such motions "involve important issues and information to which our case law demands the public should have access" is especially clear here, where Plaintiffs' request for relief—in substance—asks this Court to enjoin a public agency to redress alleged violations of constitutional rights.  *Ctr. for Auto Safety*, 809 F.3d at 1098; *see also id.* at 1100 (strong common law presumption of access to motions for preliminary injunction, which "affect litigants' substantive rights" and "invoke important Article III powers" (citations omitted)).  This Court's ultimate decision on the motion will, in practice, affect the rights and physical safety of thousands of incarcerated individuals; it strains credulity to describe that relief as non-dispositive.

Defendant's argument that the Use-of-Force Materials fall into the "narrow" category of documents that have "traditionally been kept secret for important policy reasons" is even farther off the mark. *Kamakana*, 447 F.3d at 1178 (citation omitted). For one, it cannot be reconciled with the weight of authority discussed above, which holds that motions to enforce a settlement agreement are presumptively public under the common law. The fact that Plaintiffs' Motion to Modify Implementation Plan happens to involve the conduct of law enforcement officials gets Defendant no further. Even assuming *arguendo* that Defendant could demonstrate that some piece of information in the Use-of-Force Materials implicates a valid privilege, the Ninth Circuit already has rejected the claim that "documents subject to the privacy, law enforcement, and official information privileges . . . automatically fall within the 'traditionally kept secret' exception" when incorporated into a dispositive motion or its attachments. *Kamakana*, 447 F.3d at 1184 (so holding with respect to summary judgment motions). And the suggestion that a civil motion to enforce a court-approved settlement agreement resembles, in any respect, a surveillance order during the pre-indictment stage of an ongoing criminal investigation is simply not serious. *See Forbes Media LLC v. United States*, 61 F.4th 1072, 1081 (9th Cir. 2023).[4] Defendant can defend concealing any portion of the Use-of-Force Materials at issue here, if at all, only by demonstrating "compelling reasons" to seal them. *Id.*

**B.   The strong common law presumption of access is not overcome.**

---

[4]    Defendant's reliance on *Facebook, Inc. v. ConnectU, Inc.*, No. C 07-01389, 2008 WL 11357787 (N.D. Cal. July 2, 2008), is likewise misplaced. That case involved a motion for access to records reflecting the substance of "the parties' settlement terms or negotiations" where the settlement itself included an express confidentiality clause. *Id.* at *3. Not only did the parties in this case necessarily reach a public settlement, subject to multiple layers of ongoing public oversight, but the Use-of-Force Materials have nothing to do with the parties' negotiations.

To justify sealing any portion of a judicial record to which the common law presumption of access attaches, a party "must articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure." *Kamakana*, 447 F.3d at 1178–78 (alteration and citations omitted). Defendant advances a diversity of rationales for nondisclosure here, but none clear that "stringent" bar. *Ctr. for Auto Safety*, 809 F.3d at 1096.

The argument Defendant presses most strenuously is that "forcing the Department to disclose information that was only produced on the condition of confidentiality is fundamentally unfair." Defendant's Omnibus Opposition at 17 (ECF No. 272); *see also id.* at 11–12, 16, 19, 21. But the Ninth Circuit has repeatedly confronted and rejected that argument.

For one, Defendant ignores the significance of the fact that the Use-of-Force Materials were attached to a substantive motion. *Kamakana* makes express that "[t]he presumption of access is not rebutted where . . . documents subject to a protective order are filed under seal as attachments to a dispositive motion," because the common law's compelling-reasons standard is stricter than the good-cause showing that might justify the entry of a protective order in the first instance. 447 F.3d at 1179 (omission in original) (citation omitted). That fact, alone, should be enough to end discussion of Defendant's purported reliance interests in this case.

Even setting that point aside, however, Ninth Circuit law makes clear that Defendant's claimed reliance on a stipulated protective order was "unreasonable," *San Jose Mercury News*, 187 F.3d at 1001, because the parties cannot promise themselves that no *non*-party will later move to assert the public's right of access—especially where a party "has not made a particularized showing of good cause with respect to any individual document," *id.* at 1003; *see also Beckman Indus., Inc.*, 966 F.2d at 476; *Foltz*, 331 F.3d at 1138. While Defendant insists that the protective order was not overbroad because it "specifically references" several categories of

**REPLY IN SUPPORT OF MOTION OF NON-PARTY LOS ANGELES TIMES COMMUNICATIONS LLC TO INTERVENE AND UNSEAL**

documents that the parties intended it to cover, Defendant's Omnibus Opposition at 16 (ECF No. 272), that argument misses the point. The order enumerates the documents to which it applies, but its statement of good cause deals with all of them as a lump sum—rehearsing in a single sentence the privileges that Defendant believes may apply, without explaining why any of them would apply to any specific record. *See* Stipulated Protective Order Regarding Class Counsel's Access to Documents at 4 (ECF No. 193). The protective order's plain text makes clear that Defendant never "made a particularized showing of good cause with respect to any individual document" at issue now, *San Jose Mercury News*, 187 F.3d at 1003, and any reliance Defendant may have placed on it does not provide a compelling reason to depart from the presumption of access.

Defendant's remaining rationales for secrecy are no more persuasive. A party cannot incant "ongoing investigation" and overcome the common law presumption, *see Kamakana*, 447 F.3d at 1184, but in any event Defendant concedes that "most of the videos at issue concern investigations which are no longer ongoing," Defendant's Omnibus Opposition at 13 (ECF No. 272); *see also Custer Battlefield Museum*, 658 F.3d at 1194 (even as to bona fide investigative materials, investigative interests "not as relevant once an investigation has been closed"). What's more, Defendant's suggestion that unsealing the Use-of-Force Materials could chill cooperation in internal investigations goes entirely unexplained. *See LaRocca v. City of Los Angeles*, No. 2:22-cv-06948, 2023 WL 4291066, at *4 (C.D. Cal. May 31, 2023) (rejecting similar argument against unsealing video of use of force where city asserted but did not "explain how or why the public release of the videos would impede LAPD's ability to use the Videos to conduct internal evaluations"); *Kamakana*, 447 F.3d at 1182 (claim that release of law enforcement records previously withheld pursuant to a stipulated protective order would "hinder [the]

**REPLY IN SUPPORT OF MOTION OF NON-PARTY LOS ANGELES TIMES COMMUNICATIONS LLC TO INTERVENE AND UNSEAL**

agency's future operations with other agencies" or "cast [the agency's] officers in a
false light" was "conclusory" and did not meet "compelling reasons" standard).

As to Defendant's reliance on its employees' privacy, law enforcement officers
have no reasonable expectation of privacy in official footage of "on-duty incidents."
*Santa Ana Police Officers Ass'n v. City of Santa Ana*, 723 F. App'x 399, 402 (9th Cir.
2018) (so holding with respect to body camera videos); *see also, e.g.*, *Dominguez v.
City of Los Angeles*, No. 17-4557, 2018 WL 6333661, at *3 (C.D. Cal. Apr. 23, 2018)
("[P]rivacy interests are diminished for public actors subject to legitimate public
scrutiny.").  As a court in this District observed in the very context presented here—
access to video footage documenting an allegedly unlawful use of force—officials
who serve the public "cannot assert a valid compelling interest in sealing the videos
to cover up any wrongdoing on their part or to shield themselves from
embarrassment." *Mendez v. City of Gardena*, 222 F. Supp. 3d 782, 792 (C.D. Cal.
2015).  In any event, any such interest would justify, *at most*, blurring officers'
faces—not concealing all evidence of their official conduct.  *See, e.g.*, *Dominguez*,
2018 WL 6333661, at *4; *Sampson*, No. 14-cv-1807, 2015 WL 11658713, at *7 (S.D.
Cal. Aug. 31, 2015).  Defendant's single-sentence assertion that videos "cannot easily
be redacted," Decl. of Larry Alva at 3, is belied by the wealth of case law in and out
of this Circuit requiring just that, *see Dominguez*, 2018 WL 6333661, at *4; *Sampson*,
2015 WL 11658713, at *7; *see also Evans v. Federal Bureau of Prisons*, 951 F.3d
578, 587 (D.C. Cir. 2020) (rejecting conclusory assertion that government could not
blur jail footage given that "teenagers [who] have fewer resources than the United
States government" can do so on social media).[5]  That the means to do so are readily

---

[5]    The *Times* does not concede that there are any privacy interests implicated in
this case that would *require* blurring identifying information in the Use-of-Force
Materials.  *See, e.g.*, *LaRocca*, 2023 WL 4291066, at *2–4 (noting the possibility of
"blurring of the faces of non-parties" but ordering full disclosure of video instead).

available to the public is apparent from the *Times*' own reporting.  *See, e.g.*, Keri Blakinger, *Fights, Beatings and a Birth: Videos Smuggled out of L.A. Jails Reveal Violence, Neglect*, L.A. Times (June 24, 2023), https://perma.cc/5ULL-73ZD (publishing—with blurred faces—raw footage documenting conditions in L.A. jails).

Incarcerated individuals, for their part, might have legitimate medical privacy interests to assert, but class counsel for Plaintiffs—who represent their interests—have not opposed disclosure here.  *See City of Gardena*, 222 F. Supp. 3d at 792 (rejecting effort by law enforcement officials to invoke the privacy of individuals subjected to excessive use of force where Plaintiffs "have made abundantly clear that they wish the videos to be made available to the public").  Moreover, any such interests could only justify sealing information "unrelated" to the merits of Plaintiffs' claims against Defendant—not "aspects of [the] medical condition at issue" in the very allegations of excessive force presented by Plaintiffs' Motion to Modify Implementation Plan, such as injuries resulting from the use of force.  *Lopez v. Nevada Dep't of Corrections*, No. 3:17-cv-00732, 2021 WL 11430905, at *2 (D. Nev. Oct. 22, 2021).  And, as above, Defendant does not explain why any medical privacy interest would extend beyond the blurring of faces or the redaction of "identifying information" of particular incarcerated individuals in light of the intense public interest in understanding the gravity of the force allegedly used by public officials against individuals under their care.  *Chi v. University of Southern California*, No. 2:18-cv-04258, 2019 WL 3315282, at *9 (C.D. Cal. May 21, 2019).  But to the extent that any such blurring would conceal official misconduct by law enforcement employees entrusted with supervision of the jails, the public interest in disclosure would outweigh public employees' interest in avoiding scrutiny of their misbehavior while doing the public's business.  *See Mendez*, 222 F. Supp. 3d at 792.

In sum, the interests asserted by Defendant would justify, *at most*, targeted blurring in the Use-of-Force Materials.  But because Defendant has failed to

**REPLY IN SUPPORT OF MOTION OF NON-PARTY**
**LOS ANGELES TIMES COMMUNICATIONS LLC TO INTERVENE AND UNSEAL**

1    "articulate compelling reasons supported by specific factual findings that outweigh

2    the general history of access and the public policies favoring disclosure" that would

3    justify even that, *Kamakana*, 447 F.3d at 1178–78 (alteration and citations omitted),

4    this Court should order the Use-of-Force Materials unsealed in their entirety.

5    **C.   Even under a good-cause standard, Defendant cannot show that sealing is justified given the powerful public interest in access.**

6    Though Defendant resists the compelling-reasons standard, the distinction is

7    largely academic: Defendant likewise falls short of his "burden of showing specific

8    prejudice or harm" under a good-cause standard. *Phillips ex rel. Estates of Byrd v.*

9    *Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002). Indeed, many of the

10   cases cited above that ordered the disclosure of videos documenting the official

11   conduct of law enforcement were decided under the good-cause standard. *See*

12   *Dominguez*, 2018 WL 6333661, at *3 (granting motion to unseal body camera

13   footage of fatal shooting where city had not "made a showing of particularized harm

14   that outweigh[ed] the public interest in disclosure"); *Sampson*, 2015 WL 11658713,

15   at *10–11 (granting motion to unseal dash-cam and body camera footage of

16   individual who died in police custody in light of, *inter alia*, the public interest in

17   "allegations of improper police treatment of minorities"); *LaRocca*, 2023 WL

18   4291066, at *2–4 (granting motion to unseal video evidence of use of force). For

19   much the same reasons that Defendant's arguments fail to establish compelling

20   reasons, his "[b]road allegations of harm, unsubstantiated by specific examples or

21   articulated reasoning," do not show good cause, *Beckman Indus.*, 966 F.2d at 476,

22   especially in light of the less-restrictive alternative of redaction, *see In re Roman*

23   *Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 425 (9th Cir. 2011).

24   Defendant attempts to bolster that thin showing by suggesting that the good-

25   cause inquiry does not permit this Court to consider the public interest in disclosure,

26   *see* Defendant's Omnibus Opposition at 18 n.6 (ECF No. 272), or, in the alternative,

disputing the public interest in the Use-of-Force Materials on the theory that the public knows enough about misconduct in the jails already.  But the prospect that further disclosure will clash with Defendant's official narrative that conditions have improved is not a cognizable harm to Defendant; on the contrary, whether Defendant's characterization is accurate is the very controversy that Plaintiffs' Motion to Modify Implementation Plan has put before this Court, and the public has a powerful interest in judging the fact of the matter for itself.  Neither of Defendant's justifications for excluding consideration of the public interest in this case has merit.

For one, Ninth Circuit law makes clear that the requirement "to balance 'the public and private interests'" is an aspect of any good-cause analysis, not a requirement distinctive to a motion to continue a protective order.  *In re Roman Catholic Archbishop*, 661 F.3d at 424 (quoting *Phillips*, 307 F.3d at 1211).  Courts routinely apply just that balancing exercise in granting a motion to unseal material subject to the good-cause standard—whether that motion is advanced by an intervenor or a party—even where an opposing party has made a threshold showing of particularized harm.  *See, e.g.*, *NML Capital Ltd. v. Republic of Argentina*, No. 2:14-cv-492, 2015 WL 727924, at *7 (D. Nev. Feb. 19, 2015) (granting media intervenor's motion to unseal deposition testimony, despite threshold showing that the transcript contained trade secrets, in light of public interest in Argentina's debt crisis); *Dominguez*, 2018 WL 6333661, at *3 (acknowledging "the sensitive nature of the videos involving [a fatal shooting]" but concluding it did not "outweigh the public's interest in fairness and transparency with respect to law enforcement" in granting plaintiff's motion to unseal); *Estate of Neil v. County of Colusa*, No. 2:19-cv-02441, 2020 WL 5535448, at *2–3 (E.D. Cal. Sept. 15, 2020) (law enforcement defendants' conclusory assertions about privacy, recruitment and workplace morale did not outweigh public interest in access to investigative reports on jail inmate's suicide under good cause standard).  Other circuits take the same approach.  *See, e.g.*,

**REPLY IN SUPPORT OF MOTION OF NON-PARTY
LOS ANGELES TIMES COMMUNICATIONS LLC TO INTERVENE AND UNSEAL**

*In re Nat'l Prescription Opiate Litig.*, 927 F.3d 919, 931 (6th Cir. 2019) (under good-cause standard, balancing media intervenors' "interest in reporting on [sealed information] and the public interest in learning what such reporting would reveal" against private interest in secrecy). This Court can—indeed, must—weigh the overwhelming public interest in favor of disclosure of the Use-of-Force Materials.

The weight of that interest cannot be gainsaid: "The public unquestionably holds an interest in the operations of the County and County jails which are both supported by tax dollars—especially when they have resulted in numerous deaths and injuries." *Greer*, 2023 WL 4479234, at *5. Defendant suggests that there is enough "publicly available information" about the jails already, Defendant's Omnibus Opposition at 21 (ECF No. 272), but it is practically a truism that videos of use-of-force incidents play a unique role in public oversight of law enforcement. The "self-authenticating character" of video "makes it highly unlikely that other methods could be considered reasonably adequate substitutes," *Am. C.L. Union of Illinois v. Alvarez*, 679 F.3d 583, 607 (7th Cir. 2012), and such videos have "spurred action at all levels of government to address police misconduct and to protect civil rights," *Fields v. City of Philadelphia*, 862 F.3d 353, 360 (3d Cir. 2017) (internal citation omitted). That "direct, tangible evidence of the compelling nature" of video of individual incidents makes clear that "aggregate data" does not exhaust the public interest in understanding Defendant's management of the L.A. County jails. *In re Nat'l Prescription Opiate Litig.*, 927 F.3d at 934 (under good-cause standard, rejecting adequacy of aggregate data on opioid prescriptions given role "transactional-level data" had played in news reporting and governmental inquiries into need for reform).

At base, as Defendant concedes, the Use-of-Force Materials vividly capture the "incidents most likely to involve problematic uses of force." Defendant's Omnibus Opposition at 5 n.2 (citation omitted). They go, in other words, to the heart of the issue now being litigated by the parties, the heart of Plaintiffs' pending motion to

**REPLY IN SUPPORT OF MOTION OF NON-PARTY
LOS ANGELES TIMES COMMUNICATIONS LLC TO INTERVENE AND UNSEAL**

modify the court-ordered implementation plan, and the heart of the public's interest in understanding allegations of persistent unconstitutional conditions in the L.A. County jails.  Under any plausibly applicable standard, this Court should order the Use-of-Force Materials unsealed.

## CONCLUSION

For the reasons set forth above and in the *Times*' Motion, the *Los Angeles Times* respectfully requests that the Court grant its motion to intervene and enter an order unsealing the Use-of-Force Materials.

Dated: August 28, 2023.

s/ *Katie Townsend*
Katie Townsend
REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS

*Counsel for Non-Party Intervenor*
LOS ANGELES TIMES
COMMUNICATIONS LLC