Kathleen M. Kenney
343 Sweet Grass Way
Richmond, KY 40475
Email: kkenney@federalcourtmonitor.com

**Monitor and on behalf of Monitors**
**Robert Houston and Nicholas E. Mitchell**

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| ALEX ROSAS, et al.,<br>Plaintiffs,<br>v.<br><br>LOS ANGELES COUNTY SHERIFF ROBERT LUNA, in his official capacity,<br><br>Defendant. | Case No. 12-cv-00428-MWF (MRW)<br><br>**MONITORING PANEL'S POSITION REGARDING THE PRODUCTION OF CONFIDENTIAL RECORDS**<br><br>Hon. Michael W. Fitzgerald<br>United States District Judge |

Case No. 12-cv-00428-MWF (MRW)

## **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION AND FACTUAL BACKGROUND………………………..……1

II.   PANEL'S NEED FOR ACCESS TO THE CONFIDENTIAL RECORDS…………..……..2

III.  PANEL'S RESPONSE TO OTHER MATTERS RAISED IN THE REQUEST………..… 5

IV. CONCLUSION………………………………………………………………6

ii

MONITORING PANEL'S POSITION REGARDING THE PRODUCTION OF CONFIDENTIAL RECORDS

I.      **INTRODUCTION AND FACTUAL BACKGROUND**

The Los Angeles County Sheriff's Department (LASD) has cooperated with the Monitoring Panel (Panel) throughout the course of its implementation of the Settlement Agreement. LASD has been professional, transparent and has provided the Panel with the records necessary to fulfill its monitoring duties.   Since the inception of this case, there have been six Monitors assigned to the Panel.  Monitor Robert Houston has served on the Panel from the start of the case.  Monitor Kathleen Kenney joined the Panel in April 2022 and Monitor Nicholas E. Mitchell joined in August 2022.  The process of reviewing and assessing force incidents has evolved over the term of this case.  At the beginning, the Panel was focused on reviewing force-related policies and training, and emphasizing the prohibitions on excessive and unnecessary force in its force reviews.   As the LASD has made progress in complying with the Agreement, the Panel now provides a proposed rating for each provision as a part of every force review.  The Panel then meets with both parties and has detailed discussions regarding specific compliance findings.

Pursuant to LASD policy, Category 3 uses of force are the most serious force incidents that involve, *inter alia*, "force resulting in admittance to a hospital," "any death following a use of force by any Department member," "all head strikes with impact weapons," or "deliberately or recklessly striking an individual's head against a hard, fixed object."[1]  Category 3 incidents represent a small percentage (approximately 1%) of the LASD's overall uses of force in the jails subject to this Agreement.  Of the 25 use of force cases the Panel reviews quarterly, the number of Category 3 cases is very small – on average 1 case per quarter, and there have been quarters in which the Panel did not review any Category 3 cases.

Given the seriousness of Category 3 force incidents, LASD's Internal Affairs Bureau (IAB) investigates all Category 3 uses of force.  Ironically, notwithstanding the severity of the force used

---

[1] LASD Custody Operations Force Manual §7-06/000.00 Use of Force Reporting Procedures.

- 1 -

MONITORING PANEL'S POSITION REGARDING THE PRODUCTION OF CONFIDENTIAL RECORDS

in Category 3 cases, which should trigger the highest level of scrutiny, for these cases, the Panel receives the least amount of information from the LASD.  Upon information and belief, the LASD's Use of Force Packages produced to the Panel for Category 3 cases contain fewer pages (on average 12 – 20 pages fewer) than less serious force cases.  This is largely attributable to the fact that Category 3 force packages do not contain the supervisory analysis and reviews that are contained in other less serious force packages.

On December 23, 2024, the Panel requested the IAB files for three Category 3 uses of force cases being reviewed for the Fifteenth Report.  In the Defendant's *Request for Ruling Regarding the Production of Confidential Records Subject to Non-Disclosure Under State Law to the Monitoring Panel*, LASD suggests that the Panel should more clearly articulate its rationale for receiving the requested IAB investigative files, and that this rationale could then be evaluated by this Court.  The Panel therefore provides the following explanation and information.

## II.    PANEL'S NEED FOR ACCESS TO THE CONFIDENTIAL RECORDS

One of the Panel's core functions is assessing LASD's force packages.  The Implementation Plan approved by this Court identifies three key areas for the Panel to monitor:

1.  Department's Implementation of each provision contained in the Implementation Plan.

2.  Department's adherence in practice to the policy change through the Monitoring period.

3.  *Department's investigation of any potential violations of the revised policies, and any remedial steps taken by the Department in response to the violations.* (emphasis added)[2]

To effectuate its duty to analyze investigations of potential violations of the LASD policy, the Panel reviews videos, reports by involved staff, witness statements, medical reports, LASD records, and the analysis of the force incidents generated by jail supervisors.  Assessing this

---

[2] *See* Implementation Plan at pp. 2 (Dkt. 133-2).

- 2 -

MONITORING PANEL'S POSITION REGARDING THE PRODUCTION OF CONFIDENTIAL RECORDS

information, the Panel provides a compliant or not compliant rating for 37 substantive provisions for each force package.

For the Category 3 cases IAB investigates, the deputies involved in, or witness to, are interviewed by IAB.  Several of the provisions that the Panel must assess are implicated by these IAB interviews.  For example, Provision 2.2 requires that the force used by Department members (a) must be used as a last resort, (b) must be the minimal amount of force that is necessary and objectively reasonable to overcome resistance, (c) must be terminated as soon as possible consistent with maintaining control of the situation; and (d) must be de-escalated if resistance decreases.  To get a complete and accurate picture of the incident, the Panel should have access to these IAB interviews to hear directly from involved staff what behavior led to the uses of force, what actions they took to mitigate the need for force, and the reasons for the force they ultimately used.

Similarly, for Category 3 cases involving head strikes, Provision 2.6 prohibits head strikes (or kicks) unless (1) the inmate is assaultive (2) there is imminent danger of serious injury and (3) there are no other reasonable means to avoid serious physical injury.  Upon information and belief, these issues are explicitly covered within the IAB interviews that the LASD does not currently produce to the Panel.  Without the ability to review these IAB interviews, and any other investigative material generated by IAB about these incidents, the Panel's ability to assess this provision is compromised.

Provision 12.2 provides for inmate witnesses to force incidents to be interviewed away from other inmates and to consent to being interviewed.  Assessing compliance with this provision in Category 3 cases necessarily involves reviewing the recordings of those interviews created by IAB, which the Panel is not presently able to do.

Provision 15.5 requires the Panel to determine whether a deputy was shown a video of the incident and if so, whether they provided a supplemental report or specifically noted changes to

- 3 -

their initial report that were made after viewing the video of the force incident.  The IAB files in Category 3 cases, which are not produced to the Panel, would contain this information.

Finally, pursuant to Provision 1.3, the Panel needs to assess whether Department managers have been held accountable if they have failed to address use of force problems at the Department's jail facilities.  Notwithstanding the LASD's progress at complying with the Agreement, the Panel's semi-annual reports have consistently noted that in order to achieve full compliance, LASD must hold deputies accountable for use of force violations and hold supervisory staff accountable when they fail to identify and/or appropriately address those violations.[3]  This includes accountability for Category 3 force violations.

The Parties have agreed to adopt a new compliance measure for 1.3, which will be submitted to the Court, along with proposed changes to some provisions and moving 18 provisions to non-reporting status, soon.  Under the new measure, the Panel will determine whether supervisors' evaluations of use of force incidents (i) are sufficiently thorough; (ii) sufficiently explain the reasons for their conclusions; and (iii) appropriately identify policy violations and hold staff accountable for policy violations.  To fully assess this provision in Category 3 cases, the Panel will need access to all the statements, interviews, and reviews gathered during the course of the investigation. Moreover, the Panel may also need access to LASD's staff disciplinary files to determine whether staff have been appropriately held accountable for policy violations.  The Panel may need to assess whether the penalty imposed was reasonable and within the Department's Guidelines for Discipline and Education-Based Alternatives.  If the penalty imposed was not within the Guidelines, the Panel may need to review the mitigating and aggravating factors considered and the basis for the Department's decision.  For Category 3 cases, the IAB files are essential to making these determinations.

---

[3] *See, e.g.*, Panel's Fourteenth Report at pp. 4.

- 4 -

MONITORING PANEL'S POSITION REGARDING THE PRODUCTION OF CONFIDENTIAL RECORDS

### III.    PANEL'S RESPONSE TO OTHER MATTERS RAISED IN THE REQUEST

The LASD's Request repeatedly states that the Panel has never before requested access to IAB files.  Yet, upon information and belief, the Panel does not believe this to be accurate. Former Panel member Rick Drooyan recalls reviewing LASD IAB files.[4]  While he is not sure whether his review was related to *Rosas* or the DOJ case (*United States v. County of Los Angeles, et al.,* CV No-15-05903), he believes his review was related to LASD use of force case(s) and carried out while discharging his duties as Monitor.  Mr. Drooyan also served as the General Counsel for the Citizens' Commission on Jail Violence.  He recalls the IAB files being much larger than typical LASD force packets.  He believes two to three IAB files were delivered to his office, and that he reviewed them to assess the adequacy of the investigation(s) and perhaps to understand why the Department had reached its conclusion(s) regarding the force incident(s).  Thus, the Panel does not believe that its request to review IAB materials is without precedent.

The LASD's Request also implies the Panel requested the IAB files because they involve cases where the Panel and LASD have reached "divergent conclusions as to whether those uses of force violated LASD policies."  Docket 333, p.6.  In fact, in two of three cases requested, the Panel's tentative findings for the core force-related provisions are consistent with LASD's conclusions.

Moreover, two of these cases involve incidents in which the inmate sustained great bodily injury.  Accordingly, those records could be released pursuant to the exception in Penal Code 832.7(b)(1)(A)(ii).[5]  In lieu of having to assess each instance where this exception may apply,

---

[4] Monitor Kathleen Kenney spoke to Former Monitor Rick Drooyan on 6/7/25 regarding his review of IAB files.  Mr. Drooyan noted that it had been several years (6 or 7) since he served as the Monitor and the information he provided is the best of his recollection.

[5] California Penal Code provides an exception to the bar on disclosing personnel records relating to "the report, investigation, or finding of…an incident involving the use of for against a person by a peace officer or custodial officer that resulted in death or in great bodily injury."

- 5 -

LASD is seeking clarity as to whether these records, or similar records, can be disclosed when requested.  The Panel supports the idea of a blanket approval for release of these records.

Finally, as LASD notes in its filing on this matter, the Panel has no interest in receiving any portions of the IAB files that contain personal addresses, phone numbers or emergency contact for individual deputies or other staff members, and such information may be redacted from the materials produced to the Panel.  Indeed, the Panel has offered to narrow the types of information/documents the Panel needs from IAB file on a case-by-case basis.  The Panel would need to see a list or a description of the information contained in the IAB file and can identify what information it needs to carry out its monitoring duties regarding each case.

**IV.    CONCLUSION**

To discharge the duties that have been assigned to it by this Court, the Panel has a need for the IAB records pertaining to specific Use of Force cases the Panel is reviewing.  These records are necessary for the Panel to fully assess the Department's compliance with the *Rosas* provisions and compliance measures. The Panel respectfully asks the Court to grant LASD permission to provide these relevant records, should such permission be necessary.  The Panel is available to answer any questions the Court may have regarding this request at such times as are convenient for the Court and the parties.

- 6 -

MONITORING PANEL'S POSITION REGARDING THE PRODUCTION OF CONFIDENTIAL RECORDS

DATED: June 9, 2025

Respectfully Submitted,

KATHLEEN M. KENNEY

By: /S/ Kathleen M. Kenney

Monitor and on behalf of Monitors

Robert Houston and

Nicholas E. Michell

- 7 -

MONITORING PANEL'S POSITION REGARDING THE PRODUCTION OF CONFIDENTIAL RECORDS