PETER J. ELIASBERG (SB# 189110)
peliasberg@aclusocal.org
MELISSA CAMACHO (SB# 264024)
mcamacho@aclusocal.org
JACOB REISBERG (SB# 329310)
jreisberg@aclusocal.org
**ACLU FOUNDATION OF SOUTHERN CALIFORNIA**
1313 W. 8th Street
Los Angeles, CA 90017
Phone: (213) 977-9500
Fax: (213) 977-5299

*Attorneys for Plaintiffs*

*Additional Counsel Listed on Next Page*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ALEX ROSAS and JONATHAN GOODWIN on behalf of themselves and of those similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> Robert Luna, Sheriff of Los Angeles County, in his official capacity, <br><br> Defendant. | CASE NO. 2:12-CV-00428-MWF-MRW <br><br> **PLAINTIFFS' STATEMENT IN RESPONSE TO DEFENDANT'S REQUEST FOR A RULING REGARDING THE PRODUCTION OF CONFIDENTIAL RECORDS SUBJECT TO NON-DISCLOSURE UNDER STATE LAW TO THE MONITORING PANEL** <br><br> Date:  July 28, 2025 <br> Time:  10:00 a.m. <br> Judge:  Hon. Michael W. Fitzgerald <br> Courtroom:  Courtroom 5A |

*Additional Counsel Continued*

CORENE KENDRICK (SB# 226642)
ckendrick@aclu.org
MARISOL DOMINGUEZ-RUIZ (SB# 345416)
mdominguez-ruiz@aclu.org
**ACLU NATIONAL PRISON PROJECT**
425 California St., Ste. 700
San Francisco, CA 94104
Phone: (202) 393-4930
Fax: (202) 393-4931

*Attorneys for Plaintiffs*

JENNIFER S. BALDOCCHI (SB# 168945)
jenniferbaldocchi@paulhastings.com
LINDSEY C. JACKSON (SB# 313396)
lindseyjackson@paulhastings.com
**PAUL HASTINGS LLP**
515 South Flower Street, 25th Floor
Los Angeles, CA 90071-2228
Phone: (213) 683-6000
Fax: (213) 627-0705

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

Page(s)

I. INTRODUCTION.................................................................................................7

II. ARGUMENT.....................................................................................................8

    A.    The Confidentiality Requirements of the State Penal Code Relating to Officers' Personnel Records Do Not Apply in Federal Court Litigation...8

    B.    If Penal Code Section 832.7 Applies, Then the IAB Reports the Panel Requested Are Not Confidential Because they are Covered by One of the Statute's Exceptions..................................................................................10

    C.    Class Counsel are Entitled to Receive the IAB Reports the Panel Receives Pursuant to the Agreed-Upon Protective Order and to Further their Ethical Obligations to the Plaintiff Class.............................................................12

III. CONCLUSION................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agster v. Maricopa Cnty.*,
  422 F.3d 836 (9th Cir. 2005) ................................................................. 6

*Anderson v. City of Rialto*,
  2017 WL 10562686 (C.D. Cal. 2017) ................................................... 7

*Green v. Baca*,
  224 F.R.D. 624 (C.D. Cal. 2005) ........................................................... 7

*Jensen v. Thornell*,
  2023 WL 2838040 (D. Ariz. Apr. 7, 2023) ......................................... 13

*Lua v. McNett*,
  2024 WL 1349649 (S.D. Cal. 2024) ................................................... 6, 7

*Religious Tech. Ctr. v. Wollershein*,
  971 F.2d 364 (9th Cir. 1992) ................................................................. 6

*Vargas v. County of Los Angeles*,
  2020 WL 4032671 (C.D. Cal. 2020) ..................................................... 7

*Wilcox v. Arpaio*,
  753 F.3d 872 (9th Cir. 2014) ............................................................. 6, 7

**Statutes**

42 U.S.C. § 1983 ............................................................................... 6, 7

California Penal Code § 832.7 ....................................................... *passim*

California Penal Code § 832.7 (b)(1) ................................................. 8, 9

California Penal Code § 832.7(b)(1)(A)(ii) .................................. 5, 8, 10

Cal. Penal Code § 832.7(b)(1)(A)(iii) .................................................. 9

# I. INTRODUCTION

Defendant asks this Court to rule if the Los Angeles Sheriff's Department ("LASD") must provide the Court-appointed Monitoring Panel ("the Panel") with LASD Internal Affairs Bureau ("IAB") reports from three use of force cases that the Panel requested to fulfill its duties to monitor Defendant's compliance with the court-ordered settlement agreement in this case. *See* Dkt. 333. Specifically, Defendant contends LASD is not permitted to provide the Panel with those reports because state law, California Penal Code § 832.7, provides for the confidentiality of certain personnel records of law enforcement officers. The Court should order Defendant and LASD to provide those records to the Panel for two reasons.

***First***, the Ninth Circuit has repeatedly held that state law privileges do not apply in federal litigation involving federal claims, and district courts in California have similarly held that confidentiality requirements in Section 832.7 do not apply in federal litigation. ***Second***, even if Section 832.7 were applicable in federal litigation, that statute itself exempts records "relating to report, investigation or findings of . . . [a]n incident involving the use of force against a person by . . . a custodial officer that resulted in . . . great bodily injury." Cal. Penal C. § 832.7(b)(1)(A)(ii). That exemption applies to the IAB reports the Panel seeks, because they relate to three cases in which LASD personnel either punched people in the head or slammed their head into a concrete wall, and great bodily injury almost certainly did occur.

Additionally, the Court should also make clear that Plaintiffs' counsel is entitled to the same records, under the plain terms of the protective order the parties agreed to in 2018, (Dkt. 193), and to further their ethical obligations as class counsel to ensure Defendant complies with the terms of the settlement agreement class counsel negotiated on behalf of their clients.

## II.  ARGUMENT

### A.  The Confidentiality Requirements of the State Penal Code Relating to Officers' Personnel Records Do Not Apply in Federal Court Litigation

Defendant's concern that LASD may be barred by a state law privilege from providing IAB reports about uses of force to the court-appointed monitors in this federal lawsuit is misplaced.  Dkt. 333 at 4-5.  Ninth Circuit precedent is clear that state law privileges do not apply in federal litigation when, as is the case here, federal claims are involved.  *See Wilcox v. Arpaio*, 753 F.3d 872, 876 (9th Cir. 2014) ("Where, as here, the same evidence relates to both federal and state law claims, we are not bound by Arizona law on privilege. Rather, federal privilege law governs.") (internal citation and quotation marks omitted); *Agster v. Maricopa Cnty.*, 422 F.3d 836, 839 (9th Cir. 2005); *Religious Tech. Ctr. v. Wollershein*, 971 F.2d 364, 367 n.10 (9th Cir. 1992) (citing Fed.R.Evid. 501) ("However, the federal courts will recognize state privileges only in cases in which '[s]tate law supplies the rule of decision.'").

Plaintiffs brought only federal claims in this lawsuit.  They alleged that there was a pattern and practice of excessive force by LASD personnel against people incarcerated in the jails that violated the Eighth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.  *See* First Amended Complaint at ¶ 246-48 (Dkt. 32).

District courts in California, including this Court, have followed the lead of the Ninth Circuit and repeatedly have rejected the argument made by law enforcement agencies that the confidentiality requirements of Penal Code Section 832.7 apply in federal litigation to prohibit disclosure of officers' personnel records.  For example, in *Lua v. McNett*, the district court evaluated whether plaintiff was entitled to a police officer's personnel records, including materials from internal affairs investigations, in light of defendant's argument that they were privileged under Penal Code § 832.7 and thus not subject to discovery.  The court rejected the

argument, holding that § 832.7 was inapplicable to discovery disputes in federal cases involving federal claims and stating "[d]efendants have not cited any federal law to support their position that the California statutes protect the documents from disclosure in federal civil rights suits." *Lua v. McNett*, 2024 WL 1349649 at *10 (S.D. Cal. Mar. 29, 2024) (lawsuit raising both state and federal claims alleging excessive force against police officer and police department); *see also Vargas v. County of Los Angeles,* 2020 WL 4032671 at *4 (C.D. Cal. May 11, 2020) (holding Penal Code Section 832.7 does not apply "in evaluating discovery disputes in 42 U.S.C. § 1983 claims."); *Anderson v. City of Rialto,* 2017 WL 10562686, at *3 (C.D. Cal. 2017) (holding that "§ 832.7 is not applicable in evaluating discovery disputes in 42 U.S.C. § 1983 claims" in First Amendment retaliation case against police department)*; Green v. Baca*, 224 F.R.D. 624, 643-44 (C.D. Cal. 2005) (holding in lawsuit against then-Los Angeles County Sheriff Baca and LASD that confidentiality provisions of Section 832.7 relating to officers' personnel records are irrelevant to disclosure disputes in federal litigation).

While most of these cases have addressed the inapplicability of state law privileges in federal cases in pretrial discovery disputes, courts have also applied the principle that state law privileges are not relevant in federal court in post-judgment proceedings. For example, in *Wilcox v. Arpaio*, the Ninth Circuit held that the state law mediation privilege did not apply in a post-judgment motion to enforce a settlement agreement because there were both state and federal claims in the lawsuit. *Wilcox*, 753 F.3d at 876-77. The same principle applies in this post-judgment dispute about whether a state law privilege applies to bar the Panel's access to records it seeks to monitor Defendant's compliance with a court-enforceable settlement agreement in a case brought under 42 U.S.C. § 1983: it does not.

**B.    If Penal Code Section 832.7 Applies, Then the IAB Reports the Panel Requested Are Not Confidential Because they are Covered by One of the Statute's Exceptions**

Even if the California state law limiting access to law enforcement records were to apply in federal court litigation — which as shown above, it does not— Defendant acknowledges that Penal Code Section 832.7 provides exceptions for when disclosure *is* permitted.  Dkt. 333 at 4-5, fn.4.  Namely, Section 832.7(b)(1)(A)(ii) states that "[a]n incident involving the use of force against a person by a peace officer or custodial officer that resulted in death or in great bodily injury" is an exception to Section 832.7's confidentiality requirements, and records relating to such incidents "shall not be confidential and shall be made available for public inspection." Cal. Penal Code § 832.7(b)(1).

Defendant does not attempt to argue that the exception is inapplicable to the records the Panel has requested.  Instead, Defendant seeks a blanket ruling that would exempt LASD from undertaking any assessment of whether the exception applies on a case-by-case basis.  *See* Dkt. 333 at 4–5, fn.4.  Defendant argues this is appropriate because "not all use of force incidents investigated by the IAB for which the Monitoring Panel may seek records are incidents that resulted 'in great bodily injury' and there have been no such incidents over the life of this case that resulted in death." *Id.*  This argument is misguided for at least three reasons.

***First***, Defendant offers no legal basis for why the Court should excuse it from the individualized assessment required by statute.  The fact that *some* use of force incidents do not involve great bodily injury is irrelevant to whether *other* incidents fall within the statutory exception.  Section 832.7's structure expressly contemplates a record-by-record review to determine whether an exception applies.  Indeed, there is no way to determine whether a record is confidential under the statute or whether the (b)(1) exemption applies without doing an individualized examination of the records in question.

**Second**, the plain text of the statute makes clear that there does not need to be a conclusive determination that there was great bodily injury for the exception to apply. Instead, it extends to any record "relating to the report, investigation, or findings" of great bodily injury. Cal. Penal Code § 832.7(b)(1). That language includes records generated while investigating whether great bodily injury occurred—even if the investigation ultimately concludes otherwise. Here, Defendant described these IAB investigations as involving "the most serious uses of force that occur in the Downtown Los Angeles Jails facilities." Dkt. 333 at 3.[1] That characterization alone suggests these investigations fall within the scope of the statutory exception. This exception stands in contrast to other exceptions in the statute, such as those requiring a "sustained finding" of misconduct, which may impose a higher threshold. *See* Cal. Penal Code § 832.7(b)(1)(A)(iii).

**Third**, the IAB Reports at issue do relate to incidents that are very likely to have resulted in great bodily injury. The Panel asserts that at least two of the incidents were such cases. (Dkt. 335 at 5). In general, incidents involving punches to the head or the head being struck against a hard surface should be presumed to involve great bodily injury, given the well-documented medical risks associated with such force. All three of the incidents for which the Monitors have requested IAB Reports involve such head strikes. Declaration of Peter Eliasberg, filed herewith, at ¶ 14.

In his expert declaration filed previously in this case, Dr. Erin David Bigler opined that blows to the head—even when not resulting in visible wounds—carry a substantial risk of concussion, traumatic brain injury, or other serious neurological

---

[1] Indeed, LASD policy requires IAB activation in only the most serious uses of force that may result in great bodily injury or death, including shootings, force resulting in admission to hospital, bone fractures, and "[a]ll head, face, or neck strikes with hands or fists." LASD Manual of Policy and Procedures, 3-10/130.00 – Activation of the IAB Force/Shooting Response Teams, https://pars.lasd.org/Viewer/Manuals/10008/Content/21049.

harm. *See* Dkt. 255-2 at 4–6.[2] Dr. Bigler explains that when the soft tissue of the brain is subject to "force impact or any kind of rapid acceleration," the brain "impact[s] against the inner surface of the skull" as well as stretches and deforms. *Id.* at 4. "It is the stretching, twisting and pulling actions that breaks brain cells, ruptures blood vessels, and damages the brain," and that traumatic brain injury "occurs because of the movement of very delicate brain tissue that stretches neural fibers and blood vessels beyond their tolerance limit." *Id.* at 5. When a use of force involves a person's head being targeted or impacted there is the potential for great bodily injury. The likelihood of concussions or other serious brain injury is particularly high in the jail because more than 40% of the jail population has serious mental illness, and the brains of people with serious mental illness are more vulnerable to brain injury than those who do not have mental illness. *Id.* at 22–25. Thus, these cases fall squarely within the category of incidents for which confidentiality under Penal Code § 832.7 does not apply.

Accordingly, the statutory exception applies because of the plain text of Penal Code Section 832.7(b)(1)(A)(ii) and the nature of the records at issue. The exception provides an additional reason for why this Court should grant both the Panel and Plaintiffs' counsel access to the IAB Records the Monitors have requested.

### C. Class Counsel are Entitled to Receive the IAB Reports the Panel Receives Pursuant to the Agreed-Upon Protective Order and to Further their Ethical Obligations to the Plaintiff Class

In 2018, the parties negotiated and entered into a protective order that addressed (1) the Panel's access to LASD materials, including use of force packages and videos of use of force incidents, and (2) Plaintiffs' counsels' access to those materials. *See generally* Dkt. 193, Stipulated Protective Order Regarding Class

---

[2] Dr. Bigler's declaration was originally filed under seal pursuant to the protective order in the case. But it was subsequently unsealed by Court order. Dkt. 292.

Counsel's Access to Documents.  The order also detailed the obligations of Plaintiffs' counsel to maintain the confidentiality of materials received from LASD. Section V.A.(3) of the order provides in relevant part:

> As requested by the Panel, Defendant has produced and will continue to produce other documents to the Panel (in addition to the Force Synopses and Force Packages) for the purpose of the Panel's assessment and determination of Defendant's compliance with the Implementation Plan[3] ("Panel Documents"), Pursuant to this Protective Order, Defendant shall produce to Class Counsel the same Panel Documents that have been or will be produced to the Panel beginning in November 2016 . . . .

Dkt. 193 at 9.

The Panel explained in its filing to the Court that it seeks the IAB reports of three use of force incidents to enable it to assess Defendant's compliance with the Implementation Plan, particularly provisions 1.3, 2.2, 2.6, 12.2 and 15.5.  *See* Dkt. 335 at 2–4.  Because those reports are "for the purpose of the Panel's assessment and determination of Defendant's compliance with the Implementation Plan," (Dkt. 193 at 9), Plaintiffs are entitled to receive them under the plain language of Section V.A.(3) of the protective order.  *Id*.

Providing access to these records also supports the important role Plaintiffs' counsel  played, and continue to play, in attempting to ensure Defendant's

---

[3] The court-ordered settlement agreement in this matter provided, among other things, that there would be three court-appointed monitors, the Panel would write an Implementation Plan to address improper use of force in the LA County jail facilities located in downtown Los Angeles, LASD would be bound by the provisions of the Implementation Plan, and the Panel would assess LASD's compliance and file regularly reports with the Court assessing its compliance.  The class settlement agreement is attached as Exhibit A to the Parties Joint Motion for Preliminary Approval and Notice of Proposed Settlement, Dkt. 110.  Judge Pregerson entered an order giving final approval of the settlement agreement on April 21, 2015.  Dkt. 135.

compliance with the court-ordered settlement agreement and fulfilling its ethical obligations as class counsel to protect the rights of the Plaintiff class.  For years, Plaintiffs' counsel has played an active role in monitoring LASD's compliance with the settlement agreement and has taken steps to address non-compliance.  For example, they review the same use of force packages the Panel reviews, identify uses of force with which Plaintiffs' counsel disagrees with the Panel's tentative conclusions of compliance, and meet regularly with the Panel to discuss those use of force packages and Defendant's compliance with the Implementation Plan.  *See* Dkt. 335 at 1 (Panel explaining how it meets with both parties for "detailed" discussions about their assessment of compliance for use of force packages); Eliasberg Decl., at ¶¶ 5-7.

In addition, in 2023 Plaintiffs' counsel filed a motion to modify the Implementation Plan to address areas of non-compliance that they and the Panel had identified.  *See* Dkt. 252.  One problem addressed in the Motion was the apparent failure of accountability within LASD to properly identify out of policy uses of force and dishonest reporting by line personnel and failure to hold supervisors accountable for not identifying these out of policy uses of force and dishonest reporting.  *See, e.g.*, Dkt. 253 at 7 ("Over the course of almost five years, the Panel repeatedly detailed LASD's failure to identify violations of policy for head strikes, force prevention, and dishonest reporting, or to impose discipline when supervisors identify violations.").  Plaintiffs' concerns mirrored many of those expressed by the Panel in their reports to the Court.  *See id.* at 7–9 (citing to and quoting numerous reports to the Court filed by the Panel).

Judge Pregerson did not rule on Plaintiffs' Motion, as he directed the parties to engage in negotiations to resolve the issues raised in it.  Those negotiations continue, but have resulted in concrete changes to both LASD policies and to a number of provisions in the *Rosas* Implementation Plan.  *See* Eliasberg Decl. at ¶ 11.

The Panel requests access to the IAB reports to further its determination of LASD's compliance with one or more provisions in the *Rosas* Implementation Plan, including by assessing how the IAB investigated these cases and determined whether they were in policy.  Dkt. 335 at 2–4.  These reports will obviously be useful to Plaintiffs' counsel in evaluating their continuing concerns about lack of accountability in the Department.  Courts overseeing injunctions and consent decrees in other jail and prison cases have recognized the essential role plaintiffs' counsel play in monitoring compliance and their concomitant need for documents, such as the IAB reports the Monitors are currently seeking.  *See, e.g.*, *Jensen v. Thornell*, 2023 WL 2838040, at *5 (D. Ariz. Apr. 7, 2023) (holding in ordering injunctive relief in a case about conditions in a state prison system that "[w]hile the Court-appointed monitors will be a valuable source of information, Plaintiffs and their counsel will still have primary responsibility for assessing Defendants' performance and, if Defendants do not perform, it will be Plaintiffs' duty to seek additional appropriate relief. This will require Plaintiffs' counsel and their experts to have ongoing access to class members, medical records, and the locations where class members are housed.").

Because the plain language of the protective order between the parties provides that Plaintiffs' counsel will have access to the same documents that the court-appointed Panel receives to conduct their monitoring, and because access to these reports furthers Plaintiffs' counsel's ongoing role to ensure that LASD complies with the settlement agreement, the Court should order Defendant to provide the IAB reports to Plaintiffs' counsel.  Plaintiffs' counsel understand that they are bound by the confidentiality provisions of the protective order and that the protective order permits Defendant to redact certain information from those reports, including personally identifying information in those reports in versions of the reports they produce to Plaintiff's counsel.  *See* Dkt. 193 at 12–13 ("Redactions of Confidential Information").  Nor are Plaintiffs' counsel aware of any violations of

the confidentiality provisions of the protective order in the seven years it has been in place. Eliasberg Decl. at ¶ 13. Thus, providing the reports to Plaintiffs' counsel poses no risk of improper public disclosure of personally identifying information.

## III.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court determine that state law is no bar to the Defendant's providing the Panel the IAB reports they seek and order the disclosure of those reports to both the Panel and Plaintiffs' counsel subject to the protective order between the parties.

DATED: June 23. 2025               By:  */s/ Peter J. Eliasberg*
                                        Peter J. Eliasberg
                                        Melissa Camacho
                                        Jacob Resiberg
                                        **ACLU FOUNDATION OF SOUTHERN CALIFORNIA**

                                        Corene T. Kendrick
                                        Marisol Dominguez-Ruiz
                                        **ACLU NATIONAL PRISON PROJECT**

                                        Jennifer S. Baldocchi
                                        Lindsey C. Jackson
                                        **PAUL HASTINGS LLP**

                                        Attorneys for Plaintiffs Alex Rosas, *et al.*

## CERTIFICATE OF SERVICE

I hereby certify that on June 23, 2025, I electronically transmitted the above document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to Counsel for Defendants who are registered CM/ECF users.

DATED:  June 23, 2025

_____
Irma Gamino